# EXHIBIT A

Case 5:22-cv-00171-JPB   Document 44-1   Filed 09/29/22   Page 1 of 9   PageID #: 311



**west virginia** department of environmental protection

601 57th Street, S.E.  
Charleston, WV 25304  
(304) 926-0460

Austin Caperton, Cabinet Secretary  
dep.wv.gov

# CONSENT ORDER
# ISSUED UNDER
# WEST VIRGINIA CODE, CHAPTER 22, ARTICLE 6

TO:   Diversified Gas & Oil Corporation  
        1100 Corporate Drive  
        Birmingham, AL 35242

DATE: 11-19-18

ORDER NO.: 2018-22

        Diversified Resources, Inc.  
        1100 Corporate Drive  
        Birmingham, AL 35242

        Alliance Petroleum Corporation  
        4150 Belden Village Avenue NW  
        Suite 410  
        Canton, OH 44718

        Core Appalachia Operating, LLC  
        414 Summers Street  
        P.O. Box 6070  
        Charleston, WV 25362

## I. INTRODUCTION

This Consent Order (hereinafter "Order") is entered into by the Office of Oil and Gas (hereinafter "OOG"), by and through its Chief, pursuant to the authority of W. Va. Code §§ 22-1-1, 22-6-1 and 22-6A-1 *et seq.* and Diversified Gas & Oil Corporation, Diversified Resources, Inc., Alliance Petroleum Corporation, and Core Appalachia Operating, LLC (hereinafter "Diversified" or "Operator"), collectively the "Parties."

## II. FINDINGS OF FACT

In support of this Order, the Chief hereby makes the following findings:

Promoting a healthy environment.

1. OOG, an office within the West Virginia Department of Environmental Protection, is the agency with the duty and authority to execute and enforce W.Va. Code § 22-6-1 *et seq.*, and the rules and regulations promulgated thereunder.

2. Diversified Resources, Inc. ("DRI") is a West Virginia corporation, registered to do business in West Virginia that engages in oil and gas extraction activities in West Virginia. DRI's business address is 1100 Corporate Drive, Birmingham, Alabama 35242. DRI is a wholly owned subsidiary of Diversified Gas & Oil Corporation.

3. Alliance Petroleum Corporation ("Alliance") is a Georgia corporation, registered to do business in West Virginia that engages in oil and gas extraction activities in West Virginia. Alliance's business address is 4150 Belden Village Avenue NW, Suite 410, Canton, Ohio 44718. Alliance is a wholly owned subsidiary of Diversified Gas & Oil Corporation.

4. Core Appalachia Operating, LLC ("Core") is a Delaware corporation, registered to do business in West Virginia that engages in oil and gas extraction activities in West Virginia. Core's business address is P.O. Box 6070, Charleston, West Virginia 25362. Core is a wholly owned subsidiary of Diversified Gas & Oil Corporation.

5. Diversified Gas & Oil Corporation is a Delaware corporation with a business address of 1100 Corporate Drive, Birmingham, Alabama 35242, and is the parent of its subsidiaries, including DRI, Alliance and Core.

6. Each of the entities described in Paragraphs 2-5 of these Findings of Fact is a "person" as defined by W.Va. Code § 22-6-1(n).

7. As of the entry of this Order, Diversified, through a series of recent transactions, is the "owner" of approximately 17,000 oil and gas wells located in West Virginia as those terms are defined by W.Va. Code § 22-6-(1) and applicable statutes and rules.

8. Following the sale and transfer of those oil and gas wells referenced above to Diversified, Diversified contacted the OOG with regard to the status of certain of those oil and gas wells.

9. Specifically, Diversified contacted OOG regarding a number of wells contained within those recently acquired wells which are shut in and which have been non-producing wells for period of time, and some for a period of time sufficient to potentially meet the definition of an abandoned well as that term is defined at W.Va. Code § 22-6-19.

10. The parties agree that it is in the best interests of the state and its citizens that these wells be identified and that where a bona fide future use exists, wells should be placed back into production and/or should be placed into such other use as identified and approved by OOG, and that where no bona fide future use exists that such wells be plugged.

11. The parties agree that Diversified requires sufficient time to identify those wells referenced above and further assess the viability of those wells and identify those wells which have the capacity for a bona fide future use and bring such wells back

into production or which require plugging and to further complete the plugging of those identified wells within a reasonable period of time.

12. Further, the parties agree that the establishment of a schedule acceptable to the parties whereby Diversified commits to evaluate a certain number of oil and gas wells referenced above and further commits to the plugging or bringing back into production of those oil and gas wells during a given calendar year is in the best interests of the parties.

### III. CONCLUSION OF LAW

1. West Virginia Code § 22-1-6(d) requires, in part, that "[i]n addition to other powers, duties and responsibilities granted and assigned to the secretary by this chapter, the secretary is authorized and empowered to …(3) Enter private lands to make surveys and inspections for environmental protection purposes; to investigate for violations of statutes or rules which the department is charged with enforcing; to serve and execute warrants and processes; to make arrests; issue orders, which for the purposes of this chapter include consent agreements; and to otherwise enforce the statutes or rules which the department is charged with enforcing…"

2. West Virginia Code § 22-6-19 provides that "…[a]ny well which is completed as a dry hole or which is not in use for a period of twelve consecutive months shall be resumed to have been abandoned and shall promptly be plugged by the operator in accordance with the provisions of this article, unless the operator furnishes satisfactory proof to the director that there is a bona fide future use for such well.,"

3. West Virginia Code § 22-6-34(a) provides that "[a]ny person or persons, firm, partnerships partnership association or corporation who willfully violates any provision for this article or any rule promulgated thereunder shall be subject to a civil penalty not exceeding two thousand five hundred ($2,500). Each day a violation continues after notice by the division constitutes a separate offense…"

### IV. ORDER FOR COMPLIANCE

After a full and complete negotiation of all matters set forth in this Consent Order, and upon mutual exchange of the covenants contained herein, the Parties desiring to avoid litigation and intending to be legally bound and further acting in good faith, it is hereby **ORDERED** by the Office of Oil and Gas and **AGREED** to by Diversified as follows:

1. ***Authority.*** This Consent Order is an Order of the Office of Oil and Gas authorized and issued pursuant to W.Va. Code §§ 22-1-1 and 22-6-1 *et seq.*

2. ***Offer to Enter Consent Order; Expiration; Acceptance.*** Until executed by the parties, this Consent Order constitutes a unilateral offer to enter into this Consent Order under the terms and conditions contained herein. This offer, and its terms and conditions, shall expire fourteen (14) calendar days from date specified on page one of this Consent Order. Acceptance requires returning an executed copy of this Consent Order to the Office of Oil and Gas prior to the expiration date. The Chief

reserves the right to withdraw this offer at any time. Only the Chief shall have the right to extend the expiration period beyond fourteen (14) days.

3. ***Effect of This Consent Order.*** This Consent Order entered into by the Parties hereby replaces and supersedes any existing enforcement action and/or Orders issued relating to this subject matter specifically contained herein. The Operator hereby waives any right to appeal or contest this Consent Order. The Operator agrees to take all actions required by the terms and conditions of this Order and consents to and will not contest the Chief's jurisdiction regarding this Consent Order.

4. ***Findings and Conclusions.*** Diversified does not admit or agree to any of the factual or legal determinations and/or conclusions made by OOG in this Consent Order. However, Diversified, agrees not to challenge any finding or conclusion made by OOG in this Consent Order in any administrative, civil proceeding involving Diversified and OOG to enforce this Consent Order.

5. ***Corrective Actions/Schedule:*** Diversified agrees to undertake the following actions:

    a. No later than December 31, 2019, Diversified agrees to identify and plug thirty (30) oil and gas wells that it determines are not capable of maintaining a bona fide future use, which actions taken by Diversified shall be summarized in a report submitted to the OOG no later than December 31, 2019.

    b. No later than June 30, 2019, Diversified shall complete an initial assessment of oil and gas wells for which no production was reported in the calendar year 2017 now owned by Diversified in the state of West Virginia. Diversified shall provide a list of these wells buy that same date. With consultation with the OOG, Diversified shall have a further opportunity to perform additional assessments of wells and provide an amended, supplemental list on June 30, 2020 and each subsequent year thereafter based upon further review and analysis of available information, which list may further be modified from time to time as needed to add or remove wells.

    Oil and gas wells identified on this list shall not be subject to any further enforcement activities by the OOG with regard to any requirement to close and plug such wells based upon the lack of production in the most previous twelve months so long as Diversified is compliant with the terms and conditions of this Order, provided, the OOG retains the authority to enforce such other requirements as set forth in Paragraph 10 of Section IV of this Order below.

    No later than December 31, 2020 and continuing annually through calendar year ending December 31, 2034, Diversified shall provide to the OOG a report summarizing the actions taken to bring into production or plug oil and gas wells in West Virginia during the prior twelve month period. During each calendar year ended December 31, 2020 through December 31, 2034, Diversified shall either place into production or plug at least fifty (50) oil and gas wells from the list referenced in Paragraph 5.b of Section IV of this Order, of which no less than twenty (20) of those oil and gas wells shall be plugged no later than December 31 of the applicable year. Should there be a time when the number of wells to be plugged and/or produced as set forth in the list referenced herein is lesser than the

number of wells required to be plugged and/or produced in a given year by this Order, Diversified shall only be required to address those remaining wells during the calendar year in question.

   c. Diversified agrees to voluntarily obtain and maintain and submit to the OOG no later than thirty (30) days after the effective date of this Order, a bond valued at $3,000,000.00 to inure to the benefit of the state of West Virginia in a form acceptable to the OOG and in conformance with the requirements contained in the applicable statutes which bond shall be maintained until such time as the tasks set forth in Paragraph 5.a and 5.b of Section IV of this Order have been completed unless otherwise extended by agreement of the parties as set forth in Paragraph 5.d of Section IV of this Order.

   The bond shall not be subject to the applicable bond forfeiture provisions of the W.Va. Code §§ 22-6-1 and 22-6A-1 *et seq.*, and the applicable accompanying legislative rules, but shall only be subject to forfeiture upon a showing by the OOG that Diversified is in substantial noncompliance with the terms and conditions of this Order. Prior to any attempt to collect or demand forfeiture of the bond, the OOG shall provide notice to Diversified via certified mail thirty (30) days prior to taking any action to forfeit the bond stating the OOG's intent to commence proceedings to forfeit the proceeds of the bond. Said thirty (30) day notice period shall commence upon the signed receipt of the certified mail. Said notice shall further set forth the grounds for the forfeiture of the bond. Diversified reserves the right to challenge any such action by the OOG in a court of competent jurisdiction.

   In the event of a noncompliance with this Order, any demand by the OOG to forfeit/collect the proceeds of the bond shall be limited to the amount necessary to cure the alleged noncompliance. Any monies collected as a result of the partial or complete forfeiture of the bond shall be used by the OOG for the sole purpose of plugging wells identified in the list referenced in Paragraph 5.b of Section IV of this Order.

   d. Upon conclusion of the tasks set forth in Paragraph 5.a and 5.b of Section IV of this Order, the parties agree to evaluate whether further action is necessary or required to address further wells remaining on the list referenced above. This Order may be modified at such time upon agreement of the parties to address such wells.

6. ***Stipulated Penalties.*** If the Operator fails to take any action required by this Order after notification by the OOG in writing, via certified mail to Diversified at the address contained herein, and following a reasonable time frame and opportunity to cure said failure which shall not be less than sixty (60) days, the Operator agrees to pay a stipulated penalty of two hundred and fifty dollars ($250.00) for each day that the action remains incomplete following completion of the time frame set to cure the deficiency upon written demand by the OOG, provided the time frame to cure such deficiency may be modified by agreement of the parties which agreement shall not be unreasonably withheld by the parties. Any such demand is subject to the provisions contained in Paragraph 12 of Section IV of this Order.

Diversified maintains the right to challenge such assessment and request a meeting and reconsideration of this demand with the Secretary of the WVDEP. Said request shall be in writing and mailed certified receipt requested to the Chief no later than thirty (30) days after receipt of such a demand by Diversified.

7. **Credits.** Diversified may abate or commence production at more wells than the number of oil and gas wells specified for a specific year as set forth in Paragraph 5 of Section IV of this Order. If the operator abates or brings into production more wells than required per this Order for a particular year, a credit shall be established and may be applied to the following calendar year. Such assertion of the creation of a credit shall be made in the annual report provided to the OOG and referenced in Paragraph 5 of Section IV of this Order. Provided, that in no calendar year shall Diversified plug less than ten (10) wells.

8. **Reservations of Rights.** Nothing in the Order shall act as a bar to the enforcement of any other legal obligation of Diversified by OOG, except with regard to the matters specifically addressed herein.

9. **Liability of the Operator.** The Operator shall be liable for any violation of this Consent Order, including those caused by, contributed to, or allowed by its officers, directors, agents, employees, and caused or contributed by the negligence of its contractors and sub-contractors; provided, Diversified shall not be liable for acts of gross negligence or recklessness by its contractors and sub-contractors which result in a violation of this Consent Order,

10. **Existing and Ongoing Obligations.** Compliance with the terms and conditions of this Order shall not in any way be construed as relieving the Operator of any obligation to comply with any applicable law, permit, other order unrelated to the plugging and reclamation of wells identified in that certain list set forth in Paragraph 5 of Section IV of this Order, or any other requirement otherwise applicable. Violations of the terms and conditions of this Order may subject the Operator to additional penalties and injunctive relief in accordance with other applicable law.

11. **Decisions Under Consent Order.** Any decision which the OOG makes under the provisions of this Consent Order is not intended to be a final agency action, nor shall it rise to a contest case under Chapter 29A of the West Virginia Code (State Administrative Procedure Act).

12. **Force Majeure.** If any event occurs which causes delay in the achievement of the requirements of this Order, the Operator shall have the burden of proving that the delay was caused by circumstance beyond its reasonable control which could not have been overcome by due diligence (i.e., force majeure). Force majeure shall not include delays caused or contributed to by the lack of sufficient funding. Within three (3) working days after the Operator becomes aware of such a delay, notification shall be provided to the Chief, and the Operator shall within thirty (30) working days after initial notification, submit a detailed written explanation of the anticipated length and cause of the delay, the measures taken and/or to be taken to prevent or minimize the delay, and a timetable by which the Operator intends to implement these measures. If the Chief agrees that the delay has been or will be caused by circumstances beyond the reasonable control of the Operator (i.e., force majeure), the time for performance

hereunder shall be extended for a period of time equal to the delay resulting from such circumstances. A force majeure amendment granted by the Chief shall be considered a binding extension of this Order and of the requirements herein.

Should the Chief deny the force majeure event, Diversified maintains the right to request a meeting and reconsideration of this finding with the Secretary of the WVDEP. Said request shall be in writing and mailed certified receipt requested to the Chief no later than ten (10) days after such denial.

13. **Severability.** The provisions of this Consent Order are severable and should a court or board of competent jurisdiction declare any provision to be invalid or unenforceable, all other provisions shall remain in full force and effect.

14. **Entire Agreement.** This Consent Order shall constitute the entire agreement of the Parties. No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or intent of any provision contained in this document in any litigation or proceeding.

15. **Attorney's Fees.** The Parties shall bear their respective attorney fees, expenses and other costs in the prosecution or defense of this matter or any related matters arising prior to execution of this Consent Order. Following the execution of this Consent Order, any reasonable cost the OOG expends in enforcing the terms of or prosecuting the effect, administration, jurisdiction or other aspects of this Consent Order against the Operator, shall be paid by the Operator upon written demand by the OOG unless the Operator prevails on the merits in a court or judicial quasi-judicial board or entity of competent jurisdiction.

16. **Modifications.** No changes, additions, modifications or amendments of this Order shall be effective unless they are set out in writing and signed by the Parties.

17. **Titles.** A title used at the beginning of any paragraph of this Consent Order may be used to aid in the construction of that Paragraph, but shall not be treated as controlling.

18. **Signatories.** The signatories to this Order assert they have the authority to enter into this Order on behalf of the respective Parties.

19. **Successors.** This Order shall be binding upon the parties, and their successors and assigns.

20. **Sale of Assets.** Nothing in this Order shall be deemed as limiting or prohibiting the sale or transfer of wells, whether identified by Diversified pursuant to the terms of this Order or not, to a qualified party, provided, nothing in this Order shall be construed as waiving any right or duty of the OOG to review any request for the transfer of operator authority of any of wells.

21. **Termination.** This Order shall terminate without prior notice or action upon completion of the requirements contained in Paragraph 5.a and 5.b of Section IV of this Order by Diversified unless otherwise extended as provided for in Paragraph 5.d of Section IV of this Order.

Now, therefore, in accordance with Chapter 22, Article 6, Section 1 *et seq.* of the West Virginia Code, it is hereby AGREED between the Parties, and ORDERED by the Chief.

_____   11/19/18
Diversified Gas & Oil PLC    Date

_____   11/19/18
Core Appalachia Operating, LLC    Date

_____   11/19/18
Alliance Petroleum Corporation    Date

_____   11/19/18
Diversified Resources, Inc.    Date

_____   12/3/18
James A. Martin, Chief    Date
Office of Oil and Gas
West Virginia Department of Environmental Protection