IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

MARK McEVOY, *et al.*,

        Plaintiffs,

v.   Civil Action No. 5:22-cv-00171-JPB
    Judge John P. Bailey

DIVERSIFIED ENERGY COMPANY, PLC, *et al.,*

        Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT ........................................................................................ 1

II. LEGAL STANDARD ...................................................................................................... 2

III. ARGUMENT .................................................................................................................... 2

    A. The pending Motion to Dismiss renders the Second Amended Complaint futile because all grounds for dismissal remain applicable. ................................... 2

    B. The new proposed class of voidable transfer claims is futile because the new named and putative Plaintiffs are not "creditors" of Defendants. .......................... 4

    C. The new statute of limitations allegations are futile because Plaintiffs have not identified any reason their claims could not have been discovered earlier. ..................................................................................................................... 8

IV. CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

Page(s)

*Gibson v. Est. of Danilowicz*,
   2019 WL 637833 (Mich. Ct. App. Feb. 14, 2019) ....................................................................7

*Glick v. Koenig*,
   766 F.2d 265 (7th Cir. 1985) ...................................................................................................3

*Grady v. A.H. Robins Co.*,
   839 F.2d 198 (4th Cir. 1988) ...................................................................................................7

*Int'l Mgmt. Grp., Inc. v. Bryant Bank*,
   274 So. 3d 1003 (Ala. Civ. App. 2018) ...................................................................................9

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) ...................................................................................................2

*Perkins v. United States*,
   55 F.3d 910 (4th Cir. 1995) .....................................................................................................3

*Pettibone Corp. v. Ramirez* (*In re Pettibone Corp.*),
   90 B.R. 918 (Bankr. N.D. Ill. 1988) .....................................................................................7, 8

*Richardson v. Chambless*,
   266 So. 3d 684 (Ala. 2018) ......................................................................................................7

*Steinburg v. Chesterfield Cnty. Planning Comm'n*,
   527 F.3d 377 (4th Cir. 2008) ...................................................................................................2

*Vu v. Ankoanda* (*In re Ankoanda*),
   495 B.R. 599 (Bankr. N.D. Ga. 2013) .....................................................................................5

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) ...................................................................................................2

*Zohar CDO 2003-1 v. Patriarch Partners, LLC* (*In re Zohar III, Corp.*),
   631 B.R. 133 (Bankr. D. Del. 2021) ........................................................................................5

**Statutes**

Ala. Code § 6-2-3 ............................................................................................................................8, 9

Ala. Code § 8-9A-1 ..............................................................................................................................5

Ala. Code § 8-9B-2 ..............................................................................................................................5

W. Va. Code R. § 38-18-10.5 ...................................................................................................9

W. Va. Code § 22-6-19 ............................................................................................1, 2, 5, 6

**Rules**

Fed. R. Civ. P. 15.................................................................................................................2, 3

LR Civ P 12.02 ........................................................................................................................4

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1476 (3d ed.) ....................................................................................................................3, 4

I.     **SUMMARY OF ARGUMENT**

The Court should deny Plaintiffs' Motion for Leave to File Second Amended Complaint (the "Motion to Amend") because: (1) the proposed allegations fail to cure the legal defects in the First Amended Complaint, subjecting the claims to the same bases for dismissal that have already been fully briefed, and (2) settled legal principles conclusively bar the newly-asserted allegations as a matter of law, rendering the proposed amendments futile. The overarching legal problem remains that the West Virginia Department of Environmental Protection's Office of Oil & Gas—the administrative agency with exclusive authority to oversee the plugging of natural gas wells in this state—entered a consent decree that cannot be reconciled with the claims that Plaintiffs seek to bring. As set out in Defendants' Motion to Dismiss, Plaintiffs do not have a private right of action under West Virginia Code Section 22-6-19, which Defendants have not violated as a matter of law, and Plaintiffs' tort claims constitute an improper collateral attack on West Virginia DEP's consent order. As such, filing of the Second Amended Complaint is futile, and the Court should grant the pending Motion to Dismiss (ECF No. 44) and deny the Motion to Amend (ECF No. 84) as moot.

If anything, the proposed Second Amended Complaint underscores that this lawsuit should be dismissed. Plaintiffs' Second Amended Complaint proposes to add a new voidable transfer class "consisting of ***all persons or entities that own property in West Virginia*** on which Diversified owns a well, ***regardless of whether the wells are currently abandoned or non-producing***." ECF No. 85-1, ¶ 592(a) (emphases added). This newly proposed class, which Plaintiffs estimate consists of "at least 20,000 members," *id.* ¶ 595 (a tenfold increase from the 2,000-person class proposed in the First Amended Complaint), does not even purport to have any existing claim (tort, contract, statutory, or otherwise) against Defendants. As a result, Plaintiffs in the new voidable transfer class—which makes up over 90 percent of the total Plaintiffs—have no

1

right to payment from Diversified and, therefore, no claim; they are not "creditors" and have no standing to bring claims for fraudulent or voidable transfer. Their claims fail as a matter of law.

## II. LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint with leave of court. Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile[.]" *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). A motion to amend should be denied on futility grounds when "the proposed amended complaint fails to satisfy the requirements of the federal rules," such as failing to "properly state a claim under Rule 12(b)(6)." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

## III. ARGUMENT

### A. The pending Motion to Dismiss renders the Second Amended Complaint futile because all grounds for dismissal remain applicable.

The Second Amended Complaint does not seek to cure, and thus does not impact, the legal deficiencies identified in the pending Motion to Dismiss. Specifically, the Second Amended Complaint does not relate to the consent decree issued by Office of Oil & Gas or bring new common law claims. *See* ECF No. 85-1, ¶¶ 604–22. Plaintiffs have not proposed any new facts as to their alleged tort claims, and instead stand on their theory that West Virginia Code Section 22-6-19 creates a common law claim if wells presumed abandoned are not promptly plugged. *See id.* But, as with the First Amended Complaint, Plaintiffs do not address and cannot avoid that the Office of Oil & Gas entered a Consent Decree finding the "bona fide future use" exception of that statute satisfied and expressly allowing Diversified to plug the wells on a set schedule in the future.

2

In short, when it comes to the facts showing that Plaintiffs' claims fail as a matter of law, nothing has changed.  *See generally* ECF No. 44.

Because it does not alter the relevant aspects of Plaintiffs' claims in any substantive way, the claims in the Second Amended Complaint are subject to precisely the same the legal bars raised in the Motion to Dismiss.[1]  Plaintiffs concede this point, stipulating that "[t]he issues raised in th[e] [Defendants'] Motion [to Dismiss] . . . are each still relevant to the Second Amended Complaint," "[t]he Second Amended Complaint does not alter the causes of action or the scope of the challenged transactions," "[t]he causes of action related to property claims also remain unaffected," and "[f]or purposes of [the common law claims in] Counts One through Three, therefore, the only changes are to the number of named Plaintiffs and certain corrections to style, grammar, and punctuation."  ECF No. 85 at 3, 6.  The claims in the Second Amended Complaint are therefore futile for the same reasons that the claims in the First Amended Complaint should be dismissed.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (holding that an amendment is futile when it "could not withstand a motion to dismiss"); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed.) ("If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."); *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir. 1985) ("[T]he liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures.").

---

[1] That is, these claims (1) improperly rely on a statutory duty that has not been breached as a matter of law; (2) constitute an improper collateral attack on the consent order issued by the West Virginia Department of Environment Protection's Office of Oil and Gas; and (3) are barred by the statute of limitations.  The Motion to Dismiss details each of these grounds. *See* ECF No. 44 at 8–22.

For this same reason, the Motion to Dismiss is not moot and does not need to be refiled. Wright & Miller, *supra*, § 1476 ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. . . . To hold otherwise would be to exalt form over substance."). Avoiding the delay associated with requiring Defendants to refile the Motion to Dismiss would also be consistent with Local Rule 12.02, which states that "[m]otions to dismiss shall be given priority status by the Court . . . ." LR Civ P 12.02. Accordingly, so as not to delay resolution of the Motion to Dismiss or waste resources refiling it, the Motion to Amend should be: (1) denied prior to the ruling on the Motion to Dismiss, or alternatively, (2) carried with the Motion to Dismiss, and then denied as moot on the grounds of futility.

      **B.**      **The new proposed class of voidable transfer claims is futile because the new named and putative Plaintiffs are not "creditors" of Defendants.**

What is new in the Second Amended Complaint is the proposed addition of new Plaintiffs under AFTA and AUTA, but that is also futile. Plaintiffs propose a new class consisting of all owners of property where Diversified operates a well, "*regardless of whether the wells are currently abandoned or non-producing*," and seek to join several new Plaintiffs whose wells are concededly producing natural gas.[2] *See* ECF No. 85-1, ¶ 592(a) (emphasis added). Recognizing the fact that no obligation exists to plug *producing* wells, these Plaintiffs do not assert causes of action for trespass, negligence, or nuisance, or any other claim based on alleged failure to plug the wells. Instead, Plaintiffs claim these individuals are "creditors" under AFTA and AUTA because their wells *might someday* be abandoned and need to be plugged at an unspecified point in the

---

[2] Based on the allegations in the Second Amended Complaint, the newly joined Plaintiffs who fit in this category of owners with producing wells appear to include Benjamin Patterson; the Clifton & Candace Drainer Irrevocable Trust; Eben Fritts & Eben Fritts, III; Joan Medley; Scott Corcoran; and Christine Cochran. *See* ECF No. 85-1 at pp. 36, 39-40, 42, 55-56, 59-60, 63.

4

future. Thus, as a threshold matter, these claims fail on Article III ripeness grounds; federal courts are not in the business of resolving hypothetical claims based on hypothetical conduct that may be decades away. *Zohar CDO 2003-1 v. Patriarch Partners, LLC* (*In re Zohar III, Corp.*), 631 B.R. 133, 197 (Bankr. D. Del. 2021) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (citation omitted)); *Vu v. Ankoanda* (*In re Ankoanda*), 495 B.R. 599, 606 (Bankr. N.D. Ga. 2013) ("A 'substantial controversy which is definite and concrete' must exist for a court to consider the claim." (citation omitted)).

Equally important, Plaintiffs' claims fail as a matter of law under the text of AFTA and AUTA because these new Plaintiffs are not "creditors" of Defendants because they have no claim. Under both the AFTA and the AUTA, "creditor" means "a person who has a claim." Ala. Code § 8-9A-1(4); *see also* Ala. Code § 8-9B-2(4). A "claim" is defined in pertinent part as a "***right to payment***, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and specifically shall include the nonpayment of child support pursuant to a court order." Ala. Code § 8-9A-1(3) (emphasis added); Ala. Code § 8-9B-2(3) (emphasis added). In other words, if Plaintiffs do not have a "right to payment" from Defendants, they are not creditors, and cannot bring fraudulent or voidable transfer claims.

Plaintiffs are not "creditors" under this statutory scheme. Plaintiffs have not identified any law giving ***them*** a right to ***payment***. That is because the statute cited by Plaintiffs (West Virginia Code § 22-6-19) gives a right of ***specific performance*** (*i.e.*, plugging the wells) to ***the state*** (as opposed to Plaintiffs). That is evident from the plain text of the statute, which is under Article 6 on Office of Oil and Gas enforcement and states: "[a]ny well which is completed as a dry hole or

5

which is not in use for a period of twelve consecutive months shall be presumed to have been abandoned and shall *promptly be plugged by the operator*" unless the Office of Oil & Gas finds sufficient evidence of "a bona fide future use."  W. Va. Code § 22-6-19 (emphasis added).  The requirement is to plug the well, which is a duty of specific performance, not a right to payment.  Nowhere is an obligation for the operator to make a payment to anyone mentioned in the statute's text (outside of obligations to post a bond *to the state*).  Nor do Plaintiffs cite any West Virginia cases interpreting this statute as creating a right to payment, let alone creating a right to payment in favor of a surface owner.  Instead, the costs of incurring this obligation are borne by the operator at that time the Office of Oil & Gas requires the plugging.  Plaintiffs and the putative class members thus have not borne plugging costs under this statute and *will never do so*.  As such, even in the hypothetical world in which these producing wells are abandoned by these particular Defendants while the surface estate is still owned by these particular Plaintiffs, there are no circumstances in which members of the putative class have a "right to payment" for the plugging obligations.  As such, they do not have a "claim" and cannot be "creditors" under AFTA or AUTA.[3]  Tellingly, Plaintiffs do not cite a single court anywhere that adopts or supports the expansive definition of "creditor" asserted by Plaintiffs.

Independently, the lack of any existing obligation of payment is fatal to the proposed fraudulent transfer claims.  To the extent any obligation exists under Section 22-6-19, it only arises *if and when* the time comes that the well has not produced for a year *and has no bona fide future use*.  If and when these wells stop producing and whether or not they will have an alternative use remain a matter of speculation.  Defendants do not and may never have an obligation to plug them

---

[3] Additionally, as set forth in the Reply in Support of the Motion to Dismiss, there is no private right of action under the statute in favor of any individual. *See* ECF No. 74 at 14.

6

(for example, they could be transferred or repurposed). Plaintiffs may not be the owners if and when the day ever comes that the wells do not produce for one year and have no bona fide future use. Even if that day comes, there is no non-speculative basis to allege that Diversified would violate any statutes or fail to plug the wells. Because Plaintiffs do not have any underlying claim, they cannot be creditors under AFTA or AUTA. *See Richardson v. Chambless*, 266 So. 3d 684, 688–90 (Ala. 2018) (holding that if plaintiff's tort claims are held to be without merit, he would "no longer have 'right to payment,'" "will no longer be a creditor," and "will cease to have a viable fraudulent-transfer claim"); *Gibson v. Est. of Danilowicz*, 2019 WL 637833, at *3 (Mich. Ct. App. Feb. 14, 2019) (rejecting a motion to amend a complaint to add a fraudulent transfer claim in the absence of an underlying claim).

Plaintiffs attempt to avoid this by relying on the part of the definition of "claim" including a "right to payment" that is "contingent" or "unmatured," *see* ECF No. 74 at 14, but that does not change the analysis. In *Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988), a case relied upon by Plaintiffs in their Opposition to Diversified's Motion to Dismiss in interpreting the term "contingent,"[4] the Fourth Circuit held that a contingent claim arises "when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition," even if there is "no right to the immediate payment of money." 839 F.2d at 203. Courts interpreting *Grady* have similarly held that a claim is "contingent" only if "all acts constituting the tort including impact on the victim had occurred prior to the . . . petition," and "[a]t the time of the petition, the plaintiff's right to payment depended solely on manifestation, a contingent event." *Pettibone Corp. v. Ramirez* (*In re Pettibone Corp.*), 90 B.R. 918, 928 (Bankr. N.D. Ill. 1988) (citations omitted).[5]

---

[4] ECF No. 66 at 19–20.

[5] "[T]he products injury (or at least impact giving rise to future injury) had occurred pre-bankruptcy, with manifestation the sole event occurring post-petition." *In re Pettibone Corp.*, 90 B.R. at 930–31. "To say

7

Even assuming Plaintiffs' common law theory of liability were valid (it is not), "all acts constituting the tort" (*i.e.*, cessation of production for a year and no finding of a potential bona fide future use) have not yet occurred because these wells are still producing.  As such, even under the caselaw they cite, Plaintiffs do not hold "contingent" or "unmatured" claims as a matter of law.

The contrary result would be absurd.  Plaintiffs' expansive definition of "contingent" or "unmatured" would stretch the definition of "creditors" to include everyone.  If any tort that ***could*** be committed in the future is "contingent" for purposes of the statute, then everyone would be a creditor of everyone else because they ***could*** commit a tort against that person or company in the future.  In other words, if what is "contingent" for a "contingent" tort claim to constitute a claim is the commission of the tort itself, this would render the definition of "creditors" unlimited and, therefore, superfluous.  Because "creditors" must mean what its definition states, then Plaintiffs are not creditors and their proposed amendment is futile.

      **C.**      **The new statute of limitations allegations are futile because Plaintiffs have not identified any reason their claims could not have been discovered earlier.**

In addition to proposing a new class, Plaintiffs seek to plead an exception to the applicable statute of limitations.  Although Plaintiffs characterize the exception they invoke as the "discovery rule," the statute they cite is about deferring the accrual of a claim based on "fraud."  ECF No. 85 at 9 (citing Ala. Code § 6-2-3).  The Court does not need to reach this issue if it dismisses Plaintiffs' common law claims because Plaintiffs would not have standing as "creditors" in the absence of these pleaded claims.  *See supra* § III.B.  Regardless, the new allegations related to the statute of limitations are futile and should be rejected.

---

[Plaintiffs] had an unmatured pre-bankruptcy claim under the facts admitted here would be to adopt the perspective of the character in Alice in Wonderland who opined that words meant what he intended them to mean. The policy of relief to debtors and business reorganization cannot distort the broad but not unlimited Congressional definition of 'claim.'" *Id.* at 932.

8

Plaintiffs' claims in the First and Second Amended Complaints are based entirely on Defendants' public conduct and therefore cannot fall within any exception to limitations based on facts being concealed. "[A] party seeking to invoke § 6-2-3 must '(1) aver with precision the facts and circumstances which allegedly were not discovered and to which plaintiff allegedly was defrauded, (2) aver how or when these facts were discovered, (3) aver what prevented these facts from being discovered before the bar of the statute became complete and (4) aver facts acquitting the plaintiff of all knowledge of facts which ought to have put it on inquiry." *Int'l Mgmt. Grp., Inc. v. Bryant Bank*, 274 So. 3d 1003, 1014 (Ala. Civ. App. 2018) (internal alterations removed) (citation omitted). Plaintiffs' Second Amended Complaint does not "aver with precision the facts and circumstances . . . to which plaintiff allegedly was defrauded," "what prevented these facts from being discovered," or "facts acquitting the plaintiff of all knowledge of facts which ought to have put it on inquiry." *See id.* Even if Alabama Code Section 6-2-3 were applicable in this case (it is not), Plaintiffs have failed to properly invoke it.

On the contrary, the transfers about which Plaintiffs complain both were highly public and reported to federal and state regulators. Even Plaintiffs themselves allege that "EQT Corporation's Form 10-Q filing with the United States Securities and Exchange Commission for the Quarterly Period Ending September 30, 2018, ***reflects the high level of detail that EQT had about the transaction at issue***." ECF No. 85-1, ¶ 94 (emphasis added). Plaintiffs cite a public article from 2020 complaining that the transaction "*relieves EQT of approximately $47 million in asset retirement obligations and other liabilities associated with the assets*." *Id.* ¶ 95. Plaintiffs also do not deny that they knew their operators changed from EQT to Diversified, with permission from the Office of Oil & Gas, when these transfers took place.[6] Plaintiffs cannot show that Defendants

---

6     *See* W. Va. Code R. § 38-18-10.5 (1996) (effective date July 1, 1993) (Transfer Procedures).

9

concealed facts sufficient to give rise to put Plaintiffs at least on inquiry notice of claims based on these same transfers.

Plaintiffs hang their hat on the Boettner Report,[7] which they claim revealed for the first time that Plaintiffs had a cause of action. ECF No. 85-1, ¶¶ 98–103. But Plaintiffs fail to cite any portion of the Boettner Report based on non-public information, let alone explain how Defendants prevented Plaintiffs from discovering whatever unspecified information the Boettner Report supposedly revealed. Nowhere does the Boettner Report accuse Defendants of fraud or purport to show Defendants' filings with the SEC were fraudulent. Plaintiffs therefore fail to aver any facts that they could not have performed the same analysis as the Boettner Report and reached the same conclusions. The exception to the statute of limitations cited by Plaintiffs does not apply as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, and those set forth in the pending Motion to Dismiss, the Court should deny Plaintiffs' Motion for Leave to File Second Amended Complaint.

---

[7] What Plaintiffs refer to as the "Boettner Report" is an online paper by a Pennsylvania-based organization founded in 2020 that purports to show, based entirely on public information, that "P&A costs will be higher than the revenue generated by Diversified's current well inventory by 2056." *See* Boettner Report at 7 & 42–49 (endnotes section reflecting public sources); *see also* ECF No. 4, ¶ 8 n.2 (purporting to incorporate a link with the "Boettner Report" into the First Amended Complaint as Exhibit A, although no such exhibit was apparently filed). Contrary to what the Motion to Amend suggests, the word "fraud" does not appear in the "Boettner Report." Notably, even the "Boettner Report" acknowledges that "[t]he plugging consent orders give the company a variance against state laws for agreeing to a set term of conditions with each state." Boettner Report at 25 (further noting that "[e]ach of the [consent] agreements includes a set number of wells covered, a bonding amount for the wells, reporting, and compliance stipulations . . . .").

| | |
|---|---|
| Respectfully submitted: | Dated: November 29, 2022 |

 /s/ Howard M. Persinger, III
Howard Persinger, III
**PERSINGER & PERSINGER, L.C.**
237 Capitol Street
Charleston, WV 25301
Phone: (304) 346-9333
Fax: (304) 346-9337
Email: hmp3@persingerlaw.com

Daniel Donovan, P.C. (admitted *pro hac vice*)
Ragan Naresh, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 389-5267
Fax: (202) 389-5200
Email: daniel.donovan@kirkland.com
ragan.naresh@kirkland.com

Kenneth Young (admitted *pro hac vice*)
Dustin Womack (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone: (713) 836-3600
Fax: (713) 836-3601
Email: kenneth.young@kirkland.com
dustin.womack@kirkland.com

*Counsel for Defendants Diversified Energy Company PLC, Diversified Gas & Oil, PLC, Diversified Production LLC, Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC, and Alliance Petroleum Corporation*

 /s/ Jennifer J. Hicks
Jennifer J. Hicks, Esquire (WVSB #11423)
Tiffany M. Arbaugh, Esquire (WVSB #9982)
**BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.**
300 Summers Street, Suite 1000
Charleston, WV 25301
Phone: (681) 205-8888
Fax: (681) 205-8814
Email: jhicks@babstcalland.com
tarbaugh@babstcalland.com

Mark K. Dausch, Esquire (WVSB #11655)
**BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.**
603 Stanwix Street
Pittsburgh, PA 15222
Phone: (412) 394-5655
Fax: (412) 394-6579
Email: mdausch@babst.calland.com

Anna Rotman, P.C. (*pro hac vice*)
Nick Brown (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone: (713) 836-3600
Fax: (713) 836-3601
Email: anna.rotman@kirkland.com
nick.brown@kirkland.com

*Counsel for Defendants EQT Production Company, EQT Production HTW, LLC, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC, EQM Midstream Partners LP, EQT Midstream Partners LP, EQT GP Holdings, LP, and EQT Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 29, 2022 a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

                                            */s/ Howard M. Persinger, III*
                                            Howard M. Persinger, III