**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

| | |
|---|---|
| MARK MCEVOY, *et al.*, <br>                     Plaintiffs, <br><br> v. <br><br> DIVERSIFIED ENERGY COMPANY PLC, <br> *et al.*, <br>                     Defendants. | Civil Action No. 5:22-cv-00171-JPB <br> Judge John P. Bailey |

**EQT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL
RELATED TO BRIAN SWIGER**

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I. Summary of Argument ........................................................................................ 1

II. Procedural History ........................................................................................... 3

III. Key Facts ........................................................................................................ 4

  A. Swiger represented EQT in cases involving well abandonment issues, including two which involved wells at issue in this case........................................ 4

  B. Swiger defended EQT in cases asserting trespass. .................................. 7

  C. Plaintiffs' counsel refuse to screen Swiger over EQT's objections....................... 8

IV. Legal Standards Governing Disqualification................................................ 9

  A. Failure to abide by RPC 1.9 requires disqualification. ......................... 10

  B. An appearance of impropriety alone requires disqualification. .......................... 11

  C. No distinction exists between Plaintiffs' counsel for purposes of disqualification................................................................................ 12

V. Arguments for Disqualification ...................................................................... 14

  A. Under RPC 1.9, Swiger must be disqualified because this matter is substantially related to those he worked on for EQT............................................ 14

    1. Swiger's work on the *Bounty Minerals* cases is substantially related to this case because both deal with the same wells in the same region and relate to the issues surrounding abandonment. ................................. 14

    2. Independently, Swiger's work on the *Eddy* case is substantially related to this case because both deal with the abandonment of flat-rate leases. ................................................................................ 16

    3. Independently, Swiger's work on the *Crowder* and *Waco Oil* cases is substantially related to this case because both deal with trespass claims and trespass damages**.**................................................................. 18

  B. Alternatively, Plaintiffs' counsel must be disqualified for creating the appearance of impropriety. ......................................................... 19

  C. Under RPC 1.10, Bailey Glasser and Appalachian Mountain Advocates must be disqualified because of Swiger's imputed conflict of interest. .............. 22

VI. Prayer ............................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*State ex rel. Bluestone Coal Corp. v. Mazzone*,
  226 W. Va. 148 (2010) ...........................................................................................11, 15

*Bruen v. Columbia Gas Transmission Corporation*,
  188 W. Va. 730 (1992) ...........................................................................................17, 19

*Burgess-Lester v. Ford Motor Co.*,
  643 F. Supp. 2d 811 (N.D.W. Va. 2008) ........................................................ *passim*

*C&J Spec-Rent Servs., Inc. et al. v. EQT Prod. Co.*,
  No. 1:17-cv-00215 (N.D.W. Va. Dec. 14, 2017) ....................................................19

*Columbia Gas Transmission, LLC v. 466.19 Acres of Land, More or Less, in Cabell, Jackson, Mason, Putnam, Roane & Wirt Counties, W. Va. et al.*,
  No. 2:18-cv-00044 (S.D.W. Va. Jan. 12, 2018)......................................................19

*Columbia Gas Transmission, LLC v. 93.48 Acres of Land, More or Less, in Cabell, Jackson, Putnam & Wirt Counties, W. Va. et al.*,
  No. 2:18-cv-00042 (S.D.W. Va. Jan. 12, 2018)......................................................19

*Crowder v. EQT Prod. Co.*,
  No. 14-C-64, 2014 WL 12753700 (W. Va.Cir.Ct. Nov. 26, 2014) ....................7, 18

*Crowder v. EQT Prod. Co.*,
  No. 14-C-64, 2016 WL 10490081 (W. Va.Cir.Ct. Feb. 19, 2016) ...........................7

*CSX Transp., Inc. v. Gilkison*,
  No. 5:05CV202, 2006 WL 3203419 (N.D.W. Va. Nov. 3, 2006) ...........................11

*David Eddy et. al., v. EQT Prod. Co.*,
  No. 17-C-78 (W. Va. Cir. Ct.) ................................................................6, 7, 16, 17

*HealthNet, Inc. v. Health Net, Inc.*,
  289 F. Supp. 2d 755 (S.D.W. Va. 2003) ........................................................ *passim*

*State ex rel. Keenan v. Hatcher*,
  210 W. Va. 307 (2001) ...........................................................................................10

*Margot Beth Crowder, et al. v. EQT Production Company* ...........................................7

*State ex rel. McClanahan v. Hamilton*,
  189 W. Va. 290, 430 S.E.2d 569 (1993)................................................................11

*State ex rel. Ogden Newspapers, Inc. v. Wilkes*,
  198 W. Va. 587 (1996) ....................................................................................16

*PNGI Charles Town Gaming, LLC v. Hot Spot Ct Real Est., LLC*,
  No. 3:18-CV-38, 2018 WL 10604737 (N.D.W. Va. Aug. 13, 2018) .....................................12

*Richards v. Jain*,
  168 F. Supp. 2d 1195 (W.D. Wash. 2001)..................................................................12

*Roberts & Schaefer Co. v. San-Con, Inc.*,
  898 F. Supp. 356 (S.D.W. Va. 1995).......................................................................12

*Sunbeam Products, Inc. v. Hamilton Beach Brands, Inc.*,
  727 F. Supp. 2d 469 (E.D. Va. 2010) .....................................................................14

*Trenton Energy, LLC v. EQT Prod. Co.*,
  No. 11-01932 (4th Cir. Sept. 02, 2011) ...............................................................5, 19

*Trenton Energy, LLC v. EQT Prod. Co.*,
  No. 2:10-cv-00699 (S.D.W. Va. Apr. 30, 2010)...........................................................19

*Waco Oil & Gas Co., Inc. v. EQT Prod. Co.*,
  No. 5:18-cv-00141 (N.D.W. Va. Aug. 22, 2018) ........................................................8, 18

*Weshler v. Rosensweig*,
  No. B287099, 2019 WL 5617794 (Cal. Ct. App. Oct. 31, 2019) ..........................................14

**Statutes**

West Virginia Code § 22-6-19 .......................................................................3, 5, 15

West Virginia Code § 36-4-9a .......................................................................5, 6, 17

**Rules**

W. Va. RPC 1.0...................................................................................13, 22

W. Va. RPC 1.9.................................................................................. *passim*

W. Va. RPC 1.10................................................................................. *passim*

W. Va. RPC 1.7...................................................................................12, 22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

| | |
|---|---|
| MARK MCEVOY, *et al.*,<br>　　　　　　　Plaintiffs,<br><br>v.<br><br>DIVERSIFIED ENERGY COMPANY PLC,<br>*et al.*,<br>　　　　　　　Defendants. | Civil Action No. 5:22-cv-00171-JPB<br>Judge John P. Bailey |

**EQT'S[1] MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**
**RELATED TO BRIAN SWIGER**

## I.  Summary of Argument

Plaintiffs' counsel should be disqualified. One of the attorneys they enlisted, Brian Swiger, represented EQT in at least thirteen cases over a decade. In fact, Swiger was *lead attorney* for EQT in two cases *in the Northern District of West Virginia* over whether wells *at issue in this lawsuit* were *abandoned under the same statute cited by Plaintiffs here.* Swiger obtained confidential information on the same subjects and issues present in this case, including well production and abandonment matters, EQT's operations in West Virginia, and EQT's strategies to defend cases asserting trespass based on allegations of nonproduction. Swiger's attempt in this case to pursue substantially related claims against EQT, his former client, creates both a conflict of interest under the West Virginia Rules of Professional Conduct ("RPC") and an appearance of impropriety which Plaintiffs' counsel have made no effort to overcome. Despite his longstanding relationship with EQT and work on similar cases, Plaintiffs' counsel refuse to screen Swiger even to this day.

---

[1]　"EQT" refers to the defendants affiliated with EQT in this matter, which includes EQT Production Company, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC, and EQT Corporation. EQT Production HTW, LLC has also been named as a defendant but no longer exists.

That alone would be disqualifying under RPCs 1.9 and 1.10, but there is more. Plaintiffs' counsel has all but admitted that Swiger communicated with them about his prior work for EQT. EQT sent Plaintiffs a targeted discovery request for the specific documents and communications "that reference Brian Swiger's employment by EQT, work he performed on behalf of EQT, and/or knowledge he obtained from EQT prior to this action." Ex. 2 at 8. The only permissible response was "none," because anything Swiger learned working for EQT is confidential and cannot be referenced with anyone, least of all Plaintiffs. But "none" was not Plaintiffs' answer. Instead, Plaintiffs' counsel objected on the grounds of privilege, and when EQT requested a privilege log, Plaintiffs' counsel refused to produce one because it would take "many hours of attorney and staff time to assemble the requested documents." *Id*. at 9. The only reason it would take "many hours of attorney and staff time to assemble" these documents is that they are voluminous.

Disqualification is the only remedy to the conflict of interest created by Plaintiffs' counsel. Their continued representation of Plaintiffs against EQT violates RPC 1.9 and RPC 1.10. Independently, Plaintiffs' counsel's choice to enlist Swiger to sue EQT, when he has a plethora of EQT's confidential information on the subjects at issue, creates an appearance of impropriety, especially given the admission in discovery that Swiger has referenced his past work for EQT in communications with Plaintiffs' counsel. Since Plaintiffs have worked with Swiger on this case for months, there is no distinction between Swiger and the other attorneys at his firm (Bailey Glasser) or the other counsel that have associated with and relied on Swiger over EQT's objections (Appalachian Mountain Advocates). Neither firm even *tried* to stop Swiger's conflict from spreading; they instead unapologetically refused to screen him or take any measures to prevent the use or disclosure of confidential information, even inadvertently. Plaintiffs' counsel created this conflict, and having made that choice, they must bear the burden. Disqualification is required.

## II. Procedural History

This suit arises out of Plaintiffs' theory that wells on their property have been abandoned and must be plugged because they allegedly have not produced oil or gas for at least a year.[2] Plaintiffs are landowners in West Virginia whose property has wells owned and operated by Diversified. ECF 96, ¶¶ 12–13. Plaintiffs claim that Diversified has committed the torts of trespass, nuisance, and negligence in failing to plug these allegedly abandoned wells. *Id.*, ¶¶ 16, 604–22.

The claim that Diversified abandoned wells on their property is also the basis of Plaintiffs' alleged standing to bring fraudulent transfer claims against EQT.[3] Plaintiffs claim that they are creditors of Diversified—and therefore can bring fraudulent transfer claims against EQT for selling wells to Diversified—because Diversified has an obligation to "plug and remediate" their wells. *Id.*, ¶¶ 13, 624, 637. The supposed origin of this duty is West Virginia Code § 22-6-19, which Plaintiffs allege requires certain wells to be plugged if they do not produce for one year. *Id.*, ¶¶ 77–78. Plaintiffs contend that EQT engaged in actual and constructive fraudulent transfers by selling approximately 12,000 wells to Diversified in 2018 and 2020. *Id.*, ¶¶ 5–15. Plaintiffs argue that Diversified overpaid EQT because the wells were low producing wells whose value was overshadowed by the cost of plugging them. *Id.*, ¶ 6. Plaintiffs' theory is that the wells sold by EQT to Diversified were "abandoned and/or only marginally productive," and that transferring them to Diversified helped create an "empire of dying wells" that was "built to fail." *Id.*, ¶¶ 6–8. Plaintiffs' thereby claim that, to the extent Diversified is unable to pay the damages allegedly owed to Plaintiffs, those damages are owed by EQT. *See, e.g.*, *id.*, ¶¶ 633, 639.

---

[2]   *E.g.*, *id.*, ¶¶ 120, 143, 167, 190, 213, 236, 258, 287, 311, 316-17, 340-41, 366, 387, 408-09, 427, 446-47, 472-75, 502, 524, 535, 539, 555, 576, 585.

[3]   For the sake of brevity, EQT refers to the fraudulent and voidable transfer claims (the fourth and fifth causes of action in the Complaint, *see* ECF 96, ¶¶ 623, 635 *et seq.*) simply as the "fraudulent transfer claims." There is no distinction between the fraudulent transfer and voidable transfer claims for purposes of this motion.

Plaintiffs also request that the Court certify two classes. The proposed "Common Law Class" covers landowners in West Virginia purporting to have abandoned wells on their property that are currently owned by Diversified, including those sold to Diversified by EQT.[4] *Id.*, ¶ 592(b). Plaintiffs contend the proposed Common Law Class includes at least 2,000 persons. *Id.*, ¶ 595. To the extent Diversified is unable to pay damages awarded to the Common Law Class, Plaintiffs seek recovery on these claims from EQT. ECF 96, ¶¶ 633, 639; Ex. 3 at 4 (Supplemental Disclosures). The second "Voidable Transfer Class" includes everyone "that own[s] property in West Virginia on which Diversified owns a well, regardless of whether the wells are currently abandoned or non-producing." ECF 96, ¶ 592(a); ECF 93 at 3–4 ("[T]heir status [as proposed class members] depends only upon the fact an oil and gas operator drilled a well on their property."). Plaintiffs contend this class consists of at least 20,000 people. ECF 96, ¶ 595. The basis for bringing these claims against EQT is that EQT owned some of these wells before selling them to Diversified. *See id.*, ¶ 17 (seeking to unwind the sale).

## III.   Key Facts

### A.   Swiger represented EQT in cases involving well abandonment issues, including two in this venue which involved wells at issue in this case.

Swiger was the *lead attorney* for EQT in a pair of cases in the Northern District of West Virginia that turned on the question of whether several of the same wells in this case had been abandoned. *See* Ex. 4 at 2 (Bounty Minerals I Engagement Letter); Ex. 5 at 2 (Bounty Minerals II

---

[4]   Specifically, those landowners who have "at least one well that (1) is not producing and/or has not produced oil or gas for 12 consecutive months, (2) is currently owned or operated by Diversified, and (3) has not been plugged or properly decommissioned," including those with wells sold by EQT to Diversified.

Engagement Letter).[5] In the cases *Bounty Minerals, LLC v. EQT Production Co.*,[6] the plaintiffs sought release from a pair of leases owned by EQT.  Ex. 6, ¶ 23 (Bounty Minerals I 1st Amended Complaint); Ex. 7, ¶ 20 (Bounty Minerals II 1st Amended Complaint). The plaintiffs argued that the original leases each included language that they would last "as long . . . as oil or gas, or either of them, is produced." Ex. 6, ¶ 11; Ex. 7, ¶ 11. Because neither well had produced oil or gas since 2009, the plaintiffs claimed that the leases were abandoned and therefore terminated in 2009. Ex. 6, ¶¶ 16–20; Ex. 7, ¶¶ 15–17. The plaintiffs in that case, like Plaintiffs in this one, cited West Virginia Code § 22-6-19 for the proposition that the wells had been abandoned by not producing for one year. Ex. 8 at 3 n.2 (Bounty Minerals I Motion to Dismiss Reply); Ex. 9 at 3 n.3 (Bounty Minerals II Motion to Dismiss Reply); ECF 96, ¶¶ 77–78, 597(c), 618.

Swiger led EQT's defense. Ex. 4 at 2; Ex. 5 at 2. His work included preparing EQT's answer and a motion to dismiss addressing the plaintiffs' allegations that abandonment had occurred. *See* Ex. 8; Ex. 9. Swiger relied on information he learned from EQT to rebut the Plaintiffs' arguments and deny any allegation that the leases were terminated or abandoned. *See* Ex. 8; Ex. 9. In EQT's motions to dismiss, Swiger argued that the two wells in dispute had not been abandoned or terminated and that West Virginia Code § 36-4-9a made abandonment a rebuttable presumption where the leases have a flat-rate royalty provision. Ex. 8 at 1–5; Ex. 9 at 1–5. Swiger also refuted the argument that the wells were abandoned under West Virginia Code § 22-6-19 (again, the very same section of the code cited as the basis of Plaintiffs' abandonment allegations in this case). Ex. 8 at 3 n.2; Ex. 9 at 3 n.3.

---

[5]   At the time, Swiger was part of Jackson Kelly, PLLC. Swiger left Jackson Kelly, PLLC to join Bailey Glasser in or around May 2019.

[6]   *Bounty Minerals, LLC v. EQT Prod. Co.* (Bounty Minerals II), No. 1:17-cv-00220 (N.D.W. Va. Dec. 18, 2017); *Bounty Minerals, LLC v. EQT Prod. Co.* (Bounty Minerals I), No. 1:17-cv-00219 (N.D.W. Va. Dec. 18, 2017).

The wells at issue in the *Bounty Minerals* cases were among those sold to Diversified by EQT,[7] meaning that they were included in the transactions challenged by Plaintiffs in this case as purportedly fraudulent and are therefore at issue with respect to Plaintiffs' claims against EQT. ECF 96, ¶¶ 5–15. By extension, their surface owners are members of the putative Voidable Transfer Class against EQT. *Id*., ¶¶ 592(a). Likewise, this case, like *Bounty Minerals*, concerns leases with flat-rate royalty provisions, as at least four of the named plaintiffs have flat-rate leases. *See* Ex. 1 (relevant excerpts of Plaintiffs' leases reflecting that McEvoy, Stark, Dennison, and DelRosso each have at least one lease that has a flat-rate royalty provision).

Swiger also led EQT's defense in another West Virginia case involving allegations of well abandonment and flat-rate leases. Ex. 11 at 2 (Eddy Engagement Letter). In *David Eddy et. al. v. EQT Prod. Co.*,[8] the plaintiffs argued that their well, which EQT operated, was abandoned because oil and gas production had stopped in 2009 and the West Virginia Department of Environmental Protection classified it as abandoned. Ex. 12 at 2–3 (Eddy Motion to Dismiss). The plaintiffs sought declarations that the well was abandoned, and the lease was "no longer held by production." *Id.* at 2.

In response, Swiger and his team filed a motion to dismiss arguing that the well was not abandoned because—like the leases of Plaintiffs McEvoy, Stark, Dennison, and DelRosso here—the lease had a flat-rate royalty provision. *See id.* at 2–6. He argued that case law demonstrated that production was irrelevant to whether a lease with a flat-rate is terminated, and that there is a rebuttable presumption against abandonment under West Virginia Code § 36-4-9a. *Id.* at 4.

---

[7]   The leases API Nos. 47-061-00397 and 47-061-00396 are listed in the 2020 Assignment of Operating Rights and Bill of Sale between EQT and Diversified. Ex. 10 at Exhibit C (2020 Agreement).

[8]   *David Eddy et. al., v. EQT Prod. Co.*, No. 17-C-78 (W. Va. Cir. Ct.).

In short, as a result of defending EQT in the *Bounty Minerals* and *Eddy* litigation, Swiger had access to EQT's confidential information, practices, and strategies relating to flat-rate leases, well production, and abandonment—including as related to wells at issue in this lawsuit.

### B.   Swiger defended EQT in cases asserting trespass.

Before bringing trespass claims in this case, Swiger defended trespass claims brought against EQT in both West Virginia state court and the Northern District of West Virginia. In *Margot Beth Crowder, et al. v. EQT Production Company*,[9] the plaintiffs complained that EQT exceeded the scope of its lease when it drilled horizontal wells from the surface of their property that extended under neighboring properties so that EQT could extract natural gas from beneath those properties. Ex. 13, ¶¶ 108–112 (Crowder Complaint).

Swiger argued that EQT had authority to continue operating on Plaintiffs' land because its use of the surface to produce gas underlying the plaintiffs' tract and neighboring tracts was "reasonably necessary" to develop the minerals.[10] He also authored a 20-page brief regarding the appropriate scope of trespass damages. Ex. 14. Swiger's brief included a robust discussion of the damages available to trespass claimants for alleged harm to the surface estate. *Id.* at 12–14. Swiger therefore had access to and relied upon EQT's confidential and privileged information on allegations relating to "reasonably necessary" use of the surface, the permissible scope of trespass damages, lease interpretation as related to trespass claims, the approaches to defend trespass actions, and assessing the value of trespass claims. All of those same issues are raised by Plaintiffs' trespass claims in this case, including as related to the claims against EQT.[11]

---

[9]   *Crowder v. EQT Prod. Co.*, No. 14-C-64, 2014 WL 12753700 (W. Va. Cir. Ct. Nov. 26, 2014).

[10]   *Crowder v. EQT Prod. Co.*, No. 14-C-64, 2016 WL 10490081, at *9 (W. Va. Cir. Ct. Feb. 19, 2016).

[11]   Plaintiffs nominally identified Diversified as the defendant on the trespass claims, but then directly tied their fraudulent transfer claims against EQT to their trespass claims in numerous ways. Most obviously, Plaintiffs allege that EQT must pay any damages that they cannot recover from Diversified—including damages based on

Swiger also represented EQT in at least three other trespass cases involving EQT's operations in the Northern District of West Virginia,[12] including one in this Court. *E.g.*, Ex. 15, ¶¶ 42–47 (Waco Oil I Complaint). The allegations concerned EQT's production and transportation of gas as they relate to claims of trespass, *id.*, meaning Swiger had access to confidential information about EQT's operations in this district and strategies on defending trespass claims in this very Court.

### C.    Plaintiffs' counsel refuse to screen Swiger over EQT's objections.

Swiger appeared in this case on August 22, 2022, several weeks after the First Amended Class Action Complaint was filed and despite the fact that Plaintiffs already had multiple other attorneys-of-record representing them. ECF 22. As part of Plaintiffs' legal team, Swiger has advanced substantive legal arguments against EQT, as evidenced by his name on the Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss. ECF 66. Plaintiffs' counsel have continued to copy Swiger on emails about this case as recently as January 12, 2023. *See* Ex. 16 (January 12 email discussing discovery issues); *see generally* Ex. 20 (compilation of emails reflecting that Plaintiffs' counsel have associated with Swiger in pursuing this case).

---

the alleged failure to plug the wells—meaning that Plaintiffs are, in effect, seeking to hold EQT liable for the same alleged trespasses committed by Diversified. *See, e.g.*, ECF 96, ¶¶ 633, 639. The trespass claims also purportedly make Plaintiffs creditors of Diversified, which is the basis to bring the fraudulent transfer claims in the first place. *Id.*, ¶¶ 624, 637, 641. Likewise, the Voidable Transfer Class against EQT includes wells that Plaintiffs claim are trespassing. *See, e.g.*, *id.*, ¶ 109 ("The non-producing and abandoned wells are both a trespass . . . ."); *id.*, ¶ 592 (alleging that the non-producing and abandoned wells are part of the fraudulent and voidable transfer classes). Moreover, Plaintiffs' claim that the liabilities that make Diversified insolvent (and thus, give rise to the claims against EQT for making allegedly fraudulent transfers to an allegedly insolvent entity) arise from, among other things, the theory that the wells must be plugged because failure to do so constitutes a trespass. *Id.*, ¶¶ 45, 6–7. Finally, Plaintiffs apparently seek to unwind the transactions between EQT and Diversified and then require EQT to setup "a fund . . . to be used to plug and otherwise decommission Class members' wells in West Virginia[,]" *see id.*, at 75, ¶¶ 4–7, which would have the effect of forcing EQT take back wells that are allegedly trespassing because they have not been plugged and requiring EQT to pay compensation to resolve those trespass claims.

[12]    *See Waco Oil & Gas Co., Inc. v. EQT Prod. Co.* (Waco Oil I), No. 5:18CV00141 (N.D.W. Va. Dec. 20, 2019); *Waco Oil & Gas Co., Inc. v. EQT Prod. Co.* (Waco Oil II), No. 5:18CV00134 (N.D.W. Va. Dec. 20, 2019); *Waco Oil & Gas Co., Inc. v. EQT Prod. Co.* (Waco Oil III), No. 5:18CV00140 (N.D.W. Va. Dec. 20, 2019).

Concerned about Swiger misappropriating EQT's confidential and privileged information, EQT objected to his participation as Plaintiffs' counsel by letters dated October 17 and November 23, 2022, explaining that Swiger had previously represented EQT in substantially related matters. Ex. 17 (October 17 Letter); Ex. 18 (November 23 Letter). To determine whether Swiger had shared confidential information already, EQT also served a discovery request targeted to the specific documents and communications in which Swiger had explicitly referenced his prior work for EQT:

> **REQUEST FOR PRODUCTION NO. 6**: All documents and communications exchanged by, with, between, or concerning the Plaintiffs (including, but not limited to, the Plaintiffs' counsel in this matter) and Brian Swiger of Bailey Glasser LLP that *reference* Brian Swiger's *employment by EQT*, work he performed *on behalf of EQT*, and/or knowledge he *obtained from EQT prior to this action*.

Ex. 2 at 8 (emphasis added to show the limited nature of this request). Anticipating an objection based on privilege, EQT demanded a privilege log to the extent that Plaintiffs elected to withhold any responsive materials, which would at least allow EQT to ascertain the volume of documents and communications involving Swiger that referenced his past work for EQT. *Id.* at 8–9. Plaintiffs asserted privilege but refused to produce a privilege log on the basis that the materials were so voluminous that it would be burdensome to compile them, *see id.* (emphasis added):

> **RESPONSE**: . . . Plaintiffs further object to the undue burden and disproportionate cost of producing a privilege log, as doing so will likely result in the needless expenditure of *many hours of attorney and staff time to assemble the requested documents.*

EQT now moves to disqualify Plaintiffs' counsel because this case is substantially related to Swiger's past work for EQT.

## IV.     Legal Standards

The Court must independently analyze two separate bases that each require disqualification of Plaintiffs' counsel here: (1) actual violations of the RPC; and (2) the appearance of impropriety. *See, e.g.*, *Burgess-Lester v. Ford Motor Co.*, 643 F. Supp. 2d 811, 816–19 (N.D.W. Va. 2008)

(disqualifying Bailey Glasser pursuant to the West Virginia Rules of Professional Conduct for relying on one of Ford's prior counsel to sue Ford and noting that either actual violations of the Rules of Professional Conduct or the appearance of impropriety are bases for disqualification). If the Court concludes that Swiger has a conflict under either standard, then the appropriate remedy is to disqualify all of Plaintiffs' counsel who associated with Swiger. *Id.* at 819; RPC 1.0(c) (defining "firm" expansively, for purposes of the RPC, to include not just law partners, but any "other association" of lawyers); RPC 1.10(a) (imputing a conflict to other members of a "firm").

### A.   Failure to abide by RPC 1.9 requires disqualification.

Disqualification is warranted if Plaintiffs' counsel violated the RPC. *See* LR Gen P 84.01 (requiring compliance with "the Rules of Professional Conduct and the Standards of Professional Conduct adopted by the Supreme Court of Appeals of West Virginia and the Model Rules of Professional Conduct published by the American Bar Association"). Because the RPC "provide *minimum* standards" for practice in this Court, *id.*, "disqualification is *required* when representation of a client will violate the Rules of Professional Conduct or other law." *HealthNet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 758 (S.D.W. Va. 2003) (emphasis added).

A lawyer who "formerly represented a client in a matter" shall not represent a party in "the same or a substantially related matter" that is materially adverse to the former client. RPC 1.9(a). "Once a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed." *State ex rel. Keenan v. Hatcher*, 210 W. Va. 307, 314 (2001) (adopting the "substantial relationship" test in the Restatement (Third) of the Law Governing Lawyers). "When the prior matter involved litigation, it will be conclusively presumed that the lawyer obtained confidential information about the issues involved in the litigation." Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii) (2000). Therefore:

> [T]o disqualify an attorney pursuant to Rule 1.9(a) . . . five criteria must be satisfied: (1) the existence of an attorney-client relationship between the attorney and the former client; (2) the existence of an attorney-client relationship between the attorney and the subsequent client; (3) the subject matter of the subsequent client's representation either is the same as or is substantially related to the subject matter of the former client's representation; (4) the subsequent client's representation is materially adverse to the interests of the former client; and (5) the former client has not consented, after consultation, to the subsequent representation.

*State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 159 (2010). Here, the first, second, fourth, and fifth elements are not in dispute. Only the third element—whether the subject matter of Swiger's representation of Plaintiffs is substantially related to the subject matter of Swiger's representations of EQT—is at issue.

A matter is substantially related if either the "current matter involves the work the lawyer performed for the former client" or "there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client." *Id.* at 161; Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii). Determining whether a matter is substantially related under Rule 1.9 "requires an analysis of the facts, circumstances, and legal issues of the two representations." *State ex rel. McClanahan v. Hamilton*, 189 W. Va. 290, 293–94 (1993).

### B. Separately, an appearance of impropriety alone requires disqualification.

In addition to actual violations of the RPC, disqualification is also required if Plaintiffs' counsel creates the appearance of impropriety. *HealthNet, Inc.*, 289 F. Supp. 2d at 758 (holding "that courts determining whether to disqualify counsel should act to prevent the appearance of impropriety"); *CSX Transp., Inc. v. Gilkison*, No. 5:05CV202, 2006 WL 3203419, at *2 (N.D.W. Va. Nov. 3, 2006) ("Thus, disqualification may be justified regardless of counsel's intent in undertaking representation that leads to an appearance of impropriety."). An appearance of impropriety exists when "a reasonable former client would be concerned by" the challenged

conduct. *HealthNet, Inc.*, 289 F. Supp. 2d at 758–59; *see also Burgess-Lester*, 643 F. Supp. 2d at 813, 817–18 ("Thus, to preserve the value and sanctity of the attorney-client relationship, courts resolving conflicts of interest must resolve all doubts in favor of disqualification in order to prevent the appearance of impropriety.") (internal quotation marks omitted); *see generally Roberts & Schaefer Co. v. San-Con, Inc.*, 898 F. Supp. 356, 359 (S.D.W. Va. 1995) (rejecting criticisms of the appearance of impropriety standard as inapplicable in West Virginia).

In analyzing whether disqualification is appropriate, "the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is to ***resolve all doubts in favor of disqualification***." *State ex rel. Cosenza v. Hill*, 216 W.Va. 482 at 488 (2004) (emphasis added). "The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." *Richards v. Jain*, 168 F. Supp. 2d 1195, 1209 (W.D. Wash. 2001). Thus, "lawyers should bear the burden of the conflicts they create." *HealthNet*, 289 F. Supp. 2d at 759, 761–62 (reasoning that "courts should be reluctant to sacrifice the interests of clients and former clients for the perceived business interests of lawyers").

### C.    No distinction exists between Swiger and Plaintiffs' other counsel for purposes of disqualification.

Under the RPC, the conflict of one attorney—like Swiger—extends to that attorney's entire "firm." RPC 1.10(a) (stating that no attorneys in a "firm . . . shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9."); *PNGI Charles Town Gaming, LLC v. Hot Spot Ct Real Est., LLC*, No. 3:18-CV-38, 2018 WL 10604737, *3 (N.D.W. Va. Aug. 13, 2018) ("Under Rule 1.10(a), disqualification is the rule.").

"Firm" has a broad meaning under the RPC that, here, encompasses all of Plaintiffs' counsel. Most obviously, "firm" includes other members of a law partnership; for Swiger, that is Bailey Glasser. *See* RPC 1.0(c) ("firm" includes "a law partnership"). But "firm" also includes any co-counsel—like Appalachian Mountain Advocates ("AppalMad")—who chose to associate with the conflicted lawyer on the matter. RPC 1.0(c) ("firm" for purposes of RPC 1.10(a) and other rules also includes an "association" between "a lawyer or lawyers"); Restatement (Third) of the Law Governing Lawyers § 123 (2000) (noting that a conflict extends to lawyers who "are associated with that lawyer in rendering legal services to others" and that "[a]ssociated lawyers or law firms," in this context, includes "[t]wo or more lawyers or law firms [who] associate for purposes of handling a particular case," such as "a lawyer who appears as local counsel in litigation principally handled by another firm.").

Given that the lawyers at both Bailey Glasser and AppalMad associated with and relied on Swiger throughout this case, there is no basis to distinguish them from Swiger himself under the RPC. Drawing any distinctions between Swiger, Bailey Glasser, and/or AppalMad is especially inappropriate because, unlike the ABA Model Rules, the RPC do not permit conflicts to be avoided even where (unlike here) the conflicted lawyer is screened. *Compare* ABA Rule 1.10(a)(2) (allowing timely screens), *with* RPC 1.10(a) (no such provision). Protecting client confidentiality and client loyalty provide the impetus behind the West Virginia rule, and screening is insufficient to protect either of those interests. *See* RPC 1.10 cmt. 2–3. Because screens are ineffective in West Virginia, the Court must presume that Swiger shared confidential information with all of Plaintiffs' counsel, including AppalMad. *See HealthNet*, 289 F. Supp. 2d at 762 (disqualifying counsel "because the screening arrangements there were not established until the disqualification motion was filed" and thus "[the Court] cannot find that the screening arrangements were timely, even

judged by the standards of jurisdictions that allow screening"); *Weshler v. Rosensweig*, No. B287099, 2019 WL 5617794, at *12 (Cal. Ct. App. Oct. 31, 2019) (holding that the person who had switched sides was "presumed to have shared the defendants' confidential information with [co-counsel] during their co-counsel relationship, and thus [co-counsel's] disqualification [is] also required"); *see generally Sunbeam Products, Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469, 475 (E.D. Va. 2010) (noting that the Fourth Circuit, unlike some other circuits, resolves all doubts about the appearance of impropriety in favor of disqualification).

## V. Argument

### A. Under RPC 1.9, Plaintiffs' counsel must be disqualified because this matter is substantially related to those Swiger worked on for EQT.

#### 1. Swiger's work on the *Bounty Minerals* cases is substantially related to this case because both deal with the same wells in the same region and relate to similar issues surrounding abandonment.

Swiger has a textbook conflict of interest: Plaintiffs' lawsuit against EQT concerns the same and similar property, circumstances, and legal arguments as other matters where Swiger previously defended EQT as lead counsel. The most obvious conflict is Swiger's work in the *Bounty Minerals* cases because they included the *same* wells, *same* region, *same* causes of action, *same* venue, and *same* legal theories under the *same* statute at issue in this case.

First, regarding the facts, the *Bounty Minerals* plaintiffs, like Plaintiffs here, complained about EQT's operations in the Northern District of West Virginia.[13] In fact, the wells at issue in *Bounty Minerals* are involved in this suit, because they were transferred from EQT to Diversified in 2020 (*supra* n.7), meaning they are: i) directly at issue in Plaintiffs' fraudulent transfer claims against EQT, and ii) their owners are members of the putative Voidable Transfer Class. *See* ECF

---

[13] The Bounty Minerals cases were originally filed in Monongalia County state court, then removed to the Northern District of West Virginia, then remanded back to state court.

96, ¶ 592(a). Additionally, the information Swiger has about the wells at issue in *Bounty Minerals* can be extrapolated to other similarity situated wells that were also assigned by EQT. Wells transferred in the 2020 Agreement were in the same region as the wells in the *Bounty Minerals* case—Monongalia—a strong indicator that they may have similar leases, equipment, geological formations, and future plans. *See* Ex. 10 at Exhibit C. This substantial overlap in the property and region at issue makes Swiger's knowledge of the wells in *Bounty Minerals* relevant to this case. *See Bluestone Coal*, 226 W. Va. at 161 (finding matters substantially related factually where the two cases involved "the same type of contract [and] the same mine").

With respect to the circumstances, the general narrative is the same in this litigation as *Bounty Minerals*. Like Plaintiffs here, the *Bounty Minerals* plaintiffs alleged that the wells were not producing gas and had thereby been abandoned. *Compare* ECF 96, ¶¶ 12–16, *with* Ex. 6, ¶¶ 16–21; Ex. 7, ¶¶ 15–18. One *Bounty Minerals* plaintiff contended that the wells did not appear capable of producing gas or oil anymore, Ex. 6, ¶ 19, just like Plaintiffs in this case claim that many of wells are non-producing and are at the end of their lifecycle. *See, e.g.*, ECF 96, ¶¶ 50, 54, 64, 104, 107–09. The circumstantial overlap shows a substantial relationship because, to address the issues raised in *Bounty Minerals*, Swiger had access to EQT's confidential information relating to the subject matter involved, which related to EQT's wells and their alleged abandonment, production, status, and future plans. This information is relevant to Plaintiffs' claims that the same wells and other wells in Monongalia were fraudulently transferred by EQT, and the allegation that EQT knew of their future need to be plugged when they were sold to Diversified. ECF 96, ¶ 89.

In addition to the factual and circumstantial overlap, Swiger's work in *Bounty Minerals* is legally similar to this case in multiple ways. First, the plaintiffs in *Bounty Minerals* argued that the wells were abandoned under West Virginia Code § 22-6-19. Ex. 8 at 3 n.2; Ex. 9 at 3 n.3. The

same is true here, as Plaintiffs base their suit on the argument that the wells are abandoned under that exact same statute. *See* EFC 96, ¶¶ 77–78. EQT's privileged analysis of that statute and related abandonment issues are thereby known to Swiger. Second, both this case and *Bounty Minerals* also include plaintiffs whose leases include flat-rate royalty provisions where paying a flat rate royalty allows the operator to hold the well even where that well is not producing oil or gas. Ex. 8 at 1–5; Ex. 9 at 1–5. Third, the *Bounty Minerals* plaintiffs argued that by not releasing them from the leases, EQT had "diminished the value of the Land in the eyes of third parties." Ex. 6, ¶ 36; Ex. 7, ¶ 28. Plaintiffs in this case likewise claim that failure to plug the wells "lower[ed] the value of [Plaintiffs'] properties." ECF 96, ¶ 620. The *Bounty Minerals* plaintiffs also requested a declaration from the court that the lease was unenforceable because the wells were abandoned. Ex. 6 at 9; Ex. 7 at 8. So too do Plaintiffs here ask the Court to declare that not plugging the abandoned wells constitutes tortious activity. *See* ECF 96 at 74–75.

Swiger was privy to EQT's documents and confidential communications on legal strategy and the best defenses on these issues, as he was engaged to refute the plaintiffs' legal claims and related allegations. Ex. 4 at 2; Ex 5 at 2 (noting that Swiger agreed to be "the attorney primarily responsible for [the] matter[s]" at their inception). Swiger's work in *Bounty Minerals* is therefore substantially related to his work in this case. *See State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W. Va. 587, 592–93 (1996) (disqualifying counsel from joining a handicap discrimination case against an ex-client because counsel previously did research for the ex-client relating to handicap discrimination and had access to the ex-client's corporate policies on the matter).

2. **Independently, Swiger's work on the *Eddy* case is substantially related to this case because both deal with the abandonment of flat-rate leases.**

This case presents substantially similar factual and legal questions to those at issue in the *Eddy* case. The plaintiffs in *Eddy*, like the Plaintiffs here, claimed that EQT had abandoned their

16

wells because they had not produced oil or gas for at least a year. *See* Ex. 12 at 2–3; ECF 96. ¶¶ 77–78. Both the *Eddy* case and this case concern EQT's wells and leases in West Virginia. Ex. 12 at 2; ECF 96, ¶¶ 6–7. Like both this case and *Bounty Minerals*, *Eddy* also included plaintiffs whose leases include flat-rate royalty provisions that apply where the well is not producing oil or gas. Ex. 12 at 2. The flat-rate provisions in the leases at issue in this case—just like in *Bounty Minerals* and *Eddy*—go to the heart of Plaintiffs' abandonment allegations because they rebut the claim that non-production leads to abandonment. *See Bruen v. Columbia Gas Transmission Corporation*, 188 W. Va. 730, 735 (1992) ("[I]f an oil and gas lease contains a clause to continue the lease for a term 'so long thereafter as oil or gas is produced,' but also provides for 'flat-rate' rental payments, then quantity of production is not relevant to the expiration of the term of the lease if such 'flat-rate' rental payments have been made by the lessee.").

Swiger's experience representing EQT thus not only involved whether a subset of the same wells at issue were abandoned (in *Bounty Minerals*), but also what constitutes abandonment when flat-rate leases are at issue (in *Bounty Minerals* and *Eddy*), which is a subject raised by Plaintiffs' claims here. The overlap between *Eddy* and this case means that Swiger had access to confidential information substantially related to this case. For example, Swiger's name appeared on a motion to dismiss in *Eddy* which took the position that flat-rate leases are not abandoned, despite the lack of production, based on West Virginia Code § 36-4-9a, making him privy to EQT's defenses and strategies on that statute and flat-rate leases. Ex. 12 at 4. As such, there is a substantial risk that the confidential information Swiger learned in the *Eddy* defense will be used to advance the Plaintiffs' position in this matter, since the same West Virginia Code exception would undermine the Plaintiffs' abandonment claims here. For that reason, Swiger's role as lead attorney of EQT in *Eddy*, Ex. 11 at 2, is substantially related to this matter under the RPC. RPC 1.9 cmt. 3.

3.  **Independently, Swiger's work on the *Crowder* and *Waco Oil* cases is substantially related to this case because both deal with trespass claims and trespass damages.**

Before switching sides, Swiger defended EQT against allegations of trespass. In *Crowder,* the plaintiffs claimed that the EQT-operated wells on their property were trespassing because, while they were producing from adjacent lots, they were not producing gas from under the plaintiffs' land as purportedly required by the leases at issue. Ex. 13, ¶ 110. Similarly here, Plaintiffs argue that the wells once owned by EQT are trespassing because they are not producing on their land. *See* ECF 96, ¶¶ 605–07. The *Crowder* plaintiffs sought trespass damages, including the "profits and/or the value of the oil and gas produced." *See generally* Ex. 14. Swiger's name appeared on a brief which extensively analyzed trespass damages, including the scope of available damages related to the surface estate. *Id.* at 12 *et seq*. Here, Plaintiffs likewise seek pecuniary damages for trespass, including with respect to the surface estate. ECF 96, ¶¶ 610–12. The *Crowder* case is therefore substantially related to this lawsuit because both deal with whether West Virginia wells alleged to be non-producing are trespassing, as well as well-trespass damages.

The same is true in the three *Waco Oil* lawsuits, which each related to trespass, trespass damages, and EQT's operations in West Virginia. *E.g.*, Ex. 15, ¶¶ 42–47. One of those cases was before this Court. *Waco Oil I*, No. 5:18CV00141 (N.D.W. Va. Dec. 20, 2019). Swiger's representation of EQT in the *Waco Oil* lawsuits thereby gave him access to EQT's confidential analysis of trespass claims as they relate to EQT's wells in West Virginia and the best way to defend those kinds of claims in this particular venue and Court. Because the RPC only requires a substantial risk that representation of the present client will involve the use of material information acquired in the course of representing the former client, and Plaintiffs' trespass allegations are relevant to the claims against EQT (*supra* n.11), the *Waco Oil* matters are substantially related to this case. *See* RPC 1.9 cmt. 3.

18

## B.    Alternatively, Plaintiffs' counsel must be disqualified for creating the appearance of impropriety.

Plaintiffs' counsel's decision to recruit Swiger to a matter adverse to EQT creates the appearance of impropriety since "a reasonable former client would be concerned by" his work on this case. *HealthNet, Inc.*, 289 F. Supp. 2d at 758–59. Swiger entered an appearance adverse to EQT, put his name under the signature block of Plaintiffs' Opposition to Defendants' Motion to Dismiss, and put his name under the signature block of Plaintiffs' counsel's November 25 discovery letter. ECF 22; ECF 66; Ex. 19 (AppalMad discovery letter). His involvement is so pervasive that Plaintiffs' counsel estimate that it would take "many hours" of work to log the communications "that reference Brian Swiger's employment by EQT, work he performed on behalf of EQT, and/or knowledge he obtained from EQT prior to this action." Ex. 2 at 9. A reasonable former client would be concerned by its former counsel admitting to referencing prior work in communications with an adversary. This is grounds for disqualification based on the appearance of impropriety alone, especially given that no screen was ever placed to prevent Swiger from using or disclosing confidential or privileged information, even inadvertently.

Swiger also represented EQT in defending oil and gas matters ranging from contract disputes[14] to easement issues[15] to servicing properties.[16] Swiger's prior representation of EQT in over a dozen cases, many involving oil and gas, contributes to the appearance of impropriety

---

[14]   The *Waco Oil* litigation discussed above involved contract claims.

[15]   *Columbia Gas Transmission, LLC v. 169.19 acres of land, more or less, in Doddridge, Ritchie, Tyler & Wetzel Counties, W. Va. et al.*, No. 1:18-cv-00008 (N.D.W. Va. Jan. 12, 2018); *Columbia Gas Transmission, LLC v. 466.19 Acres of Land, More or Less, in Cabell, Jackson, Mason, Putnam, Roane & Wirt Counties, W. Va. et al.*, No. 2:18-cv-00044 (S.D.W. Va. Jan. 12, 2018); *Columbia Gas Transmission, LLC v. 93.48 Acres of Land, More or Less, in Cabell, Jackson, Putnam & Wirt Counties, W. Va. et al.*, No. 2:18-cv-00042 (S.D.W. Va. Jan. 12, 2018).

[16]   *C&J Spec-Rent Servs., Inc. et al. v. EQT Prod. Co.*, No. 1:17-cv-00215 (N.D.W. Va. Dec. 14, 2017); *Trenton Energy, LLC v. EQT Prod. Co.*, No. 11-01932 (4th Cir. Sept. 02, 2011); *Trenton Energy, LLC v. EQT Prod. Co.*, No. 2:10-cv-00699 (S.D.W. Va. Apr. 30, 2010).

because "there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client." *Bluestone Coal*, 226 W. Va. at 161; RPC 1.9 cmt. 3. No doubts exist, but if they did, they are resolved in favor of disqualification. *Burgess-Lester*, 643 F. Supp. 2d at 813 (resolving doubts in favor of disqualifying Bailey Glasser "to preserve the value and sanctity of the attorney-client relationship").

Because they chose to associate with and rely on Swiger, Swiger's conflict disqualifies Plaintiffs' other counsel based on the appearance of impropriety. Plaintiffs' counsel (in particular, Bailey Glasser) has been disqualified in the Northern District of West Virginia under the appearance of impropriety standard for less. In *Burgess-Lester*, the plaintiffs brought a claim against Ford Motor Company regarding Ford Bronco rollovers. *Id.* at 812, 817. Ford moved to have Bailey Glasser disqualified as plaintiff's counsel because one of its attorneys—one that had not even made an appearance in the case—had previously worked for a firm that represented Ford in similar cases. *Id.* at 812. Plaintiffs argued that this was not a problem because the attorney was hired at Bailey Glasser prior to the plaintiffs hiring the firm, and Bailey Glasser "implemented adequate screening measure to ensure both that [the attorney] would not be involved in this representation and also that there would be no appearance of impropriety." *Id.* Unlike here, where Plaintiffs' counsel refuse to screen Swiger, Bailey Glasser actually tried to implement a robust ethical screen in that case:

> B[ailey] G[lasser] restricted Lorea's access to any computer files pertaining to Lester's case. Second, it stored all the physical documents related to the case in a physical location to which Lorea had no access. Third, it instructed its personnel that these documents were only to be given to lawyers working on the case and informed them not to discuss the case with Lorea. Finally, B[ailey] G[lasser] arranged that Lorea would not receive any profits from the resolution of the case.

*Id.* at 816.

20

Despite those steps, Judge Keeley found this screening insufficient to avoid disqualification. *See id.* at 817–19. The attorney's ties to Ford—billing a significant number of hours to Ford matters, including on several Ford Bronco cases, and being intimately familiar with Ford's practices handling cases—meant that screening could not avoid the appearance of impropriety. *Id.* The court did not require Ford to "specify what confidential information" was learned by the attorney with the conflict, since that would not defeat the presumption that such information was obtained and could be shared. *Id.* at 812, 817.

All of those same considerations are present here with greater force. Swiger represented EQT in more than a dozen litigation matters over the course of a decade.[17] While counsel for EQT, Swiger became familiar with and executed EQT's practices on handling cases substantially related to this one.[18] The biggest difference between this case and *Burgess-Lester* is the latter involved an ethical screen, but this one does not, making the case for disqualification here even stronger.

---

[17] To summarize: 1) *Waco Oil & Gas Co., Inc. v. EQT Prod. Co.* ("Waco Oil I"), No. 5:18CV00141 (N.D.W. Va. Dec. 20, 2019); 2) *Waco Oil & Gas Co., Inc. v. EQT Prod. Co.* ("Waco Oil II"), No. 5:18CV00134 (N.D.W. Va. Dec. 20, 2019); 3) *Waco Oil & Gas Co., Inc. v. EQT Prod. Co.* ("Waco Oil III"), No. 5:18CV00140 (N.D.W. Va. Dec. 20, 2019); 4) *Columbia Gas Transmission, LLC v. 169.19 acres of land, more or less, in Doddridge, Ritchie, Tyler & Wetzel Counties, W. Va. et al.*, No. 1:18-cv-00008 (N.D.W. Va. Jan. 12, 2018); 5) *Columbia Gas Transmission, LLC v. 466.19 Acres of Land, More or Less, in Cabell, Jackson, Mason, Putnam, Roane & Wirt Counties, W. Va. et al.*, No. 2:18-cv-00044 (S.D.W. Va. Jan. 12, 2018); 6) *Columbia Gas Transmission, LLC v. 93.48 Acres of Land, More or Less, in Cabell, Jackson, Putnam & Wirt Counties, W. Va. et al.*, No. 2:18-cv-00042 (S.D.W. Va. Jan. 12, 2018); 7) *Bounty Minerals, LLC v. EQT Prod. Co.* ("Bounty Minerals I"), No. 1:17-cv-00219 (N.D.W. Va. Dec. 18, 2017); 8) *Bounty Minerals, LLC v. EQT Prod. Co.* ("Bounty Minerals II"), No. 1:17-cv-00220 (N.D.W. Va. Dec. 18, 2017); 9) *David Eddy et. al., v. EQT Prod. Co.*, No. 17-C-78 (W. Va. Cir. Ct.); 10) *C&J Spec-Rent Servs., Inc. et al. v. EQT Prod. Co.*, No. 1:17-cv-00215 (N.D.W. Va. Dec. 14, 2017); 11) *Crowder v. EQT Prod. Co.*, No. 14-C-64, 2014 WL 12753700 (W. Va. Cir. Ct. Nov. 26, 2014); 12) *Trenton Energy, LLC v. EQT Prod. Co.*, No. 11-01932 (4th Cir. Sept. 02, 2011); 13) *Trenton Energy, LLC v. EQT Prod. Co.*, No. 2:10-cv-00699 (S.D.W. Va. Apr. 30, 2010). Swiger was also on EQT's legal team in connection with three additional matters: 1) *Ace Pipeline, Inc. v. EQT Corporation*, No. 18-C-17 (Cir. Ct. W. Va.), 2) *Genevieve v. Stanley and EQT Gathering, LLC et al.*, No. 15-C-10 (Cir. Ct. W. Va.), and 3) *Matoaka Land Co. et al. v. EQT* (No Suit Filed). Finally, Mr. Swiger may have consulted in some capacity on *Kay Co., LLC v. EQT Prod. Co.*, No. 1:13-CV-151, 2021 WL 7908200 (N.D.W. Va. Sept. 14, 2021).

[18] As noted, Swiger is presumed to have obtained confidential information regarding the subject matter of and issues related to each of these cases. *Keenan*, 210 W. Va. at 314 ("Once a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed." (citing Restatement (Third) of the Law Governing Lawyers § 132)); Restatement (Third) of the Law Governing Lawyers § 132 cmt. d(iii) (2000) ("When

**C.    Under RPC 1.10, Bailey Glasser and Appalachian Mountain Advocates must be disqualified because of Swiger's imputed conflict of interest.**

Because each of Plaintiffs' current counsel have associated with and relied on Swiger, *e.g.*, Ex. 2, Ex. 16, Ex. 19, Ex. 20 (Collection of Emails), ECF 22, ECF 66, ECF 93, his conflict is imputed to all counsel currently representing Plaintiffs, regardless of whether they are affiliated with Bailey Glasser or Appalachian Mountain Advocates ("AppalMad"). None of Plaintiffs' counsel, including the lawyers at AppalMad, made any effort to stop Swiger's conflict from spreading or took any measures to avoid the appearance of impropriety.

The conflict of the other attorneys at Bailey Glasser is obvious since that is Swiger's firm. Pursuant to the express language of the RPC, other members of a law partnership cannot "knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." RPC 1.10(a); RPC 1.0(c) (definition of "firm" includes "law partnership"). Since Swiger's acceptance of this case violates 1.9, the other lawyers at Bailey Glasser must also be disqualified under RPC 1.10(a).

The attorneys at AppalMad also elected to "associate" with Swiger within the meaning of RPC 1.10(a), as they acted together with him in this matter, and they thereby cannot avoid Swiger's conflict. *See* RPC 1.0(c) (definition of firm includes an "association" between lawyers); Restatement (Third) of the Law Governing Lawyers § 123 (2000) (noting that a conflict extends to lawyers who "are associated with that lawyer in rendering legal services to others" and that "[a]ssociated lawyers or law firms," in this context, includes "[t]wo or more lawyers or law firms [who] associate for purposes of handling a particular case," such as "a lawyer who appears as local counsel in litigation principally handled by another firm."); *Weshler*, 2019 WL 5617794, at *12

---

the prior matter involved litigation, it will be *conclusively presumed* that the lawyer obtained confidential information *about the issues involved in the litigation.*" (emphasis added)).

(holding that the person who had switched sides was "presumed to have shared the defendants' confidential information with [co-counsel] during their co-counsel relationship, and thus [co-counsel's] disqualification [is] also required"). There is no indication that Swiger has been screened from AppalMad in a way that would justify differential treatment from Bailey Glasser. On the contrary, AppalMad has included Swiger under its signature on filings and letters. *See* ECF 22; ECF 66; ECF 93; Ex 19; Ex. 20. AppalMad continues to copy Swiger on substantive emails even after EQT objected to his conflict. Ex. 16; Ex. 20.

Because AppalMad collaborated with Swiger, the damage has been done. *See HealthNet*, 289 F. Supp. 2d at 762 (disqualifying counsel "because the screening arrangements there were not established until the disqualification motion was filed" and thus "[the Court] cannot find that the screening arrangements were timely, even judged by the standards of jurisdictions that allow screening."). Even if Swiger could prove no information was misused or improperly shared (he cannot), AppalMad relying on Swiger to pursue this case creates the appearance of improper information sharing, and all doubts must be resolved in favor of disqualification. *Burgess-Lester*, 643 F. Supp. 2d at 813. The only proper remedy is disqualification of Swiger, Bailey Glasser, and AppalMad.

## VI.   Prayer

The Court should disqualify Plaintiffs' counsel. The Court should also prohibit transfer of the litigation file to new counsel. This is only way to protect EQT's confidential and privileged information. Restatement (Third) of the Law Governing Lawyers § 6 cmt. i (2000) ("The party seeking to justify such a transfer may be required to show both that no impermissible confidential client information is contained in the material transferred, and that the former and new lawyers exchange none in the process of transferring responsibilities for the matter."). The Court should award any such further relief that is equitable and just, or to which EQT may be legally entitled.

Respectfully submitted:

 /s/ Jennifer J. Hicks
Jennifer J. Hicks, Esquire (WVSB #11423)
Tiffany M. Arbaugh, Esquire (WVSB #9982)
**BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.**
300 Summers Street, Suite 1000
Charleston, WV 25301
Phone:   (681) 205-8888
Fax:      (681) 205-8814
Email:    jhicks@babstcalland.com
            tarbaugh@babstcalland.com

Mark K. Dausch, Esquire (WVSB #11655)
**BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.**
603 Stanwix Street
Pittsburgh, PA  15222
Phone:   (412) 394-5655
Fax:      (412) 394-6579
Email:    mdausch@babst.calland.com

*Counsel for Defendants EQT Production Company, EQT Production HTW, LLC, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC, and EQT Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
(WHEELING DIVISION)**

**MARK MCEVOY,** *et al.*,

      **Plaintiffs,**

**v.**
                      **CIVIL ACTION NO.    5:22-cv-171**
                      **The Honorable John Preston Bailey**

**DIVERSIFIED ENERGY COMPANY PLC,** *et al*.

      **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, as counsel for Defendants EQT Production Company, EQT Production

HTW, LLC, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC and EQT

Corporation, hereby certifies that a true and correct copy of the foregoing **EQT'S MOTION TO**

**DISQUALIFY PLAINTIFFS' COUNSEL RELATED TO BRIAN SWIGER** was filed this

13th day of January, 2023, electronically through the Court's CM/ECF system, which will send a

notice of electronic filing to the following counsel of record:

William S. Flynn, Esquire
Brian R. Swiger, Esquire
Brian A. Glasser, Esquire
John W. Barrett, Esquire
Athanasios Basdekis, Esquire
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
wflynn@baileyglasser.com
bswiger@baileyglasser.com
bglasser@baileyglasser.com
jbarrett@baileyglasser.com
tbasdekis@baileyglasser.com

Panida A. Anderson, Esquire
Bailey & Glasser, LLP - DC
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
panderson@baileyglasser.com

Joseph M. Lovett, Esquire
Benjamin A. Luckett, Esquire
J. Michael Becher, Esquire
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
jlovett@appalmad.org
bluckett@appalmad.org
mbecher@appalmad.org

*Counsel for Plaintiffs and Proposed Class*

Howard M. Persinger, III, Esquire
Persinger & Persinger, L.C.
237 Capitol Street
Charleston, WV 25301
Hmp3@persingerlaw.com

Ragan Naresh, P.C.
Daniel T. Donovan, P.C.
Kirkland & Ellis, LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
ragan.naresh@kirland.com
daniel.donovan@kirkland.com

*Counsel for Defendants Diversified Energy Company, PLC,*
*Diversified Gas & Oil, PLC, Diversified Production, LLC,*
*Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC and*
*Alliance Petroleum Corporation*

*/s/Jennifer J. Hicks*
Jennifer J. Hicks (WVSB #11423)