IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

WHEELING DIVISION

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

Plaintiffs,

v.

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

Defendants.

CIVIL ACTION NO. 5:22-cv-171
Honorable Judge John P. Bailey

**PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT'S MOTION TO
DISQUALIFY PLAINTIFFS' COUNSEL RELATED TO BRIAN SWIGER**

Brian A. Glasser, Esq. (WVSB No. 6597)
John W. Barrett, Esq. (WVSB No. 7289)
Brian R. Swiger (WVSB No. 5872)
Athanasios Basdekis (WVSB No. 9832)
William S. Flynn (WVSB No. 13947)
Panida Anderson (admitted pro hac vice)
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
bglasser@baileyglasser.com
jbarrett@baileyglasser.com
bswiger@baileyglasser.com
tbasdekis@baileyglasser.com
wflynn@baileyglasser.com
panderson@baileyglasser.com

Joseph M. Lovett (WVSB No. 6926)
J. Michael Becher (WVSB No. 10588)
Isak Howell (WVSB No. 11558)
Benjamin Luckett (WVSB No. 11463)
Amanda Demmerle (WVSB No. 13930)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
jlovett@appalmad.org
mbecher@appalmad.org
ihowell@appalmad.org
bluckett@appalmad.org
ademmerle@appalmad.org

## TABLE OF CONTENTS

Argument Summary ................................................................................................... 1

Argument .................................................................................................................. 3

    There is no basis to disqualify Brian Swiger, Bailey & Glasser, or Appalachian Mountain
    Advocates. ........................................................................................................... 3

    I.    Disqualification is a drastic step that deprives litigants of their choice of counsel and
        is rife with potential for abuse by litigation opponents seeking strategic advantage. . 3

    II.   EQT has not established a Rule 1.9 violation because Mr. Swiger handled no EQT
        matters that are the "same or substantially related" to this case. ............................. 4

        1.   This case does not "involve the same transaction or legal dispute" as any
           matter Mr. Swiger handled for EQT. ........................................................... 5

        2.   This case is not "substantially related" to any matter that Mr. Swiger handled
           for EQT. ....................................................................................................... 7

Conclusion ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Messaging Techs. v. Easylink Servs. Int'l Corp.*,
    913 F.Supp.2d 900 (C.D. Cal. 2012) ........................................................................18

*Beltran v. Avon Prods.*,
    867 F. Supp. 2d 1068 ..............................................................................................18

*Burgess-Lester v. Ford Motor Co.*,
    643 F. Supp. 2d 811 (N.D. W. Va. 2008) ........................................................13, 14

*Cisco v. Norfolk S. Ry. Co.*,
    No. 2:12-739, 2013 WL 3340740 (S.D. W. Va. July 2, 2013) ..................................3

*In re Corwin Place*,
    562 B.R. 663 (Bankr. N.D. W.Va. 2019).....................................................3, 12, 13

*State ex rel. Cosenza v. Hill*,
    607 S.E.2d 811 (W. Va. 2004)................................................................................14

*CSX Transp., Inc. v. Gilkison*,
    No. 5:05-CV-202, 2006 WL 3203419 (N.D. W. Va. Nov. 3, 2006) ........................13

*In re Examination of Privilege Claims*,
    No. C12-2091-JCC, 2016 WL 11164791 (W.D. Wash. May 20, 2016) ..................18

*Garlow v. Zakaib*,
    413 S.E.2d 112 (W. Va. 1991)...........................................................................3, 5

*HealthNet, Inc. v. Health Net, Inc.*,
    289 F. Supp. 2d 755 (S.D. W. Va. 2003) ..........................................................12, 13

*Law. Disciplinary Bd. v. Allen*,
    479 S.E.2d 317 (W. Va. 1996)..................................................................................4

*State ex rel. McClanahan, v. Hamilton*,
    430 S.E.2d 569 (W. Va. 1993)......................................................................1, 4, 12

*State ex rel. Ogden Newspapers v. Wilkes*,
    566 S.E.2d 560 (W. Va. 2002).......................................................................*passim*

*Pound v. DeMera*,
    Cal. App. 4th 70 (Cal. Ct. App. 2005) ....................................................................18

*Richards v. Jain*,
    168 F. Supp. 2d 1195 (W.D. Wash. 2001)..............................................................14

*Roberts & Schaefer Co. v. San-Con, Inc.*,
  898 F. Supp. 356 (S.D. W. Va. 1995) ..............................................................12, 13

*Shaffer v. Farm Fresh, Inc.*,
  966 F.2d 142 (4th Cir. 1992) ....................................................................................3

*State v. Bancorp Bank*,
  No. N18C-09-240, 2023 WL 21331 (Sup. Ct. Del. Jan. 3, 2023) ...........................18

*Von Newman v. Marshall Univ. Police Dept.*,
  No. 3:19-0075, 2020 WL 186850 (S.D. W. Va. April 14, 2020) .........................4, 5

*Weshler v. Rosensweig*,
  No. B287099, 2019 WL 5617794 (Cal. Ct. App. Oct. 31, 2019) .....................17, 18

**Statutes**

Ala. Code §§ 8-9A-4 ....................................................................................................6

W. Va. Code § 36-4-9a ...........................................................................................8, 10

**Other Authorities**

Cal. R. of Court 8.1115 ..............................................................................................18

W. Va. R. Prof'l Conduct 1.6(b) ................................................................................15

W. Va. R. Prof'l Conduct 1.6(b)(7) ...........................................................................15

W. Va. R. Prof'l Conduct 1.9.............................................................................. *passim*

W. Va. R. Prof'l Conduct 1.9(a) ..................................................................................4

W. Va. R. Prof'l Conduct 1.9 cmt. 2.................................................................5, 7, 14

W. Va. R. Prof'l Conduct 1.9 cmt. 3.............................................................5, 7, 8, 11

W. Va. R. Prof'l Conduct 1.10.........................................................................13, 14, 18

W. Va. R. Prof'l Conduct 1.10(a) ...............................................................................16

W. Va. R. Prof'l Conduct 1.10(b) ........................................................................13, 14

W. Va. R. Prof'l Conduct 1.10 cmt. 1.........................................................................17

W. Va. R. Prof'l Conduct 5.3(c) .................................................................................14

West Virginia Department of Environmental Protection Oil and Gas Well
  database, *available at:* https://apps.dep.wv.gov/oog/wellsearch/wellsearch.cfm...................10

**Argument Summary**

EQT seeks to disqualify every lawyer and law firm currently working for Plaintiffs. EQT repeatedly and wrongly asserts (at a high level of generality) that attorney Brian Swiger must have learned important information about facts, claims, and defenses in his previous representation of the company and that such knowledge will be useful in the present matter. Even a cursory look beyond EQT's scurrilous rhetoric, however, reveals that its accusations are baseless. An examination of the "facts, circumstances, and legal issues" of the representations involving Mr. Swiger show that the disqualification motion is, at best, ill-founded. *See* Syl Pt. 3, *State ex rel. McClanahan*, *v. Hamilton*, 430 S.E.2d 569 (W. Va. 1993) (Disqualification requires an analysis of the "facts, circumstances, and legal issues" of the cases at issue.).

EQT's brief is vague and devoid of facts to support the drastic relief it seeks. Its primary accusation appears to be that Mr. Swiger understands the law and operation of the natural gas business and generally how EQT's lawyers operate. That kind of general knowledge about legal strategy of a former client's "playbook," however, has been unambiguously rejected as a ground for disqualification by the West Virginia Supreme Court. *State ex rel. Ogden Newspapers v. Wilkes,* 566 S.E.2d 560, 566 (W. Va. 2002) ("*Ogden II*"). Relying on the playbook theory is even more baseless here, where EQT's legal team has turned over since Mr. Swiger worked there. *See* Ex. A ¶¶ 12–13.

Apart from an alleged general understanding of EQT's lawyers' predilections, the only justifications EQT points to for disqualification are that Mr. Swiger has in the past represented EQT in lease-related work, that he has general well production and abandonment information, and a vague and unsupported assertion that he has some sort of knowledge about EQT's "future plans." Leaving aside the fact that the leases and other information are not related to Plaintiffs'

claims against EQT, the leases, well production, and well abandonment data are all public information. Such "generally known" information, even if relevant, is not sufficient for disqualification. *See Ogden II*, 566 S.E.2d at 564. Mr. Swiger, as stated in his declaration and as demonstrated by the information attached to EQT's motion did not rely on confidential information for that work. *See, e.g.*, Ex. A ¶ 15.

Further, whatever Mr. Swiger might have known about EQT's "future plans" for its gas wells is irrelevant because the only wells at issue in this case are those owned by Diversified, not EQT. Indeed, Plaintiffs' claims against EQT are based only on EQT's 2018 and 2020 fraudulent transfer of wells to Diversified. ECF No. 96 at 68–74. EQT never alleges and Mr. Swiger firmly denies that he had any knowledge about or played any role in those transfers while working with EQT. Ex. A ¶¶ 8–10.

Unable to point to any protected information that Mr. Swiger might possess, EQT relies heavily on Plaintiffs' response to one of its Requests for Production, and Plaintiffs' refusal to screen Mr. Swiger to prevent his participation in this case. While Plaintiffs maintain that their objections to the request for production were appropriate, they have supplemented their response to make state that Mr. Swiger has not passed on confidential information from EQT. *See* Ex. A ¶¶ 15–16. Screening is unnecessary because there is no conflict, Mr. Swiger has no protected information, and no rule has been violated.

The Court should deny EQT's vague, distracting, and baseless motion, and award any relief deemed appropriate.

**Argument**

**There is no basis to disqualify Brian Swiger, Bailey & Glasser,
or Appalachian Mountain Advocates.**

I.    **Disqualification is a drastic step that deprives litigants of their choice of counsel and
is rife with potential for abuse by litigation opponents seeking strategic advantage.**

Disqualification is a drastic step that should be taken only with extreme caution in West

Virginia. Syl. Pt. 1, *Garlow v. Zakaib*, 413 S.E.2d 112 (W. Va. 1991) (A disqualification motion

"should be viewed with extreme caution because of the interference with the lawyer-client

relationship."); *Cisco v. Norfolk S. Ry. Co.*, No. 2:12-739, 2013 WL 3340740, at *5 (S.D. W. Va.

July 2, 2013) (noting the "well-settled proposition in West Virginia law that disqualification is a

drastic step reserved for those instances where it is absolutely necessary"). This is because

"disqualification of counsel, while protecting the attorney-client relationship, also serves to

destroy a relationship by depriving a party of representation of their own choosing" and thus

"can be misused as techniques of harassment." *Garlow*, 413 S.E.2d at 116; *see also Shaffer v.

Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992) (Motions to disqualify are disfavored

because of the potential "of opposing parties to misuse disqualification for strategic reasons.").

Courts must be cautious to "avoid overly-mechanical adherence to disciplinary canons so as to

preserve litigants' rights freely to choose their counsel." *In re Corwin Place*, 562 B.R. 663, 667

(Bankr. N.D. W.Va. 2019) (quoting *Shaffer,* 966 F.2d at 146) (internal quotation marks omitted).

When questions of conflict arise from lawyers changing firms, courts should keep in

mind the following:

> First, the client previously represented by the former firm must be reasonably
> assured that the principle of loyalty to the client. Second, the rule should not be so
> broadly applied as to preclude other persons from having reasonable choice of
> legal counsel. Third, the rule should not unreasonably hamper lawyers from
> forming new associations and taking on new clients after having left a previous
> association.

*Von Newman v. Marshall Univ. Police Dept.*, No. 3:19-0075, 2020 WL 186850, at *3 (S.D. W. Va. April 14, 2020) (quoting W. Va. R. Prof'l Conduct 1.9 cmt. 4.) In other words, the court must balance the former client's rights of loyalty with the litigant's ability to choose its counsel, and an attorney's ability to change firms and represent new clients. *Id.*

Application of these principles to the facts, the Rules, and comments to the Rules reveals that there has been no Rule 1.9 violation.

## II. EQT has not established a Rule 1.9 violation because Mr. Swiger handled no EQT matters that are the "same or substantially related" to this case.

Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." W. Va. R. Prof'l Conduct 1.9. "Under Rule 1.9(a), determining whether an attorney's current representation involves the same or a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations." Syl. Pt. 3, *State ex rel. McClanahan*, 430 S.E.2d 569. The burden to establish a substantial relationship is on the former client. *Ogden II*, 566 S.E.2 at 563.

An explanation of what constitutes the "same or substantially related matter" appears in the comments to the West Virginia Rules of Professional Conduct.[1] Matters require

---

[1] The West Virginia Supreme Court and other courts applying the West Virginia Rules of Professional Conduct have routinely looked to the comments to the rules as authority. *See, e.g.*, *Ogden II*, 566 S.E.2d at 566 (relying on Comment 3 to Rule 1.9 to deny a motion to disqualify); *State ex rel. McClanahan*, 430 S.E.2d at 572 n.3 (relying on comments to Rule 1.9 for the meaning of "same or substantially related matter"); *Law. Disciplinary Bd. v. Allen*, 479 S.E.2d 317, 325 (W. Va. 1996) (each comment to the rules "explains and illustrates the meaning and

4

disqualification of counsel when either "they involve the same transaction or legal dispute" or "if there otherwise is a substantial risk that *confidential factual information* as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." W. Va. R. Prof'l Conduct 1.9 cmt. 3 (emphasis added). A similar test appears in the Restatement (Third) of the Law Governing Lawyers § 132 (2000) and has been adopted by the West Virginia Supreme Court: "Two matters are substantially related if there is a substantial risk that representation of the present client will involve the use of *confidential information* acquired in the course of representing the former client unless the information has become generally known." *Odgden II*, 566 S.E.2 at 564 (cleaned up).

1. **This case does not "involve the same transaction or legal dispute" as any matter Mr. Swiger handled for EQT.**

The first portion of Rule 1.9 is violated if an attorney represents a subsequent client in the "same matter." In such an analysis, "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Garlow*, 413 S.E.2d at 118; *see also* W. Va. R. Prof'l Conduct 1.9 cmt. 2.

None of the cases referenced by EQT where Mr. Swiger served as counsel involve the same claims or transactions at issue in the present case. The only claims against EQT in this litigation are based on Alabama's Fraudulent Transfer and Voidable Transactions Acts for actual or constructive fraudulent/voidable transfer. *See* Second Am. Compl., ECF No. 96 ¶¶ 604–43 (asserting five claims for relief, two against EQT). To prove actual fraudulent/voidable transfer Plaintiffs must prove that *Diversified* acted with intent to "hinder, delay, or defraud" creditors.

---

purpose of the Rule"); *Von Newman,* 2020 WL 1865850, at *3–4 (relying heavily on Comment 4 to Rule 1.9 to deny disqualification motion).

*See* Ala. Code §§ 8-9A-4; 8-9B-5. To prove constructive fraudulent transfer Plaintiffs must show that *Diversified* did not receive "reasonably equivalent value" in the transactions and that *Diversified* was legally "insolvent" based on one of three tests in the statue. *See* Ala. Code §§ 8-9A-4; 8-9A-5; 8-9B-5; 8-9B-6. EQT does not even attempt to show that Mr. Swiger's prior work involved those issues. That failure alone is fatal to the instant Motion. As Swiger states in his declaration, he was not involved in work regarding fraudulent transfers for EQT or any other company. Indeed, he did not do any transactional work for EQT. Ex. A ¶¶ 8–9.

Even if the claims against Diversified for trespass, nuisance, and negligence were relevant, this case does not involve the same transactions or legal issues as the cases in which Mr. Swiger represented EQT. EQT acknowledges that there is only a "circumstantial overlap" with the *Bounty Minerals* cases. ECF No. 99-15. While EQT provides only a brief in the *Eddy* case as evidence here, that brief shows that it was a lease termination action in which Plaintiffs were suing to regain their *mineral* rights. ECF No. 99-11. This case is distinct in that Plaintiffs are asserting their rights as *surface owners* to compel Diversified to pay for plugging and abandoning wells and equipment on the property they own. *See* ECF No. 96 at 16. While the *Crowder* and *Waco Oil* cases involved claims of trespass, plaintiffs in those case asserted the claim in the context of horizontal drilling. Specifically, they involved the question of whether plaintiffs' surface tract could be used for the drilling and production of natural gas from unrelated third-party mineral tracts. ECF Nos. 99-13, 99-14, 99-15; Ex. A ¶ 15. Here, in contrast, Plaintiffs' claims against Diversified relate to the failure to plug vertical wells and remove equipment from the surface. *See generally* ECF No. 96. The rules make clear that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent

representation involves a position adverse to the prior client." W. Va. R. Prof'l Conduct 1.9 cmt. 2.

In sum, because this case does not involve the same transactions or legal issues as those at issue in Mr. Swiger's previous work for EQT, he cannot be said to have "changed sides" and is not barred by the first standard of Rule 1.9, prohibiting subsequent litigation in the same matter.

## 2. This case is not "substantially related" to any matter that Mr. Swiger handled for EQT.

As described above, matters are "substantially related" only if "they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." W. Va. R. Prof'l Conduct 1.9 cmt. 3. General knowledge about a former client's strategies or "playbook" is insufficient grounds for disqualification. *Ogden II*, 566 S.E.2d at 566. The Court explained this in *Ogden II*:

> Observing that few courts today generally follow the broad-based "playbook" rationale for disqualification . . . , one authority reasons that "[p]ressed too far, the playbook rationale can give a former client an unjustifiably broad right to bar his or its former counsel from representing a later opponent; if 'insight' into intangibles is sufficient it would be a rare case indeed that would not qualify." G.C. Hazard Jr. & W.W. Hodes, 1 *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 13.7 (3d ed. 2000). It also appears that the playbook rationale is not favored under our Rules of Professional Conduct [citing commentary to Rule 1.9]. . . . Even those authorities which recognize the value of a playbook basis for disqualification limit the circumstances in which it is deemed applicable. *See, e.g.*, *Restatement (Third) Law Governing Lawyers* § 132 cmt. *d(iii)* (2000) (disqualification based on playbook information limited to situations in which the general information "will be directly in issue or of an unusual value in the subsequent matter.").

*Id.* Comments to the Rules are in accord:

> In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other

hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation.

W. Va. R. Prof'l Conduct 1.9 cmt. 3.

EQT generally states that Mr. Swiger would have had access to "confidential information" about facts, claims, and defenses in several cases including *Bounty Minerals*, *Eddy*, *Crowder*, *Waco Oil*, and "more than a dozen litigation matters over the course of a decade." ECF No. 99 at 21. Rather than identify the types of confidential information to which Mr. Swiger might be privy, however, EQT primarily takes issue with the fact that Swiger gained insight into EQT's legal strategy. *See, e.g.*, ECF No. 99 at 5–7 (arguing that Swiger had knowledge of defenses and strategies based on flat rate leases); *see also id.* at 16 ("Swiger was privy to EQT's documents and confidential communications on legal strategy [in the *Bounty Mineral* case] and the best defenses on these issues."); *id.* at 17 ("Swiger's name appeared on a motion to dismiss in *Eddy* which took the position that flat rate leases are not abandoned despite the lack of production based on West Virginia Code § 36-4-9a, making him privy to EQT's defenses and strategies on that statute and flat-rate leases."); ("Swiger's representation of EQT in the *Waco Oil* lawsuits thereby gave him access to EQT's confidential analysis of trespass claims as they relate to EQT wells in West Virginia and the best way to defend those kinds of claims in this particular venue and Court."); *id.* at 21 ("While counsel for EQT, Swiger became familiar with and executed EQT's practices on handling cases substantially related to this one.").

EQT's failure to point to any type of relevant factual information Swiger may have accessed during previous litigation that would materially advance Plaintiffs claims is fatal to its motion. General strategy is the hallmark of the "playbook theory," which has been rejected by legal commentators, the authors of the Rules of Professional Conduct, and the West Virginia Supreme Court. *See Odgen II*, 566 S.E.2d at 566. Indeed, EQT's arguments are directly

analogous to those "wide array of business information about specific company policies . . . and methods of decision making" that was explicitly rejected by the West Virginia Supreme Court in reviewing a motion to disqualify under Rule 1.9. *Id.* ("[W]e have meticulously reviewed the sealed file in this case. . . . We are unable to identify any information in that file that will be directly in issue or of unusual value in the matter now pending in the circuit court.").

The application of the playbook theory is particularly misguided in the case at hand. As Mr. Swiger states in the declaration, there was a complete overhaul of EQT's internal legal team in 2019 after a change in control at the company. Ex. A ¶¶ 11–13. Mr. Swiger ceased his representation of EQT after that takeover and has not represented EQT in any subsequent litigation. *Id.* ¶¶ 5, 12. Further, each of the in-house lawyers that Mr. Swiger worked with at EQT have all moved on following the change in ownership. *Id.* ¶¶ 12–13. Accordingly, even if the playbook theory were valid, Mr. Swiger has no knowledge of the legal "playbook" being followed by the new team and its current counsel.

EQT tries to impute knowledge to Mr. Swiger based on his representation of the company in the *Crowder* case, stating that "Swiger had access to and relied upon EQT's confidential and privileged information on allegations relating to 'reasonably necessary' use of the surface, the permissible scope of trespass damages, lease interpretation as related to trespass claims, the approaches to defend trespass actions, and assessing the value of trespass claims. All of those same issues are raised by Plaintiffs' trespass claims in this case, including as related to the claims against EQT." ECF No. 99 at 7. Even putting aside the facts that (1) Plaintiffs allege no trespass claims against EQT, and (2) *Crowder* involved trespass in the context of horizontal drilling under plaintiffs property to access neighboring gas deposits, it is apparent that the case is not "substantially similar." The brief proffered as evidence of Mr. Swiger's work on the case

shows that the *Crowder* matter involved a dispute over "wheelage" based on profits from gas production. ECF No. 99-14. Plaintiffs make no such claims here. *See* ECF No. 96 at 72 ¶ 3 (requesting damages for trespass against Diversified—not EQT—only "calculated as the cost of plugging, remediation, and demolition of the abandoned wells").[2]

The closest EQT comes to identifying factual information that Mr. Swiger might have learned during former representation are passing references to leases with flat rate royalty provisions, well production and abandonment, and the existence of a section of the West Virginia Code (Section 36-4-9a). Indeed, it is evident from the briefs attached to EQT's motion that its position in those cases hinged on lease terms. *See* ECF Nos. 99-8, 99-9, 99-12, 99-14. Each of the leases in those cases were matters of public record, and indeed attached to the relevant complaints. Ex. A ¶ 15 and exhibits thereto. Even if Mr. Swiger also had access to well production and abandonment information (and even if those were relevant to the instant action), that too is public record. That information is reported by the company to the West Virginia Department of Environmental Protection and freely available to any internet user from the Department's website. *See* West Virginia Department of Environmental Protection Oil and Gas Well database, *available at:* https://apps.dep.wv.gov/oog/wellsearch/wellsearch.cfm. It is also available from other state agencies such as the West Virginia Geologic and Economic Survey. And certainly sections of the West Virginia Code are public knowledge and easily accessible by practicing attorneys.

An examination of the complaints for the actions relied on by EQT shows that publicly available information was the source of production and abandonment information in Mr.

_____

[2] No reference to wheelage, gas profits or gas revenue is mentioned throughout the entirety of Plaintiffs' 76-page complaint. *See* ECF No. 96.

Swiger's representation of EQT. *See, e.g.*, ECF Nos. 99-6 ¶¶ 16–17 (*Bounty Minerals*); 99-7 ¶¶ 15–16 (*Bounty Minerals II*); *see also* Ex. A and exhibits thereto. Further, EQT's position in those matters was not based on private or confidential information; rather, it was based on the argument that production data and well abandonment status were irrelevant. *See, e.g.*, Ex. A ¶ 15; ECF No. 99-12 at 2 ("The facts alleged by Plaintiffs in support of their prayer for relief [are]: (1) The West Virginia Geologic and Economic Survey, which has stated that Well 705 has not produced any gas since 2009 and (2) the West Virginia Department of Environmental Protections classification of Well 705 as an "abandoned well."); *id.* at 3 ("Plaintiffs' focus on production, however, is misplaced. West Virginia case law is clear that production is irrelevant to whether a least providing a flat rate rental payment is abandoned or terminated.").

Access to generally known and/or non-confidential information is not a reason to bar an attorney from representing a client with interests generally adverse to a former client. As noted above, both tests for determining whether matters are "substantially related" turn on access to and use of confidential information. W. Va. R. of Prof'l Conduct 1.9 cmt. 3 (Disqualification is warranted "if there otherwise is a substantial risk that *confidential factual information* as would normally have been obtained in the prior representation." (emphasis added)); *see also Ogden II*, 566 S.E.2 at 564 ("Two matters are substantially related if there is a substantial risk that representation of the present client will involve the use of *confidential information* acquired in the course of representing the former client *unless the information has become generally known*." (citations omitted and emphasis added)).

EQT's vague references to its "future plans" regarding its wells are similarly unavailing. *See* ECF No. 99 at 15. Whatever plans EQT may have had for the wells at issue in this matter are irrelevant. Those wells are now owned by Diversified. In support of its assertion of "future

plans," EQT attached a transactional document for the 2020 transfer of wells to Diversified. *See* ECF No. 99-10. If EQT means to imply that Mr. Swiger knew or was involved in the transactions at issue in this litigation, that assertion is misleading and patently false. His name does not appear in the exhibit. *Id.* Further, as Mr. Swiger asserts in his sworn declaration he did not undertake work regarding fraudulent transfers or EQT or any other company, and the transfers at issue here were not relevant to any of his work with EQT. Ex. A ¶¶ 8–10. It is EQT's burden to show that Mr. Swiger's prior work was substantially related to this case and they have failed to meet that burden. *See Ogden II*, 566 S.E.2 at 563 (recognizing the party moving for disqualification bears the burden of proof.)

Based on the "facts, circumstances, and legal issues of [Mr. Swiger's] representations," none of Mr. Swiger's previous work for EQT is substantially related to the present case. *See* Syl. Pt. 3, *State ex rel. McClanahan*, 430 S.E.2d 569. There is no basis for disqualifying Mr. Swiger, Bailey & Glasser, or Appalachian Mountain Advocates from representation of Plaintiffs in this matter.

### III.  There is no appearance of impropriety.

EQT also argues that Bailey Glasser must be disqualified because Mr. Swiger's former work with EQT creates an appearance of impropriety, a malleable test untethered to any Rule. An appearance of impropriety is said to exist when "a reasonable former client would be concerned by" the challenged conduct. *HealthNet, Inc. v. Health Net, Inc.*, 289 F. Supp. 2d 755, 758–59 (S.D. W. Va. 2003). While some courts continue to use the appearance of impropriety standard, *see Roberts & Schaefer Co. v. San-Con, Inc.*, 898 F. Supp. 356, 359 (S.D. W. Va. 1995), others in this District have rejected it, *see Corwin Place*, 562 B.R. at 670.

The bankruptcy court in the Northern District of West Virginia recently rejected the appearance of impropriety standard. *Id.* In doing so, it relied on Second and Seventh Circuit opinions that "have held . . . , without more, the possible appearance of impropriety . . . is simply too weak and too slender a reed on which to rest a disqualification order." *Id.* (citing *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 723 (7th Cir. 1982); *Armstrong v. McAlpin*, 625 F.2d 433, 445 (2d Cir. 1980)). The Court found this analysis "particularly convincing[,] as motions to disqualify are not looked upon favorably in this Circuit or in others." *Id.* The Court also noted that *Healthnet*, a Southern District of West Virginia case, discussed with approval the appearance of impropriety standard, but the standard did not form the basis of the disqualification—Rule 1.9 did. *Id.* ("This court finds the rationale in *Healthnet* unpersuasive within the context of the facts of this case. First, Judge Goodwin found that the appearance of impropriety evidenced the violation of Rule 1.09; an appearance of impropriety alone was not the basis for disqualification.").

In fact, none of the cases that EQT cites regarding the appearance of impropriety standard find an appearance of impropriety without also finding a violation of the Rules of Professional Conduct. *See HealthNet.*, 289 F. Supp. 2d at 761–62 (finding a violation of Rule 1.9 and screening attempts did not prevent disqualification under Rule 1.10); *CSX Transp., Inc. v. Gilkison*, No. 5:05-CV-202, 2006 WL 3203419, at *5 (N.D. W. Va. Nov. 3, 2006) (holding that "because a conflict of interest exists pursuant to Rule 1.10(b) and such conflict cannot lawfully be allayed by screening, disqualification is necessary"); *Burgess-Lester v. Ford Motor Co.*, 643 F. Supp. 2d 811, 817–18 (N.D. W. Va. 2008) (finding a conflict of interest because a lawyer at Bailey Glasser had billed time defending Ford *in the same case involving the same plaintiff* and that screening that lawyer was not even to avoid an appearance of impropriety); *Roberts &*

*Schaefer Co. v. San-Con, Inc.*, 898 F. Supp. 356 (S.D. W. Va. 1995) (finding a conflict of interest under Rules 1.9 and 1.10); *State ex rel. Cosenza v. Hill*, 607 S.E.2d 811, 817 (W. Va. 2004) (holding that disqualification is warranted under Rule 1.10(b)); *Richards v. Jain*, 168 F. Supp. 2d 1195, 1204 (W.D. Wash. 2001) (In a motion to disqualify Plaintiffs' counsel, "the Court finds by analogy to RPC 1.10 and under RPC 5.3(c), [Plaintiffs' counsel] is disqualified from further representation in this case."). Thus, in applying the standard, courts that reference the appearance of impropriety test have only found "impropriety" to exist when there is a substantive violation of the Rule of Professional Conduct.[3]

In any event, there is no appearance of impropriety here. Any superficial resemblance between cases Mr. Swiger worked on for EQT and the present matter come from claims asserted against Diversified—not EQT. Even the overlapping legal issues, such as trespass, appear in obviously dissimilar factual circumstances. Importantly, EQT has failed entirely to point to any type of specific information that Mr. Swiger could have accessed in previous litigation that would materially advance Plaintiffs' position in the present case. Indeed, finding an appearance of impropriety here would undercut the Rules of Professional Conduct themselves and the holdings of the West Virginia Supreme Court. *See* W. Va. R. Prof'l Conduct 1.9 cmt. 2 (explaining that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client"); *see also*

_____

[3] For example, if Mr. Swiger was screened before this case because he represented EQT in a substantially related matter, and EQT brought this motion arguing that the screen was ineffective under Rule 1.10, the appearance of impropriety standard might be properly in play. *See Burgess-Lester*, 643 F. Supp. 2d at 816 ("[W]hen a court is considering whether a screening procedure is adequate, . . . it is to resolve all its doubts in favor of disqualification in order to avoid "the appearance of impropriety." (cleaned up)). But that is not the scenario we have here because Mr. Swiger did not represent EQT in a substantially related matter and there is no conflict.

*Ogden II*, 566 S.E.2d at 564 (rejecting the "playbook theory" for disqualification and adopting a test for substantially related matters that provides that use of "generally known" information is not a ground for disqualification).

## IV.   EQT's assertions regarding Plaintiffs' discovery response and lack of screening are irrelevant and supply no basis for disqualification.

EQT contends that Plaintiffs' response to EQT's Request for Production ("RFP") 6 is an admission that Mr. Swiger has shared confidential information. EQT is incorrect. RFP 6 is a very broad request for all communications referencing Mr. Swiger's "employment by EQT," as well as references to work "he performed on behalf of EQT, and/or knowledge he obtained from EQT prior to this action." This request was not limited in time or scope and was not specific to this litigation. Responsive documents to this request could be construed to include emails between counsel regarding EQT's claim of Mr. Swiger's conflict of interest and emails Mr. Swiger sent to Bailey Glasser when contemplating employment there, just to name a few. Indeed, Rule 1.6(b) of the W. Va. Rules of Professional Conduct specifically allows for disclosure of information from a former client in specific instances. These include disclosure of information to "detect and resolve conflicts of interest arising from the lawyer's change in employment. W. Va. R. Prof'l Conduct 1.6(b)(7). An evaluation of Mr. Swiger's potential conflicts of interest was necessary and was preformed when he was hired by Bailey & Glasser in 2019. Those communications had to be reviewed, although they are clearly protected by privilege and are explicitly allowed under the rules.

Additionally, a search for such information requires the use of search terms like "EQT," "abandonment," and "plugging," which are bound to yield a large number of emails that require review. In fact, a search for such emails has resulted in several thousand "hits" as a result of its shear breadth. That was the basis for Plaintiffs' objection, and it is a valid one. Mr. Swiger has

not divulged any confidential information regarding EQT—because he has no such information—and EQT's point on this is meritless. While Plaintiffs maintain their objection to RFP 6 was appropriate, to put that issue to rest, Plaintiffs have supplemented their disclosures to EQT affirmatively stating that they do not believe there are any responsive documents to EQT's RFP 6. *See* Ex. B (Supplemental Response to RFP 6).

EQT's contention that Mr. Swiger should have been screened is similarly irrelevant. Indeed, EQT's reasoning is circular. While first expressing outrage that Plaintiffs did not attempt to screen Mr. Swiger, EQT then goes on to argue that "screens are ineffective in West Virginia," and that the "RPC do not permit conflicts to be avoided even where (unlike here) the conflicted lawyer is screened." ECF No. 99–17. The application in this matter is simple: Because there was no violation of the rules, there was no need to screen Mr. Swiger.

**V.     Even if Bailey & Glasser were disqualified, there is no justification for barring Appalachian Mountain Advocates from continued representation of Plaintiffs.**

EQT seeks to disqualify not only Brian Swiger and the entire the law firm of Bailey & Glasser, but also Appalachian Mountain Advocates. To do this, they attempt to expand the term "firm" beyond any semblance of its ordinary meaning and beyond the definition given in the comments to the Rules of Professional Conduct. Rule 1.10(a) provides, in relevant part, that "[w]hile lawyers are associated in a *firm*, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so." W. Va. R. Prof'l Conduct 1.10(a) (emphasis added). It is not credible to say in the common understanding of the word that Bailey & Glasser and Appalachian Mountain Advocates are the same "firm." Each organization is independently organized with the West Virginia Secretary of State. *See* Ex. C (Secretary of State Business Information). Each maintains its own robust legal practice independent from one another. Indeed, Appalachian Mountain Advocates regularly sues the West Virginia Department

16

of Environmental Protection, while Bailey & Glasser regularly defends the department. *See, e.g.*, Ex. D[4] (Closing Document in *OVEC v. Caperton*) signed by Mr. Becher of Appalachian Mountain Advocates on behalf of Plaintiffs and Kevin Barrett of the Secretary of the WVDEP.)

The comments to the Rules make clear that the term "firm" should be given this plain meaning. Comment 1 states,

> For purposes of the Rules of Professional Conduct, the term "firm" denotes lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or a legal services organization or the legal department or corporation or other organization.

W. Va. R. Prof'l Conduct 1.10 cmt. 1. This phrasing makes clear that the term is meant to apply to lawyers working for the same organization. While EQT places great weight on the term "association," in context, that word means nothing more than a group of attorneys organized in a manner different than the other specific corporate types. If this were not clear on its own, comment 2—which provides the policy underlying the rule—makes it so. Comment 2 specifies that "[t]he rule of imputed disqualification stated in paragraph (a) *gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm*. . . . Paragraph (a) operates only among the lawyers currently associated in a firm." *Id.* cmt. 2 (emphasis added). Because Bailey & Glasser is not the same law firm as Appalachian Mountain Advocates, the Rule does not apply.

The only case cited by EQT in support of its argument for disqualifying Appalachian Mountain Advocates is an unpublished opinion from a mid-level appellate court in California: *Weshler v. Rosensweig*, No. B287099, 2019 WL 5617794 (Cal. Ct. App. Oct. 31, 2019).[5] Under

---

[4] Representation information for this case is also available on PACER for civil action 3:20-00470 (S.D. W.Va.).

[5] *Weshler* itself cites additional caselaw for the principle of vicarious liability. *Id.* at *12. Each of these cases, however, was decided specifically under California law without reference to Rule 1.10 or any analogous rule and involved more extreme circumstances than those here. *See Pound v. DeMera*, Cal. App. 4th 70 (Cal. Ct. App. 2005) (where the tainted attorney switched

the California Rules of Court such an opinion "must not be cited or relied upon by a court or a party in any other action" except for certain limited exceptions which would not apply here. Cal. R. of Court 8.1115. While this Court is obviously not bound by the California Rules of Court, it is informative that the single case relied on by EQT for this issue may not even be cited as authority *in the jurisdiction in which it was authored.* Moreover, *Weshler* is unpersuasive. The opinion does not rely on (or even cite) Rule 1.10—instead relying on a principal of "*vicarious* disqualification" established in California state courts. *Id.* at * 12. In addition, the relationship of the cases between the former and present client in that case were "not only substantially related, but involve[d] the identical subject." *Id.* at *8.

In short, there is no support in the plain language or comments to Rule 1.10 to support EQT's contention that Appalachian Mountain Advocates should be disqualified. EQT has not cited and Plaintiffs have been unable to find any authority in West Virginia or other jurisdictions using rules of professional conduct with a provision similar to Rule 1.10 to support the contention that co-counsel from a separate firm may be disqualified by imputation. The only law cited by EQT is unique to California, is supported primarily by an uncitable opinion, and does not appear to have been adopted at all outside of that state. Even if Mr. Swiger and Bailey &

---

sides in the same case); *Beltran v. Avon Prods.,* 867 F. Supp. 2d 1068, 1072 (where the tainted attorney possessed actual relevant confidential information); *Advanced Messaging Techs. v. Easylink Servs. Int'l Corp.*, 913 F.Supp.2d 900 (C.D. Cal. 2012). Notably none of these cases have been cited outside of California to disqualify co-counsel working for a separate firm. Indeed, *Beltran* is the only case that appears to have been cited outside of California. It was raised by a party in a disqualification motion in that was ultimately denied in *In re Examination of Privilege Claims*, No. C12-2091-JCC, 2016 WL 11164791 (W.D. Wash. May 20, 2016). It was cited by the Superior Court of Delaware in a footnoted string citation for the proposition that "access alone to inconsequential information does not support disqualification, but review of information material to the underlying litigation weighs in favor of disqualification." *State v. Bancorp Bank*, No. N18C-09-240, 2023 WL 21331 (Sup. Ct. Del. Jan. 3, 2023).

Glasser are disqualified, Appalachian Mountain Advocates should be allowed to continue as counsel.

**Conclusion**

EQT's Motion to disqualify is, for all of the above reasons, not legally sound. Rather it was brought for strategic reasons, to slow the litigation and to vex Plaintiffs' counsel. It is, therefore, a paradigmatic example, pursuant to all relevant caselaw, of a Motion that should be denied.

Dated: January 31, 2023                                    Respectfully submitted,


                                                           /s/ John W. Barrett
                                                           John W. Barrett, Esq. (WVSB No. 7289)
                                                           Brian A. Glasser, Esq. (WVSB No. 6597)
                                                           Brian R. Swiger (WVSB No. 5872)
                                                           Athanasios Basdekis (WVSB No. 9832)
                                                           William S. Flynn (WVSB No, 13947)
                                                           Panida Anderson admitted pro hac vice
                                                           BAILEY & GLASSER, LLP
                                                           209 Capitol Street
                                                           Charleston, West Virginia 25301
                                                           (304) 345-6555 (phone)
                                                           (304) 342-1110 (fax)
                                                           bglasser@baileyglasser.com
                                                           jbarrett@baileyglasser.com
                                                           bswiger@baileyglasser.com
                                                           tbasdekis@baileyglasser.com
                                                           wflynn@baileyglasser.com
                                                           panderson@baileyglasser.com

                                                           J. Michael Becher (WVSB No. 10588)
                                                           Joseph M. Lovett (WVSB No. 6926)
                                                           Isak Howell (WVSB No. 11558)
                                                           Benjamin Luckett (WVSB No. 11463)
                                                           Amanda Demmerle (WVSB No. 13930)
                                                           APPALACHIAN MOUNTAIN ADVOCATES
                                                           P.O. Box 507
                                                           Lewisburg, WV 24901
                                                           (304) 645-9006

19

jlovett@appalmad.org
mbecher@appalmad.org
ihowell@appalmad.org
bluckett@appalmad.org
admmerle@appalmad.org

*Attorneys for Plaintiffs and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

Plaintiffs,

v.

CIVIL ACTION NO. 5:22-cv-171<br>Honorable Judge John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

Defendants.

## **CERTIFCATE OF SERVICE**

I, John Barrett hereby certify that on January 31, 2023, I caused to be filed *Plaintiffs' Amended Response to Defendant EQT's Motion to Disqualify Plaintiffs' Counsel Related to Brian Swiger* with the Clerk of the Court using the CM/ECF System, which caused a true and accurate copy of such filing to be served upon all attorneys of record.

/s/John Barrett<br>John W. Barrett, Esq. (WVSB No. 7289)