IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WHEELING DIVISION

MARK McEVOY, *et al.*,

    Plaintiffs,

v.                                            Civil Action No.: 5:22-cv-00171-JPB
                                                Honorable John Preston Bailey, Judge

DIVERSIFIED ENERGY COMPANY PLC, *et al.*

    Defendants.

*AMICUS CURIAE* BRIEF SUBMITTED BY THE
GAS AND ASSOCIATION OF WV, INC. IN SUPPORT OF DEFENDANTS

George A. Patterson III (WVSB # 2186)
Patrick C. Timony (WVSB # 11717)
Evan G. Conard (WVSB # 12265)
BOWLES RICE LLP
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia 25301
gpatterson@bowlesrice.com
ptimony@bowlesrice.com
econard@bowlesrice.com
Tel.:  (304) 347-1100
Fax:  (304) 343-2867

Counsel for *Amicus Curiae*,
Gas and Oil Association of WV, Inc.

TABLE OF CONTENTS

I.     TABLE OF AUTHORITIES ............................................................................................... ii

II.    STATEMENT OF INTEREST ............................................................................................ 1

III.   STATEMENT OF CASE ................................................................................................... 3

IV.   ARGUMENT ..................................................................................................................... 5

     A.    The Consent order requires Diversified to identify bona fide future uses and if none, then to plug wells. Plaintiffs' *Complaint* fails to allege that the November 19, 2018 Consent Order entered by the West Virginia Department of Environmental Protection, Office of Oil and Gas, was not a lawful exercise of the agency's regulatory authority. ........................................................................................................ 5

     B.    Plaintiffs will not be obligated to plug Diversified's wells. .................................... 8

V.    CONCLUSION .................................................................................................................. 9

## I. TABLE OF AUTHORITIES

**CASES**

*Blake v. Columbia Gas Transmission, LLC*,
    CA 3:19-0847. 2021 WL 951705, (S.D. WV 2021) .......................................................... 9

*Blake v. Columbia Gas Transmission, LLC*,
    CA 3:19-0847. 2022 WL 866269, (S.D. WV 2022) .......................................................... 9

*Martin v. Hamblet*,
    737 S.E.2d 80 (W. Va. 2012) ............................................................................................ 7

Statutes

W. Va. Code § 22-1-6(d) .................................................................................................... 2

W. Va. Code § 22-6-1 ......................................................................................................... 7

W. Va. Code § 22-6-2 ......................................................................................................... 6

W. Va. Code § 22-6-2(a) ..................................................................................................... 6

W. Va. Code § 22-6-6 ......................................................................................................... 4

W. Va. Code § 22-6-19 ........................................................................................... 3, 5, 6, 7, 8

W. Va. Code § 22-6-23 ....................................................................................................... 4

W. Va. Code § 22-6-24 ....................................................................................................... 4

W. Va. Code § 22-6-28 ....................................................................................................... 7

W. Va. Code § 22-6-28(a) ................................................................................................... 6

W. Va. Code § 22-6-29 ....................................................................................................... 8

W. Va. Code § 22-6-29a ..................................................................................................... 8

W. Va. Code § 22-6-34 ....................................................................................................... 4

W. Va. Code § 22-6-39 ....................................................................................................... 4


## I. TABLE OF AUTHORITIES

**CASES**

*Blake v. Columbia Gas Transmission, LLC*,
    CA 3:19-0847. 2021 WL 951705, (S.D. WV 2021) .......................................................... 9

*Blake v. Columbia Gas Transmission, LLC*,
    CA 3:19-0847. 2022 WL 866269, (S.D. WV 2022) .......................................................... 9

*Martin v. Hamblet*,
    737 S.E.2d 80 (W. Va. 2012) ............................................................................................ 7

Statutes

W. Va. Code § 22-1-6(d) .................................................................................................... 2

W. Va. Code § 22-6-1 ......................................................................................................... 7

W. Va. Code § 22-6-2 ......................................................................................................... 6

W. Va. Code § 22-6-2(a) ..................................................................................................... 6

W. Va. Code § 22-6-6 ......................................................................................................... 4

W. Va. Code § 22-6-19 ........................................................................................... 3, 5, 6, 7, 8

W. Va. Code § 22-6-23 ....................................................................................................... 4

W. Va. Code § 22-6-24 ....................................................................................................... 4

W. Va. Code § 22-6-28 ....................................................................................................... 7

W. Va. Code § 22-6-28(a) ................................................................................................... 6

W. Va. Code § 22-6-29 ....................................................................................................... 8

W. Va. Code § 22-6-29a ..................................................................................................... 8

W. Va. Code § 22-6-34 ....................................................................................................... 4

W. Va. Code § 22-6-39 ....................................................................................................... 4

## II. STATEMENT OF INTEREST[1]

The Gas and Oil Association of WV, Inc. ("GO-WV"), a West Virginia non-profit corporation, is the successor entity to the Independent Oil and Gas Association of West Virginia ("IOGA") and the West Virginia Oil and Natural Gas Association ("WVONGA"). IOGA was created in 1959, and, for more than 60 years, represented the interests of independent oil and gas producers and others involved in the production of oil and natural gas in West Virginia. WVONGA was a West Virginia corporation, formed in 1988, that also represented companies and individuals involved with the West Virginia oil and gas industry. Effective as of January 1, 2021, WVONGA merged into IOGA, and IOGA changed its name to the GO-WV.

GO-WV currently has 465 members which operate in nearly every county of West Virginia and employ thousands of people across the state. Oil and gas production companies and individuals, together with their secondary suppliers and service providers, account for payrolls in excess of $5 billion and approximately 82,000 jobs, 32,300 directly and 49,700 indirectly, comprising 9.2 percent of West Virginia's total employment.[2] All told, the American Petroleum Institute estimates that the West Virginia oil and gas industry contributes $11.2 billion toward the state's gross domestic product. *Id.* GO-WV's producer members account for an estimated 85% of all oil and gas production in West Virginia and the resultant severance tax revenues for state and local governments. In fiscal year 2022, the West Virginia State Tax Department reported approximately 552 million dollars in severance tax revenue. While the Tax Department has not

---

[1] GO-WV states that no counsel for any party authored or contributed to this *amicus curiae* brief, and no party, or its counsel, made any monetary contribution specifically intended to fund the preparation or submission of this *amicus curiae* brief. Partners of Bowles Rice LLP have represented Diversified in other matters and Diversified is a member of GO-WV.

[2] *See New Analysis: West Virginia-Made Natural Gas and Oil Drives U.S. Economic Recovery, Strengthens All Industries*, AMERICAN PETROLEUM INSTITUTE, https://www.api.org/news-policy-and-issues/news/2021/07/20/west-virginia-pwc (Feb. 8, 2022).

released 2022 numbers, property taxes provided an additional $155 million in ad valorem property taxes in 2021.

Vertically drilled wells, like the wells in issue in this case, supply natural gas to thousands of West Virginia residents. For example, in West Virginia Public Service Commission Case No. 20-0745-G-D Hope Gas Company stated that it serves more than 10,500 customers from vertical wells such as these by use of natural gas gathering or production lines, commonly known as farm tap or field tap customers. July 27, 2021 Comm'n Order, Hope Gas Inc., Case No. 20-0745-G-D, p. 4. Other utilities have thousands of similar customers. Most of these taps receive their physical supply from local wells, sometimes directly from well lines or from a natural gas gathering system associated with multiple vertical wells. *Id.* Diversified's[3] wells that can be used in the future by recompleting them in other formations or drilling deeper may be a source of natural gas for West Virginia residents. The availability of additional supply from wells such as the Diversified wells that can be placed in production is important to natural gas consumers and brings revenue to our state. Storage of carbon dioxide or other liquids or gases may also be a possibility. The West Virginia Department of Environmental Protection (WVDEP) considers these uses, and other possible future uses, when determining which wells to plug.

Consent orders are specifically authorized by W. Va. Code § 22-1-6(d) and are often used by WVDEP to enforce our oil and gas laws. Consent orders require operators to act and save litigation costs. Plaintiffs in effect ask this Court to overturn Diversified's consent order (ECF. 44-1) by requiring the plugging of many wells without considering future uses, and therefore without compliance with West Virginia law. Plaintiffs' collateral attack on the order at issue in

---

[3] Plaintiffs' *Complaint* named Diversified Energy Company PLC, Diversified Gas & Oil, PLC, Diversified Production LLC, Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC, and Alliance Petroleum Corporation as defendants. Collectively, these entities are referred to herein as "Diversified".

2

this case could create a novel and unfounded precedent adverse to a vital, important West Virginia industry. GO-WV asks this Court to receive this *amicus curiae* brief and dismiss Plaintiff's *Second Amended Class Action Complaint* (the "Complaint").

### III. STATEMENT OF CASE

The Complaint does not allege that drilling or operating any of the wells in issue was unauthorized, negligent, or wrongful in any way. Therefore, drilling and operating the wells on Plaintiffs' property is not in issue here. Instead, Plaintiffs' alleged trespass, nuisance, and negligence claims are based on Diversified's alleged breach of a duty to plug oil and gas wells under W. Va. Code § 22-6-19. Complaint ¶¶ 78, ECF 96 p. 16. Plaintiffs contend that their claims are based on common law, but Plaintiffs immediately argue "The Consent Order is Woefully Inadequate to Address Diversified's Problem" (Response ECF 126, p 34). As requests for relief, the Complaint asks for attorneys' fees and

- damages "calculated at the cost of plugging, remediation, and demolition of the abandoned wells"

- the Court to "Create a fund from the damages awarded from EQT to be used to plug and otherwise decommission Class members' wells in West Virginia" and

- the Court to "Create a separate fund from damages awarded from Diversified to be used to plug and otherwise decommission Class members' wells."

Complaint, ECF. 96 p. 75-76.

Plaintiffs do not seek removal of well surface equipment. They ask that this Court order subsurface plugging of Diversified's wells notwithstanding WVDEP's current supervision and control of that activity generally, and with respect to Diversified particularly. Plugging a well requires the consent of, and a permit from, the WVDEP. W. Va. Code § 22-6-6; W. Va. Code R. 35-4-5.2.d. A performance bond with the WVDEP is required (W. Va. Code § 22-6-23, 26) and

3

methods of plugging supervised by the WVDEP are prescribed. W. Va. Code § 22-6-24. If a plugging permit is issued, it may require notice to parties not joined here[4] and compliance with West Virginia statutes and regulations proposed and administered by the WVDEP. If the Court granted the relief requested, the Court's receiver would still need a permit from the WVDEP before plugging any well. W. Va. Code § 22-6-6. Willfully violating plugging laws is a misdemeanor. W. Va. Code § 22-6-34. And, the WVDEP has the legal authority and power to require compliance with our statutes. W. Va. Code § 22-6-39. West Virginia's pervasive statutory and regulatory scheme regarding plugging wells unequivocally requires the supervision, action and consent of the WVDEP.

The relief Plaintiffs seek is a collateral attack on the Consent Order which requires Diversified to take steps prior to plugging including identifying bona fide future uses for Diversified's wells. Plaintiffs should have gone to the WVDEP and requested relief. Plaintiffs ask this Court to declare that the WVDEP is not doing its job, and to substitute its judgment for that of the WVDEP. GO-WV respectfully contends this Court does not have jurisdiction to collaterally attack the WVDEP and asks this Court to dismiss this case.

---

[4] W. Va. Code § 22-6-23 requires notice to certain coal owners and operators.

4

## IV.  ARGUMENT

A.  The Consent order requires Diversified to identify bona fide future uses and if none, then to plug wells.  Plaintiffs' *Complaint* fails to allege that the November 19, 2018 Consent Order entered by the West Virginia Department of Environmental Protection, Office of Oil and Gas, was not a lawful exercise of the agency's regulatory authority.

Plaintiffs allege that Diversified failed in its duty to plug wells.  As to Diversified's alleged duty to plug, Plaintiffs assert the duty arises because the wells are abandoned pursuant to W. Va. Code § 22-6-19. Complaint ¶¶ 78, ECF 96 p. 16.  That is the basis of all Plaintiffs' claims.  Because the wells are allegedly abandoned under W. Va. Code § 22-6-19, in Plaintiffs' view the mere existence of Diversified's unplugged wells on their property is a trespass, a nuisance, and constitutes negligence.  However, wells are not abandoned under W. Va. Code § 22-6-19 if the "… the operator furnishes satisfactory proof *to the director* [of WVDEP's Office of Oil and Gas] that there is a bona fide future use for a well." W. Va. Code § 22-6-19 [emphasis added]. Diversified has satisfied the director, and the abandonment presumption has been rebutted. Diversified's wells have not been abandoned as a matter of law.

Regarding the Consent Order and its many other duties, the WVDEP Office of Oil and Gas acts in accordance with the overall interests of our State, including our citizens' interests in heating their homes with natural gas, tax revenues generated from oil and gas production, interests of mineral owners who may want wells so that their oil and gas can be produced, and the interests of the environment.  Oil and gas wells can have bona fide future uses other than producing oil and gas.  One such use may be underground injection of carbon dioxide to prevent it from entering the air.  Plugging a well limits the mineral owners' (who are not parties to this case) ability to access their minerals. Acting in the broader interests of the State of West Virginia, the WVDEP entered a Consent Order which orders Diversified to examine and identify its wells, importantly including those which have a bona fide future use or should be put back in production, and those which

5

should be plugged.  Diversified is required to first look for those uses, and if none exist, to plug its wells.  The Consent Order requires Diversified to plug or place in production at least fifty wells per year.  Diversified is doing so, has posted an additional $3,000,000 bond to secure its performance of the Consent Order, and is also subject to $250 per day penalty for non-compliance. ECF. 44-1.

Knowing that abandonment has not occurred, Plaintiffs collaterally attack the WVDEP order and ask this court to substitute its judgment for that of the WVDEP, which GO-WV respectfully submits this Court does not have jurisdiction to do and should not do.  Before abandonment occurs under § 22-6-19, the WVDEP determines that a well does not have a bona fide future use.  Under the Consent Order, when Diversified identifies a well that does not have a future use, it plugs the well within that year as required by the statute.  The Complaint is based on a duty to plug which does not yet exist because the WVDEP has not found Diversified's wells abandoned or otherwise entered a plugging order.

W. Va. Code § 22-6-2 provides that the Secretary of the West Virginia Department of Environmental Protection (the "DEP")  has "… full charge of the oil and gas matters set out in article 6, 6a, 8, 9, 10, and 21 of Chapter 22 of the W. Va. Code.  One of those matters is the power and duty to execute and enforce our laws related to oil and gas. W. Va. Code § 22-6-2(a).  The Office of Oil and Gas is charged with carrying out the regulatory authority granted to the DEP, subject to the DEP's Secretary supervision. W. Va. Code § 22-6-2(c)(1).

Specifically, DEP's Secretary is required to exercise supervision over the drilling, casing, plugging, filling, and reclamation of all wells in West Virginia.  W. Va. Code § 22-6-28(a). W. Va. Code § 22-6-28(a) further provides that any aggrieved person shall be permitted to file a formal complaint charging any well operator with failure to plug and reclaim any well in

6

accordance with article 6 of Chapter 22 of the West Virginia Code. *Id.* A complainant is provided with an opportunity for a hearing, and following such hearing, DEP's Secretary [WVDEP] is required to make such findings of fact and enter such order that, *in the DEP Secretary's judgment*, is just and right and necessary for proper administration of article 6 of Chapter 22 of the West Virginia Code.

Based on this regulatory framework, WVDEP and Diversified entered into a Consent Order on November 19, 2018, pursuant to DEP's authority under W. Va. Code § 22-6-1, *et seq.* Under the Consent Order, DEP found that it was in the best interests of the state and its citizens to allow Diversified the opportunity to inventory the wells it recently acquired that might meet the definition of an "abandoned well" under W. Va. Code § 22-6-19 to determine if a well should be placed back into production, or put to another use, or plugged if a bona future use did not exist for a given well. The Consent Order also found that it was acceptable to establish a schedule whereby Diversified is committed either to plug a certain number of oil and gas wells or bring the wells into production during a given calendar year.

Plaintiffs have failed to exhaust their administrative remedies. They could ask WVDEP to review their situations. W. Va. Code § 22-6-28 authorizes that request, but Plaintiffs offer no allegation that they did so. Instead, Plaintiffs collaterally attack the WVDEP. That surface owners, like the Plaintiffs here, do not have a statutorily defined right of appeal under W. VA. Code § 22-6-28 is inconsequential, because the limitation prescribed by the West Virginia Legislature is exclusive. *See Martin v. Hamblet*, 737 S.E.2d 80, 90 (W. Va. 2012).

Plaintiffs' *Second Amended Complaint* does not challenge WVDEP's authority to enter into the Consent Order with Diversified, nor do Plaintiffs make any specific challenge as to the factual findings, conclusions of law, and order for compliance. Plaintiffs ask this Court to

7

undertake a multiyear supervision of a receiver appointed to use presumed class damages to "plug and decommission Class members wells". Complaint p. 76, ECF. 96, p 918. They ask for a receiver who would be ordered by this Court to plug wells, which would require the consent and approval of the WVDEP.

B.      Plaintiffs will not be obligated to plug Diversified's wells.

Plaintiffs' Complaint ECF 96, Page ID # 847, para. 12 incorrectly alleges that "…landowners with Diversified wells on their property will be stuck with plugging and remediation liability, and must bear both the cost to remediate and plug the wells…". Landowners have no duty or legal obligation to plug wells; that duty falls upon the well operator. W. Va. Code § 22-6-19. If wells are abandoned without a responsible operator, that duty falls to WVDEP, but Diversified has not, and Plaintiffs have not alleged, that Diversified has failed to plug a well as required by the WVDEP.

In addition to the obligations of the operator to plug when the wells are abandoned, our State laws require all well operators to make payments into West Virginia's Special Reclamation Fund administered by the WVDEP. W. Va. Code § 22-6-29 requires operators to pay $150 for each activity for which a well work permit is requested, excepting only a plugging permit. Additionally, the Legislature dedicated severance tax revenues to the Oil and Gas Abandoned Well Plugging Fund created under § 22-6-29a. All severance tax from all wells producing between 5,000 cubic feet and 60,000 cubic feet per day of gas and wells producing between one-half barrel to 10 barrels per day of oil is paid to that fund. Under West Virginia law well operators and the WVDEP are the sole parties with the obligation to plug wells.

In the Infrastructure Investment and Jobs Act (IIJA), the federal government provided $4.275 billion dollars for States to use to plug abandoned wells. The WVDEP is using its share of those funds. Supervision of abandoned wells, should Diversified's wells become abandoned

8

(which it is are not), is the responsibility of the WVDEP, which takes that responsibility seriously and is doing its job.

## V.  CONCLUSION

As a purported class action, the Complaint is against the WVDEP for allowing EQT to transfer wells to Diversified and for failure to order unabandoned wells plugged, but WVDEP is not joined as a party.  Mineral owners affected by a plugging order are not parties to this case.  If the Plaintiffs wanted a different finding by the WVDEP, they should have brought an administrative complaint before the WVDEP.  This Court does not have jurisdiction to entertain the present case.  *Blake v. Columbia Gas Transmission, LLC*, CA 3:19-0847. 2021 WL 951705, (S.D. WV 2021); *Blake v. Columbia Gas Transmission, LLC*, CA 3:19-0847. 2022 WL 866269, (S.D. WV 2022).  Defendants' arguments not addressed herein are also valid. GO-WV supports Defendants' requests that the Complaint be dismissed.

                                                GAS AND OIL ASSOCIATION OF WV, INC.

                                                By counsel,

/s/ George A. Patterson, III
George A. Patterson III (WVSB # 2831)
Patrick C. Timony (WVSB # 11717)
Evan G. Conard (WVSB # 12265)
BOWLES RICE LLP
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia 25301
gpatterson@bowlesrice.com
ptimony@bowlesrice.com
econard@bowlesrice.com
Tel.:   (304) 347-1100
Fax:   (304) 343-2867