# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### WHEELING

FILED

MAR -7 2023

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

      **Plaintiffs,**

v.

      CIVIL ACTION NO.: 5:22CV171
      (BAILEY)

DIVERSIFIED ENERGY COMPANY
PLC, et al.,

      **Defendants.**

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION [117] TO COMPEL

    Currently pending before the Court is Plaintiffs' Motion [117] to Compel Production of Documents from Diversified[1], filed January 27, 2023. Briefing is complete, and an Oral Argument/Evidentiary Hearing was held on February 21, 2023. After considering the parties' briefs, the applicable law, and the Court file, and after considering the evidence and arguments submitted during the February 21, 2023, hearing, the undersigned is prepared to issue a decision.

### I.    Factual/Procedural History

    This case concerns thousands of abandoned gas wells in West Virginia, which Plaintiffs claim Diversified has a duty to plug and decommission. ECF Nos. 96; 118 at p. 1. More specifically, Plaintiffs allege that, at the time of the transfers of the wells at issue (July 2018 and May 2020), Diversified knew that it could not pay its long-term plugging obligations but proceeded with the well purchases anyway. ECF No. 118 at p. 1. Plaintiffs set forth the following causes of

---

[1] "Diversified Defendants" are Diversified Energy Company, PLC; Diversified Gas & Oil, PLC; Diversified Production LLC; Diversified Gas & Oil Corporation; Diversified Oil and Gas LLC; and Alliance Petroleum Corporation.

action against Diversified: Trespass, Nuisance, Negligence, Avoidance and Recovery of a Voidable Transfer as the Result of an Actual Fraudulent Transfer; and Avoidance and Recovery of Voidable Transfer as the Result of a Constructive Fraudulent Transfer. ECF No. 96.

The instant Motion concerns Plaintiffs' First Request for Production of Documents, served on or about September 29, 2022. ECF No 47. On November 3, 2022, Diversified provided its Responses and Objections.[2] ECF No. 79. On November 25, 2022, Plaintiffs wrote to Diversified in an attempt to resolve Diversified's objections. ECF No. 118-3. Counsel met and conferred on December 20, 2022. The meeting did not resolve any of the disputed issues. Plaintiffs agreed to review certain of their discovery requests. In a letter dated January 17, 2023, Plaintiffs stated that they would stand by their requests as written. ECF No. 118-4. Diversified responded in a letter dated January 24, 2023, in which Diversified reiterated its position regarding the myriad discovery requests at issue and asking for another meet and confer. ECF No. 138-1. Plaintiffs did not respond to Diversified's January 24th letter and instead filed this Motion on January 27, 2023. ECF Nos. 117 and 118.

A hearing was held on February 21, 2023, at which time representatives of Plaintiffs and Diversified appeared in person. During the hearing, the parties addressed the pending issues by broad category, identifying three categories of requests and objections for determination: (1) those to which Plaintiffs claim Diversified asserted boilerplate objections; (2) those to which Diversified objected and responded that it will produce information relating to West Virginia wells only ("geographic limitation"); (3) those to which Diversified objected and responded that it will produce information from 2017 forward (rather than 2014 forward, as Plaintiff has requested)

---

[2] Diversified has not provided supplemental responses and objections.

("temporal limitation"). Plaintiffs' have also requested that the Court order Diversified to provide a privilege log and impose a timeframe for production.[3]

In addition to the above, Plaintiffs seek a determination as to Diversified's relevance and undue burden objections not a part of the aforementioned categories, which are a part of many, if not all, of Plaintiffs' requests. ECF Nos. 117 and 118.[4] The Court will address the parties' arguments as to the broad categories of objections first. The Court will then address the individual RPD vis-à-vis Diversified's relevance and undue burden objections as requested in Plaintiffs' Motion.

## II. Applicable Law

Inasmuch as this Motion concerns requests for production of documents, Fed. R. Civ. P. 34 applies. Additionally, R. 26 and R. 37 also apply. Finally, LR Civ P 37.02 applies.

## III. Arguments of the Parties

### A. Plaintiffs' Arguments

Plaintiffs contend that Diversified's responses contain boilerplate objections which should be deemed waived; that Diversified has improperly limited responses to certain requests for production to West Virginia wells; that Diversified has improperly limited its production of information concerning the 2018 and 2020 transfers to information and documents from 2017 forward; and that Diversified's remaining relevance and undue burden objections should be overruled. Plaintiffs further contend that the Court should impose a production schedule and/or a deadline for Diversified to produce documents given Diversified's historical delay in responding

---

[3] Discovery ends August 4, 2023.
[4] There is no indication that these items have been resolved.

3

to discovery requests. Finally, Plaintiffs ask the Court to order Diversified to provide a privilege log for documents that have been withheld.

### B. Defendants' Arguments

Diversified argues that Plaintiffs' Motion should be denied because Plaintiffs did not adequately engage in the meet and confer process before filing the instant Motion. Diversified further argues that its objections are not boilerplate but are properly supported and narrowly tailored objections, including those for relevance and undue burden; that its discovery responses are properly limited to West Virginia wells because only West Virginia wells are at issue; and that 2017 is a reasonable timeline for production of information relating to the company's solvency prior to the 2018 and 2020 transfers. Diversified argues that imposing a timeline upon production of documents is not necessary as Diversified is complying with its discovery obligations. Defendant further argues that it must produce documents on a rolling basis given the number of documents involved. Finally, Diversified argues that a privilege log is not necessary because it did not withhold documents based upon any privilege.

## IV.   Discussion

### A. Meet and Confer

After considering the record, the undersigned is satisfied that the meet and confer requirements have been met. Plaintiffs advised Diversified about what Plaintiffs believe to be the deficiencies in Defendant's responses to Plaintiff's discovery requests. ECF No. 118-3. The parties also participated in a videoconference meeting on December 20, 2022, to discuss these discovery issues. ECF No. 150-1. Defendant acknowledges participating in this conference. *See* ECF No. 138 at p. 5. The parties continued to exchange communications after the videoconference. ECF Nos. 118-4 and 138-1. Clearly, issues remained after these efforts.

Remaining issues after a meet and confer has taken place "does not serve as the standard against which the Court determines whether a meet-and-confer has taken place." *O'Neal v. Capital One Auto Finance, Inc.*, 2011 WL 3877083, at * 2 (N.D.W. Va. Aug. 31, 2011). Based upon the record, the undersigned is satisfied that Plaintiffs made a good faith effort to meet and confer with Diversified's counsel before filing their Motion to Compel.

### B. Broad Categories Set Forth at Hearing

#### 1. Boilerplate Objections

Plaintiffs argue that Diversified has asserted boilerplate objections to the following Requests for Production: 8, 9, 11, 12, 17, 19, 20, 22, 23, 25, 30, 39, 44-47, 50-53, 55, 59, 61-66, 68-70, and 72. The undersigned has reviewed Diversified's responses to each of these Requests for Production and would conclude that Diversified's responses and objections do not constitute boilerplate objections.

"Grounds for objecting to discovery must be stated with specificity." *Hager v. Graham*, 267 F.R.D. 486, 492 (N.D.W. Va. Apr. 28, 2010), citing Fed. R. Civ. P. 34(b)(2)(B). "It is well established in this jurisdiction that general objections are impermissible." *Id.* (citations omitted). "General objections to discovery, without more, do not satisfy the burden of the responding party under the Federal Rules of Civil Procedure to justify objections to discovery because they cannot be applied with sufficient specificity to enable courts to evaluate their merits." *Id.* (citations omitted). Though general objections, without more, do not comply with the Rules of Procedure, the assertion of specific grounds in addition to boilerplate language is permissible. *Id.*

In the instant matter, Diversified's responses and objections comply with R. 34. While the responses and objections do contain what could be considered boilerplate language, the responses and objections nevertheless elaborate beyond the boilerplate language to explain the specific bases

for the objections asserted.  For example, but not by way of limitation, Diversified's response to

RPD No. 8, which is characteristic of the responses and objections at issue, is as follows:[5]

> **RPD No. 8:**  Any documents from 2014 to the present related to the measurement or assessment of production level of wells owned by the Diversified Defendants during this time period.

> **Response:**  Diversified Defendants object to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case.  Only allegedly non-productive wells are at issue in this case and there are other Requests for information pertaining to these wells; the productivity of wells is not at issue.  For the same reason, Diversified Defendants object that the burden of complying with this Request outweighs the relevance of the requested information, which is zero.  Diversified Defendants also object to the timeframe of the Request as unduly burdensome and calling for the production of irrelevant material; the statute of limitations bar claims for conduct that occurred more than two years ago and, furthermore, the earliest disputed transfer was in July 2018.  Accordingly, Diversified Defendants will limit their response to information from July 1, 2017 to present.  Furthermore, Diversified Defendants object to that this request potentially implicated wells other than those that are at issue in this case and therefore seeks irrelevant matter, is unduly burdensome, and is not proportionate to the needs of the case; Diversified Defendants will limit their response only to West Virginia wells.

> In accordance with the above objections, Diversified Defendants will not produce anything in response to this Request.

As set forth above, Diversified has explained its objections for proportionality, relevance, breadth, and burden, and the undersigned is sufficiently able to evaluate the merits of Defendant's objection(s).  Diversified's objections, therefore, are not boilerplate objections.

## 2.  Geographic Limitation

Diversified has objected to providing information concerning wells outside of West Virginia because wells outside of West Virginia are not the subject of Plaintiffs' tort claims and are not part of the 2018 and 2020 transfers.  Diversified further argues that information concerning

---

[5] For the sake of brevity, the Court has used Diversified's response and objections to RPD No. 8 as an exemplar for the over 30 Requests for Production at issue.

wells outside of West Virginia is not relevant to a solvency evaluation. Plaintiffs argue that information concerning wells outside of West Virginia is relevant and necessary because, to determine the solvency of Diversified in and around the time of the 2018 and 2020 transfers, Plaintiffs must examine Diversified's solvency on a company-wide basis. Plaintiffs argue that information regarding Diversified's operations, including wells outside of West Virginia, is necessary to conduct such a solvency analysis. At issue are Diversified's responses to RPD Nos. 1-20, 26-27, 35-36, 41-51, 53-54, 56-70, and 72. The undersigned is persuaded by Plaintiffs' argument. Diversified's geographic objection is therefore **OVERRULED**.

### 3. Temporal Limitation

Diversified has objected to Plaintiffs' request for information which predates July 2017, which is one year before the first transfer at issue in this case (July 2018). Diversified argues that information before July 2017 is not relevant or necessary for a solvency analysis for a transfer that occurred in July 2018 or May 2020. Additionally, Diversified argues that obtaining information prior to July 2017 is unduly burdensome given the way records were kept prior to that time, and the changeover to its current system of record keeping. *See* ECF No. 138-2. Plaintiffs argue that records and information before July 2017 are relevant and necessary for Plaintiffs to conduct its solvency analysis. Given the scope and breadth of the transfers involved in the July 2018 and May 2020 transactions, Plaintiffs argue that these transfers were likely contemplated for a very long time before they were completed. Plaintiffs also argue that these records are necessary to evaluate how Diversified's accounting and valuation practices have changed over time. Records dating back to 2014 are therefore relevant and necessary. At issue are RPD Nos. 1-13, 15-19, 22-27, 32-36, 39-66, 68-70, and 72-73.

After considering the parties' arguments on this issue, the undersigned would **OVERRULE IN PART AND SUSTAIN IN PART** Diversified's objection. Plaintiffs' Second Amended Complaint asserts that Diversified engaged in accounting practices which "deviate significantly from standard industry practices," to manipulate their solvency status. ECF No. 96 at p. 12-15. Plaintiffs should therefore have the ability to investigate these claims. The Court is also persuaded that transactions as large as the well transfers in July 2018 and May 2020 were likely contemplated for a long period of time, and that preparations for these transactions were likely ongoing for longer than one year prior to completion of the transfer. However, the undersigned is mindful that discovery should not be a fishing expedition. *See Cuomo v. Clearing House Assn., LLC*, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through…records for evidence of some unknown wrongdoing"). The Court is also mindful of Diversified's arguments that obtaining financial information prior to July 2017 will be burdensome.

Accordingly, the Court will limit discovery to July 2016 – two years prior to the first transfer at issue. This should allow Plaintiffs to investigate the historical picture of Diversified's accounting practices over a period of time as well as Diversified's preparations for the transfers at issue, while at the same time limiting Diversified's burden in obtaining and producing the information requested and guarding against a fishing expedition into Diversified's financial information.

### 4. Possession, Custody, and Control

Inasmuch as it appears that the parties agree as to Diversified's obligation concerning documents of which it has possession, custody, and control, and inasmuch as this issue was not

raised during the February 21, 2023, hearing, the undersigned has considered this issue **MOOT**. *See* ECF Nos. 118 at p. 13-14; 138 at p. 21-23; and 166 (generally).

### 5. Privileged Documents and Privilege Log

Plaintiff next argues that Diversified should be compelled to provide a privilege log for the privilege objections asserted in response to RPD Nos. 1-2, 4, 7, 11-12, 16-18, 22-23, 26, 28, 33-34, 39, 44-48, 50-52, 55, 57-59, 61-66, 70, and 72. Diversified argues that it did not assert a privilege objection, that is was merely reciting its production obligation under the Federal Rules, and that no privilege log is necessary. Diversified also acknowledges that it will provide a privilege log if documents are withheld in the future on the basis of a privilege.

After reviewing the RPD at issue, the undersigned would agree with Diversified that its responses did not assert a privilege. Further, the responses at issue do not indicate that documents or information are being withheld. Plaintiffs' Motion as to this issue is therefore **DENIED**. Nevertheless, the parties are reminded of their obligation to provide a privilege log where necessary and appropriate pursuant to the applicable rules of procedure.

### C. Relevance and Undue Burden Objections Not Otherwise Addressed[6]

The following RPD are at issue here: 8-9, 11-12, 17, 19-23, 25-26, 30, 39, 44-47, 50-53, 55, 59, 61-66, 68-70, and 72.[7] Only those relevance objections and/or burden objections not previously addressed will be discussed in this section. The findings in this section should not be read to contradict the findings in any other section of this Order. The findings previously set forth apply to the RPD identified below, unless otherwise stated.

---

[6] Any objection as to relevance or undue burden because of ambiguity or vagueness has not been considered inasmuch as the parties have represented that the vagueness issue has been resolved. ECF No. 118 at p. 3.
[7] For the sake of brevity, the RPD and responses are not set forth herein. They are located at ECF No. 118-2.

**RPD No. 8.**   Plaintiffs ask the Court to overrule Diversified's **relevance objection and its burden objection**.   Diversified objects that this request is irrelevant because only allegedly non-productive wells are at issue and the productivity of productive wells is not at issue.   Insofar as this information is relevant to a whole-company solvency analysis, Diversified's relevancy objection is **OVERRULED**.   For the same reason, Diversified's burden objection is also **OVERRULED**.   Diversified is **ORDERED TO SUPPLEMENT** this response.

**RPD No. 9.**   Plaintiffs ask the Court to overrule Diversified's **relevance objection**. Diversified objects that this request is irrelevant because only the classification of "productive/unproductive" is at issue in this case.   The undersigned is not persuaded by this argument.   Insofar as classifications such as "economic/uneconomic," "idle," "abandoned," "shut-in," "active," or "inactive" appear on their face to implicate productivity and/or profitability, which in turn relates to the value of Diversified's assets, and which in turn is relevant to Diversified's solvency, this objection is **OVERRULED**.   Diversified is **ORDERED TO SUPPLEMENT** this response.

**RPD No. 11.**   Plaintiffs ask the Court to overrule Diversified's **relevance objection and its burden objection**.   Diversified argues that this RPD is irrelevant because the process for selection and scheduling of Diversified's wells for decommissioning, retirement, plugging, or abandonment is not at issue in this case.   For the same reason, Diversified argues that the burden of producing this information is outweighed by the relevance, which is zero.

The selection and scheduling of wells for decommissioning, retirement, plugging, or abandonment implicates Diversified's liabilities or potential liabilities.   Inasmuch as Diversified's liabilities are relevant for solvency purposes, and inasmuch as Diversified's undue burden

objection relies wholly upon its relevance objection, these objections are **OVERRULED**. Diversified is **ORDERED TO SUPPLEMENT** this response.

**RPD No. 12.** Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**. Diversified argues that this request is irrelevant because the process for selecting non-producing wells for future production is not at issue in this case. For this same reason, Diversified argues that the burden of producing this information outweighs the relevance, which is zero. Information regarding selection of non-producing wells for future production implicates wells that may go from a liability to an asset. Insofar as Diversified's liabilities and assets are relevant to the issue of solvency, Diversified's objections are **OVERRULED**. Diversified is **ORDERED TO SUPPLEMENT** this response.

**RPD No. 17.** Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**. Diversified argues that information regarding Diversified's relationship with Wright & Company is not at issue. For this reason, the burden of producing this information outweighs the relevance, which is zero. According to the record, Wright & Company was a consultant or agent of Diversified that proposed estimates for well retirement which were different than those ultimately used by Diversified in its annual reports and other public documents. ECF No. 118-3 at p. 11. Well retirement implicates a shift from asset to liability. If there was disagreement between Wright & Company and Diversified as to estimates for well retirement, which seems to have been the case given that different estimates were used than those formulated by Wright & Company, and if this disagreement was the basis for termination of the relationship between Wright & Company, then this information could be relevant to solvency and Plaintiffs' claim that Diversified engaged in accounting practices which deviated from the industry standard. This information is therefore relevant. For this reason, the burden of production does not outweigh

11

the relevance.  Diversified's objections are **OVERRULED**.  Diversified is **ORDERED TO SUPPLEMENT** this response.

RPD No. 19.  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Diversified argues that Diversified's historical financial models and cash flow projections are not at issue in this case.  For this same reason, Diversified argues the burden of producing this information outweighs the relevance, which is zero.  The information requested is related to Diversified's solvency.  Solvency is at issue at this case.  Diversified's objections are **OVERRULED**.  Diversified is **ORDERED TO SUPPLEMENT** this response.

RPD No. 20.  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Diversified argues that these documents are irrelevant because the request includes information for wells outside of West Virginia.  In accordance with prior rulings, this objection is **OVERRULED**.  Diversified further argues that this request is unduly burdensome because the benefit of producing documents which 'include' or 'reference' the subject matter discussed in this RPD is outweighed by the burden of ascertaining the scope of the relationship and corresponding production.  The Court is persuaded by this argument.  The Court would therefore **SUSTAIN** this objection.  **In accordance with prior rulings made herein, Diversified shall produce documents from July 2016 forward, as applicable, which show the basis of their weighted average cash outlay of 50 years as used in their 2020 and 2021 reports, presentations, or public documents.  These documents should not be limited to West Virginia wells, but should include company-wide documents.**

RPD No. 21.  Plaintiffs ask the Court to overrule Diversified's **relevance objection**.  The Court cannot discern a relevance objection to this RPD.  Accordingly, Plaintiffs' request is **DENIED**.

**RPD No. 22.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Diversified argues that the request is irrelevant because the relationship between Diversified and auditors is not at issue in this case.  Diversified further argues that, for this reason, the burden of producing the information requested is outweighed by the relevance, which is zero.  Plaintiffs have alleged that Diversified engaged in accounting practices which deviated significantly from standard practices.  ECF No. 96 at p. 12.  An auditor could have discovered any unusual accounting practices used by Diversified.  Accordingly, the information sought is relevant to this case.  Diversified's objections are **OVERRULED**.  Diversified is **ORDERED TO SUPPLEMENT** this response.

**RPD No. 23.**  Plaintiffs ask this Court to overrule Diversified's **relevance objection and burden objection**.  Diversified argues that this RPD seeks irrelevant information because Diversified's relationship with Crowe Clark Whitehill, LLC is not at issue in this case.  For this reason, the burden of producing this information outweighs the relevance, which is zero.  This RPD seeks information about a change in outside auditor from Crowe Clark Whitehill, LLP to PricewaterhouseCoopers.  Plaintiffs have alleged that Diversified engaged in accounting practices which deviated from standard industry practices.  If Diversified's decision to change auditors is related to its alleged deviation from standard industry accounting practices, the information sought here may be relevant.  Accordingly, Diversified's relevance objection is **OVERRULED**.  Diversified's burden objection is also **OVERRULED**.  Diversified is **ORDERED TO SUPPLEMENT** its response.

**RPD No. 25.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and its burden objection**.  Diversified argues that Diversified's communications with financial regulators is not at issue in this case, and for this reason, the burden of complying with this request

outweighs the relevance, which is zero. Plaintiffs have alleged that Diversified has engaged in accounting practices which deviate from industry standards. Insofar as RPD 25 relates to this issue, this RPD is relevant to the issues in the case. Diversified's relevance objection is therefore **OVERRULED**. For this reason, Diversified's burden objection is also **OVERRULED**. Diversified is **ORDERED TO SUPPLEMENT** its response.

 **RPD No. 26.** Plaintiffs ask the Court to overrule Diversified's **relevance objection**. Diversified argues that every instance of Diversified's interaction with state-level regulators is not at issue in this case, which concerns only the operation, plugging, and abandonment of wells. Plaintiffs have alleged that Diversified engaged in accounting practices which deviated from industry standards. In particular, Plaintiffs allege that Diversified may have manipulated data relative to its assets and liabilities. ECF No. 96. Insofar as state-level regulators may have inquired as to these alleged activities, including regarding well-status reports, production data, violations, and regulatory actions, Diversified's communications with state-level regulators is relevant to this action. Diversified's relevance objection is therefore **OVERRULED**. Diversified is **ORDERED TO SUPPLEMENT** its response.

 **RPD No. 30.** Plaintiffs ask the Court to overrule Diversified's **relevance objection** to this request. Upon review, the Court is unable to discern a relevance objection to this RPD. Plaintiffs' request is therefore **DENIED**.

 **RPD No. 31.** Plaintiffs ask the Court to overrule Diversified's **burden objection**. Diversified objects to this request because it says this information can be more conveniently obtained from another party in this case. This objection is **OVERRULED**. The communications referenced in this RPD clearly include Diversified. As such, the communications at issue are just

as conveniently sought from Diversified as from EQT. Diversified is **ORDERED TO SUPPLEMENT** its response.

RPD No. 32. Plaintiffs ask the Court to overrule Diversified's **burden objection**. Diversified argues that producing the information requested is unduly burdensome because the request seeks publicly available information which is as accessible for Plaintiffs as for Diversified. It is unclear from Diversified's response what responsive documents they consider to be publicly available and which documents are not. This objection is therefore **OVERRULED**. Diversified is **ORDERED TO SUPPLEMENT** its response.

RPD No. 33. Plaintiffs ask the Court to overrule Diversified's **burden objection**. Diversified argues that this request is unduly burdensome because it seeks publicly available information that is as accessible for Plaintiffs as for Diversified. For this reason, the burden of searching for and producing this information outweighs the benefit of production. Diversified has not delineated the documents which are publicly available and which documents are not. Further, this request appears to encompass more than the publicly available Fitch Ratings credit rating for Diversified insofar as the request seeks documents related to the same. Arguably, this request includes internal documents such as memos, emails, analyses...etc. Therefore, Diversified's objection is **OVERRULED**. Diversified is **ORDERED TO SUPPLEMENT** its response.

RPD No. 34. Plaintiffs ask the Court to overrule Diversified's **burden objection** to this RPD. Diversified argues that this request seeks publicly available information which is as accessible for Plaintiffs as for Diversified. Thus, the burden of producing this information outweighs the benefit. This objection is **OVERRULED**. Diversified has not identified the information which is publicly available. Further, the request is not limited to publicly available information. Rather, this request seeks information related to Moody's and Standard & Poor's

15

credit rating for Diversified. Arguably, this request encompasses materials like internal memos, emails, analyses...etc. Therefore, Diversified is **ORDERED TO SUPPLEMENT** this response.

**RPD No. 39.** Plaintiffs ask the Court to overrule Diversified's **relevance objection**. Diversified argues that the depths and ages or other engineering information related to any allegedly abandoned well do not bear on the possibility of abandonment of the wells or the solvency of Diversified after the disputed transactions. This objection is **OVERRULED**. This case includes claims for Trespass, Negligence, and Nuisance. ECF No. 96. Information concerning well depth, casing depth, and well age are relevant to these common law tort claims insofar as these items must be factored into damages to or repairs for property at issue, including after the disputed transactions. This information is also relevant to plugging costs, which Plaintiffs have claimed as damages, and which are a factor to be considered vis-à-vis the issue of solvency. Diversified is therefore **ORDERED TO SUPPLEMENT** its response.

**RPD No. 44.** Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**. Diversified argues that information concerning Diversified's bid documents for all submittals to PA, WV, and OH under the orphan well programs of those states is irrelevant because Diversified's operations to plug wells, or bid to plug wells, under states' orphan well programs are not at issue. For this reason, the burden of producing this information outweighs the benefit. Diversified's relevance objection is **OVERRULED**. Diversified's assets and liabilities are at issue in this case. Any bids submitted by Diversified to plug orphan wells would implicate Diversified's assets and liabilities. Thus, the information sought is relevant. For this reason, Diversified's undue burden objection is also **OVERRULED**. Diversified is **ORDERED TO SUPPLEMENT** its response.

**RPD No. 45.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Diversified argues that acquisitions of wells from Next LVL Energy, Nick's Well Plugging, or the Well Services Division of Conserv are not at issue in this case.  As such, this request is irrelevant, and the burden of producing this information outweighs the relevance, which is zero.  Diversified's objections are **OVERRULED** inasmuch as this information implicates Diversified's assets and liabilities, which are at issue in this case.  Diversified is therefore **ORDERED TO SUPPLEMENT** its response.

**RPD No. 46.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Diversified objects to this request because the amount of time or the order of procedure for Diversified to complete the historical abandonment of wells is not at issue.  For this reason, the burden of producing this information outweighs the benefit.  Insofar as well abandonment implicates Diversified's assets and liabilities, this information is relevant to the instant matter.  Therefore, Diversified's objections are **OVERRULED**.  Diversified is **ORDERED TO SUPPLEMENT** its response.

**RPD No. 47.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection** to this request.  Diversified argues that the depletion schedule of wells is not at issue in this case.  As a result, Diversified contends that the burden of producing this information outweighs the benefit.  Insofar as the depletion schedule of wells and the criteria for any abandoned or abandoning wells implicates Diversified's assets and liabilities, this information is relevant.  Therefore, Diversified's objections are **OVERRULED**.  Diversified is **ORDERED TO SUPPLEMENT** its response.

**RPD No. 50.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection.**  Diversified argues that the categorization of Diversified's wells by various

17

characteristics is not at issue in this case. As a result, the burden of producing this information outweighs the relevance, which is zero. The Court would **SUSTAIN** this objection. It is unclear how documents which provide categories of existing wells by depth, casing, etc. is relevant to this action. Information regarding existing wells such as depth, casing, etc., is arguably relevant to the issue of Diversified's assets and liabilities, but it is unclear why documents which breakup the wells by category are specifically requested. Additionally, the request itself seeks a broad category of documents loosely defined as documents "which provide categories" of existing wells. It is not immediately clear whether Plaintiffs are seeking information concerning how Diversified categorizes its wells, or something else. This request could conceivably include a document which unofficially categorizes wells for the ease of the author and/or recipient, rather than denoting an official categorization process. For these reasons, Diversified's relevance and burden objections are **SUSTAINED**.

**RPD No. 51.** Plaintiffs ask the Court to overrule Diversified's **relevance objection**. Plaintiffs ask for any and all documents concerning the process of purchasing any assets from EQT from 2014 to the present, including but not limited to materials received from the seller, analyses of the assets, bids, and due diligence. Diversified argues that Plaintiffs only need information about the consummated transaction and its effects, not the negotiations. The Court would **SUSTAIN** this objection **IN PART**. Insofar as the request seeks information concerning the process of purchasing "any assets" from EQT, the same seeks irrelevant information. The only assets at issue in this case are those involved in the two transactions identified in Plaintiffs' Complaint: July 2018 and May 2020. However, documents concerning the process of purchasing the assets involved in the July 2018 and May 2020 transactions **ARE RELEVANT** because they may reveal how Diversified valued the assets involved in these transactions. This information

could therefore bear upon the question of Diversified's solvency relative to these transactions. Therefore, to the extent that Diversified's relevance objection includes this information, the same is **OVERRULED**. Diversified is **ORDERED** to **SUPPLEMENT** its response.

      **RPD No. 52.** Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**. Plaintiffs seek "any and all documents" regarding discussions with advisors and consultants related to the public listing of "the DEC" in 2020. Diversified objects to this request as being irrelevant because the public listing of this entity is not at issue in this case. Thus, the burden of producing this information outweighs the relevance, which is zero.[8] Insofar as the documents requested are not privileged and relate to valuation of the company, i.e., that discuss assets and liabilities, the Court would find that the same are relevant and should be produced. Such information is relevant to the issue of solvency. Therefore, the Court would **SUSTAIN IN PART AND OVERRULE IN PART** Diversified's objections. Diversified is **ORDERED** to **SUPPLEMENT** its response.

      **RPD No. 53.** Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**. Plaintiffs seek any and all documents reflecting inventory of all wells owned or operated by Diversified. Diversified argues that this request seeks irrelevant information because the interest Diversified owns it its wells is irrelevant and therefore burdensome to produce. Information concerning the inventory of wells owned by Diversified companywide is relevant to the issue of solvency, i.e., Diversified's assets and liabilities. Diversified's relevance objection and burden objection are therefore **OVERRULED**. Diversified is **ORDERED** to **SUPPLEMENT** its response.

---

[8] The Court understands "DEC" to mean Diversified Energy Company.

**RPD No. 55.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Plaintiffs seek production of any and all Competent Persons Reports relating to the Diversified Defendants.  Diversified objects to this RPD because Competent Persons Reports are not at issue in this case, and therefore, the burden of producing the same outweighs any benefit.  The Court would **OVERRULE** this objection.  "Competent Persons Reports" is defined by Plaintiffs as "appraisal reports for oil and gas properties with components dictated by certain regulators in various venues around the world and signed by a competent or qualified person."  ECF No. 118-1 at p. 2.  Insofar as these appraisal reports are likely to discuss Diversified's assets and liabilities, the Court would find the same are relevant to the issue of solvency.  Thus, the burden of producing them is not outweighed by the benefit.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

**RPD No. 59.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Diversified argues that the analysis of financial auditors is not at issue in this case.  For this reason, the burden of producing this information outweighs the relevance, which is zero.  Insofar as financial work and reports of auditors regarding decommissioning costs for wells is relevant to issues of solvency, i.e., Diversified's assets and liabilities, the Court would **OVERRULE** Diversified's relevance objection.  For this reason, Diversified's burden objection is also **OVERRULED**.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

**RPD No. 61.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Diversified objects to this request as seeking irrelevant information because all information regarding well sites and equipment largely constitutes irrelevant information, for which the burden of producing outweighs the benefit.  The Court is persuaded by Plaintiffs' argument that the condition of Diversified's well sites bears directly upon the well's value and

20

plugging costs.  The Court would therefore **OVERRULE** Diversified's relevance and burden objection.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

**RPD No. 62.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Plaintiffs seek any and all documents for wells owned or operated by Diversified regarding workover or other operations made or attempted at wellsite.  "Workover" is defined by Plaintiffs as "remedial work to the equipment within a well, the well pipework, or relating to attempts to increase the rate of flow."  ECF No. 118-1 at p. 6.  Diversified objects to this request as irrelevant because wellsite operations are not at issue.  For this reason, Diversified argues that the burden of producing this information outweighs the relevance, which is zero.  The Court is persuaded by Plaintiffs' argument that this information is relevant to the condition of Diversified's wells, and therefore, bears directly on the cost for plugging and decommissioning wells.  The Court would therefore **OVERRULE** Diversified's objection.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

**RPD No. 63.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection**. Plaintiffs seek any and all documents for wells owned or operated by Diversified, and specifically information regarding plugging or other decommissioning operations.  Insofar as this information relates to the issue of Diversified's solvency, and possibly to Plaintiffs' claims for trespass, nuisance, and negligence, the Court would find that this request seeks relevant information. Accordingly, Diversified's relevance objection is **OVERRULED**.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

**RPD No. 64.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Plaintiffs request any and all documents providing, for all wells owned or operated by Diversified, information regarding hydrocarbon emissions or releases.  Plaintiffs argue

21

that this information is relevant because it could reflect well conditions that potentially constitute liabilities that affect solvency analysis.  Diversified objects to this request as seeking irrelevant information.  Because this information is irrelevant, it is overly burdensome to produce.  The Court is not persuaded by Plaintiffs' argument vis-à-vis solvency.  The Court is persuaded by Plaintiffs' argument regarding relevance to Plaintiffs' tort claims.  The Court would therefore **SUSTAIN IN PART AND OVERRULE IN PART** Diversified's objections.  Diversified is **ORDERED** to **SUPPLEMENT** its response **to provide information responsive to this request which relates to Plaintiffs' wells at issue**.

**RPD No. 65.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  This request seeks any and all documents for all wells owned or operated by Diversified, information regarding potential or actual efforts to repair, remediate, or reduce hydrocarbon releases.  Diversified objects to this request as seeking irrelevant information and which is overly burdensome to produce.  Plaintiffs argue that this information is relevant to costs necessary to address liabilities associated with any such releases, which affect the solvency analysis.  The Court is not persuaded by this relevance argument.  Plaintiffs do not point to any particular incident(s), and this information seems too tangential to the claims at issue to be relevant and proportionate to the needs of the case.  Nevertheless, to the extent this information exists vis-à-vis Plaintiffs' wells at issue, it may be relevant to Plaintiffs' tort claims.  Diversified's objections are therefore **SUSTAINED IN PART AND OVERRULED IN PART**.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

**RPD No. 66.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  Diversified argues that well construction and well characteristics are not at issue in this case, and as a result, the burden of producing this information outweighs the relevance,

which is zero.  The Court is persuaded by Plaintiffs' argument that this information bears upon plugging and remediation expenses that may be necessary for each well.  Additionally, this information is relevant to Diversified's liabilities.  Diversified's objections are therefore **OVERRULED**.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

**RPD No. 68.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**. Diversified argues that not all capital projects are at issue in this case, and that Diversified will limit its response to capital projects only pertaining to the repair, plugging, decommissioning, or putting into production their wells.  Plaintiffs contend that capital projects other than those to which Diversified has agreed can inform the valuation of the wells and leases as assets and is thus related to solvency.  It is not immediately clear what other capital projects Plaintiffs feel are included in this request and how these capital projects, other than those which Diversified has agreed to produce, is relevant to the issue of solvency.  More information is necessary before the Court can agree with Plaintiffs' position.  Diversified's objection is therefore **SUSTAINED**.

**RPD No. 69.**  Plaintiffs ask the Court to overrule Diversified's **relevance objection and its burden objection**.  Plaintiffs argue that information beyond the lease agreements and surface-use contracts, which Diversified has agreed to produce, can inform the valuation of the wells and leases as assets and is therefore relevant to solvency.  Diversified has agreed to produce lease agreements and surface use contracts for "relevant wells."  For purposes of this action, relevant wells should include wells owned or operated companywide inasmuch as the solvency analysis is a companywide analysis.  To this extent, Diversified's objections are **OVERRULED**.  The balance of Diversified's relevance and burden objections is **SUSTAINED**.  Diversified is **ORDERED** to **SUPPLEMENT** its response as necessary and appropriate.

23

**RPD No. 70**.  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  The Court would **OVERRULE** Diversified's objections.  This request seeks information relevant to Diversified's liabilities, and thus, information relevant to the issue of solvency.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

**RPD No. 72**.  Plaintiffs ask the Court to overrule Diversified's **relevance objection and burden objection**.  The Court is persuaded by Plaintiffs' argument that information regarding non-operational owners and their interests in Diversified's wells is relevant to the solvency analysis, and the Court would therefore **OVERRULE** Diversified's objections.  Diversified is **ORDERED** to **SUPPLEMENT** its response.

### D.  Timeline for Production

Diversified is **ORDERED** to supplement its responses and to provide all relevant documents and information **by on or before March 21, 2023.**  In so finding, the Court notes that the discovery requests at issue were propounded in September 2022.  Discovery ends on or about August 4, 2023.  Additional delays to discovery risk prejudicing one or more parties to the case. It is therefore in the best interest of all involved to move discovery as expeditiously as possible.

## V.     Conclusion

Accordingly, and for all of the foregoing reasons, Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART, as set forth more fully above.**  Diversified is **ORDERED** to **SUPPLEMENT its responses by on or before March 21, 2023.**

It is so **ORDERED**.

Any party may, within **FOURTEEN DAYS** of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the District Court Judge of Record.  Failure to timely file objections to the Order set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such an Order.

The Court **DIRECTS** the Clerk of the Court to serve a copy of this Order upon any *pro se* party by certified mail, return receipt requested, and upon counsel of record herein.

Dated: 3/7/2023

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

25