IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

        Plaintiffs,

v.

        Civil Action No. 5:22-cv-171
        The Honorable John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

        Defendants.

**PLAINTIFFS' RESPONSE TO *AMICUS CURIAE* BRIEF SUBMITTED BY
THE GAS AND OIL ASSOCIATION OF WV, INC., IN SUPPORT OF DEFENDANTS**

Brian A. Glasser (WVSB No. 6597)
John W. Barrett (WVSB No. 7289)
Brian R. Swiger (WVSB No. 5872)
Athanasios Basdekis (WVSB No. 9832)
Benjamin J. Hogan (WVSB No. 12997)
Panida Anderson (admitted *pro hac vice*)
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
bglasser@baileyglasser.com
jbarrett@baileyglasser.com
bswiger@baileyglasser.com
tbasdekis@baileyglasser.com
bhogan@baileyglasser.com
panderson@baileyglasser.com

Joseph M. Lovett (WVSB No. 6926)
J. Michael Becher (WVSB No. 10588)
Isak Howell (WVSB No. 11558)
Benjamin Luckett (WVSB No. 11463)
Amanda Demmerle (WVSB No. 13930)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
jlovett@appalmad.org
mbecher@appalmad.org
ihowell@appalmad.org
bluckett@appalmad.org
ademmerle@appalmad.org

**TABLE OF CONTENTS**

Introduction ................................................................................................................................... 1

Argument ....................................................................................................................................... 2

    I.    Plaintiffs' Common Law Claims Are Not Precluded by the Consent Order. ...................... 2

        A.    Plaintiffs' claims are not precluded by OOG's administrative action under the oil and gas statutes because they are grounded in the common law and do not rely on statutory violations. ........................................................................................................ 2

        B.    GO-WV's policy arguments and OOG's general mission to protect the public interest cannot overcome Plaintiffs' property rights. ........................................................................ 5

        C.    Even if the statute is at play, GO-WV misinterprets the abandonment provision. ........ 9

    II.    GO-WV's Claim That Plaintiffs' Do Not Seek Removal of Diversified's Surface Equipment Is Disproven by Even a Cursory Reading of Plaintiffs' Complaint. ............... 10

    III.    Plugging and Remediation Costs Should Not Be Passed Off to the Public. ................... 11

Conclusion ................................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdvanFort Co. v. Int'l Registries, Inc.*,
  No. 1:15-CV-220, 2015 WL 2238076 (E.D. Va. May 12, 2015), *amended on reconsideration*, No. 1:15-CV-220, 2015 WL 4254988 (E.D. Va. July 13, 2015) ...............................................................................................................................13

*Andrews v. Antero Res. Corp.*,
  828 S.E.2d 858 (W. Va. 2019) ..................................................................................................3

*State ex rel. Ball v. Cummings*,
  540 S.E.2d 917 (W. Va. 1999) ..................................................................................................8

*State ex rel. Bell Atl.-W. Va., Inc. v. Ranson*,
  497 S.E.2d 755 (W. Va. 1997) ..................................................................................................4

*Collins v. Elkay Min. Co.*,
  371 S.E.2d 46 (W. Va. 1988) ....................................................................................................8

*CSX Transp. Inc. v. PKV Ltd. P'ship*,
  906 F. Supp. 339 (S.D. W. Va. 1995) .......................................................................................7

*EQT Prod. Co. v. Crowder*,
  828 S.E.2d 800 (W. Va. 2019) ..................................................................................................3

*Hark v. Mountain Fork Lumber Co.*,
  34 S.E.2d 348 (W. Va. 1945) ....................................................................................................6

*Hedrick v. Grant Cnty. Pub. Serv. Dist.*,
  550 S.E.2d 381 (W. Va. 2001) ..................................................................................................4

*Hench v. Pritt*,
  57 S.E. 808 (W. Va. 1907) ........................................................................................................4

*Magnolia Petroleum Co. v. R.R. Comm'n*,
  170 S.W.2d 189 (Tex. 1943) .....................................................................................................5

*Martin v. Hamblet*,
  737 S.E.2d 80 (W. Va. 2012) ....................................................................................................2

*Mountain Valley Pipeline, LLC v. McCurdy*,
  793 S.E.2d 850 (W. Va. 2016) ..................................................................................................4

*Philips v. Pitt Cnty. Mem'l Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ...................................................................................................13

*Phillips v Fox*,
    458 S.E.2d 327 (W. Va. 1995) ..................................................................................... 3

*Price v. Boone Cnty. Ambulance Auth.*,
    337 S.E.2d 913 (W. Va. 1985) ..................................................................................... 5

*Rogers v. Tug Hill Operating, LLC*,
    No. 5:21-CV-199, 2022 WL 1096620 (N.D. W. Va. May 2, 2022) ......................... 13

*Taylor v. Culloden Public Service District*,
    591 S.E.2d 197 (W. Va. 2003) .................................................................................. 6, 7

*Voices for Choices v. Ill. Bell Tel. Co.*,
    339 F.3d 542 (7th Cir. 2003) (Posner, J.) ................................................................. 1

*Whiteman v. Chesapeake Appalachia, LLC*,
    729 F.3d 381 (4th Cir. 2013) ..................................................................................... 4

*Wiggins v. E. Associated Coal Corp.*,
    357 S.E.2d 745 (W. Va. 1987) ................................................................................... 8

**Statutes**

42 U.S.C. § 15907(a)(5)(A) .............................................................................................. 12

W. Va. Code § 22-6-19 ............................................................................................. 2, 3, 9

W. Va. Code § 22-6-29A(b)(2) ......................................................................................... 12

W. Va. Code § 22-6-30(b) ................................................................................................ 11

W. Va. Code § 22–7–8 ....................................................................................................... 7

W. Va. Code § 22-7-4(a) .................................................................................................... 6

W. Va. Code § 22-10-2(b) .................................................................................................. 8

W. Va. Code § 22-10-6(a) ........................................................................................... 13, 14

W. Va. Code § 22-10-7(f) .................................................................................................. 13

W. Va. Code § 51-2-2(d) .................................................................................................... 4

**Other Authorities**

Fed. R. Evid. 201(b) .......................................................................................................... 13

W. Va. Code St. R. § 35-5-3 ............................................................................................... 9

W. Va. Code St. R. § 35-5-4 .................................................................................................9

W. Va. Const. art. III, § 9....................................................................................................4

**Introduction**

The Gas and Oil Association of West Virginia's ("GO-WV") *amicus curiae* brief provides no new information or legal analysis that could aid the Court's resolution of Defendants' motion to dismiss. Instead, it merely announces its "vote" in favor of Diversified's and EQT's position. But GO-WV "ha[s] no vote." *See Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (Posner, J.) ("While the amicus briefs sought to be filed in this case contain a few additional citations not found in the parties' briefs and slightly more analysis on some points, essentially they cover the same ground the appellants, in whose support they wish to file, do. . . . Essentially, the proposed amicus briefs merely announce the 'vote' of the amici on the decision of the appeal. But . . . they have no vote.").

Instead of aiding this Court's determination, GO-WV's brief demonstrates only that some members of West Virginia's oil and gas industry, including Diversified and EQT, wish to avoid their obligations to plug and remediate the wells on surface owners' properties. *See* ECF No. 158 at 1 (explaining that GO-WV has an interest in this case "because some of GO-WV members have entered into consent orders for the plugging of oil and gas wells with the West Virginia Department of Environmental Protection, Office of Oil and Gas"). GO-WV repeats the arguments already made by Defendants in support of their Motion to Dismiss regarding Diversified's Consent Order with the West Virginia Department of Environmental Protection's ("WVDEP") Office of Oil and Gas ("OOG"). Those arguments fail for the same reasons articulated in Plaintiffs' response to that motion. *See* ECF No. 126 at 2–13.

The only argument in GO-WV's brief that is not a mere rehash of Defendants' Motion to Dismiss briefs indicates that the industry as a whole is pursuing a strategy of offloading its plugging and remediation liabilities onto landowners or taxpayers. Because the law clearly requires plugging and reclamation duties to be borne by the operator profiting from the well, the

1

Court should not allow Diversified to enrich its shareholders while foisting its cleanup responsibilities onto others.

## Argument

### I. Plaintiffs' Common Law Claims Are Not Precluded by the Consent Order.

GO-WV repeats the same mischaracterizations of Plaintiffs' claims and misstatements of law that pervade Defendants' Motion to Dismiss briefs to argue that the Consent Order entered with OOG supplants Plaintiffs' private property rights. Plaintiffs will not repeat in full the responses found in their opposition to Defendants' motion,[1] but highlight several key points.

> A. *Plaintiffs' claims are not precluded by OOG's administrative action under the oil and gas statutes because they are grounded in the common law and do not rely on statutory violations.*

GO-WV, like Defendants, stubbornly refuses to acknowledge the fundamental fact that Diversified's right to occupy Plaintiffs' properties is not granted by OOG under authority of the West Virginia oil and gas program, but rather derives from the deeds and leases governing those properties. *See* ECF No. 160 at 5 (wrongly arguing that W. Va. Code § 22-6-19 is "the basis of

---

[1] Plaintiffs' response to the argument that Plaintiffs' requested relief would require authorization from OOG, ECF No. 160 at 3–4, can be found on pages 12–13 of Plaintiffs' opposition to Defendants' Motion to Dismiss, ECF No. 126. Plaintiffs' response to the claim that Diversified has furnished satisfactory proof to OOG of a bona fide future use for its wells on Plaintiffs' properties such that its nonproducing wells are not abandoned under the statute, ECF No. 160 at 5, can be found on pages 10–12 of Plaintiffs' opposition, ECF No. 126. Plaintiffs' response to the claim that they failed to exhaust their administrative remedies, ECF No. 160 at 7, can be found on pages 5–9 of Plaintiffs' opposition, ECF No. 126.

GO-WV's brief cites only three cases, all of which were also cited by Defendants. Plaintiffs dealt with the two *Blake v. Columbia Gas Transmission, LLC* cases on pages 7–8 of their opposition, ECF No. 126, explaining that the decisions were inapposite because they dealt with the federal Natural Gas Act, which unlike West Virginia's oil and gas program makes explicit that its administrative review procedures are exclusive and intended to displace state law. The remaining case, *Martin v. Hamblet*, 737 S.E.2d 80 (W. Va. 2012), holds that surface owners do not have a right to judicial review of WVDEP's issuance of a well-work order. That case is likewise inapposite because Plaintiffs are not seeking judicial review of the Consent Order. Their inability to do so in fact further demonstrates that Plaintiffs' claims are not barred for failure to exhaust administrative remedies. *See* ECF No. 126 at 8–9 (citing *Walker v. S. Ry. Co.*, 385 U.S. 196, 198 (1966), *amended*, 386 U.S. 988 (1967)).

all Plaintiffs' claims").² When ownership of mineral real property is separated from ownership of the surface estate, the mineral owner (and its lessee) have the right to reasonable use of the surface for exploration for and production of minerals. *Andrews v. Antero Res. Corp.,* 828 S.E.2d 858, 865 (W. Va. 2019) (finding an implied covenant of "reasonable and necessary" use of the surface estate for mineral extraction when the rights are severed). Conversely, when the surface ceases to be used for exploration and production of minerals, the right of occupancy ceases. *See* Syl. Pts. 4 & 5, *EQT Prod. Co. v. Crowder*, 828 S.E.2d 800 (W. Va. 2019) (holding that "a mineral owner or lessee does not have the right to use the surface to benefit mining or drilling operations on other lands, in the absence of an express agreement with the surface owner"); *Phillips v Fox*, 458 S.E.2d 327 (W. Va. 1995) (explaining that the right to use the surface is limited to uses that were in the contemplation of the parties at the time of the severance). As alleged in Plaintiffs' Second Amended Complaint, 19 of the 22 named Plaintiffs had their mineral rights severed and are governed by the "reasonable and necessary" use standard.³ For the remaining three properties governed by lease, there is either no provision in the lease allowing the operator to keep abandoned wells on their property in the absence of production or the lease has terminated for lack of production and royalty payments.⁴

As the Court of Appeals for the Fourth Circuit has explained, "West Virginia's regulatory scheme does not create a right of the lessor to commit a trespass if the specific use is not granted

---

² Plaintiffs acknowledge that, in contrast to their trespass and nuisance claims, their negligence claims rely on W. Va. Code § 22-6-19 to establish the standard of care. *See* ECF No. 96 ¶¶ 618–19.

³ *See* ECF No. 96 ¶ 130 (McEvoy); ¶ 177 (Stark); ¶ 200 (Dennison); ¶ 223 (Goff); ¶ 270 (Patterson); ¶ 299 (Silvester); ¶ 331 (Drainer Irrevocable Trust); ¶ 377 (Wentz); ¶ 398 (Deem); ¶ 419 (Saltis); ¶ 436 (Evans); ¶ 461 (Tanner); ¶ 486 (Medley); ¶ 514 (Collette); ¶ 545 (Corcoran); ¶ 566 (Johnson); ¶ 588 (Cochran).

⁴ *Id.* ¶¶ 138, 147 (Tawney); ¶ 240 (DelRosso); ¶¶ 339, 354 (Eben Fritts).

3

or implied in a lease."[5] *Whiteman v. Chesapeake Appalachia, LLC*, 729 F.3d 381, 393–94 (4th Cir. 2013). Indeed, no statute has the power to strip real property owners of their land for the sole benefit of another private party. *Mountain Valley Pipeline, LLC v. McCurdy*, 793 S.E.2d 850, 860 (W. Va. 2016); Syl. Pt. 1, *Hench v. Pritt*, 57 S.E. 808 (W. Va. 1907) ("Under our Constitution private property cannot be taken for private use, either with or without compensation."); *see also* W. Va. Const. art. III, § 9.

Plaintiffs thus need not "allege that the . . . Consent Order . . . was not a lawful exercise of the agency's regulatory authority." *See* ECF No. 160 at 5. As Plaintiffs have explained, the Consent Order represents an ordinary exercise of prosecutorial discretion. ECF No. 126 at 9–10 (citing *Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*, 861 F. Supp. 889, 902 (N.D. Cal. 1994), *aff'd*, 83 F.3d 1111 (9th Cir. 1996), *as amended* (July 16, 1996)). OOG's decision to forgo enforcement under the statutory oil and gas program does not, however, diminish, let alone completely usurp, Plaintiffs' property rights. Actions to enforce property rights fall within the province of the courts and do not intrude on agencies' broader implementation of related statutory schemes. *See* W. Va. Code § 51-2-2(d) (establishing the courts' jurisdiction over property actions); *Hedrick v. Grant Cnty. Pub. Serv. Dist.*, 550 S.E.2d 381, 386–87 (W. Va. 2001) ("[Plaintiff] seems to have grasped the basic notion that he could obtain some relief from the [West Virginia Public Service] Commission [related to the defendant's refusal to connect plaintiff's property to the public water supply], but that certain relief, namely damages, should be pursued before the circuit court. . . . We find that such a suit for damages is within the conventional experience of judges, and does not lie peculiarly within the agency's discretion or require the exercise of agency expertise."); *State ex rel. Bell Atl.-W. Va., Inc. v. Ranson*, 497

---

[5] The same principal applies where, as with the majority of named Plaintiffs, the right of surface access is governed by the severance deed instead of a lease.

S.E.2d 755, 762–63 (W. Va. 1997) ("All of plaintiffs' [common law] claims… are clearly within the usual province of circuit courts . . . and require no special regulatory expertise."); *Price v. Boone Cnty. Ambulance Auth.*, 337 S.E.2d 913, 915 (W. Va. 1985); *Magnolia Petroleum Co. v. R.R. Comm'n*, 170 S.W.2d 189, 191 (Tex. 1943) ("The function of the Railroad Commission in this connection is to administer the conservation laws. When it grants a permit to drill a well it does not undertake to adjudicate questions of title or rights of possession. These questions must be settled in the courts."). The consent order that Diversified requested from OOG thus cannot act as a bar to Plaintiffs' common law claims to protect their property rights.

> B. *GO-WV's policy arguments and OOG's general mission to protect the public interest cannot overcome Plaintiffs' property rights.*

GO-WV argues that because OOG "acts in accordance with the overall interests of our State, including our citizens' interests in heating their homes with natural gas, tax revenues generated from oil and gas production, interests of mineral owners who may want wells so that their oil and gas can be produced, and the interests of the environment," the agency's exercise of prosecutorial discretion in the form of the Consent Order should trump Plaintiffs' property rights. ECF No. 160 at 5; *see also id.* at 1–2 (touting the supposed benefits that the oil and gas industry brings to West Virginia). But Plaintiffs are not required to relinquish their property rights to the gas industry so that the industry may evade its cleanup costs. Even if OOG had the authority to allow gas operators to dump their costs of doing business onto landowners or taxpayers (and OOG does not have or even claim such authority), there is no evidence suggesting that doing so would benefit society.

In any event, West Virginia's highest court explained in *Taylor v. Culloden Public Service District* that "[o]perating a business or providing a service that has societal benefits does not give a corporate entity license to . . . negatively affect the use and enjoyment of privately

5

owned property." 591 S.E.2d 197, 207 (W. Va. 2003); *see also Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 355 (W. Va. 1945) (explaining that the "fact that the lumber manufactured by the defendant is to be used in a laudable public undertaking is not a reason for requiring plaintiffs to relinquish their property rights" and finding that a small lumber railway that encroached slightly on the plaintiff's property constituted a trespass despite the line being approved by the state road commission).

In *Taylor*, the court reversed the lower court's grant of summary judgment to the defendant sewage treatment authority, finding that a WVDEP enforcement action that resulted in a judicially-approved consent decree under West Virginia's Water Pollution Control Act did not preclude the plaintiffs' trespass and nuisance claims regarding the same pollution discharges that were the subject of the consent decree. 591 S.E.2d at 200–01, 205–06. The Court held that although the statute was enacted "to provide the State with an enforcement mechanism for keeping the waters of this State free of pollutants," it nonetheless "clearly left intact all existing common law actions for public nuisance." The Court relied on the Act's savings clause—similar to the savings provisions of the Oil and Gas program that Plaintiffs have cited[6]—which provides in part that "*nothing herein contained shall abridge or alter rights of action or remedies now or hereafter existing*" to find that "the DEP's action in filing a claim under the Act did not stand as a bar to the filing of a public nuisance action by the [plaintiffs] or any other affected citizens." *Id.*

---

[6] *See* ECF No. 126 at 4–5. Plaintiffs cite West Virginia Code Sections 22-7-4(a), providing that "[n]othing in section three or elsewhere in this article shall be construed to diminish in any way the common law remedies, including damages, of a surface owner or any other person against the oil and gas developer for the unreasonable, negligent or otherwise wrongful exercise of the contractual right, whether express or implied, to use the surface of the land for the benefit of the developer's mineral interest," 22-7-8, providing that "[t]he remedies provided by this article shall not preclude any person from seeking other remedies allowed by law," and 22-10-11(a), which describes the Oil and Gas program's remedies as "additional and cumulative" and explains that "nothing herein contained shall abridge or alter rights of action or remedies now or hereafter existing."

at 206 (emphasis in original). The Court rejected the same argument made by GO-WV and Defendants, *see* ECF No. 105 at 8 n.3, 13 and ECF No. 160 at 7, that the absence of an express provision allowing plaintiffs to bring suit for violations of the Act precluded a common law action stemming from activities regulated by the Act. Taylor, 591 S.E.2d at 205–06; *see also CSX Transp. Inc. v. PKV Ltd. P'ship*, 906 F. Supp. 339, 344 n.3 (S.D. W. Va. 1995) ("The fact that CSX may not pursue a cause of action based on the regulations at issue does not preclude it from maintaining its common law causes of action . . . . West Virginia Code § 22–7–8 states the 'remedies provided by this article shall not preclude any person from seeking other remedies allowed by law.'"). The law is thus clear that a state's broad authority to regulate an activity that can provide public benefits does not trump a landowner's narrower private property rights.

That is true despite OOG's statement in the Consent Order that it believes forgoing its immediate enforcement authority to allow Diversified to determine if any of its abandoned wells has a bona fide future use is in the public interest. Like Defendants, GO-WV relies on OOG's cursory statement that "it is in the best interests of the state and its citizens that [Diversified's non-producing] wells be identified and that where a bona fide future use exists, wells should be placed back into production." *See* ECF No. 160 at 7; ECF No. 105 at 3, 8. As an initial matter, Plaintiffs find it curious that GO-WV, like Defendants, places such great weight on OOG's finding when, in the Consent Order itself, Diversified expressly stated that it "does not admit or agree to any of the factual or legal determinations and/or conclusions made by OOG in this Consent Order." ECF No. 163-1 ¶ IV.4. Regardless, any claim that allowing Diversified to evade responsibility for plugging thousands of gas wells in West Virginia serves the public interest contradicts the Legislature's declaration that "it is in the public interest and it is the public policy of this state, to foster, encourage and promote the proper plugging of all wells *at the time of their*

7

*abandonment* to protect the environment and mineral resources of this state." W. Va. Code § 22-10-2(b) (emphasis added); *id.* § 22-10-2(a)(1) ("Oil and gas have been continuously produced in West Virginia for over one hundred years, during which time operators of wells have been required by the laws of this state to plug wells *upon cessation of use*." (emphasis added)).

Furthermore, the fact that OOG must balance such broad, competing interests in administering the oil and gas program only provides additional reason to allow this suit to protect Plaintiffs' narrow property interests. *See* ECF No. 160 at 5 ("*Acting in the broader interests of the State of West Virginia*, the WVDEP entered a Consent Order" with Diversified. (emphasis added)). West Virginia courts have repeatedly recognized a plaintiff's right to bring a private action for damages to their individual interests despite the existence of state authority to protect the broader public interest from the same underlying activities. *See State ex rel. Ball v. Cummings*, 540 S.E.2d 917, 928–29 (W. Va. 1999) ("[WVDEP's] broad interest may cause it to agree to permit the defendants to continue discharges into the Indian Fork for an extended period of time as being in the interests of the general public. The interest asserted by the petitioners, on the other hand, is a private and narrow one. The petitioners simply want the speedy abatement of the discharge of pollutants onto their land."); *Collins v. Elkay Min. Co.*, 371 S.E.2d 46, 48 (W. Va. 1988) (In holding that a "coal miner may institute a common law retaliatory discharge action . . . for acts that were designed to enforce the mandates of the coal mine health and safety statutes directly in circuit court without first resorting to an administrative remedy," the court "noted that damages recoverable in a tort action are broader than those available administratively and also observed that the primary purpose of the administrative remedy was different than the interests protected in a retaliatory discharge action."); Syl. Pt. 4, *Wiggins v. E. Associated Coal Corp.*, 357 S.E.2d 745, 748 (W. Va. 1987) ("The primary purpose of the penalties imposed under the

8

antidiscrimination provisions of the mine safety acts is to ensure the reporting of safety violations, rather than vindication of private interests, and victims of discrimination must look to the courts to receive full compensation for the violation of their legal rights."). OOG's responsibility to balance many competing priorities in the name of the broad public interest thus does not displace Plaintiffs' private property rights.

*C. Even if the statute is at play, GO-WV misinterprets the abandonment provision.*

To the extent the oil and gas statute is relevant, GO-WV misapplies the plain text of the provision it relies on. GO-WV states that "[b]efore abandonment occurs under §22-6-19, the WVDEP determines that a well does not a have a bona fide future use." ECF No. 160 at 6. This is backwards. The statute makes clear that a well is abandoned *unless* the operator submits and the WVDEP determines that a bona fide future use exemption applies:

> Any well which is completed as a dry hole or which is not in use for a period of twelve consecutive months shall be presumed to have been abandoned and shall promptly be plugged by the operator in accordance with the provisions of this article, unless the operator furnishes satisfactory proof to the director that there is a bona fide future use for such well.

W. Va. Code § 22-6-19.

GO-WV, like Defendants, proffers that the Consent Order serves as a determination of such future use. It does not. At best, the Order recognizes that Diversified may *potentially* find support for such a designation for *some of its wells, in the future,* and explicitly recognizes that wells may not have a bona fide future use. ECF No. 163-1 at II.10. Moreover, regulations passed pursuant to § 22-6-19 make clear what materials must be submitted in order to support such a designation. Pursuant to West Virginia Code of State Regulations Section 35-5-3, the operator must submit a plan specific to each well showing a time for commencement of future production. It must be supported by a long list of technical items showing the well's potential for future

9

production. W. Va. Code St. R. § 35-5-4. The regulations make clear that "an operator must *demonstrate* bona fide future use to avoid having such well deemed abandoned." *Id.* § 35-5-4.1 (emphasis added). Merely gesturing at a potential future use is insufficient. Further, WVDEP must make certain factual findings—again, specific to the well at issue—before designating the well as "Inactive" rather than "Abandoned." *Id.* § 35-5-5.[7] The Consent Order makes no such findings and references no such submissions.

## II. GO-WV's Claim That Plaintiffs' Do Not Seek Removal of Diversified's Surface Equipment Is Disproven by Even a Cursory Reading of Plaintiffs' Complaint.

In the course of rehashing Defendants' arguments, GO-WV makes one novel claim, but that claim again relies on a gross misrepresentation of Plaintiffs' Complaint. In an effort to downplay Plaintiffs' property rights as surface owners, GO-WV claims that "Plaintiffs do not seek removal of well surface equipment" but rather only seek "subsurface plugging of Diversified's wells," which GO-WV argues is subject to exclusive regulation by OOG. *See* ECF No. 160 at 3. Notwithstanding the fact that, as explained above, such regulation does not diminish Plaintiffs' property rights, GO-WV's assertion is flatly untrue.

Indeed, GO-WV's argument is contradicted by its immediately preceding quotation of multiple paragraphs of Plaintiffs' complaint seeking relief in addition to plugging. *See, e.g.*, *id.* (quoting Plaintiffs' requests for trespass damages "calculated at the cost of plugging, *remediation, and demolition of the abandoned wells*" (emphasis added)). Although Plaintiffs at times use "plugging" as shorthand for the full restoration of their properties from Diversified's wells, Plaintiffs' Complaint makes plain that they are seeking complete remediation of their

---

[7] As Plaintiffs pointed out in their opposition to the Motion to Dismiss, OOG continues to list the wells on Plaintiffs' properties as "abandoned" rather than "inactive." ECF No. 126 at 11 n.5. The latter would be the appropriate designation had OOG determined that the wells have a bona fide future use, as opposed to finding that such use may potentially be identified in the future.

properties, including removal of surface equipment.[8] Plaintiffs repeatedly speak in terms of plugging *and remediating or decommissioning* the wells on their properties. ECF No. 96 ¶¶ 13, 17, 43, 60, 62, 76, 88, 97, 101, 104. Each Plaintiff alleges that Diversified has wrongfully left derelict equipment on their property. *Id.* ¶¶ 126, 149, 173, 196, 219, 242, 266, 295, 325, 349, 374, 395, 416, 435, 454, 483, 510, 532, 563, 584. Plaintiffs state that "Defendants have violated and will continue to violate Plaintiffs' property rights by failing to promptly plug their wells, *remove derelict equipment, properly reclaim the land, [and] vacate Plaintiffs' property,*" *id.* ¶ 105 (emphasis added), and explicitly seek damages sufficient to remove the surface equipment and restore the land, *id.* ¶ 110. *See also id.* ¶¶ 597, 607, 611. GO-WV is thus either intentionally misleading or it did not actually read Plaintiffs' Complaint. In either case, GO-WV wholly fails to live up to its role as "friend of the Court."

### III. Plugging and Remediation Costs Should Not Be Passed Off to the Public.

GO-WV takes issue with Plaintiffs' concerns that they will be stuck with the cleanup bill when Diversified's funds prove insufficient to satisfy its plugging and remediation liabilities. In doing so, GO-WV reveals the general industry strategy that Diversified has pursued to its extreme. That strategy apparently amounts to "have the government clean it up." The Court should reject this invitation to shift the burden of plugging and remediating nonproducing gas wells from the companies that derive the profits from those wells' production to the public.

GO-WV attempts to refute Plaintiffs' claim that "landowners with Diversified wells on their property will be stuck with plugging and remediation liability and must bear both the cost to remediate and plug the wells" by arguing that only well operators and OOG—not landowners—

---

[8] Indeed, such surface reclamation is not only required to remedy Defendants' injuries to Plaintiffs' common law property rights, it is also mandated by statute following the plugging of any well. *See* W. Va. Code § 22-6-30(b).

11

have a legal obligation to plug abandoned wells. ECF No. 160 at 8. This argument entirely misses the mark. Although Plaintiffs may not be *legally obligated* to plug and reclaim the nonproducing wells on their properties, they nonetheless must do so if they wish to gain the full and unencumbered use of their properties and avoid the health and safety risks associated with Diversified's derelict wells, many of which leak substantially. *See*, *e.g.*, ECF No. 96 ¶¶ 81–85 (discussing methane leakage from Diversified's wells); *id.* ¶¶ 134, 158, 181, 205, 227, 252, 274, 303, 335, 360, 381, 402, 423, 440, 465, 490, 518, 549, 570, 591 (alleging that the wells on each of Plaintiffs' properties constitute safety hazards and actual or potential environmental hazards). The fact that landowners may not be *forced* to bear the company's cleanup costs is cold comfort to West Virginians who wish to use and enjoy their properties free from interference by Diversified's derelict wells.

Nor are Plaintiffs placated by GO-WV's suggestion that WVDEP will step in to save the day using public funds. Contrary to GO-WV's suggestion, West Virginia's Oil and Gas Abandoned Well Plugging Fund is not intended to address wells, like Diversified's, for which the company operating the well is still in existence. Rather, the Legislature was explicit that "Funds from the Oil and Gas Abandoned Well Plugging Fund may *only* be used to plug abandoned oil and gas wells *without a responsible operator* and to reclaim the property disturbed from the plugging." W. Va. Code § 22-6-29A(b)(2) (emphasis added). This subset of abandoned wells for which there is no current responsible operator is commonly referred to as "orphan wells." *See*, *e.g.*, 42 U.S.C. § 15907(a)(5)(A). Like the funds in the Oil and Gas Abandoned Well Plugging Fund, the federal funds authorized by the Infrastructure Investment and Jobs Act, *see* ECF No. 160 at 8, are intended to address orphan wells. *Id.* § 15907.[9]

---

[9] *See also* U.S. Department of Interior, "Through President Biden's Bipartisan Infrastructure Law, 24 States Set to Begin Plugging Over 10,000 Orphaned Wells" (August 25, 2022), attached as Exhibit 1,

12

Although OOG may expend funds from the separate Oil and Gas Reclamation Fund to plug and reclaim an abandoned well where an existing operator refuses to do so or does so improperly, OOG "shall be entitled to recover from the owner or operator of such well any amounts so expended from the fund. Any amounts so recovered by the director shall be deposited in said fund." W. Va. Code § 22-10-7(f). The public funds identified by GO-WV are thus intended as a backstop to be used when there is no responsible operator, not as a primary mechanism for plugging and reclaiming wells that reach the end of their productive lives.[10]

And although OOG is authorized to expend these funds to plug certain abandoned wells, it is not *obligated* to plug *all* such wells, or any well in particular. Rather, OOG chooses which wells to address, if any, using a highly discretionary "priority system" that takes into account various factors regarding each well. W. Va. Code § 22-10-6(a). The fact that there is currently a backlog of more than 4,500 identified orphan wells in West Virginia that OOG has not addressed[11] shows how fanciful GO-WV's claims are. In contrast, the West Virginia Legislative

---

*available at* https://www.doi.gov/pressreleases/through-president-bidens-bipartisan-infrastructure-law-24-states-set-begin-plugging.

The Court may take judicial notice of the public records cited as exhibits to this response in considering Defendants' Motion to Dismiss. Fed. R. Evid. 201(b); *Rogers v. Tug Hill Operating, LLC*, No. 5:21-CV-199, 2022 WL 1096620, at *4 (N.D. W. Va. May 2, 2022); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *AdvanFort Co. v. Int'l Registries, Inc.*, No. 1:15-CV-220, 2015 WL 2238076, at *10 n.10 (E.D. Va. May 12, 2015), *amended on reconsideration*, No. 1:15-CV-220, 2015 WL 4254988 (E.D. Va. July 13, 2015).

[10] Even if these funds were intended to be used to address Diversified's wells, the meager monies available pale in comparison to Diversified's more than $2 billion in plugging and remediation liabilities. *See* ECF No. 96 ¶ 8.

[11] *See* Brittany Patterson, West Virginia Public Broadcasting, "Joint W.Va. Legislative Committee Urged to Find Fix for Plugging 'Orphan' Wells" (July 22, 2019), attached as Exhibit 2, *available at* https://wvpublic.org/joint-w-va-legislative-committee-urged-to-find-fix-for-plugging-orphan-wells ("'It's a big number, and we haven't done a very good job, I think, as a state and as an industry addressing those,' said James Martin, director of WVDEP's Office of Oil and Gas.").

Auditor concluded in a 2012 Audit Overview of OOG's treatment of abandoned wells that OOG "is not enforcing statutory requirements as they concern abandoned oil and gas wells which is causing the number of abandoned wells to increase."[12] The report explained that "[t]he OOG is not requiring operators to plug abandoned wells or prove that there is bona fide use for such wells as stated in Code. Data provided by OOG indicates that the number of abandoned wells is increasing, and some wells remain abandoned for 10 or more years." *Id.* It also found OOG consistently fails to inspect the abandoned well sites "for potential hazards to the public and the environment." *Id.*; *see also id.* at 12 ("[T]he data indicates that in the past several years the number of wells being abandoned has increased substantially. As a result, the potential health risk to the public increases as does the State's potential financial liability to plug abandoned and potentially hazardous wells.").

Regardless, the responsibility to plug the nonproducing wells on Plaintiffs' properties belongs to Diversified and EQT, not OOG. GO-WV's reliance on the limited public funds administered by the State to satisfy the obligations to plug the wells on Plaintiffs' land evinces a clear intent by many in the industry to try to evade their private plugging and reclamation liabilities. While the sad truth is that many of Diversified's wells may ultimately end up orphaned and subject to plugging and reclamation by the State because the company's liabilities significantly outweigh its assets, that should not be allowed until all such assets (including those improperly transferred to EQT) have been used to satisfy its plugging liabilities. Diversified and EQT must not be permitted to escape their obligations by shifting them to taxpayers and landowners.

---

[12] West Virginia Legislative Auditor, Performance Evaluation & Research Division, *Agency Review: Office of Oil and Gas, Department of Environmental Protection*, PE 12-10-523 (September 2012) at 5, attached as Exhibit 3, available at http://www.wvlegislature.gov/legisdocs/reports/perd/Oilgas_9_2012.pdf.

14

## Conclusion

For the reasons above and those articulated in Plaintiffs' response to Defendants' Motion to Dismiss, ECF No. 126, the Motion should be denied.

Dated: March 7, 2023               Respectfully submitted,

*/s Benjamin A. Luckett*
Benjamin Luckett (WVSB No. 11463)
J. Michael Becher (WVSB No. 10588)
Joseph M. Lovett (WVSB No. 6926)
Isak Howell (WVSB No. 11558)
Amanda Demmerle (WVSB No. 13930)
APPALACHIAN MOUNTAIN ADVOCATES
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
jlovett@appalmad.org
mbecher@appalmad.org
ihowell@appalmad.org
bluckett@appalmad.org
admmerle@appalmad.org

Brian A. Glasser, Esq. (WVSB No. 6597)
John W. Barrett, Esq. (WVSB No. 7289)
Brian R. Swiger (WVSB No. 5872)
Athanasios Basdekis (WVSB No. 9832)
Benjamin J. Hogan (WVSB No. 12997)
Panida Anderson (admitted *pro hac vice*)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
bglasser@baileyglasser.com
jbarrett@baileyglasser.com
bswiger@baileyglasser.com
tbasdekis@baileyglasser.com
bhogan@baileyglasser.com
panderson@baileyglasser.com

*Attorneys for Plaintiffs and Proposed Class*