IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

| | |
|---|---|
| MARK MCEVOY, *et al.*,<br>        Plaintiffs,<br><br>v.<br><br>DIVERSIFIED ENERGY COMPANY PLC, *et al.*,<br>        Defendants. | Civil Action No. 5:22-cv-00171-JPB<br>Judge John P. Bailey |

**DIVERSIFIED DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

Diversified submits this Memorandum in Support of its Motion for Protective Order against Plaintiffs' disclosure of Diversified's confidential information to Luke Plants, Chief Operating Officer ("COO") of Plants and Goodwin, LLC.[1] Regardless of their retention of Mr. Plants as an alleged expert, Plaintiffs cannot provide Diversified's confidential information to Mr. Plants because he is the COO of a direct competitor of Diversified, and this would cause irreparable harm to Diversified.

Diversified's business includes providing well-plugging services in the Appalachian Basin. Ex. A, Decl. of Bradley Maddox ¶ 2. Plant and Goodwin competes with Diversified by also providing well-plugging services in the Appalachian Basin. Ex. A ¶¶ 3, 6. Nevertheless, Plaintiffs

---

[1] "Plaintiffs" are Mark McEvoy, James Tawney, Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol DelRosso, George DelRrosso, Benjamin Patterson, Chad Silvester, Michelle Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts, Eben Fritts III, Gary Wentz, Heidi Deem, Jeffery Saltis, Kellie Saltis, Lane Evans, Minerva Evans, Maynard Tanner, Jennifer Tanner, Joan Medley, Jacob Collette, Regina Collette, Scott Corcoran, Kathy Johnson, and Christine Cochran; "Diversified Defendants" or "Diversified" are Diversified Energy Company PLC, Diversified Gas & Oil, PLC, Diversified Production LLC, Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC, and Alliance Petroleum Corporation. As Plaintiffs are aware, (1) Diversified Gas & Oil, PLC now operates as Diversified Energy Company PLC; (2) Alliance Petroleum Corporation now operates as Diversified Production LLC; and (3) Diversified Oil and Gas LLC does not exist.

1

have informed Diversified that they have disclosed, and intend to continue to disclose, sensitive Diversified documents, including those relating to its well-plugging business and finances, to the COO of Plants and Goodwin.  Ex. B, Correspondence between K. Young and M. Becher, at 10.  These documents are designated "confidential" or "confidential - attorney eyes only" under this case's Protective Order.  *See* ECF No. 82, at 1–2.  Disclosure of these sensitive documents to a competitor will cause significant harm and a competitive disadvantage to Diversified in its well-plugging business.  Ex. A ¶¶ 5–6.  Despite Diversified's requests prior to filing this motion, Plaintiffs have not even tried to claim that they cannot procure their desired expert testimony from an individual that does not currently work for a competitor.

Given the harm to which Plaintiffs needlessly expose Diversified, the Court should prevent the disclosure of sensitive information to Mr. Plants.  Under Rule 26(c), "a court may, for good cause, issue an order to protect a party . . . from . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."  Fed. R. Civ. P. 26(c)(1)(G).  Good cause exists to issue an order forbidding the disclosure of Diversified's confidential information to a competitor because this is the exact type of harm that protective orders are meant to prevent.  Thus, the Court should grant Diversified's Motion for Protective Order and forbid the disclosure of any Diversified documents designated confidential under the Protective Order to Luke Plants or Plants and Goodwin.

## **BACKGROUND**

On January 5, 2023, Plaintiffs filed the operative complaint.  *See* Second Am. Compl. ECF No. 96 at 1.  On November 7, 2022, the Court entered a Protective Order pursuant to which documents containing nonpublic, proprietary, commercially sensitive, or confidential research and

development, financial, technical, marketing, or other sensitive trade secret information could be produced designated as "confidential" or "confidential - attorney eyes only."  ECF No. 82 at 1–2.

Plaintiffs served its first set of document requests to Diversified Defendants on September 29, 2022, containing 73 requests that sought, among other things, documents related to calculations or assessments of asset retirement obligations; plugging and abandonment schedules, operations, methods, expenditures, and costs; financial models; cash flow projections; asset valuations; and future plans to execute and pay for decommissioning costs.  *See* Ex. C, RFP Nos. 1–2, 5–6, 10–11, 14, 19, 29–30, 41–43, 59–60, 63, 67–68, Pls.' 1st Set of RFPs to Diversified Defs.; ECF No. 47, Cert. of Service re Pls.' 1st Set of RFPs to Diversified Defs.  On February 23, 2023, Plaintiffs served its second set of document requests to Diversified containing 20 requests, seeking among other things, assets and liabilities disclosures, estimates of costs to plug wells, plans to revive abandoned wells, documents regarding Diversified's program for permanently retiring wells.  *See* Ex. D, RFP Nos. 5–7, 10, 15, 17–18, Pls.' 2nd Set of RFPs to Diversified Defs.; ECF No. 164, Cert. of Service re Pls.' 2nd Set of RFPs to Diversified Defs.  On March 27, 2023, Plaintiffs served its third set of document requests to Diversified containing 12 requests, seeking among other things, documents showing efforts to extract oil or gas from the relevant wells.  *See* Ex. E, RFP Nos. 7–9, Pls.' 3rd Set of RFPs to Diversified Defs.; ECF No. 199, Cert. of Service re Pls.' 3rd Set of RFPs to Diversified Defs.

On March 7, 2023, this Court issued an order granting a motion to compel filed by Plaintiffs.  The Court ordered Diversified to produce documents related to calculations or assessments of asset retirement obligations; plugging and abandonment schedules, operations, methods, expenditures, and costs; financial models; cash flow projections; asset valuations; and future plans to execute and pay for decommissioning costs for all wells in every state from July 1,

3

2016, to the present. *See* ECF No. 180, Order Granting in Part & Denying in Part Pls.' Mot. to Compel, at 6–24. Diversified anticipates producing additional documents containing sensitive business information in response to Plaintiffs' second and third sets of document requests.

On March 14, 2023, counsel for Plaintiffs disclosed that they were planning to "share confidential documents with Mr. [Luke] Plants, who will be a testifying expert in the case." *See* Ex. B at 10. They noted "Mr. Plants is the Chief Operating Officer for Plants and Goodwin, a well-plugging company based in Pennsylvania that specializes in plugging oil and gas wells in the Appalachian Basin." *Id.* They attached a copy of Exhibit A to the Protected Order that was executed by Mr. Plants and requested that Diversified object within ten days, representing: "***We will not share confidential information with him until 10 days have passed or until we hear from you, whichever comes first.***" *Id.* (emphasis added).

Diversified responded to Plaintiffs within the requested ten-day period and informed Plaintiffs that "Diversified objects to the disclosure of any documents or information designated 'confidential' or 'confidential attorney eyes only' under the Protective Order to Mr. Plants." *See* Ex. B at 9. Diversified noted that the "disclosure to Mr. Plants of any of the sensitive business and trade information requested by Plaintiffs and produced in this litigation could cause irreparable damage and a disadvantage to Diversified's business" and added that "Mr. Plant's execution of the Confidentiality Agreement does not alleviate these concerns because Mr. Plants cannot unknow the sensitive business and financial information about Diversified's business he would learn upon such disclosure as he performs his duties as COO of Plants and Goodwin." *Id.* Diversified requested confirmation that confidential information or documents had not been shared with Mr. Plants. *Id.* at 8.

On March 30, 2023, Plaintiffs admitted they had already shared confidential information with Mr. Plants, despite their earlier representations. *See* Ex. B at 8. Plaintiffs then offered to meet and confer regarding Diversified's objection. *Id.* Diversified agreed to do so, but requested that Plaintiffs provide additional information to assess Plaintiffs' existing disclosures and the necessity of future disclosures, including (1) a list of all confidential documents and information provided to Mr. Plants and the dates of these disclosures; (2) to the extent Plaintiffs contended Mr. Plants does not work for a competitor, any support for their position; and (3) to the extent Plaintiffs contended that no alternative competent proposed expert that is not a competitor of Diversified could be retained, a description of the efforts taken to retain such an alternative proposed expert. *Id.* at 7–8. Plaintiffs refused to provide the requested information before the meet and confer. *See id.* at 6–7.

On April 5, 2023, the parties conferred via telephone regarding the disclosure of Diversified's confidential information to Mr. Plants. *See* Ex. B at 4. Although Plaintiffs' counsel confirmed they intended to disclose additional confidential documents to Mr. Plants, they repeatedly refused to indicate whether it was their position that no reasonable alternative to disclosure of Diversified's confidential information to Mr. Plants existed. To date, Plaintiffs have not provided any requested information related to their efforts (if any) to find a competent proposed testifying expert that is not a competitor of Diversified's.

After the conference, Plaintiffs provided Diversified with a list of Diversified's documents previously disclosed to Mr. Plants on January 9, 2023. *See* Ex. B at 4. These materials included approximately forty documents designated as confidential under the Court's Protective Order.

Plaintiffs ultimately agreed not to disclose any additional confidential information pending the Court's resolution of this motion. *See id.* at 1.

5

## ARGUMENT

"[A] court may, for good cause, issue an order to protect a party . . . from . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ." Fed. R. Civ. P. 26(c)(1)(G). The court has broad discretion to decide "when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The moving party bears the burden of showing that the information sought is confidential and disclosure would be harmful. *Geiser v. Simplicity, Inc.*, 2011 WL 128776, at *2 (N.D.W. Va. Jan. 14, 2011). Once that standard is met, the requesting party must then show that disclosure of the information is relevant and necessary. *Id.* The court then must balance the requesting party's need for information against the injury that might result if the confidential information is disclosed. *Id.* Some courts have also "superimposed a balancing of interests approach for Rule 26's good cause requirement." *Tillman v. C.R. Bard, Inc.*, 297 F.R.D. 660, 664 (M.D. Fla. 2014).

Confidential commercial information includes "customer lists and revenue information; product design and development and marketing strategy; and commercial financial information." *Moore v. Ferguson*, 2015 WL 9587748, at *5 (S.D.W. Va. Dec. 30, 2015) (citations omitted). Indeed, "[p]ricing and marketing information are widely held to be confidential business information that may be subject to a protective order." *Id.* (alteration in original) (quoting *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 57 (D. Conn. 2004)).

Courts routinely have found there to be good cause for excluding an expert or denying access to confidential information when the expert or recipient of the information is a competitor of the producing party. *See, e.g.*, *Robert D. Mabe, Inc. v. Optum Rx*, 2020 WL 4334976, at *5 (M.D. Pa. July 28, 2020) (refusing to compel discovery of confidential information to a competitor

even though such discovery would be subject to a protective order because "disclosure [of confidential information] to a competitor is more harmful than to a noncompetitor" (alteration in original) (quoting *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987)); *Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.*, 236 F.R.D. 146, 148 (W.D.N.Y. 2006) ("Recognizing the sensitive nature of proprietary technical information, courts generally afford more protection to it than to ordinary business information. Indeed, in cases involving the disclosure of trade secrets, courts often issue protective orders limiting access to the most sensitive information to counsel and their experts." (citations omitted)). "Courts presume that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Rywkin v. New York Blood Ctr.*, 1998 WL 556158, at *5 (S.D.N.Y. Aug. 31, 1998). And courts have found that the risk of harm from that disclosure outweighs any costs with retaining an alternative expert. *See Tailored Lighting*, 236 F.R.D. at 149.

The rationale of these courts is persuasive and applicable. Once Mr. Plants learns Diversified's confidential information, he cannot erase it from his memory when he competes against Diversified in the future. This is why courts recognize that merely agreeing not to use or share information is insufficient when it comes to competitors: "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *TD Pro. Servs. v. Truyo Inc.*, 2022 WL 3098985, *7 (D. Ariz. Aug. 4, 2022) (quoting *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010)) (limiting plaintiff's independent experts to persons not affiliated with plaintiff or one of defendants' competitors); *Corley v. Google, Inc.*, 2016 WL 3421402, at *2 (N.D. Cal. June 22, 2016) (refusing to allow plaintiffs to hire former employees or Google and its competitors as experts because "it would create an unnecessary risk of competitive harm").

For example, one court denied access to confidential documents to a third-party consultant, Dr. John Larkin, who maintained a business relationship with a competitor of BASF. *BASF Corp. v. United States*, 321 F. Supp. 2d, 1373, 1380 (Ct. Int'l Trade 2004). The court reasoned that Dr. Larkin likely would closely study the confidential information during his time as a consultant and the information would become a part of his general knowledge. *Id.* at 1380–81. Using that knowledge while conducting business with the competitor, he then likely would inadvertently disclose that information to the competitor, thereby harming BASF. *Id.*

Here, there is even greater risk. Unlike Dr. Larkin, who merely maintained a business relationship with a competitor, Mr. Plants is primarily employed as the ***Chief Operating Officer of a direct competitor*** to Diversified's well-plugging business. Ex. A ¶ 3. This case directly implicates Diversified's well-plugging business, and Diversified has been required to produce a broad array of sensitive information related to its internal finances and well-plugging business operations throughout the Appalachian Basin over the past several years. ECF No. 180, at 6–24. This includes detailed information about the budgets and actual costs of Diversified's well-plugging operations, as well as sensitive information related to its bidding process (which bids are put forward as against those of competitors, like Plants and Goodwin). *Id.* Execution of the confidentiality agreement provided as Exhibit A to the Protective Order is no firewall against this confidential information being used by Plants and Goodwin. Mr. Plants's close study of Diversified's sensitive well-plugging and financial information will become a part of his general knowledge—sensitive business information he cannot unlearn. That knowledge will necessarily affect how he directs the operations of Plants and Goodwin in competition with Diversified's well-plugging business, to the disadvantage of Diversified. The damage of such a competitive disadvantage cannot be quantified; it is a bell that cannot be unrung.

Furthermore, Plaintiffs have not demonstrated any need to provide this information to Mr. Plants, let alone shown that this need is greater than the harm to Diversified. Despite Diversified's repeated requests, Plaintiffs have refused to address why they must provide Diversified's information to Mr. Plants, as opposed to some other person. Indeed, Plaintiffs even refused to clarify whether they contend that they cannot find an alternative proposed expert that is not a competitor to Diversified, let alone the efforts they may have taken to find one. *See* Ex. B at 6–7. If necessary, there is no reason why Plaintiffs cannot find an alternative proposed expert in the more-than four months remaining until the first expert disclosure deadline. *See* ECF No. 70, Scheduling Order, at 2 (setting deadline expert disclosures with burden as September 1, 2023).

The certain harm to Diversified of disclosing its confidential information to a direct competitor greatly outweighs any unidentified and undisclosed inconvenience to Plaintiffs relating to their retention of Mr. Plants. *See Tailored Lighting*, 236 F.R.D. at 149 ("While the additional cost to [the plaintiff] that will result from the proposed order is a relevant consideration, the burden of that cost simply does not outweigh the substantial risk of competitive injury that attends disclosure of such trade secret information to the [competitor]'s president and patent inventor."). As a result, good cause exists for the Court to protect Diversified from the harm of such disclosure. Therefore, the Court should enter a protective order barring Plaintiffs from disclosing documents or information designated as "confidential" or "confidential - attorney eyes only" to Mr. Plants.

## CONCLUSION

Plaintiffs' disclosure of Diversified's confidential information to the COO of a competitor will inflict significant harm to Diversified. Plaintiffs have not—and cannot—show a countervailing necessity for such a disclosure. Protective orders are intended to protect parties

9

against this very type of disclosure. Consequently, the Court should grant Diversified's motion for protective order forbidding such disclosure.

| | |
|---|---|
| Respectfully submitted: | Dated: April 13, 2023 |

 /s/ Howard Persinger, III
Howard Persinger, III
**PERSINGER & PERSINGER, L.C.**
237 Capitol Street
Charleston, WV 25301
Phone: (304) 346-9333
Fax: (304) 346-9337
Email: hmp3@persingerlaw.com

Daniel Donovan, P.C. (admitted *pro hac vice*)
Ragan Naresh, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 389-5267
Fax: (202) 389-5200
Email: daniel.donovan@kirkland.com
ragan.naresh@kirkland.com

Kenneth Young (*pro hac vice*)
Dustin Womack (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone: (713) 836-3600
Fax: (713) 836-3601
Email: kenneth.young@kirkland.com
dustin.womack@kirkland.com

*Counsel for Defendants Diversified Energy Company PLC, Diversified Gas & Oil, PLC, Diversified Production LLC, Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC, and Alliance Petroleum Corporation*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on April 13, 2023, a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

*/s/ Howard M. Persinger*
Howard M. Persinger, III
