IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

        Plaintiffs,

v.                                    CIVIL ACTION NO.: 5:22CV171
                                    (BAILEY)

DIVERSIFIED ENERGY COMPANY
PLC, et al.,

        Defendants.

FILED
MAY - 2 2023
U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

## ORDER DENYING DIVERSIFIED'S MOTION [217] FOR PROTECTIVE ORDER

Currently pending before the Court is Diversified's Motion [217] for Protective Order, filed April 13, 2023. Briefing is complete, and an Oral Argument/Evidentiary Hearing was held on April 24, 2023. After considering the briefs, the applicable law, and the Court file, and after considering the arguments made during the hearing, the Court is satisfied that Diversified's Motion should be denied.

As the parties know, Plaintiffs allege that Defendants fraudulently transferred gas wells in July 2018 and May 2020. Plaintiffs allege that the wells which were the subject of those transfers need to be remediated and plugged. Of particular relevance to the instant Motion is Plaintiffs' claim that Diversified cannot pay the cost of remediating and capping the wells it acquired in the July 2018 and May 2020 transfers. ECF No. 96.[1] Plaintiffs have retained an expert to assist them in preparing their case - Luke Plants, Chief Operating Officer of Plants and Goodwin, LLC.

---

[1] Plaintiffs also bring this suit to enforce property rights under theories of nuisance, trespass, and negligence.

In this Motion, Diversified seeks a protective order pursuant to R. 26 of the Federal Rules of Civil Procedure,[2] barring Plaintiffs from sharing any documents marked "confidential" or "confidential – attorneys' eyes only" with Mr. Plants because he is the COO of a "direct competitor" to Diversified's "business model." *See* ECF Nos. 218 and 225-3. Because Diversified makes this Motion for a protective order, Diversified bears the burden of establishing that the information sought is an actual trade secret or other confidential business information, and that there is good cause for the protection sought. *See Harrisonville Telephone Co. v. Illinois Commerce Com'n*, 472 F.Supp.2d 1071, 1077 (S.D.Ill. 2006); *see also Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 236 F.R.D. 146, 147 (W.D.N.Y. 2006). There is no per se privilege exempting confidential business information from discovery, but courts must exercise discretion to avoid unnecessary disclosure of such information." *Harrisonville Telephone Co.*, 472 F.Supp.2d at 1077 (internal quotations omitted).

"To establish the requisite good cause for entry of a protective order, the moving party must show that disclosure will work a clearly defined and very serious injury to its business." *Id.* (internal quotations omitted). "Courts have presumed that discovery to a competitor is more harmful than disclosure to a noncompetitor." *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987). However, "broad allegations of harm unsubstantiated by specific examples of articulated reasoning, [will] not satisfy the Rule 26(c) test." *Id.* at 1078. If the requisite good cause showing is made, the burden shifts to the nonmoving party to demonstrate the need for the discovery. *See Andrew Corp. v. Rossi*, 180 F.R.D. 338, 340 (N.D.Ill. 1998).

---

[2] "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed R. Civ. P. 26(c)(1).

In the instant case, Diversified argues that Diversified and Plants and Goodwin are direct competitors, and that, as a result, furnishing Luke Plants, COO of Plants and Goodwin, with Diversified's confidential business information, including budgeting, bidding information, well plugging operational information, financial models, cash flow projections, asset valuations, and future plans to execute and pay for decommissioning costs, will result in substantial harm to Diversified and disadvantage Diversified's business. Diversified further argues that "[t]he damage of such a competitive disadvantage cannot be quantified; it is a bell that cannot be unrung." ECF No. 218 at 8.

Plaintiffs argue that the information they wish to provide to Mr. Plants does not include trade secret or proprietary information, but rather, is general business information which is not subject to heightened security. Further, Plaintiffs argue that, even if the information at issue is the type of confidential business information which is the subject of R. 26 of the Federal Rules of Civil Procedure, Diversified has not articulated with the requisite specificity the damage that will be done to Diversified by this disclosure, and Plaintiffs have a substantial need to provide the information to Mr. Plants. Plaintiffs argue that to properly support their case, they need to utilize the expert services of a person or a company that actively conducts well plugging and remediation work in the Appalachian Basin. Lack of experience in well plugging and remediation activities in the Appalachian Basin will artificially hamper Plaintiffs' ability to support their case during trial.

With respect to Diversified's argument that the information at issue is confidential information contemplated by R. 26 of the Federal Rules of Civil Procedure, the Court would find that Diversified has not carried its burden. Diversified has described the documents and information at issue in broad and general terms, which make it nearly impossible for the Court to evaluate whether these documents and whether this information constitutes confidential business

information. For example, Diversified has submitted the affidavit of Bradley Maddox, Vice President of Next LVL Energy, LLC, which is a wholly owned subsidiary of Diversified Production LLC. Mr. Maddox oversees Diversified's business of providing plugging and abandonment services for oil and gas wells in the Appalachian Basin, among other places. ECF No. 217-1. Mr. Maddox states that Diversified has provided documents to Plaintiffs during discovery regarding Diversified's well plugging services, and that those documents are "sensitive commercial" documents which contain "sensitive information" relating to "budgets," "actual costs relating to" well plugging services, and "internal financial statements and analyses covering the last several years." Mr. Maddox asserts that these documents are "nonpublic, commercially sensitive, technical, business, and financial information" that Diversified keeps confidential from competing businesses." *Id.* However, Mr. Maddox does not specifically identify the contents of any of these documents, nor does he explain what makes them "sensitive" or "technical," or what makes them different from Diversified's other publicly disclosed documents. *See* ECF No. 138 at p. 1-2. Diversified has provided no exemplar for the Court's review, even if *in camera*. Based upon the dearth of evidence in the record concerning the exact nature of the documents and information at issue, the Court cannot make a finding that they constitute the type of confidential records and information which could be subject to R. 26(c).³

---

³ The Court also questions whether the documents and information at issue are in fact the type of confidential documents contemplated by R. 26 given Diversified's prior representations to the Court. *See e.g.* ECF No. 138 at p. 1-2 ("Diversified is a public company that focuses on acquiring existing wells with long-life, low decline profiles and then safely and responsibly retire[s] them at the end of their productive lives....Diversified is a public company with years of public financial statements and reports audited by nationally recognized financial institutions. **It publicly discloses balance sheets, income statements and cash flow statements like other public companies.** It also issues reports and statements regarding its solvency and going concern status, as well as downside scenarios showing it is solvent even under such circumstances. **It publicly discloses its asset retirement obligations ("ARO"), that is, the future cost of decommissioning of wells at the end of their productive useful life. On top of that, it publicly discloses sensitivity analyses to its baseline calculations of ARO.**" (Emphasis added.)

Notwithstanding, and assuming the documents and information are in fact the type of discovery contemplated by R. 26(c), the Court is nevertheless persuaded that Diversified has not satisfied its burden of demonstrating the harm that would result if Mr. Plants was permitted to review them as part of his expert services for Plaintiffs. Again, Diversified makes broad and general statements that significant harm will result from Mr. Plants reviewing the documents and information at issue, but Diversified does not provide "specific examples of articulated reasoning" that disclosure will "work a clearly defined and very serious injury" to its business. *See American Standard Inc.*, 828 F.2d at 741. *Harrisonville Telephone Co. v. Illinois Commerce Com'n*, 472 F.Supp.2d 1071, 1077 (S.D.Ill 2003). Instead, Diversified relies primarily and almost exclusively upon its assertion that Mr. Plants works for a "direct competitor" to support its position. *See* ECF Nos. 218 and 217-1. Without more, such general and unsupported statements are not enough to satisfy Diversified's burden.

Assuming that Diversified has carried its burden of establishing a clearly defined and serious injury to its business, the Court is nevertheless satisfied that Plaintiffs have a demonstrated need for this discovery. Indeed, Plaintiffs' arguments concerning their expert are well-taken. The Court would agree that, given Diversified's national footprint,[4] it will be difficult if not impossible to retain an expert in the field of well plugging and remediation that is not a competitor of Diversified. The Court is also mindful of Plaintiff's position that they need an expert with experience in plugging and remediating wells in the Appalachian Basin due to the unique geographic features of the area. Plaintiffs contend that failure to secure an expert with these credentials will result in decreased credibility for Plaintiffs' case. They maintain that their attempts

---

[4] Diversified is a business that acquires "existing wells with long-life, low decline profiles" and "retire[s] them at the end of their productive lives." ECF No. 138 at p. 1.

5

to retain an expert outside of the well plugging and remediating fields highlighted this issue.[5] The Court is persuaded by these arguments.

In so finding, the Court is cognizant of the need to protect Diversified's information. The Court acknowledges that a Protective Order (ECF No. 82) is currently in place, and that Mr. Plants has agreed to be bound by the terms of that Protective Order. In addition to the terms of the Protective Order, the Court would **DIRECT** that the information and documentation reviewed by Mr. Plants for purposes of this case cannot be used for purposes outside of this action and cannot be shared with anyone. Further, Mr. Plants is **DIRECTED** to **RETURN** any and all information and documentation that he may have with respect to this matter within ten days after the resolution of the same.

Accordingly, and for all of the foregoing reasons, Defendants' Motion [217] for Protective Order is **DENIED**.

It is so **ORDERED**.

Any party may, within **FOURTEEN DAYS** of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such an Order.

---

[5] Plaintiffs have consulted with an unnamed academic and a well plugging outfit in Texas. The academic had never been to a well-site, and the outfit from Texas was not familiar with the topography of the Appalachian Basin or protocols used by companies in this area to conduct their operations.

The Court **DIRECTS** the Clerk of the Court to serve a copy of this Order upon any *pro se* party by certified mail, return receipt requested, and upon counsel of record herein.

Dated: 5/2/2023

_____
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE