AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of West Virginia

| | |
|---|---|
| MARK MCEVOY, et al., | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   5:22-cv-00171-JPB |
| DIVERSIFIED ENERGY COMPANY PLC, et al., | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Capitol Forum c/o Trevor Baine
4929 Hillbrook Lane NW, Washington, DC 20016

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Described in Exhibit A.

| Place: Kirkland & Ellis LLP | Date and Time: |
|---|---|
| 1301 Pennsylvania Avenue, N.W., Washington, DC 20005, Phone: (202) 389-5174 | May 22, 2023 at 5:00 p.m. (ET) |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/08/2023

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Howard Persinger, III |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Diversified Defendants [1] _____ , who issues or requests this subpoena, are:
Howard Persinger, III, Persinger & Persinger, L.C., 237 Capitol Street, Charleston, WV 25301, Phone: (304) 346-9333

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

[1] "Diversified  Defendants" are Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation.

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   5:22-cv-00171-JPB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

|  |  |
|---|---|
| MARK MCEVOY, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>DIVERSIFIED ENERGY COMPANY PLC, *et al.*,<br><br>                    Defendants. | Civil Action No. 5:22-cv-00171-JPB<br>Judge John P. Bailey |

---

**SUBPOENA TO THE CAPITAL FORUM EXHIBIT A**

---

1.      Documents[1] supporting or otherwise related to the report titled "Diversified Energy: A Business Model Built to Fail Appalachia," published in April 2022 by the Ohio River Valley Institute and authored by Ted Boettner, Kathy Hipple, and Anthony Ingraffea.

2.      Communications discussing or otherwise related to the report titled "Diversified Energy: A Business Model Built to Fail Appalachia," published in April 2022 by the Ohio River Valley Institute and authored by Ted Boettner, Kathy Hipple, and Anthony Ingraffea.

3.      Communications with Ted Boettner about Diversified[2] or the above-captioned matter.  To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

4.      Communications with members or employees of the Appalachian Mountain Advocates about gas wells in West Virginia, Diversified, or the above-captioned matter.  To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

5.      Communications with Brian A. Glasser, John W. Barrett, or other attorneys at Bailey & Glasser, LLP about gas wells in West Virginia, Diversified, or the above-captioned matter.

---

[1]      All documents and communications produced in response to this subpoena should be produced in the form and including the ESI described in the ESI Protocol entered by the Court in the above-caption matter and attached hereto as Exhibit B.

[2]      "Diversified" is Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation.

To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

6. Documents and communications in your possession, custody, or control regarding Diversified or any of its gas wells in West Virginia from July 1, 2016, to the present.

7. Documents and communications regarding the July 2018 or May 2020 transactions between Diversified and EQT referenced in the Second Amended Class Action Complaint in the above-captioned matter from July 1, 2016, to the present.

8. Documents and communications regarding any of the Plaintiffs in the above-captioned matter from July 1, 2016, to the present.

9. Documents evidencing any payments received by you from Appalachian Mountain Advocates, Ohio River Valley Institute, Bailey and Glasser, LLP, Community Foundation for the Alleghenies, Community Foundation of Greater Johnstown, The Heinz Endowments, and/or Sierra Club for the past five (5) years.

10. Communications with Bloomberg Green or Bloomberg News about Diversified or the above-captioned matter from July 1, 2016 to present.  To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

11. Communications with Sierra Club about Diversified or the above-captioned matter from July 1, 2016 to present.  To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

12. Communications with Luke Plants or Plants & Goodwin, Inc. about Diversified or the above-captioned matter from July 1, 2016 to present.  To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

13. Communications with Kathy Hipple or the Ohio River Valley Institute about Diversified or the above-captioned matter from July 1, 2016 to present.  To the extent you claim any such communications are privileged, please provide a privilege log regarding the same.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

MARK McEVOY, JAMES TAWNEY and
SUSAN TAWNEY, SAMUEL STARK,
SUSAN DENNISON, MARK GOFF,
and CAROL DELROSSO and GEORGE
DELROSSO, individually and on behalf of
a proposed class,

        **Plaintiffs,**

v.

                    **CIVIL ACTION NO. 5:22-CV-171**
                    **Honorable Judge John P. Bailey**

DIVERSIFIED ENERGY COMPANY, PLC,
DIVERSIFIED GAS & OIL, PLC, DIVERSIFIED
PRODUCTION LLC, DIVERSIFIED GAS & OIL
CORPORATION, DIVERSIFIED OIL AND GAS
LLC, ALLIANCE PETROLEUM CORPORATION,
EQT PRODUCTION COMPANY, EQT
PRODUCTION HTW, LLC, EQT ENERGY LLC,
EQT INVESTMENT HOLDINGS, LLC, EQT
GATHERING, LLC, EQM MIDSTREAM
PARTNERS LP, EQT MIDSTREAM PARTNERS
LP, EQT GP HOLDINGS, LP, and EQT
CORPORATION,

        **Defendants.**

**AGREED DISCOVERY PROTOCOL REGARDING PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS**

This Agreed Discovery Protocol Regarding Production of Electronically Stored Information and
Paper Documents (the "ESI Protocol") shall govern Mark McEvoy; James Tawney; Susan Tawney;
Samuel Stark; Susan Dennison; Mark Goff; Carol Delrosso; and George Delrosso ("Plaintiffs") and
Diversified Energy Company, PLC; Diversified Gas & Oil, PLC; Diversified Production LLC;
Diversified Gas & Oil Corporation; Diversified Oil And Gas LLC; Alliance Petroleum Corporation;
EQT Production Company; EQT Production HTW, LLC; EQT Energy LLC; EQT Investment
Holdings, LLC; EQT Gathering, LLC; EQM Midstream Partners LP; EQT Midstream Partners LP;
EQT GP Holdings, LP; and EQT Corporation ("Defendants") (each, a "Party," and collectively, the
"Parties"), relating to the claims in the above-captioned case (the "Claims").

The purpose of this ESI Protocol is to facilitate the exchange of ESI and hard copy documents in an
efficient manner and in accordance with the Federal Rules of Civil Procedure. Nothing in this ESI
Protocol shall be construed to affect the admissibility of discoverable information. Pursuant to the
terms of this ESI Protocol, information regarding search processes and electronically-stored
information ("ESI") practices may be disclosed, but compliance with this ESI Protocol shall not

constitute a waiver by any Party of any valid objection to producing any particular document or category of documents on any grounds whatsoever, nor does it constitute a waiver of any right to discovery by any Party. For the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. All terms used herein shall be defined as they are in the Sedona Conference Glossary: E-Discovery & Digital Information Management (Fourth Edition).

## I.  Search Procedures

### A.  Cooperation

The Parties agree that they will adhere to the principles of cooperation, transparency, reasonableness, and proportionality, as set forth in the Federal Rules of Civil Procedure, made applicable to this matter, and as interpreted by federal case law as they conduct discovery related to the Claims.

### B.  Scope of Document Discovery

Producing parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI and documents. (The Sedona Principles, Principle 6 (same in 2d and 3d ed.)). The scope of collection, review, and production will be evaluated on a case-by-case basis as discovery requests are issued. The Parties agree to meet-and-confer in good faith to resolve any disputes before seeking the Court's relief.

### C.  Confidential Information

For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations under the Confidentiality Agreement and Stipulated Protective Order which shall remain in full force and effect and apply to the production of ESI and paper documents.

## II.  Search and Identification of ESI

In responding to requests for the production of documents and things propounded during this case, the Parties will meet and confer about methods and disagreements regarding the search of ESI for documents that will be reviewed for responsiveness, privilege, confidentiality, and production. This includes, but is not limited to, the willingness to reasonably meet and confer in good faith on the identity of custodians or custodian groups from which responsive documents have been collected and produced.

### A.  Sources of ESI

The Parties shall make reasonable efforts to identify and collect any Documents and ESI potentially relevant to this Action from all reasonably known sources of potentially responsive information, including, but not limited to servers, cloud servers, collaborative software or platforms, network drives, and shared drives, without need to collect and produce redundant information.

### B. Use of Search Methodologies for Collection

A Party may use keyword searching or other search methodology such as Technology Assisted Review ("TAR") or Continuous Active Learning ("CAL") to identify ESI that is reasonably likely to have discoverable information regarding the subject matter of this Litigation. If any Party chooses to use keyword searching or other search methodologies to identify potentially relevant ESI, that Party shall offer to meet and confer regarding the search terms or other search methodology to be used and the sources of ESI to be searched.

If the Parties disagree on the applicable keywords or other search methodologies to be used or sources of ESI to be searched, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing Party's production obligation will be stayed only as to the terms or methodologies in disagreement but will not stay the advancement of agreed upon terms or methodologies.

### C. Use of Other Review Analytics

The Parties may use other reasonable review analytics or tools, including but not limited to de-duplication, e-mail threading, inclusiveness-only review and production, and technology-assisted review to streamline the review of ESI, to the extent that those review analytics and tools are consistent with other provisions in the Protocol, including provisions relating to the Form of Production. Those review and analytics tools used for culling ESI shall be disclosed to the Parties. Those analytics and tools used for non-culling purposes need not be disclosed.

### D. Use of Predictive Coding, Clustering, or Technology Assisted Review

Before any Party employs culling tools, such as predictive coding, clustering, CAL, or TAR, to remove from review documents otherwise identified using the search terms and date range referenced herein, the Producing Party shall advise the Requesting Party of its intention. Within ten (10) calendar days of being notified of an intention to use predictive coding or other analytic tools listed in this paragraph, the Requesting Party may object in writing. In the event of an objection, the Parties will meet and confer and attempt to reach resolution. If no resolution is met, the objecting Party may raise this issue with the Court.

## III. Production Format Protocols

### A. Form of Production

Except for certain electronic file types to be produced in native format as prescribed in Paragraph III.H below, the Parties will produce responsive, non-privileged documents (both electronic and hard copy) in Group IV single page black & white TIFF images with a resolution of 300 DPI, with document level text files -- extracted text where available, or OCR for documents without extractable text and for un-redacted portions of redacted documents. PowerPoint files will be produced in color where reasonably feasible.

In a production volume, all TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files. The file name of each TIFF image file shall be the corresponding Bates or production number of the page of the document portrayed, followed by the extension ".TIF." The extracted full text and/or OCR text for all documents in the deliverable shall be in separate document-level, UTF-8 encoded TXT files provided in a separate folder and named after the stating Bates number for the document. Load files should be produced in Concordance-compatible format, together with an image load file that is in .OPT format. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

PowerPoint files will be produced in native format. If a redaction is required, the PowerPointfiles will be produced in the JPG image format where color production is reasonably feasible, with any hidden slides and speaker notes visible in the production JPG images (to the extent that the content is not subject to a claim of privilege). Where color production is not reasonably feasible, PowerPoint files will be produced in the specified TIFF image format, with any hidden slides and speaker notes visible in the production TIFF images (to the extent that the content is not subject to a claim of privilege).

The Parties shall produce documents and e-mail communications as family complete as is reasonably practicable. The Parties shall not take steps to dissociate attachments to e-mails or other documents from parent e-mails or documents even if the attachments are exact duplicates of other documents in the production. Parent documents and any attachments shall be assigned sequential Bates numbers to the extent practical. If a responsive, non-privileged e-mail or document has a privileged, attachment, Parties may replace the attachment with a Bates-numbered slip-sheet indicating that the attachment was withheld on privilege grounds or may redact the privileged material. Documents shall not be withheld or redacted for non-responsiveness if the document or its family contains responsive information.

The metadata fields detailed in Exhibit A should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information that privileged information may be redacted and noted in a corresponding privilege log, if any.

## B. Duplicates

Each Party will engage in reasonable efforts to remove duplicative ESI to reduce unnecessary costs of reviewing and producing duplicative ESI. ESI should be de-duplicated across all custodial and non-custodial sources based on MD5 or SHA-1 hash value at the document level for file system data or the email family level for emails. Individual email attachments should only be de-duplicated on a family level. Email attachments should not be de-duplicated against loose file ESI. All ESI should be produced with a metadata field (All Custodians) listing all custodians where duplicate documents were found.

If a document consists of material that is wholly duplicative of a document already produced by that Party or another Party, that document does not need to be produced absent a specific request from the requesting party. Each Party reserves the right to object to producing duplicative material.

4

### C. **Email Production**

Emails and their attachments must be produced as separate, contiguous documents, and the parent-child relationships (the association between emails and attachments) should be preserved. If any original Email or ESI has attachments, the Parties will produce copies of that ESI with the attachments unless privileged or exceptioned during processing. Any document exceptioned during production will be notated with a slip sheet. If any e-mail is responsive to a discovery request, all attachments to that e-mail shall be produced unless withheld because of Privilege. Likewise, if any attachment to an e-mail is responsive to a discovery request, all portions of the parent e-mail and other attachments to that e-mail shall be deemed responsive to that request. If a responsive e-mail or related attachment is not discoverable because of Privilege, a slip sheet will be provided for that document. All email metadata should be standardized to the ET time zone (if possible), and all processed metadata fields for date sent, time sent, date received, and time received should be converted to ET. To the extent technologically feasible, the parties will also provide a metadata field for non-standardized time.

In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression" provided that the e-mail-threading process is performed by an e-discovery vendor in a manner consistent with standard practices in the industry and that all inclusive independently responsive, non-privileged branches of the chain are produced. As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. If e-mail thread suppression is used, it will be populated in the CONVERSATION INDEX metadata field. Further, the use of e-mail thread suppression will under no circumstances remove from production any responsive unique branches and/or attachments contained within an e-mail thread. Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log, if any.

### D. **Mobile and Handheld Device Documents and Data**

To the extent that any unique responsive ESI is stored on mobile or handheld device within the care, custody or control of Responding Party, the Responding Party shall use best efforts to collect and produce such ESI in conformity with the terms of this protocol.

### E. **Production of ESI Commentary and Tracked Changes**

Microsoft Word, Microsoft Excel, and similar file formats that provide for comments or tracked changes should, to the extent not subject to a claim of privilege, be produced in a manner in which all comments and tracked changes are preserved, accessible, and viewable in their original format.

### F. **Embedded Files**

Embedded files are produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded. In line images and logos that appear in-line within the parent document need not be extracted or produced separately.

### G. **Hard Copy Document Production**

Documents that exist in hardcopy will be scanned to TIFF image format and produced in accordance with the specifications set forth in this ESI Protocol. Hard copy documents that are not text-searchable shall be made searchable, to the extent reasonably possible, by Optical Character Recognition (OCR) prior to production at the cost of the Producing Party. Scanned paper document production must have natural, logical document breaks and should include, where available, copies of file folders, envelopes, or labels or other identifying marks on the containers in which the documents were maintained. The Parties will make their best efforts to unitize the documents correctly. Each Party will accommodate reasonable requests for production of images in color. Document-level OCR text files should be provided for all hard copy scanned documents.

### H. **Database Information**

To the extent that any Party requests data or information (other than email) that is stored in a structured database (including but not limited to Oracle, SQL Server, DB2, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the opposing Party will make reasonable efforts to determine whether such data can be produced and, if so, make a production in existing report formats, or report formats that can be developed without undue burden. Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party, containing fields and reference points requested by producing Party to the extent they exist, are responsive, and are reasonably accessible. To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss a different form of production. To the extent that relevant and responsive reports or data tables were also maintained in the ordinary course of business in static form (e.g., as a pdf attachment), those documents will be produced as static images to the extent such production is not duplicative.

### I. **Native Production Format**

Excel or other spreadsheet files, PowerPoint or other presentation files, all photographs (e.g., .jpg, .gif), all media files (*e.g.*, .wav, .mp3, .aiff, .avi, .mov, .mp4), and any other documents that cannot reasonably be reduced to images, not requiring redaction will be produced in native format. A single-page placeholder TIFF image marked with the Bates or production number and confidentiality designation shall be produced with the phrase "Document Produced in Native Format" branded in the center of the page. The natively produced file shall be named to the corresponding Bates number and any confidentiality designation, for example:

  **ABC-0000001_CONFIDENTIAL.xlsx**

The associated Load/Unitization file shall include a link to the native file, and the native files shall be in a separate folder within the deliverable.  To the extent Parties prefer native file redaction of Spreadsheet Files, the Parties will meet and confer to discuss the form of production.

### J.  Scan Size

Reasonable efforts will be used to scan Documents at or near their original size, so that the print or image on the Document appears straight, and not skewed. Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring text. Physically oversized originals will appear reduced. A producing Party reserves the right to determine whether to produce oversized Documents in their original size. A Requesting Party may request that specific oversized Documents be produced in their original size for good cause.

### K.  Bates Numbering

Each page of a produced document produced in TIFF or JPG format shall have a legible, unique page identifier (Bates number) and, where applicable, a confidentiality designation electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with information from the source document.  Any native file shall be renamed to be a single Bates number and the original file name shall be produced in the metadata load file.  The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.

### L.  Excluded File Types

The Parties agree that there is no need to preserve or collect ESI from the following sources, unless the responsive party specifically knows of relevant responsive materials in these file types. Otherwise, each is deemed to not likely contain relevant information and to be not reasonably accessible:

(i)      Deleted, slack, fragmented, or other data only accessible by forensics.

(ii)     Voicemails.

(iii)    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

(iv)     On-line access data such as temporary internet files, history, cache, cookies, and the like.

(v)      Back-up data that is substantially duplicative of data that is more accessible elsewhere.

(vi)     Server, system, or network logs.

(ix)     Data remaining from systems no longer in use that is unintelligible on the systems in use.

## M. **Encryption**

To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

## IV.    Redactions

Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted. Any redactions (other than those on the basis of privilege that are accompanied by a privilege log) shall also indicate the basis for the redaction. Where a responsive and non-privileged document contains both redacted and non-redacted content, the Parties shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions.

## A. **Documents Produced Prior to Entry of this Order**

The Parties agree that documents produced in this matter prior to the entry of this Order will not be required to be reproduced for failure to meet the Production Format Protocols or include the metadata fields listed in Exhibit A of this Order.

## V.    Authenticity

To reduce the number of requests for admission, this order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents or contractors, so long as the agent or contractors' work was performed in connection with a project, assignment or clinical trial sponsored by the producing Party. No further evidence to establish authenticity need be provided.

## VI.    Third Parties

A party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this ESI Protocol with the subpoena and request that third-parties produce data and documents in accordance with the specifications set forth herein. Nothing in this ESI Protocol is intended to be or should be interpreted as narrowing, expanding, or otherwise affecting the rights of third parties to object to a subpoena.

The Issuing Party is responsible for producing any documents obtained under a subpoena or through an informal request to the other party. If the Issuing Party receives any hard copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Discovery Order, and then produce the processed documents to the other party. If the non-party production is not Bates-stamped, the Issuing Party will apply unique prefixes for the non-party production and Bates numbers prior to producing them to all the other parties.

Dated: January 6, 2023.


**AGREED AS TO FORM AND SUBSTANCE FIRM_____**


*/s/Howard M. Persinger. Ill_____*
**Howard M. Persinger,** III (WVSB #6943)
**PERSINGER & PERSINGER, L.C.**
237 Capitol Street
Charleston, WV 25301
Telephone: (304) 346-9333
Facsimile:  (304) 346-933 7
Email: hmp3@persingerlaw.com
***Counsel for Defendants Diversified***
***Energy Company, PLC; Diversified Gas &***
***Oil, PLC; Diversified Production LLC;***
***Diversified Gas & Oil Corporation;***
***Diversified Oil and Gas LLC; and***
***Alliance Petroleum Corporation.***

_____

*Isl Jennifer J. Hicks*

Jennifer J. Hicks (:N\ISB #11423)
**BABST, GALLAND, CLEMENTS & ZOMNIR, P.C.**
300 Summers Street, Suite 1000
Charleston, WV 25301
Telephone: (681) 205-8888
Facsimile: (681) 205-8814
Email: jhicks@babstcalland.com

Mark K. Dausch (WVSB #11655)
**BABST, GALLAND, CLEMENTS & ZOMNIR, P.C.**
Two Gateway Center, 6th Floor 603
Stanwix Street
Pittsburgh, PA 15222
Telephone: (412) 394-5655
Email: mdausch@babstcaIIand.com

***Counsel for EQT Production Company;***
***EQT Production HTW, LLC; EQT Energy, LLC;***
***EQT Investment Holdings, LLC; EQT Gathering, LLC;***
***EQM Midstream Partners LP; EQT Midstream Partners***
***LP; EQT GP Holdings, LP; and EQT Corporation.***

*ls/John W. Barrett*

Brian A. Glasser, Esq. (WVSB #6597)
John W. Barrett, Esq. (WVSB #7289)
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
Email: Bglasser@baileyglasser.com
Email: Jbarrett@baileyglasser.com

Joseph M. Lovett, Esq. (WVSB #6926)
J. Michael Becher, Esq. (WVSB #10588)
Appalachian Mountain Advocates
P.O. Box 507 Lewisburg, WV 24901
Telephone: (304) 645-9006
Email: jlovett@appalmad.org
Email: mbecher@appalmad.org

***Attorneys for Plaintiffs and Proposed Class***

## ESI PROTOCOL - EXHIBIT A

The metadata fields detailed in this Exhibit A should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log as detailed in the ESI Protocol. The Field Names of the metadata fields may vary depending on ESI tools.  If an alternate Field Name is generated during production the spirit of the Field Description must correspond to any alternate Field Name(eg. BeginBates could be an alternate Field Name for Prod Bed).

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Prod Beg | Beginning Bates number (including prefix) -- No spaces or special characters | X | X | X | X | [sample Bates] |
| Prod End | Ending Bates number (including prefix) - No spaces or special characters | X | X | X | X | [sample Bates] |
| Prod Beg Attach | First Bates number of attachment range | X | X | X | X | [sample Bates] |
| Prod End Attach | Last Bates number of attachment range | X | X | X | X | [sample Bates] |
| Custodian | Custodian(s) / source(s) - format: Last, First or ABC Dept | X | X | X | X | Last, First or ABC Dept |
| All Custodians | Names of all custodians who were in possession of a document prior to deduplication | X | X | X | X | Last, First or ABC Dept |
| File Name | Native: Name of the original native file, including extension | | X | X | X | BoardMeeting Minutes.docx |
| File Path | File path to native file as it existed in original environment | | X | X | X | Personal Folders\DeletedItems\BoardMeeting Minutes.msg |

11

| DuplicateFilePath | File paths to all native documents as it existed in original environment prior to deduplication. | | X | X | X | Personal Folders\DeletedItems\BoardMeeting Minutes.msg; Personal Folders\ BoardMeetingMinutes.msg |
|---|---|---|---|---|---|---|
| Document Author | Email: (empty) Native: Author of the document/Author field value extracted from the metadata of a native file | | | X | | John Smith |
| Email Subject | Email or calendar subject | | X | | X | |
| Email To | Recipient(s) that were included on the "To" line of the email or calendar item (as formatted on the original) | | X | | X | Coffman, Janice; LeeW[mailto: LeeW@MSN. com] |
| Email BCC | Names of the recipients who were blind carbon copied on the email or calendar item (as formatted on the original) | | X | | X | [sample Bates] |
| Email From | Author of the email or calendar item (as formatted on the original) | | X | | X | |
| Email CC | Names of the recipients who were copied on the email or calendar item (as formatted on the original) | | X | | X | Frank Thompson [mailto: frank_Thompson@cdt.com] |
| Date Sent | Email: Date the email was Sent. Native: (empty) | | X | | X | 10/10/2010 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Standardized Time Sent | Time email was sent -- Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; timezone indicators cannot be included) Must be separate from Date Sent field. Will be standardized to UTC. | | X | | X | |
| Date Created | Email: (empty) Native: Date the document was created | | | X | | 10/10/2010 |
| Page Count | Number of pages in native file document/email | X | X | X | X | 1 |
| MD5 H ASH | MD5 Hash value of the document | | X | X | X | d131dd02c5e6 eec4693d9a06 98aff95c2fcab 58712467eab4 004583eb8fb7f 89 |
| Doc Link | File path location to the current native file location on the delivery medium; linked file must be named per the Prod Beg number | | | X | | [path] |
| OCR Path | Path to extracted text of the native file | X | X | X | X | [path] |
| Attachment IDs | Child document list: BEGDOC# of each child (populated ONLY in parent records) | X | X | X | X | [Bates] |
| File Extension | File extension of native file | | X | X | X | MSG |
| Conversation Index | Email Thread Identification | | X | | X | |

| Attach Range | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document | X | X | X | X | [Bates] |
|---|---|---|---|---|---|---|
| Num Attach | Total number of records attached to the document. The value will always be 0 (zero) for the actual attachment records | X | X | X | X | |
| Record Type | Displays the record type for each entry in the load file | X | X | X | X | Hard Copy; Email; Attachment |
| File Size | Size of native file document/email/cal endar item in KB; File size in Bytes (integer value only - do not include unit of measure or decimal places - e.g., 568) | | X | X | X | 5,952 |
| Date Received | Date email or calendar item was received. Native: (empty) | | X | | X | |
| Time Received | Time Email was received. Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; timezone indicators cannot be included).  Must be separate from Date Received field. Will be standardized to UTC. | | X | | X | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Time Zone | The TimeZone from which the native file was collected | | X | X | X | |
| SHA1 HASH | Document SHA1 hash value (used for deduplication or other processing) | X | X | X | X | |
| Parent ID | Parent record's Prod Beg number including prefix (populated ONLY in child records) | X | X | X | X | |
| Application | Application used to create native file | | X | X | X | Excel |
| Folder Label | Email folder path (sample: Inbox\Active); or Hard Copy folder/binder title/label | X | X | | X | |
| Date Hard Copy | Date of hard copy documents, if coded | X | | | | |
| Doc Date | This is a multipurpose date field. Populate with: DATESAVED for E-Docs; Date Sent for emails; DATEAPPTSTART for calendar appointments; Date Hard Copy for hard copy documents, if available | X | X | X | X | |
| Redacted | "Yes," and "Y" are both acceptable indicators that the document is redacted. Otherwise, blank. | X | X | X | X | Yes |

| Confidentiality | Indicates if document has been designated as "Confidential" or "Confidential AEO" Otherwise, blank. | X | X | X | X | Yes |
|---|---|---|---|---|---|---|