# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### WHEELING DIVISION

MARK MCEVOY, *et al.*,

                Plaintiffs,

v.

DIVERSIFIED ENERGY COMPANY PLC, *et al.*,

                Defendants.

Civil Action No. 5:22-cv-00171-JPB
Judge John P. Bailey

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS FOR FAILURE TO JOIN REQUIRED PARTIES

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

BACKGROUND ..................................................................................................... 2

STANDARD OF REVIEW ...................................................................................... 3

ARGUMENT ........................................................................................................... 4

I.    THE MINERAL OWNERS FOR THE WELLS ARE NECESSARY PARTIES .......... 4

    A.    The Mineral Owners Have an Interest in the Disputed Wells ......................................... 5

        1.    The mineral owners have financial interests that would be terminated .................. 5

        2.    The mineral owners have lease interests that would be extinguished ..................... 7

    B.    The Mineral Owners' Absence Creates a Risk of Inconsistent Obligations.................... 8

II.   WEST VIRGINIA'S DEP IS A NECESSARY PARTY ..................................................... 10

    A.    Only DEP Can Authorize Well Plugging or Well Transfers ......................................... 10

    B.    DEP Must Be Allowed to Litigate and Enforce Its Regulatory Interests ..................... 13

    C.    DEP's Absence Creates a Risk of Inconsistent Obligations......................................... 16

III.  THE CASE SHOULD BE DISMISSED BECAUSE DEP AND THE MINERAL OWNERS ARE INDISPENSABLE PARTIES THAT CANNOT BE JOINED ........... 17

    A.    The Mineral Owners Are Indispensable Parties and Cannot Be Joined ....................... 17

        1.    The mineral owners are indispensable parties...................................................... 17

        2.    The mineral owners cannot be joined because it is impracticable ........................ 21

    B.    DEP Is an Indispensable Party and Immune from Suit.................................................. 21

        1.    DEP is an indispensable party .............................................................................. 22

        2.    DEP is immune from suit and cannot be joined ................................................... 25

    C.    Plaintiffs Failed to Join DEP and the Mineral Owners Before the Deadline................. 25

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                               **Page(s)**

*Bragg v. W. Va. Coal Ass'n,*
   248 F.3d 275 (4th Cir. 2001) .......................................................................14, 15, 22

*Branch Banking & Tr. Co. v. First Am. Title Ins. Co.,*
   2012 WL 529926 (S.D. W. Va. Feb. 17, 2012) .......................................................6

*State ex rel. City of Dayton v. Kerns,*
   361 N.E.2d 247 (Ohio 1977)...................................................................................6

*Coal River Mountain Watch v. Republic Energy, LLC,*
   2019 WL 3798219 (S.D. W. Va. Aug. 12, 2019) ..................................................25

*Drager v. PLIVA USA, Inc.,*
   741 F.3d 470 (4th Cir. 2014) ..............................................................................3, 4

*Enable Okla. Intrastate Transmission, LLC v. A 25 Foot Wide Easement,*
   2016 WL 4402061 (W.D. Okla. Aug. 18, 2016) ...................................................22

*Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs,*
   859 F.3d 1306 (11th Cir. 2017) ...............................................................16, 22, 24

*Gunvor SA v. Kayablian,*
   948 F.3d 214 (4th Cir. 2020) .............................................................................4, 24

*Home Buyers Warranty Corp. v. Hanna,*
   750 F.3d 427 (4th Cir. 2014) ...............................................................5, 18, 19, 24

*Hugoton Energy Corp. v. Plains Res., Inc.,*
   141 F.R.D. 320 (D. Kan. 1991)...............................................................7, 8, 18, 19

*Iconlab, Inc. v. Bausch Health Cos.,*
   828 F. App'x 363 (9th Cir. 2020) ...........................................................................9

*Jeffcoat v. Lamar Props. LLC,*
   2020 WL 4120660 (W.D. La. July 20, 2020) .......................................................18

*Kansas City Royalty Co. v. Thoroughbred Assocs., L.L.C.,*
   215 F.R.D. 628 (D. Kan. 2003)................................................................................6

*Lampert v. Tams Mgmt., Inc.,*
   2016 WL 9110168 (S.D. W. Va. Mar. 11, 2016) ..................................................19

*Lomayaktewa v. Hathaway,*
   520 F.2d 1324 (9th Cir. 1975) ..............................................................................20

*Minn. Life Ins. Co. v. Fitzwater*,
  2012 WL 252637 (S.D. W. Va. Jan. 26, 2012) ........................................................6

*Owens-Illinois, Inc. v. Meade*,
  186 F.3d 435 (4th Cir. 1999) ..............................................................23, 24, 25

*POI Energy, Inc. v. James Drilling Corp.*,
  1985 WL 14090 (6th Cir. 1985) ..........................................................................20

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) .............................................................................................22

*Sabine Pipe Line, LLC v. A Permanent Easement of 4.25*
  *+/- Acres of Land in Orange Cnty.*, 327 F.R.D. 131 (E.D. Tex. 2017) ............22, 25

*Schutten v. Shell Oil Co.*,
  421 F.2d 869 (5th Cir. 1970) ...............................................................................20

*Tabb v. Bd. of Educ. of Durham Pub. Schs.*,
  29 F.4th 148 (4th Cir. 2022) .................................................................................3

*Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*,
  173 F.3d 915 (4th Cir. 1999) .............................................................4, 17, 19, 25

*Tewa Tesuque v. Morton*,
  498 F.2d 240 (10th Cir. 1974) .............................................................................20

*Tillman v. City of Milwaukee*,
  715 F.2d 354 (7th Cir. 1983) ...............................................................................11

*Tough Mudder, LLC v. Sengupta*,
  614 F. App'x 643 (4th Cir. 2015) ....................................................................4, 24

*United States v. Atl. Wood Indus., Inc.*,
  330 F.R.D. 435 (E.D. Va. 2019) ...........................................................................14

*UTILX Corp. v. Novinium, Inc.*,
  2009 WL 10723386 (W.D. Wash. Aug. 11, 2009) ...................................................8

*Webb v. Clarion Res., Inc.*,
  95 F.R.D. 491 (N.D. Tex. 1982) .............................................................................7

*Yashenko v. Harrah's NC Casino Co.*,
  446 F.3d 541 (4th Cir. 2006) .........................................................10, 14, 18, 23

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  7 F.4th 227 (4th Cir. 2021) ..................................................................................21

**Statutes**

W. Va. Code § 22-1-1 ...................................................................................................11

W. Va. Code § 22-6-6 .............................................................................................12, 16

W. Va. Code § 22-6-9 ...................................................................................................15

W. Va. Code § 22-6-11 ...........................................................................................12, 16

W. Va. Code § 22-6-19 .................................................................................................13

W. Va. Code § 22-6-23 ........................................................................................... *passim*

W. Va. Code § 22-6-26 .................................................................................................19

W. Va. Code § 22-6-28 ...................................................................................3, 12, 19, 24

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................3, 4

Fed. R. Civ. P. 19 ................................................................................................. *passim*

W. Va. Code R. § 35-4-10 .......................................................................................12, 19

W. Va. Code R. § 35-6-3 .........................................................................................12, 19

**Other Authorities**

7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1604 ..................23

U.S. Const. amend. XI ..................................................................................................25

## <u>INTRODUCTION</u>

Plaintiffs seek an order requiring Diversified to plug any wells on their property that have not produced in the prior 12 months.  If so ordered, the mineral owners with interests in those wells would be plainly impacted—they would have no opportunity for oil and gas royalties in the future, for other payments under their leases, or to receive free gas under some leases.   Further, the West Virginia Department of Environmental Protection ("<u>DEP</u>") would still need to decide whether under West Virginia law any particular well can in fact be plugged or transferred.  Accordingly, the royalty owners and DEP are necessary parties that must be joined.  Plaintiffs failed to do so, and judgment must be entered in Defendants' favor.

In 2018 and 2020, Diversified acquired approximately 12,000 wells from EQT.   DEP approved the transfer of these wells' operations from EQT to Diversified.  In November 2018, Diversified and DEP entered into a Consent Order under West Virginia Code Chapter 22.  In the Consent Order, DEP exercised its statutory authority and found it was in the "best interests of the state and its citizens" that Diversified undertake an orderly process to identify non-producing wells that can be placed back into production and to do so.  Since that time, Diversified has returned over 370 non-producing wells to production.  That means oil and gas production for our nation's security, to heat and cool homes in West Virginia and across the country, and to generate revenues and royalty payments for mineral owners and others in West Virginia.

Plaintiffs, a coalition composed largely of surface owners (not mineral owners) who own property severed from the relevant mineral estates, seek to put a stop to this progress and prosperity.  They seek a ruling that all Diversified wells in West Virginia that have not produced in twelve consecutive months be plugged.  They are not entitled to that relief for numerous reasons, and, as relevant here, they are not permitted to proceed with their lawsuit seeking plugging relief without joining both the mineral owners for the wells on their property and DEP.  Plaintiffs' claims

threaten to extinguish the mineral owners' rights and financial interests in the disputed wells, terminate DEP's bargained-for process, and undermine DEP's regulatory task of overseeing well plugging and the transfer of wells.  It is fundamentally unjust for Plaintiffs and Defendants to litigate the rights of mineral owners and a state agency in their absence.  Plaintiffs, however, have not joined the mineral owners and DEP, and, thus, the Court must enter judgment for Defendants.

## BACKGROUND

According to Plaintiffs, "West Virginia law requires that inactive wells be plugged and the sites reclaimed at the end of their economic life."  Second Am. Compl. (ECF No. 96) (the "SAC") ¶ 7.  In fact, "Plaintiffs' Complaint repeatedly cites Diversified's continuing obligation to plug and reclaim nonproducing wells."  Am. Op. & Order (ECF No. 204) at 17.  Based on this alleged duty, Plaintiffs assert "theories of nuisance, trespass, and negligence."  SAC ¶ 16.  Specifically, Plaintiffs allege that thousands of "non-producing and abandoned wells are not reasonable and necessary for mineral extraction, evidenced by the fact that there is no current mineral production."  *Id.* ¶ 107.  However, the effect of finding that these wells "are not reasonable and necessary for mineral extraction," is to extinguish any mineral owners' interests in those wells—an outcome Plaintiffs recognize.  *See id.* ¶ 354 ("Any lease rights that Diversified may have held in the past have since terminated due to lack of mineral production and/or lack of payments to the Frittses.").

In addition to their claims for the wells on their own property, Plaintiffs want to represent two putative classes: (1) a class for voidable transaction claims and (2) a class for tort claims.  *Id.* ¶ 17.  Both putative classes encompass all "persons and entities owning properties in West Virginia on which Diversified owns a natural gas well[.]"  *Id.*  Despite the far-reaching effects of adjudicating the claims of such a group, only seven Plaintiffs allege that they possess a mineral interest.  *See id.* ¶¶ 137, 229, 254, 339 (alleging mineral interests for the Tawneys, DelRossos, Frittses, and Benjamin Patterson).  The remaining Plaintiffs would terminate the interests of the

2

mineral owners in the remaining wells.  Furthermore, should the class be certified, thousands of absent mineral owners would not be part of this case even though they have contractual and financial interests in the disputed wells.

DEP is also not a party to this well-plugging case, even though the Court has found that "West Virginia has adopted an administrative scheme to oversee drilling and plugging of natural gas wells, including those on [P]laintiffs' land."  Am. Op. & Order (ECF No. 204) at 7.  Plaintiffs' failure to join DEP is especially noteworthy given the Court's recognition that "West Virginia has appointed its Office of Oil and Gas . . . to 'exercise supervision over the drilling, casing, plugging, filling and reclamation of all wells and shall have access to the plans, maps and other records and to the properties of the well operators as may be necessary or proper for this purpose . . . .'" *Id.* (quoting W. Va. Code § 22-6-28(a)).  And the Court correctly points out that "[a] private party cannot plug a well in West Virginia without permission and a permit from the Office of Oil and Gas." *Id.* at 8 (citing W. Va. Code § 22-6-23).  Plaintiffs' claims demand relief that only DEP can authorize. *See id.* at 4 (noting Plaintiffs' demand that the putative class's wells be plugged).

Finally, the Court ordered that "[m]otions to join additional parties . . . [were to] be fully effected by **November 15, 2022**."  Scheduling Order (ECF No. 70) at 3.  Thus, the deadline for Plaintiffs to add DEP or the mineral owners to this case has already passed and they failed to add these parties, as required by law.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citation omitted).  Thus, "the [alleged] facts must be taken as true.  But the test is not legally myopic." *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th

148, 155 (4th Cir. 2022).  "Rather, it must be applied with common sense to determine whether a complaint contains the sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, not merely conceivable."  *Id.* (cleaned up).  After applying this test, the Court should dismiss the plaintiff's claim if "the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Drager*, 741 F.3d at 474 (citation omitted).

Importantly, the failure "to join a person required by Rule 19(b)" may be raised "by a motion under Rule 12(c) . . . ."  Fed. R. Civ. P. 12(h)(2)(B).  "When adjudicating a motion under [Rule 19], a district court asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)."  *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020) (citation omitted).  Dismissal "is 'required' if the nonjoined party 'is both necessary and indispensable.'"  *Id.* at 219 (citation omitted).  The relevant inquiry is "made pragmatically, in the context of the 'substance' of each case, rather than by procedural formula."  *Id.* (citation omitted).  As part of the analysis, "courts must take into account the possible prejudice to all parties, including those not before [them]."  *Tough Mudder, LLC v. Sengupta*, 614 F. App'x 643, 645 (4th Cir. 2015) (per curiam) (citation omitted).  Thus, "[b]y forcing a court to examine the effects of a suit on parties not before it, Rule 19 . . . 'takes . . . account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases."  *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir. 1999) (cleaned up).

## ARGUMENT

## I.    THE MINERAL OWNERS FOR THE WELLS ARE NECESSARY PARTIES

The mineral owners for Plaintiffs'[1] wells satisfy both tests used to determine whether an entity is a necessary party.  An entity is necessary if the Court "cannot accord complete relief

---

[1]    Because the class has not yet been certified, only the mineral owners for the wells on named Plaintiffs' property need to be added.  Although not its burden to bear (Plaintiffs should identify the mineral

among existing parties" in that entity's absence.  Fed. R. Civ. P. 19(a)(1)(A).  An entity is also necessary if it "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B).  "Each of these criteria requires that [the Court] attempt to forecast the future course of this litigation" to identify potential prejudicial outcomes to the nonparties.  *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014).

Here, Plaintiffs jeopardize the important interests of the mineral owners for the disputed wells.  The mineral owners (whether fee simple, partial, non-operating, or royalty owners) have contractual and financial interests in the wells.  Plaintiffs would snuff out those interests without the mineral owners ever having their day in court.  The Court must protect against such unjust consequences and should either dismiss this case or join the mineral owners.

### A.    The Mineral Owners Have an Interest in the Disputed Wells

The impact of this case on the legal interests of the mineral owners requires a finding that they are necessary parties.  As holders of a mineral estate interest, they are entitled to royalties based on production from the wells and they may be entitled to additional payments (*e.g.*, shut-in payments for unproductive wells).  Plugging the wells extinguishes these pecuniary interests.  Furthermore, plugging the wells also extinguishes the mineral owners' dependent contracts.

### 1.    The mineral owners have financial interests that would be terminated

The mineral owners are necessary because they have an interest in revenue generated by producing wells, shut-in payments, or delay rentals; if Plaintiffs have their way, this case will

---

owners needed for their case to survive), Diversified attaches a list of those parties it believes are the mineral owners in the wells on the named Plaintiffs' property as **Exhibit B**.

terminate these revenue streams.  The mineral owners, therefore, are necessary parties because they have a financial interest in this case.  *See Minn. Life Ins. Co. v. Fitzwater*, 2012 WL 252637, at *3 (S.D. W. Va. Jan. 26, 2012) (finding someone was a necessary party because she could potentially receive proceeds from disputed policy).

The mineral owners' interests in the wells make them necessary parties.  A federal court sitting in West Virginia has held that "[t]he absence of any person or entity which holds . . . an interest [in the property at issue] would preclude this Court from according complete relief as between these existing parties, and any determination by this Court relative to an interest in the property [at issue] could potentially prejudice an absent party." *Branch Banking & Tr. Co. v. First Am. Title Ins. Co.*, 2012 WL 529926, at *7 (S.D. W. Va. Feb. 17, 2012).  Other courts agree.  *See Kansas City Royalty Co. v. Thoroughbred Assocs., L.L.C.*, 215 F.R.D. 628, 635 (D. Kan. 2003) ("Because the Court cannot grant complete relief without impairing the working interests of the 18 lease owners of the Rietzke Unit, the lease owners are necessary parties . . . ."); *State ex rel. City of Dayton v. Kerns*, 361 N.E.2d 247, 298–99 (Ohio 1977) (holding a city was a necessary party based on, among other things, its "interest in the tax revenues" from a disputed property).

Plaintiffs' threat to the mineral owners is significant, and the reason is simple: the mineral owners are entitled to money generated by Defendants' operation of the wells.  And it bears emphasizing that the surface owners that previously sold their mineral interests, severing them from their estate, already monetized the value and are now seeking to strip the mineral owners of their rights (in addition to Diversified's rights).  Plaintiffs seek to have those wells plugged and abandoned.  This would extinguish any financial benefit the mineral owners have based on their interests in the wells, making them necessary parties.

## 2.    The mineral owners have lease interests that would be extinguished

This case's impact on any mineral owners with leases makes them necessary parties. Plaintiffs claim that Diversified's leases have expired and Diversified no longer has a right of access to the mineral estates, including leasehold estates, based on this alleged lack of production. *See* SAC ¶ 107 ("The non-producing and abandoned wells are not reasonable and necessary for mineral extraction, evidenced by the fact that there is no current mineral production.").[2]  The effect of these claims on the leases tied to the disputed wells can be seen by examining the claims of the few Plaintiffs who are alleged mineral owners.   As Plaintiffs acknowledge, a judgment that production has ceased, that Diversified has no right to the mineral estates, and that the wells must be plugged terminates any lease related to the subject well.  *See id.* ¶ 354 ("***Any lease rights that Diversified may have held in the past have since terminated due to lack of mineral production and/or lack of payments to the Frittses***." (emphasis added)).  This challenge to lease validity makes the lessor-mineral owners necessary parties.  *See Hugoton Energy Corp. v. Plains Res., Inc.*, 141 F.R.D. 320, 322 (D. Kan. 1991) (holding that a case asking whether leases had expired involved "an issue that impacts upon the rights of the absent landowners and leaseholders" and "they ha[d] a vital stake in the outcome").

For example, in one case a defendant operated a well drilled on a leasehold shared between a plaintiff and Coke Oil, Inc. ("Coke"), and the case also implicated additional royalty owners. *See Webb v. Clarion Res., Inc.*, 95 F.R.D. 491, 492 (N.D. Tex. 1982).  The plaintiff challenged the

---

[2]    *See also, e.g.*, SAC ¶ 124 ("Without any mineral production on McEvoy's property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment."); *id.* ¶ 171 (same for Stark property); *id.* ¶ 194 (same for Dennison property); *id.* ¶ 217 (same for Goff property); *id.* ¶ 264 (same for Patterson property); *id.* ¶ 293 (same for Silvester property); *id.* ¶ 323 (same for Drainer property); *id.* ¶ 372 (same for Wentz property); *id.* ¶ 393 (same for Deem property); *id.* ¶ 414 (same for Saltis property); *id.* ¶ 433 (same for Evans property); *id.* ¶ 452 (same for Tanner property); *id.* ¶ 481 (same for Medley property); *id.* ¶ 508 (same for Collette property); *id.* ¶ 530 (same for Corcoran property); *id.* ¶ 561 (same for Johnson property); *id.* ¶ 582 (same for Cochran property).

lease's enforceability.  *See id.*  The court held that a judgment without the Coke lessor and the non-party royalty owners would prejudice those parties.  *See id.* at 493.  "The plaintiff could very well plead that the issues of fact determining the case against [the defendant] were final and determinative and therefore applicable to the claim and rights of [Coke] and the royalty owners."  *Id.*  This would have been true even given a judgment canceling the lease for only a portion of the land because "the facts concerning the well in question would control the rights of [Coke] and this would especially be true of the rights of any royalty owners or overriding royalty owners who owned non-participating overriding royalty interests under the entire tract of land."  *Id.*

So too, here.  The Court should not adjudicate the rights of parties that are not before it, but Plaintiffs' claims require adjudication of the mineral owners' rights.

### B.    The Mineral Owners' Absence Creates a Risk of Inconsistent Obligations

In addition to prejudicing the mineral owners, Defendants may face multiple, inconsistent obligations if this case continues without the mineral owners.  Inconsistent obligations occur when a party is unable to comply with a court order and other obligations.  *See UTILX Corp. v. Novinium, Inc.*, 2009 WL 10723386, at *2 (W.D. Wash. Aug. 11, 2009) (finding a party necessary because a potential judgment would force the plaintiff to violate a court order or breach its contract).  If Plaintiffs prevail and Defendants must plug the wells, Defendants may face claims from mineral owners related to the plugging of the wells in which they have interests.

Plaintiffs seek a holding that Diversified has no right of access to the surface estate to produce oil or gas from the disputed wells.  *See* SAC ¶ 16 (arguing Diversified no longer has a right of access to Plaintiffs' property).  If the Court grants Plaintiffs' requested relief, "[a]ny judgment rendered in this action . . . is nonbinding on the absent parties," like the mineral owners. *Hugoton Energy Corp.*, 141 F.R.D. at 322.  Those mineral owners could still seek to enforce their leases, demanding that Diversified use its rights of ingress and egress to explore and develop the

mineral estates. This "might well cause the . . . parties to incur multiple or inconsistent obligations, as contemplated by Rule 19(a)." *Id.*

For example, Plaintiffs allege "[t]here are five . . . wells on the Medley property . . . ." SAC ¶ 491. Plaintiffs admit these wells are productive. *See id.* ¶ 494 ("These wells are low producing wells."). Ms. Medley is not the mineral owner for these wells. *See id.* ¶ 467 ("Medley owns the surface estate."). Ms. Medley asks to have these wells plugged once they cease production. *See id.* ¶ 495. Setting aside that this is a nonjusticiable claim that fails for lack of a ripe injury, assume the Court grants the requested relief. The judgment would not bind the mineral owner for the affected mineral estate, who might prefer that Diversified work to return the proven well to production and continue paying royalties for several more years. That same mineral owner might also seek shut-in payments, delay rentals, or dozens of other remedies. Whatever its position, the mineral owner must be joined in this case to litigate its rights.

This impact on the available rights and remedies of the non-party mineral owners makes them necessary parties. *See Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363, 366 (9th Cir. 2020). In *Iconlab*, the plaintiffs sought a declaratory judgment naming them the "rightful owner" of certain technology and an injunction prohibiting the defendants from "misappropriating the technology." *Id.* The plaintiffs' claims "implicate[d] . . . absent parties." *Id.* If the plaintiffs prevailed, they "may [have] require[d] the district court to order the dissolution of contracts between the absent parties. Without unwinding th[at] contract . . . , the parties could [have] be[en] subject to inconsistent obligations—one under the district court's order and one under the contract." *Id.*

9

That is what will happen here.  There is a substantial risk Defendants will be subject to inconsistent obligations: one under any potential Order and another under the mineral owners' leases or real property rights.  The mineral owners are necessary parties under Rule 19.

## II.     WEST VIRGINIA'S DEP IS A NECESSARY PARTY

DEP also satisfies both tests used to determine whether an entity is a necessary party.  The Court cannot afford complete relief without DEP because DEP has authority to permit or reject well plugging and transfers, DEP's regulatory role gives it important interests in this case, and proceeding without DEP exposes Diversified to the risk of multiple, inconsistent obligations.

### A.     Only DEP Can Authorize Well Plugging or Well Transfers

The Court cannot provide for complete relief among the parties in DEP's absence because DEP is vested with the statutory authority to approve, reject, and oversee well-plugging operations. DEP is also the administrative agency tasked with overseeing the transfer of wells between operators.  Plaintiffs' claims require DEP's exercise of this authority, but DEP is not bound by any judgment without being joined in this case.

The main component of Plaintiffs' requested relief is that wells be plugged.  *See* Am. Op. & Order (ECF No. 204) at 17 ("[The] Complaint repeatedly cites Diversified's continuing obligation to plug and reclaim nonproducing wells.").  But the Court has found that "[a] private party cannot plug a well in West Virginia without permission and a permit from the Office of Oil and Gas."  *Id.* at 8 (citing W. Va. Code § 22-6-23).  Likewise, Plaintiffs demand that the Court void the transfers of wells between EQT and Diversified, undo the transactions, and transfer the wells back to EQT.  *See* SAC ¶¶ 4–5, 15. As discussed below, this also requires DEP's approval.

As the case currently exists, a verdict in Plaintiffs' favor would bind only Defendants and Plaintiffs.  *Cf. Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 552–53 (4th Cir. 2006) (applying necessary party test and noting "judgment in the plaintiff's favor would only bind him

and the private employer"). It would not bind DEP, the entity who approves whether a well will be plugged or transferred. *Cf. id.* (noting a judgment "would not prevent [a third party] from continuing to enforce its tribal preference policy"). Thus, for example, the Court could hold that Defendants must plug certain wells, but DEP could refuse to allow them to do so—or impose a timeline that conflicts with the Court's own—if it is not joined.

DEP's control over the regulatory mechanisms needed to bring about the relief Plaintiffs desire makes this case like another one in which a regulatory agency was a necessary party. *See Tillman v. City of Milwaukee*, 715 F.2d 354, 355 (7th Cir. 1983). In *Tillman*, the Seventh Circuit held that Wisconsin's Department of Industry, Labor, and Human Relations "was a party whose joinder was necessary for the complete adjudication of" a city employee's claims for discriminatory annulment of an apprentice indenture. *Id.* at 355–56. The department, "by statute and administrative rule, ha[d] set forth a comprehensive system governing the contractual conditions of indenture agreements, their modification and annulment." *Id.* at 359. As a result, "complete relief could not be accorded in the department's absence because of the agency's control of apprenticeship programs and apprenticeship indentures in Wisconsin." *Id.* Just as the *Tillman* department controls indentures, DEP controls well plugging. "A private party cannot plug a well in West Virginia without permission and a permit from the Office of Oil and Gas." Am. Op. & Order (ECF No. 204) at 8 (citing W. Va. Code § 22-6-23).

Indeed, there is more to DEP's control than just granting or withholding permission to plug. That decision is part of a system that vests significant power in DEP, born of the belief that "[e]fficiency in the wise use, enhancement, preservation, protection and conservation of the environment can best be accomplished by an integrated and interdisciplinary approach in decision making . . . ." W. Va. Code § 22-1-1(a)(4). Based on this need for an integrated approach to

11

decisions, West Virginia's "Legislature declare[d] that the establishment of a department of environmental protection is in the public interest and will promote the general welfare . . . ." *Id.* § 22-1-1(b).  From its inception, DEP was empowered to take a broader view than is possible in its absence.  Contrary to this system, DEP's nonappearance in this case leaves only Plaintiffs and Defendants as the sole data source on the best interests of West Virginia's citizens—and DEP is ousted from its role as well-informed decision maker.

DEP's absence from a decision about whether to plug thousands of wells flies in the face of West Virginia law.  "It is unlawful for any person to commence any well work, including site preparation work which involves any disturbance of land, without first securing from the director a well work permit."  W. Va. Code § 22-6-6(a).  Even if the Court ordered Defendants to plug the wells, they would have to get DEP's permission—and DEP could withhold that permission.  *See id.* § 22-6-11 ("The director shall review each application for a well work permit and shall determine whether or not a permit shall be issued.").  In fact, West Virginia's legislature considered DEP's supervision so important that it made it a misdemeanor to violate the statutory provisions related to DEP's authority over well-plugging operations.  *See id.* § 22-6-6(i).

Without DEP, the Court cannot order complete relief between the parties because only DEP can authorize the plugging of a well.  *See* Am. Op. & Order (ECF No. 204) at 8 ("A private party cannot plug a well in West Virginia without permission and a permit from the Office of Oil and Gas." (citing W. Va. Code § 22-6-23)).  DEP must also approve any transfer of wells.  *See, e.g.*, W. Va. Code R. § 35-6-3; W. Va. Code R. § 35-4-10.  Plaintiffs demand both remedies.  Thus, DEP is a necessary party.

12

### B.    DEP Must Be Allowed to Litigate and Enforce Its Regulatory Interests

In addition to the inability to order complete relief in its absence, DEP's presence is also independently necessary because proceeding without it impedes its ability to protect its interests. DEP must have the chance to litigate its Consent Order and protect its authority and operations.

*First*, DEP must be able to protect its contractual interests.  DEP has authority over "plugging, filling and reclamation of all wells . . . ."  W. Va. Code § 22-6-28(a).  Under this authority, DEP entered a Consent Order with Diversified that found "it is in the best interests of the state and its citizens that [potentially abandoned] wells be identified and that where a bona fide future use exists, wells should be placed back into production and/or should be placed into such other use as identified and approved by OOG . . . ."  Ex. A (Consent Order) § II ¶ 10.  In other words, DEP exercised its statutory authority to negotiate—on behalf of West Virginia's citizens— a systematic review process to identify Diversified wells with potential uses (including uses other than production, like the underground storage of wasteful gases).

Proceeding without DEP in this case robs the agency of its ability to litigate the necessity and binding effect of that Consent Order.  For example, before Defendants ever filed an answer, Plaintiffs' claims necessitated the Court's rejection of DEP's ability to negotiate such a Consent Order.  *Compare* Am. Op. & Order (ECF No. 204) at 9 ("Furthermore, by its own terms, the Consent Order admits that the operators have not furnished satisfactory proof to the director that there is a bona fide future use for such well."), *with* W. Va. Code § 22-6-19 (noting the director may suspend plugging obligations, as in the Consent Order, only if "the operator furnishes satisfactory proof to the director that there is a bona fide future use").  If a private party's contract were at issue, the Court would not declare its provisions unenforceable without all parties being heard, so it should be even more insistent on due process when one of the contracting parties is a regulatory agency purporting to exercise its statutory authority.  It is especially inappropriate to

impugn the rightfulness of DEP's Consent Order in its absence.  The relevant "West Virginia statute and implementing regulations are solely the product of [West Virginia's] own sovereignty, enacted pursuant to its democratic processes, and . . . a State's sovereign dignity reserves to its own institutions the task of keeping its officers in line with that law."  *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 297 (4th Cir. 2001).

Even if Plaintiffs' claims had not required inquiry into the Consent Order's validity, they would still challenge DEP's contractual rights.  This is because Plaintiffs' claims eviscerate the timeframe DEP chose to consider and approve plugging applications and operations.  The Court has recognized this effect.  *See* Am. Op. & Order (ECF No. 204) at 12–13 (discussing default statutory timeline and DEP's negotiated alteration of that timeline in the Consent Order).  This, too, is sufficient to render DEP a necessary party.  *See Yashenko*, 446 F.3d at 553 ("[A]ny judgment on such a claim would threaten to impair the Tribe's contractual interests, and thus, its fundamental economic relationship with the private party, as well as its sovereign capacity to negotiate contracts and, in general, to govern the reservation." (cleaned up)).

This case's necessary impact on DEP's contractual rights requires DEP's joinder.  For example, Virginia's Department of Environmental Quality was a necessary party in a case about hazardous dumping that impacted its contractual rights.  *See United States v. Atl. Wood Indus., Inc.*, 330 F.R.D. 435, 436–38 (E.D. Va. 2019).  The agency was allowed to intervene because of its "regulatory interest in the property of th[e] action" and its agreement "to [a] proposed Consent Decree . . . ."  *Id.* at 438.  But there was more.  The agency also moved to join the United States Department of Defense and Navy, arguing it would "lose all of its negotiated remedies" if they were not joined because it had settled its claims against them in the proposed Consent Decree.  *Id.* The court agreed.  *See id.* at 439 ("Moreover, because DOD and the U.S. Navy are signatories to

the proposed Consent Decree in this case, and have already negotiated settlement . . . , joinder of DOD and the U.S. Navy is necessary in order for the court to accord complete relief . . . .").

**Second**, DEP is a necessary party because this case implicates its regulatory interests. "[T]he applicant for a permit for any well work shall deliver . . . copies of the application, well plat and erosion and sediment control plan" to the owners of the property on which the well is located, as well as the owners of any corresponding leasehold tracts. W. Va. Code § 22-6-9(a). "Persons entitled to notice may contact the district office of [DEP] to ascertain the names and location of water testing laboratories in the area capable and qualified to test water supplies," and "[i]n compiling such list of names [DEP] shall consult with the state bureau of public health and local health departments." *Id.* § 22-6-9(e). After a permitting decision, "[a]ny person entitled to submit comments shall also be entitled to receive a copy of the permit as issued or a copy of the order denying the permit if such person requests the receipt thereof . . . ." *Id.* § 22-6-9(d). Thus, DEP is subject to a review, notice, hearing, and comment process for each disputed well; DEP has an interest in litigating whether it would approve plugging permits in such circumstances.

Similarly, the Court has held that the Consent Order is an exercise of DEP's prosecutorial discretion.[3] *See* Am. Op. & Order (ECF No. 204) at 8 ("Plaintiffs argue that the Consent Order has no effect on plaintiffs' claims because it is 'nothing more than an exercise of [the Office of Oil and Gas's] prosecutorial discretion and has no effect' on plaintiffs' property rights. This Court agrees with plaintiffs."). Again, Plaintiffs' claims result in the alteration of aspects of the plan DEP chose in its discretion. *See supra* § II(B) (discussing impact on Consent Order). Put frankly, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Bragg*, 248 F.3d at 293 (citation

---

[3]    For the avoidance of doubt, Defendants do not concede that the Consent Order is only an exercise of prosecutorial discretion.

omitted). This also makes DEP a necessary party. *See Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1317 (11th Cir. 2017) (holding a state water district was a necessary party because "any injunction against the [defendant] as it relates to water-release decisions . . . could, as a practical matter, potentially affect the Water District's discretion").

This case has already implicated the scope and enforceability of DEP's Consent Order. It also concerns DEP's well-plugging permit process, DEP's operations, and DEP's authority to regulate. In such circumstances, DEP is a necessary party.

**C.    DEP's Absence Creates a Risk of Inconsistent Obligations**

DEP is also a necessary party because proceeding without it leaves Defendants subject to a substantial risk of inconsistent obligations given DEP's authority. Put simply, the Court could order Defendants to do one thing, but DEP could order them to do something different if it is not bound by the verdict in this case. Again, Defendants cannot plug any well without DEP's permission. *See* Am. Op. & Order (ECF No. 204) at 8 ("A private party cannot plug a well in West Virginia without permission and a permit from the Office of Oil and Gas." (citing W. Va. Code § 22-6-23)). If the case proceeds to judgment without DEP and the Court orders Defendants to plug any well (let alone thousands), nothing stops DEP from prohibiting Defendants from doing so. Unbound by the Court's final judgment, DEP would be free to order Defendants to return the wells to production, insist on its rights under the Consent Order, transfer the wells in a way contrary to the Court's Order, frustrate the Court's timeline for compliance, and so forth.

As just one example, DEP has the authority to approve the means used to plug wells and the right to be present when the work is done. *See* W. Va. Code § 22-6-6(c)(10); *see also id.* § 22-6-11. It is not farfetched to imagine Defendants asking to plug thousands of wells within a Court-ordered timeframe, but DEP refusing to allow Defendants to do so in order that DEP might exercise its right of oversight at a pace more to its liking.

At bottom, litigating this case without DEP subjects Defendants to parallel proceedings that may result in irreconcilable obligations. The Court should find DEP is a necessary party.

## III.    THE CASE SHOULD BE DISMISSED BECAUSE DEP AND THE MINERAL OWNERS ARE INDISPENSABLE PARTIES THAT CANNOT BE JOINED

Because the mineral owners and DEP are necessary parties, they must be joined. Neither the mineral owners nor DEP can be joined, so the case must be dismissed. "By forcing a court to examine the effects of a suit on parties not before it, Rule 19 . . . takes account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases." *Keal Driveaway Co.*, 173 F.3d at 917 (cleaned up). If a case cannot continue without a given person, but they cannot be joined, the case must be dismissed. *See id.* at 917–18. Here, there is no practical way to join the mineral owners, DEP is immune from suit, and the joinder deadline has passed.

### A.    The Mineral Owners Are Indispensable Parties and Cannot Be Joined

The mineral owners are indispensable parties. It would be unjust and contrary to the law to adjudicate and extinguish a mineral owners' interests without joining them in this case. It is impracticable, however, to join the massive group of mineral owners implicated by Plaintiffs' claims—especially should the class be certified. Thus, the case should be dismissed.

#### 1.    The mineral owners are indispensable parties

Each of the factors for assessing whether a party is indispensable support a finding that this case cannot proceed without the mineral owners. The Federal Rules state:

> If a person who is required to be joined if feasible cannot be joined, the [C]ourt must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the [C]ourt to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

*First*, for the prejudicial impact on absent persons and the parties factor, Plaintiffs' claims prejudice the mineral owners' financial and contract interests (*e.g.*, leases, operating agreements, royalties, etc.).  *See supra* § I.  For example, Plaintiffs challenge the validity of Diversified's well operations based on lack of production, which may also invalidate the leases and the prospect of future royalty payments.  *See* SAC ¶ 107.  "[C]ourts are . . . generally agreed that royalty holders are indispensable parties to actions that challenge the validity of the leases under which they assert their rights."  *Hugoton Energy Corp.*, 141 F.R.D. at 323 (collecting cases).[4]

*Second*, concerning the inability to tailor relief to lessen prejudice, the wells cannot be plugged, and operations terminated, without extinguishing the mineral owners' interests in the wells.  When the Court must adjudicate a non-party's rights, the second factor favors indispensability.  *See Hugoton Energy Corp.*, 141 F.R.D. at 322 (holding there was no way to lessen prejudice to absent lessors where case concerned lease validity).  The possibility of different tribunals reaching different conclusions about the existence, scope, or validity of the mineral owners' rights also supports a finding of indispensability.  *See Hanna*, 750 F.3d at 436.

*Third*, a judgment entered in the mineral owners' absence would be inadequate.  Again, if the judgment gave Plaintiffs their desired relief (to order that wells are abandoned and must be plugged) it would extinguish the mineral owners' interests.  And, again, the mineral owners would not be bound by the Court's rulings if not joined.  This means "parallel proceedings could produce just the opposite" of an adequate judgment: "incomplete, inconsistent, and inefficient rulings.

---

[4]   *Cf. Yashenko*, 446 F.3d at 553 (finding that entering a verdict without an absent party would prejudice their contractual rights); *Jeffcoat v. Lamar Props. LLC*, 2020 WL 4120660, at *3 (W.D. La. July 20, 2020) ("In cases seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract, all parties to the contract probably will have a substantial interest in the outcome of the litigation and their joinder will be required." (citation omitted)).

Thus this [third] factor also points to the Builders as indispensable parties in the proceedings." *Hanna*, 750 F.3d at 436; *see also Hugoton Energy Corp.*, 141 F.R.D. at 322 (holding there was possibility of inconsistent judgments in case involving leasehold rights, where lessors were not joined as parties). This potential for "whip-saw" judgments if the mineral owners are not joined shows prejudice. *See Keal Driveaway Co.*, 173 F.3d at 918–19 (citation omitted).

This case raises other concerns about inconsistent legal obligations based on the relief Plaintiffs demand. Plaintiffs ask the Court to "[d]irect the recovery of the assets Diversified transferred to EQT and reimpose the plugging and decommissioning obligations . . . onto the transferor, EQT . . . ." Am. Op. & Order (ECF No. 204) at 4. Should Plaintiffs obtain their requested relief, a mineral owner could ask DEP to block the transfer of the wells to EQT; DEP has authority to disapprove the transfer of wells between operators. *See* W. Va. Code R. § 35-6-3 ("No declaration of operator status will be made until either an applicant for operator status has complied with the requirements of W. Va. Code [section] 22-6-26, and the rules promulgated thereunder, and Form OP-77A 'Declaration of Operator Status' has been filed with the Office of Oil and Gas, or after investigation, the chief voluntarily declares a party to be designated the operator and to have attained operator status."); *see also* W. Va. Code R. § 35-4-10 (discussing transfers); *Lampert v. Tams Mgmt., Inc.*, 2016 WL 9110168, at *2 (S.D. W. Va. Mar. 11, 2016) (referencing well transfer permits from DEP).

*Fourth*, Plaintiffs have an adequate remedy in the availability of an alternate forum. Specifically, if the claims were dismissed Plaintiffs could still proceed before DEP. *See* W. Va. Code § 22-6-28(a). There, Plaintiffs and the mineral owners for any particular well would receive notice and an opportunity to be individually heard on any dispute they wish to resolve.

The mineral owners are indispensable parties, and this case resembles one wherein the Fifth Circuit dismissed the action based on the failure to join an indispensable lessor.  *See Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir. 1970).  In *Schutten*, the plaintiffs tried to evict the defendant from property in which they both claimed ownership.  *See id.* at 870.  The defendant filed a motion to dismiss "on the ground that its lessor . . . who also claims title to the land in question, [wa]s an 'indispensable party' who [could not] be joined . . . ."  *Id.* at 870–71.  The plaintiffs' "action in trespass [wa]s based upon its claim of ownership of the land overlying the mineral deposits."  *Id.* at 874.  Thus, the plaintiffs' claim was antagonistic to the lessor's own claims of ownership.  *See id.*  This made the possibility of prejudice to the lessor significant because if the defendant was ousted the lessor's "royalty interest would cease in practically the same manner as if the court had decreed a cancellation of the lease."  *Id.*  And the plaintiffs "suggested no way in which" this prejudice could be lessened in the lessor's absence.  *Id.* at 875.  Finally, the plaintiffs had an adequate remedy via proceedings elsewhere, especially given that proceedings before the alternate tribunal were likely even if the plaintiffs prevailed.  *See id.*

The Fifth Circuit's holding in *Schutten*—that non-party lessors are indispensable parties in cases that affect their leasehold interest—is not an outlier.  The Sixth, Ninth, and Tenth Circuits have reached similar holdings.  *See POI Energy, Inc. v. James Drilling Corp.*, 1985 WL 14090 (6th Cir. 1985) (holding non-party lessors were necessary and indispensable parties because the case's claims challenged the validity of their leases); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325–26 (9th Cir. 1975) (holding non-party lessors were necessary and indispensable parties because "cancellation of the lease" was at issue); *Tewa Tesuque v. Morton*, 498 F.2d 240, 242 (10th Cir. 1974) (holding non-party lessor was necessary and indispensable party because it would "certainly be affected if the lease [wa]s cancelled").

This case warrants dismissal at least as much as the above cases. Plaintiffs want to oust Diversified from the disputed mineral estates. *Compare* SAC ¶ 107 ("The non-producing and abandoned wells are not reasonable and necessary for mineral extraction, evidenced by the fact that there is no current mineral production."), *with id.* ¶ 354 ("Any lease rights that Diversified may have held in the past have since terminated due to lack of mineral production and/or lack of payments . . . ."). This ouster would terminate Diversified's leases with the mineral owners. Thus, Plaintiffs' claims are antagonistic to the mineral owners, whose financial and contractual interests will be extinguished if Plaintiffs prevail. The mineral owners are indispensable parties.

### 2. The mineral owners cannot be joined because it is impracticable

Other than alleging that every West Virginia well Diversified owns is at issue, Plaintiffs have not identified the disputed wells for the class claims—let alone the mineral owners who hold interests in those wells. For their claims to warrant survival, Plaintiffs must somehow identify and join those individuals to this case. Although not its burden to bear, Diversified believes that the mineral owners for the wells that allegedly are on Plaintiffs' specific properties are those identified in **Exhibit B** to this memorandum. The Court should dismiss Plaintiffs' claims because the joinder of the mineral owners for these wells is simply impractical, and they cannot be joined. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (noting Fourth Circuit "general guideline" that attempting to join 40 or more persons in one case is impracticable "based on numbers alone" (citation omitted)). At minimum, the mineral owners should be joined to this case.

### B. DEP Is an Indispensable Party and Immune from Suit

These proceedings also cannot continue without DEP, given its interests in this case. But DEP cannot be joined because it is immune from suit. The result is that the Court should dismiss the case based on Plaintiffs' failure to join DEP.

### 1.    DEP is an indispensable party

DEP is an indispensable party because of its necessary-party status coupled with its sovereign immunity. *See infra* § III(B)(2) (discussing DEP's immunity). This combination should result in dismissal of the case. *See Sabine Pipe Line, LLC v. A Permanent Easement of 4.25 +/- Acres of Land in Orange Cnty.*, 327 F.R.D. 131, 143–45 (E.D. Tex. 2017). In *Sabine*, the court found that a state agency had immunity from suit. *See id.* at 142–43. But the Federal Rules "require[d] that [the agency] be joined as a party." *Id.* at 144. Taking these truths together, the court determined that "[w]hen a necessary party . . . is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Id.* (quoting *Enable Okla. Intrastate Transmission, LLC v. A 25 Foot Wide Easement*, 2016 WL 4402061, at *5 (W.D. Okla. Aug. 18, 2016)). In other words, "[i]n Rule 19(b) cases where a required party asserts sovereign immunity, the Supreme Court has instructed [courts] to give '[]sufficient weight to [the party's] sovereign status' out of recognition that any consideration of the merits in the sovereign's absence is 'itself an infringement on . . . sovereign immunity.'" *Fla. Wildlife Fed'n Inc.*, 859 F.3d at 1318 (ellipsis altered) (quoting *Republic of Philippines v. Pimentel*, 553 U.S. 851, 864–65 (2008)). Thus, a sovereign's immunity and necessary party status, alone, "require[] dismissal of the entire action," without resort to the ordinary indispensable party test. *See Sabine*, 327 F.R.D. at 144 (noting "equity and good conscience factors *also* mandate that this action be dismissed" (emphasis added)).

In fact, the Fourth Circuit has opined at length about the importance of DEP's immunity and the impropriety of proceeding in cases that infringe on that immunity. *See Bragg*, 248 F.3d 275. In *Bragg*, some West Virginia "citizens and an environmental group" sued "the Director of the West Virginia Division of Environmental Protection to challenge his issuance of permits for mountaintop-removal coal mining." *Id.* at 285. "[T]he doctrine of sovereign immunity bar[red]

the citizens from bringing their claims against" the director.  *Id.* at 286.  The Fourth Circuit explained that "[t]his limit on federal judicial power is an essential element of the constitutional design, as immunity accords the States the respect owed them as members of the federation, and protects the States' ability to govern in accordance with the will of their citizens."  *Id.* at 291 (cleaned up).  Because the plaintiffs' "complaint essentially challenge[d] the Director's failure to follow the permitting requirements" ultimately adopted as a matter of West Virginia law, it was improper to maintain the suit in federal court.  *See id.* at 295–96.

Even setting aside DEP's important immunity, the ordinary test also requires a finding that DEP is an indispensable party whose inability to be joined warrants dismissal.  To start, the first and third factors favor Defendants' motion.  "Consideration of the first and third factors under the [R]ule—the extent to which a judgment rendered in the person's absence might prejudice the parties or would even be adequate—address much the same concerns as under the Rule 19(a)(2) analysis."  *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999) (citing 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1604).  As discussed, DEP's absence would make relief inadequate and would prejudice Defendants and DEP.  *See supra* § II.  Again, "the high potential for factual and legal whipsawing indicates that the parties will be prejudiced by any judgment rendered in the absence of [DEP] and, therefore, such a resolution would not be adequate."  *Meade*, 186 F.3d at 441–42.  And, again, "any judgment entered without joining [DEP] would be inadequate because it would bind only" the parties to this case; DEP "would remain free to enforce [its own] policy . . . and through its contractual relations."  *Yashenko*, 446 F.3d at 553 (citation omitted).

The second factor also favors Defendants' motion.  As a threshold matter, Plaintiffs bear the burden to identify how the Court might fashion a remedy that does not prejudice DEP.  *See*

23

*Sengupta*, 614 F. App'x at 645 ("Regarding the second factor, **Appellants** suggested no way to mitigate the prejudice to Sengupta, and no remedy is apparent." (emphasis added)).[5]  Plaintiffs cannot carry their burden.  To decide Plaintiffs' claims, "the [Court] [cannot] avoid[] addressing the validity and applicability of the [Consent Order]," thereby ruling on the same issues subject to DEP's authority.  *Meade*, 186 F.3d at 442.  The Court has already found itself forced to consider DEP's authority as a result of Plaintiffs' arguments.  *See* Am. Op. & Order (ECF No. 204) at 9 ("Furthermore, by its own terms, the Consent Order admits that the operators have not furnished satisfactory proof to the director that there is a bona fide future use for such well.").  The necessary overlap between the issues in this case and DEP's authority makes DEP an indispensable party.

There is another reason why the second factor favors Defendants: Plaintiffs' relief would impact DEP's supervision of the wells.  *See supra* § II.  This also suggests DEP is an indispensable party.  *See Fla. Wildlife Fed'n Inc.*, 859 F.3d at 1319 ("[A]ny relief in this case would take the form of an injunction with potentially substantial consequences for the Water District's management of the Waterway.  Regardless of whether the Water District might find a court order simple to follow, no protective measures could mitigate the Water District's lack of discretion in pursuing its own management strategy.  This second factor also weighs in favor of dismissal.").

Finally, for the fourth factor, there is no reason why proceedings before DEP would not provide an adequate remedy for Plaintiffs.  To reiterate, Plaintiffs demand that Defendants plug thousands of wells, and "[a] private party cannot plug a well in West Virginia without permission and a permit from the Office of Oil and Gas."  Am. Op. & Order (ECF No. 204) at 8 (citing W. Va. Code § 22-6-23).  Far from being a merely adequate forum, DEP is specialized in hearing complaints about abandoned wells and plugging requests.  *See* W. Va. Code § 22-6-28(a).

---

[5]  *See also Gunvor SA*, 948 F.3d at 222 (noting party opposing motion did not bear this burden); *Hanna*, 750 F.3d at 435–36 (noting same).

"With all four factors supporting a finding of indispensability, this Court [sh]ould not in good conscience allow this case to proceed in the absence of" DEP. *Meade*, 186 F.3d at 442.

### 2.    DEP is immune from suit and cannot be joined

Even though it is an indispensable party, DEP cannot be joined because that would violate its Eleventh Amendment immunity.  As a matter of black-letter law, "[]DEP is immune because it is an arm of the State." *Coal River Mountain Watch v. Republic Energy, LLC*, 2019 WL 3798219, at *5 (S.D. W. Va. Aug. 12, 2019) (collecting authorities).  Such agencies "cannot be joined due to [their] Eleventh Amendment immunity, which deprives the court of subject matter jurisdiction." *Sabine*, 327 F.R.D. at 144.  Because an indispensable party cannot be joined, the Court should dismiss the case.  *See Keal Driveaway Co.*, 173 F.3d at 917–18 ("[I]f a necessary party is unavailable, [the question is] whether the proceeding can continue in that party's absence.  If it cannot, the party is indispensable and the action should be dismissed." (cleaned up)).

### C.    Plaintiffs Failed to Join DEP and the Mineral Owners Before the Deadline

Even if Plaintiffs wanted to now join DEP and the mineral owners, they could not do so. Under the Scheduling Order, "[m]otions to join additional parties, motions to amend pleadings, and any crossclaim or counterclaim and the reply thereto, as well as any similar motions, shall be fully effected by **November 15, 2022**."  Scheduling Order (ECF No. 70) at 3.  This deadline has passed.  With discovery near completion, answers filed, and multiple amended complaints, it is too late for Plaintiffs to seek amendment of the Scheduling Order to join these parties.

### CONCLUSION

Plaintiffs want to adjudicate claims for thousands of wells without involving the agency with authority over the plugging and transfer of those wells or the individuals with interests in those wells.  Plaintiffs cannot simply impose their will on West Virginia's regulatory agencies and citizens.  The voices of others deserve also to be heard.  The Court should grant the motion.

Respectfully submitted:

_/s/ Howard M. Persinger, III_

Howard M. Persinger, III (WVSB #6943)
**PERSINGER & PERSINGER, L.C.**
237 Capitol Street
Charleston, WV 25301
Phone:   (304) 346-9333
Fax:      (304) 346-9337
Email:   hmp3@persingerlaw.com

Dated: May 10, 2023

Daniel Donovan, P.C.  (_pro hac vice_)
Ragan Naresh, P.C. (_pro hac vice_)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone:   (202) 389-5267
Fax:      (202) 389-5200
Email:   daniel.donovan@kirkland.com
            ragan.naresh@kirkland.com

Kenneth Young (_pro hac vice_)
Dustin Womack (_pro hac vice_)
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone:   (713) 836-3600
Fax:      (713) 836-3601
Email:   kenneth.young@kirkland.com
            dustin.womack@kirkland.com

_Counsel for Defendants Diversified Energy Company PLC, Diversified Gas & Oil, PLC, Diversified Production LLC, Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC, and Alliance Petroleum Corporation_

_/s/ Jennifer J. Hicks_

Jennifer J. Hicks, Esquire (WVSB #11423)
Tiffany M. Arbaugh, Esquire (WVSB #9982)
**BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.**
300 Summers Street, Suite 1000
Charleston, WV 25301
Phone:   (681) 205-8888
Fax:      (681) 205-8814
Email:   jhicks@babstcalland.com
            tarbaugh@babstcalland.com

Anna Rotman, P.C. (_pro hac vice_)
Nick Brown (_pro hac vice_)
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone:   (713) 836-3600
Fax:      (713) 836-3601
Email:   anna.rotman@kirkland.com
            nick.brown@kirkland.com

Mark K. Dausch, Esquire (WVSB #11655)
**BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.**
603 Stanwix Street
Pittsburgh, PA 15222
Phone:   (412) 394-5655
Fax:      (412) 394-6579
Email:   mdausch@babst.calland.com

_Counsel for Defendants EQT Production Company, EQT Production HTW, LLC, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC, and EQT Corporation_

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 10, 2023, a copy of the foregoing was served

on all counsel of record via the Court's electronic filing system.

*/s/ Howard M. Persinger, III*
Howard M. Persinger, III (WVSB #6943)