IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

MARK McEVOY, JAMES TAWNEY and
SUSAN TAWNEY, SAMUEL STARK,
SUSAN DENNISON, MARK GOFF,
and CAROL DELROSSO and GEORGE
DELROSSO, individually and on behalf of
a proposed class,

   Plaintiffs,

v.                   CIVIL ACTION NO. 5:22-CV-171
                     Honorable Judge John P. Bailey

DIVERSIFIED ENERGY COMPANY, PLC,
DIVERSIFIED GAS & OIL, PLC, DIVERSIFIED
PRODUCTION LLC, DIVERSIFIED GAS & OIL
CORPORATION, DIVERSIFIED OIL AND GAS
LLC, ALLIANCE PETROLEUM CORPORATION,
EQT PRODUCTION COMPANY, EQT
PRODUCTION HTW, LLC, EQT ENERGY LLC,
EQT INVESTMENT HOLDINGS, LLC, EQT
GATHERING, LLC, EQM MIDSTREAM
PARTNERS LP, EQT MIDSTREAM PARTNERS
LP, EQT GP HOLDINGS, LP, and EQT
CORPORATION,

   Defendants.

### SIERRA CLUB'S OBJECTIONS TO DIVERSIFIED'S SUBPOENA PURSUANT TO F.R.C.P. 45

  Non-Party, Sierra Club, by and through its undersigned counsel, hereby files the following objections to the Subpoena issued to it by the Diversified Defendants in the above-captioned matter.

DM1\14153179.1

## INTRODUCTION

A subpoena issued by this Court and addressed to "Sierra Club c/o National Registered Agents, Inc" was served via Sierra Club's agent for service of process in Glendale, California on May 2, 2023 (hereafter, "the Subpoena").

The Subpoena was served by Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation (hereafter, "Diversified"), who are parties to this lawsuit with Mark McEvoy et al.

Sierra Club is not a party to the litigation.

Sierra Club is a national, non-profit environmental organization dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.

The Subpoena seeks documents in the possession of Sierra Club. Accordingly, these objections to the Subpoena are submitted by Sierra Club and its chapters (hereafter, "Sierra Club"), pursuant to Rule 45 of the Federal Rules of Civil Procedure.

Sierra Club reserves its right to assert further objections, including assertions of privilege as to specific documents, if and when such documents are identified.

The Subpoena seeks the production of documents on May 22, 2023. These Objections, which are being served fourteen (14) days after service upon Sierra Club, are timely under Rule 45(d)(2)(B).

## GENERAL OBJECTIONS

Sierra Club, a non-party to the litigation between Diversified and the Plaintiffs, asserts a general objection that the Subpoena seeks documents and information concerning Sierra Club that are not relevant to any party's claims or defenses in this matter.

Sierra Club further objects that the Subpoena broadly seeks documents and information that are completely unrelated to the litigation, suggesting that Diversified is using this Subpoena to improperly invade Sierra Club's files regarding unrelated advocacy matters, or to harass Sierra Club. For many years, Sierra Club has engaged in advocacy that pertains to owners and operators of gas wells such as Diversified and its various business enterprises, including in West Virginia. This advocacy is far broader than the subject matter of the litigation between Diversified and the Plaintiffs. However, the present Subpoena broadly seeks Sierra Club's internal documents relating to all such advocacy efforts concerning Diversified, even though the documents and information are unrelated to the lawsuit. Moreover, documents reflecting Sierra Club's internal deliberations, discussions, formulation of strategies and tactics, communications with other organizations for the purpose of advancing shared advocacy goals, fundraising, and similar activities are privileged and protected by the First Amendment right to association. *See e.g. Perry v. Schwarzenegger*, 591 F.3d 1126, 1143-45 (9th Cir. 2009)*; see also Pulte Home Corp. v. Montgomery Cnty. Md.*, 2017 U.S. Dist. LEXIS 43153, *9-10 (D. Md. March 24, 2017).

As discussed in more detail herein, Sierra Club further objects that the discovery sought is not proportional to the needs of the case, and that the burden of compliance would exceed the benefit of production of the material sought. *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d923, 927 (7th Cir. 2004). Sierra Club's status as a non-party is a significant factor that should be considered in evaluating whether the burden imposed is undue. *Virginia Dep't of Corr.*

3

*v. Jordan*, 921 F.3d 180, 188 - 189 (4th Cir. 2019); *see also Tresona Multimedia LLC v. Legg*, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015). Because of the different expectations for non-parties in accepting the burdens of litigation, "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *See id.* (citation omitted).

Particularly because it is a non-party, Sierra Club objects that compliance with the Subpoena would be unduly burdensome and expensive, and that such burden and expense outweigh any benefit of the discovery.

Sierra Club further objects on the grounds that any relevant, non-privileged information may be obtained using publicly available resources or through ordinary discovery of the parties in the litigation.

Sierra Club further objects to the degree that the Subpoena seeks documents that are not within Sierra Club's possession, custody, or control.

Sierra Club further objects in light of the fact that there are no limits placed on the Subpoena through Definitions or Instructions. Sierra Club objects that this makes the subpoena unduly burdensome and disproportional to the needs of the case. There is no indication as to whether Diversified is seeking documents only from Sierra Club's employees, or is also seeking documents from Sierra Club's local chapters, members, or other volunteers. Further, there is no regard for the physical location of such documents; nor is there any limit on the number of custodians. In furtherance of this objection, Sierra Club states that it employs over 600 national staff and has hundreds of thousands of members. Sierra Club does not have possession, custody, or control over volunteers' or members' documents. Further it is possible some plaintiffs or attorneys or other entities directly participating in the underlying litigation could be Sierra Club members, adding additional burden and complications to Sierra Club's compliance with the

Subpoena. Sierra Club reserves all rights to object to scope in light of the fact that the Subpoena does not contain any limitations or provide guidance on scope through Definitions or Instructions.

Sierra Club also objects to the ESI Protocol appended to the Subpoena to the degree it imposes an undue burden on Sierra Club. Should Sierra Club be required to produce documents pursuant to the Subpoena, Sierra Club reserves the right to further object and negotiate its responsibilities under the ESI Protocol.

Sierra Club further objects to this Subpoena because it does not allow a reasonable time period for compliance. The Subpoena was served on May 2, 2023, and demands a response on May 22, 2023, fourteen (14) business days later, which is not a reasonable response period.

## OBJECTIONS TO SPECIFIC REQUESTS

Rule 26 of the Federal Rules of Civil Procedure makes clear that information sought in discovery must be "relevant to any party's claim or defense" and must be "proportional to the needs of the case." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). When discovery is sought for a non-party, a more demanding relevance standard applies. Because "[n]onparties are 'strangers' to the litigation . . . they have a 'different set of expectations' from the parties themselves." *Id*. at 189.

Rule 45 of the Federal Rules of Civil Procedure also provides, in relevant part, that, "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii);(iv) and that any documents sought must be in the subpoenaed party's possession, custody, or control. *See, e.g., Ghawanmeh v. Islamic Saudi Acad.*, 274 F.R.D. 329, 79 Fed. R. Serv. 3d (Callaghan) 980, 2011 U.S. Dist. LEXIS 49784 (D.D.C. 2011).

Finally, there is a qualified privilege against the discovery of information where compelled disclosure would likely chill associational rights under the First Amendment. Once a party has made a prima facie showing that its associational rights have been implicated, the burden is largely on the party seeking disclosure to prove that the information sought is of crucial relevance to its case; that the information is actually needed to prove its claims; that the information is not available from an alternative source; and that the request is the least restrictive way to obtain the information. *See, e.g., Pulte Home Corp. v. Montgomery Cnty. Md.*, 2017 U.S. Dist. LEXIS 43153, *9-10 (D. Md. March 24, 2017) (citations omitted).

Here, Diversified's subpoena seeks information that has literally nothing to do with the above-captioned litigation, which involves allegations of trespass, nuisance, negligence, and fraudulent transfer by and between Diversified and EQT. The documents sought are not relevant in any way to any party's claim or defense and are not proportional to the needs of the case. In addition, they subject Sierra Club to undue burden. Finally, the subpoena violates Sierra Club's First Amendment right to free association. For all of these reasons, Sierra Club objects to producing any of the documents sought.

**Document Requests 1 - 5**

Plaintiffs have based their claims in the litigation, in part, on information contained in the report titled "Diversified Energy: A Business Model Built to Fail Appalachia," published in April 2022 by the Ohio River Valley Institute and authored by Ted Boettner, Kathy Hipple, and Anthony Ingraffea (the "Boettner Report"). Diversified seemingly wants to understand if the authors of the Boettner Report have had any contact with the Sierra Club. Whether the authors of the Boettner Report have had any such contact has nothing at all to do with the issues in this case, even for purposes of cross-examination.

The Boettner Report itself is not a fact at issue in this case, and the authors of the Boettner report are not parties to this case. The Boettner Report is a document authored by third parties and published by a third party. In fact, Diversified has already subpoenaed the Boettner Report's authors directly, so Diversified will be able to learn anything pertaining to the actual issues in this case relating to the document in that manner. That is, Diversified's subpoena directed at the Sierra Club – a third party to a third party to the lawsuit – is simply unnecessary. Further, to the extent information in the Boettner Report is relevant to the issues of whether the defendants committed trespass, nuisance, or negligence, or engaged in a fraudulent transfer, the sources of that information are well documented in the report itself, and none of that information originated with Sierra Club. Sierra Club's internal documents or communications about the report or its authors – Diversified's requests 1 through 3 – have even less than nothing to do with those issues. Diversified's requests 4 and 5 – which ask for communications between Sierra Club and either of the lead authors of the Boettner Report – have nothing to do with those issues either. In other words, the documents sought are not relevant to any of the issues in the case, are not proportional to the needs of the case, and taking the time, money, and resources to respond would place an undue burden on Sierra Club.

Further, to the degree Sierra Club even has any documents responsive to Diversified's requests 1 through 5, they would simply be documents authored in furtherance of Sierra Club's and its members' engaging in their First Amendment rights to free association. Given the complete lack of relevance, the requests would have no other effect than to improperly chill the exercise of those rights.

DM1\14153179.1

### Document Requests 6 – 8

Diversified's document requests 6 through 8 have even less of a tether to the actual issues in this case as they seek documents pertaining to Sierra Club's communications with two general non-party news organizations and a non-party expert on gas wells. Although it is not altogether clear, it would appear that Diversified seemingly wants to understand if the Sierra Club has been interested enough in its activities or this case to reach out to news organizations or a completely unrelated company. This sort of information also has nothing at all to do with the issues in this case, even for purposes of cross-examination. Whether Sierra Club – a non-party to this suit – communicated with three other non-parties to this suit about general areas of mutual interest has nothing to do with whether the defendants committed trespass, nuisance, or negligence, or engaged in a fraudulent transfer. To the extent any documents related to the Capitol Forum are relevant to the underlying lawsuit, Diversified has already subpoenaed one of that organizations employees, Daniel Sherwood. In other words, the documents sought are not relevant to any of the issues in the case, are not proportional to the needs of the case, and taking the time, money, and resources to respond would place an undue burden on Sierra Club.

Further, to the degree Sierra Club even has any documents responsive to Diversified's requests 6 through 8, they would simply be documents authored in furtherance of Sierra Club's and its members' engaging in their First Amendment rights to free association. Given the complete lack of relevance, the requests would have no other effect than to improperly chill the exercise of those rights.

### Document Requests 9 – 13

Diversified's document requests 9 and 10 seek any communications Sierra Club has had with the Plaintiffs' attorneys in this case about Diversified, this suit, or gas wells in West

8

Virginia generally. First, Sierra Club's communications with Plaintiffs' counsel regarding gas wells in West Virginia generally have nothing to do with the issues in this case, even for purposes of cross-examination. Whether Sierra Club – a non-party to this suit – communicated with lawyers (who now happen to represent the plaintiffs in this suit) about general areas of mutual interest, i.e., gas wells in West Virginia, has nothing to do with whether the defendants committed trespass, nuisance, or negligence, or engaged in a fraudulent transfer. Sierra Club's communications with these lawyers, to the degree there are any, regarding Diversified or this case more specifically are similarly irrelevant. Even though Sierra Club is a well-known and respected organization, any communications it could have had with Plaintiffs' lawyers about Diversified or this suit do not have any actual bearing on whether the defendants committed trespass, nuisance, or negligence, or engaged in a fraudulent transfer. In other words, the documents sought are not relevant to any of the issues in the case, are not proportional to the needs of the case, and taking the time, money, and resources to respond would place an undue burden on Sierra Club. In addition, the documents sought under request 9 include attorney work-product and privileged communications unrelated to this litigation. It would be unduly burdensome to require Sierra Club to redact those communications and prepare a privilege log when they are wholly unrelated to the actual issues in this suit.

  Diversified's document requests 11 through 13 are even further attenuated and less relevant to the actual issues here. These requests seek any documents and communications with *anyone* in the world regarding Diversified's activities in West Virginia generally, the transactions at issue in this case, or the plaintiffs generally. Again, even though Sierra Club is a well-known and respected organization, any documents or communications it could have of this nature do not have any actual bearing on whether the defendants committed trespass, nuisance,

or negligence, or engaged in a fraudulent transfer. Moreover, requiring a non-party like Sierra Club to turn over any documents or communications it may have regarding a company's activities in a particular geographic location simply because that company happened to get sued in that location would create an undue burden not only in this case but would create an unprecedented and incredibly low bar for a company to invade and interfere with Sierra Club's legitimate First Amendment activities.  In other words, the documents sought are not relevant to any of the issues in the case, are not proportional to the needs of the case, and taking the time, money, and resources to respond would place an undue burden on Sierra Club. Request 11 is also objectionable because it would implicate attorney work-product and attorney-client privileged information unrelated to this case but related to Sierra Club's general work investigating potentially unlawful activities by gas well operators in West Virginia.

Again, to the degree Sierra Club even has any documents responsive Diversified's requests 9 through 13, they would simply be documents authored in furtherance of Sierra Club's and its members' engaging in their First Amendment rights to free association. Given the complete lack of relevance, the requests would have no other effect than to improperly chill the exercise of those rights.

**Document Requests 14 – 19**

Diversified's document requests 14 through 19 are perhaps the least related to this litigation and beg the question of whether Diversified's entire subpoena is simply geared toward harassing Sierra Club and attempting to chill its efforts to exercise its First Amendment rights. For some unknown reason – given that this is a case where certain individuals have sued Diversified for simple common law torts and fraudulent transfer – Diversified wants five (5) years' worth of evidence "sufficient to show payment" "directly or indirectly" from Sierra Club

10

to (a) Appalachian Mountain Advocates, (b) Ohio River Valley Institute, (c) Ted Boettner, (d) Bailey & Glasser LLP, (e) Community Foundation for the Alleghenies or for Greater Johnstown, and (f) The Heinz Endowments. There is absolutely no connection whatsoever between this information and the Plaintiffs' claims or Diversified's defenses in this case. Diversified is basically trying to use this suit to conduct an audit on or to receive an accounting from a non-party to the case. This is an abuse of the discovery process (if Diversified's requests 1 through 13 were not already). Furthermore, as Sierra Club has been represented by attorneys with Appalachian Mountain Advocates in litigation completely unrelated to this case over the past five years, the documents sought necessarily implicate attorney-client privileged information. Responding to request 14 would therefore entail significant additional time and resources to prepare redactions and a privilege log. Needless to say, the documents sought are not relevant to any of the issues in the case, are not proportional to the needs of the case, and taking the time, money, and resources to respond would place an undue burden on Sierra Club.

Again, to the degree Sierra Club even has any documents responsive to Diversified's requests 14 through 19, they would simply be documents authored in furtherance of Sierra Club's and its members' engaging in their First Amendment rights to free association. This would have a chilling effect on Sierra Club's rights to petition the government and to access the courts by seeking intrusive discovery into funding arrangements with legal counsel. Courts have routinely held that discovery into litigation funding arrangements – even pertaining to the case at issue – is impermissible because it is not relevant to the issues in the case and because it implicates attorney work-product and/or attorney-client privileged information. Given the complete lack of relevance and possible infringement on attorney work-product and attorney-client privileged information, the requests would have no other effect than to improperly chill the

exercise of Sierra Club's rights to free association and to petition the government and access the courts.

                              Respectfully submitted,

                              */s/ Randal M. Whitlatch*
                              Randal M. Whitlatch
                              WV Bar No. 10258
                              Duane Morris LLP
                              625 Liberty Avenue, Suite 1000
                              Pittsburgh, PA  15222-3112
                              Phone: (412) 497-1029
                              rmwhitlatch@duanemorris.com

                              Counsel for Non-Party Sierra Club

May 16, 2023

## CERTIFICATE OF SERVICE

I certify that on this 16th day of May 2023 the foregoing **SIERRA CLUB'S OBJECTIONS TO DIVERSIFIED'S SUBPOENA PURSUANT TO F.R.C.P. 45** was served on all counsel of record using the Court's ECF system.

*/s/ Randal M. Whitlatch*
Randal M. Whitlatch

DM1\14153179.1