**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

                    Plaintiffs,

                                       Civil Action No. 5:22-cv-171

v.                                        The Honorable John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

                    Defendants.

**<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
FOR FAILURE TO JOIN REQUIRED PARTIES</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

   I.   THE MINERAL OWNERS ARE NOT NECESSARY OR INDISPENSABLE................ 2

     A. Defendants' Arguments Rely on a Mischaracterization of the Relief Plaintiffs Seek and the Impact of that Relief on Absent Mineral Owners. ........................................................ 4

     B.   The Mineral Owners Are Not Necessary Parties. ........................................................... 7

        1.   The Court Can Award Complete Relief in the Absence of the Mineral Owners. ........ 7

        2.   Proceeding with Plaintiffs' Claims in the Absence of the Mineral Owners Will Not Impair or Impede the Mineral Owners' Ability to Protect Their Financial Interests. .. 7

        3.   Proceeding with Plaintiffs' Claims in the Absence of the Mineral Owners Will Not Impair or Impede the Mineral Owners' Ability to Protect Their Contractual Lease Interests ............................................................................................................................ 9

        4.   Proceeding with Plaintiffs' Claims in the Absence of the Mineral Owners Will Not Subject Defendants to a Substantial Risk of Inconsistent Obligations...................... 12

     C. Even If Necessary, the Mineral Owners Are Not Indispensable Because the Equities Heavily Favor Allowing Plaintiffs' Claims to Proceed. .................................................... 15

   II.   WEST VIRGINIA DEP IS NOT NECESSARY OR INDISPENSABLE. ...................... 20

     A.   DEP's Presence Is Not Required to Afford the Existing Parties Complete Relief. ....... 21

     B.   Plaintiffs' Claims Do Not Interfere with DEP's Regulatory or Contractual Interests. .. 22

     C. DEP's Absence Does Not Create Any Risk of Inconsistent Obligations, Much Less A "Substantial Risk." ............................................................................................................ 23

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Andrews v. Antero Res. Corp.*, 241 W.Va. 796, 828 S.E.2d 858 (2019) ......................................... 5

*Balt. Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456 (D. Md. 2000) ................................ 21

*Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275 (4th Cir. 2001) ........................................................... 23

*Branch Banking & Tr. Co. v. First Am. Title Ins. Co.*, 2012 WL 529926 (S.D. W. Va. Feb. 17, 2012)........................................................................................................................... 8

*Buffalo Mining Co. v. Martin*, 165 W.Va. 10, 267 S.E.2d 721 (1980).......................................... 5

*Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*, 861 F. Supp. 889 (N.D. Cal. 1994), *aff'd*, 83 F.3d 1111 (9th Cir. 1996), *cert. denied*, 519 U.S. 1101 (1997)................................. 22

*Collins v. Gen. Motors Corp.*, 101 F.R.D. 1 (W.D. Pa. 1982)...................................................... 17

*Defs. of Wildlife v. Andrus*, 77 F.R.D. 448 (D.D.C. 1978) ......................................................... 18

*EQT Prod. Co. v. Crowder*, 828 S.E.2d 800 (W. Va. 2019)..................................................... 9, 10

*Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 789 F. Supp. 1201 (D.N.H.), *aff'd*, 968 F.2d 1463 (1st Cir. 1992) ........................................................................ 17

*Francis Oil & Gas, Inc. v. Exxon Corp.*, 661 F.2d 873 (10th Cir. 1981) ...................... 2, 7, 17, 19

*Gateco, Inc. v. Safeco Ins. Co. of Am.*, No. 05-CV-2869, 2006 WL 1118047 (E.D. Pa. Apr. 25, 2006)................................................................................................................. 13

*Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306 (3d Cir. 2007) ................................ 19

*Hayes, Tr. for Paul B. Hayes Fam. Tr., Dated Apr. 30, 2010 v. Bernhardt*, 499 F. Supp. 3d 1071 (N.D. Okla. 2020)........................................................................................................ 16, 18

*Helzberg's Diamond Shop, Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816 (8th Cir. 1977)............................................................................................................ 17

*Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427 (4th Cir. 2014)....................................... 13

*Hugoton Energy Corp. v. Plains Res., Inc.*, 141 F.R.D. 320 (D. Kan. 1991) .............................. 10

*In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848 (N.D. Cal. 2020)........................................ 14

*Jeffcoat v. Lamar Props. LLC*, No. 6:20-CV-00557, 2020 WL 4120660 (W.D. La. July 20, 2020)................................................................................................................................. 11

*Kamhi v. Cohen*, 512 F.2d 1051 (2d Cir. 1975)....................................................................... 15, 16

*Kansas City Royalty Co. v. Thoroughbred Assocs., L.L.C.*, 215 F.R.D. 628 (D. Kan. 2003)................................................................................................................................. 7

*Key Constructors, Inc. v. Harnett Cnty.*, 315 F.R.D. 179 (E.D.N.C. 2016) ...................... 7, 15, 21

*Klockner Stadler Hurter Ltd. v. Ins. Co. of State of Penn.*, 785 F. Supp. 1130 (S.D.N.Y. 1990) ............................................................................................ 14

*LLC Corp. v. Pension Benefit Guar. Corp.*, 703 F.2d 301 (8th Cir. 1983) ................................. 14

*MacNeal v. Columbine Expl. Corp.*, 123 F.R.D. 181 (E.D. Pa. 1988) ........................................ 12

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006) ..................... 11

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246 (4th Cir. 2000)......................................................................................................................... 12, 13

*Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271 (D.D.C. 1985), *aff'd*, 835 F.2d 305 (D.C. Cir. 1987).................................................................................................................. 19

*Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030 (9th Cir. 1983).............................. 14

*Ohio Valley Env't Coal., Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868 (S.D.W. Va. 2011)........ 24

*Owens-Ill., Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999)............................................................. 2, 3

*Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496 (7th Cir. 1980) ........................... 17

*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102 (1968)....................... 3, 17, 20

*Sales v. Marshall*, 873 F.2d 115 (6th Cir. 1989)......................................................................... 14

*Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274 (4th Cir. 1994) .............................. 3

*Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir. 1970) ............................................................... 3

*STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525 (E.D.N.Y. 2011) ...................... 12

*Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915 (4th Cir. 1999)................. 2

*Thomas v. Consolidation Coal Co. (Pocahontas Fuel Co. Div.)*, 380 F.2d 69 (4th Cir. 1967).... 16

*United States v. Sweeny*, 418 F. Supp. 2d 492 (S.D.N.Y. 2006) .................................................. 3

*UTILX Corp. v. Novinium, Inc.*, 2009 WL 10723386 (W.D. Wash. Aug. 11, 2009) ................... 14

*Webb v. Clarion Res., Inc.*, 95 F.R.D. 491 (N.D. Tex. 1982)................................................. 10, 11

*Weinberger v. Romero-Barcelo*, 102 S. Ct. 1798 (1982)............................................................. 22

**Statutes**

W. Va. Code § 22-6-19 ................................................................................................................ 6

W. Va. Code § 22-6-28 .............................................................................................................. 18

**Regulations**

W. Va. Code R. § 35-4-10 .......................................................................................................... 21

W. Va. Code R. § 35-4-13.8 ....................................................................................................... 21

W. Va. Code R. § 35-6-3 ............................................................................................................ 21

**Rules**

Fed. R. Civ. P. 19(a)(1)(A) ................................................................................ 2

Fed. R. Civ. P. 19(a)(1)(B) .......................................................................... 3, 11

Fed. R. Civ. P. 19(a)(2)(ii) .............................................................................. 13

Fed. R. Civ. P. 19(b) .................................................................................. 3, 16

Fed. R. Civ. P. 23(a)(1) .................................................................................. 15

**Other Authorities**

Fed. R. Civ. P. 19, Advisory Committee Notes to 1966 Amendment ........................ 15, 16, 17, 19

## INTRODUCTION

Defendants ask this Court to dismiss the claims of thousands of West Virginia landowners whose properties are burdened with abandoned gas wells in order to prevent minor, hypothetical harm to some indeterminate number of mineral owners who have leased their interests to Diversified ("mineral owners" or lessors"). But Defendants have not identified any specific mineral owners whose interests would be prejudiced by their absence from this litigation. Nor have they offered anything but bare speculation that Defendants will be subject to inconsistent obligations regarding those mineral owners if Plaintiffs succeed on their claims. Further, Defendants do not and could not claim that the Court is unable to award the relief that Plaintiffs actually seek—money damages sufficient to plug and remediate the abandoned wells on their properties, not rescission of the governing leases—in the absence of the lessors. The lessors are thus not necessary parties to this case under Federal Rule of Civil Procedure 19(a).

Even if the mineral owners were necessary parties and could not be joined as Defendants in this class action because they are too numerous, dismissal would be inappropriate because the lessors are not indispensable parties as defined by Rule 19(b). Rule 19(b)'s pragmatic, equitable balancing test plainly favors allowing Plaintiffs to proceed with their claims in the absence of the lessors. In contrast to any minor, speculative prejudice to Defendants or the lessors, Plaintiffs would suffer significant injury by dismissal, which would leave them with no adequate forum to vindicate their property rights.

Finally, the West Virginia Department of Environmental Protection ("DEP") is clearly neither necessary nor indispensable under Rule 19. As this Court already ruled in denying Defendants' previous Rule 12(b) motion to dismiss, Plaintiffs' suit does not improperly conflict or interfere with DEP's authority under the state's oil and gas program, and DEP's presence is

unnecessary to afford Plaintiffs the full relief they seek. *See* ECF No. 204. The Court should

reject Defendants' attempt to repackage and relitigate arguments they already lost.

Accordingly, dismissal is not necessary to protect the interests of mineral owners or DEP,

which are apparently not significant enough to spur those parties to seek to participate in this

case. Defendants' hollow invocation of those interests in an effort to obtain a windfall escape

from their liabilities to Plaintiffs should be rejected and their motion denied.

## ARGUMENT

### I.   THE MINERAL OWNERS ARE NOT NECESSARY OR INDISPENSABLE.

Dismissal under Rule 19 is "a drastic remedy that should be employed only sparingly."

*Teamsters Loc. Union No. 171 v. Keal Driveaway Co*., 173 F.3d 915, 918 (4th Cir. 1999); *see*

*also Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999) ("Courts are loath to dismiss

cases based on nonjoinder of a party . . . ."); *Francis Oil & Gas, Inc. v. Exxon Corp*., 661 F.2d

873, 879 (10th Cir. 1981) ("The philos[o]phy of the rule is to avoid dismissal whenever

possible."). Dismissal for failure to join a necessary and indispensable party should be ordered

only when significant "prejudice or inefficiency will *certainly* result" from the absence of an

interested party. *Owens-Ill.*, 186 F.3d at 441 (emphasis added). The burden lies with the party

urging dismissal to prove such a certainty. *Id.*

Consideration of whether an absent party is necessary and indispensable under Rule 19 is

a two-step process. First, under Rule 19(a), the Court must determine if the absent person is a

"necessary" party either because "in that person's absence, the court cannot accord complete

relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), or "that person claims an interest

relating to the subject of the action and is so situated that disposing of the action in the person's

absence may" either "as a practical matter impair or impede the person's ability to protect the

interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(B).

If a necessary party cannot be joined, the Court must determine whether the party is "indispensable" under Rule 19(b), such that the case cannot "in equity and good conscience" proceed in its absence. Fed. R. Civ. P. 19(b). "Such a decision 'must be made pragmatically, in the context of the substance of each case, rather than by procedural formula,' by considering 'the practical potential for prejudice' to all parties, including those not before it." *Owens-Ill.*, 186 F.3d 435, 441 (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968)); *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.,* 36 F.3d 1274, 1286 (4th Cir. 1994)). The Rule provides four non-exclusive factors for courts to consider when performing this equitable analysis: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *See* Fed. R. Civ. P. 19(b). "The language of Rule 19(b) leaves the district court with 'substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute.'" *United States v. Sweeny*, 418 F. Supp. 2d 492, 500 (S.D.N.Y. 2006) (quoting *Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70, 75 (2d Cir. 1984) (citing 7 Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1604 at 45–46 (1972))); *see also Schutten v. Shell Oil Co.*, 421 F.2d 869, 871 (5th Cir. 1970) ("The 1966

revision of Rule 19 sought to give the courts greater latitude in deciding whether a case should be dismissed for nonjoinder of a supposedly 'indispensable' party.").

Defendants fail to identify any way in which they or the absent mineral owners would be prejudiced if the Court were to proceed with Plaintiffs' claims without joining those mineral owners. They certainly have not shown that any such prejudice outweighs the great injustice that would befall Plaintiffs if they are left without a forum to protect their property rights. Accordingly, Defendants have not carried their heavy burden necessary to justify the extreme remedy of dismissal.

### A. Defendants' Arguments Rely on a Mischaracterization of the Relief Plaintiffs Seek and the Impact of that Relief on Absent Mineral Owners.

Defendants try very hard to make Plaintiffs' action appear similar to cases involving the absence of an owner of real property or party to a contract that is at the heart of the case. *See*, *e.g.*, ECF No. 276 at 5–8. Defendants' characterization rests primarily on their claim that Plaintiffs' lawsuit would extinguish the lessors' property interests and their contract rights in the leases held by Defendants. That is not true.

To support their claims that Plaintiffs' action would interfere with the mineral owners' lease interests, Defendants repeatedly cite to Paragraph 354 of Plaintiffs' Complaint, quoting Plaintiffs' allegation that "[a]ny lease rights that Diversified may have held in the past have since terminated due to lack of mineral production and/or lack of payments to the Frittses." ECF No. 276 at 7, 12, 26. Crucially, however, this statement does not apply to the absent lessors whose interests Defendants invoke. Unlike the Plaintiffs whose properties' minerals are owned by the absent lessors, the Frittses own the minerals underlying their surface property themselves. As a result, Diversified's right to occupy the surface of the Frittses' (and other mineral-owning

Plaintiffs') property is governed directly by the lease. This poses no problem under Rule 19 because those Plaintiffs are the mineral owners and are part of this action.

In contrast to the smaller number of Plaintiffs who own their mineral rights, the large majority of named Plaintiffs—and, Plaintiffs believe, the large majority of class members—own only the surface because the rights to the underlying minerals were previously severed. As Plaintiffs have explained, any right to occupy *those* Plaintiffs' surface properties is governed by the severance deed and the associated implied easement to do what is "reasonable and necessary" for the extraction of minerals. *See* ECF No. 181 at 3 (contrasting the "19 of the 22 named Plaintiffs [that] had their mineral rights severed and are governed by the 'reasonable and necessary' use standard" with the "remaining three properties [that are] governed by lease"); *see also* ECF No. 204 ("In order for a claim for an implied easement for surface rights in connection with mining activities to be successful, it must be demonstrated not only that the right is reasonably necessary for the extraction of the mineral, but also that the right can be exercised without any substantial burden to the surface owner." Syl. Pt. 3, *Buffalo Mining Co. v. Martin*, 165 W.Va. 10, 267 S.E.2d 721 (1980)." (quoting Syl. Pt. 1, *Andrews v. Antero Res. Corp.*, 241 W.Va. 796, 828 S.E.2d 858 (2019))). Consideration of those Plaintiffs' claims does not require the Court to interpret or determine the validity of any lease, but rather only to determine whether the continued presence of the abandoned wells is "reasonable and necessary" for the production of gas. The mineral leases are not implicated in those claims.

Further, plugging of the non-producing wells does nothing to extinguish the lessors' mineral rights. If sufficient gas reserves remain to produce in paying quantities, the mineral owners are free to contract with any party to extract that gas and to collect royalties therefrom. Plaintiffs' action in no way diminishes those rights. The only plugging which Plaintiffs seek is

on unproductive, abandoned wells, in accordance with their property rights and the West Virginia Oil and Gas Act.[1] *See* W. Va. Code § 22-6-19 ("Any well which is completed as a dry hole or which is not in use for a period of twelve consecutive months shall be presumed to have been abandoned and shall promptly be plugged by the operator in accordance with the provisions of this article . . . ."). Because it is contrary to the Oil and Gas Act as well as their rights under the deeds in question, mineral owners could not reasonably expect abandoned and unplugged wells to be left indefinitely on Plaintiffs' property.

Nor would Plaintiffs' action lead to loss of royalty payments, as Defendants allege. *See* ECF No. 276 at 5. Defendants acknowledge that royalties are paid "based on production from the wells." *Id.* Plaintiffs request only that Diversified plug its *nonproducing* wells occupying their surface properties. Because those wells are not producing gas, they are not generating any royalty revenues for the lessors. Plaintiffs action thus does not deprive any lessor of royalties.

The only remaining interest of the mineral owners that Defendants cite is "shut-in payments for unproductive wells"—that is, payments that are made under a lease when an operator temporarily and purposefully halts production on a well. *Id.* That interest is entirely hypothetical. Defendants do not identify a single well that has been purposefully shut in, as opposed to simply abandoned, nor any mineral owner whose shut-in payments would cease as a result of Plaintiffs' action. Indeed, as specified in the complaint, all the non-producing wells on Plaintiffs' land are classified by DEP as "abandoned" rather than "shut-in" or another category.

---

[1] To be clear, Plaintiffs' claims under the fraudulent and voidable transfer statutes do not request the plugging of any producing wells. Rather, they seek to ensure that adequate funds will be available to plug Diversified's wells when they are no longer producing gas and thus their presence is no longer reasonable and necessary for mineral production. Defendants are thus wrong that those claims have any impact on the lessors' rights. *See* ECF No. 276 at 9 (arguing that Plaintiffs' requests to have wells on the Medley property plugged "once they cease production" somehow conflicts with a lessors' desire to keep the wells in production).

## B.  The Mineral Owners Are Not Necessary Parties.

### 1.  *The Court Can Award Complete Relief in the Absence of the Mineral Owners.*

Defendants do not even argue that the mineral owners are necessary parties under Rule

19(a)(1)(A). Indeed, because Plaintiffs seek only money damages in an amount sufficient to

satisfy Defendants' plugging and remediation obligations, there is no questions that the Court

can "accord complete relief among the existing parties" without the lessors' presence. *Id.* This

prong thus does not require joinder of the absent lessors. *See Francis Oil & Gas*, 661 F.2d at 879

("[W]ithout doubt the judgment would be adequate as between Francis and Exxon. Exxon would

either have to pay additional money to Francis or it would not and the presence of other working

owners would have no effect on this."); *Key Constructors, Inc. v. Harnett Cnty.*, 315 F.R.D. 179,

184 (E.D.N.C. 2016).

### 2.  *Proceeding with Plaintiffs' Claims in the Absence of the Mineral Owners Will Not Impair or Impede the Mineral Owners' Ability to Protect Their Financial Interests.*

Defendants claim that the mineral owners are necessary parties because they have a

financial interest "in revenue generated by producing wells, shut-in payments, or delay rentals"

that would be terminated if Plaintiffs' claims are successful. ECF No. 276 at 5–6. But, as

explained above, Plaintiffs do not seek to require the plugging of *producing* wells that are

generating royalties, only nonproducing wells that have been abandoned. And, despite having the

evidentiary burden, Defendants do not offer any evidence such as lease language or records of

payment—both of which they would certainly have in their possession—to substantiate the

claimed interests in "shut-in payments" or "delay rentals." *See Kansas City Royalty Co. v.

Thoroughbred Assocs., L.L.C.*, 215 F.R.D. 628, 630 (D. Kan. 2003) ("Defendant bears the

burden to produce evidence which shows the nature of the interest possessed by an absent party

and that such party's absence will impair the protection of that interest.").

Moreover, Defendants do not explain how the lessors' absence from this litigation diminishes their property interests. Again, plugging of a nonproducing well does not extinguish the underlying mineral rights and the mineral owners remain free to contract with any party to undertake operations to do what is reasonable and necessary to extract any remaining minerals. In order to distract from that obvious conclusion, Defendants characterize the lessors' rights as being in the nonproducing wells, as opposed to the mineral estate. *See* ECF No. 276 at 6. ("The mineral owners' interests in the wells make them necessary parties."). But the mineral owners do not have any ownership interests in the wells themselves, physically or otherwise. That interest, and the liabilities associated with it, are borne by Diversified. Certainly Defendants do not argue that Diversified would not be *allowed* to plug any of the nonproducing wells at issue in Plaintiffs' claims if it chose to do so. The mineral owners have no right to prevent the plugging of any particular well—which is required by law—and, accordingly, no protectable interest that would be extinguished by granting Plaintiffs' requested relief.

Plaintiffs' case bears no resemblance to the cases cited by Defendants' that deal with absent parties who have a direct interest in the property that is the subject of the action. *See id*. For example, Defendants cite *Branch Banking & Tr. Co. v. First Am. Title Ins. Co.*, 2012 WL 529926 (S.D. W. Va. Feb. 17, 2012), but that case required the determination of competing claims of ownership of real property between the plaintiffs and an absent party. *Id*. at *7 ("[T]he threshold issue to be resolved is whether Plaintiff has asserted a claim or claims which require the declaration of title to the North–South Property. In a simple word, the answer is yes."). No such declaration of ownership is required here.

Similarly, the court in *Kansas City Royalty Co.* was asked to interpret a lease between the defendants and absent lessors that pertained to actively producing wells. The relief requested

would have required the Court to determine whether the plaintiffs had valid rights to the minerals being produced, which would have entitled them to significant royalty payments that would otherwise accrue to the absent lessors. *See* 215 F.R.D at 633–34 ("Thoroughbred maintained that under the OXY lease, plaintiffs' mineral rights in the Viola formation were no longer included in the Rietzke Unit. . . . The Kansas City Royalty entities allege that Thoroughbred breached the OXY lease and Unit Declaration by refusing to pay or account to plaintiffs for their contractual share of revenue from production from all wells in the Rietzke Unit."). Because the wells that Plaintiffs seek to have plugged are all nonproducing wells that are not generating royalties, and because Plaintiffs' claims do not affect the absent lessors' underlying mineral rights, Defendants' authority is inapposite.

> 3. *Proceeding with Plaintiffs' Claims in the Absence of the Mineral Owners Will Not Impair or Impede the Mineral Owners' Ability to Protect Their Contractual Lease Interests.*

Defendants' argument that the absent mineral owners' lease interests make them necessary parties is based on the false premise that "Plaintiffs claim that Diversified's leases have expired and Diversified no longer has a right of access to the mineral estates, including leasehold estates." ECF No. 276 at 7–8. As explained above, Plaintiffs' only claims regarding Diversified's leases pertain to the *Plaintiffs that own their mineral rights*, such that no absent lessors are implicated in those claims. Section I.A, *supra.* For the remaining majority of the named Plaintiffs and the proposed class, who do not own their minerals, Diversified's right to access the surface is governed by the severance deed. The court does not need to determine the validity of the leases. Indeed, the Court need not even consult the leases, because the lease may not grant any right to the surface that was not conveyed in the severance deed. *See EQT Prod. Co. v. Crowder*, 828 S.E.2d 800, 810–11 (W. Va. 2019) ("EQT argues that this 2011

9

modification to the lease changed the rights attendant to the surface estate . . . . Because the mineral estate was severed from the surface estate in 1936, [the right to use the surface estate for exploration on and production from neighboring tracts] belonged to the plaintiffs or, more specifically, was a right attached to their surface estate. Hence, the mineral owners could not have conveyed that right to EQT in the 2011 amendment."). Those deeds are typically silent as to the right to occupy the surface, such that the right of access is governed by the "reasonable and necessary" standard, identified by the Court in *Crowder*. *Id.* at 806–07. In fact, in *Crowder*, West Virginia's highest court held that the defendant EQT lacked an implied easement to use the surface owner plaintiffs' land to access the minerals on an adjoining piece of property, such that EQT's presence constituted a trespass, without joining the absent mineral owner lessor or in any way suggesting that the mineral owner was a necessary party. *Id.* at 803–04.

In contrast to the present case, in which the absent mineral owners' leases are at most tangential, the cases cited by Defendants involved absent persons that were parties to contracts at the very heart of the litigating parties' claims. In *Hugoton Energy Corp. v. Plains Res., Inc.*, 141 F.R.D. 320 (D. Kan. 1991), the plaintiffs, who were original lessees of certain oil and gas rights, sought a declaration that absent mineral owners' subsequent leases with the defendant were invalid because the original leases had not expired, as the defendant claimed. *Id.* at 320–21. The Court explained that the "*central issue* in this lawsuit is whether the new leases secured by the defendants supplant the old leases held by the plaintiff due to the expiration of the old leases by their own terms." *Id.* at 322 (emphasis added). Likewise, the plaintiffs in *Webb v. Clarion Res., Inc.*, 95 F.R.D. 491 (N.D. Tex. 1982), sought a declaration that a lease governing a producing well had expired because the well was not timely drilled according to the terms of the lease. *Id.* at 492–93. That declaration would have directly determined the rights of absent mineral owners

whose interests were controlled by the same lease. *Id.*; *see also Jeffcoat v. Lamar Props. LLC*, No. 6:20-CV-00557, 2020 WL 4120660, at *3 (W.D. La. July 20, 2020) ("The lease purchase contract lies at the heart of the litigation."). Here, the absent mineral owners have no right—either by lease or through implied easement—to demand that a nonproducing well remain on any of Plaintiffs' properties. The Court need not declare the leases invalid nor interpret the leases in any way in order to grant the relief Plaintiffs request—unless the Plaintiff in question owns their own mineral rights, in which case they are a party. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 386–87 (2d Cir. 2006) ("We would be significantly broadening . . . Rule 19(a)(2)(i) . . . if we found that because the outcome of this case may impact a separate contract involving a different party, that finding would transform the action into 'an action to set aside a lease or a contract.'").

Finally, none of the injuries that Defendants assert would befall the absent lessors would result *from those parties' absence* from this litigation, as the language of Rule 19 requires. *See* Fed. R. Civ. P. 19(a)(1)(B). In order to be a necessary party, a person must not only have some interest that could be prejudiced by the litigation, but that interest must be prejudiced *because of* the person's absence from the litigation. As the U.S. Court of Appeals for the Second Circuit has explained,

> [i]t is not enough under Rule 19(a)(2)(i) for a third party to have an interest, even a very strong interest, in the litigation. Nor is it enough for a third party to be adversely affected by the outcome of the litigation. Rather, necessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired because of that party's absence from the litigation.

*MasterCard Int'l*, 471 F.3d at 387 (explaining that any harm would result from the absent party purporting to grant rights it could not legally give, not from that party's absence from the litigation); s*ee also STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 544

(E.D.N.Y. 2011) (explaining that the absent party "will suffer little or no hardship from this action beyond that which it would suffer if joined as a party").

Even accepting *arguendo* Defendants' argument that the absent mineral owners have interests that would be prejudiced if Plaintiffs succeed on their claims, Defendants have not alleged any way in which such prejudice would result from the absence of the lessors. Plaintiffs' claims would have the exact same effect on any rights of the lessors regardless of whether they are parties to the litigation. And, to the extent that any mineral owner has an interest in preventing a nonproducing well from being plugged, that interest does not differ from Defendants' interest in the same. Defendants can thus fully and adequately represent the lessors' interest in this litigation such that those mineral owners will suffer no prejudice as a result of their absence from the case.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250–51 (4th Cir. 2000) ("If RASC is able adequately to represent Rite Aid's interest, we would be inclined to conclude that Rite Aid's ability to protect its interest is not impaired or impeded by its absence from this suit."); *STMicroelectronics*, 775 F.Supp. 2d at 544 (finding that the absent party's interests were adequately represented by the defendant); *MacNeal v. Columbine Expl. Corp.*, 123 F.R.D. 181, 188 (E.D. Pa. 1988) ("The minority working interest owners' interest will not be impaired or impeded by their ability to be involved in this suit because their interest will rightly be determined by the majority regardless of their joinder.").

4.   *Proceeding with Plaintiffs' Claims in the Absence of the Mineral Owners Will Not Subject Defendants to a Substantial Risk of Inconsistent Obligations.*

Defendants claim that proceeding with this litigation in the absence of the mineral owners presents a risk of inconsistent obligations, but again they offer only the barest of speculation in support. *See* ECF No. 276 at 8–9. Rule 19 requires Defendants to demonstrate not that there is some remote possibility that they would be subject to inconsistent obligations, but rather a

"substantial risk" of such obligations. Fed. R. Civ. P. 19(a)(2)(ii); *see also Gateco, Inc. v. Safeco Ins. Co. of Am.*, No. 05-CV-2869, 2006 WL 1118047, at *4 (E.D. Pa. Apr. 25, 2006) (holding that the court's application of a contract between the plaintiff and an absent party did not create a "substantial risk" of inconsistent obligations even though the contract was at issue in a separate state court proceeding involving the absent party). They have failed to satisfy that standard.

In the vast majority of cases that find a party is necessary because its absence creates a risk of inconsistent obligations for an existing party, the "substantial risk" is demonstrated by the existence of actual litigation involving the same subject matter in a separate forum. *See*, *e.g.*, *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434–35 (4th Cir. 2014) ("The existence of two concurrent proceedings here creates a 'high likelihood' that one or more of the parties will be subject to conflicting obligations." (quoting *Owens–Ill.,* 186 F.3d at 441)); *see also Nat'l Union,* 210 F.3d at 252. Here, there is no parallel proceeding and Defendants have not shown that such a proceeding is likely to occur and, even if it were, that it would subject Defendants to inconsistent obligations.

Unable to cite to any existing parallel action, Defendants hypothesize that the mineral owners "could still seek to enforce their leases, demanding that Diversified use its rights of ingress and egress to explore and develop the mineral estates."[2] ECF No. 276 at 8–9. But Defendants do not point to any specific obligations in the leases that they would be unable to satisfy if this Court rules that they are required to plug their nonproducing wells. Again,

---

[2] Defendants' claim that "Plaintiffs seek a holding that Diversified has no right of access to the surface estate to produce oil or gas from the disputed wells" is not accurate. *See* ECF No. 276 at 8. Paragraph 16 of Plaintiffs' complaint, cited by Defendants, does not seek an outright bar to Defendants' access to the surface. If their presence is reasonable and necessary to the production of minerals, Plaintiffs' claims would not prevent Defendants from accessing the surface. Plaintiffs seek only an order that Defendants abandoned, nonproducing wells are not reasonable and necessary and thus Defendant has no right to burden Plaintiffs' surface properties with those specific wells.

Defendants do not allege that the leases grant the mineral owners the right to *force* Defendants to return any nonproducing well to production. They do not identify a single lease provision that they would be unable to satisfy if the Court orders them to plug their nonproducing wells. This case is thus unlike the cases cited by Defendants in which granting the requested relief would unquestionably force a party to either violate the Court's order or breach its contract with an absent party. *See, e.g.*, *UTILX Corp. v. Novinium, Inc.*, 2009 WL 10723386, at *2 (W.D. Wash. Aug. 11, 2009). The plugging of Plaintiffs' wells does not impact the right or ability of mineral owners to have new—productive—wells established on their estates.

The remote possibility that some mineral owner might seek to enforce some unidentified lease provision against Defendants in the future does not create the "substantial risk" of inconsistent obligations required by Rule 19. *See Sales v. Marshall*, 873 F.2d 115, 121 (6th Cir. 1989) ("Rule 19(a)(1) focuses 'on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person.'") (quoting *LLC Corp. v. Pension Benefit Guar. Corp.,* 703 F.2d 301, 305 (8th Cir. 1983)); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1045 (9th Cir. 1983) (refusing to find a substantial risk of inconsistent obligations where doing so would require the court "to make several assumptions that are unwarranted on this limited record"); *In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 871 (N.D. Cal. 2020) (refusing to find a substantial risk of inconsistent obligations and explaining that the court "will not speculate about whether other complaints may be filed elsewhere"); *Klockner Stadler Hurter Ltd. v. Ins. Co. of State of Penn.*, 785 F. Supp. 1130, 1133 (S.D.N.Y. 1990) ("Although there is a possibility that KSH may sue Progressive in Malaysia, if KSH does not prevail here, leading to a risk of inconsistent obligations for the defendants, we do not believe that this risk is 'substantial, as required by Rule 19.'"). Even if the mineral owners

14

could bring suit against Diversified seeking damages for harm to their lease rights stemming from Diversified's abandonment of the wells on Plaintiffs' properties, such a suit would not create inconsistent obligations. *Key Constructors*, 315 F.R.D. at 184 (explaining that an absent party's "ability to seek to assert their own distinct claims against any of the defendants in a potential separate action does not conflict with any outcome in this case").

### C. Even If Necessary, the Mineral Owners Are Not Indispensable Because the Equities Heavily Favor Allowing Plaintiffs' Claims to Proceed.

Even if the Court were to find that the mineral owners' financial and lease interests qualify them as necessary parties under Rule 19(a)(1) and accepted Defendants' arguments that the lessors could not practically be joined because they are too numerous,[3] they are nonetheless not "indispensable." Under Rule 19(b)'s equitable balancing test, any prejudice to the lessors' minor, speculative interests and any risk of subjecting Defendants to inconsistent obligations is far outweighed by the harm that dismissal would cause to Plaintiffs, who would be left with no forum to pursue their claims.

Rule 19(b) requires the Court to determine whether, "in equity and good conscience," an action should proceed in the absence of a necessary party. The 1966 Amendments to Rule 19 established an equitable balancing test to replace the "rigid thinking" that had turned "into a rather inflexible rule even going so far as to equate 'indispensable' with 'having a joint interest.'" *See Kamhi v. Cohen*, 512 F.2d 1051, 1053–54 (2d Cir. 1975). Modern Rule 19

---

[3] *See* ECF No. 276 at 21. Plaintiffs agree that joining the mineral owners for every well at issue in the proposed class action would be impracticable. Indeed, the large number of wells and impracticability of joining all surface owners with one of Diversified's nonproducing wells on their properties supports certification of the class. *See* Fed. R. Civ. P. 23(a)(1). However, if any particular mineral owner were to identify an interest that would be diminished by Plaintiffs' action and sought to enforce that interest in a separate forum, that owner could be joined and Plaintiffs' suit could proceed. Lastly, Defendants' claim that joinder of any absent necessary party is impossible because the deadline for joinder in the Court's scheduling order has passed is specious. *See* ECF No. 276 at 25. As the Advisory Committee Notes to the 1966 Amendments to Rule 19 make clear a "person may be added as a party at any stage of the action."

"involves a balancing of interests—those of the parties and of the outsider, those of the public and of the court in seeing that the litigation is both effective and expeditious while taking into account equity and good conscience." *Id.* at 1054.

That balancing test should consider (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties, (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures, (3) whether a judgment rendered in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b). While the Rule provides four factors for the Court to consider, it "does not assign relative weights to these factors. Therefore, how much importance to assign to each factor in any particular case is a determination to be made by the court." *Hayes, Tr. for Paul B. Hayes Fam. Tr., Dated Apr. 30, 2010 v. Bernhardt*, 499 F. Supp. 3d 1071, 1078 (N.D. Okla. 2020). The term "indispensable" is thus only used in the "conclusory sense" that the Court in its discretion determines that a necessary party cannot be joined and that "in his absence it would be *preferable* to dismiss the action, rather than to retain it." Fed. R. Civ. P. 19, Advisory Committee Notes to 1966 Amendment (emphasis added).

Defendants ask this to impose the exact sort of inflexible rule that the 1966 Amendments were intended to avoid by categorically claiming that "non-party lessors are indispensable parties in cases that affect their leasehold interest." ECF No. 276 at 20. That is not how Rule 19 works. Instead, the Court must weigh the impact of dismissal on Plaintiffs against any prejudice to Defendants and the absent parties. This test does not permit the bright line rule that Defendants proffer and courts have refused to apply such a rule. *See Thomas v. Consolidation Coal Co. (Pocahontas Fuel Co. Div.)*, 380 F.2d 69, 82–83 (4th Cir. 1967) ("[I]ndividual employees may

16

bring suit upon a collective bargaining agreement in their own names as third-party beneficiaries against one party to that contract without joining the other party to the contract as a defendant."); *Francis Oil*, 661 F.2d at 878 ("[U]nder ordinary circumstances a person does not become indispensable in contract actions 'simply because that person's rights under an entirely separate contract will be affected.'" (quoting *Helzberg's Diamond Shop, Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816 (8th Cir. 1977))); *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 789 F. Supp. 1201, 1208–09 (D.N.H.), *aff'd*, 968 F.2d 1463 (1st Cir. 1992) ("NFC has not become an indispensable party to this action simply because its rights and obligations under an entirely separate contract (the licensing agreement) may be affected by the results of the action.").

Balancing the competing interests, as Rule 19 requires, makes clear that dismissal of all of Plaintiffs' claims would not be preferable to allowing those claims to proceed in the absence of the mineral owners. First and foremost, dismissal of Plaintiffs' claims would deprive them of any effective forum to obtain the relief they seek. In its landmark case interpreting the 1966 Amendments to Rule 19, the United States Supreme Court's "first concern was the plaintiff's interest in having a forum." *Collins v. Gen. Motors Corp.*, 101 F.R.D. 1, 4 (W.D. Pa. 1982) (discussing *Provident Tradesman Bank and Trust Co. v. Patterson*, 390 U.S. 102 (1968)); *see also Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 500 (7th Cir. 1980) ("The availability of an alternative forum represents a 'critical consideration' in deciding joinder questions."). Indeed, the Advisory Committee Notes ask whether there is an "assurance" that an adequate alternate remedy exists. Fed. R. Civ. P. 19, Advisory Committee Notes to 1966 Amendment. As such, courts routinely refuse to dismiss actions based on that factor alone, despite the absence of necessary parties. *See Collins*, 101 F.R.D. at 4 ("[I]f the Court were to

17

dismiss this action for failure to join Lombardo, Collins would have no forum in which to pursue his claim against the United States. This factor alone leads the Court to conclude that plaintiff's action against the government should not be dismissed."); *Hayes*, 499 F. Supp. 3d at 1079 ("Hayes lacks a means for adequate remedy, so this factor by itself supports proceeding.").

Defendants argue that Plaintiffs have an adequate remedy in the form of the DEP complaint procedure established by West Virginia Code section 22-6-28. ECF No. 276 at 19. But this Court already held the "narrowly prescribed remedy in § 22-6-28" to be "inadequate to fully address" Plaintiffs' claims. ECF No. 204 at 11–12. In their prior Rule 12(b) motion to dismiss, Defendants argued that Plaintiffs' claims were barred because they had failed to exhaust their administrative remedies by filing a complaint under section 22-6-28. The Court rejected that claim in part because "damages recoverable in a tort action are broader than those available administratively." *Id.* at 12. Indeed, under section 22-6-8, Plaintiffs cannot obtain any damages, they cannot bring their claims under the fraudulent transfer statutes, they cannot bring a class action, and they cannot appeal any adverse decision. Defendants' proffered remedy is thus no remedy at all. *See* ECF No. 126 at 8–9 (detailing the inadequacy of § 22-6-8 to address Plaintiffs' claims); ECF No. 204 at 11–12 (agreeing with Plaintiffs). This factor thus strongly counsels in favor of proceeding with Plaintiffs' claims.

In contrast to the significant and immediate harm to thousands of West Virginia surface owners that would result from depriving of them of any meaningful avenue to protect their property rights, any prejudice to Defendants and the mineral owners is minor and remote. "[F]ederal courts have been very reticent to dismiss on the grounds of failure to join an indispensable party, except when *serious* prejudice or inefficiency will result." *Defs. of Wildlife v. Andrus*, 77 F.R.D. 448, 452 (D.D.C. 1978) (emphasis added). The Advisory Committee Notes

18

to the 1966 Amendments explain that the Court should consider whether "the absentee [will] be adversely affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote and minor." Fed. R. Civ. P. 19, Advisory Committee Notes to 1966 Amendment.

As Plaintiffs showed above, any prejudice to the mineral owners is neither immediate nor serious. Plaintiffs' claims would not extinguish the lessors' mineral rights nor would they interfere with any royalty payments because Plaintiffs only request the plugging of *nonproducing* wells, which do not generate royalties. Further, Defendants have not substantiated their allegations that any mineral owner would be deprived of shut-in or rental payments. Even if they were, the mineral owners would be able to bring separate suit against Diversified to recover any damages resulting from Diversified's abandonment of a subject well. *See Francis Oil & Gas*, 661 F.2d at 879 ('The judgment would have no effect whatsoever on the rights of the other parties because each has a contract of his own and they are entitled to litigate it just as the plaintiff is entitled to present his suit."). Any minor, speculative prejudice to the absent mineral owners is thus outweighed by the significant harm to Plaintiffs from dismissal. *See Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271, 275–76 (D.D.C. 1985), *aff'd*, 835 F.2d 305 (D.C. Cir. 1987) ("The fact that dismissal of plaintiff's claims for relief in this court would effectively foreclose plaintiff from relief elsewhere outweighs the more speculative harm to the absent parties."); *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 317 (3d Cir. 2007) (refusing to find a party indispensable because the threat of prejudice was not sufficiently "direct and immediate").

The same is true of any prejudice that would allegedly result from Defendants being subject to some hypothetical inconsistent obligations. As with the prejudice to the absent lessors, any risk to Defendants of being subject to inconsistent obligations is minor and remote and does not justify dismissal when balanced against the harm to thousands of surface landowners who

19

would be unable to vindicate their fundamental property rights. In sum, it is clear that Defendants' professed concerns with the absent mineral owners' interests are nothing more than crocodile tears. Defendants' only "concern with the absence of [the mineral owners] was and is to obtain a windfall escape" from the plugging and remediation obligations Plaintiffs seek to enforce. *See Patterson*, 390 U.S. at 112. Accordingly, "equity and good conscience" demand that Plaintiffs be permitted to proceed with their claims.

## II.   WEST VIRGINIA DEP IS NOT NECESSARY OR INDISPENSABLE.

Defendants argue that DEP must be joined because Plaintiffs' suit interferes with its regulatory interests and because DEP's presence in this action is required to permit the plugging and transfer of wells. And because sovereign immunity prevents joinder of the state agency, Defendants' argue, Plaintiffs' claims must be dismissed. *See* ECF No. 276 at 10–16. The Court need spend little time on these arguments because it already effectively considered and rejected them in denying Defendants' previous Rule 12(b) motion to dismiss. *See* ECF No. 204 at 8–13. Defendants' second bite at the apple fares no better than their first.

Defendants' previous motion was based on their claim that Plaintiffs' action usurped DEP's exclusive regulatory authority as embodied in an administrative Consent Order with Diversified, ECF No. 105 at 10–15, and that only DEP can authorize the plugging of wells, *id.* at 9–10. In the instant motion, Defendants argue that the Court cannot afford complete relief to the parties because only DEP can authorize the plugging of wells, ECF No. 276 at 10–12, 23, and that Plaintiffs' claims improperly intrude on DEP's regulatory interests, *id.* at 13–16, 23–24. The Court should deny Defendants' meritless Rule 12(c) motion just as it denied their previous meritless Rule 12(b) motion.

///

20

**A.  DEP's Presence Is Not Required to Afford the Existing Parties Complete Relief.**

First, the only relief that Plaintiffs request is money damages. DEP's participation is plainly not required for the Court to order payment from Defendants sufficient to cover the costs of well plugging and remediation. *Key Constructors*, 315 F.R.D. at 184.

Additionally, neither the Consent Order nor any other regulatory requirement prevents DEP from granting the permits to plug and remediate the wells. As Plaintiffs previously explained, DEP lacks discretion to deny such a plugging permit on the grounds that it goes beyond what is required by the Consent Order. *See* ECF No. 126 at 12–13. Rather, DEP (and any other party) may only object to a well-plugging application on the grounds that it would violate the technical and procedural requirements governing plugging. W. Va. Code R. § 35-4-13.8. Because Plaintiffs demand that any plugging and remediation fully comply with those regulatory requirements, it is not true that "DEP could refuse to allow" the plugging for the wells. *See* ECF No. 276 at 11.[4] As such, "[t]he requirement for [DEP] to issue a permit for well plugging is not an obstacle to plaintiffs' requested relief." ECF No. 204 at 12.

Indeed, Courts routinely order relief that requires a defendant to obtain a separate permit or authorization without joining the permitting authority. *See*, *e.g.*, *Balt. Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456, 473 (D. Md. 2000) (appointing special master to oversee defendant's retrofitting of a building to comply with Americans with Disabilities Act, including

---

[4] Contrary to Defendants' claims, *id.* at 10, Plaintiffs do not believe that transfer of operator status from Diversified to EQT would be required to afford Plaintiffs relief as to the wells involved in the fraudulent transfers. Defendants incorrectly cite paragraph 15 of Plaintiffs' complaint in support of their claim that "Plaintiffs demand that the Court void the transfers of wells between EQT and Diversified, undo the transactions, and transfer the wells back to EQT." *Id.* But Plaintiffs do not actually request that the wells themselves be transferred. Instead, they seek to transfer "*the liability* for plugging and decommissioning the more than 12,000 wells involved in the transfers back to EQT." ECF No. 96 at ¶ 15 (emphasis added). That is, they seek money damages. Regardless, Defendants have not identified any scenario that would allow DEP to deny the requests for transfer of certain wells to EQT even if such transfer were required. *See* ECF No. 276 at 12 (citing W. Va. Code R. § 35-6-3 and W. Va. Code R. § 35-4-10 but offering no explanation of how DEP would deny a transfer pursuant to those regulations).

"obtaining necessary permits"); *Weinberger v. Romero-Barcelo*, 102 S. Ct. 1798, 1804 (1982) (ordering the Navy to apply for a permit under the Clean Water Act without joining the permitting agency). Under Defendants' logic, every American with Disabilities Act claim seeking the retrofitting of a building to accommodate disabled individuals—or, indeed, *any* case seeking construction, demolition, or modification of a building, or money damages to accomplish the same—would require joinder of the local zoning board, historical preservation committee, or other government agency whose authorization is required to obtain a building permit. Rule 19 plainly does not command such an absurd result.

**B. Plaintiffs' Claims Do Not Interfere with DEP's Regulatory or Contractual Interests.**

Defendants argue that DEP's presence is necessary because proceeding without it would impede its ability to protect its general regulatory interests and its specific contractual interest in the Consent Order. As this Court has already held, however, Plaintiffs' claims do not interfere with DEP's interests or attack the Consent Order. ECF No. 204 at 8–11. Rather, the law expressly contemplates that DEP's regulatory authority coexists with and does not supplant Plaintiffs' common law remedies.

Defendants argue that "Plaintiffs' claims necessitated the Court's rejection of DEP's ability to negotiate [the] Consent Order." ECF No. 276 at 13. But as this Court previously held, it need not reject DEP and Diversified's Consent Order to vindicate Plaintiffs' property rights. As the Court explained, the Consent Order is "simply an exercise of [DEP]'s prosecutorial discretion and has no effect on the plaintiffs' property rights." ECF No. 204 at 9 (citing *Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*, 861 F. Supp. 889, 902–03 (N.D. Cal. 1994), *aff'd*, 83 F.3d 1111, 1120 (9th Cir. 1996), *cert. denied*, 519 U.S. 1101 (1997)). The order says only "that the non-producing wells identified by Diversified 'shall not be subject to any further

enforcement activities by [DEP] with regard to any requirement to close and plug such wells based upon the lack of production in the most previous twelve months so long as Diversified is compliant with the terms and conditions of this Order.'" *Id*. at 12 (quoting the Consent Order). Because Plaintiffs' claims do not require DEP to exercise its statutory or regulatory enforcement authority, but rather rely on independent common law causes of action, they do not require rejection of the Consent Order. Plaintiffs' claims do not affect Diversified's obligations to DEP under the Consent Order, or DEP's promise not to exercise its enforcement authority, in any way.

Likewise, Plaintiffs' claims do not interfere with DEP's broader regulatory authority. *See* ECF No. 276 at 15–16. As this Court previously held, "[t]he West Virginia Legislature made clear that the remedies provided by the regulatory program are not exclusive and do not preclude surface owners' common law claims." ECF No. 204 at 10–11. Plaintiffs do not ask the Court to order DEP to take any action, such that the Court would not be required to "instruct[] state officials on how to conform their conduct to state law." *See* ECF No. 276 at 15 (quoting *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 293 (4th Cir. 2001)). DEP's absence from this litigation thus does not prejudice the agency's interests in any way.

### C.  DEP's Absence Does Not Create Any Risk of Inconsistent Obligations, Much Less A "Substantial Risk."

Defendants claim that DEP's absence subjects them to a substantial risk of inconsistent obligations because "the Court could order Defendants to do one thing, but DEP could order them to do something different if it is not bound by the verdict in this case." ECF. No 276 at 16. Defendants argument fails for the simple reason that Plaintiffs have not requested that the Court order Defendants do anything other than pay them money damages in an amount sufficient ensure the plugging of Diversified's wells. ECF No. 96 at 75–76.

Even if the Court were to directly order the plugging of wells on a schedule different from that in DEP's Consent Order, that would not create inconsistent obligations. In *Ohio Valley Env't Coal., Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868, 887–91 (S.D.W. Va. 2011), the court found that DEP was not a necessary or indispensable party to a citizen suit to enforce effluent limitations contained in a Clean Water Act permit, despite the DEP being party to an existing state court action regarding the very same effluent limits. The Court noted that because the state court action ostensibly sought compliance with the same effluent limits the plaintiffs sought to enforce, the only conflict would result from "differing compliance dates." *Id.* at 889. That did not create a risk of inconsistent obligations because the defendant "would merely need to comply with the earlier date to be in compliance with both orders." *Id.* Similarly, plugging Plaintiffs' nonproducing wells would not be inconsistent with, but would rather fully satisfy, Defendants' obligations to DEP under the Consent Order, which requires Diversified to plug "at least" 50 wells per year and expressly contemplates that it may address more than that. *See* ECF No. 275-1 at ¶¶ IV.5.b, IV.7.

Finally, any suggestion that DEP would deny the permits necessary to plug and remediate the nonproducing wells on Plaintiffs' properties is pure speculation and does not give rise to the "substantial risk" of inconsistent obligations that would make DEP a necessary party. *See* Section I.B.4, *supra*; *see also Maple Coal*, 808 F. Supp. 2d at 889 (rejecting claim of inconsistent obligations as "merely speculative" because there was no existing order that would conflict with the relief plaintiffs sought). Even assuming some inconsistent obligations would result, any prejudice to Defendants would not outweigh the harm caused by shutting the courthouse doors to thousands of landowners and eviscerating their fundamental property rights. *See* Section I.C, *supra*.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings for Failure

to Join Required Parties should be denied.

Dated: May 24, 2023                                   Respectfully submitted,

                                                                     */s/ Benjamin A. Luckett*
                                                                     Benjamin A. Luckett (WVSB No. 11463)
                                                                     J. Michael Becher (WVSB No. 10588)
                                                                     Joseph M. Lovett (WVSB No. 6926)
                                                                     Isak Howell (WVSB No. 11558)
                                                                     Amanda Demmerle (WVSB No. 13930)
                                                                     APPALACHIAN MOUNTAIN ADVOCATES
                                                                     P.O. Box 507
                                                                     Lewisburg, WV 24901
                                                                     (304) 645-9006
                                                                     jlovett@appalmad.org
                                                                     mbecher@appalmad.org
                                                                     ihowell@appalmad.org
                                                                     bluckett@appalmad.org
                                                                     ademmerle@appalmad.org

                                                                     Brian A. Glasser, Esq. (WVSB No. 6597)
                                                                     John W. Barrett, Esq. (WVSB No. 7289)
                                                                     Brian R. Swiger (WVSB No. 5872)
                                                                     Athanasios Basdekis (WVSB No. 9832)
                                                                     Panida Anderson (Admitted *Pro Hac Vice*)
                                                                     BAILEY & GLASSER, LLP
                                                                     209 Capitol Street
                                                                     Charleston, West Virginia 25301
                                                                     (304) 345-6555 (phone)
                                                                     (304) 342-1110 (fax)
                                                                     bglasser@baileyglasser.com
                                                                     jbarrett@baileyglasser.com
                                                                     bswiger@baileyglasser.com
                                                                     tbasdekis@baileyglasser.com
                                                                     panderson@baileyglasser.com

                                                                     *Attorneys for Plaintiffs and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

                     Plaintiffs,

                                  Civil Action No. 5:22-cv-171
v.                             The Honorable John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

                     Defendants.

## CERTIFICATE OF SERVICE

      I, Benjamin A. Luckett, hereby certify that on May 24, 2023, I caused to be filed the

foregoing with the Clerk of the Court using the CM/ECF System, which caused a true and

accurate copy of such filing to be served upon all attorneys of record.

                                       */s/ Benjamin A. Luckett*
                                        Benjamin A. Luckett (WVSB No. 11463)

26