IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**MARK McEVOY**, *et al.,*

                    Plaintiffs,

          v.                                        **Civil Action No. 5:22-CV-171**
                                                    Judge Bailey

**DIVERSIFIED ENERGY COMPANY PLC**,
*et al.,*

                    Defendants.

**ORDER**

Pending before this Court is Defendants' Motion for Judgment on the Pleadings for

Failure to Join Required Parties [Doc. 275] and accompanying Memorandum of Law in

Support [Doc. 276], filed May 10, 2023.  Plaintiffs filed a Memorandum in Opposition

[Doc. 295] on May 24, 2023.  Defendants filed a Reply [Doc. 300] on May 31, 2023.  The

matter is ripe for adjudication.  For the reasons that follow, this Court will deny defendants'

Motion for Judgment on the Pleadings.

**I.      Background**

This case stems from thousands of abandoned gas wells in West Virginia that

plaintiffs allege Diversified Defendants had a duty to plug and decommission.  Moreover,

this case also concerns alleged fraudulent transfers made between Diversified Defendants

and EQT Defendants.  A Second Amended Class Action Complaint [Doc. 96] was filed on

January 5, 2023.   Plaintiffs bring this action under Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4) on behalf of the following proposed classes:

> The Voidable Transfer Class, consisting of all persons or entities that own property in West Virginia on which Diversified owns a well, regardless of whether the wells are currently abandoned or non-producing; and

> The Common Law Class, consisting of all persons or entities who own land in West Virginia containing at least one well that (1) is not producing and/or has not produced oil or gas for 12 consecutive months, (2) is currently owned or operated by Diversified, and (3) has not been plugged or properly decommissioned.

[Doc. 96 at 64–65].   In the Second Amended Complaint, plaintiffs assert five causes of action:

> Count I - Trespass by Diversified (Common Law Class only) [Doc. 96 at 68–69];

> Count II - Nuisance by Diversified (Common Law Class only) [Id. at 69–70];

> Count III - Negligence by Diversified (Common Law Class only) [Id. at 70];

> Count IV - Avoidance and Recovery of a Voidable Transfer as the Result of an Actual Fraudulent Transfer (Voidable Transfer Class only) [Id. at 71–72]; and

Count V - Avoidance and Recovery of Voidable Transfer as the Result of a Constructive Fraudulent Transfer (Voidable Transfer Class only) [Id. at 73–74].

For relief, plaintiffs seek the following:

1.      Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3) and (c)(4), certify the proposed class for the purpose of determining Defendants' liability to Plaintiffs;

2.      Enforce the Plaintiffs' and class members' private property rights by declaring that Diversified's failure to promptly plug its abandoned wells on Plaintiffs' and class members' properties constitutes trespass, nuisance, and negligence such that Plaintiffs and class members are entitled to appropriate damages necessary to remedy their injuries;

3.      Award Plaintiffs and class members damages from Diversified to compensate them for trespass (calculated at the cost of plugging, remediation, and demolition of the abandoned wells), nuisance, and negligence;

4.      Declare that Diversified's July 2018 Voidable Transfer of nearly $523.4 million to EQT and the assumption of plugging obligations in exchange for approximately 11,000 wells is avoided as a fraudulent transfer as defined by the Alabama UFTA;

5.      Declare that Diversified's May 2020 Voidable Transfer of nearly $114.5 million to EQT and the assumption of plugging obligations in

exchange for approximately 900 wells is avoided as fraudulent transfer as defined by Alabama UVTA;

6.      Direct the recovery of the assets Diversified transferred to EQT and reimpose the plugging and decommissioning obligations incurred by Diversified in the July 2018 and May 2020 Voidable Transfers back onto the transferor, EQT, to the extent necessary to satisfy Plaintiffs' claims under Sections 8-9A-7 and 8-9B-8 of the Alabama Code or under otherwise applicable fraudulent transfer laws, or, alternatively, in accordance with Alabama Code §§ 8-9A-7 and 8-9B-9, enter Judgment for the value of the property transferred and the obligations incurred by Diversified up to the amount necessary to satisfy Plaintiffs' claims;

7.      Create a fund from the damages awarded from EQT to be used to plug and otherwise decommission Class Members' wells in West Virginia;

8.      Create a separate fund from damages awarded from Diversified to be used to plug and otherwise decommission Class members' wells;

9.      Appoint a receiver to take charge of and administer both of those funds;

10.     Award attorney's fees as appropriate; and

11.     Grant Plaintiffs and all Class members such other and further relief as is just and equitable under the circumstances.

[Doc. 96 at 74–76].

4

On January 18, 2023, defendants filed their Motion to Dismiss Second Amended Complaint.  After briefing, this Court issued an Order denying defendants' Motion to Dismiss Second Amended Complaint.  *See* [Doc. 204].

Defendants filed their Motion for Judgment on the Pleadings following plaintiffs' alleged failure to join necessary parties under Federal Rule of Civil Procedure 19. *See* [Doc. 275].  Defendants assert plaintiffs have failed to join West Virginia's Department of Environmental Protection ("WV DEP") and thousands of mineral owners whose interests will be terminated as a result of plaintiffs' claims.  In support, defendants state that "[d]isposition of this case in their absence will leave the Court unable to accord complete relief, impair or impede the non-parties' ability to protect their interests, and expose Defendants to the risk of inconsistent obligations."  *See* [id. at 1].

In response, plaintiffs assert that the claims of the lessors and the WV DEP are neither necessary nor indispensable under Federal Rule of Civil Procedure 19.  *See* [Doc. 295].  With respect to the claims of the lessors, plaintiffs state that defendants "have not identified any specific mineral owners whose interests would be prejudiced by their absence from this litigation.  Nor have they offered anything but bare speculation that Defendants will be subject to inconsistent obligations regarding those mineral owners if Plaintiffs succeed on their claims.  Further, Defendants do not and could not claim that the Court is unable to award the relief that Plaintiffs actually seek—money damages sufficient to plug and remediate the abandoned wells on their properties, not rescission of the governing leases—in the absence of the lessors."  *See* [id. at 6].  With respect to the WV DEP, plaintiffs assert that this Court has already ruled that plaintiffs' "suit does not

improperly conflict or interfere with DEP's authority under the state's oil and gas program, and DEP's presence is unnecessary to afford Plaintiffs the full relief they seek." *See* [id.].

## II.    Standards of Review

### a.    Federal Rule of Civil Procedure 19

"Federal Rule of Civil Procedure 19 sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action." ***Nat'l Union Fire Insur. Co. of Pittsburgh, PA v. Rite Aid of SC, Inc.***, 210 F.3d 246, 249 (4th Cir.2000). "[C]ourts must first ask 'whether a party is necessary to a proceeding because of its relationship to the matter under consideration' pursuant to Rule 19(a)." ***Owens–Illinois, Inc. v. Meade***, 186 F.3d 435, 440 (4th Cir.1999) (quoting ***Teamsters Local Union No. 171 v. Keal Driveaway Co.***, 173 F.3d 915, 917–18 (4th Cir.1999)). If the party is necessary, it will be ordered into the action. ***Id***. If the party cannot be joined, however, "the court must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." ***Id***. "Only necessary persons can be indispensable, but not all necessary persons are indispensable." ***Schlumberger Indus., Inc. v. Nat'l Surety Corp.***, 36 F.3d 1274, 1285–86 (4th Cir.1994).

"In determining whether a party is necessary and, then, indispensable, the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." ***Id***. at 1286 (citing ***Provident Tradesmens Bank & Trust Co. v. Patterson***, 390 U.S. 102 (1968)); *see also* ***Owens–Illinois***, 186 F.3d at 441 ("Such a decision must be made pragmatically, in the context of the substance of each case, rather than by procedural formula."). "Courts are loathe to dismiss cases based on

nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." ***Owens–Illinois***, 186 F.3d at 441; *see also* ***Nat'l Union***, 210 F.3d at 250 ("Dismissal of a case is a drastic remedy ... which should be employed only sparingly.").

The Court first determines whether the mineral owners and the WV DEP is a "necessary" party pursuant to Rule 19(a). Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

If a necessary party cannot be joined, the Court must determine whether the party is "indispensable" under Rule 19(b).  Indispensability provides a four-factor test:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2)

7

the extent to which any prejudice could be lessened or avoided by: (A)
protective provisions in the judgment; (B) shaping the relief; or (C) other
measures; (3) whether a judgment rendered in the person's absence would
be adequate; and (4) whether the plaintiff would have an adequate remedy
if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  "A Rule 19(b) analysis is not mechanical; rather it is conducted in
light of the equities of the case at bar." **Nat'l Union**, 210 F.3d at 252 (citing
**Schlumberger**, 36 F.3d at 1287).

"The first Rule 19(b) factor asks to what extent a judgment rendered in the
non-party's absence will prejudice that person or those already parties. This factor
addresses many of the same concerns as [Rule 19(a)(1)(B)]." *Id*. (citing **Keal**, 173 F.3d at
919).

"The second factor to consider under Rule 19(b) is whether a court can tailor relief
to lessen or avoid the prejudice to the absent party or to those already parties." *Id*. at 253.

"The third [Rule 19(b)] factor is whether a judgment without the absent person will
be adequate. This factor implicates the interest of the courts and the public in complete,
consistent, and efficient settlement of controversies ... [and] promote[s] the public interest
in avoiding piecemeal and inefficient litigation." *Id*. (internal quotations and citations
omitted).

"Finally, Rule 19(b) directs us to determine whether dismissal for nonjoinder will
leave the plaintiff with an adequate remedy." *Id*.; *see also* Fed.R.Civ.P. 19(b)(4).

### b.     Federal Rule of Civil Procedure 12(c)

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) seeks to dispose of a case on the basis of the underlying substantive merits of the parties' claims as they are revealed in the formal pleadings.  *See* 5C Wright & Miller, *Federal Practice and Procedure* Civil 3d § 1367 (2007).  "In analyzing a party's motion for judgment on the pleadings pursuant to Federal Rule 12(c), the Fourth Circuit has indicated that the applicable standard is the same as a motion to dismiss pursuant to Federal Rule 12(b)(6), noting that the 'distinction is one without a difference.'"  ***Hurley v. Wayne Cty. Bd. of Educ.***, 2017 WL 2454325, at *3 (S.D. W.Va. June 6, 2017) (Chambers, C.J.) (quoting ***Burbach Broad. Co. of Del. v. Elkins Radio Corp.***, 278 F.3d 401, 405–06 (4th Cir. 2002)); *see also* ***Drager v. PLIVA USA, Inc.***, 741 F.3d 470, 474 (4th Cir. 2014) ("The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6).") (citing ***Butler v. United States***, 702 F.3d 749, 751 (4th Cir. 2012)).  "The only difference between a Rule 12(c) motion and a Rule 12(b)(6) motion is timing."  ***West Virginia Auto. and Truck Dealers Ass'n v. Ford Motor Co.***, 2014 WL 2440406, at *3 (N.D. W.Va. May 30, 2014) (Keeley, J.) (citing ***Burbach***, 278 F.3d at 405–06); *see also* ***Miller v. Liberty Mutual Insurance Co.***, 2013 WL 12137238, at *1 (N.D. W.Va. November 4, 2013) (Bailey, C.J.) ("Rule 12(c) motions may be raised after the pleadings are closed, and are reviewed under the same standard as Rule 12(b)(6) motions to dismiss.") (citing ***Burbach***, 278 F.3d at 405–06)).

"Therefore, a motion for judgment on the pleadings 'should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all

reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" **Drager**, 741 F.3d at 474 (quoting **Edwards v. City of Goldsboro**, 178 F.3d 231, 244 (4th Cir. 1999)). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." **Id**. (citing **Butler**, 702 F.3d at 752).

Further, as a general matter, no information outside of the pleadings may be considered." **EQT Corp. v. Miller**, 2012 WL 3839417, at *2 (N.D. W.Va. Sept. 5, 2012) (Stamp, J.) (citing Fed. R. Civ. P. 12(d)). However, the Court may consider any documents that are "integral to the complaint and authentic." **Occupy Columbia v. Haley**, 738 F.3d 107, 116 (4th Cir. 2013).

### III.   Discussion

#### A.   Mineral Owners

This Court finds that the mineral owners are not necessary and indispensable to the above-styled case. Plaintiffs requests for remedy in their Amended Complaint are as follows:

1.   Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4), certify the proposed class for the purpose of determining Defendants' liability to Plaintiffs;

2.   Enforce the Plaintiffs' and class members' private property rights by declaring that Diversified's failure to promptly plug its **abandoned wells** on Plaintiffs' and class members' properties constitutes trespass, nuisance, and

negligence such that Plaintiffs and class members are entitled to appropriate damages necessary to remedy their injuries;

3. Award Plaintiffs and class members damages from Diversified to compensate them for trespass (calculated at the cost of plugging, remediation, and demolition of the abandoned wells), nuisance, and negligence;

4.     Declare that Diversified's July 2018 Voidable Transfer of nearly $523.4 million to EQT and the assumption of plugging obligations in exchange for approximately 11,000 wells is avoided as a fraudulent transfer as defined by the Alabama UFTA;

5.     Declare that Diversified's May 2020 Voidable Transfer of nearly $114.5 million to EQT and the assumption of plugging obligations in exchange for approximately 900 wells is avoided as fraudulent transfer as defined by Alabama UVTA;

6.     Direct the recovery of the assets Diversified transferred to EQT and reimpose the plugging and decommissioning obligations incurred by Diversified in the July 2018 and May 2020 Voidable Transfers back onto the transferor, EQT, to the extent necessary to satisfy Plaintiffs' claims under Sections 8-9A-7 and 8-9B-8 of the Alabama Code or under otherwise applicable fraudulent transfer laws, or, alternatively, in accordance with Alabama Code §§ 8-9A-7 and 8-9B-8, enter judgment for the value of the property transferred and the obligations incurred by Diversified up to the amount necessary to satisfy Plaintiffs' claims;

11

7.      Create a fund from the damages awarded from EQT to be used to plug and otherwise decommission Class members' wells in West Virginia;

8.      Create a separate fund from damages awarded from Diversified to be used to plug and otherwise decommission Class members' wells;

9.      Appoint a receiver to take charge of and administer both of those funds;

10.     Award attorney's fees as appropriate; and

11.     Grant Plaintiffs and all Class members such other and further relief as is just and equitable under the circumstances.

[Doc. 96 at 75–76 (emphasis added)].

Plaintiffs request only that defendants plug their *abandoned, nonproducing* wells occupying their surface properties.  The relief plaintiffs seek is in accordance with their property rights and the West Virginia Oil and Gas Act:

Any well which is completed as a dry hole or which is not in use for a period of twelve consecutive months shall be presumed to have been abandoned and shall promptly be plugged by the operator in accordance with the provisions of this article . . . .

W.Va. Code § 22-6-19.  The mineral owners defendants argue are absent in this case could not reasonably expect abandoned and unplugged wells to be left indefinitely on plaintiffs' property, especially when it is a requirement pursuant to the West Virginia Oil and Gas Act to plug abandoned wells which have not been in use for a period of twelve (12) consecutive months.

The mineral owners are not necessary parties because the wells plaintiffs seek to have plugged are not producing gas, so  the wells are not generating any royalty revenues for the mineral owner lessors.  Plaintiffs are not seeking to require the plugging of *producing* wells that are generating royalties.  Plugging of a nonproducing well does not extinguish the underlying mineral rights for the mineral owners.  Mineral owners are still free to contract with any party to undertake operations to do what is reasonable and necessary to extract any remaining minerals.  The mineral owners, along with defendants, have no right to prevent the plugging of any particular well that is required by law.  There is no protectable interest of the mineral owners that would be extinguished if this Court grants plaintiffs' requested relief.

In order to be a necessary party, a person must not only have some interest that could be prejudiced by the litigation, but that interest must be prejudiced because of the person's absence from the litigation:

> It is not enough under Rule 19(a)(2)(i) for a third party to have an interest, even a very strong interest, in the litigation.  Nor is it enough for a third party to be adversely affected by the outcome of the litigation.  Rather, necessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired ***because of*** that party's absence from the litigation.

***MasterCard Intern. Inc. v. Visa Intern. Service Ass'n, Inc.***, 471 F.3d 377, 387 (2d Cir. 2006).

13

Even accepting *arguendo* defendants' argument that the absent mineral owners have interests that would be prejudiced if plaintiffs succeed on their claims, defendants have not alleged any way in which such prejudice would result from the absence of the lessors.  If this Court grants plaintiffs' requested relief, plaintiffs' claims would have the exact same effect on any rights of the lessors regardless of whether they are parties to the litigation.  And, to the extent that any mineral owner has an interest in preventing an abandoned, nonproducing well from being plugged, that interest does not differ from defendants' interest in the same.  Defendants' can fully and adequately represent the mineral owners' interest in this litigation such that those mineral owners will suffer no prejudice as a result of their absence from the case.

Defendants further argues that there is a "substantial risk they will be subject to inconsistent obligations: one under any potential Order and another under the mineral owners' leases or real property rights."  *See* [Doc. 276 at 15].  Proceeding with plaintiffs' claims in the absence of the mineral owners will not subject defendants to a substantial risk of inconsistent obligations.  The "substantial risk" is demonstrated by the existence of actual litigation involving the same subject matter in a separate forum.  *See, e.g.*, **Home Buyers Warranty Corp. v. Hanna**, 750 F.3d 427, 434–35 (4th Cir. 2014) ("The existence of two concurrent proceedings here creates a 'high likelihood' that one or more of the parties will be subject to conflicting obligations." (quoting **Owens-Illinois**, 186 F.3d at 441)).

Here, there is no parallel proceeding.  Defendants have not shown that such a proceeding is likely to occur.  Defendants do not allege that the leases grant the mineral

14

owners the right to force defendants to return any nonproducing well to production.  The plugging of plaintiffs' abandoned, nonproducing wells does not impact the right or ability of mineral owners to have new, productive wells established on their estates.  Even if the mineral owners could bring suit against defendants, the mineral owners ability to seek to assert their own claims against defendants in a potential separate action does not conflict with the outcome in the above-styled case.

Even if this Court were to find the mineral owners' were necessary parties to this case and agree with defendants' that the mineral owners could not practically be joined because they are too numerous, the mineral owners are nonetheless not "indispensible."

In deciding whether a party is indispensable, the court considers four factors: (1) the extent to which a judgment rendered in the party's absence might prejudice that party or the other parties; (2) the extent to which any prejudice could be ameliorated; (3) whether a judgment rendered in the party's absence would be inadequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Fed. R. Civ. Pro. 19(b).

Weighing the impact of dismissal on plaintiffs against any prejudice to defendants and the absent parties, this Court finds the factors weigh in favor of plaintiffs.  Any prejudice to the mineral owners is minor and speculative and is far outweighed by the harm that dismissal would cause to plaintiffs.  This Court has already held the "narrowly prescribed remedy in § 22-6-8" to be "inadequate to fully address" plaintiffs' claims.  *See* [Doc. 204 at 11–12].  "The judgment would have no effect whatsoever on the rights of the other parties because each has a contract of his [or her] own and they are entitled to litigate it just as the plaintiff is entitled to present his [or her] suit." ***Francis Oil & Gas,***

*Inc. v. Exxon Corp.*, 661 F.2d 873, 879 (10th Cir. 1981). Thus, any minor, speculative prejudice to the absent mineral owners is outweighed by the significant harm to thousands of surface landowners from dismissal. Prejudice, if any at all, is neither immediate nor serious because plaintiffs' claims would not extinguish the lessors' mineral rights nor would they interfere with any royalty payments because plaintiffs only request the plugging of abandoned or nonproducing wells, which do not generate royalties and by law must be plugged within twelve months of not being in use.

In sum, this Court finds that the mineral owners are not necessary and not indispensable.

### B. WV DEP

This Court finds that the WV DEP is not necessary and indispensable to the above-styled case. Defendants argue that WV DEP must be joined because plaintiffs' suit interferes with its regulatory interests and because WV DEP's presence in this action is required to permit the plugging and transfer of wells. Defendants also argue because sovereign immunity prevents joinder of a state agency, plaintiffs' claims must be dismissed. Defendants assert that this Court cannot afford complete relief to plaintiffs because only WV DEP can authorize the plugging of wells.

WV DEP is not a required party to afford the existing plaintiffs complete relief because the only relief plaintiffs request is money damages. WV DEP's participation in the above-styled case is plainly not required for this Court to order payment from defendants sufficient to cover the costs of well plugging and remediation. Plaintiffs are not requesting this Court to order WV DEP to take any action or instruct the state agency and state officials on how to conform their conduct to state law. This Court has previously held that

16

it need not reject WV DEP and Diversified's Consent Order to vindicate plaintiffs' property rights. *See* [Doc. 204 at 9 ("[I]t is the finding of this Court that the Consent Order is simply an exercise of OOG's prosecutorial discretion and has no effect on the plaintiffs' property rights.")].

If this Court grants the relief sought by plaintiffs, plaintiffs would be entitled to money damages to cover the costs of well plugging and remediation. This Court would not enter an Order to the effect of instructing WV DEP that they must plug and remediate the wells at issue. WV DEP's absence does not create any risk of inconsistent obligations because plaintiffs have not requested for relief that this Court order defendants do anything other than pay them money damages in an amount sufficient to ensure the plugging of the wells.

Even if this Court directly ordered the plugging of wells on a schedule different from that in WV DEP's Consent Order, that would not create inconsistent obligations. In ***Ohio Valley Env't Coal., Inc. v. Maple Coal Co.***, the United States District Court for the Southern District of West Virginia concluded that WV DEP was not a necessary or indispensable party to a citizen suit to enforce effluent limitations contained in a Clear Water Act permit. *See* 808 F.Supp.2d 868, 887–91 (S.D. W.Va. 2011) (Chambers, J.). The Court noted that "the only way the injunctive relief crafted in each action could conflict would be as a result of differing compliance dates—Maple would merely need to comply with the earlier date to be in compliance with both orders." ***Id***. at 889.

Similarly to the case at hand, plugging plaintiffs' abandoned and nonproducing wells would not be inconsistent with the Consent Order. If plaintiffs are granted their requested

relief, defendants obligations to WV DEP under the Consent Order would be satisfied.  The Consent Order provides:

> No later than December 31, 2020 and continuing annually through calendar year ending December 31, 2034, Diversified shall provide to the OOG a report summarizing the actions taken to bring into production or plug oil and gas wells in West Virginia during the prior twelve month period.  During each calendar year ended December 31, 2020 through December 31, 2034, Diversified shall either place into production or plug ***at least fifty (50) oil and gas wells*** from the list referenced in Paragraph 5.b of Section IV of this Order, of which no less than twenty (20) of those oil and gas wells shall be plugged no later than December 31 of the applicable year.

[Doc. 275-1 at  ¶ IV.5.b].

It is mere speculation that WV DEP would deny the permits necessary to plug and remediate abandoned, nonproducing wells on plaintiffs' properties.  Even assuming some inconsistent obligations would result, any prejudice to defendants would not outweigh the harm caused by dismissing plaintiffs' case.   If there are inconsistent obligations, defendants would "merely need to comply with the earlier date to be in compliance with both orders."  *See **Ohio Valley Env't Coal., Inc.**,* 808 F.Supp.2d at 889.

In sum, this Court finds that the WV DEP is not necessary and not indispensable.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings for Failure to Join Required Parties [**Doc. 275**] is **DENIED**.

18

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: June 1, 2023.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE