## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING DIVISION

MARK MCEVOY, JAMES
TAWNEY and SUSAN
TAWNEY, SAMUEL STARK,
SUSAN DENNISON, MARK GOFF,
and CAROL DELROSSO and
GEORGE DELROSSO, BENJAMIN
PATTERSON, CHAD SILVESTER, CLINTON
AND CANDACE DRAINER IRREVOCABLE
TRUST, EBEN FRITTS and EBEN FRITTS III,
HEIDI DEEM, JEFFERY L.
SALTIS and KELLIE D. SALTIS, LANE and
MINERVA EVANS, MAYNARD and
JENNIFER TANNER, JOAN MEDLEY,
JACOB and REGINA COLLETTE,
SCOTT CORCORAN, KATHY JOHNSON,
and CHRISTINE COCHRAN individually and
on behalf of a proposed class,

                Plaintiffs,

v.                                                CIVIL ACTION NO. 5:22-cv-171

DIVERSIFIED ENERGY COMPANY PLC,
DIVERSIFIED GAS & OIL, PLC,
DIVERSIFIED PRODUCTION LLC,
DIVERSIFIED GAS & OIL CORPORATION,
DIVERSIFIED OIL AND GAS LLC,
ALLIANCE PETROLEUM CORPORATION,
EQT PRODUCTION COMPANY,
EQT PRODUCTION HTW, LLC,
EQT ENERGY LLC,
EQT INVESTMENT HOLDINGS, LLC,
EQT GATHERING, LLC,
EQM MIDSTREAM PARTNERS LP,
EQT MIDSTREAM PARTNERS LP,
EQT GP HOLDINGS, LP,
and
EQT CORPORATION,

                Defendants.

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs Mark McEvoy, James Tawney and Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, and Carol DelRosso and George DelRosso, Benjamin Patterson, Chad Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts and Eben Fritts, III, Heidi Deem, Jeffrey L. Saltis and Kellie D. Saltis, Lane Evans and Minerva Evans, Maynard Tanner and Jennifer Tanner, Joan Medley, Jacob Collette and Regina Collette, Scott Corcoran, Kathy Johnson, and Christine Cochran, individually and on behalf of a proposed class (collectively, "Plaintiffs"), bring this action against Defendants Diversified Energy Company PLC; Diversified Gas & Oil, PLC; Diversified Oil and Gas LLC; Diversified Production LLC; Diversified Gas & Oil Corporation; and Alliance Petroleum Corporation (collectively, "Diversified"), as well as Defendants EQT Production Company; EQT Production HTW; EQT Energy LLC; EQT Investment Holdings, LLC; EQT Gathering LLC; EQM Midstream Partners, LP; EQT Midstream Partners, LP; EQT GP Holdings LP; and EQT Corporation (together "EQT," and with Diversified, the "Defendants"). In support, Plaintiffs respectfully state as follows:

### STATEMENT OF THE CASE

1.      The law of fraudulent transfer protects creditors when debtors transfer away assets or incur liabilities that hinder, delay, or defraud the creditor's ability to collect on a claim.[1] The law protects not only those with matured claims, but also those whose claims are contingent and/or unmatured.

---

[1] The Alabama Uniform Fraudulent Transfers Act, Ala. Code § 8-9A-1 et seq., applies to transfers that took place prior to January 1, 2019 — in this case, the July 2018 Voidable Transfer. The Alabama Uniform Voidable Transactions Act, Ala. Code § 8-9B-1 et seq., applies to transactions that took place on or after January 1, 2019 — in this case the May 2020 Voidable Transfer.

2.      Under both the Alabama Uniform Fraudulent Transfers Act (the "UFTA") and its successor statute, the recently passed Alabama Uniform Voidable Transactions Act (the "UVTA"), a creditor who can establish that the transaction was either an actual fraudulent transfer or a constructive fraudulent transfer can void the transaction. Ala. Code §§ 8-9A-4, 5; *id.* §§ 8-9B-5, 6. Assets may be used to satisfy the creditor's claims and liabilities can be rolled back to the transferor. Ala. Code § 8-9A-7; *id.* § 8-9B-8.

3.      A party commits an actual fraudulent transfer when it transfers assets or incurs liabilities with the intent to hinder, delay, or defraud its creditors' claims. Ala. Code § 8-9A-4; *id.* § 8-9B-5.

4.      A party commits a constructive fraudulent transfer when it fails to receive reasonably equivalent value for assets transferred or obligations incurred, and it is "insolvent" at the time of the transfer under one of three statutory definitions. Ala. Code §§ 8-9A-4, 5; *id.* §§ 8-9B-5, 6.

5.      This case concerns two such transfers between Diversified and EQT, one in July 2018 (the "July 2018 Voidable Transfer") and a second in May 2020 (the "May 2020 Voidable Transfer").

6.      Through these transactions, Diversified paid EQT approximately $642 million in exchange for approximately 12,000 gas wells, the vast majority of which were abandoned and/or only marginally productive, and Diversified incurred more than a billion dollars of EQT's obligations relating to those wells.

7.      West Virginia law requires that inactive wells be plugged and the sites reclaimed at the end of their economic life.

8.     The cost to plug and decommission the wells owned by Diversified at the time of the transfers exceeded $2 billion, based on one commentator's application of industry standard estimates of those costs.[2]  Indeed, Diversified's portfolio is so dominated by uneconomic wells that one national publication described the company as presiding over "an empire of dying wells."[3] Diversified is a company "built to fail."[4] It cannot possibly pay the cost of capping the wells it has acquired.

9.     Both EQT and Diversified know this.

10.    Before the July 2018 transaction, EQT booked the cost of plugging the transferred wells at $200 million.[5] Remarkably, after the transaction, Diversified falsely valued that same liability at just $26 million.[6]

11.    These two transactions benefited EQT and Diversified enormously. They allowed EQT to shed the huge liability of plugging the transferred wells and receive millions of dollars in return, while Diversified was able to receive the short-term cash flow generated by the relatively few marginally producing wells bundled up in the EQT transaction. Diversified has been able to use this short-term cash flow, in combination with a gross underestimate of its liabilities, to create an illusion of profitability and solvency.

---

[2]  Ted Boettner, et al., *Diversified Energy: A Business Model Built to Fail Appalachia*, Ohio River Valley Institute (Apr. 2022) (hereinafter, "Boettner Report") (attached as Exhibit A). Plaintiffs believe the cost of plugging could be significantly higher than estimated by Boettner, et al.

[3] Zachary R. Mider & Rachel Adams-Heard, *An Empire of Dying Wells*, Bloomberg, October 12, 2021, *available at* https://www.bloomberg.com/features/diversified-energy-natural-gas-wells-methane-leaks-2021/.

[4] *See generally* Boettner Report.

[5] Plaintiffs believe even EQT's $200,000,000 figure significantly underestimates the actual liabilities associated with well plugging and remediation costs associated with the transfers.

[6] Boettner Report at notes 99–101.

12.     While EQT and Diversified profit, landowners are left holding the bag. When Diversified fails, landowners with Diversified wells on their property will be stuck with the plugging and remediation liability, and must bear both the cost to remediate and plug the wells on their land (more than $100,000 per well).

13.     Plaintiffs are the landowners stuck with the liability. They each have claims against Diversified and EQT based upon the obligations of the Defendants to plug and remediate the wells on their properties.  But they also bring this action, as creditors of Diversified, to void both the July 2018 Voidable Transfers and the May 2020 Voidable Transfers to ensure sufficient funding to plug and remediate those wells.

14.     Avoiding the July 2018 Voidable Transfers and May 2020 Voidable Transfers will result in recovery of the more than $642 million Diversified transferred to EQT.  Those funds will be made available to cover plugging costs now (for those with "matured claims" whose wells are abandoned) and in the future (for those with "contingent' claims whose wells will over time require plugging).  *See* Ala. Code § 8-9A-1; *id.* § 8-9B-2 (defining "claim" to include "unmatured" and "contingent" rights to payment).

15.     Avoiding the transfer will also return the liability for plugging and decommissioning the more than 12,000 wells involved in the transfers back to EQT— ensuring the obligations remain with a solvent company (EQT) if the $642 million is insufficient to cover plugging costs for those wells.

16.     Because certain Plaintiffs already have nonproducing, abandoned, and unplugged Diversified wells on their properties, those Plaintiffs also bring this action against Diversified to enforce their property rights under theories of trespass, and negligence. Under longstanding West Virginia law, natural gas operators have only the right to use the surface to access the underlying

minerals as reasonable and necessary for the recovery of the gas, and do not have the right to use the surface to park the liabilities associated with their uncapped wells.

17.     Finally, Plaintiffs bring this action under Federal Rules of Civil Procedure 23(b)(2) and (c)(3) as representatives of two classes of persons and entities owning properties in West Virginia on which Diversified owns a natural gas well: first, the "Voidable Transfer Class," which seeks through Counts Four (actual fraudulent transfer) and Five (constructive fraudulent transfer) to recover from EQT the $642 million fraudulently transferred by Diversified in order to pay the matured and contingent costs of plugging and otherwise remediating their wells and avoid the massive obligations Diversified took over from EQT; and second, the "Common Law Class," which under Counts One (trespass), and Two (negligence) seeks to recover damages in the amount of such costs related to Diversified's *currently* abandoned and/or nonproducing wells.[7]

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). This action satisfies, among other things, the requirements for diversity under 28 U.S.C. § 1332(d) and the Class Action Fairness Act ("CAFA").

19.     Plaintiffs are individuals and one irrevocable trust who own property in West Virginia.

20.     As set forth in more detail below, Defendants are corporate entities and/or partnerships that are not citizens of West Virginia.

21.     Plaintiffs bring this case as at least one member of the class of plaintiffs is a citizen of a State different from any defendant under 28 U.S.C. § 1332(d)(2) and all of the other requirements of 28 U.S.C. § 1332(d) have been satisfied as well, including not running afoul of 28

---

[7] *See infra* at ¶ 475 for the complete class definition.

U.S.C. § 1332(d)(4). Plaintiffs seek an amount sufficient to carry out Defendants' duty to plug and decommission the abandoned wells and associated infrastructure on their property. Because the class members include individuals with more than 23,000 Diversified owned wells on their property, and because plugging and abandonment costs will be more than $100,000 per well, the amount in controversy exceeds $5,000,000.

22.     Defendants are subject to this Court's personal jurisdiction because the actions and inactions that caused the harm complained of occurred in this District.

23.     Venue is proper in this District and Division under 28 U.S.C. § 1391(b)-(d) because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction when the action is commenced and the Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. Venue is also proper because Plaintiff McEvoy's and the Evans's property at issue in this action is within this District and, specifically, within this Division. The properties of Plaintiffs Stark, Dennison, Goff, the DelRossos, Silvester, and Deem are within this District as well.

**PARTIES**

24.     Plaintiffs Mark McEvoy, James and Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol and George DelRosso, Benjamin Patterson, Chad Silvester, Eben Fritts and Eben Fritts, III, Heidi Deem, Jeffrey and Kellie Saltis, Lane and Minerva Evans, Maynard and Jennifer Tanner, Joan Medley, Jacob and Regina Collette, Scott Corcoran, Kathy Johnson, and Christine Cochran are all landowners who own property in West Virginia.  They are all citizens of West Virginia.

25.     Plaintiff Clinton and Candace Drainer Irrevocable Trust is a trust and landowner which owns property in West Virginia. It is a citizen of West Virginia.

26.     Plaintiff Susan Dennison is an individual and landowner. She owns approximately 20.65 acres in Harrison County, West Virginia. This plaintiff is a citizen of Maryland.

27.     Defendant Diversified Energy Company, Plc is a public limited corporation headquartered in Alabama. Upon information and belief, it is a citizen of Alabama, the place of its principal office, and the United Kingdom, the place of its incorporation, but is not a citizen of West Virginia. Upon further information and belief, it is publicly traded on the London Stock Exchange and does business in West Virginia including through its wholly owned subsidiaries Diversified Production, LLC, and Diversified Gas & Oil Corporation and holds ownership and financial interests in oil and gas wells in West Virginia.

28.     Upon information and belief, Defendant Diversified Gas & Oil Plc is a predecessor of Diversified Energy Company, Plc, and was the operating name of that entity at the time of the July 2018 Voidable Transfers. Like Diversified Energy Company, Plc, Diversified Gas & Oil was headquartered in Alabama and held ownership and financial interests in oil and gas wells in West Virginia. Upon information and belief, it is a citizen of Alabama, the place of its principal office, and the United Kingdom, the place of its incorporation but is not a citizen of West Virginia.

29.     Defendant Diversified Production, LLC, is a Pennsylvania limited liability company with a principal office in Birmingham, Alabama, and authorized to do business in West Virginia. Its manager is Diversified Gas & Oil Corporation. It has no other members or managers. Upon information and belief, it is a citizen of Alabama and Pennsylvania but is not a citizen of West Virginia.

30.     Defendant Diversified Oil and Gas, LLC, is an Alabama corporation headquartered in Birmingham, Alabama, that is authorized to do business in West Virginia. Upon information and belief, it is a citizen of Alabama but is not a citizen of West Virginia.

31.     Defendant Diversified Gas & Oil Corporation is a Delaware corporation with a principal office in Birmingham, Alabama, and authorized to do business in West Virginia. Upon information and belief, it is a citizen of Delaware and Alabama but is not a citizen of West Virginia.

32.     Defendant Alliance Petroleum Company, which has merged into Diversified Production LLC was at the time of the July 2018 Voidable Transfers, a Pennsylvania company with headquarters in Birmingham Alabama authorized to do business in West Virginia. Upon information and belief, it is a citizen of Pennsylvania and Alabama but is not a citizen of West Virginia.

33.     Defendant EQT Production Company is a Pennsylvania corporation with principal offices in Pittsburgh, Pennsylvania, that is authorized to do business in West Virginia. Upon information and belief, it is a citizen of Pennsylvania but is not a citizen of West Virginia.

34.     Defendant EQT Production Company HTW, LLC, is a Pennsylvania limited liability corporation with principal offices in Pittsburgh, Pennsylvania, that is authorized to do business in West Virginia. Upon information and belief, it is a citizen of Pennsylvania but is not a citizen of West Virginia.

35.     Defendant EQT Energy, LLC, is a Delaware limited liability company with principal offices in Pittsburgh, Pennsylvania, that is authorized to do business in West Virginia. Upon information and belief, it is a citizen of Delaware and Pennsylvania but is not a citizen of West Virginia.

36.     Defendant EQT Investment Holdings, LLC, is a Delaware limited liability company. Upon information and belief EQT Investment Holdings, LLC, holds an ownership and/or financial interest in oil and gas wells in West Virginia. Upon information and belief, it is a citizen of Delaware and Nevada but is not a citizen of West Virginia.

37.     Defendant EQT Gathering, LLC, is a Pennsylvania limited liability company with principal offices in Pittsburgh, Pennsylvania, that is authorized to do business in West Virginia. Upon information and belief, it is a citizen of Pennsylvania but is not a citizen of West Virginia.

38.     Defendant EQM Midstream Partners, LP, is a Delaware limited partnership. Upon information and belief EQM Midstream Partners, LP, holds an ownership and/or financial interest in oil and gas wells in West Virginia. Upon information and belief, it is a citizen of Delaware and Pennsylvania but is not a citizen of West Virginia.

39.     Defendant EQT Midstream Partners, LP, is a Delaware limited partnership. Upon information and belief, EQT Midstream Partners, LP, holds an ownership and/or financial interest in oil and gas wells in West Virginia. Upon information and belief, it is a citizen of Delaware and Pennsylvania but is not a citizen of West Virginia.

40.     Defendant EQT GP Holdings, LP, is a Pennsylvania general partnership with principal offices in Pittsburgh, Pennsylvania. Upon information and belief EQT GP Holdings, LP, holds an ownership interest in oil and gas wells in West Virginia. Upon information and belief, it is a citizen of Pennsylvania but is not a citizen of West Virginia.

41.     Defendant EQT Corporation is a Pennsylvania Corporation with a principal office in Pittsburgh, Pennsylvania, and authorized to do business in West Virginia. Upon information and belief, it is a citizen of Pennsylvania but is not a citizen of West Virginia.

## FACTS

42.     On or about July 18, 2018, EQT transferred approximately 11,250 wells, and upstream and midstream assets, to Diversified for a payment of approximately $523.4 million.[8]

---

[8] Boettner Report at 19 (Table 1).

43.     On or about May 2020, EQT transferred approximately 889 wells to Diversified for a payment of $114.8 million.

44.     EQT valued the liabilities associated with the July 2018 Voidable Transfer in excess of $200 million immediately prior to the transaction.  In contrast, Diversified's estimate in its first report after the transfer reduced these liabilities to only $26 million.[9]  Because of the large liabilities associated with the wells, Diversified did not receive reasonably equivalent value for either the 2018 or 2020 Voidable Transfers.

45.     As one expert stated, following the July 2018 Voidable Transfers and May 2020 Voidable Transfers, if Diversified had used industry norms to calculate its plugging and decommissioning obligations, those liabilities would have been reported as $2 billion to $3 billion rather than the $525 million Diversified actually reported. Upon a fair valuation, Diversified was insolvent for purposes of the Alabama UFTA and UVTA.[10]

46.     Diversified undertook these transfers with specific intent to hinder, delay, and defraud its creditors.  Indeed, Diversified has developed a business model in which it acquires low producing wells to produce a small income stream and at the same time delays and inappropriately devalues plugging costs while inflating future revenues.

47.     Diversified's ability to appear solvent depends on its massive undercounting of decommissioning liabilities and inflating of future revenue streams through the use of accounting practices that deviate significantly from standard industry practices.

---

[9] *Id.* at notes 99–101.
[10] *See id.* at note 45 and accompanying text.

48.     In the past several years, Diversified has become the largest owner of oil and gas wells in the country, and almost all of those wells — more than 63,000 — are located in Appalachia, with 23,309 of them alone being located in West Virginia.[11]

49.     Diversified rarely drills new wells — in fact it has drilled only 150 of its own wells since 2012.[12]

50.     Instead, it elects to acquire existing wells from other entities: since 2018, Diversified has been on an acquisition spree, primarily adding aging, low-producing and "non-producing" conventional wells to its inventory.[13]

51.     More than half of its well inventory is uneconomic by industry standards.[14]

52.     Thus, although Diversified is the largest well owner, it is only the 15th largest oil and gas producer in Appalachia.[15]

53.     A 2021 report on Diversified's business practices (the "Boettner Report")[16] — specifically, on page 17 of that Report — offers a standard example of Diversified's practice. The well was owned by EQT from 2006 to 2017, when it was transferred to Alliance Petroleum, which was purchased by and became a subsidiary of Diversified in 2018. The 15-year-old vertical conventional natural gas well is located near Charleston, West Virginia, in Kanawha State Forest.[17] It was drilled in December of 2006, and it began producing in January of 2007, according to state records. The well initially produced nearly 24,000 Mcf of natural gas, or 11 BOED, its first year of production but produced less than 6,000 Mcf in 2020. The average annual decline rate of the

---

[11] *Id.* at note 4 and accompanying text.
[12] *Id.* at 11, Section 1.0.
[13] *Id.* at note 4 and accompanying text.
[14] *Id.* at note 60 and accompanying text.
[15] *Id.* at note 8 and accompanying text.
[16] *See generally* Boettner Report.
[17] *Id.* at note 68 and accompanying text.

well is 9 percent.[18] Despite being a low-producing stripper well, the well's production rate in 2020 was higher than 80 percent of Diversified's producing well inventory.

54.     Diversified's strategy is "acquiring low-cost, long-life, low-decline" oil and gas wells as well as non-producing wells that previous owners wanted to shed.[19]

55.     After acquiring these wells, Diversified performs a number of accounting maneuvers designed to significantly reduce and misrepresent the decommissioning liabilities on its balance sheet and delay those decommissioning obligations into the future or avoid them altogether.

56.     First, Diversified enters into plugging schedules with state agencies that purport to allow it to extend its decommissioning liabilities far into the future. For example, consent agreements entered in West Virginia and Pennsylvania only require Diversified to plug roughly 80 wells per year for the next 15 years, despite the fact that Diversified holds tens of thousands of abandoned and low producing wells in these states.[20]

57.     While those consent agreements may provide a smoke-screen and give Diversified some comfort in terms of enforcement of its decommissioning duties by state regulatory agencies, they in no way impact the private civil liabilities that Diversified (and EQT) have to private citizens over private property rights.[21] Plaintiffs retain the rights they are enforcing in this action against

---

[18] *Id.* at 17, Figure 7.

[19] *Id.* at note 55 and accompanying text.

[20] *Id.* at notes 10 and 11 and accompanying text.

[21] For example, by the West Virginia agreement's express terms, Diversified's compliance with the agreement only protects the company from enforcement of its plugging and decommissioning obligations *by the state*. *See* West Virginia Department of Environmental Protection, Consent Order No. 2018-22 (November 19, 2022) at § IV.5.b ("Oil and gas wells identified [as abandoned] *shall not be subject to any further enforcement activities by the [Office of Oil and Gas ]* with regard to any requirement to close and plug such wells based upon the lack of production in the most previous twelve months so long as Diversified is compliant with the terms and conditions of this Order . . . .") (emphasis added).

Diversified through common law doctrines of trespass and negligence, as well as Alabama's UFTA and UVTA statutes.

58.     Diversified also estimates its costs to plug wells at values that are far below industry standards.[22]

59.     Moreover, Diversified estimates that the economic life of its wells will last far beyond standard industry timelines, in part by employing annual rates of production decline that are one-third to one-half of the decline rates of other natural gas producers.[23]

60.     Diversified's accounting practices are also partly based on a set of unjustifiable assumptions around the plugging and decommissioning costs that allow the company to account for future plugging and decommissioning costs on its books at an unsupportable low value.

61.     Diversified's tactics lead it to revalue its decommissioning liabilities at a small fraction of the value used by the entities from which Diversified acquires its wells.[24]

62.     In 2020, Diversified estimated its plugging and decommissioning would cost $25,000 per well on average, which is much lower than actual costs.

63.     To make matters worse, Diversified then lowered this per-well cost by roughly ten percent the following year.[25]

64.     Even if the $25,000 cost were accurate, the approximately 7,000 already non-producing wells acquired by Diversified in West Virginia, Pennsylvania, Kentucky, and Ohio would cost $175,000,000 to decommission and its more than 70,000 wells in those states would cost more than $1.75 billion to decommission.

---

[22] Boettner Report at note 15 and accompanying text.
[23] *Id.* at notes 16 and 17 and accompanying text.
[24] *Id.* at note 21 and accompanying text.
[25] *Id.* at note 15 and accompanying text.

65.     In fact, well remediation costs on average exceed $100,000 per well.

66.     Diversified estimates the economic lives of its wells will last through 2095, allowing it to delay its cleanup costs for decades.[26] In fact, it will never have sufficient assets to meet its plugging liabilities.

67.     Similarly, in 2020, Diversified estimated that production from its wells will decline at only 5 percent per year. That is a significant underestimate. Other natural gas producers' decline rates are two to three times as high.[27]

68.     In its full-year 2021 results, the company acknowledged its actual decline rate for the year was, in fact, 9 percent.[28]

69.     In 2021, Diversified estimated inflation rates on plugging and decommissioning would be only 2.5 percent per year and did not transparently break out its forecast for future plugging and decommissioning costs.[29]

70.     Diversified has benefited from these and other accounting practices.

71.     These include the highly unusual Gain on Bargain Purchase ("GoBP"), which Diversified has used every year since 2014 to boost its profits without paying taxes.[30]

72.     After most of its acquisitions, it recognizes a "gain," which is added, tax free, to its net income.[31]

73.     It appears that no other companies in the sector, at least according to one commentator, use this practice.

---

[26] *Id.* at note 16 and accompanying text.
[27] *Id.* at note 17 and accompanying text.
[28] *Id.* at note 18 and accompanying text.
[29] *Id.* at note 19 and accompanying text.
[30] *Id.* at note 23 and accompanying text.
[31] *Id.* at note 24 and accompanying text.

74.     Unlike other oil and gas producers, Diversified has not written off or impaired any of its assets over the past few years, even when gas prices were extremely low.[32]

75.     The result of Diversified's business practices guarantees the revenues from its producing wells will not be sufficient to cover the decommissioning obligations associated with its wells.

76.     Diversified now owns tens of thousands of abandoned wells in West Virginia and surrounding states with associated plugging and decommissioning obligations that Diversified cannot meet.

77.     As the operator of each of these wells, Diversified has an obligation to plug them. That obligation accrued on the date each of the wells was drilled. Diversified acquired the obligation with the acquisition of each well.  These obligations arise under both West Virginia common law and the West Virginia Oil and Gas Act, W. Va. Code § 22-6-1 et seq.

78.     Further, under West Virginia law, any oil or gas well that has not produced for a period of twelve consecutive months "shall be presumed to have been abandoned and shall promptly be plugged by the operator." W. Va. Code § 22-6-19.

79.     The West Virginia legislature has declared "that it is in the public interest and it is the public policy of this state, to foster, encourage and promote the proper plugging of all wells at the time of their abandonment to protect the environment and mineral resources of this state." *Id.* § 22-10-2(b).

80.     Diversified has specific plans and assets sufficient to plug only a tiny fraction of those wells.

---

[32] *Id.*

81.     The high concentration of low-producing wells in one company's portfolio — along with more than 100,000 additional stripper wells in the region — presents a risk that even more wells could become orphaned or wards of the state.

82.     If Diversified were to go out of business, landowners would be on the hook for billions in clean-up costs for those wells since operators are not required to set aside sufficient plugging and decommissioning costs upfront.[33]

### EQT'S ROLE: SHEDDING LIABILITIES

83.     Diversified's overall business scheme is made possible only through the cooperation of entities such as Defendant EQT, which offloaded wells that it knew or should have known would become decommissioning liabilities — liabilities that it knew or should have known Diversified would not be able to satisfy.[34]

84.     EQT is a sophisticated industry player. It is the natural gas largest producer in the United States and second largest well owner in Appalachia, behind only Diversified.

85.     Although Diversified owns 3.4 times as many wells as EQT,[35] EQT produces 8.7 times more oil and gas than Diversified.[36]

86.     On average, Diversified's producing wells in the region produce 2 BOED compared to the four-state average of 25 BOED.

87.     EQT was aware of and understood the limited profitability of Diversified's well portfolio, including the liabilities associated with thousands of wells it sold to Diversified.

---

[33] *Id.* at note 35 and accompanying text.
[34] *See id.* at note 71 and accompanying text.
[35] *Id.* at 15, Figure 4.
[36] *Id*. at 15, Figure 5.

88.     Note Q from EQT Corporation's Form 10-Q filing with the United States Securities and Exchange Commission for the Quarterly Period Ending September 30, 2018, reflects the high level of detail that EQT had about the transaction at issue. Note Q of EQT Corporation and Subsidiaries Notes to Condensed Consolidated Financial Statements (Unaudited) — entitled "Divestitures" — details with particularity the issues and potential fraud of the parties:

> *On July 18, 2018, the Company sold approximately 2.5 million non-core, net acres in the Huron Play for net proceeds of $523.6 million, subject to final purchase price adjustments (the Huron Divestiture). The assets sold in the Huron Divestiture included approximately 12,000 productive wells with current net production of approximately 200 Mmcfe per day, approximately 6,400 miles of low-pressure gathering lines and 59 compressor stations. The Company retained the deep drilling rights across the divested acreage*
>
> *During the first quarter of 2018, the Company recorded an impairment of $2.3 billion associated with the production and related midstream assets in the Huron and Permian Plays.*

*Id.* at Page 43, Note Q (emphasis added). This was not a one-time deal between Diversified and EQT. In addition to the 2018 and 2020 Voidable Transfers described above, an EQT subsidiary made a similar transaction with Diversified in or around 2012.

89.     An article by Hart Energy of May 26, 2020, pointed out the following:

> EQT Corp. said May 26 it closed a multimillion dollar transaction to sell certain non-strategic assets with proceeds used to pay down the U.S. shale gas producer's debt.
>
> [Diversified], which had disclosed the deal earlier this month, agreed to purchase the package of upstream and midstream Appalachia assets for initial consideration of $125 million. The deal includes contingency payments of up to $20 million *plus relieves EQT of approximately $47 million in asset retirement obligations and other liabilities associated with the assets.*
>
> Proceeds from the sale have been used to pay down EQT's term loan due 2021, which CEO Toby Rice said demonstrates the company's commitment improving the balance sheet and reducing debt.
>
> "These assets sit outside our core focus area and the divestment will enable a heightened focus on our core asset portfolio," Rice said in a statement.

> *"Additionally, the transaction relieves EQT of the higher relative operating costs and substantial asset retirement obligations associated with these assets and will improve our financial standing."*

> The EQT assets comprise about 8,500 net acres located in Pennsylvania and West Virginia with an estimated 48 million BOE of reserves and PV-10 value of $185 million, according to a Diversified company release.

> Primarily a conventional asset operator, Diversified also noted about 10% of the wells included in the EQT deal are unconventional and prospective for the Marcellus and Utica shales.

"EQT Closes $125 Million Asset Sale to Diversified Oil and Gas," *Hart Energy* (May 26, 2020).

90.     The foregoing demonstrates that EQT viewed the sale principally as a way to reduce liabilities associated with the wells.

91.     As EQT was aware, Diversified could only be profitable by largely ignoring the millions of dollars of asset retirement obligations — namely, plugging and decommissioning costs — that EQT bragged to its shareholders about shedding.

### THE FRAUDULENT NATURE OF DIVERSIFIED'S TRANSACTIONS WITH EQT WOULD COULD NOT REASONABLY BEEN KNOWN UNTIL RECENTLY

92.     The Plaintiffs in this action did not actually know that Diversified's transfers with EQT were fraudulent transfers until they were informed by their attorneys. They were not so informed until May 2022 at the earliest.

93.     The Plaintiffs in this action could not reasonably be expected to discover the fraudulent nature of Diversified's transfers until they were informed by their attorneys or at the very earliest the publication of the Boettner Report on April 12, 2022.

94.     Through the use of sophisticated accounting techniques and business strategies described above, Diversified unreasonably inflated its assets and unreasonably discounted its liabilities.

95.     Because of those accounting techniques and business strategies Diversified appeared to be a solvent company at the time of the transfer when in fact it was insolvent and/or undercapitalized in relation to its current and future plugging and decommissioning obligations.

96.     Public annual reports and presentations of the company have claimed that Diversified is a solvent company with significant profits, when in fact the Company's liabilities far exceed its assets.

97.     As explained above, Diversified took extraordinary measures to conceal the true extent of its liabilities from the public. The insolvency and undercapitalization of Diversified wasn't publicly revealed until at least April 12, 2022, upon the publication of the Boettner Report, which revealed the unorthodox accounting techniques and business strategies of Diversified.

## PLAINTIFFS' SPECIFIC ALLEGATIONS

98.     Diversified's failures to promptly plug and remediate the non-producing and abandoned wells on Plaintiffs' properties constitute violations of Plaintiffs' real property rights, and interferes with their use, enjoyment, and possession of their property.

99.     Defendants have violated and will continue to violate Plaintiffs' property rights by failing to promptly plug their wells, remove derelict equipment, properly reclaim the land, vacate Plaintiffs' property, and take all other steps legally necessary to properly close the well.

100.     The Plaintiffs want each nonproducing well site to be fully plugged and reclaimed and each Plaintiff has determined that the well site harms their property aesthetically and causes annoyance, inconvenience, and aggravation.

101.     The non-producing and abandoned wells are not reasonable and necessary for mineral extraction, evidenced by the fact that there is no current mineral production.

102.     The non-producing and abandoned wells have not been plugged promptly after abandonment as required by West Virginia law.

103.     The non-producing and abandoned wells are both a trespass and negligent under West Virginia law.

104.     Additionally, Defendants' failures to plug the wells constitute negligent acts under West Virginia law that have caused injuries to Plaintiffs. Plaintiffs seek to recover from Defendants the costs necessary to cure the illegal conduct: damages sufficient to properly and fully plug the wells, remove all natural gas drilling equipment, waste, and other trespassory objects and materials from the properties, and complete remediation of the well sites.

105.     Additionally, because Diversified does not have the resources necessary to decommission more than a few of the 70,000 wells it owns in West Virginia, Pennsylvania, Kentucky, and Ohio (and because it became obligated for the decommissioning costs upon the consummation of its transactions with EQT), Diversified will violate Plaintiffs' property rights on nearly all of its west Virginia wells.

**Plaintiff Mark McEvoy**

106.     Plaintiff Mark McEvoy is an individual and landowner in Wetzel County, West Virginia. He owns approximately 74 acres in Wetzel County, West Virginia. McEvoy uses the property for customary uses, including for recreation, firewood, and as a personal investment.

107.     McEvoy owns the surface estate. He does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to Mr. McEvoy's purchase of the property. *See* Book 474 page 619 in Wetzel County, West Virginia.

108.     Diversified Production, LLC is listed by the West Virginia Office of Oil and Gas ("Office of Oil and Gas") as the operator of a gas well on Plaintiff's property.

- 21 -

109. The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 47-103-00705 (the "well").

110. Diversified acquired the well from EQT on or about May 2020 as part of a transaction involving more than 880 other wells.

111. When McEvoy purchased the property, the well was, to the best of his knowledge, producing gas.

112. Reports from the West Virginia Office of Oil and Gas show that the well was in place by at least 1985.

113. As a surface owner, McEvoy is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

114. According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2018.

115. According to the Office of Oil and Gas, the well has never produced oil.

116. The Office of the Oil and Gas lists the status of the well as "abandoned."

117. The sole purpose of the well was the extraction of oil and/or natural gas.

118. Without any mineral production on the McEvoy's property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

119. The well has not been plugged or decommissioned.

120. The well site includes derelict equipment owned by Diversified.

121. Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Plaintiff's property.

122.    The abandoned well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least three years.

123.    Diversified has no right to leave the unplugged well or the unreclaimed well site on McEvoy's property.

### Plaintiffs James and Susan Tawney

124.    Plaintiffs James and Susan Tawney are husband and wife who own approximately 93 acres in Nicholas County, West Virginia.

125.    The Tawneys own the land in fee simple. They have leased the oil and gas rights, which Diversified formerly used to produce at the property.

126.    They have not received royalties from Diversified for at least the last two years.

127.    Diversified Production, LLC is listed by the West Virginia Office of Oil and Gas as the operator of a gas well on Plaintiffs' property.

128.    The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 47-067-00689 (the "well"). Diversified acquired the well from EQT on or about July 18, 2018 as part of a transaction involving more than 11,000 other wells.

129.    When the Tawneys purchased the property, the well was producing gas.

130.    Records from the West Virginia Office of Oil and Gas show the well was in place from at least 1990.

131.    According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2019.

132.    According to the Office of Oil and Gas, the well has never produced oil.

133.    The Office of the Oil and Gas lists the status of the well as "abandoned."

134.    The sole purpose of the well was the extraction of oil and/or natural gas.

135.    The well has not been plugged or decommissioned

136.    The well site includes derelict equipment owned by Diversified.

137.    Upon information and belief, pursuant to West Virginia law and the Tawneys' gas lease, Diversified has, at most, a temporary lease to extract oil and gas from the subsurface of the Tawneys' property or to perform activities related to the production and sale of oil and gas on the property.

138.    The well is not extracting oil or gas because the well is abandoned and has not been used for that purpose for at least two years. In addition, it is no longer being used for any activities related to the production or sale of oil or gas.

139.    The Tawneys' mineral lease does not give the lessee the right to avoid "promptly" plugging the well upon abandonment.

140.    Diversified has no right to leave the unplugged well or the unreclaimed well site on the Tawneys' property.

**Plaintiff Samuel Stark**

141.     Plaintiff Samuel Stark owns approximately 500 acres in Harrison County, West Virginia.

142.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of a gas well on Plaintiffs' property.

143.    The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 47-033-01404 (the "well").

144.    Diversified acquired the well through its subsidiary in 2018 from Consol Gas Company.

145.   When Mr. Stark acquired the property, the well was producing gas.

146.   Records from the West Virginia Office of Oil and Gas show that the well has been in place since at least 1985.

147.   As a surface owner, Mr. Stark is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee on the land occupied by the well.

148.   According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2017.

149.   According to the Office of Oil and Gas, the well has never produced oil.

150.   The Office of the Oil and Gas lists the status of the well as "abandoned."

151.   The sole purpose of the well was the extraction of oil and/or natural gas.

152.   Without any mineral production on Mr. Stark's property there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

153.   The well has not been plugged or decommissioned

154.   The well site includes derelict equipment owned by Diversified.

155.   Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from Mr. Stark's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Plaintiff's property.

156.   The abandoned well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least three years.

157.   Diversified has no right to leave the unplugged well or the unreclaimed well site on Mr. Stark's property.

- 25 -

**Plaintiff Susan Dennison**

158.    Plaintiff Susan Dennison is an individual and landowner. She owns approximately 20.65 acres in Harrison County, West Virginia.

159.    Dennison owns the surface estate. Upon information and belief she does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to Dennison's purchase of the property.

160.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of a gas well on Plaintiff's property.

161.    The first conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 47-033-01397.

162.    Diversified acquired the well through its subsidiary in 2018 from Consol Gas Company.

163.    When Dennison acquired the property, the well was, to the best of her knowledge, producing gas.

164.    Records from the West Virginia Office of Oil and Gas show that the well has been in place since at least 1985.

165.    As a surface owner, Dennison is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

166.    According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2018.

167.    According to the Office of Oil and Gas, the well has never produced oil.

168.    The Office of the Oil and Gas lists the status of the Dennison wells as "abandoned."

169.    The sole purpose of the well was the extraction of oil and/or natural gas.

170.     Without any mineral production on Dennison's property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

171.     The Dennison well has not been plugged or decommissioned.

172.     The Dennison well site includes derelict equipment owned by Diversified.

173.     Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Plaintiff's property.

174.     The abandoned well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least three years.

175.     Diversified has no right to leave the unplugged well or the unreclaimed well site on Dennison's property.

### Plaintiff Mark Goff

176.     Plaintiff Mark Goff owns approximately 64 acres in Preston County, West Virginia.

177.     Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of a gas well on Plaintiff's property.

178.     The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 47-077-00570 (the "well").

179.     When Mr. Goff acquired the property, there was no well on it.

180.     Records from the West Virginia Office of Oil and Gas show that the well was drilled in 2017.

181.     Diversified acquired the well through its subsidiary in 2017 from CNX Gas Company.

182.    As a surface owner, Goff is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee on the land occupied by the well.

183.    According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount at any time since it was drilled.

184.    According to the Office of Oil and Gas, the well has never produced oil.

185.    The Office of the Oil and Gas lists the status of the well as "abandoned."

186.    The sole purpose of the well was the extraction of oil and/or natural gas.

187.    Without any mineral production on Mr. Goff's property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

188.    The well has not been plugged or decommissioned

189.    The well site includes derelict equipment owned by Diversified.

190.    Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from Mr. Goff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Plaintiff's property.

191.    The abandoned well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least three years.

192.    Diversified has no right to leave the unplugged well or the unreclaimed well site on Mr. Goff's property.

**Plaintiffs Carol and George DelRosso**

193.    Plaintiffs Carol and George DelRosso own approximately 26 acres in Marion County, West Virginia.

194.    The DelRossos own the surface estate. Upon information and belief they do not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to their purchase of the property.

195.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of a gas well on Plaintiffs' property.

196.    The conventional vertical oil and gas well is known by a unique numerical identifier, called an API number, which is 47-049-00547 (the "well").

197.    When the DelRossos acquired the property in approximately 1986, the well was producing gas and oil.

198.    Records from the West Virginia Oil and Gas show that the well has been in place since at least 1989.

199.    Diversified acquired the well through its subsidiary in 2012 from EQT subsidiary Trans Energy.

200.    According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2019.

201.    According to the Office of Oil and Gas, the well's operator has not reported oil production since 2002.

202.    The Office of the Oil and Gas lists the status of the well as "abandoned."

203.    The sole purpose of the well was the extraction of oil and/or natural gas.

204.    Upon information and belief, the applicable severance deed, which governs the mineral rights, does not provide any justification for leaving equipment from abandoned wells that are no longer being used for oil and gas production or activities related to the production and sale of oil and gas.

205.    The well has not been plugged or decommissioned.

206.    The well site includes derelict equipment owned by Diversified.

207.    Upon information and belief, pursuant to West Virginia law, Diversified has, at most, a temporary lease to extract oil and gas from the subsurface of the DelRosso property or to perform activities related to the production and sale of oil and gas on the property.

208.    The well is not extracting oil or gas, because the well is abandoned and has not been used for that purpose for at least three years. In addition, it is no longer being used for any activities related to the production or sale of oil or gas.

209.    Diversified has no right to leave the unplugged well or the unreclaimed well site on the DelRosso property.

### Plaintiff Benjamin Patterson

210.    Plaintiff Benjamin Patterson is an individual and landowner. Patterson owns approximately 265 acres Logan County, West Virginia.

211.    Patterson owns the surface estate and a quarter of the mineral rights. Upon information and belief, Patterson does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to the Patterson's acquisition of the property.

212.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of four wells on the Patterson property.

213.    One is a conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-045-00771.

214.    As a one quarter mineral owner, Patterson is entitled to a quarter of royalties or other compensation for gas production by the mineral estate owner or its lessee.

215.    According to the Office of Oil and Gas, the operator of well 047-045-00771 has not reported natural gas production in any amount since 2015.

216.    According to the Office of Oil and Gas, the well has not produced oil.

217.    The Office of the Oil and Gas lists the status of well as "abandoned."

218.    The well was drilled on or before 1985.

219.    Well 047-045-00771 was acquired by or transferred to NYTIS Exploration Company in or around 2016. NYTIS Exploration merged with Diversified in 2020.

220.    The sole purpose of the well is the extraction of oil and/or natural gas.

221.    Without any mineral production on the Patterson property for well, there is no purpose and no legal justification for the continued presence of well or its associated equipment.

222.    Well 047-045-00771 has not been plugged or decommissioned.

223.    The well site includes derelict equipment owned by Diversified.

224.    The derelict equipment includes a wellhead and gathering line.

225.    Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Patterson's property.

226.    The nonproducing well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least six years.

227.    Diversified has no right to leave the unplugged well, derelict equipment, or the unreclaimed well site on the Patterson property.

228.    Diversified is the operator of at least three other wells on the same Patterson property.

229.    The API numbers for those wells are 047-045-01532, 047-045-01646, and 047-045-01556.

230.    Each of these wells was acquired by NYTIS Exploration in or around 2016. Diversified merged with NYTIS in 2020.

231.    Wells 047-045-01532 and 047-045-01556. were drilled on or before 2003.

232.    Well 047-045-01646 was drilled on or before 2004.

233.    Diversified has reported production on those wells as recently as 2021. However, upon cessation of mineral production, each well will require plugging and full reclamation.

234.    Diversified is responsible for the plugging of wells 047-091-00720 and 047-081-00721 and removing equipment from the Patterson property when those wells cease production. As such, Mr. Patterson holds a contingent and/or unmatured claim against Diversified for the remediation of those well sites.

**Plaintiff Chad Silvester**

235.    Plaintiff Chad Silvester is an individual and landowner. He and his wife, Michelle Silvester, own approximately 2.5 acres Barbour County, West Virginia.

236.    Silvester owns the surface estate. Upon information and belief, he does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to his acquisition of the property.

237.    As a surface owner, Silvester is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

238.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well on the Silvester property.

239.    The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-001-01116.

240.    According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2017.

241.    According to the Office of Oil and Gas, the well has not produced oil.

242.    The Office of the Oil and Gas lists the status of the Silvester well as "abandoned."

243.    The well was drilled on or before 1985.

244.    Well 047-001-01116 was acquired by or transferred to Alliance Petroleum in or around 2013; Diversified acquired Alliance Petroleum on or around 2020.

245.    The sole purpose of the well is the extraction of oil and/or natural gas.

246.    Without any mineral production on the Silvester property for well 047-001-01116, there is no purpose and no legal justification for the continued presence of well or its associated equipment.

247.    Well 047-001-01116 has not been plugged, reclaimed, or decommissioned.

248.    The well site includes derelict equipment owned by Diversified.

249.    The derelict equipment includes wellhead, tank, and buried lines, as well as lines on top of the ground.

250.    Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of the Silvester property.

251.    The nonproducing well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least four years.

252.    Diversified has no right to leave the unplugged well, derelict equipment, or the unreclaimed well site on the Silvester property. As such it has an obligation to plug the well and remove the equipment from the Silvester property.

### Plaintiff Clinton and Candace Drainer Irrevocable Trust

253.    Plaintiff Clinton and Candace Drainer Irrevocable Trust ("Drainer") is a trust and landowner. Drainer owns approximately 100 acres on one parcel and 120 acres on a second nearby parcel in Taylor County, West Virginia.

254.    Drainer owns the surface estate. Upon information and belief, the trust does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to the trust's acquisition of the property.

255.    As a surface owner, Drainer is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

256.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of three wells on the Drainer property.

257.    One conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-091-00086.

258.    A second conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-091-00720.

259.    A third conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-091-00721.

260.    According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2019 for well 047-091-00086.

261.    According to the Office of Oil and Gas, well 047-091-00086 has not produced oil.

262.    The Office of the Oil and Gas lists the status of the Drainer well as "abandoned."

263.    Well 047-091-00086 was drilled on or before 1985.

264.    Well 047-091-00086 was acquired by or transferred to Alliance Petroleum in 2013, which in turn was acquired by Diversified on or about 2020.

265.    According to the Office of Oil and Gas, the well's operator has reported natural gas production in 2021 for well 047-091-00720 and for 047-091-00721.

266.    According to the Office of Oil and Gas, neither well 047-091-00720 nor 047-091-00721 has produced oil.

267.    The Office of the Oil and Gas lists the status of the well 047-091-00720 as "active" and well 047-091-00721 as "active."

268.    Well 047-091-00720 was drilled on or before 1993.

269.    Well 047-091-00721 was drilled on or before 1993.

270.    Well 047-091-00720 and well 047-091-00721 were acquired by or transferred to Alliance Petroleum in 2013, which in turn was acquired by Diversified on or about 2020.

271.    The sole purpose of the three wells is the extraction of oil and/or natural gas.

272.    Without any mineral production on the Drainer property for well 047-091-00086, there is no purpose and no legal justification for the continued presence of well or its associated equipment.

273.    Well 047-091-00086 has not been plugged, reclaimed, or decommissioned.

274.    The well site at well 047-091-00086 includes derelict equipment owned by Diversified.

275.     Despite the production of some amount of gas at well 047-091-00720 and well 047-091-00721, the wells nonetheless will require plugging and reclamation upon cessation of mineral production or if production reports are incorrect.

276.     Well 047-091-00721 was only marginally productive in 2021. According to industry standard classifications it is "uneconomic" or "financially distressed" meaning that it costs more to maintain than the well brings in revenue.

277.     Diversified is responsible for the plugging of wells 047-091-00720 and 047-081-00721 and removing equipment from the Drainer Trust property when those wells cease production. As such, the Drainer Trust holds a contingent and/or unmatured claim against Diversified for the remediation of those well sites.

278.     Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Drainer's property.

279.     The nonproducing well 047-091-00086 is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least two years.

280.     Diversified has no right to leave the unplugged well or the unreclaimed well site on the Drainer property.

**Plaintiffs Eben Fritts and Eben Fritts, III**

281.     Plaintiffs Eben Fritts and Eben Fritts, III, are individuals and landowners. The Frittses owns approximately 134 acres in Jackson County, West Virginia.

282.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well on the Fritts property.

283.    The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-035-01615.

284.    The Frittses own the mineral rights to the property and they formerly received royalties from the well, but they have not received royalties or any other form of payment since approximately 2016.

285.    According to the Office of Oil and Gas, the operator of well 047-035-01615 did not report natural gas production in 2019 or 2020.

286.    A small amount of production was reported for 2021. However, Diversified shut off and disconnected the well as of 2018.

287.    According to the Office of Oil and Gas, the well has not produced oil.

288.    The well was drilled on or before 1985.

289.    The well was acquired by or transferred to NYTIS Exploration company on or around 2017, a company which merged with Diversified on or about 2020.

290.    The sole purpose of the well is the extraction of oil and/or natural gas.

291.    Despite the reported production, the well is, upon information and belief, not producing gas. There is therefore no purpose and no legal justification for the continued presence of well or its associated equipment.

292.    The well was disconnected and shut off by Diversified or its agents. There is no way to transport gas to market from the well.

293.    The well has not been plugged, reclaimed, or decommissioned.

294.    The well site includes derelict equipment owned by Diversified.

295.    The well site includes regulators, pipelines, a building, and other derelict equipment.

296.    Any lease rights that Diversified may have held in the past have since terminated due to lack of mineral production and/or lack of payments to the Frittses.

297.    The nonproducing well is not reasonable and necessary to extract oil or gas.

298.    Diversified is obligated to plug the well, reclaim the land, remove derelict equipment, and vacate the premises.

299.    The nonproducing well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least two years.

300.    Diversified has no right to leave the unplugged well, derelict equipment, or the unreclaimed well site on the Fritts property.

**Plaintiff Heidi Deem**

301.    Plaintiff Heidi Deem (aka Heidi Deem Heflin) is an individual and landowner. She owns approximately 6 acres in Harrison County, West Virginia.

302.    Deem owns the surface estate. Upon information and belief, she does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to Deem's acquisition of the property.

303.    As a surface owner, Deem is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

304.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well on Plaintiff's property.

305.    The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-033-03422.

306. According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2017.

307. According to the Office of Oil and Gas, the well has not produced oil.

308. The Office of the Oil and Gas lists the status of the Deem well as "abandoned."

309. The well was drilled on or before 1988.

310. The well was acquired by or transferred to Alliance Petroleum from Consol Gas Company in or around 2018; Diversified acquired Alliance Petroleum on or around 2020.

311. The sole purpose of the well was the extraction of oil and/or natural gas.

312. Without any mineral production on Deem's property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

313. The Deem well has not been plugged or decommissioned.

314. The Deem well site includes derelict equipment owned by Diversified.

315. Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Plaintiff's property.

316. The abandoned well is not reasonable and necessary to extract oil or gas, because the well is abandoned and has not been used for that purpose for at least four years.

317. Diversified has no right to leave the unplugged well or the unreclaimed well site on the Deem property. Diversified has an obligation to plug the well, remediate the site, and remove equipment from the Deem property.

**Plaintiffs Jeffrey L. and Kellie D. Saltis**

318.    Plaintiff Jeffrey L. and Kellie D. Saltis are an individuals and landowners. They own approximately 26 acres in Upshur County, West Virginia.

319.    The Saltises own the surface estate. Upon information and belief, they do not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to their acquisition of the property.

320.    As surface owners, the Saltises are not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

321.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well on the Saltis property.

322.    The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-097-00935.

323.    According to the Office of Oil and Gas, the operator of well 047-097-00935 has not reported natural gas production in any amount since 2017. There was also no production reported in 2015, 2011, or 2012.

324.    According to the Office of Oil and Gas, the well has not produced oil since 2010.

325.    The Office of the Oil and Gas lists the status of well as "abandoned."

326.    The well was drilled on or before 1985.

327.    The well was acquired by Alliance Petroleum in or around 2013. Diversified acquired Alliance Petroleum in or around 2020.

328.    The sole purpose of the well is the extraction of oil and natural gas.

329.    Without any mineral production on the Saltis property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

330.     Well 047-097-00935 has not been plugged, reclaimed, or decommissioned.

331.     The well site includes derelict equipment owned by Diversified.

332.     Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of the Saltis property.

333.     The nonproducing well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least four years.

334.     Diversified has no right to leave the unplugged well, derelict equipment, or the unreclaimed well site on the Saltis property. Diversified has an obligation to plug the well, remediate the site, and remove its equipment from the Saltis property.

**Plaintiffs Lane and Minerva Evans**

335.     Plaintiffs Lane and Minerva Evans are individuals and landowners. They own approximately 164 acres Wetzel County, West Virginia.

336.     Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well on the Evans property.

337.     The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-103-01794.

338.     According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2018.

339.     According to the Office of Oil and Gas, the well has not produced oil.

340.     The Office of the Oil and Gas lists the status of the Evans well as "abandoned."

341.     The well was drilled on or before 2000.

342.    Well 047-103-01794 was acquired by Alliance Petroleum on or around 2013.

343.    Diversified acquired Alliance in or around 2020.

344.    The sole purpose of the well was the extraction of oil and/or natural gas.

345.    Without any mineral production on the Evans property for well 047-103-01794, there is no purpose and no legal justification for the continued presence of well or its associated equipment.

346.    Well 047-103-01794 has not been plugged, reclaimed, or decommissioned.

347.    The well site includes derelict equipment owned by Diversified.

348.    Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of the Evans property.

349.    The nonproducing well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least three years.

350.    Diversified has no right to leave the unplugged well, derelict equipment, or the unreclaimed well site on the Evans property. Diversified has an obligation to plug the well, remediate the site, and remove its equipment from the property.

**Plaintiffs Maynard and Jennifer Tanner**

351.    Plaintiff Maynard Tanner, Jr., and Jennifer Tanner are individuals and landowners. The Tanners owns approximately 21 acres Kanawha County, West Virginia.

352.    The Tanners own the surface estate. Upon information and belief, the Tanners do not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to their acquisition of the property.

353.    As a surface owner, the Tanners are not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

354.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well on the Tanner property.

355.    The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-039-04032.

356.    According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2019.

357.    According to the Office of Oil and Gas, the well has not produced oil since 2015.

358.    The Office of the Oil and Gas lists the status of the Tanner well as "abandoned."

359.    The well was drilled on or before 1985.

360.    Well 047-039-04032 was acquired by or transferred to NYTIS exploration company on or around 2016, a company which merged with Diversified on or about 2020.

361.    The sole purpose of the well is the extraction of oil and/or natural gas.

362.    Without any mineral production on the Tanner property for well 047-039-04032, there is no purpose and no legal justification for the continued presence of well or its associated equipment.

363.    Well 047-039-04032 has not been plugged, reclaimed, or decommissioned.

364.    The well site includes derelict equipment owned by Diversified.

365.    The derelict equipment includes an oil pump jack, at least three large tanks, a fenced area, exposed gas lines in the Tanner yard, a well head, two separators, electric lines laying on the ground, and other fixtures.

366.     Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of the Tanner property.

367.     The nonproducing well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least two years.

368.     Diversified has no right to leave the unplugged well, derelict equipment, or the unreclaimed well site on the Tanner property. Diversified has an obligation to plug the well, remediate the site and remove equipment from the Tanner's property.

**Plaintiff Joan Medley**

369.     Plaintiff Joan Medley is an individual and landowner.  She owns approximately 66 acres in Kanawha County, West Virginia.

370.     Medley owns the surface estate. Upon information and belief, she does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to Medley's acquisition of the property.

371.     As a surface owner, Medley is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

372.     Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of at least two nonproducing wells on Plaintiff's property.

373.     The first conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-039-02361.

374.     The second conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-039-04586.

- 44 -

375.     According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2018 for well 047-039-02361.

376.     According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2018 for well 047-039-04586.

377.     According to the Office of Oil and Gas, the well 047-039-02361 has not produced oil since 2018.

378.     According to the Office of Oil and Gas, the well 047-039-04586 has not produced oil since 2018.

379.     The Office of the Oil and Gas lists the status of both Medley wells as "abandoned."

380.     Well 047-039-02361 was drilled in or before 1985.

381.     Well 047-039-04586 was drilled in or before 1985.

382.     Well 047-039-02361 and well 47-039-04586 were acquired by or transferred to NYTIS Exploration company on or around 2016, a company which merged with Diversified on or about 2020.

383.     The sole purpose of the wells was the extraction of oil and/or natural gas.

384.     Without any mineral production on those wells, there is no purpose and no legal justification for the continued presence of the wells or their associated equipment.

385.     The Medley wells have not been plugged, reclaimed, or decommissioned.

386.     The Medley well sites include derelict equipment owned by Diversified.

387.     Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Plaintiff's property.

388.    The abandoned wells are not reasonable and necessary to extract oil or gas because the wells are abandoned and have not been used for that purpose for at least four years.

389.    Diversified has no right to leave the unplugged wells or the unreclaimed well sites on Medley property. Diversified has an obligation to plug the wells, remediate the sites, and remove equipment from the Medley's property.

390.    There are five additional wells on the Medley property with the following API numbers: 047-039-03384; 047-039-04748; 047-039-04517; 047-039-02171; 047-039-05075.

391.    Diversified Production, LLC, is the operator for each of the five wells.

392.    Each of these wells came to Diversified as a result of its merger with NYTIS.  The wells were acquired by NYTIS in the same deal, on or about 2016, as the non-producing wells on the Medley property.

393.    These wells are low producing wells.  Each produced less than 2 BOED equivalent in the last three years.  Based on industry standard well classifications these wells appear to be "financially distressed" which means they cost more to maintain than they provide in revenue.

394.    Although those five wells currently report mineral production, Diversified has the responsibility to plug these wells once production ceases and/or it does not report production for any of these wells for a period of 12 months.

395.    Because of Diversified's responsibility to plug these wells, Ms. Medley has a contingent and/or unmatured claim against Diversified for the costs to plug these wells.

**Plaintiffs Jacob and Regina Collette**

396.    Plaintiffs Jacob and Regina Collette are individuals and landowners. The Collettes own approximately 269 acres Barbour County, West Virginia.

397.    The Collettes own the surface estate. Upon information and belief, the Collettes do not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to their acquisition of the property.

398.    As surface owners, the Collettes are not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

399.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well on the Collette property.

400.    The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-001-00211.

401.    According to the Office of Oil and Gas, the operator of well 047-001-00211 has not reported natural gas production in any amount since 2018.

402.    According to the Office of Oil and Gas, the well has not produced oil.

403.    The Office of the Oil and Gas lists the status of well as "abandoned."

404.    The well was drilled on or before 1985.

405.    The well was acquired by or transferred to Alliance Petroleum from Consol Gas Company in or around 2018; Diversified acquired Alliance Petroleum on or around 2020.

406.    The sole purpose of the well is the extraction of oil and/or natural gas.

407.    Without any mineral production on the Collette property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

408.    Well 047-001-00211 has not been plugged, reclaimed, or decommissioned.

409.    The well site includes derelict equipment owned by Diversified.

410.    The derelict equipment includes a wellhead and pipelines.

411.    Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of the Collette property.

412.    The nonproducing well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least three years.

413.    Diversified has no right to leave the unplugged well, derelict equipment, or the unreclaimed well site on the Collette property. Diversified has an obligation to plug the well, remediate the site and remove equipment from the Collette property.

### Plaintiff Scott Corcoran

414.    Plaintiff Scott Corcoran is an individual and landowner. Corcoran owns approximately 100.5 acres in Taylor County, West Virginia.

415.    Corcoran owns the surface estate. Upon information and belief, Corcoran does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to his acquisition of the property.

416.    As a surface owner, Corcoran is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

417.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of three wells on the Corcoran property.

418.    One conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-091-00983.

419.    According to the Office of Oil and Gas, the operator of well 047-091-00983 has not reported natural gas production in any amount since 2018.

420. According to the Office of Oil and Gas, well 047-091-00983 has not produced oil.

421. The Office of the Oil and Gas lists the status of well 047-091-00983 as "abandoned."

422. Well 047-091-00983 was drilled on or before 1996.

423. Well 047-091-00983 was acquired by or transferred to Alliance Petroleum in 2013, which in turn was acquired by Diversified on or about 2020.

424. The sole purpose of the well is the extraction of oil and natural gas.

425. Without any mineral production on the Corcoran property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

426. Well 047-091-00983 has not been plugged, reclaimed, or decommissioned.

427. The well site includes derelict equipment owned by Diversified.

428. A second conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-091-00858.

429. Well 047-091-00858 was also acquired by Alliance Petroleum on or around 2013, and acquired by Diversified with that company in 2020.

430. According to the Office of Oil and Gas, the operator of well 047-091-00858 has reported natural gas production as recently as 2021.

431. However, the well is extremely overgrown, untended, and appears to be inoperative.

432. The derelict equipment at 047-091-00858 includes a tank, a wellhead, and pipes.

433. A third conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-091-00855.

434. According to the Office of Oil and Gas, the operator of well 047-091-00855 has reported natural gas production as recently as 2021.

435. Well 047-091-00855 was also acquired by Alliance Petroleum on or around 2013, and acquired by Diversified with that company in 2020.

436. The wells either require plugging and reclamation immediately or will require plugging and reclamation upon cessation of mineral production.

437. Because of Diversified's responsibility to plug the wells now or on cessation of production, Mr. Corcoran has at least a "contingent" or "unmatured" claim against Diversified for well plugging and site remediation.

438. Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of the Corcoran property.

439. The nonproducing wells are not reasonable and necessary to extract oil or gas because the wells are abandoned and are not being used for that purpose.

440. Diversified has no right to leave the unplugged wells, derelict equipment, or the unreclaimed well sites on the Corcoran property.

**Plaintiff Kathy Johnson**

441. Plaintiff Kathy M. Johnson (aka Kathy Johnson Howard) is an individual and landowner. She owns approximately 20 acres in two adjoining parcels in Kanawha County, West Virginia.

442.     Johnson owns the surface estate. Upon information and belief, she does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to Johnson's purchase of the property.

443.     As a surface owner, Johnson is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

444.     Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well on Plaintiff's property.

445.     The conventional vertical gas well is known by a unique numerical identifier, called an API number, which is 047-039-03587.

446.     According to the Office of Oil and Gas, the well's operator has not reported natural gas production in any amount since 2018.

447.     According to the Office of Oil and Gas, the well has not produced oil since 2018.

448.     The Office of the Oil and Gas lists the status of the Johnson well as "abandoned."

449.     The well was drilled on or before 1985.

450.     The well was acquired by or transferred to NYTIS Exploration Company in or around 2016. NYTIS merged with Diversified in or around 2020.

451.     The sole purpose of the well was the extraction of oil and/or natural gas.

452.     Without any mineral production on Johnson's property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

453.     The Johnson well has not been plugged, reclaimed, or decommissioned.

454.     The Johnson well site includes derelict equipment owned by Diversified.

455.     Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface

easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of Plaintiff's property.

456.    The abandoned well is not reasonable and necessary to extract oil or gas because the well is abandoned and has not been used for that purpose for at least four years.

457.    Diversified has no right to leave the unplugged well or the unreclaimed well site on Johnson's property. Diversified has an obligation to plug the well, remediate the site and remove its equipment from Jonson's property.

### Plaintiff Christine Cochran

458.    Plaintiff Christine Cochran lives in Liberty, West Virginia in Putnam County.  She owns approximately 60 acres, upon which Diversified operates one well.

459.    Cochran owns the surface estate. Upon information and belief, Cochran does not possess the right to produce oil or gas from the property because the mineral estate was severed from the surface estate prior to her acquisition of the property.

460.    As a surface owner, Cochran is not entitled to royalties or other compensation for gas production by the mineral estate owner or its lessee.

461.    Diversified Production, LLC, is listed by the West Virginia Office of Oil and Gas as the operator of one well.

462.    That well is a conventional vertical gas well identified by API number 47-079-00966.

463.    According to the Office of Oil and Gas, the operator of well 47-079-00966 has not reported natural gas production in any amount since 2019.

464.    According to the Office of Oil and Gas, well 47-079-00966 has not produced oil.

465.    The Office of the Oil and Gas lists the status of well 47-079-00966 as "abandoned."

466.    Well 47-079-00966 was drilled on or before 1985.

467.    Well 47-079-00966 was acquired by NYTIS Exploration in or around 2016. NYTIS Exploration merged with Diversified in 2020.

468.    The sole purpose of the well is the extraction of oil and natural gas.

469.    Without any mineral production on the Cochran property, there is no purpose and no legal justification for the continued presence of the well or its associated equipment.

470.    Well 47-079-00966 has not been plugged, reclaimed or decommissioned.

471.    The well site includes derelict equipment owned by Diversified.

472.    According to the Office of Oil and Gas, the operator of well 047-091-00855 has reported natural gas production as recently as 2021.

473.    Upon information and belief, pursuant to West Virginia law and the deed severing the mineral estate from the Plaintiff's surface estate, Diversified has, at most, a limited surface easement implied by law to do what is reasonable and necessary to extract oil and gas from the subsurface of the Corcoran property.

474.    Diversified has no right to leave the unplugged well, derelict equipment, or the unreclaimed well sites on the Cochran property.

## CLASS ACTION ALLEGATIONS

475.    Plaintiffs bring this action under Rules 23(b)(2), (3), and (c)(4) of the Federal Rules of Civil Procedure on behalf of the following proposed classes:

> a. The Voidable Transfer Class, consisting of all persons or entities that own property in West Virginia on which Diversified owns a well, regardless of whether the wells are currently abandoned or non-producing; and

b. The Common Law Class, consisting of all persons or entities who own land in West Virginia containing at least one well that (1) is not producing and/or has not produced oil or gas for 12 consecutive months, (2) is currently owned or operated by Diversified, and (3) has not been plugged or properly decommissioned.

476.   Excluded from the Classes are Defendants; any entities in which they have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

477.   The members of each class are ascertainable through evaluation of publicly available documents. Records maintained by the West Virginia Office of Oil and Gas identify well owners and operators and indicate whether such wells have or have not produced oil or gas during all relevant timeframes. Records from county assessors' offices can be used to identify landowners who own property where those wells are located. Upon information and belief, Defendants' records will also identify the members of each class.

478.   **Numerosity.** Numerosity is satisfied because there are at least 20,000 members of the Voidable Transfer Class in West Virginia such that joinder of all potential class members is impractical. Similarly, the Common Law Class contains at least 2,000 members such that joinder of all potential members is impracticable.

479.   **Commonality.** There are questions of law and fact common to Plaintiffs in the Voidable Transfer Class. Common questions include but are not limited to the following:

a. Did Diversified make the July 2018 Voidable Transfers and/or the May 2020 Voidable Transfer with actual intent to hinder, delay or defraud its creditors?

b.  Did Diversified receive reasonably equivalent value for the assets it transferred and the obligations it incurred in the July 2018 Voidable Transfer?

c.  Did Diversified receive reasonably equivalent value for assets it transferred and the obligations it incurred in the May 2020 Voidable Transfer?

d.  At the time of the July 2018 Voidable Transfer and again at the time of the May 2020 Voidable Transfer, was Diversified engaged in or about to engage in a business transaction for which its remaining assets were unreasonably small in relation to the business transaction?

e.  Did Diversified incur debts beyond its ability to pay as they became due?

f.  Did Diversified engage in transactions (namely the July 2018 Voidable Transfers and May 2020 Voidable Transfers) for which its remaining assets were unreasonably small in relation to its business or to those transactions?

g.  Was Diversified insolvent at the time of the July 2018 Voidable Transfers and/or May 2020 Voidable Transfers or as a result of those transfers as determined by a balance-sheet analysis?

480.    There are also common questions of law and fact common to the proposed Common Law Class:

a.  Is the intentional ongoing presence of non-producing and abandoned wells (and associated equipment) a trespass under West Virginia law?

b.  Has Diversified breached its duty to Plaintiffs by failing to plug and reclaim their abandoned and non-producing wells in accordance with their statutory obligations under W.Va. Code § 22-6-19?

481.    **Typicality.** Plaintiffs' claims are typical of members in both the Voidable Transfer Class and the Common Law Class.  All of the Plaintiffs have claims under the Alabama UFTA and/or Alabama UVTA based on the Diversified's obligation to plug its wells. Each of the landowners named in the complaint have matured claims based on the presence of currently abandoned/nonproducing wells on their property. Plaintiffs Corcoran, Medley, the Drainer Trust, and Patterson also have contingent and/or unmatured claims based on wells that have reported recent production, in addition to having matured claims for other nonproducing wells.  Each of the named class members have wells on their property that are currently abandoned and/or nonproducing and are properly part of the Common Law Class.

482.    **Adequacy.** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the other Class members, they will fairly and adequately protect the interests of the Class members, and they are represented by counsel skilled and experienced in class actions.

483.    **Predominance.** Common questions of law and fact regarding Defendants' liability, including EQT's liability pursuant to the Alabama UFTA and UVTA and Diversified's liability for common law claims, predominate over questions affecting only individual class members; a class action is the superior method for fair and efficient adjudication of the issues sought to be certified.

484.    The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

485.    **Superiority.** Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, thousands of members of the Classes, such that joinder of all members is impracticable.

486.     Under Rule 23(b)(2), through its practices alleged, Diversified and EQT have acted on grounds that apply generally to the class such that final injunctive or declarative relief is appropriate for the class as a whole.

**FIRST CAUSE OF ACTION**
**Trespass by Diversified (Common Law Class only)**

487.     Plaintiffs hereby restate each and every preceding paragraph, as if specifically stated herein.

488.     Diversified has no right to physically occupy the Plaintiffs' properties for any reason other than as reasonable and necessary for oil and gas production.

489.     Diversified's wells physically occupy and will continue to physically occupy Plaintiffs' private properties. Such occupation prevents Plaintiffs' use and enjoyment of the occupied properties and contravenes the private property "right to exclude." Such physical occupation is itself actual harm, though other damage is also caused by Diversified's activities.

490.     Diversified has caused and continues to cause a wrongful interference with the Plaintiffs' possessory rights in their properties. The ongoing presence of equipment and material is direct, continuing, and physical and constitutes trespass.

491.     Diversified's acts and omissions were and are intentional.

492.     Plaintiffs are entitled to a declaration establishing Diversified's trespasses.

493.     Plaintiffs' injuries resulting from Defendants' trespass are "susceptible of complete pecuniary compensation" and can thus be remedied through money damages. *See Wiles v. Wiles,* 134 W.Va. 81, 58 S.E.2d 601 (1950).

494.     As a result of the trespasses, each Plaintiff is entitled to compensatory damages in an amount sufficient to (1) fully and properly plug the well in accordance with all statutory and regulatory requirements, (2) reclaim the well site, (3) remove all equipment and fixtures, and (4) perform any necessary remediation to land or water resources contaminated by the offending well.

## SECOND CAUSE OF ACTION
### Negligence by Diversified (Common Law Class only)

495.     Plaintiffs hereby restate each and every preceding paragraph, as if specifically stated herein.

496.     West Virginia Code § 22-6-19 establishes that Diversified owes Plaintiffs a duty to "promptly" plug any wells on Plaintiffs' properties once those wells are abandoned, *i.e.*, have not produced oil or gas for twelve consecutive months.

497.     By failing to promptly plug their abandoned wells in accordance with their statutory obligations, Diversified has breached the duty owed to Plaintiffs. *See* Syl. Pt. 1, *Anderson v. Moulder,* 183 W. Va. 77, 394 S.E.2d 61 (1990).

498.     Diversified's breach of duty has caused harm to Plaintiffs by interfering with their exclusive use, enjoyment, and possession of their properties, and otherwise causing Plaintiffs annoyance, inconvenience, and aggravation.

499.     The harm to Plaintiffs and their properties associated with Defendant's breach of its duty was entirely foreseeable.

500.     Plaintiffs are entitled to a declaration that Diversified's failure to promptly plug their wells upon abandonment constitutes negligent action that is the proximate cause of Plaintiffs' injuries, and to compensatory damages in an amount sufficient to plug and reclaim each well site.

**THIRD CAUSE OF ACTION**
**Avoidance and Recovery of a Voidable Transfer as the Result of an Actual Fraudulent**
**Transfer (Voidable Transfer Class only)**

501.    Plaintiffs hereby restate each and every preceding paragraph, as if specifically stated herein.

502.    Plaintiffs are creditors of Diversified because they hold claims as defined in the Alabama UFTA and UVTA against Diversified for Diversified's obligations to plug and remediate wells on their properties. Ala. Code § 8-9A-1; *id.* § 8-9B-2.

503.    The July 2018 Voidable Transfers are avoidable under Sections 8-9A-4 of the Alabama Code or under otherwise applicable state fraudulent transfer laws.

504.    The May 2020 Voidable Transfers are avoidable under Sections 8-9B-5 of the Alabama Code or under otherwise applicable state fraudulent transfer laws.

505.    Diversified made the July 2018 and May 2020 Voidable Transfers with actual intent to hinder, delay, or defraud its creditors, including Plaintiffs, as described above. In 2018 Diversified inexplicably discounted $174 million from its liabilities and extended its plugging and decommissioning obligations 50 years from its own prior estimates.  It has continued to extend its plugging obligations into the future and discount its liabilities.

506.    Diversified made both the July 2018 and May 2020 Voidable Transfers with knowledge that the natural consequence of its actions would be that Diversified would not have sufficient funding to satisfy its plugging and decommissioning obligations to its creditors, including Plaintiffs, as exemplified by its unjustified extension of plugging and decommissioning liabilities and use of an unrealistic decline curve.

507.    The July 2018 and May 2020 Voidable Transfers bear several of the "badges of fraud" recognized under the Alabama UFTA and UVTA. Ala. Code § 8-9A-4(b); *id.* § 8-9B-5(b).

508.    In assessing the value of the acquired assets Diversified concealed the value of the obligations it incurred by unjustifiably underestimating the plugging and decommissioning costs of the wells in the transactions.

509.    The value of the consideration received by Diversified was not reasonably equivalent to the amount of the obligations Diversified incurred and the assets it transferred if appropriate accounting practices are used to value the wells involved in the transfer.

510.    The July 2018 and/or May 2020 Voidable Transfers resulted in the insolvency of Diversified if proper accounting practices are used to evaluate its liabilities and income as a result of the July 2018 and/or the May 2020 Voidable Transfers.

511.    Because the July 2018 and May 2020 Voidable Transfers are voidable under the Alabama UFTA and/or UVTA, or under otherwise applicable state fraudulent transfer laws, Plaintiffs are entitled to avoid the July 2018 and May 2020 Voidable Transfers, recover the assets Diversified transferred to EQT, and place the obligations incurred back onto the transferor — EQT, to the extent necessary to satisfy their claims under Sections 8-9A-7 and 8-9B-8 of the Alabama Code or under otherwise applicable fraudulent transfer laws.

512.    Alternatively, Plaintiffs are entitled to recover judgment for the value of the assets transferred and the obligations incurred against the first transferee and any subsequent transferee, including Defendant EQT, under Sections 8-9A-7 and 8-9B-8 of the Alabama Code or under otherwise applicable state fraudulent transfer laws.

### FOURTH CAUSE OF ACTION
### Avoidance and Recovery of Voidable Transfer as the Result of a Constructive Fraudulent Transfer (Voidable Transfer Class only)

513.    Diversified did not receive reasonably equivalent value in exchange for the $523.4 million and other consideration it transferred to EQT for the billions of dollars in obligations it incurred in connection the July 2018 Voidable Transfers.

514.    Diversified did not receive reasonably equivalent value in exchange for the $114.5 million and other consideration it transferred to EQT if not billions of dollars in obligations it incurred in connection with the May 2020 Voidable Transfers.

515.    Plaintiffs are creditors of Diversified because they hold claims as defined in the Alabama UFTA and UVTA against Diversified for Diversified's obligations to plug and remediate wells on their properties.

516.    At the time of the July 2018 Voidable Transfers, Diversified (a) was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, and/or (c) was insolvent or became insolvent as a result of the transfers.

517.    Because the July 2018 Voidable Transfers are voidable under Sections 8-9A-4 and/or 8-9A-5 of the Alabama Code or under otherwise applicable state fraudulent transfer laws, Plaintiffs are entitled to avoid the July 2018 Voidable Transfers, recover the assets Diversified transferred to EQT, and place the obligations incurred back onto the transferor, EQT, to the extent necessary to satisfy their claims under Section 8-9A-7 of the Alabama Code or under otherwise applicable state fraudulent transfer laws.

518.    Alternatively, Plaintiffs are entitled to recover judgment for the value of the asset transferred or the obligations incurred against the first transferee and any subsequent transferee,

including the Defendant EQT, under Section 8-9A-7 of the Alabama Code or under otherwise applicable state fraudulent transfer laws.

519.    At the time of the May 2020 Voidable Transfers, Diversified (a) was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, and/or (c) was insolvent or became insolvent as a result of the transfers.

520.    As the May 2020 Voidable Transfers are voidable under Sections 8-9B-5 and/or 8-9B-6 of the Alabama Code or under otherwise applicable state fraudulent transfer laws, Plaintiffs are entitled to avoid the May 2020 Voidable Transfers, recover the assets Diversified transferred to EQT, and place the obligations incurred back onto the transferor, EQT, to the extent necessary to satisfy their claims under Section 8-9B-8 of the Alabama Code or under otherwise applicable state fraudulent transfer laws.

521.    Alternatively, Plaintiffs are entitled to recover judgment for the value of the assets transferred and the obligations incurred against the first transferee and any subsequent transferee, including the Defendant EQT, under Section 8-9B-9 of the Alabama Code or under otherwise applicable state fraudulent transfer laws.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court:

1.    Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3) and (c)(4), certify the proposed class for the purpose of determining Defendants' liability to Plaintiffs;

2.    Enforce the Plaintiffs' and class members' private property rights by declaring that Diversified's failure to promptly plug its abandoned wells on Plaintiffs' and class members'

properties constitutes trespass and negligence such that Plaintiffs and class members are entitled to appropriate damages necessary to remedy their injuries;

3.     Award Plaintiffs and class members damages from Diversified to compensate them for trespass and negligence (calculated at the cost of plugging, remediation, and demolition of the abandoned wells); Plaintiffs disclaim and do not seek damages for nuisance, reduced property value, lost use of property, medical damages, business damages, methane leakage, or aggravation;

4.     Declare that Diversified's July 2018 Voidable Transfer of nearly $523.4 million to EQT and the assumption of plugging obligations in exchange for approximately 11,000 wells is avoided as a fraudulent transfer as defined by the Alabama UFTA;

5.     Declare that Diversified's May 2020 Voidable Transfer of nearly $114.5 million to EQT and the assumption of plugging obligations in exchange for approximately 900 wells is avoided as fraudulent transfer as defined by Alabama UVTA;

6.     Direct the recovery of the assets Diversified transferred to EQT and reimpose the plugging and decommissioning obligations incurred by Diversified in the July 2018 and May 2020 Voidable Transfers back onto the transferor, EQT, to the extent necessary to satisfy Plaintiffs' claims under Sections 8-9A-7 and 8-9B-8 of the Alabama Code or under otherwise applicable fraudulent transfer laws, or, alternatively, in accordance with Alabama Code §§ 8-9A-7 and 8-9B-8, enter Judgment for the value of the property transferred and the obligations incurred by Diversified up to the amount necessary to satisfy Plaintiffs' claims;

7.     Create a fund from the damages awarded from EQT to be used to plug and otherwise decommission Class members' wells in West Virginia;

8.     Create a separate fund from damages awarded from Diversified to be used to plug and otherwise decommission Class members' wells;

9.      Appoint a receiver to take charge of and administer both of those funds;

10.     Award attorney's fees as appropriate; and

11.     Grant Plaintiffs and all Class members such other and further relief as is just and equitable under the circumstances.

Trial by jury is demanded for all causes of action so triable.

Dated: June 16, 2023                                Respectfully submitted,

*/s/ Brian A. Glasser*
Brian A. Glasser, Esq. (WVSB No. 6597)
John W. Barrett, Esq. (WVSB No. 7289)
Brian R. Swiger (WVSB No. 5872)
Athanasios Basdekis (WVSB No. 9832)
Panida Anderson admitted pro hac vice
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
bglasser@baileyglasser.com
jbarrett@baileyglasser.com
bswiger@baileyglasser.com
tbasdekis@baileyglasser.com
panderson@baileyglasser.com

J. Michael Becher (WVSB No. 10588)
Joseph M. Lovett (WVSB No. 6926)
Benjamin Luckett (WVSB No. 11463)
Amanda Demmerle (WVSB No. 13930)
APPALACHIAN MOUNTAIN ADVOCATES
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
jlovett@appalmad.org
mbecher@appalmad.org
ihowell@appalmad.org
bluckett@appalmad.org
ademmerle@appalmad.org

*Attorneys for Plaintiffs and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

       Plaintiffs,

v.                CIVIL ACTION NO. 5:22-cv-171
                 Honorable Judge John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

       Defendants.

## <u>CERTIFICATE OF SERVICE</u>

    I, Brian Glasser, hereby certify that on June 16, 2023, I caused to be filed the foregoing

with the Clerk of the Court using the CM/ECF System, which caused a true and accurate copy of

such filing to be served upon all attorneys of record.


           */s/ Brian A. Glasser*      
           Brian A. Glasser, Esq. (WVSB No. 6597)