## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING DIVISION

| | |
|---|---|
| MARK MCEVOY, *et al.*,<br>           Plaintiffs,<br><br>v.<br><br>DIVERSIFIED ENERGY COMPANY PLC, *et al.*,<br>           Defendants. | Civil Action No. 5:22-cv-00171-JPB<br>Judge John P. Bailey<br>Magistrate Judge James P. Mazzone |

**DIVERSIFIED'S RESPONSE IN OPPOSITION TO DAVID MCMAHON'S OBJECTIONS TO AND MOTION TO QUASH SUBPOENA SERVED BY DEFENDANT DIVERSIFIED ON DAVID MCMAHON OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Diversified[1] requests the Court deny David McMahon's Objections to and Motion to Quash Subpoena Served by Defendant Diversified on David McMahon or, in the Alternative, for a Protective Order (ECF No. 306) (the "Motion"). The Court must deny the Motion for lack of jurisdiction because it must be filed in the district of compliance (*i.e.*, the United States District Court for the Southern District of West Virginia). Even if the Court had jurisdiction over the Motion (it does not), the Court should deny it because Mr. McMahon has not met his burden for resisting discovery; the documents requested are material and relevant, do not seek the production of privileged documents, and are not unduly burdensome. As for Mr. McMahon's alternative requested relief, Diversified is willing to agree with Mr. McMahon on an neutral third party for the collection, search, review, and production of documents and communications responsive to the subpoena, at its cost.

---

[1] "Diversified Defendants" or "Diversified" are Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation. Diversified Gas & Oil PLC now operates as Diversified Energy Company PLC; Alliance Petroleum Corporation now operates as Diversified Production LLC; and Diversified Oil and Gas LLC does not exist.

1

**ARGUMENT**

I. **THE COURT LACKS JURISDICTION TO GRANT THE MOTION BECAUSE THIS IS NOT THE DISTRICT OF COMPLIANCE FOR THE SUBPOENA**

As the Court recently recognized, "a [m]otion to [q]uash [a] subpoena must be filed in the court for the district where compliance is required." *Glover v. EQT Corp.*, 2023 WL 2825827, at *1 (N.D. W. Va. Mar. 31, 2023) (Mazzone, Mag. J.) (citing Fed. R. Civ. P. 45(d)(3)); *see also* Order Granting Pls.' Mot. to Quash or in the Alternative for Protective Order (ECF No. 283) at 2 (same). "Courts around the country have denied motions to compel compliance with a subpoena and motions to quash a subpoena for lack of jurisdiction where the subpoena required compliance in another district." *Glover*, 2023 WL 2825827, at *1 (collecting cases); Order Granting Pls.' Mot. to Quash or in the Alternative for Protective Order (ECF No. 283) at 2 (citing *Oakwood Prods., Inc. v. SWK Techs., Inc.*, 2022 WL 7108844, at * 8 (D.S.C. Oct. 12, 2022) (citing *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018); *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555 (D. Nev. Aug. 15, 2014); and *Semex All. v. Elite Dairy Genomics, LLC*, 2014 WL 1576917 (S.D. Ohio Apr. 18, 2014)); *see also In re Monitronics Int'l, Inc.*, 2014 WL 12623046, at *2 (N.D. W. Va. June 19, 2014) (denying "motions to quash or for protective order" related to subpoena because they were filed "in the wrong court" under Rule 45(d)(3).

The place of compliance for the subpoena on Mr. McMahon is Charleston, West Virginia. *See* McMahon Subpoena (ECF No. 290-1) at 1 (commanding production at Charleston, West Virginia). The Court, therefore, is not the district of compliance, which is the United States District Court for the Southern District of West Virginia. "[I]nasmuch as the subpoena at issue requires compliance in another district, this Court must deny the [m]otion for lack of jurisdiction." *Glover*, 2023 WL 2825827, at *1. The Court, therefore, must deny the Motion for lack of jurisdiction.

2

## II. MR. MCMAHON HAS NOT MET HIS BURDEN FOR RESISTING DISCOVERY

### A. The Requested Materials Are Relevant

Each category of materials requested in the subpoena is relevant either to the Plaintiffs' claims or Diversified's defenses. The subpoena's requests primarily seek information that Mr. McMahon has by virtue of his involvement in the publication Plaintiffs exclusively rely on to bring their voidable transfer claims and invoke the discovery rule. These documents are relevant, non-privileged, and well within the proper scope of discovery.

"[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Townsend v. Nestle Healthcare Nutrition, Corp.*, 2016 WL 1629363, at *3 (S.D. W. Va. Apr. 22, 2016) (citation omitted). "Looking to Rule 26, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .'" *Id.* (alterations in original) (quoting Fed. R. Civ. P. 26(b)(1)). "Certainly, information is relevant if it logically relates to a party's claim or defense." *Id.* Likewise, in terms of trial admissibility, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And "it remains true that 'relevancy in discovery is broader than relevancy for purposes of admissibility at trial.'" *Townsend*, 2016 WL 1629363, at *3 (quoting *Amick v. Ohio Power Co.*, 2013 WL 6670238, at *1 (S.D. W. Va. Dec. 18, 2013)).

#### 1. The materials that Diversified requests are relevant

Subpoena requests 1, 2, 3, and 4 seek documents and communications related to the report titled "Diversified Energy: A Business Model Built to Fail Appalachia," published in April 2022 by the Ohio River Valley Institute and authored by Ted Boettner, Kathy Hipple, and Anthony Ingraffea (the "Boettner Report") and its authors. *See* McMahon Subpoena (ECF No. 290-1) at

3

Ex. A, ¶¶ 1–4. Subpoena request 10 seeks documents and communications related to the transactions sought to be voided by Plaintiffs. *See id.* at Ex. A, ¶ 10. The documents and communications sought are relevant, and discovery to date shows that responsive documents are in the possession and control of Mr. McMahon.

The Boettner Report is material to Claims III and IV of Plaintiffs' operative complaint. Citations to the Boettner Report constitute 31 of 36—or over 86 percent—of the complaint's footnotes. *See* Third Am. Compl. (ECF No. 322) at nn.1–36. The Boettner Report is quoted, cited, or directly relied upon in at least 27 of the 41—or roughly 66 percent—of the paragraphs comprising the "Facts" section of the complaint (¶¶ 42–82). ***All but seven*** paragraphs of the "Facts" section relate to the content of that publication. *See* Third Am. Compl. (ECF No. 322) ¶¶ 57, 76–81. The Boettner Report is attached to the complaint as Exhibit A; it is the only exhibit to the complaint. *See* Ex. A to Third Am. Compl. (ECF No. 322-1).

Moreover, in pleading the discovery rule to avoid the statute of limitations, Plaintiffs rely entirely on the Boettner Report: "The insolvency and undercapitalization of Diversified wasn't publicly revealed until at least April 12, 2022, ***upon the publication of the Boettner Report, which revealed the unorthodox accounting techniques and business strategies of Diversified***." Third Am. Compl. (ECF No. 322) ¶ 97 (emphasis added).[2] In other words, by Plaintiffs' own admission, there exists no basis to bring their voidable transfer claims prior to and without the Boettner Report. This is consistent with Mr. McMahon's own statements in the Motion: "And how could the plaintiff surface landowners be on notice to suspect the adverse financial condition of a company that can apparently afford to sponsor West Virginia University basketball and football." Mot. at 4

---

[2] *See also* Third. Am. Compl. (ECF No. 322) ¶ 93 ("The Plaintiffs in this action could not reasonably be expected to discover the fraudulent nature of Diversified's transfers until . . . at the very earliest the publication of the Boettner Report on April 12, 2022.").

n.1.[3] It is also consistent with what the Ohio River Valley Institute and Ted Boettner, an author of the report, said internally about the relationship between his report and this litigation: "***Without our work, wouldn't have had a basis for coming up with claim***." Ex. 2 (OVRI_TB003497) at ORVI_TB003519 (emphasis added) ("WV landowner litigation/Diversified - Ted"); *see also* Ex. 3 (ORVI_TB038470) at ORVI_TB038474 ("The lawsuit relies on financial analysis done by Ted Boettner, a senior researcher at the Ohio River Valley Institute, a nonprofit think tank that advocates for clean energy.").

Ted Boettner should know, considering that despite the complaint treating him as a neutral, third-party expert to support its claims[4] he worked directly with Plaintiffs' counsel—prior to their retention as counsel by any named Plaintiff in this case—to bring this litigation. *See* Ex. 4 (ORVI_TB017186) ("We are working with Mike [Becher] and others on legal action about abandoned wells and Diversified Energy."); Ex. 5 (ORVI_TB000430) ("[W]e thought maybe parts of that decision are apropos to building a case against Diversified."); Ex. 6 (ORVI_TB017752) (email between T. Boettner and M. Becher); Ex. 7 (ORVI_TB021634) (noting drafts of the report shared before publication and discussing potential claims).

The Boettner Report and its assertions, assumptions, accuracy, and motivations[5] are, therefore, material and relevant to Plaintiffs' voidable transfer claims and Diversified's defenses,

---

[3] *See also* Ex. 1 (ORVI_TB014603) at ORVI_TB014603 ("I think the least we could do is get Diversified's logo off WVU basketball side tables.").

[4] Third Am. Compl. (ECF No. 322) ¶ 45 & n.10 ("As one expert stated, following the July 2018 Voidable Transfers and May 2020 Voidable Transfers, if Diversified had used industry norms to calculate its plugging and decommissioning obligations, those liabilities would have been reported as $2 billion to $3 billion rather than the $525 million Diversified actually reported. Upon a fair valuation, Diversified was insolvent for purposes of the Alabama UFTA and UVTA." (citing to Boettner Report)).

[5] *See Thompson v. Allstate Prop. & Cas. Ins. Co.*, 2019 WL 438367, at *3 (N.D. W. Va. Feb. 4, 2019) (Mazzone, Mag. J.) ("[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984))). ***Ted Boettner has indicated in internal documents that a "[b]ig goal" of the report and this litigation is to "scare investors."*** Ex. 2 (OVRI_TB003497) at ORVI_TB003519 (emphases added) ("Big goal

the application of the discovery rule to those claims, and class certification, including the adequacy of putative class counsel.

Documents produced by the Ohio River Valley Institute and Ted Boettner to date show that Mr. McMahon was involved in the creation of the Boettner Report and is in the possession of non-privileged documents and communications related to the same. Mr. McMahon communicated with Ted Boettner and the Ohio River Valley Institute about the report and its substance prior to its publication. *See* Ex. 9 (ORVI_TB000426) (email from T. Boettner to D. McMahon re Diversified); Ex. 10 (ORVI_TB003969) (email from D. McMahon to T. Boettner re setting up alternative bonding scheme); Ex. 11 (ORVI_TB003972) (attachment, identical to Exhibit A to Motion (ECF No. 306-1)); Ex. 12 (ORVI_TB011779) (email from T. Boettner to D. McMahon seeking feedback).

In fact, Mr. McMahon provided Ted Boettner and the Ohio River Valley Institute with an investor document from an unknown third party that the Ohio River Valley Institute reengineered to form a portion of the Boettner Report and the allegations contained within the complaint. *See* Ex. 13 (ORVI_TB000921) ("[W]e hit the jackpot on getting an investor document from Dave McMahon. . . . I think we could reengineer the analysis instead of footnoting it or using it. I think it will be super helpful for looking at the 'unproven business' model."); Ex. 14 (ORVI_TB000927) (investor document attachment to Ex. 13 that was reengineered for part of Boettner Report); Ex. 15 (ORVI_TB003766) ("I found the report from the presentation of the Hedge Fund guy.").

Documents and communications related to the information provided by Mr. McMahon that was used to create the Boettner Report is material and relevant to Diversified's defenses to Plaintiffs' claims, as the Boettner Report is the sole basis for these claims. Diversified is entitled

---

is that ruling will prompt more scrutiny of low-producing wells and companies; scare investors"); Ex. 8 (ORVI_TB016542) ("***Subject: ORVI contributes to Diversified stock plunge***" (emphasis added)).

to seek the production of these materials as they relate to allegations in the complaint. *See, e.g.*, *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987) ("Whether the documents requested . . . are relevant must be viewed in light of the allegations of the complaint, not as to evidentiary admissibility . . . .  Although defendant opposes the discovery demands on the ground of relevance, *inter alia*, there can be no question of the relevancy of these materials to the allegations of the complaint . . . ."); *Beckman v. T.K. Stanley, Inc.*, 2012 WL 1085803, at *6, *10–11 (N.D. W. Va. Mar. 30, 2012) (granting motion to compel discovery because "each [request] seek[s] discovery concerning a specific allegation in Plaintiff's complaint and [is] therefor[e] relevant to a claim or defense").  This is especially so because these same allegations were the basis of this Court compelling Diversified to produce documents in this litigation. *See, e.g.*, Order Granting in Part & Denying in Part Pls.' Mot. to Compel (ECF No. 180) at 8 (citing allegations based on Boettner Report as basis for compelling production of documents); Order Granting Pls.' Mot. to Compel (ECF No. 282) at 4–5 & n.2 (compelling production of communications related to dividend and share buyback polices because the "Second Amended Complaint calls into question Defendants' accounting practices").  It cannot be that these allegations are sufficiently material to support Plaintiffs bringing their claims and the Court compelling the production of documents *from* Diversified, but they are not sufficiently material or relevant to support discovery served *by* Diversified.

B.     **The Subpoena Does Not Seek Privileged Documents and Communications**

Mr. McMahon argues that any relevant documents or communications responsive to the subpoena would be privileged. *See* Mot. at 5–7.  Not so.  When Diversified subpoenaed Mr. McMahon, it was unaware that Mr. McMahon had "brought th[e] legal concept [underpinning this lawsuit] and industry practices to Appalachian Mountain Advocates, educated them on these matters -- and . . . suggested they begin litigation for a surface owners' class on this basis." *See*

7

*id.* at 5.  Diversified was also unaware that Mr. McMahon "participated in drafting the complaint," "participated in named plaintiff selection," and "wrote one draft pleading, portions of which . . . were used in pleadings filed." *See id.*  Mr. McMahon is not an attorney of record in this case, and although Defendants requested (and received) all retention agreements in this matter, no retention agreement between Plaintiffs and Mr. McMahon was produced (ostensibly because it does not exist).[6]

After serving Mr. McMahon with the subpoena, however, Plaintiffs' counsel informed Diversified that they have consulted with Mr. McMahon and assert privilege over certain communications between Mr. McMahon, Plaintiffs' counsel, and other of Plaintiffs' consulting experts.  Plaintiffs produced a categorical privilege log related to the documents and communications over which they assert a privilege.  *See* Ex. 16 (Plaintiffs' Categorical Privilege Log).  Based on Plaintiffs' assertion of privilege, Diversified does not intend to pursue production of communications between Mr. McMahon and Plaintiffs' counsel, Kathy Hipple, or Luke Plants (responsive to requests 5, 6, 7, 8) or documents responsive to request 12.

Plaintiffs' assertion of privilege, however, does not extend to Mr. McMahon's documents relating to the Boettner Report, the investment presentation Mr. McMahon provided to Ted Boettner and the Ohio River Valley Institute that was "reengineered" as part of that report, or communications with Ted Boettner or others about the report, its assumptions, or its motivations. Neither Ted Boettner nor the Ohio River Valley Institute have asserted an attorney-client

---

[6] Mr. McMahon suggests that *L&D Investments, Inc. v. Antero Resources Corp.*, --- S.E.2d ----, 2023 WL 3052060 (W. Va. Apr. 24, 2023), stands for the proposition that the attorney-client privilege can apply to an attorney that is not actually retained by a client. *See* Mot. at 5.  *L&D Investments*, however, is not about the attorney-client privilege, and never once even mentions the word "privilege."  Instead, it considers whether an attorney had a claim for restitution or unjust enrichment related to the creation of a common fund that benefited heirs the attorney did not represent. *See L&D Investments*, 2023 WL 3052060, at *1.

relationship with Mr. McMahon or asserted a privilege over any communications with him about the Boettner Report. As a result, the documents and communications sought in the remaining requests are relevant, non-privileged, and should be produced.

### C. Mr. McMahon Has Not Put Forward Any Evidence of Burden Whatsoever

Although Mr. McMahon claims the subpoena's requests are "overly broad and unduly burdensome and not proportional to the needs of the case,"[7] Mr. McMahon has failed to carry his burden of substantiating that claim. "Regardless of whether a motion is made under Rule 26(c) or Rule 45(d), the party opposing discovery has the obligation ***to submit evidence*** supporting its claims that the discovery is unduly burdensome, oppressive, or irrelevant." *JAK Prods., Inc. v. Bayer*, 2015 WL 2452986, at *10 (S.D. W. Va. May 22, 2015) (emphasis added). "To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments." *Id.* (collecting cases).

In just a single page, Mr. McMahon asserts that the production sought in the subpoenas in response to requests 3, 4, and 5 would be unduly burdensome. Mot. at 7–8. This is based on his alleged need to search what he "roughly estimate[s]" to be at least 70,000 emails to find responsive documents. *See id.* at 7 & n.6. Mr. McMahon, however, has submitted no evidence in support of his arguments. *See generally id.* Nor has he provided a basis for why the remaining requests (1, 2, 9, 10, and 11) might be burdensome. This complete lack of any specific argument to support Mr. McMahon's claims cannot justify the relief sought.

Regardless, Mr. McMahon does not need to manually search and review each potentially responsive email individually to respond to the subpoena. Diversified is willing to work with Mr. McMahon to limit any perceived burden as to its requests and to coordinate collection and search

---

[7] Mot. at 7.

(by agreed search terms) of potentially responsive documents and communications by a third-party vendor, at its cost. Had Mr. McMahon contacted Diversified's counsel to meet and confer over its requests before filing the Motion, Diverisfied would already have done so. Therefore, the Court should deny Mr. McMahon's bald assertion of burden and allow the parties to meet and confer on the scope of Diversified's requests and appropriate ways to mitigate any potential burden of production on Mr. McMahon.

### III. DIVERSIFIED IS WILLING TO AGREE TO A THIRD-PARTY COLLECTION AND SEARCH OF POTENTIALLY RESPONSIVE DOCUMENTS AT ITS COST

In the alternative to quashing Diversified's subpoena (for which this Court has no jurisdiction), Mr. McMahon requests a neutral third party be appointed to perform a forensically defensible collection and search for responsive, non-privileged documents and communications, at Diversified's cost. *See* Mot. at 10. Diversified is willing to agree with Mr. McMahon on a neutral third party to conduct such a collection and review at its cost. Diversified is also willing to confer and agree with Mr. McMahon as to reasonable limitations to the production of relevant ESI "within the limits of [his] home office equipment and software." *Id.*

### CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

| | |
|---|---|
| Respectfully submitted: | Dated: June 19, 2023 |

 /s/ Howard M. Persinger, III

Howard M. Persinger, III (WVSB #6943)
**PERSINGER & PERSINGER, L.C.**
237 Capitol Street
Charleston, WV 25301
Phone:  (304) 346-9333
Fax:      (304) 346-9337
Email:   hmp3@persingerlaw.com

Daniel Donovan, P.C. (admitted *pro hac vice*)
Ragan Naresh, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone:  (202) 389-5267
Fax:      (202) 389-5200
Email:   daniel.donovan@kirkland.com
              ragan.naresh@kirkland.com

Kenneth Young (admitted *pro hac vice*)
Dustin Womack (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone:  (713) 836-3600
Fax:      (713) 836-3601
Email:   kenneth.young@kirkland.com
              dustin.womack@kirkland.com

*Counsel for Defendants Diversified Energy Company PLC, Diversified Gas & Oil, PLC, Diversified Production LLC, Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC, and Alliance Petroleum Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 19, 2023, a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

                                                      */s/ Howard M. Persinger, III*  
                                                     Howard M. Persinger, III