IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

| | |
|---|---|
| MARK MCEVOY, *et al.*,<br>                Plaintiffs,<br><br>v.<br><br>DIVERSIFIED ENERGY COMPANY PLC, *et al.*,<br>                Defendants. | Civil Action No. 5:22-cv-00171-JPB<br>Judge John P. Bailey<br>Magistrate Judge James P. Mazzone |

**REPLY OF DAVID MCMAHON TO
DIVERSIFIED'S RESPONSE IN OPPOSITION TO DAVID MCMAHON'S
OBJECTIONS TO AND MOTION TO QUASH SUBPOENA
OR, IN THE ALTERNATIVE, A PROTECTIVE ORDER,
WHICH SUBPOENA WAS SERVED UPON HIM BY DEFENDANT DIVERSIFIED,
AND HIS CONSENT AND MOTION FOR RULING IN NORTHERN DISTRICT**

Before the Court are objections and motion to quash originally filed *pro se* of David McMahon (who is not a party to or counsel of record in this action) to the discovery subpoena served upon him by the defendant Diversified.

**ARGUMENT**

**I.   THE COURT HAS JURISDICTION TO GRANT THE MOTION BECAUSE THIS COURT HAS THE POWER TO CONTROL DISCOVERY BEING SOUGHT BEFORE IT.**

Diversified argues that the Northern District Judge does not have jurisdiction to hear these matters and that they should be brought in the Southern District where the subpoena requested his compliance.

    **A.   This Court Has Previously Ruled That It Has Jurisdiction.**

In this case, Magistrate Judge Mazzone ruled that there was no jurisdiction for this Court to act on a motion to quash because the motion to quash was not filed in the district where

compliance was requested to occur. ECF No. 283, Pg. 2. However, the Magistrate Judge in the end granted a protective order which in effect quashed the subpoena. And this Honorable Judge himself has ruled that, "[T]his Court has inherent power to control discovery, including subpoenas to third parties," when this Court denied Diversified's motion to reconsider this Court's order quashing Diversified's subpoena to Sierra Club. ECF No. 317, Pg. 3.

### B. The Rule Is Designed To Protect Persons Subject To Subpoena.

Importantly, note that the heading of the subsection of Rule 45 that Diversified relies upon is entitled "<u>PROTECTING A PERSON SUBJECT TO A SUBPOENA</u>; ENFORCEMENT [Emphasis added]." Whether or not a heading is technically part of the language of a rule, the emphasized words in the heading summarize the Rule's intent. In the present case, Mr. McMahon, who does not generally practice in Federal Court,[1] and who was under the gun to get something filed within the 14-day time limit while also spending time seeking representation, found it most expedient for him to file and serve his *pro se* objection and motion in the Northen District. The Northern District is where he believed he had once been admitted and therefore could, although only after some kind assistance from the Clerk's office, use the ECF service system. Also, Wheeling is only three hours from his home in Charleston, and it is his hometown where family members still reside and can visit and accommodate him.

### C. Mr. McMahon Consents And There Are Exceptional Circumstances.

Rule 45(f) provides in part, "(f) *Transferring a Subpoena-Related Motion*. When [if the motion had been filed in the Southern District] the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person

2

subject to the subpoena consents or if the court finds exceptional circumstances." Mr. McMahon consents and indeed moves for these matters to be considered in the Northern District without the necessity of going back and filing in the Southern District and moving to transfer.

In addition to this consent and motion, there are exceptional circumstances that would advise a transfer to, or a hearing in, the Northern District. The comments to the COMMITTEE NOTES ON RULES - 2013 AMENDMENT to Rule 45[2] state that while ". . .it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion." In this case, the Court has already been managing subpoenas to third parties, and in the case of the subpoena to the Sierra Club, this Court has already ruled on some of the issues presented by the motion and objection before it now. ECF No. 309. The comments also state "The prime concern should be avoiding burdens on local nonparties." In the present case, Mr. McMahon consents to the transfer; indeed, he moves for the transfer/hearing in the Northern District, if such a consent or transfer is needed.

Finally, Rule 1 of the Federal Rules of Civil Procedure talks about the purpose of the Rules being "just, speed, and inexpensive" determinations. To have this issue run through the

---

[1]Mr. McMahon by his memory has only appeared in the Northern District in one case just several years ago, and then only as co-counsel. He recalls only two appearances in the 1970s or 1980s in the Southern District. Otherwise, he recalls no other Federal District Court appearances.
[2]Available on Cornell Law School LII Legal Information Institute
https://www.law.cornell.edu/rules/frcp/rule_45 last viewed June 21, 2023, and *FastCase* West Virginia State Bar legal research provider at "Browse Libraries," "Primary Material" "Federal Rules of Civil Procedure," (2023 Edition), Rule 45,
https://fc7.fastcase.com/outline/WV/1039?docUid=488873620 last viewed June 21, 2023.

bank shot of the Southern District, and the required hoops to make that occur, does not seem to accomplish that goal.

Thus, this Court should manage this case and that is done most expeditiously for Mr. McMahon and others by this Court ruling upon his objection and motion(s).

**II. THE SUBPOENA SHOULD BE QUASHED BECAUSE THE REQUESTS ARE IN THE PUBLIC RECORD, IRRELEVANT, OVERBROAD, AND THE BURDEN AND EXPENSE OF THE PROPOSED DISCOVERY COMPLETELY OUTWEIGHS ITS LIKELY BENEFIT.**

As discussed in more detail herein, Mr. McMahon objects that the discovery sought is not proportional to the needs of the case, and that the burden of compliance would exceed the benefit of production of the material sought. *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d923, 927 (7th Cir. 2004). Mr. McMahon's status as a non-party and not counsel of record is a significant factor that should be considered in evaluating whether the burden imposed is undue. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 - 189 (4th Cir. 2019); *see also Tresona Multimedia LLC v. Legg*, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015). Because of the different expectations for non-parties in accepting the burdens of litigation, "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *See id.* (citation omitted).

The foregoing was heavily lifted from the Sierra Club's objections. ECF No. 287, Pgs. 3-4. While Mr. McMahon's connection to the litigation was arguably much closer than Sierra Club's, those connections to the case were as an attorney, giving rise to attorney client and work product privilege, and as a non-testifying expert. And as argued in his initial objection and motion, these prevent by privilege or rule his compliance with Diversified's discovery subpoena requests.

4

### A. The Facts Related To Claims And Defenses Comes From Reports Made By Diversified And EQT.

The least noticeable but perhaps the most significant aspect of Diversified's Response is that it does not seem to address at all the major point made by Mr. McMahon's objections and motion. The claims of the Plaintiffs are that Diversified has wells that are non-producing, that should be plugged by statute and common law, and that are not plugged; and, in addition, that wells were transferred from EQT to Diversified in a transaction giving rise to constructive fraud and that Diversified did not receive reasonable equivalent value in order to be able to comply with plugging obligations when EQT should have believed that those plugging obligation debts were beyond Diversified's ability to satisfy.

The point previously made but unaddressed by Diversified's Response is its knowledge of the existence of all of those facts giving rise to the Plaintiff's claims or the Defendant's defenses come from reports made by Diversified and EQT to the West Virginia Department of Environmental Protection and from their disclosures to their shareholders and others! All of that is not only in public records but came to be in those public records from their own records! Mr. McMahon is not the source of those facts, the Defendants are. That point standing alone makes requiring any effort by Mr. McMahon to comply with the subpoena not proportional and makes the burden of compliance exceed the benefit of production.

### B. Records Requested In Requests 1, 2, 3, and 4 Contain No Relevant Facts Or Are Overbroad.

Requests 1 and 2 of the subpoena served upon Mr. McMahon request all documents "related to" and all "Communications discussing or otherwise related to" the report titled "DIVERSIFIED Energy; a Business Model Built to Fail APPALACHIA." The facts pointed to in the report are what are relevant to the claims in this case. The fact that the report pointed them

5

out and recited them is not relevant -- what is relevant is their intrinsic truth. The questions relevant for discovery are what facts prove or disprove the claims and defenses. The facts of how the Plaintiffs' lawyers learned of the existence of the facts that they used to determine to file the lawsuit has little or no likelihood of changing the facts that Diversified and EQT reported on. Whatever Mr. McMahon's contribution in some small way to the understanding of the oil and gas industry's incentives and dynamics leading to the relevant facts, and what facts to look for (See ECF No. 323-10), is not relevant.  Further, to the extent that it would lead to relevant facts, it would lead only to the facts currently sitting in the records of the Defendants, the DEP, and the Defendants' shareholders and the public.

Subpoena requests 3 and 4 go even farther afield. Request 3 asks for communications only just _discussing_ the authors of the report, not communications with them. What gossip is being requested that could be relevant to the claims and defenses?  None.

Subpoena request 4 asks for all communications that Mr. McMahon has had with Ted Boettner about Diversified. ECF No. 323-10 illustrates how Diversified's subpoena requests have gone from too far afield to over the horizon. That document is an email apparently supplied to Diversified pursuant to a subpoena request to Ted Boettner.  It is an email from Mr. McMahon replying to an email from Ted Boettner. The second paragraph from the end reveals Mr. McMahon's thoughts on lobbying, bill drafting, and negotiations on the subject of orphaned well prevention legislation at the West Virginia Legislature. That legislative advocacy information has nothing to do with the litigation, but it has now been disclosed to Diversified in the litigation pursuant to a Diversified discovery subpoena in the litigation. This is even more than the information on unrelated advocacy that Sierra Club believed was being sought from it by the subpoena this Court has quashed. ECF No. 308. Again, the questions relevant for discovery are

what facts prove or disprove the claims and defenses. The facts of how the Plaintiffs' lawyers learned of the existence of the facts that they used to determine to file the lawsuit has little or no likelihood of changing the facts that Diversified and EQT reported on. The fact that Mr. McMahon told Mr. Boettner about these disclosures, and that Mr. Boettner told the other authors, does not affect the truth of the facts asserted by Diversified in its disclosures.

### C. The Remaining Requests Are Either Not Proportional To The Needs Of The Case And Compliance Would Create A Burden That Outweighs Its Likely Benefit, Or They Are Privileged.

In accordance with Rule 26, a court may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As such, the Fourth Circuit has agreed with the notion that even relevant evidence is not discoverable by virtue of the fact that it is relevant, but rather that the frequency and use of discovery methods may be limited when the burden to produce such discovery will likely outweigh its benefit. *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).

Request 9 asks for all of Mr. McMahon's documents and communications regarding Diversified, "or any of its gas wells in West Virginia" from July 1, 2016, to the present. All of them! Diversified's response states that "Mr. McMahon has not put forward any evidence of burden . . . " ECF No. 323, Pg. 9. Request 9 speaks for itself in the burden that would be imposed. Diversified owns over 20,000 wells in West Virginia. In addition to those non-producing/statutorily "abandoned" wells that are the subject of this litigation, Diversified has wells that are producing. Mr. McMahon gets questions weekly from surface owners and the public about these producing wells, including wells not producing in paying quantities (though producing something), about their road right-of-way issues, or pipeline rights-of-way issues, or issues of leaks from those wells and pipelines to producing wells. They have little to no

relevance to the facts of this case and sorting the records of contacts of Diversified wells versus other companies' wells (including who owned them at the time of the contact) may not even be possible. True, Diversified offers to agree to a neutral third party to comb through his emails. However, that still requires significant time and effort for Mr. McMahon regarding many details to arrange and consult. But the request is for documents too! Mr. McMahon has filing cabinets and boxes with documents from his years of advocacy for surface owners against oil and gas drillers, and only some of those documents no doubt refer to Diversified. In addition, there are electronic records on his laptop of many contacts regarding wells that are not Diversified's, or were not at the time of the contact, but may be now. At least a few would reveal lobbying strategies. Request 10 for documents regarding the July 2018 and May 2020 transactions between Diversified and EQT, transactions which had Mr. McMahon's attention, would be another scavenger hunt through file cabinets and boxes and computer files in addition to and however an email search is arranged.

Mr. McMahon readily acknowledges that Diversified did not know of his work in conceiving the lawsuit, assisting in drafting the complaint, working on named plaintiff selection and so on.[3] And he appreciates that Diversified has agreed with the Plaintiff's counsel to take no further action regarding subpoena requests 5, 6, 7, 8, and 12. Diversified's Response, Ex. 16. But there is at least one surface owner's document that may implicate an attorney-client relationship that would also be caught up in subpoena request 9. More though might come up with others. And request 11 seeks "Documents and communications regarding any of the Plaintiffs in the

---

[3] None of this under the circumstances requires the retention agreement Diversified referred to and discusses in footnote 6 of its response. Mr. McMahon stands by his interpretation of *L&G Investments, Inc. et al., vs Antero Resources Corporation et al.,* West Virginia Supreme Court of

above-captioned matter . . . " Even assuming the request is talking about only named plaintiffs, there could hardly be a more obvious request for a breach of attorney-client privilege.

## CONCLUSION

The Northern District Court has jurisdiction to rule on Mr. McMahon's objections and motion to quash. The primary source of facts relating to the claims in this case are not only in the public records, they are in the possession of the Defendants and were placed in the public record by the Defendants. In addition, any facts within Mr. McMahon's knowledge are privileged as attorney-client or attorney work product, or (as set out more fully in his initial filing) are not discoverable as non-testifying expert material. Mr. McMahon's factual knowledge, and the factual knowledge he lent to the report in question, nor the facts that such facts might lead to, cannot be justified as proportional to the needs of the case, and the burden of compliance outweighs any likely benefit to Diversified's counsel, and risks adverse effects on his unrelated advocacy.

For the foregoing reasons, the Court Should grant the Motion to Quash.

Respectfully submitted,

/s/ *John F. McCuskey*
John F. McCuskey (WV Bar #2431)
**SHUMAN McCUSKEY SLICER PLLC**
1411 Virginia Street East, Suite 200 (25301)
Post Office Box 3953
Charleston, West Virginia 25339
Telephone: (304) 345-1400
Facsimile: (304) 343-1826

---

Appeals No. 21-0613, April 24, 2023, which he cited in his first pleading that no such agreement is required for the privileges to attach.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING DIVISION

MARK MCEVOY, *et al.*,

    Plaintiffs,

v.

DIVERSIFIED ENERGY COMPANY PLC, *et al.*,

    Defendants.

Civil Action No. 5:22-cv-00171-JPB
Judge John P. Bailey
Magistrate Judge James P. Mazzone

### CERTIFICATE OF SERVICE

I, John F. McCuskey, hereby certify that on this 26th day of June, 2023, a copy of the foregoing "**REPLY OF DAVID MCMAHON, TO DIVERSIFIED'S RESPONSE IN OPPOSITION TO DAVID MCMAHON'S OBJECTIONS TO AND MOTION TO QUASH SUBPOENA, OR IN THE ALTERNATIVE, A PROTECTIVE ORDER, WHICH SUBPOENA WAS SERVED ON HIM BY DEFENDANT DIVERSIFIED, AND HIS CONSENT AND MOTION FOR RULING IN NORTHERN DISTRICT**" was served on all counsel of record via the Court's electronic filing system.

    */s/ John F. McCuskey*
    John F. McCuskey (WV Bar #2431)
    **SHUMAN McCUSKEY SLICER PLLC**
    1411 Virginia Street East, Suite 200 (25301)
    Post Office Box 3953
    Charleston, West Virginia 25339
    Telephone: (304) 345-1400
    Facsimile: (304) 343-1826