**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

MARK MCEVOY, *et al.*,

             Plaintiffs,

v.

DIVERSIFIED ENERGY COMPANY PLC,
*et al.*,

             Defendants.

Civil Action No. 5:22-cv-00171-JPB
Judge John P. Bailey

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

---

## <u>CONTENTS</u>

INTRODUCTION.................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.   West Virginia operates a comprehensive system for regulating oil and gas wells. ......... 3

II.  The Office of Oil and Gas required Diversified to post bonds to secure any
     plugging obligations according to an agreed schedule..................................................... 7

III. Plaintiffs file suit seeking equitable relief at odds with West Virginia's
     regulatory scheme and the Office of Oil and Gas's Consent Order. ............................... 8

LEGAL STANDARD .......................................................................................................... 9

ARGUMENT ...................................................................................................................... 11

I.   The Court should dismiss Plaintiffs' requests to order Defendants to contribute
     money to funds administered by a federally appointed receiver. ................................... 11

II.  *Burford* precludes the Court from adjudicating the fraudulent and voidable
     transfer claims. .............................................................................................................. 16

CONCLUSION ................................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

*Adams v. Bain*,
    697 F.2d 1213 (4th Cir. 1982) .................................................................. 9

*AGI Assocs., LLC v. City of Hickory*,
    773 F.3d 576 (4th Cir. 2014) .................................................................. 9

*Browning-Ferris, Inc. v. Baltimore County, Md.*,
    774 F.2d 77 (4th Cir. 1985) .................................................................. 14

*Burford v. Sun Oil Co.*,
    319 U.S. 35 (1943) .................................................................. 9

*Burford v. Sun Oil Co.*, 319 U.S. 35 (1943) .................................................... 3, 9, 16

*Burgess v. Corp. of Shepherdstown*,
    2012 WL 664495 (N.D. W.Va. Feb. 28, 2012) ................................... 14

*Confer v. EXCO Res., L.L.C.*,
    2013 WL 12203016 (M.D. Penn. Nov. 19, 2013) ............................... 15

*Gray v. Bush*,
    628 F.3d 779 (6th Cir. 2010) ................................................................ 13

*High Peak Partners, LLC v. Bd. of Supervisors of Prince George Cnty.*,
    2008 WL 1733605 (E.D. Va. Apr. 14, 2008) .................................... 9

*Jamison v. Longview Power, LLC*,
    493 F. Supp. 2d 786 (N.D. W.Va. 2007) .......................................... 9, 15

*Johnson v. Collins Entertainment Co., Inc.*,
    199 F.3d 710 (4th Cir. 1999) ............................................................... 10

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009) ................................................................ 9

*Lackawanna Transport Co. v. Public Service Com'n of West Va.*,
    2010 WL 1067409 (N.D. W.Va. Mar. 16, 2010) ............................... 15

*LCS Servs., Inc. v. Hamrick*,
    1991 WL 255852 (4th Cir. 1991) ........................................................ 14

*M.D. v. Perry*,
    799 F. Supp. 2d 712 (S.D. Tex. 2011) ................................................ 9

*Martin v. Stewart*,
    499 F.3d 360 (4th Cir. 2007) ............................................................... 10

*McGee v. Cole*,
    993 F. Supp. 2d 649 (S.D. W. Va. 2014) .......................................... 10

*MLC Automotive, LLC v. Town of Southern Pines*,
    532 F.3d 269 (4th Cir. 2008) ............................................................... 14

*Natural Resources Defense Council, Inc. v. BP Products North America, Inc.*,
  2009 WL 1854527 (N.D. Ind. June 26, 2009) .......................................................... 15

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*,
  491 U.S. 350 (1989) ........................................................................................... 10, 13

*North Michigan Land & Oil Corp. v. Consumers Power Co.*,
  1994 WL 463994 (6th Cir. Aug. 26, 1994) ............................................................. 15

*Palumbo v. Waste Tech. Indus.*,
  989 F.2d 156 (4th Cir. 1993) .................................................................................. 14

*Parker v. Jackson County Com'n*,
  2011 WL 1229960 (S.D. W.Va. Mar. 31, 2011) ...................................................... 14

*Pennzoil Co. v. Texaco, Inc.*,
  481 U.S. 1 (1987) .................................................................................................... 10

*Pomponio v. Fauquier County Bd. of Supervisors*,
  21 F.3d 1319 (4th Cir. 1994) .................................................................................. 14

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) .............................................................................................. 9, 16

*SE Property Holdings, LLC v. Center*,
  2017 WL 3403793 (S.D. Ala. Aug. 8, 2017) ........................................................... 13

*Sugarloaf Citizens Ass'n v. Montgomery County, Md.*,
  1994 WL 447442 (4th Cir. 1994) ........................................................................... 14

*U.S. ex rel. Rahman v. Oncology Associates*,
  198 F.3d 489 (4th Cir. 1999) .................................................................................. 16

*Washington Gas Light Co. v. Prince George's County Council*,
  711 F.3d 412 (4th Cir. 2013) .................................................................................. 14

**STATUTES**

W. Va. Code § 22-10-10 ................................................................................................ 6
W. Va. Code § 22-10-2 .................................................................................................. 4
W. Va. Code § 22-10-4 .............................................................................................. 4, 11
W. Va. Code § 22-10-5 .............................................................................................. 4, 11
W. Va. Code § 22-10-7 .................................................................................................. 5
W. Va. Code § 22-10-8 .................................................................................................. 6
W. Va. Code § 22-10-9 .............................................................................................. 6, 11
W. Va. Code § 22-1-1 .................................................................................................... 3
W. Va. Code § 22-1-1 .................................................................................................. 11
W. Va. Code § 22-1-6 ................................................................................................. 4, 7
W. Va. Code § 22-1-7 .................................................................................................... 4
W. Va. Code § 22-1-9 .................................................................................................... 4
W. Va. Code § 22-6-11 .................................................................................................. 5
W. Va. Code § 22-6-19 ............................................................................................... 5, 7
W. Va. Code § 22-6-2 .................................................................................................... 4
W. Va. Code § 22-6-23 .................................................................................................. 5

W. Va. Code § 22-6-23 ................................................................................. 11
W. Va. Code § 22-6-24 ............................................................................. 5, 11
W. Va. Code § 22-6-26 ......................................................................... 5, 6, 11
W. Va. Code § 22-6-28 ............................................................................. 5, 6
W. Va. Code § 22-6-29 ................................................................................. 5
W. Va. Code § 22-6-29a ............................................................................... 5
W. Va. Code § 22-6-34 ................................................................................. 6
W. Va. Code § 22-6-6 .......................................................................... 4, 5, 11
W. Va. Code § 22B-1-7 ................................................................................ 4
W. Va. Code § 29A-5-4 ................................................................................ 6

**RULES**
Fed. R. Civ. P. 12 .................................................................................... 3, 9

## INTRODUCTION

Plaintiffs have now filed their fourth complaint, the Third Amended Complaint.  In the Third Amended Complaint, Plaintiffs dismissed their nuisance claim and narrowed their tort claims.  They allege that West Virginia Code § 22-6-19 requires Diversified to promptly plug any well that has not produced oil or gas for 12 twelve consecutive months, as well as continue to assert fraudulent conveyance claims.  In the latest amendment, Plaintiffs also narrowed their requested relief to damages to plug the respective wells, reclaim the well site, remove any equipment, and perform any necessary remediation.  Plaintiffs disclaim any damages for nuisance, reduced property value, lost use of property, medical damages, business damages, methane leakage, or aggravation.  Compl. (ECF No. 322) ¶ 3.  Simply put, Plaintiffs allege that they can enforce statutory duties to plug that are expressly supervised by the West Virginia Department of Environmental Protection.

Dissatisfied with how West Virginia's regulators are doing their jobs, Plaintiffs specifically seek to "[c]reate a fund from the damages awarded from EQT [and] Diversified," administered by a federal court-appointed receiver, "to be used to plug and otherwise decommission Class Members' wells."  Compl. (ECF No. 322) at 5, 63–64.  "Those funds will be made available to cover plugging costs now . . . and in the future (for those with 'contingent' claims whose wells will over time require plugging)," *id.*, meaning that this new federally administered funding regime, along with the court-appointed receiver's administration of it, will last decades.  Yet, because the Court denied the Rule 19 motion, West Virginia's Department of Environmental Protection will be faced with the constitutionally impermissible choice of being altogether excluded from this Court's proceedings related to the trust or trying to intervene in those proceedings despite the DEP's Eleventh Amendment right to stay out of federal court.  Effectively, Plaintiffs want the Court to act as a substitute for the State's environmental regulator in all but

name by directing a democratically unaccountable third-party receiver on how to use hundreds of millions of dollars, held in federally created trusts of the Court's own making instead of the bonds due to the State, for plugging natural gas wells.

This proposed remedy exemplifies how Plaintiffs hope the Court will rewrite the requirements to do business in West Virginia, including West Virginia's pervasive regulatory scheme for plugging and decommissioning oil and gas wells.  That regulatory scheme, administered by agencies accountable to the Governor, already imposes bonding requirements on well operators, establishes a special reclamation fund for plugging abandoned natural gas wells, empowers the regulator to decide which wells will be plugged and on what schedule, and allows the State to direct where bond funds should be spent.  And DEP's supervision of Diversified certainly works.  Since 2019, Diversified has restarted at least 379 wells and plugged at least 148 wells pursuant to the Consent Order between the DEP and Diversified.  *See* 2019 Report (ECF No. 182-4); 2020 Report (ECF No. 182-5); 2021 Report (ECF No. 182-6); 2022 Report (ECF No. 182-7).  In fact, public records show some of Plaintiffs' wells have returned to production since their transfer to Diversified.  *See* Reply in Support of Motion for Judgment on the Pleadings (ECF No. 300) at 7-8; Johnson Permit Report (ECF No. 300-2); Medley Permit Report ECF No. 300-3; Silvester Permit Report (ECF No. 300-4); Trust Permit Report (ECF No. 300-5); Trust Second Permit Report (ECF No. 300-6).  This success notwithstanding, Plaintiffs seek to have a federal court usurp DEP's role under the guise of exercising its equitable powers in a case based on diversity jurisdiction.

Granting Plaintiffs' equitable relief would disrupt other regulatory requirements of West Virginia's plugging regime as well.  In addition to a bonding and reclamation program, the State regulatory scheme provides detailed requirements for noticing and performing plugging

operations, and subjects well operators to penalties for failing to abide by them. Plaintiffs' parallel fund would not.

In short, Plaintiffs' requested remedies go far beyond the line that the Constitution draws for Article III courts. Granting it would be tantamount to the federal government seizing control of West Virginia's bonding program, undermining West Virginia's sovereignty and the Tenth Amendment. West Virginia's democratically elected institutions have already put in place a system that addresses the same objectives sought through Plaintiffs' requested equitable relief. West Virginia has not asked for, and does not need, Plaintiffs' counsel to deputize themselves or the federal government to administer these regulations. Basic principles of federalism and comity, enshrined in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and its progeny, require a federal court to abstain from using its equitable powers to disrupt these kinds of comprehensive state administrative systems, especially where, as here, local land use is implicated. Defendants respectfully request that the Court dismiss Plaintiffs' claims for equitable relief pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## **BACKGROUND**

## I.    **West Virginia operates a comprehensive system for regulating oil and gas wells.**

In 1991, recognizing the State has "primary responsibility for protecting the environment," and that this goal would "best be accomplished by an integrated and interdisciplinary approach," West Virginia established the Department of Environmental Protection ("DEP"). *See* W. Va. Code § 22-1-1(a)(2), (4).

DEP's mandate was to provide a "comprehensive program" balancing important and competing State interests, including "[r]estoring and protecting the environment," "protect[ing] human health and safety," "prevent[ing] injury to plant, animal and aquatic life," and "promot[ing] economic development." *Id.* § 22-1-1(a)(1)-(5), 22-1-1(b)(3). To that end, West Virginia invested

DEP with wide-ranging authority to propose legislative rules; issue permits; conduct surveys and investigations; enforce its rules and regulations, including by serving and executing warrants and making arrests; issue orders, including consent agreements; and conduct hearings and appeals. *See generally id.* § 22-1-6. The State also equipped DEP with an Environmental Protection Advisory Council to advise on program and policy development, *id.* § 22-1-9; separate divisions to oversee mine lands, mining, air quality, oil and gas, and water and waste management, *id.* § 22-1-7; and appellate boards to review orders, permits, or official actions of these divisions, *id.* § 22B-1-7.

The Office of Oil and Gas ("OOG") is the division of DEP charged with "enforcement of matters related to oil and gas" under Chapter 22 of the West Virginia Code. *Id.* § 22-6-2(a).

Among other things, the Office of Oil and Gas administers detailed and extensive regulations concerning drilling and reclamation operations, including the plugging operations at issue in this case. These regulations are comprehensive and reflect the State's concern that sufficient financial resources be available to plug any abandoned wells. *See* W. Va. Code § 22-10-2(a)(4) (legislative finding that "[r]equirements for financial responsibility to assure plugging of abandoned wells have not been required in this state for older wells, and adequate financial responsibility should be established with respect to all wells"). To address the concern of orphaned wells, the regulations require well operators to post sufficient bond or otherwise demonstrate "financial responsibility" before taking on the obligation to plug an abandoned well. W. Va. Code §§ 22-6-6(b) (application for well work permit requires bond), 22-6-23 (requiring bond for plugging well), 22-6-26(a) (same), 22-10-4, 22-10-5 (requiring demonstration of financial responsibility for plugging wells). The regulations further provide that any well operators who fail to satisfy their plugging obligations shall forfeit performance bonds they posted for such obligations, with the forfeited funds to be "deposited in the Treasury of the State of West Virginia

in the special reclamation fund".  W. Va. Code § 22-6-26(i), (k).  The OOG must then use these funds to "plug and reclaim abandoned oil and gas wells without a responsible operator," W. Va. Code §§ 22-6-29(b), 22-6-29a(b)(1)-(2), and can recover the amount thereof from the well operator and re-deposit such amount into the reclamation fund.  W. Va. Code § 22-10-7(f).

This state bonding scheme does not exist in a vacuum.  It is part of a broader web of detailed state regulations governing every facet of plugging operations in the State.  Those regulations provide, *inter alia*:

- *Duty*: Well operators must plug "[a]ny well which is completed as a dry hole or which is not in use for a period of twelve consecutive months . . . unless the operator[s] furnish[] satisfactory proof to the director [of OOG] that there is a bona fide future use for such well."  W. Va. Code § 22-6-19.

- *Permit*: Well operators must obtain a permit before commencing any work to plug an abandoned well. W. Va. Code § 22-6-6.  An application for such permit must include "(i) specifications in accordance with the data requirements of [W. Va. Code § 22-6-23], (ii) a copy of all logs in the operator's possession as the director [of OOG] may require, and (iii) a work order showing in detail the proposed manner of plugging or unplugging the well".  W. Va. Code § 22-6-11(c)(10).  The director of OOG must review any public comments on or objections to the permit application. W. Va. Code § 22-6-11.

- *Notice*: Well operators must provide five days' notice "of [their] intention to plug and abandon any such well . . . giving the number of the well and its location and fixing the time at which the work of plugging and filling will be commenced".  W. Va. Code § 22-6-23.

- *Plugging*: Well operators must plug and fill any abandoned wells according to specific statutory guidelines.  W. Va. Code § 22-6-24(a) (guidelines for plugging wells not penetrating workable coal beds), (b)-(d) (guidelines for plugging wells penetrating one or more workable coal beds).

- *Supervision*: The Director of OOG must supervise any plugging and reclamation efforts.  W. Va. Code § 22-6-28.

- *Affidavits*: "[T]wo experienced persons who participated in the [plugging] work" must complete an affidavit setting forth "the time and manner in which the well was plugged and filled and the land reclaimed".  W. Va. Code § 22-6-23.

- ***Complaints***: The Director of OOG must allow "any aggrieved person to file . . . a formal complaint charging any well operator with not . . . plugging or filling . . . any well in accordance" with these regulations.  W. Va. Code § 22-6-28.

- ***Hearing and Orders***: The Director of OOG must conduct "a full hearing" on any such complaints, and "make findings of fact and enter such order[s] as in the director's judgment is just and right and necessary to secure the proper administration of this article".  Such orders could include "restraining the well operator from continuing to drill or case any well or from further plugging, filling or reclaiming the same".  W. Va. Code § 22-6-28.

To the extent any of these requirements are violated, or a well operator damages property during such plugging operations, the State has also provided a comprehensive range of remedies and penalties, including:

- ***Arbitration***: If the operator and surface owner "are unable to agree as to the adequacy of the repairs performed or the amount of compensation to which the surface owner may be entitled, either party upon written notice to the other may elect to have such issue finally determined by binding arbitration".  W. Va. Code § 22-10-8(a).

- ***Judicial Review***: "Any person having an interest which is or may be adversely affected, who is aggrieved by an order of the director issued pursuant to this article [relating to plugging abandoned wells], or by the issuance or denial of a permit pursuant to this article or by the permit's terms or conditions, is entitled to judicial review thereof." W. Va. Code § 22-10-10.  These proceedings "shall be instituted by filing a petition . . . in either the Circuit Court of Kanawha County, West Virginia, or in the circuit court of the county in which the petitioner or any one of the petitioner resides or does business, within 30 days after the date upon which such party received notice of the final order or decision of the agency." W. Va. Code § 29A-5-4(b).

- ***Civil Penalties:*** "Any person who fails to plug an abandoned well" within the period "ordered by the director [of OOG]" is subject to civil penalties.  W. Va. Code § 22-10-9.

- ***Criminal Penalties:*** "Any person . . . . willfully violating any of the provisions . . . prescrib[ing] the manner of . . . plugging and filling any well" is subject to a misdemeanor charge.  W. Va. Code § 22-6-34.

- ***Performance Bond Forfeiture***: Well operators who fail to satisfy their plugging requirements will forfeit the performance bonds they posted for any permitted activities on the relevant gas wells.  W. Va. Code § 22-6-26

II.     **The Office of Oil and Gas required Diversified to post bonds to secure any plugging obligations according to an agreed schedule.**

In 2018 and 2020, through two separate transactions, Diversified acquired approximately 12,000 wells from EQT.  *See* Compl. (ECF No. 322) ¶¶ 42-43.  Pursuant to its state statutory authority, the Office of Oil and Gas entered a consent order with Diversified that covers the wells at issue in this case.  *See* Consent Order (ECF No. 105-1); W. Va. Code § 22-1-6(d)(3).  In that consent order, the Office of Oil and Gas specifically found it to be "in the best interests of the state and its citizens that [Diversified's] wells be identified and that where a bona fide future use exists, wells should be placed back into production . . . ."  *See* Consent Order (ECF No. 105-1) § II ¶ 10. The Office of Oil and Gas also found "that Diversified requires sufficient time to identify those wells . . . and [to] further assess the viability of those wells and identify those wells which have the capacity for a bona fide future use and bring such wells back into production or which require plugging . . . ."  *Id*. § II ¶ 11.  Thus, the Office of Oil and Gas authorized Diversified to begin a systematic review of its wells and provide an annual report summarizing the wells that Diversified chooses to plug or bring back into production.  *See id*. § IV ¶ 5.  During this process, and unless it identifies and reports any wells as candidates for plugging,[1] West Virginia has not required Diversified to plug more than a specified number of wells per year.  *Id.*  This is because the wells have capacity for bona fide future use, and under West Virginia law, are not subject to plugging requirements.  W. Va. Code § 22-6-19 (no duty to plug if OOG decides "that there is a bona fide future use").

While this review process is underway, and to secure its obligations to OOG and Plaintiff landowners, Diversified submitted a $3 million bond to West Virginia, as required by OOG.  *See*

---

[1]    To the extent Diversified ***does*** identify certain wells as plugging candidates in its reports to OOG, the consent order establishes a schedule by which Diversified must plug such wells.  *See* Consent Order (ECF No. 105-1) § IV ¶ 5(b).

Consent Order (ECF No. 105-1) § IV ¶ 5.  Diversified will forfeit that bond to the extent OOG determines Diversified "is in substantial noncompliance with the terms and conditions" of the consent order.  *Id.*

At no point following the entry of OOG's consent order or prior to their lawsuit did Plaintiffs avail themselves of the existing state regulatory remedies by filing a complaint objecting to Diversified's plugging schedule, Defendants' alleged failure to plug abandoned wells on their properties, and/or the sufficiency of Diversified's bond.  *See* W. Va. Code § 22-6-28 (permitting "any aggrieved person to file . . . a formal complaint charging any well operator with not . . . plugging or filling . . . any well in accordance" with the relevant regulations).  Plaintiffs instead seek to subvert the comprehensive state regulatory program and demand the Court now impose stricter requirements than the State.

## III.   Plaintiffs file suit seeking equitable relief at odds with West Virginia's regulatory scheme and the Office of Oil and Gas's Consent Order.

On June 16, 2023, Plaintiffs filed their Third Amended Class Action Complaint ("Complaint").  Plaintiffs' Complaint alleges that, despite OOG's finding that it is not currently in the best interests of West Virginians for Diversified to plug wells that may yet produce in paying quantities, Diversified has a duty to plug the wells that it bought from EQT, and Diversified's failure to do so constitutes trespass and negligence.  Compl. (ECF No. 322) ¶¶ 16, 103-104, 487-500.  Plaintiffs then go one step further and speculate that, decades from now, Diversified may fail to meet its plugging obligation for currently producing wells.  *Id.* ¶¶ 14, 234, 277, 394-395.  Believing the bond required by West Virginia to secure Diversified's obligations to be inadequate, Plaintiffs seek to create and impose their own parallel bonding scheme.

## **LEGAL STANDARD**

Courts evaluate motions to dismiss under federal abstention doctrines, including the doctrine set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and its progeny, pursuant to Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Jamison v. Longview Power, LLC*, 493 F. Supp. 2d 786, 792 (N.D.W. Va. 2007) (granting Rule 12(b)(1) motion to dismiss based on *Burford*); *High Peak Partners, LLC v. Bd. of Supervisors of Prince George Cnty.*, 2008 WL 1733605, at *6 (E.D. Va. Apr. 14, 2008) (same); *M.D. v. Perry*, 799 F. Supp. 2d 712, 715 n.3 (S.D. Tex. 2011) ("[c]ourts also favor Rule 12(b)(1) when evaluating *Burford* abstention" pursuant to a motion to dismiss) (citations omitted).[2]

*Burford* abstention exists to preserve federalism values and prevent federal courts from improperly interfering in state regulatory decisions. *See Burford*, 319 U.S. at 332 ("[Q]uestions of regulation of the industry by the state administrative agency . . . so clearly involve[] basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them."). There is no "formulaic test" for *Burford* abstention, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727 (1996), but the Supreme Court has made clear

---

[2]    Defendants may challenge subject matter jurisdiction facially or factually, and here, they do both, although the difference is presently academic because the material facts appear to be undisputed. In a facial challenge, a defendant argues "'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citations omitted). In response to a facial challenge, "'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration,'" where the alleged facts are taken as true. *Id.* (citations omitted). In a factual challenge, by contrast, the defendant contends "'that the jurisdictional allegations of the complaint [are] not true'" and the court "'may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations,' without converting the motion to a summary judgment proceeding." *Id.* (citations omitted). When considering a factual attack on subject matter jurisdiction, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* Plaintiffs shoulder the burden of proving subject matter jurisdiction in response to a motion to dismiss as the parties asserting jurisdiction. *See, e.g.*, *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *AGI Assocs., LLC v. City of Hickory, NC,* 773 F.3d 576, 578 (4th Cir. 2014).

the standard focuses on whether a comprehensive state policy would be impacted by the requested relief:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) ("NOPSI").

Though "[a]bstention doctrines constitute 'extraordinary and narrow exception[s]' to a federal court's duty to exercise the jurisdiction conferred on it," *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007), courts should nevertheless abstain from hearing a case "[i]f either one of these two [*Burford*] prongs is met . . . ." *McGee v. Cole*, 993 F. Supp. 2d 639, 644 (S.D.W. Va. 2014). "Like other abstention doctrines, *Burford* abstention is 'not [a] rigid pigeonhole[] into which federal courts must try to fit cases.'" *Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710, 728 (4th Cir. 1999) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)) (alterations in original). "Rather, it 'reflect[s] a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes.'" *Id.* (alterations in original). "These considerations counsel abstention especially where, as here, state actors are charged with resolving state law issues that intimately affect state regulation of a core state concern." *Id.* at 729. Where *Burford* abstention is appropriate, and the relief being sought is equitable or otherwise discretionary, federal courts should dismiss claims for such relief. *Id.* at 719.

10

## ARGUMENT

I.   **THE COURT SHOULD DISMISS PLAINTIFFS' REQUESTS TO ORDER DEFENDANTS TO CONTRIBUTE MONEY TO FUNDS ADMINISTERED BY A FEDERALLY APPOINTED RECEIVER.**

The Court should dismiss Plaintiffs' claims for equitable relief under *Burford* because such relief would disrupt West Virginia's comprehensive plugging, bonding, and decommissioning policies.  West Virginia has created a "comprehensive program for the conservation, protection, exploration, development, enjoyment and use of the natural resources" of the State.  *See* W. Va. Code § 22-1-1(b)(3).  This program, codified in Chapter 22 of the West Virginia Code, reflects the balance that West Virginia's democratically elected institutions ultimately struck between the varied and competing aims of environmental regulation, including "promot[ing] economic development" while also "[r]estoring and protecting the environment," "protect[ing] human health and safety," "prevent[ing] injury to plant, animal and aquatic life," and "improv[ing] and maintain[ining] the quality of life of [West Virginia] citizens".  *Id*. § 22-1-1(a)(1), (5).

In striking the delicate balance between making West Virginia an attractive place to do business and protecting the environment, the State set forth extensive and detailed policies governing drilling and reclamation of natural gas wells, including the plugging operations at issue here.  These policies require that, before well operators undertake any such operations, they apply for and obtain a permit and post sufficient bond or otherwise demonstrate financial responsibility for plugging abandoned wells.  W. Va. Code §§ 22-6-6 (permit), 22-6-23 (bond), 22-10-4, 22-10-5 (financial responsibility).  The policies further require operators to perform any plugging operations in accordance with detailed statutory guidelines.  *Id*. § 22-6-24.  To the extent an operator fails to plug an abandoned well in accordance with these policies, such operator forfeits any bonds posted for the work and is subject to penalties.  W. Va. Code §§ 22-6-26(i), (k) (forfeiture), 22-6-34 (criminal penalties), 22-10-9 (civil penalties).  The forfeited bonds must then

be deposited into a special reclamation fund for plugging and reclaiming abandoned wells.  *Id*. §
22-6-29(b).  West Virginia has specifically charged OOG with determining how to use money
from this fund, including how to prioritize wells for plugging, and whether other expenses, such
as engineering, administrative, or research costs, may be necessary.  *Id*. §§ 22-6-29(b), 22-10-6
(OOG "shall promulgate legislative rules establishing a priority system by which available funds
from the [special reclamation fund] will be expended to plug abandoned wells").

Plaintiffs' requests for equitable relief, including the request to establish a court-
administered fund, are inconsistent with and would disrupt these important State policies.  In
asking the Court to create special funds comprised of hundreds of millions of dollars earmarked to
plug wells that will not stop producing for decades, *see* Compl. (ECF No. 322) at 63, Plaintiffs
would supplant West Virginia's system for securing the plugging of producing wells.  Likewise,
in seeking appointment of a receiver, answerable only to this Court, to administer all the funds
earmarked for plugging Diversified's wells, *id*. at 64, Plaintiffs would have the Court, and a third-
party receiver appointed by the Court and/or Plaintiffs' counsel, rather than DEP, decide which
wells are plugged, when and the order in which such wells are plugged, and how much money
should be spent to plug them.  Because of the Court's Rule 19 ruling and the Eleventh Amendment,
DEP will be excluded from those decisions.

Plaintiffs ask, in other words, that the Court disregard the bonding and reclamation program
that West Virginia carefully fashioned, and OOG already administers, for plugging natural gas
wells, including the wells at issue here.  The people of West Virginia, as reflected in the decisions
of their elected legislators, have already decided that the best way to secure the plugging of wells
is a bond that is owed to and administered by OOG.  Those legislators had every opportunity to go
further by requiring anyone who operates wells in West Virginia to pre-deposit money into a

12

fund—the relief requested by Plaintiffs here—but they did not.  Plaintiffs would nonetheless have the Court use its general equitable powers to unilaterally, without input from the regulatory agency that oversees natural gas wells and without input from the democratically elected legislature, create a parallel bonding scheme, which Plaintiffs value at hundreds of millions of dollars, and install a third-party federal receiver, unaccountable to the State or its citizens, to oversee and administer these funds.  In so doing, this federal receiver (and the Court by extension) would step into the shoes currently occupied only by OOG, the State's appointed and well-informed decisionmaker on plugging operations, and plug wells that the receiver, in its discretion, and without regard for the interests of royalty owners or any determination by OOG as to bona fide future uses, believes to be abandoned.

This is a naked intrusion on State sovereignty and basic principles of comity, and precisely the type of equitable relief[3] that federal courts cannot grant under *Burford* and its progeny.  Any attempt by this Court to replace the State's environmental regulator would not only "disrupt West Virginia's efforts to establish a coherent [plugging and decommissioning] policy," *see NOPSI*, 491 U.S. at 361, but could also subject well operators to inconsistent obligations, extinguish bargained-for interests of nonparty royalty owners, and increase the cost of (and discourage others from) doing business in West Virginia.

Indeed, it is for these reasons that the Fourth Circuit has repeatedly directed district courts to abstain from exercising federal jurisdiction where, as here, such exercise would interfere with local land use policies or agency permitting decisions.  *See, e.g.*, *Washington Gas Light Co. v.*

---

[3]   *See, e.g.*, *SE Property Holdings, LLC v. Center*, 2017 WL 3403793, at *35 (S.D. Ala. Aug. 8, 2017) ("The [Alabama Uniform Fraudulent Transfer Act] confers upon this Court broad authority to fashion equitable remedies, including . . . [a]ppointment of a receiver . . . ."); *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010) ("No doubt, Gray asked the court to impose a constructive trust over the funds disbursed under the Michigan court settlement and to enjoin further transfer of the funds, both of which amount to equitable forms of relief that the court could have denied altogether [under *Burford*].").

*Prince George's County Council*, 711 F.3d 412, 419 (4th Cir. 2013) ("Washington Gas's mandatory referral claim turns entirely on the construction of state or local land use law. In these circumstances, precedent dictates that *Buford* abstention is appropriate."); *MLC Automotive, LLC v. Town of Southern Pines*, 532 F.3d 269, 284 (4th Cir. 2008) (abstaining under *Burford* because the case involved "difficult issues of state land use policy" which are "the peculiar concern of local and state governments"); *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir. 1994) ("[C]ases involving *questions of state and local land use and zoning law are a classic example* of situations" where *Burford* should apply) (emphasis added); *Sugarloaf Citizens Ass'n v. Montgomery County, Md.*, 1994 WL 447442, at *3-7 (4th Cir. 1994) (*Burford* abstention appropriate because "*[t]he exercise of federal jurisdiction over [Maryland's] permitting decisions would disrupt [its] complex statutory scheme and frustrate the State's effort to establish a coherent environmental policy*" in the area of state and local land use) (emphasis added); *Palumbo v. Waste Tech. Indus.*, 989 F.2d 156, 159-60 (4th Cir. 1993) (*Burford* abstention appropriate because the court would otherwise be interfering in Ohio's "complicated environmental law scheme"); *Browning-Ferris, Inc. v. Baltimore County, Md.*, 774 F.2d 77, 79 (4th Cir. 1985) ("[L]and use questions, especially those that involve the regulation of trash dumps, are the peculiar concern of local and state governments, and *traditionally, federal courts have not interfered with state courts in the area of land use policy*.") (emphasis added); *LCS Servs., Inc. v. Hamrick*, 1991 WL 255852, at *3 (4th Cir. 1991) (same).

The decisions of this and other courts are in accord. *Burgess v. Corp. of Shepherdstown*, 2012 WL 664495, at *3 (N.D.W. Va. Feb. 28, 2012) (abstaining under *Burford* because the case involved questions of state land use and zoning law); *Parker v. Jackson County Com'n*, 2011 WL 1229960, at *3-4 (S.D.W. Va. Mar. 31, 2011) (same); *Lackawanna Transport Co. v. Public Service*

*Com'n of West Va.*, 2010 WL 1067409, at *7 (N.D.W. Va. Mar. 16, 2010) (same); *Natural Resources Defense Council, Inc. v. BP Products North America, Inc.*, 2009 WL 1854527, at *9–11 (N.D. Ind. June 26, 2009) (declining to disrupt Indiana's administrative system for environmental regulations by "second-guessing" a state agency's "expert application of Indiana law with respect to BP's permit request"); *Jamison,*493 F. Supp. 2d at,790-91 ("Although the plaintiffs strive to characterize their claim as one arising under the citizen suit provision of the CAA, their claim is actually a collateral attack on a state agency decision made under state regulatory law . . . To find that Longview's permit is invalid, the Court would necessarily have to conclude that the [Division of Air Quality's] permitting decision . . . was incorrect.") (abstaining under *Burford*); *North Michigan Land & Oil Corp. v. Consumers Power Co.*, 1994 WL 463994, at *3 (6th Cir. Aug. 26, 1994) (district court did not err in dismissing under *Burford* because "[t]he production and sale of natural gas is extensively regulated by the State of Michigan, and the administration of these regulations is centralized in the [Michigan Public Service Commission].").

*Confer v. EXCO Res., L.L.C.*, 2013 WL 12203016 (M.D. Penn. Nov. 19, 2013) is illustrative.   In that case, plaintiff landowners "allege[d] that EXCO failed to plug the three [abandoned] wells on their property," and requested "that this federal Court [for the Middle District of Pennsylvania] order EXCO to plug and abandon gas wells on their Property." *Id*. at *1.   But as in this case, state law had charged the local department of environmental protection with authority over plugging operations, and the court thus found that plaintiffs' claims "implicate[d] technical and policy considerations . . . since such issues are clearly within the DEP's administrative decision making authority." *Id*. at 7.   For that reason, the court granted defendant's motion to dismiss pursuant to Rule 12(b)(6), and further observed that "abstention under the *Burford [v. Sun Oil Co.*, 319 U.S. 315 (1943)] doctrine is appropriate in our case." *Id*. at *7, n.4.

15

The result here should be no different.  Because Plaintiffs' requested equitable relief would conflict with and disrupt West Virginia's complex regulatory scheme governing reclamation of oil and gas wells by setting up a parallel bonding scheme, this Court should dismiss such requests under *Burford*.

## II. *BURFORD* PRECLUDES THE COURT FROM ADJUDICATING THE FRAUDULENT AND VOIDABLE TRANSFER CLAIMS.

Plaintiffs' fraudulent and voidable transfer claims are premised on the claims against Diversified for trespass and negligence, which are what allegedly make Plaintiffs creditors of Diversified.  *See* Compl. (ECF No. 322) ¶¶ 502, 515.  The relief sought by these fraudulent and voidable transfer claims is to "avoid" the transactions between Defendants.  *See* Compl. (ECF No. 322) at 63.  As such, those claims fall squarely within *Burford*.  *Burford* does not just apply to claims "in which a federal court is asked to provide some form of discretionary relief," but also to any claims that seek equitable relief.  *Quackenbush*, 517 U.S. at 711.  Fraudulent and voidable transfer claims that seek to avoid a transaction—which is the relief sought by Plaintiffs' fraudulent and voidable transfer claims here—are equitable in nature.  *E.g.*, *U.S. ex rel. Rahman v. Oncology Associates*, 198 F.3d 489, 497–98 (4th Cir. 1999) ("The complaint's request to void transfers as fraudulent—a form of rescission—is also an equitable remedy.").  Because the fraudulent and voidable transfer claims are tied to the trespass and negligence claims, the same considerations apply with full force.  These too should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court abstain from hearing and dismiss Plaintiffs' claims for equitable relief, including Plaintiffs' requests for constructive trusts and the appointment of a receiver, under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Respectfully submitted:

/s/ Howard Persinger, III
Howard Persinger, III (WVSB #6943)
**PERSINGER & PERSINGER, L.C.**
237 Capitol Street
Charleston, WV 25301
Phone:   (304) 346-9333
Fax:      (304) 346-9337
Email:    hmp3@persingerlaw.com

Dated: July 14, 2023

Daniel Donovan, P.C. (*pro hac vice*)
Ragan Naresh, P.C. (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone:   (202) 389-5267
Fax:      (202) 389-5200
Email:    daniel.donovan@kirkland.com
          ragan.naresh@kirkland.com

Kenneth Young (*pro hac vice*)
Dustin Womack (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone:   (713) 836-3600
Fax:      (713) 836-3601
Email:    kenneth.young@kirkland.com
          dustin.womack@kirkland.com

*Counsel for Defendants Diversified Energy Company PLC, Diversified Gas & Oil, PLC, Diversified Production LLC, Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC, and Alliance Petroleum Corporation*

/s/ Jennifer J. Hicks
Jennifer J. Hicks, Esquire (WVSB #11423)
Tiffany M. Arbaugh, Esquire (WVSB #9982)
**BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.**
300 Summers Street, Suite 1000
Charleston, WV 25301
Phone:   (681) 205-8888
Fax:      (681) 205-8814
Email:    jhicks@babstcalland.com
          tarbaugh@babstcalland.com

Anna Rotman, P.C. (*pro hac vice*)
Nick Brown (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone:   (713) 836-3600
Fax:      (713) 836-3601
Email:    anna.rotman@kirkland.com
          nick.brown@kirkland.com

Mark K. Dausch, Esquire (WVSB #11655)
**BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.**
603 Stanwix Street
Pittsburgh, PA 15222
Phone:   (412) 394-5655
Fax:      (412) 394-6579
Email:    mdausch@babst.calland.com

*Counsel for Defendants EQT Production Company, EQT Production HTW, LLC, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC, and EQT Corporation*

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 14, 2023, a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

*/s/ Howard Persinger, III*
Howard Persinger, III (WVSB #6943)
