UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

        Plaintiffs,

v.

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

        Defendants.

Civil Action No. 5:22-cv-171
The Honorable John P. Bailey

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION ON BEHALF OF CHESTER C. DODD, JR., KATHRYN M. HUNT, AND LINDA DODD FLUHARTY TO INTERVENE AS DEFENDANTS

Mineral owners Chester C. Dodd, Jr., Kathryn M. Hunt, and Linda Dodd Fluharty ("Mineral Owners") have moved to intervene as defendants in this action as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, by permission under Rule 24(b).[1] ECF No. 344. Because, as this Court already held in denying Defendants' Motion for Judgment on the Pleadings, Plaintiffs' action will not impair any interest of the Mineral Owners and any such interest is adequately represented by the existing Defendants, *see* ECF No. 303 at 12–16, Mineral Owners are not entitled to intervention as of right. Because Mineral Owners' untimely entry into this action would unnecessarily complicate and burden the litigation without providing any countervailing benefit, the Court should decline to grant permissive intervention. Mineral Owners' motion should thus be denied.

---

[1] The West Virginia Land & Mineral Owners Association (WVLMOA) moved to participate as *amicus curiae* in support of Mineral Owners' motion. ECF No. 247.

### I. Mineral Owners Are Not Entitled to Intervention of Right Under Rule 24(a)(2)

"The Fourth Circuit has held [that intervention under Rule] 24(a)(2) requires: (1) a timely motion to intervene; (2) the applicant has an interest in the subject matter of the action; (3) the protection of this interest would be impaired because of the action; and (4) the applicant's interest is not adequately represented by existing parties to the litigation." *Ohio Valley Env't Coal. v. McCarthy*, 313 F.R.D. 10, 17 (S.D.W. Va. 2015) (citing collected Fourth Circuit cases). As to the latter three factors, this Court's order denying Defendants' Motion for Judgment on the Pleadings for Failure to Join Required Parties, ECF No. 303, is dispositive.

Although Mineral Owners and the WVLMOA are aware of that order—indeed, they cite it as the motivation for intervention (ECF No. 345 at 9; ECF No. 347-1 at 4)—they do not appear to grasp its legal implications for their motions. As the Advisory Committee Notes to the 1966 Amendments that created modern Rule 24 make clear, the consideration of a party's interests and the litigation's impact thereon under Rule 24 is akin to the test for whether a party is "necessary" under Rule 19. *See* Fed. R. Civ. P. 24, Advisory Committee Notes to 1966 Amendments ("The amendment provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19(a)(2)(i), as amended, unless his interest is already adequately represented in the action by existing parties."). "Thus, the Advisory Committee intended for courts to use criteria for joinder of necessary parties in deciding whether a party has a significantly protectable interest in pending litigation. This suggests that ***an applicant should be permitted intervention as of right under 24(a)(2) only in those situations when the applicant would be a necessary party under today's [Rule 19].***" *Ohio Valley Env't Coal.*, 313 F.R.D. at 18 (emphasis added).

This Court has already considered the criteria applicable to joinder of a necessary party under Rule 19 and determined that the Mineral Owners lacked any legitimate interest that would be impaired by Plaintiffs' action. Contrary to Mineral Owners' contentions that Plaintiffs' claims would mandate the plugging of productive wells and thereby deprive them of royalty payments, *see* ECF No. 345 at 7–9, this Court explained:

> because the wells plaintiffs seek to have plugged are not producing gas, so the wells are not generating any royalty revenues for the mineral owner lessors. Plaintiffs are not seeking to require the plugging of *producing* wells that are generating royalties. Plugging of a nonproducing well does not extinguish the underlying mineral rights for the mineral owners. Mineral owners are still free to contract with any party to undertake operations to do what is reasonable and necessary to extract any remaining minerals. The mineral owners, along with defendants, have no right to prevent the plugging of any particular well that is required by law.[2]

ECF No. 303 at 13; *see also id.* at 12 ("The mineral owners defendants argue are absent in this case could not reasonably expect abandoned and unplugged wells to be left indefinitely on plaintiffs' property, especially when it is a requirement pursuant to the West Virginia Oil and Gas Act to plug abandoned wells which have not been in use for a period of twelve (12) consecutive months."); *id.*at 14–15 ("Defendants do not allege that the leases grant the mineral owners the right to force defendants to return any nonproducing well to production. The plugging of plaintiffs' abandoned, nonproducing wells does not impact the right or ability of mineral owners to have new, productive wells established on their estates"). Accordingly, the Court concluded, "***[t]here is no protectable interest of the mineral owners that would be extinguished if this Court grants plaintiffs' requested relief***." *Id.* at 13 (emphasis added).

---

[2] To the extent that any of the nonproducing wells on Mineral Owners' leases "could be rehabilitated to produce royalties," *see* ECF No. 345—which Mineral Owners have not demonstrated—state law provides a procedure to prevent the plugging of those wells: the bona fide future use program. Defendants failed to take advantage of that program. ECF No. 204 at 9.

The Mineral Owners in their motion do not claim any interests other than those advanced by Defendants in their Rule 19 motion. Indeed, while Defendants claimed injury to mineral owners' interest in payments other than production royalties, *e.g.*, "shut-in payments for unproductive wells," *see* ECF No. 276 at 5, the present Minerals Owners make no such claims. They do not offer any lease documents or other evidence of their interests in the wells on Plaintiffs' properties beyond the same misplaced, generalized claims regarding royalty payments that this Court already rejected.[3] Mineral Owners thus lack the type of "significantly protectable interest" that the United States Supreme Court has held is required for intervention of right. *Compare Ohio Valley Env't Coal.*, 313 F.R.D. at 18, 25–27 (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971), and holding that movants' claimed impairment of interests was too remote to support intervention as of right), *with Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (finding a significantly protectable interest where the intervenors stood "to gain or lose by the direct legal operation of the district court's judgment").

Similarly, this Court in denying Defendants' Rule 19 motion already determined that the existing defendants in this action adequately represent the Mineral Owners' interests. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). And, "it is the trial judge who is best able to determine whether. . .

---

[3] For this reason, Mineral Owners' invocation of Plaintiffs' statement in their opposition to Defendants' Rule 19 motion that "if any particular mineral owner were to identify an interest that would be diminished by Plaintiffs' action and sought to enforce that interest in a separate forum, that owner could be joined and Plaintiffs' suit could proceed," *see* ECF No. 345 at 7, rings hollow. Mineral Owners have not identified any such interest nor have they sought to enforce it in any separate forum. Plaintiffs' statement thus has no application here.

a proposed intervenor's interests are being adequately represented by an existing party pursuant to Rule 24(a)(2)." *Stuart v. Huff*, 706 F.3d 345, 350 (4th Cir. 2013). Here, the Court already determined that:

> to the extent that any mineral owner has an interest in preventing an abandoned, nonproducing well from being plugged, that interest does not differ from defendants' interest in the same.[4] ***Defendants[] can fully and adequately represent the mineral owners' interest in this litigation*** such that those mineral owners will suffer no prejudice as a result of their absence from the case.

ECF No. 303 at 14. Thus, even if the Mineral Owners had a significantly protectable interest that would be impaired by Plaintiffs' action, intervention as of right would nonetheless be improper because, as this Court has determined, "existing parties adequately represent that interest." *See* Fed. R. Civ. P. 24(a)(2).

## II. The Court Should Deny Permissive Intervention Under Rule 24(b)

The Court should deny Mineral Owners' request for permissive intervention under Rule 24(b) because their motion is untimely and their presence would complicate the issues to be determined and burden Plaintiffs and the Court without providing any countervailing benefit. Under Rule 24(b), a court *may*, on a *timely* motion, grant intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "Importantly, this Court possesses 'substantial discretion to deny permissive intervention.'" *Alt v. U.S. E.P.A.*, No. 2:12-CV-42, 2013 WL 12133923, at *2 (N.D.W. Va. July 30, 2013) (Bailey, J.) (quoting *Shaw v. Hunt*, 154 F.3d 161, 168 (4th Cir. 1998)), *aff'd* 758 F.3d 588 (4th Cir. 2014); *see also Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (explaining that the decision to grant or deny permissive intervention "lies within the sound discretion of the

---

[4] Indeed, Mineral Owners at this time do not advance any claims separate from Defendants, instead seeking to merely join the Defendants' most recent motion to dismiss. ECF No. 344, at ¶ 5.

trial court" (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982))); *McHenry v. Comm'r*, 677 F.3d 214, 219 (4th Cir. 2012) ("[R]eview of any court's order denying permissive intervention under . . . Rule 24(b) is particularly deferential, and a challenge to the court's discretionary decision to deny leave to intervene must demonstrate *clear* abuse of discretion in denying the motion." (internal quotations and citations omitted)); *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787–88 (8th Cir. 2003) ("Reversal of a decision denying permissive intervention is extremely rare, bordering on nonexistent."). Although the ultimate decision is left to the trial court's discretion, the court in considering permissive intervention "must ask 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Stuart,* 706 F.3d at 349 (quoting Fed. R. Civ. P. 24(b)(3)).

Mineral Owners' motion should be denied as untimely. "In determining whether a motion to intervene is timely, district courts have wide discretion and must consider, at a minimum: (1) how far the suit has progressed prior to the motion; (2) the prejudice which delay might cause other parties; and (3) the reason for any tardiness in moving to intervene." *Ohio Valley Env't Coal.*, 313 F.R.D at 17 (citing *Alt*, 758 F.3d at 591). The Court's discretion to determine timeliness is "wide." *Gould v. Alleco, Inc.,* 883 F.2d 281, 286 (4th Cir. 1989).

Here, the suit has progressed quite far, Mineral Owners have no legitimate excuse for their tardiness, and Plaintiffs would be prejudiced by any delay. Mineral Owners' motion is similarly untimely to the motion that this Court denied in *Alt v. United States Environmental Protection Agency*. *See* 2013 WL 12133923, at *2, *aff'd* 758 F.3d 588 (4th Cir. 2014). There, this Court determined that a party's motion was untimely where it sought to intervene "seventy (70) days after this Court denied the [defendant's] motion to dismiss and set the briefing schedule." *Id.* Here, the Mineral Owners moved to intervene on July 20, 2023, 107 days after the

6

Court denied Defendants' motion to dismiss on April 4, 2024,[5] and 169 days after it entered the initial scheduling order on October 17, 2022.[6] The case has thus reached a "relatively advanced stage" that justifies denying permissive intervention based on untimeliness. *See Alt*, 758 F.3d at 591.

The Mineral Owners' justification for their delay in intervening is similarly unavailing as that put forth by the movant in *Alt*. There, the Fourth Circuit criticized the party seeking intervention for waiting until this Court denied the defendant's motion to dismiss to seek intervention, based on the party's belief that the motion would be granted. *Id.* Here, although Plaintiffs' fundamental request to have the abandoned wells on their property plugged has not changed since they filed their initial complaint in July of 2022, Mineral Owners nonetheless waited to seek intervention until the Court had already determined that they lacked protectable interests that would be impaired by Plaintiffs' suit, nearly a year later. *See* ECF No. 347-1 at 5–6. Like the movant in *Alt*, Mineral Owners' "deliberate forbearance understandably engenders little sympathy." *Alt*, 758 F.3d at 591.

Finally, Mineral Owners' participation will burden Plaintiffs and the Court without providing any countervailing benefit.[7] A court does not err in denying permissive intervention

---

[5] Although Plaintiffs subsequently filed their Third Amended Complaint, ECF No. 322, and Defendants once again moved to dismiss, ECF No. 338, neither Plaintiffs' Amended Complaint nor Defendants' motion to dismiss raise any new issues that would affect Mineral Owners' claimed interests, *see* ECF No. 351, or otherwise affect the schedule of litigation. Accordingly, those developments have no bearing on the timeliness of Mineral Owners' motion.

[6] The Court's later modification of that scheduling order due to the burdensome discovery in the case does not lessen the untimeliness of the motion. *See Alt*, 758 F.3d at 591 (citing the fact that the Court had already twice extended the briefing schedule as a factor justifying denial of permissive intervention); *see also* ECF No. 344, at ¶ 3 (acknowledging that Mineral Owners' participation as parties could potentially require further amendment of the scheduling order).

[7] The Court need not find that Mineral Owners' motion is untimely in order to deny permissive intervention based on this factor. *See Ohio Valley Env't Coal.*, 313 F.R.D. at 30 ("In this case, although WVCA's motion to intervene is timely brought, and the Court assumes without deciding that WVCA has

7

"when undue delay exists without a corresponding benefit to the process, the litigants, or the court, especially where an existing party zealously pursues the same ultimate objectives as a movant."[8] *Lee v. Virginia Bd. of Elections,* No. 3:15-cv-357, 2015 WL 5178993, at *4 (E.D. Va. Sept. 4, 2015) (citing *Stuart,* 706 F.3d at 355). Here, Mineral Owners entry into the case "can complicate routine scheduling orders, prolong and increase the burdens of discovery and motions practice, thwart settlement, and delay trial." *See Stuart,* 706 F.3d at 350; *see also Alt*, 758 F.3d at 591 (upholding denial of permissive intervention based in part on the fact that movant's participation would require "extra effort" on the part of the plaintiffs); *N. Carolina State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 172 (M.D.N.C. 2019) (denying permissive intervention in part because "Plaintiffs will likely suffer prejudice in having to address dueling defendants . . . along with their multiple litigation strategies."). As a party to this litigation, Mineral Owners would be entitled to engage in discovery and motions practice and participate in trial. The additional discovery that would be required of Mineral Owners, and the discovery they would be allowed to take of Plaintiffs, would be unduly burdensome to Plaintiffs. Indeed, the Court has already had to extend the scheduling order once due to the complex and voluminous nature of discovery in this case (compounded by Defendants' numerous unsuccessful discovery-related motions). *See* ECF No. 307 at 1 (amending scheduling order to provide "adequate time to conduct discovery and review the discovery"); *Ohio Valley Env't Coal*., 313 F.R.D. at 30–31

---

a claim or defense that shares a common question of law or fact with this action, permissive intervention is not proper because it would unduly delay resolution of this action and burden judicial resources.").

[8] Indeed, the Court may deny permissive intervention solely on the ground that the movants' interests are adequately represented by the existing defendants, which, as explained above, this Court has already found. *See Hoots v. Com. of Pa.*, 672 F.2d 1133, 1135–36 (3d Cir. 1982) ("[W]here, as here, the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'").

("Here, bringing WVCA into the suit by way of permissive intervention would complicate discovery because WVCA would be entitled to discovery from both Plaintiffs and EPA, requiring existing parties to duplicate their discovery efforts. Furthermore, adding WVCA as a party would complicate for the existing parties other aspects of this litigation, including motions practice and any possible settlement negotiations."). And Mineral Owners' willingness to abide by the Court's amended scheduling order, *see* ECF No. 344, at ¶3, provides little comfort, given that Plaintiffs would be required to undertake additional discovery and briefing with an entirely new set of defendants in the same amount of time.

Mineral Owners' participation would also unduly burden the Court. *See Ohio Valley Env't Coal.*, 313 F.R.D. at 30 ("While concerns of judicial economy and need for guidance are not considered under 24(a), these are pertinent to permissive intervention analysis." (citing *In re Sierra Club,* 945 F.2d 776, 779 (4th Cir.1991))). "[D]ealing with an extra party by its very nature requires additional court resources." *Id.* at 31. Moreover, granting the Mineral Owners' motion could invite additional motions from other mineral owners, which would further burden the Court (and Plaintiffs) and complicate the case. *See Westinghouse Elec. Corp.*, 542 F.2d at 217 (denying intervention based in part on likelihood that it would invite further motions by parties that, like movants, had little to contribute to the litigation); *Ohio Valley Env't Coal.*, 313 F.R.D. at 30 (same); *Brenner v. Scott*, 298 F.R.D. 689, 691–92 (N.D. Fla. 2014) (same).

Finally, Mineral Owners have not in any way articulated how they would provide a countervailing benefit to offset the burden their participation would impose on Plaintiffs and the Court. They claim no particular expertise as to the legal or factual issues that Plaintiffs ask the Court to decide. Instead they indicate that their participation will focus on issues that are tangential to Plaintiffs' claims and that this Court has already conclusively decided, *i.e.*, the

impact of Plaintiffs' requested well plugging on their mineral interests. *See* ECF No. 345 at 8.[9] The Court already has to deal with Defendants raising the same meritless arguments over and over. *See* ECF No. 345 at 1. It should decline to add another set of defendants that appear willing to engage in the same behavior. *See ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) (upholding denial of intervention where movant would "inject numerous issues into the case"); *Cooper*, 332 F.R.D. at 172 (denying permissive intervention in part because "the Court has significant concern that the inclusion of Proposed Intervenors would likely detract from, rather than enhance, the timely resolution, clarity, and focus on, solely the weighty and substantive issues to be addressed in this case"). In sum, Mineral Owners' participation in this case will not benefit the Court's resolution of the salient issues or offer protection of Mineral Owners' interest but will rather merely "result in duplicative briefing adding a layer of unwarranted procedural complexity." *See Ohio Valley Env't Coal.*, 313 F.R.D. at 31. Permissive intervention is not warranted.

## CONCLUSION

For the foregoing reasons, Mineral Owners' motion to intervene as of right under Rule 24(a)(2) or, alternatively, by permission under Rule 24(b) should be denied.

Dated: August 3, 2023                                  Respectfully submitted,

                                                       */s/ Benjamin A. Luckett*
                                                       Benjamin A. Luckett (WVSB No. 11463)
                                                       J. Michael Becher (WVSB No. 10588)

---

[9] For its part, WVLMOA's brief in support of Mineral Owners' intervention amounts to little more than a screed against the way that West Virginia common and statutory law balances the interests of mineral owners and producers with those of surface owners. *Compare* ECF No. 347-1 at 7–8 (arguing that the "statutory definition of abandonment doesn't realistically reflect a justification for plugging all such wells without further input from interested parties such as the Intervenors") *with* ECF No. 204 at 13 (holding that West Virginia law requires owners to plug wells that have not reported production for twelve months and that the statutory one-year period "provides the standard of reasonability applicable to plaintiffs' common law actions").

Joseph M. Lovett (WVSB No. 6926)
Isak Howell (WVSB No. 11558)
Amanda Demmerle (WVSB No. 13930)
APPALACHIAN MOUNTAIN ADVOCATES
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
jlovett@appalmad.org
mbecher@appalmad.org
ihowell@appalmad.org
bluckett@appalmad.org
ademmerle@appalmad.org

Brian A. Glasser, Esq. (WVSB No. 6597)
John W. Barrett, Esq. (WVSB No. 7289)
Brian R. Swiger (WVSB No. 5872)
Athanasios Basdekis (WVSB No. 9832)
Panida Anderson (Admitted *Pro Hac Vice*)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
bglasser@baileyglasser.com
jbarrett@baileyglasser.com
bswiger@baileyglasser.com
tbasdekis@baileyglasser.com
panderson@baileyglasser.com

*Attorneys for Plaintiffs and Proposed Class*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING DIVISION

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

        Plaintiffs,

v.

    Civil Action No. 5:22-cv-171
    The Honorable John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

        Defendants.

### CERTIFICATE OF SERVICE

    I, Benjamin A. Luckett, hereby certify that on August 3, 2023, I caused to be filed the foregoing with the Clerk of the Court using the CM/ECF System, which caused a true and accurate copy of such filing to be served upon all attorneys of record.

        */s/ Benjamin A. Luckett*
        Benjamin A. Luckett (WVSB No. 11463)