**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**MARK McEVOY**, *et al.,*

        Plaintiffs,

    v.                                **Civil Action No. 5:22-CV-171**
                                            Judge Bailey

**DIVERSIFIED ENERGY COMPANY PLC**,
*et al.,*

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before this Court is Defendants' Motion to Dismiss Third Amended Complaint [Doc. 338] and accompanying Memorandum of Law in Support [Doc. 339], filed July 14, 2023.  Plaintiffs filed a Memorandum in Opposition [Doc. 351] on July 28, 2023. Defendants filed a Reply [Doc. 355] on August 4, 2023.  Having been fully briefed, the Motion to Dismiss is ripe for adjudication.

For the reasons that follow, this Court will deny Defendants' Motion to Dismiss Third Amended Complaint.

## <u>BACKGROUND</u>[1]

In the Third Amended Complaint, plaintiffs bring this action under Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4) on behalf of the following proposed classes:

---

[1] This Court discussed at length the background and the Consent Order in its April 4, 2023 Amended Memorandum Opinion and Order [Doc. 204] and hereby incorporates fully the April 4, 2023 Amended Memorandum Opinion and Order.  This Court will discuss the changes made by plaintiffs in their Third Amended Complaint.

The Voidable Transfer Class, consisting of all persons or entities that own property in West Virginia on which Diversified owns a well, regardless of whether the wells are currently abandoned or non-producing; and

The Common Law Class, consisting of all persons or entities who own land in West Virginia containing at least one well that (1) is not producing and/or has not produced oil or gas for 12 consecutive months, (2) is currently owned or operated by Diversified, and (3) has not been plugged or properly decommissioned.

[Doc. 322 at 53–54]. In the Third Amended Complaint, plaintiffs assert four (4)[2] causes of action:

Count I: Trespass by Diversified (Common Law Class Only) [id. at 57–58];

Count II: Negligence by Diversified (Common Law Class Only) [id. at 58];

Count III: Avoidance and Recovery of a Voidable Transfer as the Result of an Actual Fraudulent Transfer (Voidable Transfer Class Only) [id. at 59–60]; and

Count IV: Avoidance and Recovery of Voidable Transfer as the Result of a Constructive Fraudulent Transfer (Voidable Transfer Class Only) [id. at 60–62].

For relief in the Third Amended Complaint, plaintiffs seek the following:

1.    Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3) and (c)(4), certify the proposed class for the purpose of determining Defendants' liability to Plaintiffs;

---

[2] The Second Amended Complaint included a cause of action for nuisance that plaintiffs dismissed in their Third Amended Complaint.

2.      Enforce the Plaintiffs' and class members' private property rights by declaring that Diversified's failure to promptly plug its abandoned wells on Plaintiffs' and class members' properties constitutes trespass and negligence such that Plaintiffs and class members are entitled to appropriate damages necessary to remedy their injuries;

3.      Award Plaintiffs and class members damages from Diversified to compensate them for trespass (calculated at the cost of plugging, remediation, and demolition of the abandoned wells); Plaintiffs disclaim and do not seek damages for nuisance, reduced property value, lost use of property, medical damages, business damages, methane leakage, or aggravation;

4.      Declare that Diversified's July 2018 Voidable Transfer of nearly $523.4 million to EQT and the assumption of plugging obligations in exchange for approximately 11,000 wells is avoided as a fraudulent transfer as defined by the Alabama UFTA;

5.      Declare that Diversified's May 2020 Voidable Transfer of nearly $114.5 million to EQT and the assumption of plugging obligations in exchange for approximately 900 wells is avoided as fraudulent transfer as defined by Alabama UVTA;

6.      Direct the recovery of the assets Diversified transferred to EQT and reimpose the plugging and decommissioning obligations incurred by Diversified in the July 2018 and May 2020 Voidable Transfers back onto the transferor, EQT, to the extent necessary to satisfy Plaintiffs' claims under

3

Sections 8-9A-7 and 8-9B-8 of the Alabama Code or under otherwise applicable fraudulent transfer laws, or, alternatively, in accordance with Alabama Code §§ 8-9A-7 and 8-9B-9, enter Judgment for the value of the property transferred and the obligations incurred by Diversified up to the amount necessary to satisfy Plaintiffs' claims;

7.      Create a fund from the damages awarded from EQT to be used to plug and otherwise decommission Class Members' wells in West Virginia;

8.      Create a separate fund from damages awarded from Diversified to be used to plug and otherwise decommission Class members' wells;

9.      Appoint a receiver to take charge of and administer both of those funds;

10.     Award attorney's fees as appropriate; and

11.     Grant Plaintiffs and all Class members such other and further relief as is just and equitable under the circumstances.

[Id. at 62–64].

On July 14, 2023, defendants filed their Motion to Dismiss Third Amended Complaint [Doc. 338] and accompanying Memorandum of Law in Support [Doc. 339]. Therein, defendants, relying on *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and its progeny, state that the "[b]asic principles of federalism and comity . . . require a federal court to abstain from using its equitable powers to disrupt these kinds of comprehensive state administrative systems, especially where, as here, local land is implicated." *See* [Doc. 339 at 8]. Essentially, the defendants contend a portion of the remedies requested by plaintiffs will violate *Burford*.

4

## STANDARD OF REVIEW

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *See Materson v. Stokes*, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

## *BURFORD* ABSTENTION

The controlling precedent of both the Supreme Court and Fourth Circuit sets forth specific circumstances under which a federal court must abstain from exercising jurisdiction over a case.  Therefore, to resolve the abstention question before it, the Court must examine whether the issue raised by the plaintiffs' complaint involves "a difficult question of state law bearing on policy problems of substantial public import whose importance transcends the result" in this case, or whether federal court intervention would frustrate the state's interest in effective and consistent application of its regulatory law.  *New Orleans*

*Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350 (1989) (hereinafter "*NOPSI*").

The Court must also determine whether West Virginia has a timely and adequate system of administrative and judicial review for the state permitting decisions at issue in this case. *Id*.

Under *Burford v. Sun Oil Co.*, a federal court must abstain from exercising jurisdiction over matters that primarily concern issues of state law where timely and adequate state-court review is available. 319 U.S. 315 (1943).

In *Burford*, a district court sitting in equity was asked to rule on the reasonableness of the Texas Railroad Commission's grant of an oil permit. *Id*. at 331, n. 28. The oil permitting process, however, solely involved issues of Texas law. *Id*. Therefore, the primary question before the district court was whether the commission had correctly applied Texas's complex oil and gas conservation scheme. *Id*. Significantly, Texas had a system of administrative and judicial review in place to address these complex issues. *Id*. at 327, 334. Therefore, in *Burford*, the Supreme Court held that the federal district court, unfamiliar with the complex state regulatory scheme, should abstain and allow the state system to resolve the issue. *Id*. at 333–34.

Following *Burford*, in *New Orleans Pub. Serv. Inc. v. Council of New Orleans*, the Supreme Court reversed a district court's decision to abstain, finding no issue of state law before the district court. 491 U.S. 350 (1989). *NOSPI*, however, set forth the specific circumstances under which a federal court must abstain from exercising jurisdiction. *Id*. at 361.

Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id*. (emphasis added).

## DISCUSSION

This Court finds ***Burford*** abstention is inappropriate because, as this Court has already held multiple times, (1) Plaintiffs lack an adequate alternate remedy to their common law tort and fraudulent transfer claims, and (2) Plaintiffs' claims are expressly preserved by West Virginia's oil and gas program and thus do not interfere with that law nor with DEP's exercise of prosecutorial discretion embodied in the Consent Order. To the extent that the defendants argue that this Court should dismiss plaintiffs' claim for equitable relief under ***Burford*** because such relief would disrupt West Virginia's comprehensive plugging, bonding, and decommissioning policies, *See* [Doc. 339 at 16–21], this Court finds this argument by defendants to be premature.

This Court and/or a jury has not determined a winner in the above-styled case. Presently, defendants seek for this Court to enter an Order dismissing plaintiffs' requests to order defendants to contribute money to funds administered by a federally appointed

receiver. However, it is premature for this Court to dismiss a request made by plaintiffs in their "Request for Relief." The "Request for Relief" section of plaintiffs Amended Complaint is just that–a "request" to this Court for the relief sought after. The "Request for Relief" section is not a mandatory section that this Court must award if plaintiffs were to win.

<u>**CONCLUSION**</u>

For the reasons stated above,  Defendants' Motion to Dismiss Third Amended Complaint [**Doc. 338**] is **DENIED WITHOUT PREJUDICE**.

It is so **ORDERED**.

The Clerk shall transmit copies of this Order to all counsel on record.

**DATED:** August 15, 2023.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

8