**JUDGE BARKER**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE SUBPOENA DUCES TECUM directed to non-party the Institute for Energy Economics and Financial Analysis in connection with<br><br>*McEvoy, et al. v. Diversified Energy Company PLC, et al.*, N.D. W. Va., Case No. 5:22-cv-00171 | 1:23MC 31<br><br>Miscellaneous Action No. _____ |

**DIVERSIFIED'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO THE INSTITUTE FOR ENERGY ECONOMICS AND FINANCIAL ANALYSIS**

**INTRODUCTION**

Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation (collectively, "Diversified") respectfully request that this Court, as the district of compliance for the subpoena attached as **Exhibit 1**, compel the Institute for Energy Economics and Financial Analysis ("IEEFA") to produce documents responsive to Requests 1–12 of the subpoena. These requests are for documents that are directly related to the factual support of the *McEvoy* Plaintiffs' claims, which are based on a report for which IEEFA contributed significant research and analysis. It simply cannot be said that requests for materials that constitute the basis for the *McEvoy* Plaintiffs' complaint fail to clear the low bar of relevance for discovery, and Diversified is willing to work with IEEFA to reduce or eliminate any supposed burden. The Court should grant Diversified's motion.

**BACKGROUND**

Diversified served its subpoena in connection with *McEvoy v. Diversified Energy Company PLC*, No. 5:22-cv-00171-JPB (N.D. W. Va. filed July 8, 2022). *McEvoy* is based on allegedly abandoned wells in West Virginia, part of the Appalachian Basin. *See, e.g.*, Third Am. Class

Action Compl. (*McEvoy* ECF No. 322) ¶¶ 16, 98–104 481. Specifically, based on the alleged costs of plugging these wells, the *McEvoy* Plaintiffs allege various tort and voidable transactions between Diversified and EQT. *See id.* ¶¶ 487–521. According to the *McEvoy* Plaintiffs, Diversified and EQT schemed to transfer abandoned wells to Diversified so that EQT could avoid the expensive plugging liability, and Diversified could hold the wells for a number of years only to ultimately fail to plug them. *See id.* ¶¶ 42–91.

The *McEvoy* Plaintiffs directly pleaded that their claims are based on a report entitled "Diversified Energy: A Business Model Built to Fail Appalachia," published in April 2022 by the Ohio River Valley Institute and authored by Ted Boettner, Kathy Hipple, and Anthony Ingraffea (the "Boettner Report"). *See id.* ¶¶ 42–82, 97. ***Importantly, the Boettner Report states Clark Williams-Derry and IEEFA were directly involved in its creation.*** *See* Ex. A to Third Am. Compl. (*McEvoy* ECF No. 322-1) at 2. Because the *McEvoy* Plaintiffs' claims are based on the Boettner Report, and the Boettner Report, in turn, is based on information provided by IEEFA and Mr. Williams-Derry, IEEFA must produce the requested documents.

## LEGAL STANDARD

District courts have discretion over the discovery process. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). Under the Federal Rules of Civil Procedure, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevance for discovery purposes is extremely broad." *Barrio Bros., LLC v. Revolucion, LLC*, 2021 WL 282549, at *3 (N.D. Ohio Jan. 28, 2021) (citation omitted). "The term 'relevant' has been 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

2

On a motion to compel discovery, the movant "bears the initial burden of proving that the information sought is relevant." *Barnes v. Midland Credit Mgmt.*, 2020 WL 6778013, at *3 (N.D. Ohio Nov. 17, 2020) (quoting *Burris v. Dodds*, 2019 WL 6251340, at *2 (S.D. Ohio Nov. 22, 2019)). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome" or to otherwise establish why they should be permitted to resist production. *Prado v. Thomas*, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)).

## ARGUMENT

### I.   IEEFA MUST PRODUCE ALL DISPUTED DOCUMENTS BECAUSE THEY ARE RELEVANT AND FORM THE BASIS OF THE *MCEVOY* CASE

It is not difficult to establish the relevance of the requested materials, thereby satisfying Diversified's burden. Requests 1 through 3 are relevant because they seek documents about the Boettner Report (and its authors), which constitutes the basis for the *McEvoy* Plaintiffs' complaint. Requests 4 through 7 are relevant because they seek information about the assumptions, methodology, motives, and accuracy of that report. Requests 8 and 9 are relevant because they seek information about the disputed wells from *McEvoy*. Requests 10 and 11 are relevant because they seek information about the claims and parties in the *McEvoy* case. Finally, Request 12 is relevant to the extent that the requested documents show potential bias.

#### A.   Requests 1, 2, and 3 Are Relevant Because They Seek Documents About the Report that Constitutes the *McEvoy* Plaintiffs' Factual Allegations

Requests 1, 2, and 3 are relevant because they seek documents and communications about the Boettner Report (and its authors). Specifically, Request 1 seeks documents related to the Boettner Report. *See* Ex. 1 at Ex. A, ¶ 1. Request 2 seeks communications discussing or otherwise related to the Boettner Report. *See id.* at Ex. A, ¶ 2. Request 3 seeks communications discussing

3

or otherwise related to the authors of the Boettner Report—Ted Boettner, Kathy Hipple, and Anthony Ingraffea—from July 1, 2016 to present. *See id.* at Ex. A, ¶ 3. The Boettner Report is the very same report upon which the *McEvoy* Plaintiffs rely to assert their claims, and these requests are designed to obtain information about those claims.

The Boettner Report is the foundation of the *McEvoy* Plaintiffs' claims for trespass and negligence (and their dependent claims of voidable transactions). This is evinced by the sheer number of instances in which the *McEvoy* Plaintiffs' complaint relies on the Boettner Report for its factual allegations. Indeed, citations to the Boettner Report constitute 31 of 36—or over 86 percent—of the complaint's footnotes. *See* Third Am. Compl. (*McEvoy* ECF No. 322) at nn.1–36. The Boettner Report is quoted, cited, or directly relied upon in at least 27 of the 41—or roughly 66 percent—paragraphs comprising the "Facts" section of the complaint. *See id.* ¶¶ 42–82. All but seven of the "Facts" section's paragraphs relate to the Boettner Report's content. *See id.* ¶¶ 57, 76–81. The Boettner Report is the complaint's only exhibit and is attached as Exhibit A. *See* Ex. A to Third Am. Compl. (*McEvoy* ECF No. 322-1). In many ways, the Boettner Report *is* the complaint. *See Realtek Indus., Inc. v. Nomura Sec.*, 939 F. Supp. 572, 575 n.1 (N.D. Ohio 1996) ("[Exhibits] are a part of the complaint for all purposes, including the purpose of determining what the complaint alleges." (citing, *inter alia*, Fed. R. Civ. P. 10(c))).

Indeed, in pleading the discovery rule to avoid the statute of limitations, the *McEvoy* Plaintiffs rely entirely on the Boettner Report, stating: "The insolvency and undercapitalization of Diversified wasn't publicly revealed until at least April 12, 2022, ***upon the publication of the Boettner Report, which revealed the unorthodox accounting techniques and business strategies of Diversified***." Third Am. Compl. (*McEvoy* ECF No. 322) ¶ 97 (emphasis added). By the

4

*McEvoy* Plaintiffs' own admission, there is no basis to bring their voidable transfer claims prior to and without the Boettner Report.

A discovery request for documents that serve as the basis for the case's claims must clear the low bar of relevance. Diversified is entitled to these materials as they relate to the complaint's allegations. *See, e.g., Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987) ("Whether the documents requested . . . are relevant must be viewed in light of the allegations of the complaint, not as to evidentiary admissibility . . . . Although defendant opposes the discovery demands on the ground of relevance, *inter alia*, there can be no question of the relevancy of these materials to the allegations of the complaint . . . ." (citation omitted)); *Beckman v. T.K. Stanley, Inc.*, 2012 WL 1085803, at *6, *10–11 (N.D. W. Va. Mar. 30, 2012) (granting motion to compel discovery because "each [request] seek[s] discovery concerning a specific allegation in [p]laintiff's complaint and [is] therefor[e] relevant to a claim or defense"); *Minn. Life Ins. Co. v. Chinn (In re Chinn)*, 2020 WL 5997139, at *3 (Bankr. W.D. Tenn. Feb. 20, 2020) ("Because the allegations are material and pertinent, discovery concerning the facts underlying those allegations is relevant.").

The Boettner Report and its assertions, assumptions, accuracy, and motivations are relevant to the *McEvoy* Plaintiffs' claims and Diversified's defenses, the application of the discovery rule to those claims, and class certification. In fact, the Boettner Report is the sole basis for the claims, and given IEEFA's involvement in the Boettner report, the Court should compel IEEFA to produce documents responsive to subpoena requests 1–3.

**B.  Requests 4, 5, 6, and 7 Are Relevant Because They Seek Information About the Assumptions, Methodology, Motives, and Accuracy of the Boettner Report**

Requests 4–7 are relevant because they seek communications about Diversified or the *McEvoy* case that were exchanged between IEEFA and the Boettner Report's authors (or others

involved in the litigation) from July 1, 2016 to present. Request 4 seeks "[c]ommunications with Ted Boettner about Diversified or the" *McEvoy* case. *See* Ex. 1 at Ex. A, ¶ 4. Request 5 seeks "[c]ommunications with Kathy Hipple or the Ohio River Valley Institute about Diversified or the" *McEvoy* case. *See id.* at Ex. A, ¶ 5. Request 6 seeks "[c]ommunications with Luke Plants or Plants & Goodwin, Inc. about Diversified or the" *McEvoy* case. *See id.* at Ex. A, ¶ 6. Request 7 seeks "[c]ommunications with members or employees of the Appalachian Mountain Advocates about gas wells in West Virginia, Diversified, or the" *McEvoy* case. *See id.* at Ex. A, ¶ 7 (footnote omitted). Discussions about a party to a lawsuit, made by the source of the lawsuit's factual assertions, are relevant. Such materials may expose errors in logic or bias, and they can lead to further evidence.

*First*, as a matter of black-letter law, a discovery request seeking materials about a party to the litigation is appropriate. Diversified's request is functionally identical to those that courts have upheld. *See Frame v. Erie Metro. Transit Auth.*, 2023 WL 3043998, at *1 (W.D. Pa. Apr. 21, 2023) (compelling a defendant to "certify the production of," among other things, "all emails or other internal documents or communications concerning [p]laintiff"); *J&M Indus., Inc. v. Raven Indus., Inc.*, 2018 WL 1427952, at *9 (D. Kan. Mar. 22, 2018) (compelling a plaintiff to produce "communications about [d]efendant").

*Second*, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Thompson v. Allstate Prop. & Cas. Ins. Co.*, 2019 WL 438367, at *3 (N.D. W. Va. Feb. 4, 2019) (alteration in original) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)). IEEFA's materials discussing Diversified or the lawsuit can reasonably lead to evidence bearing on IEEFA's bias against Diversified.

*Third*, these requests directly bear on the *McEvoy* Plaintiffs' factual assertions. For example, suppose that IEEFA undertook an investigation of Diversified as part of its work to assist with the Boettner Report. In this hypothetical investigation, IEEFA determined that Diversified's cost of plugging a well was actually significantly below market, and it communicated internally about this finding and how it was contrary to the report. Finally, suppose the Boettner Report did not incorporate this finding. Diversified would still be entitled to this material because it is directly relevant to the *McEvoy* Plaintiffs' allegation that Diversified is functionally insolvent because it underestimates the costs of plugging its wells. *See* Third Am. Compl. (*McEvoy* ECF No. 322) ¶ 45.

IEEFA is a primary source of the factual allegations in the *McEvoy* Plaintiffs' complaint. Diversified is entitled to understand the basis of those allegations and the motive behind them, and Diversified is also entitled to further information IEEFA may have that bears on those allegations.

### C. Requests 8 and 9 Are Relevant Because They Seek Information About the Disputed Wells in the *McEvoy* Case

Subpoena requests 8 and 9 are relevant because they seek documents and communications about the West Virginia gas wells disputed in the *McEvoy* putative class action. Request 8 seeks "[c]ommunications with Brian A. Glasser, John W. Barrett, or other attorney at Bailey & Glasser, LLP about gas wells in West Virginia, Diversified, or the [*McEvoy* case] from July 1, 2016 to present." *See* Ex. 1 at Ex. A, ¶ 8. Request 9 seeks "[d]ocuments and communications in [IEEFA's] possession, custody, or control regarding Diversified or any of its gas wells in West Virginia from July 1, 2016 to the present." *See id.* at Ex. A, ¶ 9. Once again, these materials are substantively relevant and also material to impeachment.

The requested documents are relevant on the primary issues in the *McEvoy* case. The *McEvoy* Plaintiffs' claims depend on supposedly abandoned gas wells in West Virginia. *See, e.g.*,

Third Am. Compl. (*McEvoy* ECF No. 322) ¶¶ 48, 76. They claim those gas wells are abandoned because they have not produced gas or oil for twelve consecutive months. *See id.* ¶¶ 388, 394, 496. The requested documents will shed light on that assertion. For example, perhaps IEEFA has an internal analysis about the production levels of Diversified wells that shows production from some of the wells the *McEvoy* Plaintiffs allege are abandoned. Such materials must be produced.

The requested documents are also relevant because they may be used for impeachment. Again, the complaint is built on the Boettner Report. *See, e.g., id.* ¶ 93 ("The Plaintiffs in [the *McEvoy*] action could not reasonably be expected to discover the fraudulent nature of Diversified's transfers until . . . at the very earliest the publication of the Boettner Report on April 12, 2022."); *id.* ¶ 97 ("The insolvency and undercapitalization of Diversified wasn't publicly revealed until . . . the publication of the Boettner Report, which revealed the unorthodox accounting techniques and business strategies of Diversified."). The Boettner Report, in turn, is built on information from IEEFA. *See* Ex. A to Third Am. Compl. (*McEvoy* ECF No. 322-1) at 2. But, what if IEEFA worked with the *McEvoy* Plaintiffs and other Boettner Report authors with the goal of harming Diversified's reputation, not accurate reporting? Such material would shed significant light on the accuracy of the information in the Boettner Report and would be relevant impeachment evidence. *See Thompson*, 2019 WL 438367, at *3 (quoting *Abel*, 469 U.S. at 52).

This concern about the intent behind the Boettner Report is not mere speculation. The *McEvoy* Plaintiffs' counsel effectively created the Boettner Report by working with its authors to generate favorable research with the goal of harming Diversified. *See* Ex. 2 (ORVI_TB017186) (containing introductory discussions between the *McEvoy* Plaintiffs' counsel and Mr. Boettner); Ex. 3 (ORVI_TB000430) (containing Mr. Boettner's messages about litigation theories with the

*McEvoy* Plaintiffs' counsel); Ex. 4 (ORVI_TB003497) at ORVI_TB003519 (noting a big goal of the report and the case is to scare investors).

The requested documents are relevant and should be produced. The Court should grant Diversified's motion.

### D. Requests 10 and 11 Are Relevant Because They Seek Information Related to the Claims and Parties in This Case

Requests 10 and 11 seek information about the two disputed transfers between EQT and Diversified and materials about the *McEvoy* Plaintiffs themselves. Specifically, Request 10 seeks "[d]ocuments and communications regarding the July 2018 or May 2020 transactions between Diversified and EQT referenced in the Second Amended Class Action Complaint in the" *McEvoy* case. *See* Ex. 1 at Ex. A, ¶ 10. Request 11 seeks "[d]ocuments and communications regarding any of the Plaintiffs in the [*McEvoy* case] from July 1, 2016 to present." *See id.* at Ex. A, ¶ 11.

Subpoena request 10 is relevant because it seeks documents and communications about the transactions on which the *McEvoy* Plaintiffs base their voidable transaction claims. *See* Third Am. Compl. (*McEvoy* ECF No. 322) ¶ 5 ("This case concerns two such transfers between Diversified and EQT, … []the 'July 2018 Voidable Transfer'[] and … []the 'May 2020 Voidable Transfer'[]."); *id.* ¶ 6 ("Through these transactions, Diversified paid EQT approximately $642 million in exchange for approximately 12,000 gas wells, the vast majority of which were abandoned and/or only marginally productive, and Diversified incurred more than a billion dollars of EQT's obligations relating to those wells."). A request for documents directly related to the case's claims must be relevant. *See Scouler*, 116 F.R.D. at 496.

Subpoena request 11 seeks documents and communication between IEEFA and the *McEvoy* Plaintiffs about their voidable transfer claims themselves. To the extent that these materials contain information about the *McEvoy* Plaintiffs and their claims, they are relevant to the

9

issues in the complaint. *See Frame*, 2023 WL 3043998, at *1 (compelling a defendant to "certify the production of," among other things, "all emails or other internal documents or communications concerning [p]laintiff"); *J&M Indus., Inc.*, 2018 WL 1427952, at *9 (compelling a plaintiff to produce "communications about [d]efendant").

Furthermore, given IEEFA's factual investigation of the *McEvoy* Plaintiffs' claims, this request is especially relevant. Perhaps IEEFA assessed one of the *McEvoy* Plaintiffs' surface estates and determined they have ***not*** been injured as alleged; if IEEFA is not forced to respond to the subpoena such directly relevant information will never come to light. The need for this request is especially dire given the likelihood of collusion between the *McEvoy* Plaintiffs' counsel and IEEFA. *See* Ex. 4 (OVRI_TB003497) at ORVI_TB003519.

### E.   Request 12 is Relevant Because It Contains Possible Impeachment Material

Subpoena request 12 seeks documentation in connection with payments from Appalachian Mountain Advocates, the Ohio River Valley Institute, Bailey and Glasser, LLP, or the Sierra Club, for the past five years. *See* Ex. 1, at Ex. A, ¶ 12. To the extent that these payments exist, they may serve as evidence of collusion and bias, and they may reasonably lead to the discovery of further relevant materials. Thus, these materials are also relevant.

## II.   IEEFA CANNOT SHOW PRIVILEGE OR UNDUE BURDEN

Because Diversified has established the relevance of the requested materials, the burden passes to IEEFA to put forward some supervening reason why the materials should not be produced. It cannot do so.

***First***, IEEFA cannot show that the material is attorney-client privileged. The *McEvoy* Plaintiffs have not asserted privilege over certain materials requested in the IEEFA subpoena. Ex. 5 (*McEvoy* Pls.' Categorical Privilege Log) (asserting privilege over certain documents sought

by third-party subpoena, but not related to the IEEFA subpoena). Nor has IEEFA put forward any privilege log or otherwise substantiated a claim of any alternate form of privilege.

***Second***, IEEFA cannot establish undue burden. *See Am. Consol. Indus., Inc. v. Blasingim*, 2021 WL 4204936, at *4 (N.D. Ohio Feb. 24, 2021) (noting "[a] showing of burden, alone, is inadequate to relieve a party from discovery obligations" and "[t]he opposing party must . . . show that the burden is undue or disproportionate to the needs of the case" (citations omitted)). IEEFA has not, and cannot, put forward any evidence to meet this standard. And, to the extent there is any burden related to the subpoena response, Diversified is willing to work with IEEFA during a meet-and-confer process to try to reduce or eliminate that burden, if possible.

## CONCLUSION

It is illogical to say that an individual's factual investigation can serve as the basis of a lawsuit, but that the very same work is protected from discovery. IEEFA has relevant material that pertains to the allegations made in this case, and it should be required to produce the same. The Court should grant Diversified's motion.

11

Respectfully submitted:                                     Dated: July 13th, 2023

_[signature]_

Daniel Donovan, P.C.                                        Kenneth Young (*pro hac vice* forthcoming)
Ragan Naresh, P.C.                                          **KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS LLP**                                    609 Main Street
1301 Pennsylvania Avenue, N.W.                              Houston, TX 77002
Washington, D.C. 20004                                      Phone:   (713) 836-3600
Phone:   (202) 389-5000                                     Fax:     (713) 836-3601
Fax:     (202) 389-5200                                     Email:   kenneth.young@kirkland.com
Email:   ddonovan@kirkland.com
         ragan.naresh@kirkland.com

*Counsel for Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 13th, 2023 a copy of the foregoing was served by Federal Express ~~and by email~~ upon the following:

William S. Flynn
Brian A. Glasser
John W. Barrett
Brian R. Swiger
Athanasios Basdekis
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston, West Virginia 25301
wflynn@baileyglasser.com
bglasser@baileyglasser.com
jbarrett@baileyglasser.com
bswiger@baileyglasser.com
tbasdekis@baileyglasser.com

Panida A. Anderson
**BAILEY & GLASSER, LLP**
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
panderson@baileyglasser.com

Joseph M. Lovett
Benjamin A. Luckett
J. Michael Becher
**APPALACHIAN MOUNTAIN ADVOCATES**
P.O. Box 507
Lewisburg, WV 24901
jlovett@appalmad.org
bluckett@appalmad.org
mbecher@appalmad.org

*Counsel for Mark McEvoy, James Tawney, Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol DelRosso, George DelRosso, Benjamin Patterson, Chad Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts, Eben Fritts III, Gary Wentz, Heidi Deem, Jeffery Saltis, Kellie Saltis, Lane Evans, Minerva Evans, Maynard Tanner, Jennifer Tanner, Joan Medley, Jacob Collette, Regina Collette, Scott Corcoran, Kathy Johnson, and Christine Cochran*

Jennifer J. Hicks
**BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.**
300 Summers Street, Suite 1000
Charleston, WV 25301
jhicks@babstcalland.com

Mark K. Dausch
**BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.**
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
mdausch@babstcalland.com

Anna G. Rotman
Nick Brown
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
anna.rotman@kirkland.com
nick.brown@kirkland.com

*Counsel for EQT Production Company, EQT Production HTW, LLC, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC, EQT Midstream Partners LP, EQT Midstream Partners LP, EQT GP Holdings, LP, and EQT Corporation*

1

Edward A. Icove
**ICOVE LEGAL GROUP, LTD.**
50 Public Square
Terminal Tower, Suite 3220
Cleveland, Ohio 44113
ed@icovelegal.com

*Counsel for the Institute of Energy Economics and Financial Analysis*

_____
Ragan Naresh, P.C.

2