**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

| | |
|---|---|
| MARK MCEVOY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DIVERSIFIED ENERGY COMPANY PLC, *et al.*, <br><br> Defendants. | Civil Action No. 5:22-cv-00171 <br> Judge John P. Bailey |

**DIVERSIFIED'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO THE INSTITUTE FOR ENERGY ECONOMICS AND FINANCIAL ANALYSIS**

**TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................... 1

**ARGUMENT**............................................................................................................................. 2

**I.    THE REQUESTED MATERIAL IS RELEVANT BECAUSE IT CONCERNS THE FOUNDATION OF PLAINTIFFS' CLAIMS** ......................................................... 2

    A.   Requests 1–3 Are Relevant and Distinguishable from Prior Subpoenas. ...................... 3

    B.   Requests 4–12 Are Relevant and Distinguishable from Prior Subpoenas. .................... 7

**II.   IEEFA HAS OFFERED NO EVIDENCE OF UNDUE BURDEN WHATSOEVER** ... 9

**CONCLUSION** ....................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Barrio Bros. v. Revolucion, LLC*,
   2021 WL 282549 (N.D. Ohio Jan. 28, 2021)......................................................................2

*Carter v. Allstate Ins. Co.*,
   2012 WL 3637239 (N.D. W. Va. Aug. 21, 2012).................................................................2

*Diversified Energy Co. PLC v. Inst. for Energy Econ. & Fin. Analysis*,
   No. 1:23-mc-00031-PAB (N.D. Ohio Sept. 8, 2023), ECF No. 13 ...........................................6

*JAK Prods., Inc. v. Bayer*,
   2015 WL 2452986 (S.D. W. Va. May 22, 2015).................................................................9

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)................................................................................................2

*Scouler v. Craig*,
   116 F.R.D. 494 (D.N.J. 1987)....................................................................................2

**Rules**

Fed. R. Civ. P. 12.......................................................................................................2

Fed. R. Civ. P. 26...................................................................................................2, 5

**Other Authorities**

Ted Boettner et al., *Appendices for Diversified Energy: A Business Model Built to
   Fail Appalachia* (Apr. 2022), https://ohiorivervalleyinstitute.org/wp-
   content/uploads/2022/04/Diversified-Appendices-FINAL.pdf ................................................5

*What We Do*, IEEFA, https://ieefa.org/what-we-do (last visited Sept. 27, 2023) ...........................5

**INTRODUCTION**

The Court should grant Diversified's[1] Motion to Compel the Institute for Energy Economics and Financial Analysis ("IEEFA") to produce documents responsive to Requests 1–12 of the subpoena. The documents requested are directly related to the factual support of Plaintiffs' claims, which are based on a report for which IEEFA contributed significant research and analysis (the "Boettner Report").

Without the Boettner Report, Plaintiffs would have no good-faith basis for the allegations in their complaint. Thus, requests for information pertaining to the foundation upon which the complaint is built must clear the low bar of relevance for discovery. For example, perhaps the materials related to the Boettner Report show lower estimates to plug Diversified's wells than are found in Plaintiffs' allegations; perhaps the requested materials disclose a bias against Diversified and a coordinated effort to harm Diversified via false allegations about plugging; or perhaps the requested materials contain methodological discussions about valuing Diversified contrary to those that Plaintiffs' experts intend to employ. Any one of these uses is relevant for a number of reasons. Furthermore, to the extent IEEFA alleges that any undue burden exists (it has put forward no evidence of undue burden), Diversified is willing to work with IEEFA to reduce or eliminate any supposed burden via the discussion of search terms, means of collection, means of production, or other reasonable efforts. But before IEEFA will even consider Diversified's offer to mitigate any supposed burden, IEEFA must first be made to understand that it cannot defy the subpoena and withhold relevant materials. The Court should grant Diversified's motion.

---

[1] "Diversified Defendants" or "Diversified" are Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation. As Plaintiffs are aware, (1) Diversified Gas & Oil, PLC now operates as Diversified Energy Company PLC; (2) Alliance Petroleum Corporation now operates as Diversified Production LLC; and (3) Diversified Oil and Gas LLC does not exist.

1

**ARGUMENT**

I.  **THE REQUESTED MATERIAL IS RELEVANT BECAUSE IT CONCERNS THE FOUNDATION OF PLAINTIFFS' CLAIMS**

The materials requested from IEEFA are relevant because they bear on the factual allegations Plaintiffs make in their complaint—indeed, the primary requests are for the materials that serve as the acknowledged support for Plaintiffs' allegations. If the requested materials are irrelevant, so is the Boettner Report. Put differently, unless the Court strikes from the complaint all allegations about or based upon the Boettner Report,[2] the Court should not refuse discovery into the very same Boettner Report as irrelevant.

Under the Federal Rules of Civil Procedure, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevance for discovery purposes is extremely broad." *Barrio Bros. v. Revolucion, LLC*, 2021 WL 282549, at *3 (N.D. Ohio Jan. 28, 2021) (citation omitted). "The term 'relevant' has been 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).[3] IEEFA cannot seriously contend that its work on the very report that is the basis of Plaintiffs' claims and that purports to assess Diversified's

---

[2] "Federal Rule of Civil Procedure 12(f) allows a district court to strike, either on proper motion by a party or on its own initiative, any redundant, immaterial, impertinent, or scandalous matter in any pleading." *Carter v. Allstate Ins. Co.*, 2012 WL 3637239, at *7 (N.D. W. Va. Aug. 21, 2012).

[3] Although IEEFA argues that the subpoena seeks "documents that are neither relevant to, nor likely to lead to the discovery of admissible evidence," IEEFA's Resp. to Diversified's Mot. to Compel ("IEEFA's Resp.") (ECF No. 387) at 4, documents within the "scope of discovery need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1). *See, e.g.*, *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987) ("Whether the documents requested . . . are relevant must be viewed in light of the allegations of the complaint, not as to evidentiary admissibility . . . . Although defendant opposes the discovery demands on the ground of relevance, *inter alia*, there can be no question of the relevancy of these materials to the allegations of the complaint . . . ." (citation omitted)). Regardless, IEEFA has failed to demonstrate that the requested materials would be inadmissible anyhow.

solvency and operations does not bear on, or could not reasonably lead to other evidence that bears on, the issues in this case.

### A. Requests 1–3 Are Relevant and Distinguishable from Prior Subpoenas.

The basic issue in Diversified's Motion to Compel is the relevance of documents about IEEFA's involvement with, and contribution to, the report that constitutes the basis for the complaint and IEEFA's relationship with Plaintiffs. The factual content of Plaintiffs' claims is based solely on the Boettner Report, for which IEEFA contributed significant research and analysis. Information about the factual support for Plaintiffs' claims is squarely relevant. Nevertheless, IEEFA has refused to produce any documents, asserting that this Court's orders quashing subpoenas to the Sierra Club and David McMahon are "controlling" in this matter. *See* IEEFA's Resp. (ECF No. 387) at 3. However, IEEFA ignores fundamental differences between IEEFA's role and the roles of Sierra Club and Mr. McMahon: IEEFA, unlike the Sierra Club and Mr. McMahon, was far more involved in the creation of the Boettner Report and Plaintiffs' subsequent claims.

Specifically, request 1 seeks documents related to the Boettner Report. *See* Mot. Ex. 1 (ECF No. 381-2) at Ex. A, ¶ 1. Request 2 seeks communications discussing or otherwise related to the Boettner Report. *See id.* at Ex. A, ¶ 2. Request 3 seeks communications discussing or otherwise related to the authors of the Boettner Report—Ted Boettner, Kathy Hipple, and Anthony Ingraffea—from July 1, 2016 to present. *See id.* at Ex. A, ¶ 3. Each of these requests seeks relevant material because the Boettner Report is the foundation of the Plaintiffs' voidable transfer claims. Citations to the report constitute 31 of 36—or over 86 percent—of the complaint's footnotes. *See* Third Am. Compl. (ECF No. 322) at nn.1–36. The report is quoted, cited, or directly relied upon in at least 27 of the 41—or roughly 66 percent—paragraphs comprising the "Facts" section of the complaint. *See id.* ¶¶ 42–82. The Boettner Report is the complaint's only exhibit and is attached

3

as Exhibit A.  *See generally* Third Am. Compl. Ex. A (ECF No. 322-1).  In fact, by Plaintiffs' own admission, there is no basis to bring their voidable transfer claims prior to and without the Boettner Report.  In pleading the discovery rule to avoid the statute of limitations, Plaintiffs rely entirely on the report, stating: "The insolvency and undercapitalization of Diversified wasn't publicly revealed until at least April 12, 2022, ***upon the publication of the Boettner Report, which revealed the unorthodox accounting techniques and business strategies of Diversified***."  Third Am. Compl. (ECF No. 322) ¶ 97 (emphasis added).

The similarity of the Sierra Club and McMahon subpoenas to the IEEFA subpoena is not dispositive because the material point of comparison is the likelihood that the subpoena recipient has relevant information, not the similarity in the language of a request.  For example, one could reasonably argue that a subpoena to Governor Jim Justice requesting materials showing Plaintiffs' ownership of the disputed property would be denied.  The denial of that request to Governor Justice, however, would not mean that an identical request to Plaintiffs should be denied.  This is because, again, the relevant inquiry is the involvement of the discovery recipient, not the similarities in the requests themselves.  The documents and communications sought from IEEFA are ***specific to IEEFA*** and its involvement in the allegations made in Plaintiffs' complaint.  Subpoenas served to different recipients yield distinct results when, as here, the involvement of each recipient is vastly dissimilar.

*First*, David McMahon is a 73-year-old semi-retired lawyer working for a non-profit.  *See* D. McMahon's Mot. to Quash Subpoena or in the Alternative for a Protective Order (EFC No. 306) at 1–2.  Per the briefing related to the Court's Order on Mr. McMahon's subpoena, Mr. McMahon's knowledge of Diversified's wells and production is supposedly based only on Diversified's submissions to the West Virginia Department of Environmental Protection and

similar public information. *See id.* at 2–4. Unlike Mr. McMahon, IEEFA is a sophisticated multinational company focused on examining and producing in-depth reports related to the energy market.[4] And, unlike IEEFA, Mr. McMahon was not mentioned anywhere as contributing to the creation of the Boettner Report.

*Second*, unlike Sierra Club, IEEFA was directly acknowledged by the Boettner Report's authors for its involvement in the creation of the report. *See* Third Am. Compl. Ex. A (EFC No. 322-1) at 2 (stating Clark Williams-Derry and IEEFA were directly involved in the Boettner Report's creation). A Sierra Club report is cited in Appendix 2 of the Boettner Report,[5] but there is a fundamental difference between citing a single report in an appendix[6] and acknowledging someone for their "invaluable feedback on drafts of the report." *See* Third Am. Compl. Ex. A (EFC No. 322-1) at 2. Diversified is surely entitled to the "invaluable" work done to create the document that serves as the factual basis for Plaintiffs' allegations in the complaint.

In determining whether a request is within the scope of discovery, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Diversified is entitled to the requested materials as they serve as the basis for Plaintiffs' claims seeking hundreds of millions of dollars and the certification of a putative class in the tens-of-thousands.

---

[4] *What We Do*, IEEFA, https://ieefa.org/what-we-do (last visited Sept. 27, 2023).
[5] Ted Boettner et al., *Appendices for Diversified Energy: A Business Model Built to Fail Appalachia* at 9 & n.13 (Apr. 2022), https://ohiorivervalleyinstitute.org/wp-content/uploads/2022/04/Diversified-Appendices-FINAL.pdf.
[6] Notably, the main report does not provide a link to the appendices. Instead, one must click on one of the Endnotes citing Appendix 8, be redirected to the Ohio River Valley Institute, and download the appendices.

In the face of the documents' relevance and importance, IEEFA also claims "the Subpoena seeks documents that are publicly available or in the public domain" or documents already in Diversified's possession. IEEFA's Resp. (ECF No. 387) at 4. This is plainly incorrect. The request seeks documents and communications related to the Boettner Report specifically in IEEFA's custody. Even if Diversified has obtained *some* relevant documents from other parties, Diversified is still entitled to inspect IEEFA's production because the mere fact that the documents are in IEEFA's possession sheds light on how those documents may have influenced the Boettner Report. Furthermore, unless IEEFA can confirm that *all* requested materials have already been produced, the fact remains that IEEFA has documents that are not available anywhere else (*e.g.*, IEEFA's internal email communications about the Boettner Report cannot be produced by anyone other than IEEFA).

Finally, IEEFA urges this Court to take judicial notice of the Northern District of Ohio's decision in *Diversified Energy Co. PLC v. Institute for Energy Economics & Financial Analysis*, where the Northern District of Ohio states "the Sierra Club Subpoena and McMahon Subpoena were both served by Diversified and are virtually identical to the Subpoena served on IEEFA." Mem. Op. & Order at 10, *Diversified Energy Co. PLC v. Inst. for Energy Econ. & Fin. Analysis*, No. 1:23-mc-00031-PAB (N.D. Ohio Sept. 8, 2023), ECF No. 13. However, the Northern District of Ohio noted the similarity of the subpoenas only to highlight that this Court's "thorough understanding of the factual predicates implicated in *McEvoy*" weighed in favor of transferring the Motion to Compel. *See id.* It is illogical for IEEFA to argue that this Court is somehow bound by the statements of a court that was itself indicating that this Court is the more able adjudicator. On the contrary, the point of the Northern District of Ohio's statements is that this Court knows better

6

how to resolve these sorts of discovery disputes. Because that is so, the Court should recognize the material differences between the positions of IEEFA and the former subpoena recipients.

### B. Requests 4–12 Are Relevant and Distinguishable from Prior Subpoenas.

In response to subpoena requests 4–12, IEEFA again attempts to equate Diversified's subpoena to IEEFA with the subpoenas served to the Sierra Club and Mr. McMahon. *See* IEEFA's Resp. (ECF No. 387) at 7–8. For the reasons stated above, however, this Court's decisions regarding the Sierra Club and McMahon's subpoenas are not relevant to the outcome of this Motion.

Again, these requests seek relevant material. Subpoena requests 4–7 seeks communications that can reveal information about the assumptions, methodology, motives, bias, and accuracy of the Boettner Report. Mot. Ex. 1 (ECF No. 381-2) at Ex. A, ¶¶ 4–7. Subpoena requests 8 and 9 seek documents and communications about the West Virginia gas wells (and IEEFA's investigation on the wells' production of gas or oil) disputed in the *McEvoy* putative class action. *Id*. at Ex. A, ¶¶ 8–9. Subpoena requests 10 and 11 seek documents and communications about the transactions on which the *McEvoy* Plaintiffs base their voidable transaction claims. *Id*. at Ex. A, ¶¶ 10–11. Subpoena request 12 seeks documentation in connection with payments from third parties or Plaintiffs' counsel, which, if existent, may serve as evidence of collusion and bias.

Despite the relevance of these materials, IEEFA argues its communications "with other nonparties to this suit ha[ve] nothing to do with whether Diversified 'committed trespass, nuisance, or negligence, or engaged in a fraudulent transfer.'" IEEFA's Resp. (ECF No. 387) at 7. But IEEFA is mistaken. Again, Plaintiffs' claims are entirely based on the Boettner Report, written with IEEFA's "invaluable" help. *See* Third Am. Compl. Ex. A (EFC No. 322-1) at 2. Thus, all IEEFA's documents and communications related to the Boettner Report or the resultant *McEvoy* case are relevant and can reasonably lead to evidence exposing errors in logic or bias in the creation

of the Boettner Report, the accuracy of factual allegations, and the validity of the voidable transaction claims.

For example, the concern about the intent behind the Boettner Report is not mere speculation. Plaintiffs' counsel effectively created the Boettner Report by working with its authors to generate favorable research with the goal of harming Diversified. *See* Mot. Ex. 2 (ECF No. 381-3) (containing introductory discussions between the *McEvoy* Plaintiffs' counsel and Mr. Boettner); Mot. Ex. 3 (ECF No. 381-4) (containing Mr. Boettner's messages about litigation theories with the *McEvoy* Plaintiffs' counsel); Mot. Ex. 4 (ORVI_TB003497)[7] at ORVI_TB003519 (noting a big goal of the report and the case is to scare investors). Thus, other documents about the purpose behind the Boettner Report could show serious methodological errors in Plaintiffs' analysis of Diversified's solvency or well-plugging operations based on an ends-oriented objective of harming Diversified, rather than any actual data. Alternatively, the requested materials could include correspondence related to alternative valuation models, with someone instructing IEEFA or the authors of the Boettner Report to select a dubious model because it results in higher liabilities for Diversified.

And, frankly, the requested materials are relevant even without the connection to Plaintiffs' counsel. Discussions about Diversified's solvency and a resultant evaluation of Diversified's business model are relevant in this case, and that is the correspondence in which IEEFA was involved given their work on the Boettner Report. If these documents do nothing more (they do), at minimum they serve as a third-party assessment of Diversified. Thus, the documents are still relevant—as shown by the multitude of subpoenas that Plaintiffs have submitted to other third parties related to their own assessments of Diversified.

---

[7] This document was previously provided to the Court and filed under seal as Exhibit 2 to Diversified's Response in Opposition to Mr. McMahon's Motion to Quash his Subpoena (ECF No. 323).

IEEFA is a primary source of the factual allegations in Plaintiffs' complaint. Diversified is entitled to understand the basis of those allegations and the motive behind them, and Diversified is also entitled to further information IEEFA may have that bears on those allegations.

## II.  IEEFA HAS OFFERED NO EVIDENCE OF UNDUE BURDEN WHATSOEVER

IEEFA failed to carry its burden of substantiating the claim of undue burden. "[T]he party opposing discovery has the obligation to submit evidence supporting its claims that the discovery is unduly burdensome, oppressive, or irrelevant." *JAK Prods., Inc. v. Bayer*, 2015 WL 2452986, at *10 (S.D. W. Va. May 22, 2015). "To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments." *Id.* (collecting cases).

In just half a page, IEEFA asserts that production responsive to subpoena requests 1–12 would be unduly burdensome by stating that (1) "taking the time, money, and resources to respond would place an undue burden on [IEEFA]" and (2) "[t]he Sierra Club and McMahon orders demonstrate the undue burden placed upon IEEFA." IEEFA's Resp. (ECF No. 387) at 9. IEEFA, however, has submitted no evidence in support of its arguments. *See generally id*. There is no declaration or documentary evidence showing how a response to Diversified's subpoena would take an inordinate amount of time, money, or other resources. There is no evidence linking the circumstances of IEEFA with the supposed circumstances of the Sierra Club or Mr. McMahon. This complete lack of any specific argument to support IEEFA's claims cannot justify the relief sought. And, regardless, Diversified would be willing to work with IEEFA to mitigate any supposed burden if IEEFA would ever actually identify its concerns.

In fact, IEEFA's undue-burden claim is further weakened considering the production of documents in response to third-party subpoenas by others similarly involved in the report. For example, Ted Boettner, Anthony Ingraffea, Paul Wawrzynek, Renee Santoro, and Clark Williams-

9

Derry—authors of and contributors to the report, and, moreover, individuals with less resources than the IEEFA entity—have all produced documents in response to third-party subpoenas. *See* Diversified's Notice of Issuance of Am. Subpoena to T. Boettner (ECF No. 145); Diversified's Notice of Issuance of Subpoena to A. Ingraffea (ECF No. 239); Diversified's Notice of Issuance of Subpoena to P. Wawrzynek (ECF No. 235); Diversified's Notice of Issuance of Subpoena to R. Santoro (ECF No. 242); Diversified's Notice of Issuance of Subpoena to C. Williams-Derry (ECF No. 238). The Ohio River Valley Institute—the organization that issued the report—similarly produced documents. *See* Diversified's Notice of Issuance of Subpoena to Ohio River Valley Inst. (ECF No. 140).

Finally, the requests' time period is not overbroad and does not create undue burden. This Court established as much by granting Plaintiffs' motion to compel production of documents from "July 2016 – two years prior to the first transfer at issue," a transfer mentioned in the Boettner Report. Order Granting in Part & Denying in Part Pls.' Mot. to Compel (EFC No. 180) at 8. As the Court has always recognized, the relevant scope of information related to factual claims does not shift depending on which side of the case caption's "v." one falls.

## CONCLUSION

The Boettner Report is the basis for Plaintiffs' voidable transfer allegations and must be relevant. If it is not, then the allegations about the Boettner Report should be stricken from the complaint—which would leave the complaint bereft of any factual allegations at all. The basis for the Boettner Report, in turn, is at least partially IEEFA's "invaluable" assistance. Accordingly, the requested materials are relevant and IEEFA is not in the same position as other subpoena recipients. For the foregoing reasons, the Court should grant Diversified's Motion to Compel.

10

| | |
|---|---|
| Respectfully submitted: | Dated: September 28, 2023 |
| /s/ Howard M. Persinger, III | |
| Howard M. Persinger, III (WVSB #6943) | Daniel Donovan, P.C. (*pro hac vice*) |
| **PERSINGER & PERSINGER, L.C.** | Ragan Naresh, P.C. (*pro hac vice*) |
| 237 Capitol Street | **KIRKLAND & ELLIS LLP** |
| Charleston, WV 25301 | 1301 Pennsylvania Avenue, N.W. |
| Phone: (304) 346-9333 | Washington, D.C. 20004 |
| Fax: (304) 346-9337 | Phone: (202) 389-5267 |
| Email: hmp3@persingerlaw.com | Fax: (202) 389-5200 |
| | Email: daniel.donovan@kirkland.com |
| | ragan.naresh@kirkland.com |
| | |
| | Kenneth Young (*pro hac vice*) |
| | Dustin Womack (*pro hac vice*) |
| | **KIRKLAND & ELLIS LLP** |
| | 609 Main Street |
| | Houston, TX 77002 |
| | Phone: (713) 836-3600 |
| | Fax: (713) 836-3601 |
| | Email: kenneth.young@kirkland.com |
| | dustin.womack@kirkland.com |

*Counsel for Defendants Diversified Energy Company PLC, Diversified Gas & Oil, PLC, Diversified Production LLC, Diversified Gas & Oil Corporation, Diversified Oil and Gas LLC, and Alliance Petroleum Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 28, 2023, a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

                                          */s/ Howard M. Persinger, III*
                                          Howard M. Persinger, III (WVSB #6943)