IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

**MARK MCEVOY, et al., individually and**
on behalf of a proposed class,

                **Plaintiffs,**

v.                                                                 Civil Action No. 5:22-cv-171-JPB

**DIVERSIFIED ENERGY COMPANY PLC,**
et al.,

                **Defendants.**

**MEMORANDUM IN SUPPORT OF "MOTION TO STRIKE COMMON LAW CLASS
ALLEGATIONS BY CHESTER C. DODD, JR., KATHRYN M. HUNT,
<u>AND LINDA DODD FLUHARTY"</u>**

      Chester C. Dodd, Jr., Kathryn M. Hunt, and Linda Dodd Fluharty ("Intervening Defendants") have moved the Court to strike the Common Law Class allegations pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Intervening Defendants are mineral owners with an interest in a well that was formerly not producing, but has returned to production. The well in which Intervening Defendants have an interest is at issue in this case. The Named Plaintiffs filed their *Third Amended Class Action Complaint* [Doc. 322] on June 16, 2023, bringing claims for trespass based on the presence of Diversified's wells on their property after those wells allegedly ceased production and remained unplugged. *See Third Amended Class Action Complaint* [Doc. 322] ¶¶ 488–90. The Named Plaintiffs also bring claims for negligence based on Diversified's alleged failure to comply with West Virginia Code § 22-6-19. *See id.* §§ 496–98. Named Plaintiff Joan Medley's claims target the well in which Intervening Defendants have an interest. *See Order* [Doc. 391] at 3. Named Plaintiffs never notified Intervening Defendants that Named Plaintiffs sought to exterminate their interest. It was lucky that Intervening Defendants were alerted to this case.

Because the Named Plaintiffs would harm their interests, Intervening Defendants moved to intervene in this case, and the Court granted Intervening Defendants' *Motion to Intervene* because "[t]he Intervening Defendants all have mineral interests in Well 047-039-02361," one of the wells disputed by Named Plaintiff Joan Medley. *See Order* [Doc. 391] at 3. After reviewing materials specific to that well, the Court determined that the "allegation that the well has not reported gas production in any amount since 2018 is simply untrue." *Id.* The Court added that, "[u]pon further review, some of the allegations concerning some wells in the Third Amended Complaint appear to be unsupported." *Id.* at 3, n. 2. Thus, "[b]ased upon the Intervening Defendants' material interest in the subject gas wells that are still producing, and the allegations set forth in the *Third Amended Class Action Complaint*, Intervening Defendants have a direct interest in the outcome of this matter." *Id.* at 4.

There are many other mineral owners in the same situation as Intervening Defendants because the Named Plaintiffs seek to represent a Common Law Class that "consist[s] of all persons or entities who own land in West Virginia containing at least one well that (1) is not producing and/or has not produced oil or gas for 12 consecutive months, (2) is currently owned or operated by Diversified, and (3) has not been plugged or properly decommissioned." *Id.* ¶ 475(b). This definition does not contain any carveout for wells that did not produce for 12 consecutive months but have since returned to production, like Intervening Defendants' well. This definition does not exempt landowners who consent to non-producing wells on their property in the hopes that the wells return to production or to receive shut-in payments. This definition does not contain any mechanism to alert the owners of severed mineral estates, like Intervening Defendants, that surface estate owners bring claims related to the mineral owners' interests in the wells. Thus, this case impacts the Intervening Defendants and mineral owners like Intervening Defendants.

Like Intervening Defendants, other mineral owners have an interest in wells that were formerly not producing and have since returned to production. These people also have an interest in wells that are currently not producing (perhaps because they were shut in while gas prices were at a low point, for well work, or for some other reason) but are capable of returning to production. But these people are left without any protection in this case, even though they are in the same situation as Intervening Defendants, because Named Plaintiffs seek to plug wells on a class-wide basis.

Intervening Defendants considered what steps to take to protect their own interests and those of similarly situated individuals in light of the Common Law Class. It became clear, however, that even identifying the Common Law Class's members or how Named Plaintiffs' property rights claims relate to that class was impossible. This, in turn, makes it impossible to certify the Common Law Class because the Named Plaintiffs cannot show that the Common Law Class is ascertainable or that their claims are typical of the Common Law Class. To allow the Common Law Class to continue forward will inappropriately sweep in the rights of absent parties (*i.e.*, mineral owners with interests in producing wells or wells that can return to production) and will result in the adjudication of those rights based on the claims of surface owners, without any notice to the mineral owners. Furthermore, the Common Law Class includes people who consent to the wells remaining on their property and risks the plugging of these peoples' wells despite their lack of injury (or desire for the remedy the Named Plaintiffs demand). These issues are not curable. Thus, the Court should strike the Common Law Class allegations.

## **LEGAL STANDARD**

"To assert claims on behalf of a class, a plaintiff must clear three sets of procedural hurdles." *Cornette v. Jenny Garton Ins. Agency, Inc.*, 2010 WL 2196533, at *1 (N.D.W. Va. May 27, 2010) (Bailey, J.). Two hurdles matter for this Motion. The first is that "a plaintiff must establish that a class exists and is ascertainable. This requires that the plaintiff must define the class in objective terms and that the class be administratively feasible to identify who falls within the class." *Id.* (citing *Kirkman v. N.C. R.R. Co.*, 220 F.R.D. 49, 53 (M.D. N.C. 2004)). "Second, a plaintiff must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) of the Federal Rules of Civil Procedure." *Id.* (citation omitted).

"[A] court must determine whether class certification is proper '[a]t an early practicable time after a person sues or is sued as a class representative . . . .'" *Id.* at *2 (quoting Fed. R. Civ. P. 23(c)(1)(A). "The plaintiff, as the party seeking certification, bears the burden of establishing that certification is appropriate." *Id.* (citation omitted); *see also In re Katrina Canal Breaches Consol. Litig.*, 2009 WL 1707923, at *4 (E.D. La. June 16, 2009) ("Federal courts 'emphasize that it is the party seeking certification that bears the burden of establishing that the requirements of Rule 23 have been met.'") (quoting *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008)). "Where the inability to maintain the suit as a class action is apparent from the face of the complaint, a court may dismiss the class allegations on the pleadings." *Cornette*, 2010 WL 2196533, at *2 (citation omitted); *see also Waters v. Electrolux Home Prod., Inc.*, 2016 WL 3926431, at *4 (N.D.W. Va. July 18, 2016) (stating the same rule).

The Court has the power to order that class allegations be stricken under Federal Rule of Civil Procedure 12(f), which "allows a district court to strike, either on proper motion by a party or on its own initiative, any redundant, immaterial, impertinent, or scandalous matter in any

4

pleading." *Carter v. Allstate Ins. Co.*, 2012 WL 3637239, at *7 (N.D.W. Va. Aug. 21, 2012) (Bailey, J.). This is because "Federal Rule of Civil Procedure 23(d)(1)(D) explains that '[i]n conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." *Id.* Finally, "[t]he court may issue such an order upon a motion by the defendants, regardless of whether the plaintiff has moved for class certification." *Id.* (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 935–40 (9th Cir. 2009)).

## DISCUSSION

**I. THE COMMON LAW CLASS IS NOT ASCERTAINABLE BECAUSE IT IS NOT POSSIBLE TO IDENTIFY THE MEMBERS OF THE CLASS AND OTHER INTEREST HOLDERS**

Plaintiffs cannot satisfy ascertainability for the Common Law Class because it is not administratively feasible to identify all West Virginia landowners who have a Diversified-owned or operated well on their property that is not producing or has not produced for 12 consecutive months, particularly given that certain such wells (like the Medley well) have returned (or will return) to production after a period of inactivity. Worse, there is no feasible way to account for mineral owners (like Intervening Defendants) who have an interest in wells that have returned to production or that can be returned to production.

One of the first hurdles a plaintiff must clear to assert claims on behalf of a class is that they "must establish that a class exists and is ascertainable." *Carter*, 2012 WL 3637239, at *7 (Bailey, J.). "This requires that the plaintiff define the class in objective terms and that the class be administratively feasible to identify who falls within the class." *Id.* (citing *Kirkman v. N. Carolina R. Co.*, 220 F.R.D. 49, 53 (M.D. N.C. 2004)).

5

The Named Plaintiffs' Common Law Class is defined as "consisting of all persons or entities who own land in West Virginia containing at least one well that (1) is not producing and/or has not produced oil or gas for 12 consecutive months, (2) is currently owned or operated by Diversified, and (3) has not been plugged or properly decommissioned." *Third Amended Class Action Complaint* [Doc. 322] ¶ 475(b). To ascertain the Common Law Class, therefore, the Court must identify, in a way that is administratively feasible, all property owners in West Virginia with wells on their property that are currently not producing and/or have not produced for 12 consecutive months. If the Court cannot do so, it cannot identify the mineral owners who are in the Common Law Class—let alone all owners of severed mineral estates who are not part of the Common Law Class (like Intervening Defendants) and who would have their interests affected if the Common Law Class were certified in their absence.

The Court cannot assess whether any given well has not produced either oil or gas for 12 consecutive months, let alone assess which of those wells have returned to production or may do so in the future. This will always leave open the possibility that the Common Law Class includes wells that are currently producing or have returned to production, confounding any attempt to ascertain the class and also poses a serious risk of harm to mineral owners. The Court would have to assess each of the 20,000-plus wells that Diversified owns in West Virginia to see: (1) whether it is producing oil; (2) whether it is producing gas; (3) whether it has failed to produce for 12 consecutive months; and (4) whether the well may return to production in the future. The Court already expressed skepticism about the ability to ascertain non-productive wells because wells may (and do) return to production after a period of non-production, and the Named Plaintiffs admitted that whether a well is producing or not is a moving target:

> **THE COURT**: Let me peek down the road a little bit. How are you going to prove ascertainability for a class?

6

> **MR. LUCKETT**: You mean the –
>
> **THE COURT**: Whether the members of the class are ascertainable.
>
> **MR. LUCKETT**: Whether they have a well on their property that has not produced.
>
> **THE COURT**: You have a list of those?
>
> **MR. LUCKETT**: Yes. Those can be obtained off DEP's website.
>
> **THE COURT**: So we're back to the DEP list.
>
> **MR. LUCKETT**: That's what I'm saying, Your Honor. Earlier if you were referencing a specific list that plaintiffs admitted at some time, that list changes, because more time is passing and some wells might start producing again.
>
> **THE COURT**: At some point we're going to stop having a moving target.
>
> **MR. LUCKETT**: Correct.

2023-09-21 *Hr'g Transcript* at 11:25–12:17. But the Court was right to express concern. There will never be a time when the target stops moving. A well could always be rehabilitated to resume production. Similarly, a producing well may cease production. Thus, a list based on non-production will always be in flux, and a class based on such a list is inherently not ascertainable. Such a class will always risk harm to mineral owners based on a well being inaccurately labelled as non-productive or a well resuming production.

Furthermore, even if one party or type of evidence indicates a well is nonproductive (like the Named Plaintiffs' supposed list), others may say differently. For example, the Named Plaintiffs pointed to West Virginia DEP data to argue that Joan Medley's well is not producing, but Intervening Defendants proved at a hearing that this well is in fact reporting production. *See Order* [Doc. 391] at 3–4. Resolving similar disputes about 20,000-plus wells' production history and their ability to produce in the future will require extensive fact-finding. This makes the proposed class not ascertainable. *See Morgan*, 2022 WL 16964705, at *3 (D. Md. Nov. 16, 2022) (granting motion to strike class allegations based in part on a lack of ascertainability because "class

7

members [we]re impossible to identify without extensive and individualized fact-finding or 'mini-trials'").

The complexities multiply when one tries to tie non-producing wells to surface estate owners. This would require the Court to identify every person or entity who owns West Virginia property and that has a well on the surface of that property. *Cf. Kirkman*, 220 F.R.D. at 52 (noting a "class member can only establish trespass if he shows . . . that he owned the land in question"). Plaintiffs allege the Common Law Class contains "individuals with more than 23,000 Diversified owned wells on their property . . . ." *Third Amended Class Action Complaint* [Doc. 322] ¶ 22. Thus, the Court would have to determine the location of 20,000-plus wells and identify the owners of those properties. Although the Named Plaintiffs claim this would be a simple task because "[r]ecords from county assessors' offices can be used to identify landowners who own property where those wells are located" or "Defendants' records will also identify the members of each class," *id.* ¶ 477, this record-by-record review for 20,000-plus wells is not feasible. The Court might "eventually be able to ascertain potential class members through detailed title searches, [but] this task is simply not administratively feasible given the number of potential members . . . ." *Kirkman*, 220 F.R.D. at 53.

But it is even worse because even if the Court goes through this already-burdensome process to identify surface owners, the Court will still not have identified all people with interests in the wells (*i.e.*, mineral owners like Intervening Defendants) and there is a demonstrable risk that the class would impact individuals who want no part in the relief sought. For example, imagine that Named Plaintiff Joan Medley was not a putative class representative, but the Court ascertained she was part of the putative class because she has a well on her surface estate. Even if the Court ascertained that Joan Medley was part of the putative class, that exercise would not have identified

8

Intervening Defendants (or those like Intervening Defendants), who were at risk of losing their interests in the well on the surface of Joan Medley's property without any opportunity to be heard.

Because the Court cannot ascertain the wells, putative class members, or the mineral owners with interests in this case, the Named Plaintiffs could never bear their burden of showing how the Common Law Class is ascertainable in an administratively feasible way. The Court should strike the Common Law Class now.

## II. THE NAMED PLAINTIFFS' CLAIMS ARE NOT TYPICAL OF THE COMMON LAW CLASS BECAUSE THE COMMON LAW CLAIMS ARE ABOUT INDIVIDUAL PROPERTY RIGHTS

According to the Named Plaintiffs, "[t]his lawsuit seeks to vindicate the common law property rights of thousands of West Virginia landowners." *Pls.' Memorandum in Opp'n to Defs.' Mot. to Dismiss* [Doc. 126] at 8. It is precisely because this case is about common law property rights that the Named Plaintiffs lack claims typical of the Common Law Class, especially the mineral owners therein. Even assuming the Named Plaintiffs experienced trespass or negligence on their properties, this does not prove the same thing happened on other properties—thus, the Named Plaintiffs' claims cannot be typical of the Common Law Class. *Waters*, 2016 WL 3926431, at *5 (striking class allegations because, among other things, "the named plaintiffs' proof of their claims will not necessarily prove any other class member's claim, and Rule 23(a)'s typicality requirement cannot be met"). Intervening Defendants' own experience in this case demonstrates the conflict between the Named Plaintiffs and other West Virginia property owners.

For example, a Named Plaintiff could allege that a well is a trespass on their particular property because it has not produced for 12 months, and the Named Plaintiff does not consent to the well without production. This may state a prima facie claim for trespass based on interference with the Named Plaintiff's right of possession. But a putative class member could want a non-producing well to remain on their own property because that putative class member wants—like

9

the Intervening Defendants—the well to return to production rather than being plugged (or wants to receive shut-in payments, or wants the well to be used for the storage of underground gas, etc.). Thus, the Named Plaintiffs' claim would not prove the claims of the putative class members and may conflict with the interests of the putative class members.

Under black-letter law, typicality cannot be satisfied when individual property rights issues like these exist. Typicality requires that a class representative "possess the same interest and suffer the same injury as the class members." *Id.* at *5 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)). Courts have recognized that "**one holder of certain rights to a parcel of property is not reliable to prove the claims of another** . . . ." *Parsons v. Columbia Gas Transmission, LLC*, 2022 WL 4809492, at *10 (S.D.W. Va. Sept. 30, 2022) (emphasis added). "**Thus, numerous federal courts analyzing putative class action cases involving real property and title issues have found that the typicality element did not support class certification**." *Id.* (emphasis added) (citing multiple examples).

The reason typicality cannot be satisfied in such circumstances is because the fact of injury to one's property interest is necessarily owner specific. Trespass happens on a property-by-property basis and is an injury to a possessory interest in a particular property. *See Memorandum Opinion and Order* [Doc. 202] 14 (noting trespass is a "nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's possession and use of that property."). Indeed, the essence of a trespass claim is injury to one's right to exclude others from one's property: "In every case where one man has a right to exclude another from his land, the common law encircles it, if not inclosed already, with an imaginary fence. And to break such imaginary fence, and enter the close of another, is a trespass[.]" *EQT Prod. Co. v. Crowder*, 828 S.E.2d 800, 806 (W. Va. 2019) (quoting *Haigh v. Bell*, 23 S.E. 666, 667 (W. Va. 1895)). Because of trespass law's focus on injury

10

to one's exclusive right of possession, "**the nature [of] [a] [p]laintiff's claim[] . . . for trespass . . . is such that class members will have suffered different injuries**, if they were injured at all." *Lautemann v. Bird Rides, Inc.*, 2019 WL 3037934, at *5 (C.D. Cal. May 31, 2019) (emphasis added) (granting motion to strike class allegations). Here, the Named Plaintiffs demand that many Diversified wells be plugged, but other West Virginia landowners (like Intervening Defendants) want the opposite.

The same problems arise under this case's negligence theory: there is a disconnect between what the Named Plaintiffs demand and what other West Virginia landowners want. The negligence claims assert that Diversified breached a duty to plug non-producing wells and this "caused harm to Plaintiffs by interfering with **their exclusive use, enjoyment, and possession of their properties**, and . . . **causing Plaintiffs annoyance, inconvenience, and aggravation**." *Third Amended Class Action Complaint* [Doc. 322] ¶ 498 (emphasis added). As a matter of law, proving that a particular well interfered with a Named Plaintiff's enjoyment of their own property will not prove a different well interfered with a different property owner's enjoyment of a different property. Nor will proving that a well annoyed or inconvenienced a Named Plaintiff prove that a different well annoyed or inconvenienced a putative class member.

The Court should strike the class allegations based on the absence of typicality given the fact that the Named Plaintiffs' claims do not rise and fall with the putative Common Law Class. The Court's opinion in *Waters* is illustrative. There, the plaintiffs sought to represent a putative class related to defective washing machines. *Waters*, 2016 WL 3926431, at *1. In response, the defendants moved to strike the class allegations. *See id.* The Court granted the motion to strike. *See id.* The Court reasoned that proving the fact of injury would be an individualized inquiry specific to each member of the putative class. *See id.* at *5 ("The issue of whether each class

11

member suffered damages as a proximate cause of any defect in their washing machines w[ould] depend upon individual factors such as the nature of each class member's use of their washing machine and steps taken to prevent or get rid of biofilm."). "Thus, **the named plaintiffs' proof of their claims w[ould] not necessarily prove any other class member's claim, and Rule 23(a)'s typicality requirement c[ould] [not] be met**." *Id.* (emphasis added).

Other courts have reached the same result as *Waters*. *See Brennan v. Rite Aid Corp.*, 263 F.R.D. 176, 177 (E.D. Pa. 2009) (striking class allegations because, among other things, "[t]he proof that Ms. Brennan offers to support her claim will be inadequate to support a claim for other members of plaintiff class").

Similarly, here, even if the Named Plaintiffs prove their trespass or negligence claims, this will not necessarily prove any other Common Law Class member's claim. Specifically, if the Named Plaintiffs prove an abandoned well interfered with their right of exclusive possession, this does not prove a different abandoned well on a different property interfered with a different person's different right of exclusive possession. The Court, therefore, would have to adjudicate the circumstances of each putative class member, their property, and the corresponding well—in other words, Plaintiffs' claims would not be typical of the class. *See Morgan v. Caliber Home Loans, Inc.*, 2022 WL 16964705, at *5 (D. Md. Nov. 16, 2022) (granting motion to strike class allegations and noting that if "a [c]ourt must make 'specific, individual inquiries as to each of the class plaintiffs regarding the critical issues, then there is no commonality and typicality'").

The Named Plaintiffs can represent their own interests in their own properties, but they cannot represent the interests of other property owners. The interests and circumstances of each property owner are individualized and unique to each property and property owner.

12

## CONCLUSION

For the reasons above and those apparent from the record, Intervening Defendants urge the Court to grant their Motion to Strike the Common Law Class Allegations.

>                               **CHESTER C. DODD, JR.,**
>                               **KATHRYN M. HUNT, and**
>                               **LINDA DODD FLUHARTY**
>                                    Intervening Defendants
>
>                               By: /s/ Patrick S. Casey
>                                    Counsel for Intervening Defendants

Patrick S. Casey (WVSB #668)
Sandra M. Chapman (WVSB #701)
Ryan P. Orth (WVSB #13029)
CASEY & CHAPMAN, PLLC
Wheeling, WV 26003
(304) 231-2405
(866) 296-2591 (fax)
and
G. Nicholas Casey, Jr. (WVSB #666)
4401 Kanawha Ave. SE
Charleston, WV 25304
(304) 610-4941

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

**MARK MCEVOY, et al., individually and**
**on behalf of a proposed class,**

       **Plaintiffs,**

v.                  Civil Action No. 5:22-cv-171-JPB

**DIVERSIFIED ENERGY COMPANY PLC,**
**et al.,**

       **Defendants.**

## CERTIFICATE OF SERVICE

   I hereby certify that on the 20th day of October, 2023, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF "MOTION TO STRIKE THE COMMON LAW CLASS ALLEGATIONS BY CHESTER C. DODD JR., KATHRYN M. HUNT, AND LINDA DODD FLUHARTY" with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

                 **CHESTER C. DODD, JR.,**
                 **KATHRYN M. HUNT, and**
                 **LINDA DODD FLUHARTY**
                 Intervening Defendants

                 By: /s/ Patrick S. Casey
                  Counsel for Intervening Defendants

Patrick S. Casey (WVSB #668)
Sandra M. Chapman (WVSB #701)
Ryan P. Orth (WVSB #13029)
CASEY & CHAPMAN, PLLC
Wheeling, WV 26003
(304) 231-2405
(866) 296-2591 (fax)
and
G. Nicholas Casey, Jr. (WVSB #666)
4401 Kanawha Ave. SE
Charleston, WV 25304
(304) 610-4941