**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

| | |
|---|---|
| MARK MCEVOY, *et al.*, <br>       Plaintiffs, <br><br> v. <br><br> DIVERSIFIED ENERGY COMPANY PLC, *et al.*, <br>       Defendants. | Civil Action No. 5:22-cv-00171-JPB <br> Judge John P. Bailey |

**DIVERSIFIED'S MOTION TO COMPEL PLAINTIFFS TO PRODUCE
MATERIALS CONSIDERED BY THEIR EXPERT WITNESS LUKE PLANTS**

Settled law requires an expert to disclose all materials (*i.e.*, documents and data) that he considered in forming his opinions.  *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring disclosure of "the facts or data considered by the witness in forming" an expert's opinion).  Here, Plaintiffs' proposed expert Luke Plants issued opinions and authored an expert report that opines on the cost of well plugging based on his consideration of materials from his plugging company, Plants and Goodwin, Inc. ("Plants & Goodwin").  But Plaintiffs failed to disclose all materials that Mr. Plants considered despite the Court indicating that "Defendants w[ould] get all of the information they are entitled to, at the appropriate time, under Rule 26 . . . ."  Order (Doc. 299) at 4–5.  Thus, Diversified served a subpoena asking for the materials as a belt-and-suspenders approach.[1]  Even in the face of that subpoena Plaintiffs are still withholding materials that they must produce.  Thus, Diversified[2] moves to compel Plaintiffs to produce the requested materials.  Mr. Plants's Report is attached as **Exhibit A** and the disputed subpoena is attached as **Exhibit B**.

---

[1] In addition to the required disclosure materials, the subpoena also seeks certain additional materials related to Mr. Plants's bias.

[2] "Diversified" means Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation.

The evidentiary record establishes that Diversified's average cost to plug wells in West Virginia is roughly $25,000.  In an attempt to rebut that fact, Plaintiffs retained Mr. Plants and had him opine that it actually costs more to plug wells in West Virginia; that opinion was based on the higher cost structure and charges of Mr. Plants's own company, Plants & Goodwin.  Putting aside the disconnect of using a smaller company's higher costs in comparison to the leading plugging company of Diversified, Mr. Plants compares Plants & Goodwin's alleged costs to plug orphan and third-party wells with Diversified's costs to plug its own wells in his report.  To make that comparison, Mr. Plants reviewed a total of 40 wells plugged by Plants & Goodwin—without disclosure of (1) information about the age, depth, or location of these wells or (2) cost information for wells that Mr. Plants has plugged but that are not included in his average.  Without producing the supporting materials, Mr. Plants simply states—***based on his plugging experience at Plants & Goodwin***—there are no differences in the cost to plug wells across states in Appalachia and the costs to plug orphaned wells are comparable to the costs to plug operated wells.  This is just one example of the types of materials that Mr. Plants considered when forming his opinions but that Plaintiffs have still not produced.

Diversified is not required to take Mr. Plants's word that the data he considered matches the characterizations in his report.  The Federal Rules of Civil Procedure recognize Diversified's right to challenge Mr. Plants's opinions by reviewing the actual materials Mr. Plants considered and the data that is the basis of his opinions.  Plaintiffs should have already produced these materials, and the Court should grant this motion.

**BACKGROUND**

Luke Plants is the Chief Executive Officer of Plants & Goodwin.  *See* Ex. A (Plants Report)

at 39.  Plants & Goodwin "competes with Diversified in plugging oil and gas wells in the

Appalachian Basin."  Maddox Decl. (Doc. 217-1) ¶ 3.  Mr. Plants was retained to act as Plaintiffs'

expert witness and formed three opinions "[b]ased on [his] years of experience in the plugging

industry in Appalachia," public information, and documents produced in this case.  *Id.* at 3–4.

First, Mr. Plants estimated the average cost to plug Diversified's wells based on his "***own costs to***

***plug wells*** in Appalachia."  *Id.* at 3 (emphasis added); *see also id.* at 8 (basing his opinion on "[his]

own experience plugging wells"); *id.* at 30 (claiming inconsistency based on his profit margins at

Plants & Goodwin).  Second, Mr. Plants challenges Diversified's internal accounting of plugging

AFEs based on his experience at Plants & Goodwin.  *See id.* at 34 (challenging Diversified's AFEs

based on "[his] experience in the plugging business").  Third, Mr. Plants claims that plugging costs

will be more expensive in the future based on historical trends in Plants & Goodwin's operations.

*See id.* at 35 (basing his opinion on an increase in costs at Plants & Goodwin to plug wells).

Before Mr. Plants issued his report with his plugging cost opinions, both Plaintiffs and

Diversified served subpoenas with the aim of assessing the costs of well plugging.  Plaintiffs served

two subpoenas to third parties, one of which is a Diversified subsidiary.  *See* Subpoena (Doc. 250-

1) at 1 (seeking data from Nick's Well Plugging, LLC); Subpoena (Doc. 173-1) at 1 (seeking data

from Next LVL Energy, LLC).  Among other things, Plaintiffs requested plugging invoices,

documents to support budgets, bid packages, plugging schedules, and financial statements.  *See*

*generally* Subpoena (Doc. 250-1) at Exhibit A.  Diversified sought similar materials from

Mr. Plants.  *See* First Subpoena to Plants (Doc. 216-1) at Ex. A.

Despite requesting similar documents from third parties, Plaintiffs and Mr. Plants resisted the subpoena, and Magistrate Mazzone granted Plaintiffs' motion for a protective order. *See* Order (Doc. 283) at 1. Magistrate Mazzone reasoned that Diversified's requests were premature "because expert reports have not yet been disclosed, and the information sought in the subpoenas relates to the parties to this action and Plaintiffs' designated expert." *Id.* at 5.[3]

After Defendants objected to Magistrate Mazzone's order, the Court upheld the order because "any relevant information held by Mr. Plants and Plants & Goodwin is a result of Mr. Plants's expert professional knowledge of the market for well-plugging," and, therefore, the requests needed to wait until the time for expert discovery. *See* Order (Doc. 299) at 4–5. But the Court added that "Defendants will get all of the information they are entitled to, at the appropriate time, under Rule 26 and this Court's scheduling order." *Id.* That time is now.

Under the Court's scheduling order, the time for Plaintiffs to disclose Mr. Plants's report and the materials he considered when reaching his opinions was June 19, 2024. *See* Scheduling Order (Doc. 607) at 1. On that date, Plaintiffs provided Mr. Plants's report and several summary spreadsheets, but the actual data Mr. Plants considered was not produced.[4] There are several categories of data Mr. Plants considered that are absent.

After discovering Plaintiffs' deficient disclosures, and following the Court's instructions to wait until expert discovery, Diversified filed a notice of subpoena to Mr. Plants on June 28, 2024. *See* Ex. B (Subpoena) at 1. Although not necessary given Plaintiffs' disclosure duty, the subpoena was an attempt to obtain the materials without requiring the Court's intervention.

---

[3]   Another basis for Magistrate Mazzone's Order was Plaintiffs' suggestion that they might "choose not to have Mr. Plants testify as an expert." Order (Doc. 283) at 5. That, obviously, never happened.

[4]   Since then, Plaintiffs produced additional high-level invoices for 2018 and 2020 and represented that this data is the most granular detail still available for those years. This, despite Mr. Plants's assertion that Diversified's own, more detailed invoices, are somehow incomplete. Regardless, if Plaintiffs represent that certain Bates-stamped documents are the only extant documents responsive to specific Requests then Diversified recognizes there is nothing more to be done for those Requests.

After filing the notice of subpoena, Diversified called Plaintiffs' counsel, Mike Becher, to ask whether Plaintiffs would accept the subpoena for their expert.  Plaintiffs said they would not accept the subpoena and told Diversified to instead send the subpoena to Mr. Plants's personal counsel.  *See* Ex. C (June Email Thread) at 1.  Diversified next contacted Mr. Plants's counsel to see if they would accept the subpoena, and they did so.

Subsequently, despite the earlier talk with Mr. Becher and the request that Plaintiffs accept the subpoena, Plaintiffs emailed Diversified and acted surprised by the subpoena to Mr. Plants.  *See* Ex. D (July Email Thread) at 4.  Plaintiffs abruptly reversed course and argued the subpoena "should be directed at Plaintiffs via Rule 26 and not at the expert directly via Rule 45 . . . ."  *Id.*  Plaintiffs and Mr. Plants also objected to the discovery requests.  *See generally* Ex. G (Pls.' Objections); Ex. H (Plants Objections).

At Plaintiffs' request, Diversified attended a meet and confer with Plaintiffs on July 15, 2024.  During that call, Plaintiffs refused to provide any materials and insisted the subpoena— which, again, they told Diversified to send to Mr. Plants—be withdrawn before they would discuss the Requests.  Diversified refused and the call ended.  Diversified again talked with Plaintiffs around July 16, 2024.  *See* Ex. D (July Email Thread) at at 1.  During that call, Plaintiffs said that if Diversified identified the Requests for which discrete documents might be sufficient and also proposed search terms for the remainder, Plaintiffs would consider producing the materials.  *See* Ex. E (Second July Email Thread) at 1.  After Diversified did so, Plaintiffs flatly refused to produce any materials without explanation.  *See id.*  On August 1, 2024, Diversified made one more attempt to negotiate.  *See* Ex. F (August Email Thread) at 2.  Nothing changed, and the parties agreed to proceed with briefing.  *See id.* at 1.  Under the agreed schedule, this motion was due on August 9, 2024; the response is due on August 16, 2024; and the reply is due on August 21, 2024.  *See id.*

## **LEGAL STANDARD**

Regarding the motion to compel, the Federal Rules state that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Any "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The party opposing the motion to compel bears the burden of proving why the motion should not be granted." *Pajak v. Under Armour, Inc.*, 2020 WL 265205, at *2 (N.D. W. Va. Jan. 17, 2020) (citing *Rogers v. Tri-State Materials Corp.*, 51 F.R.D. 234, 247 (N.D. W. Va. 1970)).

Regarding Plaintiffs' duty to produce the materials Mr. Plants considered without awaiting a discovery request, the Federal Rules state that an expert's report must include "the facts or data considered by the witness in forming" the expert's opinion. Fed. R. Civ. P. 26(a)(2)(B)(ii). "[C]ourts interpret the term 'facts or data' broadly to require the mandatory disclosure of data considered by the expert." *Rinehart Racing, Inc. v. S & S Cycle, Inc.*, 2014 WL 222887, at *1 (W.D. N.C. Jan. 21, 2014) (citation omitted); *accord* Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment (stating "the intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients" and that "[t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert"). The disclosure requirements "are self-executing; the rule mandates what the expert report *must* contain." *Rinehart Racing*, 2014 WL 222887, at *1 (citing Fed. R. Civ. P. 26(a)(2)(B)).

6

## ARGUMENT

There are three categories at issue: (1) materials Mr. Plants considered when creating his report; (2) materials related to the bases of Mr. Plants's opinions; and (3) materials concerning Mr. Plants's bias against Diversified as a competitor.  All three must be produced.

## I.      MATERIALS MR. PLANTS CONSIDERED WHEN CREATING HIS REPORT

Plaintiffs should have already produced the material responsive to most of the Requests because those Requests are for materials that Mr. Plants considered when forming his opinions. Because Mr. Plants considered the data sought in the Requests when forming his opinions, Plaintiffs were under an obligation to affirmatively produce the data under Federal Rule of Civil Procedure 26.  Because they did not, Plaintiffs must now be compelled to produce the data or face the exclusion of Mr. Plants as an expert witness.

The law is settled on this point.  An expert's report must disclose "the facts or data considered by the witness in forming" the expert's opinion.  Fed. R. Civ. P. 26(a)(2)(B)(ii). "[C]ourts interpret the term 'facts or data' broadly to require the mandatory disclosure of data considered by the expert."  *Rinehart Racing*, 2014 WL 222887, at *1 (citation omitted).  "The inclusion of the requirement to produce 'facts or data' is broadly interpreted to require disclosure of any material considered by the expert that contains factual ingredients; it is not limited to the facts or data relied on by the expert."  *JJI Int'l, Inc. v. Bazar Grp., Inc.*, 2013 WL 3071299, at *4 (D. R.I. Apr. 8, 2013) (citation omitted); *accord Schwarz & Schwarz of Virginia, L.L.C. v. Certain Underwriters at Lloyd's, London*, 2009 WL 1043929, at *6 (W.D. Va. Apr. 17, 2009) ("[T]he 'data or other information considered' requirement is quite broad . . . .").  Thus, the Federal Rules require production of "***any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected***."  *Bazar*, 2013 WL 3071299, at *4

(emphasis added) (quoting *Fialkowski v. Perry*, 2012 WL 2527020, at *3 (E.D. Pa. June 29, 2012)); *see also Lamonds v. Gen. Motors Corp.*, 180 F.R.D. 302, 306 (W.D. Va. 1998).

Mr. Plants's expert report leaves no doubt that he considered the data sought in most of the Requests when reaching his opinions.  For example, Mr. Plants states his estimate of Diversified's plugging costs, his first opinion, was based on his "own costs to plug wells in Appalachia."  Ex. A (Plants Report) at 3.  Mr. Plants also states that "[f]or the purpose of []his analysis, [he] w[ould] use [his] personal well plugging data—from [his] company, Plants & Goodwin, Inc.—from 2018 and 2020 . . . ."  *Id.* at 8.  Mr. Plants adds that his "opinion is based on [his] own experience plugging wells . . . ."  *Id.* at 10.  Mr. Plants's report includes several examples of how he used his data and his company's materials in his analysis.  *See, e.g.*, *id.* at 8 (basing opinion on his experience plugging at Plants & Goodwin); *id.* at 17 (same); *id.* at 16 (comparing profit margins between Plants & Goodwin and Next LVL); *id.* at 30 (same).

As discussed further below, Requests 1, 2, 4–13, 15–24, 28–31, 58, and 59 are each related to the data that Mr. Plants considered when forming his opinions.  *See* Ex. B (Subpoena) at 1–6.  Thus, Plaintiffs must produce the requested data, regardless of any discovery request from Diversified, or they must face the exclusion of Mr. Plants.

### A.   Materials Related to Wells Included in Mr. Plants's Plugging Averages

Requests 1 and 2 seek materials related to Plants & Goodwin's "cost of plugging, location, and API number of every conventional gas well plugged" from January 1, 2018 to present.  *See id.* at 1.  The Requests are based on Mr. Plants's consideration of his "company's average cost of plugging conventional gas wells in 2018 . . . and in 2020" in his report.  *See* Ex. A (Plants Report) at 3.  The Requests are also based on Mr. Plants's consideration of the alleged trend upward in Plants & Goodwin's plugging costs from 2018 to 2020 and the continued inflation he predicts. *See id.* at 35.

**B.**      **Materials Related to Wells Excluded from Mr. Plants Plugging Averages**

Requests 4 and 5 seek materials concerning Mr. Plants's and Plants & Goodwin's costs to plug wells and the associated plugging data because Mr. Plants considered those materials.

Request 4 seeks materials from July 1, 2016 to the present "concerning [Mr. Plants's] own costs to plug wells in Appalachia because, as stated on page 3 of [Mr. Plants's] report, [his] cost estimate for Diversified is based on such materials."   Ex. B (Subpoena) at 2 (cleaned up). Mr. Plants's report states his estimate of Diversified's costs was based, in part, on his "years of experience in the plugging industry in Appalachia" and includes consideration of his company's plugging costs in 2018 and 2020.  *See* Ex. A (Plants Report) at 3.  Mr. Plants repeatedly considered Plants & Goodwin's plugging costs.  *See id.* at 8, 10, 16, 17, 30.

Request 5 seeks materials from January 1, 2018 to July 1, 2020 "concerning the personal well plugging data—from . . . Plants & Goodwin, Inc.—from 2018 and 2020 . . . ."  Ex. B (Subpoena) at 2.  Mr. Plants also considered this data.  *See* Ex. A (Plants Report) at 8 ("For the purpose of this analysis, I will use my personal well plugging data—from my company, Plants & Goodwin, Inc.—from 2018 and 2020 . . . .").

**C.**      **Operations and Accounting Data**

Requests 6–8 seek materials related to the scheduling of wells for plugging, discounts he offered for plugging services, and accounting practices.  *See* Ex. B (Subpoena) at 2.  Mr. Plants opined on all of these topics and, as with all of his opinions, he considered his plugging experience when doing so.  *See* Ex. A (Plants Report) at 3.  Furthermore, Mr. Plants contrasts Diversified's own practices with those of Plants & Goodwin, meaning he considered the practices and data of Plants & Goodwin.  *See id.* at 34.

9

### D.      Plugging Comparison Data

Requests 9–13 seek materials based on Mr. Plants's consideration of various topics: orphan wells, alleged diseconomies of scale as plugging companies grow, access to plugging equipment, and alleged upward pressure on plugging prices.  *See* Ex. B (Subpoena) at 2.  Mr. Plants considers Plants and Goodwin's data for each topic.  *See* Ex. A (Plants Report) at 17 ("It is my opinion from my experience that orphan wells have similar costs to wells with identifiable operators."); *id.* at 35 (stating Plants & Goodwin's costs have increased and opining the "three primary drivers of [plugging cost] inflation are" a shortage of plugging equipment, upward pressure on prices, and wage requirement increases).

### E.      Materials Related to Mr. Plants's Alleged Experiences at Plants & Goodwin

Requests 15–18 ask for documents concerning Mr. Plants's experience with things in his report.  Request 15 seeks materials "concerning [Mr. Plants's] 'experience' with the lowest cost to plug wells, as stated on page 8 of [his] report."  Ex. B (Subpoena) at 3.  Request 16 seeks materials "concerning the location, 'depth, construction, and age' of the wells that [Mr. Plants] claim[s] on page 8 of [his] report are similar to Diverisified's wells."  *Id.*  Request 17 seeks materials "concerning each of the 'regulatory standards' across the states at issue on page 10 of [Mr. Plants's] report."  *Id.*  Request 18 seeks materials "concerning any decrease in costs to plug, remediate, or decommission a well based on regulators waiving or altering the regulatory standards [Mr. Plants] discuss[ed] on page 10 of [his] report."  *Id.*  By their own terms, the Requests seek materials Mr. Plants considered.

### F.      Materials Related to Mr. Plants's Average Cost Tables

Requests 19 and 20 also seek matters considered in Mr. Plants's report.  To start, Request 19 seeks materials "concerning any category of costs identified in the tables on page 11–14 of [the] report."  *Id.*  In his report, Mr. Plants provides a series of tables related to the costs of "a typical

plugging job in Appalachia . . . ."  Ex. A (Plants Report) at 10.  His opinion about these plugging jobs and their costs "is based on [his] own experience plugging wells . . . ."  *Id.*  The tables are combined with analysis based on Mr. Plants's plugging experience and his resultant view of what a plugging job costs.  *See id.* at 11–14.  There is no support for many of Mr. Plants's assertions in that analysis outside Mr. Plants's alleged personal experiences and data.

Relatedly, Request 20 seeks materials about three expensive wells Mr. Plants identifies and considers in his report.  *See* Ex. B (Subpoena) at 3.  Mr. Plants opines at relative length about these three wells that ended up "costing over $400,000 each."  Ex. A (Plants Report) at 16.  He then claims that Diversified must face the same difficulties when plugging its own wells.  *See id.*

### G. Materials Related to Cost Increases, Bids and Actual Costs, Profit Margins, and Wage Requirements

Requests 21–23 and 29–31 are limited to Mr. Plants's contentions on pages 16 and 35 of his report.  Ex. B (Subpoena) at 3–4.  Specifically, the Requests seek materials related to: (1) Mr. Plants's contentions that complicated wells like the expensive Plants & Goodwin wells are also in Diversified's inventory; (2) Mr. Plants's contentions that expensive plugging jobs are not identifiable before plugging starts; (3) Mr. Plants's contentions that the average cost of plugging increased by 75% for Plants & Goodwin; (4) documents about the hours to plug various wells based on Mr. Plants's consideration of his company's average plugging costs and increases in those costs; (5) documents pertaining to bids and actual costs based on Mr. Plants's contentions about Plants & Goodwin costs and profit margins; and (6) the impact of Davis Bacon Wage requirements on Plants & Goodwin's costs based on Mr. Plants's consideration of the impact of those costs on plugging operations.  *See id.*

If there are materials that Mr. Plants considered when offering his opinions on these topics, they must be produced.  If, however, Mr. Plants's contentions are not based on consideration of

any materials and were instead plucked out of thin air by Mr. Plants, Diversified would accept that representation—and take the necessary corresponding action—too.  To date, however, Plaintiffs and Mr. Plants have refused to either produce the documents or make any representation that there are no documents to produce.

###### H.      Comparisons of Orphaned Wells and Operated Wells

Request 24 seeks materials "concerning comparisons of orphaned wells and non-orphaned wells."  *See id.* at 3.  According to Mr. Plants, "[i]t is [his] opinion from [his] experience that orphan wells have similar costs to wells with identifiable operators."  Ex. A (Plants Report) at 17.  Plaintiffs must provide the materials Mr. Plants considered when reaching this opinion, which is directly based on his experience plugging orphan wells and non-orphan wells.

###### I.      Number of Plants & Goodwin Clients That Complete Their Own Access or Remediation Work

Request 28 seeks only "[d]ocuments sufficient to show the number of [Plants & Goodwin] clients that perform their own access or remediation work . . . ."  Ex. B (Subpoena) at 4.  Mr. Plants said the average Plants & Goodwin costs that he compares to Diversified's costs "are conservative because many of the projects included in the averages do not include access or remediation costs, as some of [his] clients prefer to do that work internally."  Ex. A (Plants Report) at 8.  Diversified must have the data Mr. Plants considered to challenge his claim that his costs are conservative based on the number of clients that do their own work.

###### J.      Other Materials Mr. Plants Considered

Requests 58 and 59 are simple catch-all requests that duplicate the Federal Rules of Civil Procedure in the hopes of avoiding this exact dispute.  These Requests ask for all documents upon which Mr. Plants relied, or that Mr. Plants considered, when reaching his opinions to the extent such documents were not captured by other Requests.  *See* Ex. B (Subpoena) at 6.  One could say

that such Requests are not necessary because Plaintiffs were already obligated to produce such materials. This motion, however, shows that Plaintiffs were not going to affirmatively produce all materials within the scope of the Federal Rules. To the extent that Plaintiffs are withholding other materials Mr. Plaints considered, Plaintiffs must produce the materials under these Requests.

At bottom, then, all of the above Requests seek materials that Mr. Plants considered in reaching his opinions. Under Federal Rule of Civil Procedure 26, Plaintiffs must provide the materials. *See Schwarz*, 2009 WL 1043929, at *6 ("[A]ll the information required by Rule 26(a)(2)(B) must be disclosed at the time Lloyd's chose to disclose expert McGreal, including the data or other information considered by McGreal in forming his opinions.") (cleaned up).

Plaintiffs' failure to affirmatively disclose the data sought in these Requests makes this case similar to *Rinehart Racing*, where a "[d]efendant's expert witness relied on raw survey data to form the opinions provided in the expert report." 2014 WL 222887, at *1. The defendant "failed to produce this underlying data as part of its mandatory disclosures pursuant to Rule 26(a)(2)(B)." *Id.* The court remarked that other courts had already held that this type of raw data must be produced. *See id.* The court added that "no subpoena was required to obtain such information" because the defendant was "required to produce this data at the time it provided . . . the expert witness report, not at a time of its choosing." *Id.* The court ordered the production of the data and warned that a failure to produce it would lead to the exclusion of the expert. *See id.*

Plaintiffs face the same choice: produce the data supporting Mr. Plants's opinions so that those opinions may be tested or face the exclusion of Mr. Plants.[5]

---

[5]   If Plaintiffs do not provide the requested materials, the opinion of Mr. Plants will need to be excluded. *See, e.g.*, *Wise v. C.R. Bard, Inc.*, 2015 WL 521202, at *8 (S.D. W. Va. Feb. 7, 2015) ("[T]he plaintiffs contend that . . . Dr. Klosterhalfen's reliance on his personal database is part of his knowledge and experience. . . . *I allowed Dr. Klosterhalfen to rely on his personal database in his expert opinions*. . . . Here, Bard timely moved to compel. Magistrate Judge Eifert has indicated . . . that she *is not inclined to allow Bard access to the raw data in Dr. Klosterhalfen's database* . . . . I agree . . . . Through Bard's Motion to Compel, this issue has developed, and *I now find that without a fully synthesized representation of Dr. Klosterhalfen's database, specific reliance*

## II.  MATERIALS RELATED TO THE BASES OF MR. PLANTS'S OPINIONS

Plaintiffs must produce the materials responsive to Requests 3, 25–27, 34, and 35.  These materials seek the raw data underlying Mr. Plants's opinions.  While Mr. Plants likely considered the material sought in these Requests just like the above materials, he does not explicitly say so.  But this data forms the bases of his opinions and, thus, was implicitly something he considered.  The materials are the raw data that is the basis of Mr. Plants's testimony and must be produced.

Experts must produce the data that serves as the basis of their testimony.  *See, e.g.*, *Bazar*, 2013 WL 3071299, at \*5 (finding a party "should have provided the raw survey data with its expert disclosure" because that data was the basis for an opinion about the survey); *Reliance Ins. Co. v. Keybank U.S.A., Nat'l Ass'n*, 2005 WL 8171472, at \*3 (N.D. Ohio Dec. 1, 2005) ("Certainly the documents underlying a study relied on and created by an expert are open to discovery.").

Here, Diversified seeks "documents sufficient to show" certain data and materials about the plugging of Diversified or EQT wells.  If such documents exist, they are highly relevant to Mr. Plants's opinions, necessarily considered when reaching those opinions, and should be produced.

Request 3 seeks documents that Mr. Plants exchanged with the company (Zefiro) that recently acquired Plants & Goodwin that are related to the company's profit margins and the outlook for the company's plugging and related costs.  *See* Ex. B (Subpoena) at 1.  This Request is based on Mr. Plants's opinion that plugging costs will only increase in the future based on his company's experience.  *See* Ex. A (Plants Report) at 35.  Mr. Plants's consideration of his company's cost outlook likely included data related to the company's outlook and its contemporaneous sale.

---

*on that database is unreliable*.  Accordingly, Bard's motion with regard to Dr. Klosterhalfen's personal database is granted**,** and these opinions are excluded.") (emphasis altered and cleaned up).  Diversified will address this at the appropriate time as necessary.  Diversified is not seeking such a ruling through this motion.

Requests 25 through 27 seek only "documents sufficient to show" the: (1) number of wells plugged per rig operating under Mr. Plants's control from July 1, 2016 to present; (2) number of wells plugged per crew for the same time; and (3) total number of plugging rigs in Appalachia. *See* Ex. B (Subpoena) at 3–4.  These materials provide the raw data that Mr. Plants's necessarily considered in reaching his opinions.  Specifically, Mr. Plants states that "[r]igs will be used as a unit of measurement for well plugging capacity."  Ex. A (Plants Report) at 7, n. 34.  He also opines that a large determiner of plugging costs, including the average costs and Plants & Goodwin-specific costs he uses to criticize Diversified, is rig mobilization.  *See id.* at 11.

Requests 34 and 35 seek documents related to Mr. Plants's work to plug Diversified or EQT-owned wells.  *See* Ex. B (Subpoena) at 4.  Mr. Plants repeatedly draws a comparison between his work plugging wells and Diversified's work plugging wells.  *See* Ex. A (Plants Report) at 14–15 ("In both 2018 and 2020, Plants & Goodwin successfully plugged 40 conventional gas wells in the Appalachian Basin.  While the depth, construction, and the age of these wells varies, I believe them to be representative of the wells that Diversified is required to decommission based on my review . . . of Diversified's well inventory . . . ."); *id.* at 3 ("My company's average cost of plugging conventional gas wells in 2018 was $80,000 and in 2020 was $140,000 per well."); *id.* at 8 ("For the purpose of this analysis [of plugging costs], I will use my personal well plugging data—from my company, Plants & Goodwin, Inc.—from 2018 and 2020 . . . .").  It is difficult to imagine raw data more relevant to the cost comparison between Plants & Goodwin and Diversified than an instance in which Plants & Goodwin plugged one of Defendants' wells.

III.   **MATERIALS THAT EVINCE MR. PLANTS'S BIAS AGAINST DIVERSIFIED AS A COMPETING PLUGGING SERVICE PROVIDER**

Plaintiffs must produce the materials responsive to Requests 14, 32, 33, and 36–39, 43–50, and 56–57.  These materials are all related to Mr. Plants's bias as either a competitor of Diversified or someone motivated by personal animus against Defendants.  *See* Ex. B (Subpoena) at 3–6.  "[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  *Thompson v. Allstate Prop. & Cas. Ins. Co.*, 2019 WL 438367, at *3 (N.D. W. Va. Feb. 4, 2019) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)).

## <u>CONCLUSION</u>

The Court promised that "Defendants w[ould] get all of the information they are entitled to, at the appropriate time, under Rule 26 and this Court's scheduling order."  Order (Doc. 299) at 4–5.  The time has come.  Plaintiffs cannot carry their burden of explaining why the requested materials should not be produced, and the Court should grant this motion.

16

Respectfully submitted,

 /s/ Howard Persinger, III
Howard Persinger, III (WVSB #6943)
**PERSINGER & PERSINGER, L.C.**
237 Capitol Street
Charleston, WV 25301
Phone:   (304) 346-9333
Fax:      (304) 346-9337
Email:   hmp3@persingerlaw.com

Kenneth Young
Dustin Womack
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone:   (713) 836-3600
Fax:      (713) 836-3601
Email:   kenneth.young@kirkland.com
            dustin.womack@kirkland.com

Dated: August 9, 2024

Daniel Donovan, P.C.
Ragan Naresh, P.C.
Alexis Hill
Maria Kearns-Galeano
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone:   (202) 389-5267
Fax:      (202) 389-5200
Email:   daniel.donovan@kirkland.com
            ragan.naresh@kirkland.com
            ahill@kirkland.com
            maria.kearnsgaleano@kirkland.com

*Counsel for Defendants Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Diversified met and conferred with Plaintiffs concerning the matters in this motion several times, most recently on August 1, 2024. Plaintiffs do not agree to the relief requested.

 /s/ Howard Persinger, III
Howard Persinger, III (WVSB #6943)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 9, 2024, a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

 /s/ Howard Persinger, III
Howard Persinger, III (WVSB #6943)

17