IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

**MARK MCEVOY,** *et al.*,

    Plaintiffs,

v.                                                       Civil Action No. 5:22-cv-00171-JPB
                                                    Judge John P. Bailey

**DIVERSIFIED ENERGY COMPANY PLC,** *et al.*,

    Defendants.

### WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING DISMISSAL

Comes now the West Virginia Department of Environmental Protection's Office of Oil and Gas ("WVDEP OOG"), by counsel C. Scott Driver and the WVDEP Office of Legal Services, to move this Court to intervene in this matter for the limited purpose of seeking dismissal.

The WVDEP OOG is charged by West Virginia's Legislature with regulating the exploration for, and production of, oil and gas resources in the State of West Virginia. Among other things, that responsibility extends to supervising the plugging of abandoned and orphaned oil and gas wells in addition to overseeing the transfer of operator status and its concomitant plugging liability.

This case, therefore, concerns WVDEP OOG's regulatory interests. For example, the primary (though not sole) challenge has been to WVDEP OOG's authority to require West Virginia permittees via Consent Order to plug oil and gas wells that have been abandoned or orphaned wells. *See generally* Consent Order (ECF NO. 182-1). The Consent Order derives its authority from West Virginia Code § 22-6-2, which charges the WVDEP cabinet secretary with

the "supervision of the execution and enforcement of matters related to oil and gas." W. Va. Code § 22-6-2. West Virginia statutory law includes a presumption that wells that have not produced for 12 consecutive months are abandoned. *See* W. Va. Code § 22-6-19. But the WVDEP OOG may choose not to require the plugging of such wells if it believes the well may have a bona fide future use. *See id.* Thus, West Virginia law states that a schedule for plugging abandoned wells "*may be requested by anyone desiring to fulfill the plugging requirements over an extended period*." W. Va. Code R. § 35-6-7 (emphasis added). The WVDEP OOG also supervises any effort to plug wells and allows all parties with an interest to have an appropriate hearing. *See* W. Va. Code §§ 22-6-23, 22-6-28.

This case also implicates WVDEP OOG's authority over the transfer of operator status and plugging liability. The WVDEP OOG is the administrative agency tasked with overseeing the transfer of wells between operators (which corresponds to plugging liability). But Plaintiffs demand to either unwind the transfer of wells between Diversified and EQT altogether or to at least reimpose plugging liability from Diversified back on to EQT; the opposite of what WVDEP OOG imposed by approving those transfers. The WVDEP OOG, not private Plaintiffs, is in the best position to ascertain the operator most able to manage assets and to plug wells.

There is simply no way to find that the wells subject to the Consent Order are abandoned outside of WVDEP OOG's determination, to alter the party responsible for plugging without WVDEP OOG approval, or to effectuate any type of plugging and reclamation without the WVDEP OOG's oversight. But that is what Plaintiffs are trying to do. Because this case is interfering with WVDEP OOG's interests and is contrary to WVDEP OOG's administrative powers, the WVDEP OOG files this motion to intervene for the limited purpose of seeking

dismissal of this case. The Court should grant the motion because the WVDEP OOG satisfies the standard for intervention as of right and, certainly, the standard for permissive intervention.

### STANDARD OF REVIEW

Liberality as to intervention is desirable. *See United States v. Exxonmobil Corp.*, 264 F.R.D. 242, 245 (N.D. W. Va. 2010) ("[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process" (internal quotation and citation omitted)).

Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure:

> On timely motion,[1] the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Fourth Circuit has enumerated factors to be considered for a Rule 24(a) intervention of right:

> This court has interpreted Rule 24(a)(2) to entitle an applicant to intervention of right if the applicant can demonstrate: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.

*Teague v. Bakker*, 931 F.2d 259, 260-261 (4th Cir. 1991) (citation omitted). "Generally, to intervene as a matter of right a party must have a significant protectable interest in the outcome

---

[1] The WVDEP OOG's motion is timely because it has only now, after interlocutory oral argument before the Fourth Circuit, become apparent that the WVDEP OOG will have to itself assert its sovereign interests in this proceeding, notwithstanding its sovereign immunity (which it does not waive in seeking intervention for the limited purpose of moving for dismissal), to address the dispositive defenses it wishes to assert in order to assert its sovereign immunity to not have those addressed against its interests in its absence. Furthermore, the WVDEP OOG's motion comes only shortly after the intervention of additional Plaintiffs wishing to assert claims, which was held to be timely. Finally, the WVDEP OOG's motion to dismiss is based, in part, on the WVDEP OOG's sovereign immunity and, therefore, implicates the Court's jurisdiction; thus, the Court is obligated to assess the argument regardless of timeliness. *See Sabine Pipe Line, LLC v. A Permanent Easement of 4.25 +/- Acres of Land in Orange Cnty.*, 327 F.R.D. 131, 144 (E.D. Tex. 2017) (noting certain administrative agencies "cannot be joined due to [their] Eleventh Amendment immunity, which deprives the court of subject matter jurisdiction").

of the litigation." *Exxonmobil*, 264 F.R.D. at 245 (internal quotation and citation omitted). However, the Fourth Circuit has recognized that such an interest includes a contingent interest. *Teague*, 931. F.2d at 261; see also *Exxonmobil*, 264 F.R.D. at 245 (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984) ("The rule does not require, after all, that [potential intervenors] demonstrate to a certainty that their interests will be impaired in the ongoing action. It requires only that they show that the disposition of the action 'may as a practical matter' impair their interests.")).

Alternatively, Rule 24(b) sets forth two types of permissive intervention. The first form is under Rule 24(b)(2) and states:

> On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

Meanwhile, Rule 24(b)(1) governs basic permissive intervention:

> On a timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

Finally, Rule 24(c) of the Federal Rules of Civil Procedure states: "A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."[2]

## ARGUMENT

**I.   THE WVDEP OOG MUST BE ALLOWED LIMITED INTERVENTION AS OF RIGHT TO ASSERT ITS SOVEREIGN INTERESTS**

---

[2] WVDEP OOG's proposed responsive pleading is attached as Exhibit A to this motion.

The WVDEP OOG has a right to limited intervention because it "claims an interest relating to the property transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Here, the WVDEP OOG has an interest in the construction of its Consent Order (which the Court already had occasion to construe in the WVDEP OOG's absence) and in the orderly administration of well remediation and the plugging regime within West Virginia, including over the transfer or assignment of plugging obligations (all of which is committed to the WVDEP OOG's sole discretion and supervision under West Virginia law). The "court's consideration of the merits was itself an infringement on foreign sovereign immunity." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 864 (2008).

A. **WVDEP Has An Interest in Construction of the Consent Order and its Effect**

Notwithstanding any contrary finding to date, by allowing this case to proceed the Court permits collateral attacks on a valid WVDEP OOG Consent Order, rendering it valueless and without authority. Plaintiffs cannot displace the WVDEP OOG's Consent Order authority to extend the plugging deadline by labelling their statutorily based actions as "common law claims" in an effort to avoid the WVDEP OOG's administration of the very statue upon which the claims are founded. The WVDEP OOG, therefore, must be allowed to intervene for the limited purpose of urging dismissal based on the correct interpretation of the Consent Order and its effect on the timeline for the plugging of wells.

The WVDEP OOG, pursuant to its statutory authority, negotiated and entered into the Consent Order at issue to create an orderly process in the State's best interests whereby Diversified reviews nonproductive wells and assesses whether they can be returned to production

5

or should be plugged, in accordance with the provisions of West Virginia Code § 22-6-1, *et seq*. *See* Consent Order (ECF NO. 182-1) at Art. IV ¶1. Diversified then reports this information to the WVDEP OOG, which retains the ability to act as necessary to effectuate its objectives as appropriate under the Consent Order. This systematic review process prevents waste of the State's natural resources and harm to the mineral owners with interests in the wells by precluding the plugging of a well that may still have the capacity for production or some other beneficial use (like the underground storage of harmful gases). *Id.* at Art. II ¶10.

The Court, however, improperly and incorrectly purported to assess whether the WVDEP OOG has the power to authorize this procedure in the first place. *See generally* Am. Op. & Order (ECF No. 204). It did so without the State's involvement and despite the State's sovereign immunity. Additionally, the Court reached an incorrect conclusion about the effect of the Consent Order in WVDEP OOG's absence. *See id.* at 7-9.

The WVDEP OOG now must be permitted to intervene for the limited purpose of urging dismissal based on its interest in the efficacy, and the Court's adjudication of, the Consent Order. This interest is sufficient to make the WVDEP OOG a necessary party. *See, e.g., Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020) (finding absent party was necessary because absentee claimed an interest in interpretation of disputed contracts); *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 (4th Cir. 2006) ("[A]ny judgment on such a claim would threaten to impair the Tribe's contractual interests...."); *Jeffcoat v. Lamar Props. LLC*, 2020 WL 4120660, at *3 (W.D. La. July 20, 2020) ("In cases seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract, all parties to the contract probably will have a substantial interest in the outcome of the litigation and their joinder will be required." (citation omitted)).

B. **The WVDEP OOG Has an Interest in the Administration of Well Remediation Under the Statutory Regime Committed to Its Discretion**

The WVDEP OOG also must be allowed to intervene because Plaintiffs' claims interfere with matters committed to the WVDEP OOG's discretion. The WVDEP OOG has determined it would be an unwieldy misuse of West Virginia's resources to require the immediate plugging of all wells that may be presumptively abandoned under the Code. Such a process involves a lengthy notice, comment, review, and supervisory period for each well at issue. Rather than engaging in this process any time presumptive abandonment might be triggered, the WVDEP OOG has appropriately determined, based on all information available to it as regulator, that the best means of ensuring appropriate plugging while conserving administrative resources is the same orderly process the WVDEP OOG negotiated and authorized in the Consent Order.

The Court, however, has suggested that the WVDEP OOG would lack authority to take such actions or to extend the deadline for plugging. This is wrong as a matter of black-letter law. *See* W. Va. Code R. § 35-6-7 (stating a schedule for plugging wells "may be requested by anyone desiring to fulfill the plugging requirements over an extended period."). And, indeed, it is "difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 293 (4th Cir. 2001) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). Separate and apart from the Consent Order's basic efficacy, the WVDEP OOG's considered judgment would be negated.

Additionally, the WVDEP OOG has a further interest in asserting that it is an indispensable party based on its regulatory interests (which are illustrated by, but not limited to, the Consent Order), such that the case cannot proceed in its absence, but that it also has sovereign immunity so the case must be dismissed.

7

Simply put, the State's strong interest in its regulatory regime require the dismissal of the Plaintiffs' claims. For example, this case concerns the transfer of wells—another matter solely committed to the WVDEP OOG's oversight. Indeed, Plaintiffs demand that the Court either unwind the transfer of wells between Diversified and EQT or reimpose on EQT plugging liability that the WVDEP OOG transferred (as part of operator status) from EQT to Diversified. The WVDEP OOG's control over the relevant regulatory mechanisms make this case like another in which an administrative agency had a strong interest based on its oversight of the matters at issue in the case. *See Tillman v. City of Milwaukee*, 715 F.2d 354, 355 (7th Cir. 1983). In *Tillman*, the Seventh Circuit held that Wisconsin's Department of Industry, Labor, and Human Relations "was a party whose joinder was necessary for the complete adjudication" of a city employee's claims for discriminatory annulment of an apprentice indenture. *Id*. at 355-56. The department, "by statute and administrative rule, ha[d] set forth a comprehensive system governing the contractual conditions of indenture agreements, their modification and annulment." *Id.* at 359. As a result, "complete relief could not be accorded in the department's absence because of the agency's control of apprenticeship programs and apprenticeship indentures in Wisconsin." *Id*.

The Court's proceedings threaten the orderly system embodied in the Consent Order, the WVDEP OOG's relationship with Diversified, the WVDEP OOG's sovereign capacity to negotiate contracts like the consent order, and the WVDEP OOG's ability to administer the regulatory system under its care. These are strong, well-recognized state interests. As the *Yashenko* court wrote, "[A]ny judgment on such a claim would threaten to 'impair the Tribe's contractual interests, and thus, its fundamental economic relationship with' the private party, as well as 'its sovereign capacity to negotiate contracts and, in general, to govern' the reservation."

8

*See Yashenko*, 446 F.3d at 553 (citing *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir.2002)). The WVDEP OOG's interest in defending its authority by the assertion of its sovereign immunity and requiring dismissal of this case in its absence is sufficient to warrant intervention as of right.

## II.   AT A MINIMUM, WVDEP OOG SHOULD BE GRANTED PERMISSIVE INTERVENTION TO ASSERT ITS SOVEREIGN INTERESTS

Alternatively, the WVDEP OOG satisfies both standards for permissive intervention. On one hand, it is a state governmental agency who administers a statute upon which Plaintiffs' claims are based. On the other hand, its defenses share common questions of law with the main action.

First, the WVDEP OOG satisfies Rule 24(b)(2) because it is a state governmental agency and Plaintiffs' claims are based on "a statute . . . administered by the . . . agency." Fed. R. Civ. P. 24(b)(2). Plaintiffs' claims are based on W. Va. Code § 22-6-19. *See* Third Am. Compl. (ECF No. 322) ¶¶ 78, 480(b), 496. No party has ever disputed, nor could they dispute, that the WVDEP administers that statute. *See* W. Va. Code § 22-6-19 (discussing the agency's oversight).

Second, the WVDEP OOG's defense about the Consent Order shares with the main action the common question of whether the wells are abandoned or subject to immediate plugging. *See* Fed. R. Civ. P. 24(b). Each of the arguments asserted above with respect to intervention as of right share with the main action this common question. Accordingly, each of those arguments, even if insufficient to justify intervention as of right, warrant permissive intervention.

9

## CONCLUSION

For the reasons set forth above, the WVDEP OOG must be allowed to intervene for the limited purpose of seeking dismissal.

           **Respectfully Submitted,**

           **WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, OFFICE OF OIL AND GAS**

**By Counsel:**

\s\ **C. Scott Driver**
**W.Va. Bar ID #9846**
**Office of Legal Services**
**West Virginia Department**
**of Environmental Protection**
**601 57th Street SE**
**Charleston WV 25304**
**Telephone: (304) 926-0499 x41221**
**E-mail: charles.s.driver@wv.gov**

**CERTIFICATE OF SERVICE**

I, C. Scott Driver, do hereby certify that I have this 16th day of August, 2024 filed the foregoing West Virginia Department of Environmental Protection's Motion to Intervene for the Limited Purpose of Seeking Dismissal using the CM/ECF system which will send notification of said filing to all parties of record.

\s\ **C. Scott Driver**
**W.Va. Bar ID #9846**
**Office of Legal Services**
**West Virginia Department**
**of Environmental Protection**
**601 57th Street SE**
**Charleston WV 25304**
**Telephone: (304) 926-0499 x41221**
**E-mail: charles.s.driver@wv.gov**