IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**MARK McEVOY**, et al.,

        Plaintiffs,

v.                                  Civil Action No. 5:22-CV-171
                                     Judge Bailey

**DIVERSIFIED ENERGY COMPANY PLC**,
et al.,

        Defendants.

## ORDER GRANTING MOTION TO STRIKE
## COMMON LAW CLASS ALLEGATIONS

Pending before this Court is the Renewed Motion to Strike Common Law Class Allegations by Chester C. Dodd, Jr., Kathryn M. Hunt, and Linda Dodd Fluharty [Doc. 612]. The Motion has been fully briefed and is ripe for consideration.

"The plaintiffs in this case are owners of properties in West Virginia that have abandoned oil and gas wells on them. They commenced this action against the current and former owners of those wells, mainly seeking damages resulting from the defendants' failure to plug the wells. The plaintiffs alleged common law nuisance, trespass, and negligence claims." ***McEvoy v. Diversified Energy Co. PLC***, 2024 WL 3642431, at *1 (4th Cir. Aug. 5, 2024).

The plaintiffs have included in their pleadings a request for class certification of a class. In their Third Amended Class Action Complaint [Doc. 322], the Named Plaintiffs seek to represent two (2) classes. Only the Common Law Class is relevant for this Motion.

1

The Common Law Class is defined as "consisting of all persons or entities who own land in West Virginia containing at least one well that (1) is not producing and/or has not produced oil or gas for 12 consecutive months, (2) is currently owned or operated by Diversified, and (3) has not been plugged or properly decommissioned." *See* [Doc. 322 at ¶ 475(b)].

The movants seek to strike these class allegations on the basis, *inter alia*, that the class is not ascertainable. While the plaintiffs contend that this Court should wait until full briefing on the motion to certify this class and another class is complete, this Court sees no reason to delay. Almost a year ago, this Court expressed concern regarding the issue of ascertainability:

> THE COURT: Let me peek down the road a little bit. How are you going to prove ascertainability for a class?
>
> MR. LUCKETT: You mean the --
>
> THE COURT: Whether the members of the class are ascertainable.
>
> MR. LUCKETT: Whether they have a well on their property that has not produced.
>
> THE COURT: You have a list of those?
>
> MR. LUCKETT: Yes. Those can be obtained off DEP's website.
>
> THE COURT: So we're back to the DEP list.
>
> MR. LUCKETT: That's what I'm saying, Your Honor. Earlier if you were referencing a specific list that plaintiffs admitted at some time, that list changes, because more time is passing and some wells might start producing again.
>
> THE COURT: At some point we're going to stop having a moving target.
>
> MR. LUCKETT: Correct.

2

[Doc. 393 at 11:25–12:17].

"A district court 'has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23.'" **Lienhart v. Dryvit Sys., Inc.**, 255 F.3d 138, 146 (4th Cir. 2001) (quoting **In re American Med. Sys., Inc.,** 75 F.3d 1069, 1079 (6th Cir. 1996)). "[P]laintiffs bear the burden . . . of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden . . . ." **Thorn v. Jefferson-Pilot Ins. Co.**, 445 F.3d 311, 317 (4th Cir. 2006) (quoting **Gariety v. Grant Thornton, LLP**, 368 F.3d 356, 370 (4th Cir. 2004)).

In an action such as this, class certification may be granted only if Plaintiffs satisfy the requirements of numerosity, commonality, typicality, representativeness,

predominance, and superiority as articulated in Rule 23(a)[1] and (b)(3).[2]  **Lienhart**, 255 F.3d at 146.

"[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.' Fed.R.Civ.P. 23(a)(1). Commonality requires that 'there are questions of law or fact common to the class.' Fed.R.Civ.P. 23(a)(2). The common questions must be dispositive and over-shadow other issues." *Id*. (citing **Stott v. Haworth**, 916 F.2d 134, 145 (4th Cir. 1990)). "In a class action brought under Rule 23(b)(3), the 'commonality'

---

[1] Rule 23(a) provides:

**(a) Prerequisites**. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1)  the class is so numerous that joinder of all members is impracticable;
(2)  there are questions of law or fact common to the class;
(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)  the representative parties will fairly and adequately protect the interests of the class.


[2] Rule 23(b)(3) provides:

**(b) Types of Class Actions**. A class action may be maintained if Rule 23(a) is satisfied and if:
(3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D)  the likely difficulties in managing a class action.

requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Id.*, at fn.4 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 609 (1997)).

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.' *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982) (internal quotation marks omitted). Representativeness requires that the class representatives 'will fairly and adequately protect the interests of the class.' Fed.R.Civ.P. 23(a)(4). . . . [T]he final three requirements of Rule 23(a) 'tend to merge, with commonality and typicality "serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."' *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 337 (4th Cir. 1998) (quoting *Falcon,* 457 U.S. at 157 n. 13)." *Lienhart,* 255 F.3d at 146–47.

"[A]part from the enumerated requirements, 'Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable."'" *Krakauer v. Dish Network, L.L.C..* 925 F.3d 643, 654–55 (4th Cir. 2019) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). Under this principle, sometimes called "ascertainability," "a class cannot be certified unless a court can readily identify the class

members in reference to objective criteria." ***EQT Prod. Co. v. Adair***, 764 F.3d 347, 358 (4th Cir. 2014).

"In contrast to actions under Rule 23(b)(1) and (b)(2), Rule 23(b)(3) actions are '[f]ramed for situations in which class-action treatment is not clearly called for,' but 'may nevertheless be convenient and desirable.' ***Amchem Prods., Inc. v. Windsor***, 521 U.S. 591, 615 (1997) (internal quotation marks omitted). In addition to the four Rule 23(a) requirements, Rule 23(b)(3) actions such as this one must meet two requirements: predominance and superiority. Predominance requires that '[common] questions of law or fact . . . predominate over any questions affecting only individual members.' Fed.R.Civ.P. 23(b)(3). The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' ***Amchem***, 521 U.S. at 623. Superiority requires that a class action be 'superior to other methods for the fair and efficient adjudication of the controversy.' Fed.R.Civ.P. 23(b)(3)." ***Lienhart***, 255 F.3d at 147.

These questions present common legal issues which are susceptible to class action treatment. Trial courts have great discretion to conduct and manage litigation in an efficient and equitable manner. Manual for Comp. Litig., at Introduction,10.13 (4th ed. 2005). Particularly in the context of a class action, Rule 23 "allows district courts to devise imaginative solutions to problems created by . . . [determining] individual damages issues." ***Carnegie v. Household Int'l, Inc.***, 376 F.3d 656, 661 (7th Cir. 2004); *see also* ***In re Scientific Atlantic Inc., Sec. Litig.***, 571 F.Supp.2d 1315, 1343 (N.D. Ga. 2007) (quoting ***Carnegie*** for this proposition and certifying class upon finding, "even if the Court

ultimately concludes that aggregate damages models are not sufficiently reliable for use in this case, the Court is convinced that other viable alternatives exist to address any individual damages issues that may arise."). Accepted methods of assessing the individual issues relating to class members include:

> (1) bifurcating liability and damage trials with the same or different juries;
>
> (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

**Carnegie**, 376 F.3d at 661 (citing **In re Visa Check/MasterMoney Antitrust Litig.**, 280 F.3d 124, 141 (2d Cir. 2001) (abrogated on other grounds)).

Under the principle called ascertainability, a class cannot be certified unless a court can readily identify the class members in reference to objective criteria. Fed. R. Civ. P. 23; Syl. Pt. 12, **Krakauer**, 925 F.3d 643. "[A] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." **Id**. at 655. However, it is not required that every member of the class need be identified at the time of certification. See **id**.

In this case, the plaintiffs argue that their expert has used the well production date as reported to the West Virginia Department of Environmental Protection ("WVDEP") to determine which wells are not producing. These reports, however, are a moving target. As wells that are non-productive for some reason return to productivity, those wells would

no longer be on the "one-year" list. While the plaintiffs suggest utilizing the list as of April 2, 2024, that is merely a snapshot of a moving target. Furthermore:

> Neither the filing (submission or completion) of the operator's designation, nor the well's status as inactive pursuant to this rule or W. Va. Code § 22-6-19, nor acceptance, receipt, review, report, consideration or termination by the chief of the Office of Oil and Gas shall be admissible as evidence as to the truth of a matter asserted regarding a claim or cause of action between nongovernmental parties.

W.Va. Code R. § 35-5-6; see also W.Va. Code § 22-10-11(b) ("An order of the director, the effect of which is to find that an abandoned well exists . . . shall give rise to no presumptions of law or findings of fact inuring to or for the benefit of persons other than the state of West Virginia.").

The movants also contend that this Court would be required to examine each of the pertinent leases to examine any termination clauses, length of lease, or other relevant information. The plaintiffs respond that the terms of the leases have been invalidated by the West Virginia Legislature in enacting W.Va. Code § 22-6-19 and establishing one year as presumptive abandonment, has the effect of voiding the lease agreements' provisions. "Defendants may try to defeat class certification by arguing that some class members' deeds or leases might allow a well to remain unplugged after twelve months of no production," but in response to this point "any deed or lease provision with this type of language would be void as contravening public policy embodied by West Virginia Code § 22-6-19." [Doc. 617 at 15 fn.6].

8

The movants describe this argument as "shocking." [Doc. 652 at 3]. This Court finds it shocking as well. Nowhere has the Legislature expressed an intent to void any lease or deed provisions. The language cited above concerning the fact that the statute is not for the use or benefit of any nongovernmental entity certainly belies the voiding of any deed or lease.

Furthermore, W.Va. Code § 36-4-9a provides in part:

There is a rebuttable legal presumption that the failure of a person, firm, corporation, partnership or association to produce and sell or produce and use for its own purpose for a period of greater than twenty-four months, subsequent to the first day of July, one thousand nine hundred seventy-nine, oil and/or gas produced from such leased premises constitutes an intention to abandon any oil and/or gas well and oil and/or gas well equipment situate on said leased premises, including casing, rods, tubing, pumps, motors, lines, tanks, separators and any other equipment, or both, used in the production of any oil and/or gas from any well or wells on said leasehold estate.

This rebuttable presumption shall not be created in instances (i) of leases for gas storage purposes, or (ii) where any shut-in royalty, flat rate well rental, delay rental or other similar payment designed to keep an oil or gas lease in effect or to extend its term has been paid or tendered, or (iii) where the failure to produce and sell is the direct result of the interference or action of the owner of such oil and/or gas or his subsequent lessee or assignee. Additionally, no such presumption is created when a delay in excess of

9

twenty-four months occurs because of any inability to sell any oil and/or gas produced or because of any inability to deliver or otherwise tender such oil and/or gas produced to any person, firm, corporation, partnership or association.

In arguing that § 22-6-19 creates a public policy, the plaintiffs fail to observe that the statute merely creates a rebuttable presumption of abandonment - "Any well which is completed as a dry hole or which is not in use for a period of twelve consecutive months shall be presumed to have been abandoned and shall promptly be plugged by the operator in accordance with the provisions of this article, unless the operator furnishes satisfactory proof to the director that there is a bona fide future use for such well." W.Va. Code § 22-6-19.

The plaintiffs also note that their expert utilized the assessors' tax maps to determine ownership of the surface property. West Virginia has explicitly disclaimed the use of its tax records to make legal determination. *See* W.Va. Code of State Rules § 189-3-7.8.c.5 ("Disclaimers are used to limit and define the map author's responsibility for the content, accuracy, and currency of a map. Tax maps may display the standard disclaimer 'For Tax Purposes Only' or a specialized disclaimer such as: 'The tax map was compiled for purposes of taxation from available record evidence and has not been field verified. This map is not a valid survey plat and the data on this map does not imply any official status to such data. The State of West Virginia and county assessor's office assume no liability that might result from the use of this map.'"); Important Information, Office of Assessor, https://www.landmarkgeospatial.com:8443/wyominggis (last visited

Aug. 23, 2024) ("Tax maps are not legal documents and cannot be used in a court of law.").

It would appear then that before the defendants could be tagged with having an abandoned well which has not been plugged, resort would have to be made to the terms of the applicable lease or deed and a consideration of whether a bona fide future use has been satisfactorily provided to the Secretary of the Department of Environmental Protection. Furthermore, a title examination would have to be conducted as to the land upon which each well sits to determine the proper plaintiff.

A proposed class is not ascertainable "if class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" ***EQT Prod. Co. v. Adair***, 764 F.3d 347, 358 (4th Cir. 2014).

For this reason, the Renewed Motion to Strike Common Law Class Allegations by Chester C. Dodd, Jr., Kathryn M. Hunt, and Linda Dodd Fluharty [**Doc. 612**] is **GRANTED** and the common law class allegations are **STRICKEN**.

This Court envisions the need for two (2) separate trials in this case. With regard to the trial involving the voidable transfer, a schedule will be established after this Court's decision on class certification for the voidable transfer class. With regard to the trial of the common law plaintiffs, the parties are directed to file a Rule 26(f) report (see attached) with accompanying schedule sheet within **fourteen (14) days** of the entry of this Order.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** August 26, 2024.

/s/ John Preston Bailey
**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

_____

Plaintiff(s),

v.

                                              Civil Action No. _____

_____
Defendant(s).

## **SCHEDULING ORDER CHECKLIST**

ATTORNEYS

1. INTERMEDIATE PRETRIAL CONFERENCE     _____

2. MEDIATION      Before -     _____

3. JOINDER AND AMENDMENTS     _____

4. EXPERT DISCLOSURE

        a. With Burden     _____

        b. Without Burden     _____

5. EXAMINATION/INSPECTIONS     _____

6. DISCOVERY COMPLETION     _____

7. DISPOSITIVE MOTIONS     _____

                                          _____ Responses

                                                _____ Replies

8. PRETRIAL DISCLOSURES, FED R. CIV PRO 26(a) 3

                                                           a. Objections     _____

9. JURY INSTRUCTIONS, VOIR DIRE and VERDICT FORMS

                                                           a. Objections     _____

10. MOTIONS IN LIMINE     _____

                                                           a. Objections     _____

11. BIOGRAPHICAL SKETCHES     _____

12. JOINT FINAL PRETRIAL CONFERENCE ORDER

                        _____

13. FINAL PRETRIAL CONFERENCE     _____

14. Trial     _____

    (If non-jury trial, Proposed Findings of Fact and Conclusions of Law are to be filed with Court and opposing counsel _____)