## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF WEST VIRGINIA
## AT WHEELING

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

                Plaintiffs,

                                Civil Action No. 5:22-cv-171

v.                               The Honorable John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

                Defendants.

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION (1) TO RECONSIDER ORDER GRANTING MOTION TO STRIKE COMMON LAW ALLEGATIONS, OR ALTERNATIVELY, (2) TO HOLD THE ORDER IN ABEYANCE UNTIL THE COMPLETION OF CLASS CERTIFICATION DISCOVERY AND BRIEFING

# TABLE OF CONTENTS

Argument Summary ................................................................................................ 1

Rules Basis and Standard for Relief Sought .......................................................... 2

Argument ................................................................................................................ 3

    A.    Reconsideration is warranted so the Court may consider the motion under the strict Rule 12(f) standard. ...................................................................... 3

    B.    Reconsideration is warranted to consider evidence and corresponding arguments being developed through discovery and briefing under the Court's scheduling order. ....................................................................................... 5

        1.    The Court erred by discrediting Plaintiffs' expert's use of tax maps to identify class members without full briefing, and without a Daubert challenge ................. 6

        2.    The Court's conclusion that a title search would be required to identify common law class members is contradicted by facts Plaintiffs would have introduced in full class certification briefing. ............................................................. 10

        3.    The Court erred by disregarding Plaintiffs' expert's use of Diversified production records based on a challenge the Intervenors first raised in their reply, again without a *Daubert* challenge or full class certification briefing. ...........................11

        4.    The Court erred by effectively granting summary judgment on the issue of whether variability in lease language defeats ascertainability without the benefit of full briefing and in the absence of critical relevant facts .................................. 12

            a.    Plaintiffs do not contend that any lease provision allowing for a nonproducing well to remain unplugged for more than 12 months is void, only that operators must demonstrate a bona future use to utilize such provisions, which Diversified has admittedly not done. ............................................................. 13

            b.    West Virginia Code Section 36-4-9a has no application to this case. ............. 16

            c.    The Court's ruling failed to consider Plaintiffs' negligence per se claim. ....... 17

    C.    Reconsideration is warranted to correct clear legal error and prevent manifest injustice. ......................................................................................... 18

    D.    Alternatively, the Court should hold the order in abeyance until class certification discovery and briefing is completed. .................................... 19

Conclusion ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdur-Rahman v. Wells Fargo Bank N.A.*,
No. 3:21-CV-00207-RJC, 2022 WL 481788 (W.D.N.C. Feb. 16, 2022) ..................................3

*Alig v. Quicken Loans, Inc.*,
2017 WL 5127235 (N.D. W. Va. Aug. 21, 2017) (Bailey, J.)..................................................3

*Am. Honda Motor Co., Inc. v. Allen*,
600 F.3d 813 (7th Cir.2010) ..................................................................................................6

*Anderson v. Moulder*,
183 W. Va. 77, 394 S.E.2d 61 (1990)...................................................................................17

*Barnes v. A. Sind & Assocs.*,
32 F.R.D. 39 (D. Md. 1963)....................................................................................................4

*Black v. Rhone-Poulenc, Inc.*,
173 F.R.D. 156 (S.D. W. Va. 1996) (Haden, C.J.) ...............................................................19

*Brown v. Nucor Corp.*,
785 F.3d 895 (4th Cir. 2015) ..................................................................................................3

*Carter v. Allstate Ins. Co.*,
No. 5:12-CV-72, 2012 WL 3637239 (N.D. W. Va. Aug. 21, 2012) (Bailey, J.).....................4

*Fager v. CenturyLink Communications, LLC*,
854 F.3d 1167 (10th Cir. 2016) ..............................................................................................9

*Hill v. Pepperidge Farm, Inc.*,
No. 3:22-CV-97-HEH, 2022 WL 3371321 (E.D. Va. Aug. 16, 2022) ....................................3

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ...........................................................................................9, 16

*Krakauer v. Dish Network, LLC*,
No. 1:14-CV-333, 2015 WL 5227693 (M.D. N.C. Sept. 8, 2015) .......................................7, 8

*Mantha v. QuoteWizard.Com, LLC*,
No. 19-12235-LTS, 2024 WL 3912459 (D. Mass. August 16, 2024) .....................................8

*Marcera v. Chinlund*,
565 F.2d 253 (2d Cir. 1977)..................................................................................................18

*Mey v. Castle L. Grp., PC,*
    No. 5:19-CV-185, 2022 WL 4356173 (N.D. W. Va. Jan. 20, 2022) ............................ *passim*

*Mey v. Matrix Warranty Sols., Inc.,*
    No. 5:21-CV-62, 2023 WL 3695611 (N.D. W. Va. April 13, 2023) ........................................8

*Murphy v. N. Am. River Runners,*
    412 S.E.2d 504 (W. Va. 1991) ........................................................................................15

*Poling v. Bd. of Ed. of Phillipi Ind. Dist.,*
    49 S.E. 148 (W. Va. 1904) ..............................................................................................15

*Rich v. Simoni,*
    772 S.E.2d 327 (W. Va. 2015) ........................................................................................15

*Rollyson v. Jordan,*
    518 S.E.2d 372 (1999) ....................................................................................................15

*Spurlark v. Dimension Serv. Corp.,*
    No. 2:21-CV-3803, 2022 WL 2528098 (S.D. Ohio July 7, 2022) ......................................18

*Talley v. United States,*
    2014 WL 4417848 (S.D. W. Va. Sept. 8, 2014) (Chambers, J.) ..........................................2

*P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia,*
    No. 2:11-CV-04027, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011) .......................................4

*Vance v. DirecTV, LLC,*
    No. 5:17-CV-179, 2022 WL 3044653 (Aug. 1, 2022) ....................................................6, 7

**Statutes**

W. Va. Code § 22-6-19 ....................................................................................13, 14, 15

W. Va. Code §§ 22-10-2(b) ........................................................................................15

W. Va. Code §§ 36-4-9a ..........................................................................................16, 17

**Rules**

Fed.R.Civ.P. 60(b) ........................................................................................................2

Fed.R.Civ.P. 12 ........................................................................................................1, 4

Fed.R.Civ.P. 12(b)(1) ..................................................................................................5

Fed.R.Civ.P. 12(b)(6) ..................................................................................................4

Fed.R.Civ.P. 12(c) ......................................................................................................4

Fed.R.Civ.P.  12(f) ............................................................................................1, 3, 18

Fed.R.Civ.P. Rule 23 ........................................................................................3, 4, 18

Fed.R.Civ.P.  23(d)(1)(A) ...........................................................................................1

Fed.R.Civ.P.  23(d)(1)(A) and (E) ...............................................................................3

Fed.R.Civ.P. 26(a)(2)(B) ............................................................................................5

Fed.R.Civ.P. 26(a)(2)(D)(ii) .......................................................................................5

Fed.R.Civ.P. 30(b)(6) ..........................................................................................14, 17

Fed.R.Civ.P.  59(e) .....................................................................................................2

Fed. R. Evid. 703 ......................................................................................................12

Fed. R. Evid. 801(d)(2) .............................................................................................11

**Regulations**

W. Va. Code St. R. § 35-4-5.4 ...............................................................................8, 10

W. Va. Code St. R. § 35-5-4 .................................................................................13, 14

W. Va. Code St. R. §§ 35-5-4.1 .................................................................................13

W. Va. Code St. R. § 35-5-6 ......................................................................................11

W. Va. Code St. R. § 189-3-1.8.c.5 .............................................................................6

W. Va. Code St. R. § 189-3.7.8.c.5 .........................................................................6, 7

**Other Authorities**

https://www.landmarkgeospatial.com:8443/wyominggis/ ...........................................7

## Argument Summary

With full awareness of former Magistrate Judge Seibert's admonition about the eternal repercussions of filing motions to reconsider, *Mey v. Castle L. Grp., PC,* No. 5:19-CV-185, 2022 WL 4356173, at *1 (N.D. W. Va. Jan. 20, 2022), Plaintiffs request the Court reconsider its order granting the Intervenor-Defendants' motion to strike the common law class allegations. Alternatively, under the Court's broad authority to issue procedural orders in managing class actions under Rule 23(d)(1)(A), Plaintiffs request that the Court hold the order in abeyance until class certification-related expert discovery is completed (October 4), *Daubert* motions are briefed, and class certification is fully briefed on November 1. ECF No. 645 (Am. Sched. Order).

Plaintiffs request this relief so that (a) the Court may consider the motion to strike under the Rule 12(f) standard, which authorizes the striking of "redundant, immaterial, impertinent, or scandalous" allegations that are simply not present in a complaint that has overcome multiple Rule 12 motions over the last two years; (b) the Court can consider evidence that was then, and still is now, being developed through class certification-related expert discovery, as well as legal arguments related to that evidence that Plaintiffs have had no opportunity to address; and (c) the Court can correct legal error and unfairness in the Court's ruling.

On this latter point, the Intervenors moved to strike before class certification briefing was completed, before class-related expert discovery was complete and *Daubert* challenges were briefed, and before Plaintiffs could address certification challenges in a meaningful way. The Intervenors also raised legal challenges for the first time in their reply brief (for example, to the reliability of tax maps to identify class members, and the reliability of Diversified's well production records), which precluded Plaintiffs from briefing issues of enormous consequence

not only to the viability of the common law class, but also the voidable transfer class—which wasn't the subject of the Intervenors' motion at all.

Finally, because the now-struck common law claims are the sole class action claims alleged against Diversified, the effect of the ruling is to preclude all prospects of classwide accountability for Diversified relating to its ownership of nearly 2,000 abandoned, nonproducing wells that blight the properties of West Virginia surface owners. While striking the common law class allegations would allow the individual litigation of a handful of named Plaintiffs' claims, the efficient prosecution of these claims is all but foreclosed given the time and expense of litigating them, the small recovery available to these individual Plaintiffs should they win at trial, and the lack of any real accountability such trials would bring to Diversified. If the Court's order stands, Diversified would walk away all but scot-free, without contribution to the adjudication or meaningful settlement of the important claims asserted.

### Rules Basis and Standard for Relief Sought

This Court construes a motion to reconsider a nonfinal order as a motion for reconsideration under Rule 59(e). *Mey,* 2022 WL 4356173, at *1 (citing *Washington v. Deline*, No. ELH-15-0853, 2015 WL 5521786, at *2 (D. Md. Sept. 16, 2015) ("[T]o avoid elevating form over substance, a motion to reconsider may be construed as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e), or a motion for relief from judgment under Fed.R.Civ.P. 60(b).")).

As this Court has held, a court may grant a reconsideration motion: "(1) where there has been an 'intervening change in controlling law;' (2) to address new evidence that was not available at trial [or, as here, at the time the subject order issued]; or (3) 'to correct a clear error of law or prevent manifest injustice.'" *Mey,* 2022 WL 4356713, at *1 (citing *Pettis v. Nottaway Co. School Bd.*, 592 Fed. Appx. 158, 161 (4th Cir. 2014)); *Talley v. United States*, 2014 WL

2

4417848, at *2 (S.D. W. Va. Sept. 8, 2014) (Chambers, J.); *Alig v. Quicken Loans, Inc.*, 2017 WL

5127235 (N.D. W. Va. Aug. 21, 2017) (Bailey, J.).

Further, Rules 23(d)(1)(A) and (E) give courts broad authority when conducting an action

under Rule 23 to "issue orders that . . . determine the course of proceedings or prescribe

measures to prevent undue repetition or complication in presenting evidence or argument[,]" and

to "deal with similar procedural matters."

**Argument**

**A.  Reconsideration is warranted so the Court may consider the motion under the strict Rule 12(f) standard.**

While the district court has broad discretion to decide a motion for class certification, *see,*

*e.g., Brown v. Nucor Corp.*, 785 F.3d 895, 901 (4th Cir. 2015), the Court's order striking the class

allegations without applying the standards appropriate for a Rule 12(f) motion was a clear error

of law, and warrants reconsideration. *Mey,* 2022 WL 4356713, at *1; *see also Hill v. Pepperidge*

*Farm, Inc.*, No. 3:22-CV-97-HEH, 2022 WL 3371321, at *2 (E.D. Va. Aug. 16, 2022) ("Rule

12(f) motions to strike are viewed with disfavor and are granted only for egregious violations.

The movant must show that the matter is both prejudicial and of the type envisioned by Rule

12(f).") (quotations and citations omitted).

As the Intervenor Defendants acknowledge, a district court may strike allegations that are

"redundant, immaterial, impertinent, or scandalous[.]" ECF No. 613 at 6 (quoting Fed. R. Civ. P

12(f)). A Rule 12(f) motion should only be granted "when it is clear *from the face of the*

*complaint* that the plaintiff cannot and could not meet Rule 23's requirements for certification

because the plaintiff has failed to properly allege facts sufficient to make out a class or could

establish no facts to make out a class." *Abdur-Rahman v. Wells Fargo Bank N.A.*, No. 3:21-CV-

00207-RJC, 2022 WL 481788, at *3 (W.D.N.C. Feb. 16, 2022) (emphasis added). "[A] motion to

3

strike should not be granted when it is in the nature of an opposition to class certification, or if discovery is a necessary prerequisite to determining whether class certification is appropriate." *P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, No. 2:11-CV-04027, 2011 WL 5127850, at *4 (E.D. Pa. Oct. 31, 2011).

The Court's order did not find that the allegations in Plaintiffs' complaint are "redundant, immaterial, impertinent, or scandalous," nor did it determine that the mere presence of the class allegations in Plaintiffs' pleadings—as opposed to ultimate relief on Plaintiffs' claims—would prejudice the Intervenors. *See Barnes v. A. Sind & Assocs.*, 32 F.R.D. 39, 40 (D. Md. 1963) ("If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied. Even if the allegations are redundant or immaterial, they need not be stricken if their presence in the pleading cannot prejudice the adverse party."). Instead, the Court applied the typical standards for assessing a motion for class certification under Rule 23, without the benefit of full class certification briefing. ECF No. 653 at 3-7. This was error, especially when class certification briefing and related expert-witness discovery was not and still is not complete.[1]

Had the Court applied the Rule 12 standards, Plaintiffs submit that none of the allegations in the Third Amended Complaint could be characterized as "redundant, immaterial, impertinent, or scandalous[.]" To the contrary, the Court has thrice rejected exhaustively briefed Rule 12

---

[1] It appears that the Court has struck class allegations once, in *Carter v. Allstate Ins. Co.*, No. 5:12-CV-72, 2012 WL 3637239, at *7 (N.D. W. Va. Aug. 21, 2012) (Bailey, J.). The circumstances of that case are not present here. In *Carter,* the identical theory of class certification proposed by the plaintiff had been fully litigated and rejected at the class certification stage in a separate case involving the same conduct by the same defendant. *Id.* at *3–*5. Moreover, the plaintiff consented to the striking of his class allegations. *Id.* at *11.

motions seeking dismissal of Plaintiffs' complaint,[2] with no suggestion from any party or the Court that the allegations were improper in any way. Nor is it clear from the face of the complaint that Plaintiffs cannot meet the standards for class certification, as evidenced by the Court's finding that the Intervenors' earlier motion to strike was premature. ECF No. 428.

Plaintiffs respectfully request the Court reconsider and vacate its order so that it may assess Plaintiffs allegations through full class certification briefing and expert discovery, all set to conclude in less than eight weeks.

**B. Reconsideration is warranted to consider evidence and corresponding arguments being developed through discovery and briefing under the Court's scheduling order.**

In opposing the motion to strike, Plaintiffs argued the motion was "premature, because class certification is still being briefed and the record is still being developed," particularly with respect to expert reports. ECF No. 644 at 1. Under the scheduling order, defense expert reports were due August 2, 2024; Rule 26(a)(2)(D)(ii) rebuttal reports were due (and were in fact filed on) September 3, 2024[3]; oppositions to class certification motions are due October 18; and Plaintiffs' reply in support of class certification is due November 1.

The Court struck the common law class allegations without benefit of the full evidentiary record or legal argument—an express ground supporting a motion for reconsideration. *See Mey*, 2022 WL 4356713, at *1 (court may grant a reconsideration motion to address new evidence that

---

[2] ECF No. 204 (Mem. Op. & Order denying Rule 12(b)(6) motion to dismiss Second Am. Compl.); ECF No. 303 (Order denying Rule 12(c) motion for judgment on the pleadings); ECF No. 362 (Mem. Op. & Order denying Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction).

[3] The rule provides, "A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made . . .if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). The parties have agreed that depositions of Plaintiffs' expert witnesses will occur after the rebuttal reports are submitted.

was not previously available). This evidence and argument, including *Daubert* motions, is directly relevant to the factual and legal basis for the Court's striking of the common law class allegations, and Plaintiffs have had no opportunity to brief and present evidence on several of these issues, as described below.

**1. The Court erred by discrediting Plaintiffs' expert's use of tax maps to identify class members without full briefing, and without a Daubert challenge.**

Based on a state regulation the Intervenors cited for the first time in their reply, the Court questioned Plaintiffs' expert's use of tax maps to identify class members because of a disclaimer in West Virginia Code of State Regulations Section 189-3-1.8.c.5. ECF No. 653 at 10.

To the extent the Court intended to reject Plaintiffs' expert's methodology of using tax maps to identify class members, the issue had not been raised via a *Daubert* challenge, which standing alone is a basis to reject a challenge to an expert's opinions. *See Vance v. DirecTV, LLC,* No. 5:17-CV-179, 2022 WL 3044653, at *5 (Aug. 1, 2022) (rejecting challenge to expert's identification methodology in part because the defendant had not filed a *Daubert* motion concerning the testimony); *see also Am. Honda Motor Co., Inc. v. Allen,* 600 F.3d 813, 815-16 (7th Cir.2010) ("[W]hen an expert's report or testimony is critical to class certification, as it is here[,] a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion[,]" and must perform a full *Daubert* analysis).

The prejudice caused by the lack of a *Daubert* analysis is magnified by the fact that the state regulation the district court cited as authority was mentioned by the Intervenors for the first time in their reply, and is in any event is inapposite. The cited authority, West Virginia Code of State Regulations Section 189-3.7.8.c.5, is found in the "Map Design" specifications of the Statewide Procedures for the Maintenance and Publishing of Surface Tax Maps, and states:

> Disclaimers are used to limit and define the map author's responsibility for the content, accuracy, and currency of a map. Tax maps may display the standard disclaimer "For Tax Purposes Only" or a specialized disclaimer such as: "The tax map was compiled for purposes of taxation from available record evidence and has not been field verified. This map is not a valid survey plat and the data on this map does not imply any official status to such data. The State of West Virginia and county assessor's office assume no liability that might result from the use of this map."

*Id.*

If given the opportunity, Plaintiffs would have pointed out that this regulation has no effect on Plaintiffs' expert's use of the tax map data. It simply disclaims the state and county assessor's liability for how the tax maps are used, and clarifies that the map is not "a valid survey plat" (a purpose for which the Plaintiffs are not using them) that has been "field verified." The Intervenors' second cited authority is not authority at all, but rather is a disclaimer on the Wyoming County Assessor's website that adds to the above regulation: "Tax maps are not legal documents and cannot be used in a court of law." https://www.landmarkgeospatial.com:8443/wyominggis/, last visited August 30, 2024. This surplusage does not even appear in the regulation itself, and is not authority at all.

Further, the state's disclaimer is not relevant at the certification stage; this Court's recent decision in *Vance v. DirecTV, LLC* makes clear that complete accuracy in identifying class members is not required to certify a class, nor must the information used to ascertain identity itself be admissible in court. In *Vance,* the plaintiffs' expert witness retained to identify class members used name and address data whose accuracy was "expressly disclaim[ed]" by the vendor who supplied it. No. 5:17-CV-179, 2022 WL 3044653, at *5 (Aug. 1, 2022). In rejecting a defense challenge based on the disclaimer, the Court stated, "100% accuracy is not required when evaluating ascertainability." *Id.* In so holding, the Court cited *Krakauer v. Dish Network, LLC,* No. 1:14-CV-333, 2015 WL 5227693, *8 (M.D. N.C. Sept. 8, 2015), where Judge Eagles

found the same witness's use of identification data with a 14% error rate to be "not unreasonably high for these particular circumstances[,]" and rejected a fully-briefed *Daubert* challenge on that basis.

Nor is "field verification" required. As Judge Eagles stated in *Krakauer*, "'[a]n expert may rely on data that she did not personally collect' and 'need not have conducted her own tests.' [Federal Rule of Evidence] 703 provides that an expert may rely on facts or data of which the expert has been made aware '[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion.'" 2015 WL 5227693, *9 (quoting *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94–95 (2d Cir. 2000) (per curiam)). Other courts have similarly rejected *Daubert* challenges to expert witnesses who rely on disclaimed third-party data to identify class members. *See, e.g., Mantha v. QuoteWizard.Com, LLC,* No. 19-12235-LTS, 2024 WL 3912459, at *7 (D. Mass. August 16, 2024) (An aggregator of personal data information who disclaimed any warranty of the accuracy of its data outputs does not render the data unreliable, as "[e]xperts generally do not warrant or guarantee their opinions, nor need they.").

Any consideration of admissibility of Plaintiffs' expert opinions requires a *Daubert* analysis to assess the helpfulness, sufficiency, and reliability of the expert's methods. *Mey v. Matrix Warranty Sols., Inc.,* No. 5:21-CV-62, 2023 WL 3695611, *1 (N.D. W. Va. April 13, 2023) (summarizing the *Daubert* inquiry). While this motion is not the appropriate means of litigating that issue, in contesting a future *Daubert* challenge, Plaintiffs would point out that, according to the expert report of a West Virginia attorney with more than 40 years of experience in title work, "the use of County Assessors' Tax Maps and Parcel Numbers information is both reliable and consistently used as the primary method for owner identification throughout the industry." Rep. of W. Thurman, Sept. 3, 2024, at 5, attached as Exhibit A.

In fact, "the applicable state regulation for obtaining a well plugging permit specifies tax record information as the principal method for identifying the surface owner of land upon which the gas well is located." *Id.*; W. Va. Code St. R. 35-4-5.4 ("For purposes of notice of surface owners of record[,] . . . the applicant well operator shall be entitled to assume . . . that the specific person(s) listed on the relevant tax ticket(s) maintained by the Sheriff . . . . were in fact surface owners of record when the tax ticket was prepared."). Although operators must also check the county "grantor index" to insure the surface owner has not transferred an interest in the surface, that can easily be accomplished through an online search (or in certain counties, a visit to the courthouse) that takes minutes. Thurman Rep. at 6. This is precisely the sort of "ministerial" exercise that can be performed after judgment. *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 651 n.1 (4th Cir. 2019).

Additionally, despite the fact they had numerous expert witnesses addressing these issues, the Defendants have pointed out only a handful of inaccuracies in Plaintiffs' identification of class members. After accounting for these criticisms in his rebuttal report, Plaintiffs' expert Matt Hodge concluded that his work pairing well locations to class member addresses is likely correct as to more than 90% of the 22,623 wells throughout the class, a figure comfortably within the range of acceptability in ascertaining class membership. Rebuttal Rep. of M. Hodge, at 3, attached as Exhibit B.)

In their reply, the intervenors also brushed off the many decisions approving the use of tax maps in identifying class members. For example, it claimed *Fager v. CenturyLink Communications, LLC,* 854 F.3d 1167, 1171 (10th Cir. 2016) "has nothing to do with class certification," but merely involves class notice (Doc. 652 at 7), a claim that flatly ignores the fact

the tax records were expressly used "to identify class members[,]" 854 F.3d at 1171, which is precisely how Plaintiffs are proposing to use them here.

To be clear, Plaintiffs are not attempting to litigate these issues via this motion for reconsideration. Instead, they request reconsideration of the order striking the common law class allegations so they may receive a fair assessment, informed by *Daubert* standards and in the context of completed class certification briefing, to address a critical ascertainability issue that applies not only to the common law class, but also to the viability of the fraudulent transfer class, where tax map records also were used to identify class members.

**2.    The Court's conclusion that a title search would be required to identify common law class members is contradicted by facts Plaintiffs would have introduced in full class certification briefing.**

The Court also concluded that ascertaining the common law class would require a title search. ECF No. 653 at 11. However, as Plaintiffs explained above, tax maps are a reliable way to identify surface owners, courts have previously allowed the use of tax maps to identify class members, and our expert's use of tax maps has yet to be challenged under *Daubert*. Further, under West Virginia law, well operators—which are required to provide notice to surface owners before plugging a well—can rely on the tax tickets. W. Va. Code St. R. 35-4-5.4. And that is exactly what Diversified does—Brad Gray (Diversified's former COO and current CFO) admitted Diversified never conducts a title search before providing notice to the surface owner when plugging a well. *See* B. Gray Dep. 70:12–73:16. The Court should not hold Plaintiffs to a higher standard than the well operator, particularly when it defeats the claims of thousands of surface owners with derelict, abandoned wells on their property. For these reasons, the Court's finding that a title search would be required to identify the class members failed to consider the evidentiary record before it and therefore warrants reconsideration.

**3. The Court erred by disregarding Plaintiffs' expert's use of Diversified production records based on a challenge the Intervenors first raised in their reply, again without a *Daubert* challenge or full class certification briefing.**

Key to identifying common-law class members is identifying wells that, as of April 2, 2024, had not produced gas in the previous twelve months. In finding the common law class was not ascertainable, the Court addressed the Intervenor-Defendants' citation—another citation made for the first time in their reply brief—to West Virginia Code of State Regulations Section 35-5-6. That provision states that "[n]either the filing (submission or completion) ***of the operator's designation***, ***nor the well's status of inactive*** . . . shall be admissible as evidence of the truth of the matter asserted regarding a claim or cause of action between nongovernmental parties." *Id.* (emphasis added). Intervenors, who did not file any *Daubert* motion relating to the challenged testimony, argued that Plaintiffs' expert Matt Hodge improperly relied on information covered by this regulation, which the Court cited in its order striking the common law class allegations. ECF No. 653 at 8.

Had Plaintiffs had an opportunity to respond, they would have pointed out that the regulation has no bearing on Mr. Hodge's list of nonproducing class wells. The regulation precludes a party from using the *operator's designation of a well as inactive,* but does not preclude a party from using *well production records* reported by an operator. That is precisely what Mr. Hodge used in his work. Hodge Rebuttal Rep. at 2 ("With respect to the production dataset that I used in my analysis, that dataset is Diversified's WR-39e submittal to the West Virginia DEP. I have included the original WR-39e file provided by DEP to Counsel as Digital Attachment 1 to this rebuttal. I verified that the file provided to Counsel is Diversified's WR-39e submittal, and not a summary spreadsheet created by the West Virginia DEP[.]").

Plaintiffs and Mr. Hodge are not relying in any way on DEP's characterization of Diversified's records, but on Diversified's production records themselves. Using Diversified records against Diversified does not implicate the hearsay rule. *See* Fed. R. Evid. 801(d)(2) (an opposing party's statement is not hearsay when offered against the party); *id.* R. 804(b)(3) (statement against interest). And even if it did, expert witnesses may rely on hearsay evidence if it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. On this point, (1) Mr. Hodge has extensive experience working with statewide datasets in West Virginia, and finds them to be "among the most comprehensive and reliable datasets available[,] Hodge Rebuttal Rep. at 2; and (2) Diversified's former COO and current CFO recently testified the records the company supplied to DEP were "accurate to the best of [Diversified's] ability."  Dep. of B. Gray, 83:2–12, Aug. 23, 2024, excerpts attached as Exhibit C.

The point of all of this is not to litigate the reliability of Mr. Hodge's work via this motion, as he has not been deposed, and *Daubert* challenges have not been briefed. The point is that Plaintiffs are entitled to an opportunity to litigate these important issues under the *Daubert* framework, and, unless the Court reconsiders or holds its order in abeyance, will be unfairly deprived of that opportunity.

### 4.   The Court erred by effectively granting summary judgment on the issue of whether variability in lease language defeats ascertainability without the benefit of full briefing and in the absence of critical relevant facts.

The Court relied in part on the variability of lease provisions to determine that the common law class would not be ascertainable, and rejected Plaintiffs' argument as to voiding leases provisions contrary to public policy as "shocking." ECF No. 653 at 8-9. This was error because the ruling had the effect of a summary judgment grant against Plaintiffs on an issue that

had not been fully briefed. As of the date of this filing, Plaintiffs simply have had no opportunity to brief the merits, or even to explain the issue appropriately for the Court's consideration. Had they had such an opportunity, they could have more clearly expressed their argument and responded to associated statutory arguments raised by Intervenors for the first time in their reply.

> a. *Plaintiffs do not contend that any lease provision allowing for a nonproducing well to remain unplugged for more than 12 months is void, only that operators must demonstrate a bona future use to utilize such provisions, which Diversified has admittedly not done.*

Contrary to Intervenors' framing and the Court's apparent understanding of Plaintiffs' position (likely caused by Plaintiffs' inarticulate framing in their class certification brief footnote), Plaintiffs' do not intend to ask the Court to cancel or invalidate thousands of leases, nor do they argue that Diversified has relinquished its equipment to surface owners. Plaintiffs' common law claims seek only monetary damages sufficient to plug the abandoned wells on their property. [4] That relief does not require any finding that the underlying lease is terminated. Indeed, Plaintiffs expect that most leases will remain fully intact, with the lessee retaining all existing rights to operate other active wells, conduct exploration activities, and even drill new wells.

Plaintiffs do not contest that, under the West Virginia regulatory scheme, an operator may maintain a non-producing well for more than twelve months in accordance with a shut-in, flat payment, or gas storage clause in a lease. As Plaintiffs would explain in the context of Defendants' expert testimony and briefing regarding the impact of lease provisions on common

---

[4] Nonetheless, Intervenors persist in their alarmism that wells in which they hold mineral interests will be plugged against their wishes. None of this is true. Plaintiffs are seeking monetary damages to pay for well-plugging, and permitting will occur through DEP processes. If a mineral owner can demonstrate a bona fide future use to allow the well to remain unplugged as discussed *supra,* they can make that showing.

law class membership, however, to maintain a non-producing well for more than twelve months, West Virginia law requires an operator to submit an application appropriately demonstrating a bona fide future use for each such well. *See* W. Va. Code § 22-6-19; W. Va. Code St. R. § 35-5-4. That requires an assessment to ensure that the well is fit for the proposed future use and is in proper condition to prevent pollution and waste. W. Va. Code St. R. §§ 35-5-4.1 ("In order to establish bona fide future use, the operator shall submit information and data sufficient to satisfy the chief that there is a bona fide future use for the well."); 35-5-5.1 (requiring that the condition of the well be "sufficient to prevent waste of oil or gas" and "sufficient to prevent pollution of waters of the state"). Absent such "satisfactory proof" of a bona fide future use, however, a well that has not produced for 12 consecutive months "*shall promptly be plugged by the operator in accordance with the provisions of this article.*" W. Va. Code § 22-6-19 (emphasis added); *see also* W.Va. Code St. R. § 35-5-4 ("For any well which is not in active status, an operator must demonstrate bona fide future use to avoid having such well deemed abandoned under W. Va. Code §22-6-19."). That is, under the statute's terms, the presumption of abandonment and the attendant obligation to "promptly" plug the well may *only* be rebutted by the submission of proof of a bona fide future use.

This Court has already found that "the operators have not furnished satisfactory proof to the director that there is a bona fide future use" for Diversified's abandoned wells covered by its Consent Order with WVDEP. ECF No. 204 at 9. ███████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ Dep. of M. Tetrick, May 13, 20243, at 244, excerpt attached as Exhibit D. ████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████

██████████████████

Accordingly, Plaintiffs do not ask the Court to invalidate leases that allow for gas storage or shut-in payments to maintain the lease despite a lack of production. Rather, Plaintiffs merely intend to seek a *classwide* ruling that Diversified has not submitted any bona fide future use applications, and that the approval of such an application, regardless of lease terms, is required to overcome the public policy expressed in the state's plugging statute. Should the Court so hold, the presence or absence of any gas storage or shut-in term is immaterial to Plaintiffs' claims.

The *only* lease provisions that Plaintiffs believe would be void as to public policy are those which explicitly disclaim the lessee's obligation to plug a well regardless of future use. *See* ECF No. 617 at 10 n.6.  On that point, defense experts have identified ***one*** lease across Diversified's more than 22,000 West Virginia wells containing such a term. Terry Rep. at 31, attached as Exhibit E. Under longstanding West Virginia law, "[w]hen a statute imposes a standard of conduct, a clause in an agreement purporting to exempt a party from tort liability to a member of the protected class for the failure to conform to that statutory standard is unenforceable." Syl. Pt. 1, *Murphy v. N. Am. River Runners*, 412 S.E.2d 504 (W. Va. 1991) (holding that "a plaintiff's express agreement to assume the risk of a defendant's violation of a safety statute enacted for the purpose of protecting the public will not be enforced"); *see also Poling v. Bd. of Ed. of Phillipi Ind. Dist.*, 49 S.E. 148, 148–50 (W. Va. 1904) ("[N]either a court of equity nor law will enforce a contract in violation of laws enacted for the public good." (internal citations omitted)); *Rollyson v. Jordan*, 518 S.E.2d 372, 380 (1999) ("A pertinent statute is as much a part of a contract as if it were incorporated in it."); *Rich v. Simoni*, 772 S.E.2d 327, 335 (W. Va. 2015) ("[S]tatutes by their nature are the most reasonable and common sources for

defining public policy."). Any lease term purporting to free the operator from its duty to plug in the absence of proof of bona fide future use would effectively "exempt" the operator from the statutory obligation established by Section 22-6-19 in contravention of the express policies the West Virginia Legislature established to further the public good. *See* W. Va. Code §§ 22-10-2(b) ("The Legislature hereby declares that it is in the public interest and it is the public policy of this state, to foster, encourage and promote the proper plugging of all wells *at the time of their abandonment* to protect the environment and mineral resources of this state." (emphasis added)); *id.* 22-10-2(a)(1) ("Oil and gas have been continuously produced in West Virginia for over one hundred years, during which time operators of wells have been required by the laws of this state to plug wells *upon cessation of use*." (emphasis added)).[5] It is only those such provisions which Plaintiffs argue are enforceable as against public policy.

        b.   *West Virginia Code Section 36-4-9a has no application to this case.*

Full briefing would have also allowed Plaintiffs to address West Virginia Code Section 36-4-9a, raised for the first time in Intervenors' reply, which in certain circumstances creates a rebuttable presumption that an operator of a nonproducing well has abandoned its equipment and allows for cancellation of the underlying lease. The Court cited that statute and its explicit exceptions for gas storage leases and leases that contain shut-in or delay rental payment provisions in support of its finding that review of individual lease provisions would be required

---

[5] There is also no evidence that Diversified believes such lease terms relieve it of its plugging duties. Instead, Diversified admits that it must and asserts that it intends to plug every well it owns. B. Gray Dep. 83:13-16. Diversified's former COO and current CFO Brad Gray also admitted in deposition that Diversified is able to identify which lease applies to which well. *Id.* 80:22–83:1. Thus, to the extent the Court rejects this public policy argument or finds that certain lease provisions do change the operator's duty to plug after 12 months of nonproduction, such problematic leases could be carved out fairly easily, either pre- or post-trial, such that the class would still be ascertainable without the need for mini-trials or lengthy title searches. *See Krakauer*, 925 F.3d at 658.

to ascertain members of the common law class. ECF No. 653 at 9–10. That provision, however, is inapplicable to the present action. It does not address the plugging of nonproducing wells but rather civil actions to cancel a lease and take ownership of abandoned equipment. W.Va. Code § 36-4-9a. Plaintiffs do not seek the invalidation of any lease provision other than those expressly relieving the operator of its duty to plug and do not seek to take possession of Diversified's equipment, but rather expressly request that it be removed. *See* ECF No. 322 at ¶104 (requesting that the Court order Diversified to remove its derelict equipment). Moreover, that statute is only applicable when such relief is sought in an action brought in West Virginia circuit court. *Id.* ("[T]his presumption may not be utilized except in an action or proceeding by the owner of the oil and/or gas or the owner's lessee or assignee in an action brought in the circuit court for the judicial district in which the oil and/or gas property is partially or wholly located."). Plaintiffs are not relying on the rebuttable presumption created by Section 36-4-9a but rather on the specific directive by the legislature that a well must be plugged promptly unless there is a designation of bona fide future use. [6]  Because Diversified has *never* made an application for such designation, the statutory directive controls. Tetrick Rule 30(b)(6) Tr. at 243–44.

c.  *The Court's ruling failed to consider Plaintiffs' negligence per se claim.*

Lastly, the Court did not consider how its decision would apply to Plaintiffs' negligence per se claim. In contrast to Plaintiffs' trespass claim, which requires a showing that the presence of Diversified's wells "contravenes [Plaintiffs'] private property 'right to exclude,'" ECF No. 322, at ¶489, Plaintiffs' negligence claim relies only on the violation of the statutory duty in

---

[6] This clear, universal language—that *all* wells that have not produced for 12 months *shall* promptly be plugged except where proof of a bona fide future use has been supplied—contrasts with that of Section 36-4-9a, under which non-production creates only a "rebuttable legal presumption" applicable to a subset of leases that lack certain terms.

Section 22-19-6, *id.*, ¶¶496–97. *See also* Syl. Pt. 1, *Anderson v. Moulder,* 183 W. Va. 77, 394 S.E.2d 61 (1990) ("Violation of a statute is prima facie evidence of negligence.") The language of that statute does not make any reference to lease provisions nor require any assessment other than whether (1) the well at issue has produced for the past twelve months and (2) the operator has submitted proof of bona fide future use. For all of the wells at issue in Plaintiffs' proposed common law class, the answer to those questions is unequivocally no.  The Court thus should not have dismissed Plaintiffs' negligence claims based on the potential variability of lease terms applicable to those wells.

**C.  Reconsideration is warranted to correct clear legal error and prevent manifest injustice.**

The final factor governing a reconsideration motion is whether reconsideration is necessary to correct a clear error of law or prevent manifest injustice.'" *Mey,* 2022 WL 4356713, at *1.

Reconsideration is appropriate under both conditions. Treating the motion to strike as a *de facto* motion for class certification foreclosed any possibility of litigating certification of the common law class before briefing and expert-related discovery had been completed, with no application of Rule 12(f)'s standards, and without *Daubert* analysis or challenges to Plaintiffs' certification-related expert witnesses. *See Spurlark v. Dimension Serv. Corp.*, No. 2:21-CV-3803, 2022 WL 2528098, at *6 (S.D. Ohio July 7, 2022) (explaining that "'courts should exercise caution when striking class action allegations based solely on the pleadings,' since it is often more prudent 'to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage'" (citation omitted)); *Marcera v. Chinlund*, 565 F.2d 253, 255 (2d Cir. 1977) ("While evidentiary hearings are not mandated in every Rule 23 case, a denial of class action certification

should not ordinarily be made without giving the plaintiffs an evidentiary opportunity, if requested.").

The ruling foreclosed not only meaningful and important class certification and *Daubert* briefing, it effectively granted summary judgment against Plaintiffs on their public policy argument on an extremely incomplete record, and eliminated any possibility of meaningful relief from or settlement with Diversified. *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 166 (S.D. W. Va. 1996) (In the Fourth Circuit, settlement is "an important factor" in considering class certification, and "[c]ourts should foster settlement in order to advantage the parties and promote 'great saving in judicial time and services.'") (Haden, C.J.) (quoting *Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177, 184 (4th Cir. 1993)). Without even the prospect of class action claims asserted against it, Diversified is now stripped of any reason to contribute its significant resources to a settlement that would efficiently resolve this dispute and address the problems associated with its fleet of nonproducing, unplugged wells across West Virginia.

**D.  Alternatively, the Court should hold the order in abeyance until class certification discovery and briefing is completed.**

Plaintiffs respectfully request that any decisions regarding class certification be made at the conclusion of class certification briefing, so that critical issues bearing on the determination may be fully developed. For this reason, Plaintiffs request that the Court, in the alternative to reconsidering its striking of the common law class allegations, hold its order in abeyance until briefing is complete. The benefit of this approach is the Court would not have to devote time to deciding reconsideration motions on an incomplete record, but instead simply postpone consideration of class certification until all briefing is complete. Further, Plaintiffs and Diversified could resume settlement discussions in the hope of obviating the need for any ruling regarding certification of the common law class.

## Conclusion

For these reasons, the Plaintiffs request the Court grant their motion and reconsider its order striking the class allegations. Alternatively, Plaintiffs request the Court hold that order in abeyance pending the completion of class certification-related expert depositions, class certification briefing, and *Daubert* motions.

Dated: September 5, 2024                    Respectfully submitted,

*/s/ John W. Barrett*
John W. Barrett, Esq. (WVSB No. 7289)
Athanasios Basdekis (WVSB No. 9832)
James Lincoln Wolfe (WVSB No. 14117)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
jbarrett@baileyglasser.com
tbasdekis@baileyglasser.com
lwolfe@baileyglasser.com

Amanda Demmerle (WVSB No. 13930)
J. Michael Becher (WVSB No. 10588)
APPALACHIAN MOUNTAIN
ADVOCATES
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
ademmerle@appalmad.org
mbecher@appalmad.org

*Attorneys for Plaintiffs and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING**

**MARK MCEVOY, et al., individually and
on behalf of a proposed class,**

       **Plaintiffs,**

                            **Civil Action No. 5:22-cv-171**
**v.**                          **The Honorable John P. Bailey**

**DIVERSIFIED ENERGY COMPANY PLC,
et al.,**

       **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

    I, John Barrett, certify that on September 5, 2024, a true and correct copy of ***Plaintiffs'***

***Memorandum in Support of Motion (1) to Reconsider Order Granting Motion to Strike***

***Common Law Allegations, or Alternatively, (2) to Hold the Order in Abeyance Until the***

***Completion of Class Certification Discovery and Briefing*** using CM/ECF, the Court's electronic

notification system, which provided notice to all counsel of record.

                                      */s/ John W. Barrett*
                                      John W. Barrett, Esq. (WVSB No. 7289)