# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING DIVISION

**MARK MCEVOY,** *et al.*,

      **Plaintiffs,**

v.　　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 5-22-cv-171-JPB**

**DIVERSIFIED ENERGY COMPANY PLC,** *et al.*,

      **Defendants.**

### RESPONSE TO PLAINTIFFS' MOTION TO RECONSIDER ORDER STRIKING COMMON LAW CLASS ALLEGATIONS OR TO HOLD THE ORDER IN ABEYANCE UNTIL FURTHER CLASS AND DISCOVERY BRIEFING BY CHESTER C. DODD, JR., KATHRYN M. HUNT, AND LINDA DODD FLUHARTY

Intervening Defendants Chester C. Dodd, Kathryn M. Hunt, and Linda Dodd Fluharty (collectively, "Intervening Defendants") file this response to *Plaintiffs' Memorandum in Support of Motion (1) to Reconsider Order Granting Motion to Strike Common Law Allegations, or Alternatively, (2) to Hold the Order in Abeyance Until the Completion of Class Certification Discovery and Briefing* [Doc. 658] (the "*Motion*").  As Plaintiffs themselves alluded to in their *Motion*'s opening words, when faced with motions for reconsideration the Court "recalls the words of retired Magistrate Judge James E. Seibert, who often stated that there is a special place in hell for lawyers who file motions to reconsider." *Mey v. Castle L. Grp., PC*, 2022 WL 4356173, at *1 (N.D. W. Va. Jan. 20, 2022) (Bailey, J.).  Presumably, Magistrate Judge Seibert and the Court had in mind the wastefulness of motions for reconsideration that urge the Court to take a second look at matters that were already briefed or that should have been raised earlier.  That is the exact type of motion that Plaintiffs have now put before the Court.

The thrust of Plaintiffs' argument is that they are above the law and want to enforce a version of West Virginia law that is antagonistic to royalty owners and the policy of West Virginia.

And in support of this remarkable position, Plaintiffs continue their practice of giving the Court moving targets and making statements about production contrary to reality. To start, to obtain money to plug the well on her property and to thwart Intervening Defendants' participation in this case, Plaintiffs alleged Joan Medley was a surface owner for a non-producing well; it was producing. Then, Plaintiffs argued they would not rely on WVDEP production records that are constantly shifting for class certification, but that is exactly what they did. Next, in response to the *Renewed Motion to Strike* Plaintiffs agreed to a deadline for their response; now they complain that the Court acted prematurely when it held them to the deadline. Finally, Plaintiffs demanded widespread voiding of mineral owners' leases, but now—reading the room—they attempt to mask that request (though it is unchanged). The Court rightly observed a year ago that these moving targets must end, but Plaintiffs continue to behave this way and ask the Court to excuse them.

Plaintiffs assert three grounds for their *Motion*, but none even come close to satisfying the demanding standard for reconsideration. According to Plaintiffs, (1) the Court failed to consider the Motion in the context of Federal Rule of Civil Procedure 12(f); (2) the Court acted prematurely because it needed to consider additional briefing and more expert-related discovery; and (3) the Court was wrong as a matter of law and there was "unfairness in the Court's ruling." *Mot.* [Doc. 658] at 1. **First**, the Court was fully aware of the fact that it was asked to strike allegations under Rule 12(f), and the parties already briefed the relevant standard. *Compare Order Granting Mot. to Strike Common Law Class Allegations* [Doc. 653] (the "*Order*") at 2 ("The movants seek to strike these class allegations . . . ."), *with Intervening Defs.' Mem. in Supp. of Renewed Mot. to Strike* [Doc. 613] at 6 (describing interaction between Rule 12(f) and Rule 23). **Second**, the Court's *Order* was not premature; Plaintiffs, who had the burden of showing that class certification is appropriate, had filed their own *Motion for Class Certification* [Doc. 616], a *Memorandum in*

*Support of Motion for Class Certification* [Doc. 617], and an *Opposition to Renewed Motion to Strike* [Doc. 644]. The deadline had passed for Plaintiffs to make their affirmative showing in support of the Common Law Class, and there was no need for further delay. Indeed, courts routinely strike class allegations far earlier than this Court did, on less developed records. **Third**, nothing in the *Motion* suggests any error in the Court's rulings, let alone clear error and unfairness. The Court correctly noted the Common Law Class presents a moving target that remains moving to this day, is based on improper evidence, and would require legal action (*i.e.*, widespread voiding of leases) that is not appropriate. The *Motion* does not argue that any of that has changed, and the Court should deny the *Motion*. But if the Court prefers to hold the *Order* in abeyance until a later time, Intervening Defendants do not object; however, Intervening Defendants' arguments that any modification to the *Order* would be wrong still stand.

## **LEGAL STANDARD**

"The Fourth Circuit generally construes motions for reconsideration as extraordinary remedies." *United States v. Washington*, 2017 WL 11450982, at *1 (N.D. W. Va. Nov. 7, 2017) (citing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). "A reconsideration motion may be granted: (1) where there has been an 'intervening change in controlling law;' (2) to address new evidence that was not available at trial; or (3) 'to correct a clear error of law or prevent manifest injustice.'" *Blaniar v. Sw. Energy Co.*, 2021 WL 7448638, at *1 (N.D. W. Va. Nov. 5, 2021) (Bailey, J.) (quoting, *inter alia*, *Pettis v. Nottoway Cnty. Sch. Bd.*, 592 F. App'x 158, 161 (4th Cir. 2014) (per curiam)).

"In this case, [Plaintiffs] seek reconsideration on the third ground—clear error of law—or, in other words, that the Court is simply wrong." *Id.* "A clear error finding requires a 'definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Easley v. Cromartie*, 532 U.S.

234, 242 (2001)). "**In order to justify reconsideration due to clear error, the error cannot be just maybe or probably wrong; it must . . . strike [the Court] as wrong with the force of a five-week old, unrefrigerated dead fish**." *Id.* (alterations in original) (emphasis added) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)). "The manifest injustice standard also 'presents parties with a high hurdle.'" *Id.* (quoting *In re Yankah*, 514 B.R. 159, 166 (E.D. Va. 2014)). "It requires that a 'fundamental flaw' exists in a court's decision." *Id.* (quoting *In re Yankah*, 514 B.R. at 166).

"Consistent with those high standards, it is 'improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through — rightly or wrongly.'" *Id.* (quoting *Norfolk S. Ry. Co. v. Nat'l Union Fire Ins. of Pittsburgh, PA*, 999 F. Supp. 2d 906, 918 (S.D. W. Va. 2014)). "That is, 'mere disagreement with a court's application of the law is insufficient to support a motion for reconsideration.'" *Id.* (quoting *In re Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019)). "When a reconsideration motion does little more than request that the court 'reconsider a legal issue' or '"change its mind," relief is not authorized.'" *Id.* (quoting *Pritchard v. Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001)).

## DISCUSSION

### I. THE COURT DID NOT CLEARLY ERR IN ITS APPLICATION OF THE RULE 12(f) STANDARD WHEN STRIKING THE CLASS

Plaintiffs argue "the Court's order striking the class allegations without applying the standards appropriate for a Rule 12(f) motion was a clear error of law, and warrants reconsideration." *Mot.* [Doc. 658] at 3. But "[a]lmost a year ago, this Court expressed concern regarding the issue of ascertainability," putting Plaintiffs on notice of a serious problem on an issue raised by the class allegations in their pleadings and for which they bear the burden. *Order* [Doc. 653] at 2. The Court patiently deferred the issue for a year to see if Plaintiffs would resolve the

4

problem despite the Court having the power to strike the Common Law Class then, without waiting for another motion. Plaintiffs ignored the Court's guidance and instead filed a *Motion to Certify* that made the issue worse. Plaintiffs' complaints about Rule 12(f) are no basis for reconsideration.

### A. Plaintiffs Had Ample Time to Support the Common Law Class

"According to Rule 23(c)(1)(A), a court must determine whether class certification is proper '[a]t an early practicable time after a person sues or is sued as a class representative . . . .'" *Cornette v. Jenny Garton Ins. Agency, Inc.*, 2010 WL 2196533, at *2 (N.D. W. Va. May 27, 2010) (Bailey, J.) (quoting Fed. R. Civ. P. 23(c)(1)(A)). "The plaintiff, as the party seeking certification, bears the burden of establishing that certification is appropriate." *Id.* (citing *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)). "Where the inability to maintain the suit as a class action is apparent from the face of the complaint, a court may dismiss the class allegations on the pleadings." *Id.* (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 433, 445 (5th Cir. 2007)). "The court may issue such an order upon a motion by the defendants, regardless of whether the plaintiff has moved for class certification." *Id.* (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 935–40 (9th Cir. 2009)).

Again, "[a]lmost a year ago, this Court expressed concern regarding the issue of ascertainability." *Order* [Doc. 653] at 2. Despite the Court giving Plaintiffs time to address this concern, Plaintiffs still argue the Court prematurely struck the Common Law Class because "the Court applied the typical standards for assessing a motion for class certification under Rule 23, without the benefit of full class certification briefing." *Mot.* [Doc. 658] at 4. The Court already dealt with exactly this issue the first time around:

> The movants seek to strike these class allegations on the basis, *inter alia*, that the class is not ascertainable. While the plaintiffs contend that this Court should wait until full briefing on the motion to certify this class and another class is complete, this Court sees no reason to delay. Almost a year ago, this Court expressed concern regarding the issue of ascertainability.

5

*Order* [Doc. 653] at 2.

**Plaintiffs' argument about needing more time to support certification of the Common Law Class only bolsters the Court's *Order* because "[t]he plaintiff, as the party seeking certification, bears the burden of establishing that certification is appropriate**.*" Cornette*, 2010 WL 2196533, at *2 (emphasis added) (citing *Lienhart*, 255 F.3d at 146). The deadline for Plaintiffs to file their own class certification motion expired before the *Order*. *See Scheduling Order* [Doc. 607]. And Plaintiffs had already asserted their affirmative arguments in support of the Common Law Class. *See Pls.' Mem. in Supp. of Mot. for Class Certification* [Doc. 617]. Indeed, Plaintiffs cited their *Motion to Certify* when responding to the *Renewed Motion to Strike*, asking the Court to consider the same evidence that Plaintiffs now say the Court ignored. Additionally, Plaintiffs had served their expert reports supporting their request for certification and had filed their opposition to Intervening Defendants' arguments. *See Opp'n to Mot. to Strike* [Doc. 644]. In asking for more despite the passage of their deadlines and all this briefing, Plaintiffs admit they have failed to carry their burden.

Moreover, Plaintiffs asked Intervening Defendants and the Court for a stipulated deadline to respond to the *Renewed Motion to Strike*, and the Court granted that stipulated extension. *See Order Granting Joint Stipulation* [Doc. 626]. Plaintiffs were free to ask to move the deadline to accommodate more briefing or discovery, but they did not. Having lost under their agreed deadline, Plaintiffs cannot seek a "do over" based on claims that the Court acted prematurely.

**B.     The Court Correctly Decided the Motion Under Rule 12(f)**

Plaintiffs also argue that the Court incorrectly applied the standards under Rule 12(f). *See Mot.* [Doc. 658] at 4. However, yet again, the Court warned Plaintiffs more than a year ago that the Common Law Class appeared to be unascertainable on the face of the *Complaint*. *See Order* [Doc. 653] at 2. The Court specifically told Plaintiffs that "[a]t some point" they would need "to

stop having a moving target." *Id.* at 2–3. Plaintiffs ignored the Court, just as the Court found after reviewing Plaintiffs' own *Motion to Certify*, which relied on reports that "are a moving target." *Order* [Doc. 653] at 7–8 (citation omitted). Worse, in response to the fact that some leases allow wells to remain unplugged, Plaintiffs argued that "any deed or lease provision with this type of language would be void as contravening public policy . . . ." *Id.* at 8. The Court found this assertion "shocking" and rightly rejected it. *Id.* at 8–9. Given these serious issues, which are not even all of the problems identified in the *Order*, the Court was not wrong to strike the Common Law Class.

Furthermore, Plaintiffs get things backwards with their argument that the Court should have blinded itself to these problems and limited its review to the *Complaint*. *See Mot.* [Doc. 658] at 5 ("Nor is it clear from the face of the complaint that Plaintiffs cannot meet the standards for class certification . . . ."). Plaintiffs had the burden of showing that the Common Law Class was appropriate; Intervening Defendants did not have the burden of showing that the Common Law Class was inappropriate. *See Cornette*, 2010 WL 2196533, at *2. The time for briefing the issues with the Common Law Class was ripe, and Intervening Defendants properly raised, and the Court properly found, a myriad of issues that require rejection of the Common Law Class.

Essentially, Plaintiffs ask the Court to ignore the fact that they failed to bear their burden and to waste everyone's resources by having Intervening Defendants assert the *Motion to Strike* a fourth time (counting this briefing) so that it would be in form and caption an opposition to Plaintiffs' *Motion for Class Certification*. But to the extent Plaintiffs complain about the vehicle used,[1] the Court may simply construe each of Intervening Defendants' multiple briefs as Rule 23 briefs opposing certification. *See, e.g.*, *Venable v. Pritzker*, 2014 WL 2452705, at *4 (D. Md. May

---

[1] Or to the extent the Court orders more briefing or holds its *Order* in abeyance.

7

30, 2014) ("The Census Bureau's Reply in Support of its Motion to Strike Plaintiff's Second Amended Complaint will be construed as an opposition to Venable's Renewed Motion for Leave to Amend."), *aff'd*, 610 F. App'x 341 (4th Cir. 2015); *Garvin v. S. States Ins. Exch. Co.*, 2005 WL 8162364, at *1 (N.D. W. Va. July 12, 2005) ("The Court construes the . . . motion to dismiss as a motion for summary judgment because the Court must consider documentary evidence beyond the parties' pleadings in the case."). Indeed, "Federal Rule [of] Civil Procedure 1 instructs the Court to construe the rules 'to secure the just, speedy, and inexpensive determination of every action and proceeding,' [so that] the Court should not exalt form over substance." *Venable*, 2014 WL 2452705, at *4 (citations omitted).

Indeed, "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '**[a]t an early practicable time**' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949–50 (6th Cir. 2011) (emphasis added) (affirming striking of class allegations). "As a result, '**[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)**.'" *Id.* (emphasis added) (collecting authorities).[2] Yet "[t]o say that a defendant may freely move for resolution of the class-certification question whenever it wishes **does not free the district court from the duty of engaging in a 'rigorous analysis' of the question, and 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question**." *Id.* (emphasis added) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982)). In other words, "**[o]ne opposing a class**

---

[2] *See also Vinole*, 571 F.3d at 939–40 ("Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question. The only requirement is that the certification question be resolved '[a]t an early practicable time.'")

**action may move for an order determining that the action may not be maintained as a class suit**" and "**[t]he burden was on . . . the party seeking to utilize the class action, to establish its right to do so**." *Cook Cnty. Coll. Tchrs. Union, Loc. 1600 v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) (emphasis added) (citations omitted); *accord Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010) ("Even though the issue of class certification thus comes before the [c]ourt on [d]efendants' motion, **the burden remains on Plaintiffs** to prove that each of the required elements for class certification . . . has been satisfied." (emphasis added)).

Finally, Plaintiffs could have raised their arguments about the scope of materials at issue during the original briefing. Intervening Defendants asserted all the corresponding arguments. *See Intervening Defs.' Mem. in Supp. of Renewed Mot. to Strike* [Doc. 613] at 6–11 (raising ascertainability argument); *id.* at 7–8 (raising WVDEP records argument); *id.* at 9–10 (raising surface ownership assessment argument); *id.* at 10 (raising mineral owner assessment argument); *id.* at 10–11 (noting declarants concerned about harm to their interests). Nevertheless, Plaintiffs did not respond with their Rule 12(f) argument. *See Opp'n to Renewed Mot. to Strike* [Doc. 644]. Plaintiffs "cannot now seek reconsideration by raising arguments that could, and should, have been made before [the Court's] prior determination." *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2018 WL 774068, at *1 (S.D. W. Va. Feb. 7, 2018) (citing, *inter alia*, *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325–26 (4th Cir. 2017)).

The Court already gave Plaintiffs roughly a year to address the problems that resulted in the striking of the Common Law Class. Plaintiffs did not address those problems and instead made them worse. That Plaintiffs want Intervening Defendants to incur still more costs defending their mineral interests, and those of others, against a harmful class is not a basis for reconsideration.

## II. RECONSIDERATION IS NOT WARRANTED BASED ON ONGOING EXPERT DISCOVERY BETWEEN PLAINTIFFS, DIVERSIFIED, AND EQT

Plaintiffs also argue it was premature to strike the Common Law Class based on ongoing expert discovery, but the Court already rejected that argument. Furthermore, additional discovery to support Plaintiffs' burden would have been inappropriate because the deadline for Plaintiffs to make their affirmative showing had expired. Finally, Plaintiffs say the Court wrongly construed statutes and regulations and that Plaintiffs have the better read; this argument must be rejected.

### A. The Court Already Rightly Rejected Plaintiffs' Argument About Prematurity

Plaintiffs admit their argument about the *Order* being premature based on ongoing expert discovery was already litigated. *See Mot.* [Doc. 658] at 5 ("In opposing the motion to strike, Plaintiffs argued the motion was 'premature, because class certification is still being briefed and the record is still being developed,' particularly with respect to expert reports."). The Court already rejected this argument. *See Order* [Doc. 653] at 2. "Consistent with [the relevant] high standards, it is 'improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through — rightly or wrongly.'" *Blaniar*, 2021 WL 7448638, at *1 (quoting *Norfolk S. Ry.*, 999 F. Supp. 2d at 918).

Furthermore, as discussed below, the Court was right to reject Plaintiffs' argument about prematurity and the need for more expert discovery.

#### 1. The time was ripe for deciding class certification issues and additional expert discovery could have changed nothing

As mentioned, Plaintiffs had the burden of supporting the Common Law Class, had filed the *Motion to Certify*, and had incorporated that motion into their response to the *Renewed Motion to Strike*. *See Pls.' Opp'n to Renewed Mot. to Strike* [Doc. 644] at 11 (citing Plaintiffs' other materials). Plaintiffs' deadline for disclosing experts to help them carry that burden was June 21, 2024. *See Scheduling Order* [Doc. 607] ("Expert Disclosures for Parties with Burden: June 19,

10

2024"). Plaintiffs made their affirmative arguments about how those experts supported the Common Law Class, and the Court even considered their opinions. *See, e.g.*, *Order* [Doc. 653] at 7–8 ("[T]he plaintiffs argue that their expert has used the well production date as reported to the West Virginia Department of Environmental Protection ('WVDEP') to determine which wells are not producing."). To the extent Plaintiffs ask for more expert discovery, the Federal Rules do not permit an expert to expand their opinions during depositions nor could a "rebuttal" opinion expand the scope of an affirmative expert disclosure. **There is nothing additional expert discovery could change; the deadline for Plaintiffs to put forward their expert opinions in support of the Common Law Class has passed**.

### 2. No *Daubert* challenge was made nor was one needed

Furthermore, Plaintiffs' argument that the Court erred in criticizing Plaintiffs' tax map methodology based on a lack of a *Daubert* challenge, *Mot.* [Doc. 658] at 6–10, is wrong. Intervening Defendants have not yet sought to exclude any alleged expert opinions; Intervening Defendants only argued that tax maps were not sufficient and that Plaintiffs failed to ascertain the Common Law Class. *See Intervening Defs.' Mem. in Supp. of Renewed Mot. to Strike* [Doc. 613] at 9–10. The Court correspondingly found that the tax maps could not be used to ascertain class-wide property ownership. *See Order* [Doc. 653] at 10–11.

Courts have repeatedly reached the same result in the same certification circumstances without any *Daubert* challenge; tax maps simply are not good enough.[3] *See, e.g.*, *Parsons v. Columbia Gas Transmission, LLC*, 2022 WL 4809492, at *15 (S.D. W. Va. Sept. 30, 2022) (noting

---

[3] Intervening Defendants do not care about whether or not Defendants, who are often involved in disputes about whether they correctly assessed property ownership for royalties, supposedly use tax maps when conducting their business. What Defendants may or may not consider good enough for their business purposes is not good enough for the purposes of ascertaining a class of property owners.

11

tax maps cannot "accurately identify members of [the] [p]laintiffs' putative class without taking substantial additional steps"); *Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 299 (D.S.C. 2012) (finding tax records insufficient because "they could incorrectly show receivers of false conveyances as true owners"); *cf. Collingwood Appalachian Mins. III, LLC v. Erlewine*, 889 S.E.2d 697, 706 (W. Va. 2023) (Hutchison, J., concurring in part) (stating that West Virginia "tax assessors botching the taxation of land . . . is nothing new").

Far from entertaining a *Daubert* challenge,[4] the Court simply followed the Fourth Circuit in *EQT Production Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). *See Order* [Doc. 653] at 11 (citing same). In *Adair*, the Fourth Circuit recognized that proving ownership for class certification would ensure that "[c]omplications [would] arise . . . because ownership of the gas estate ha[d] not been static . . . ." *Adair*, 764 F.3d at 359. **The Fourth Circuit indicated the district court was wrong when it asserted, like Plaintiffs here, "that any ownership changes could be determined by reference to local land records."** *Id.* (emphasis added). This was because "resolving ownership based on land records can be a complicated and individualized process." *Id.* (citing *Johnson v. Kan. City S.*, 224 F.R.D. 382, 389 (S.D. Miss. 2004)). "[H]eirship, intestacy, and title-defect issues plague[d] many of the potential class members' claims to the gas estate," and "these complications pose[d] a significant administrative barrier to ascertaining the ownership classes." *Id.*

---

[4] It is unclear how waiting for *Daubert* challenges could ever improve Plaintiffs' position. At worst for Plaintiffs, a *Daubert* challenge would prevail and Plaintiffs would not be able to rely on the expert. At best for Plaintiffs, a *Daubert* challenge would fail and Plaintiffs would be in the same position as when the Court struck the Common Law Class.

Also, Plaintiffs' case citations on *Daubert* are misleading. Under those cases, a *Daubert* challenge, **if filed**, must be adjudicated before certifying a class. They do not require the Court to *sua sponte* do a *Daubert* analysis of an ascertainability expert.

Accordingly, Plaintiffs disagree not only with the Court but also with the Fourth Circuit when they argue the Court was wrong when it "concluded that ascertaining the common law class would require a title search." *Mot.* [Doc. 658] at 10.

Plaintiffs' argument flies in the face of other courts too. **First**, the *Parsons* class included "[a]ll persons or entities who own the surface of real property in West Virginia . . . which is not subject to a lease, easement, deed, or court order granting storage rights . . . ." 2022 WL 4809492, at *2. The court found this definition required "an initial threshold analysis of title or land records, or other objective data to confirm . . . whether each plaintiff owns a real property interest in a parcel" and whether the parcel owned is the subject of a class claims. *Id.* at *15. Although the plaintiffs tried to solve the problem with tax maps, the court found that tax maps could not "accurately identify members of [the] [p]laintiffs' putative class without taking substantial additional steps." *Id.* Thus, the court refused to certify the class. *See id.* **Second**, *Kirkman v. North Carolina Railroad Co.*, 220 F.R.D. 49, 52–53 (M.D.N.C. 2004)[5] also rejected ascertainability based on the need to establish property ownership, holding it "would eventually be able to ascertain potential class members through detailed title searches, [but] this task [wa]s simply not administratively feasible given the number of potential members across more than 300 miles of land." *Id.* The court noted assessing property ownership is an inherently individualized exercise. *See id.* ("A class member can only establish trespass if he shows both that he owned the land in question, and that the [d]efendants had no right to enter that land. By its nature as a property dispute, this inquiry is necessarily an individual one.").

---

[5] The Court has approvingly cited *Kirkman*'s certification analysis. *See Cornette*, 2010 WL 2196533, at *1 (citing *Kirkman*, 220 F.R.D. at 53).

### 3. The Court was right to reject Plaintiffs' tax map methodology

Next, Plaintiffs also argue the Court erred by considering West Virginia's disclaimers for tax assessor data, but Plaintiffs raised the tax records in their *Opposition to the Renewed Motion to Strike* [Doc. 644], and thus Intervening Defendants were entitled to reply by pointing out the flaws in their argument. And even in the instant briefing Plaintiffs fail to address that the Wyoming County Assessor's website states: "Tax maps are not legal documents and cannot be used in a court of law." *Mot.* [Doc. 658] at 7; *see also Order* [Doc. 653] at 10–11 (noting same).

As for their argument about the West Virginia Code of State Rules, Plaintiffs argue the Court does not know how to do legal interpretation. *See Mot.* [Doc. 658] at 7 ("Plaintiffs would have pointed out that this regulation has no effect on Plaintiffs' expert's use of the tax map data. It simply disclaims the state and county assessor's liability . . . ."). But "mere disagreement with a court's application of the law is insufficient to support a motion for reconsideration." *Blaniar*, 2021 WL 7448638, at *1 (quoting *In re Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d at 820).

Regardless, the Court, not Plaintiffs, has the better read. The disclaimer unambiguously states: "Disclaimers are used to limit and define the map author's responsibility for the content, accuracy, and currency of a map. . . . 'This map is not a valid survey plat and the data on this map does not imply any official status to such data.'" *Order* [Doc. 653] at 10 (quoting W. Va. Code R. § 189-3-7.8.c.5). The Court accurately assessed the disclaimer, and there is no error to "strike [the Court] as wrong with the force of a five-week old, unrefrigerated dead fish." *Blaniar*, 2021 WL 7448638, at *1 (quoting *TFWS*, 572 F.3d at 194).

The Court also correctly construed the West Virginia rules that foreclose reliance on WVDEP data. Plaintiffs argue the regulations prevent them only from using WVDEP reports to prove a well is inactive and that they may rely on such reports for other purposes. *See Mot.* [Doc. 658] at 11 ("The regulation precludes a party from using the operator's designation of a well as

14

inactive, but does not preclude a party from using well production records reported by an operator." (emphasis omitted)).  But the regulation talks about more than just inactive status:

> Neither the filing (submission or completion) of the operator's designation, nor the well's status as inactive . . . , **nor acceptance, receipt, review, report, consideration or termination** by the chief of the Office of Oil and Gas shall be admissible as evidence as to the truth of a matter asserted regarding a claim or cause of action between nongovernmental parties.

*Order* [Doc. 653] at 8 (emphasis added) (quoting W. Va. Code R. § 35-5-6).  The Court also rightly noted that WVDEP findings about abandonment "give rise to no presumptions of law or findings of fact inuring to or for the benefit of persons other than the state of West Virginia." *Id.* (quoting W. Va. Code § 22-10-11(b)).  Plaintiffs admit they are "using well production records reported by an operator" to WVDEP, *Mot.* [Doc. 658] at 11 (emphasis omitted), but that is just what the regulations forbid.

Plaintiffs also argue they were relying on Diversified's records, rather than WVDEP's records, to ascertain the Class.  But Diversified's records do not classify wells as abandoned, so Plaintiffs are not actually relying on Diversified's records; what Plaintiffs appear to mean is that their witness classified every well as "abandoned" where it had not produced for twelve months, even if it was for a legitimate reason as with Intervening Defendants' wells.  If true, that means the Court will have to do the exact well-by-well review the Court already held required the Common Law Class to be stricken to determine whether the well is shut-in for a legitimate reason.

Finally, Plaintiffs attack a strawman version of the *Order* by recharacterizing it as about the margin of error of tax maps.  *See Mot.* [Doc. 658] at 7–8.  The *Order* did not ask whether the data was accurate;[6] it simply held that "West Virginia has explicitly disclaimed the use of its tax

---

[6] Had it taken that next step, the Court would have been right to reject the data as unreliable for the same reasons given above.  *See, e.g., Parsons*, 2022 WL 4809492, at *15; *Melton*, 283 F.R.D. at 299; *Erlewine*, 889 S.E.2d at 706 (Hutchison, J., concurring in part).

15

records to make [a] legal determination." *Order* [Doc. 653] at 10.  Thus, Plaintiffs' discussion of *Vance v. DirecTV, LLC*, 2022 WL 3044653 (N.D. W. Va. Aug. 1, 2022), comparative accuracy, and "field verification" is not related to the incontrovertible point that West Virginia disallows use of the data for legal findings.

### III. RECONSIDERATION IS NOT WARRANTED BASED ON PLAINTIFFS' ARGUMENT ABOUT VOIDING WEST VIRGINIA LEASES

Belatedly realizing they jumped the shark, Plaintiffs try to walk back their argument that thousands of leases must be voided and fault the Court for supposedly misunderstanding them. *See Mot.* [Doc. 658] at 13.  But that is precisely what Plaintiffs argued: "'Defendants may try to defeat class certification by arguing that some class members' deeds or leases might allow a well to remain unplugged after twelve months of no production,' but in response to this point [Plaintiffs argue that] 'any deed or lease provision with this type of language would be void as contravening public policy embodied by West Virginia Code § 22-6-19." *Order* [Doc. 653] at 8 (quoting *Pls.' Mem. in Supp. of Mot. for Class Certification* [Doc. 617] at 10 n.6).

Even though Plaintiffs argue they did not get to brief this issue, the Court quoted Plaintiffs' words from the very brief in which Plaintiffs were charged with justifying the Common Law Class. Plaintiffs also presented this argument in response to the *Renewed Motion to Strike*, stating "because any lease provision purporting to authorize the presence of an abandoned well in contravention of West Virginia Code Section 22-6-19 would be void, no such individualized lease review is required." *Pls.' Opp'n to Renewed Mot. to Strike* [Doc. 644] at 9.  Plaintiffs cannot accuse the Court of not giving them time to explain when Plaintiffs repeatedly asserted their argument.  This is simply a veiled re-assertion of past arguments that is not proper for a motion for reconsideration.  *See Blaniar*, 2021 WL 7448638, at *1 (quoting *Norfolk S. Ry.*, 999 F. Supp. 2d at 918).

16

Indeed, although Plaintiffs attempt an "about face" for another bite at the apple, even now they assert the same argument. *See Mot.* [Doc. 658] at 13–14. Plaintiffs still want "a classwide ruling that Diversified has not submitted any bona fide future use applications, and that the approval of such an application, **regardless of lease terms**, is required to overcome the public policy expressed in the state's plugging statute." *Id.* at 15 (emphasis modified). Just as before, Plaintiffs admit they are trying to void lease terms—like shut-in payments, gas storage, or flat-rate leases—that allow surface use in the absence of production. *See id.* ("The only lease provisions that Plaintiffs believe would be void as to public policy are those which explicitly disclaim the lessee's obligation to plug a well regardless of future use." (emphasis omitted)).[7]

## IV.   RECONSIDERATION IS NOT WARRANTED FOR ANY OF PLAINTIFFS' MISCELLANEOUS REASONS

Plaintiffs assert a smattering of other criticisms, but none warrant reconsideration. **First**, Plaintiffs say "the Court did not consider how its decision would apply to Plaintiffs' negligence per se claim." *Mot.* [Doc. 658] at 17. Of course the Court did not do so. The matter before the Court was certification of the Common Law Class, not Plaintiffs' claims (issues for another day).

**Second**, Plaintiffs approach cynicism when they argue that "[w]ithout even the prospect of class action claims asserted against it, Diversified is now stripped of any reason to contribute its significant resources to a settlement . . . ." *Id.* at 19. Intervening Defendants should not have to continue to monitor a lawsuit to protect their interests when a class has no merit. Plaintiffs' assertion has nothing to do with whether the Court was correct; it borders on a request to let Plaintiffs essentially blackmail Diversified despite the Court finding that the Common Law Class

---

[7] Intervening Defendants also note that Plaintiffs' public policy argument against extending plugging deadlines seems contrary to WVDEP OOG's recent brief, which asserts that the State has itself extended plugging deadlines as part of its public policy. *See WVDEP's Mot. to Intervene* [Doc. 647] at 1–2.

17

is inappropriate. Worse, the fear that Diversified will go about plugging Plaintiffs' wells (including named Plaintiff Joan Medley's wells, without consulting Intervening Defendants) as part of a private settlement—thereby ending Intervening Defendants' royalties—concerns Intervening Defendants. That same fear motivates other mineral owners. *See Intervening Defs.' Mem. in Supp. of Renewed Mot. to Strike* [Doc. 613] at at 3–4 (noting multiple declarants with plugging fears).

**Third**, the request that the Court hold the *Order* in abeyance is a repackaged form of the argument that the Court acted prematurely. *See Mot.* [Doc. 658] at 19. The Court already said it "sees no reason to delay," *Order* [Doc. 653] at 2, and Plaintiffs act contrary to the Court's expectation that there will be a trial for the Common Law Plaintiffs' claims, *id.* at 11.

## CONCLUSION

For the reasons above and those apparent from the record, Intervening Defendants urge the Court to deny Plaintiffs' *Motion*.

                        **CHESTER C. DODD, JR., KATHRYN M. HUNT, and LINDA DODD FLUHARTY**
                            Intervening Defendants.

                        By: /s/ Ryan P. Orth
                            Counsel for Intervening Defendants

Patrick S. Casey (WVSB #668)
Sandra M. Chapman (WVSB #701)
Ryan P. Orth (WVSB #13029)
CASEY & CHAPMAN, PLLC
Wheeling, WV 26003
(304) 231-2405
(866) 296-2591 (fax)
and
G. Nicholas Casey, Jr. (WVSB #666)
4401 Kanawha Ave. SE
Charleston, WV 25304
(304) 610-4941

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of September 2024, I electronically filed the foregoing RESPONSE TO PLAINTIFFS' MOTION TO RECONSIDER ORDER STRIKING COMMON LAW CLASS ALLEGATIONS OR TO HOLD THE ORDER IN ABEYANCE UNTIL FURTHER CLASS AND DISCOVERY BRIEFING BY CHESTER C. DODD, JR., KATHRYN M. HUNT, AND LINDA DODD FLUHARTY with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

                                        **CHESTER C. DODD, JR., KATHRYN M. HUNT, and LINDA DODD FLUHARTY**
                                        Intervening Defendants.

                                    By: /s/ Ryan P. Orth
                                        Counsel for Intervening Defendants

Patrick S. Casey (WVSB #668)
Sandra M. Chapman (WVSB #701)
Ryan P. Orth (WVSB #13029)
CASEY & CHAPMAN, PLLC
Wheeling, WV 26003
(304) 231-2405
(866) 296-2591 (fax)

and

G. Nicholas Casey, Jr. (WVSB #666)
4401 Kanawha Ave. SE
Charleston, WV 25304
(304) 610-4941