**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

|  |  |
|---|---|
| MARK MCEVOY, *et al.*,<br><br>             Plaintiffs,<br><br>v.<br><br>DIVERSIFIED ENERGY COMPANY PLC, *et al.*,<br><br>             Defendants. | Civil Action No. 22-cv-00171-JPB |

## SETTLEMENT AGREEMENT

**WHEREAS**, certain Plaintiffs initiated the Action on July 8, 2022, alleging that (a) the Diversified Defendants and EQT Defendants engaged in fraudulent conveyances of certain oil and gas wells and (b) the Diversified Defendants committed trespass, nuisance, and negligence by failing to plug certain wells, among other things.

**WHEREAS**, the Defendants deny Plaintiffs' allegations and deny that Plaintiffs or Settlement Class Members are entitled to any relief sought in the Action.

**WHEREAS**, the Defendants maintain, among other things, that the challenged transactions were entered into at arms-length and in good-faith, the Diversified Defendants were solvent at the time of the challenged transactions and remain solvent today, and the Diversified Defendants are party to valid, long-term consent orders with state well regulators that outline manageable and mutually beneficial plugging commitments.

**WHEREAS**, Plaintiffs sought relief on behalf of a common law class and voidable transfer class.

**WHEREAS**, Plaintiffs and Defendants have had a full and fair opportunity to evaluate the strengths and weaknesses of their respective positions, including through the receipt and review of substantial document productions and other written discovery, depositions, expert disclosures, court orders, and extensive settlement negotiations, including with the assistance of a mediator.

**WHEREAS**, Plaintiffs have investigated the facts and underlying events relating to the subject matter of the claims, have carefully analyzed the applicable legal principles, and have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens and costs of further prosecution of their claims, and taking into account the substantial benefits to be received pursuant to this Agreement, that a resolution and compromise on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Plaintiffs and the Settlement

Class.

WHEREAS, Defendants, for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the claims, and for the purpose of resolving all claims and controversies that were or could have been asserted against them by Plaintiffs and the Settlement Class, for good and valuable consideration, and without any admission of liability or wrongdoing, desire to enter into this Agreement.

WHEREAS, it is agreed that this Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by the Defendants or any of the Released Parties, or of the truth or legal or factual validity or viability of any of the claims Plaintiffs have or could have asserted, which claims and all liability therefore are expressly denied.

NOW, THEREFORE, Plaintiffs and Defendants stipulate and agree that, in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement; for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged; and subject to the approval of the Court, this Action shall be fully and finally settled and dismissed with prejudice as to the Defendants according to the following terms and conditions:

## ARTICLE I – DEFINITIONS

As used in this Settlement Agreement and its exhibits, the terms set forth below shall have the following meanings.

1.  "Action" means the case styled *McEvoy, et al., v. Diversified Energy Company PLC, et al.*, Case No. 5:22-CV-00171-JPB-JPM, pending in the United States District Court for the Northern District of West Virginia.

2.  "CAFA Notice" means the notice intended to comply with the requirements imposed by the Class Action Fairness Act, 28 U.S.C. § 1715, as described in Article IV.

3.  "Class Representatives" or "Plaintiffs" means Mark McEvoy, James Tawney, Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol DelRosso, George DelRosso, Benjamin Patterson, Chad Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts, Heidi Deem, Jeffrey L. Saltis, Kellie D. Saltis, Lane Evans, Minerva Evans, Maynard Tanner, Jennifer Tanner, Joan Medley, Jacob Collette, Regina Collette, Scott Corcoran, Kathy Johnson, Christine Cochran, Bonnie Garrett, Colleen Gladwell, Michael Philips, Loren Smith, Bruce Perrone, Susan Leffler, and Norman Googel.

4.  "Class Notice Agent" means the person or entity appointed by the Court to administer certain noticing and related aspects of the Settlement pursuant to Article IV.

5.  "Court" means the United States District Court for the Northern District of West Virginia.

6.    "Defendants" means the Diversified Defendants and the EQT Defendants.

7.    "Diversified Defendants" means Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation.  "Diversified Defendant" means each of the same individually.

8.    "Diversified Parties" means the Diversified Defendants, current, past and future affiliates of the Diversified Defendants in which the Diversified Defendants have an ownership interest, and each of their respective current, past, and future subsidiaries, including any subsidiaries that the Diversified Defendants acquired as part of or in connection with any transaction between the Diversified Defendants and the EQT Defendants. "Diversified Party" means each of the same individually.  By way of reference, but not limitation, Diversified Energy Company PLC's corporate structure, and its subsidiaries, are identified on page 150 of its 2023 Annual Report; the list of subsidiaries changes from time to time.

9.    "Diversified Well" means a well (including both producing and nonproducing wells) owned or operated by any Diversified Party in Kentucky, Ohio, Pennsylvania, Tennessee, Virginia, or West Virginia at any time between the date the complaint was filed (July 8, 2022) and the date of the execution of this Settlement Agreement (November 4, 2024).

10.    "Earnest Money" means the funds described in Article II.1.

11.    "Effective Date" means the date on which the Court's Final Approval Order is Final.  For purposes of this Agreement:  (a) if no appeal has been taken from the Final Approval Order and/or Final Judgment, "Effective Date" means the date on which the time to appeal therefrom has expired; or (b) if any appeal has been taken from the Final Approval Order and/or Final Judgment, "Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for a writ of certiorari to the Supreme Court of the United States or any other form of review, have been finally disposed of in a manner that affirms the Final Approval Order or Final Judgment; or (c) if Interim Class Counsel and the Defendants agree in writing, the "Effective Date" can occur on any other agreed date.

12.    "EQT Defendants" EQT Production Company, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC, EQM Midstream Partners LP, EQT Corporation, and EQT GP Holdings, LP.

13.    "Excluded Members" means those Settlement Class Members who timely and appropriately submit a request for exclusion pursuant to Article V.2.

14.    "Final" means that the Final Approval Order has been entered on the docket, and (a) the time to appeal from such order has expired and no appeal has been timely filed; or (b) if such an appeal has been filed, it has been resolved finally and has resulted in an affirmance of the Final Approval Order; or (c) the Court, following the resolution of the appeal, enters a further order or orders approving settlement on the terms set forth herein, and either the time to appeal from such further order or orders has expired and no further appeal has been taken from such order(s) or any such appeal results in affirmation of such order(s).

15.    "Final Approval Hearing" means the hearing scheduled to take place after the entry

of the Preliminary Approval Order, at which the Court shall, *inter alia*: (a) determine whether to grant final approval to this Settlement Agreement; (b) consider any timely objections to the Settlement and the Settlement Parties' responses to such objections; and (c) rule on any application for attorneys' fees and costs, and any proposed participation/service award for the Class Representatives.

16.     "Final Approval Order" means the order, substantially in the form attached as **Exhibit B**, in which the Court, *inter alia*, grants final approval of this Settlement Agreement.

17.     "Final Judgment" means a final judgment and dismissal of the Action with prejudice against the Defendants substantially in the form attached as **Exhibit C**.

18.     "Interim Class Counsel" means Bailey & Glasser, LLP and Appalachian Mountain Advocates.

19.     "Mail Notice" means notice of this Settlement by U.S. mail, email, or postcard, substantially in the form approved by the Court in its Preliminary Approval Order.

20.     "Plugging Promises" means the commitments set forth in Article II.4 below.

21.     "Preliminary Approval Order" means the order, substantially in the form attached as **Exhibit A**, in which the Court, *inter alia*, grants its preliminary approval of this Settlement Agreement, authorizes dissemination of Mail Notice and Publication Notice to the Settlement Class, and appoints the Class Notice Agent.

22.     "Publication Notice" means notice of this Settlement by publication, substantially in the form approved by the Court in its Preliminary Approval Order.

23.     "Released Parties" means (a) the Diversified Parties and EQT Defendants; (b) their counsel, experts, consultants, contractors, and vendors; (c) their past, present, and future direct and indirect owners, parents, subsidiaries, and other affiliates in which they have an ownership interest; (d) their successors, assigns, and predecessors and their past, present, and future direct and indirect owners, parents, subsidiaries, and other affiliates in which they have an ownership interest; and (e) for each of the foregoing, each of their past, present, or future officers, directors, shareholders, owners, employees, representatives, agents, principals, partners, members, insurers, administrators, legatees, executors, heirs, estates, predecessors, successors, or assigns.  The Settlement Parties expressly acknowledge that each of the foregoing is a Released Party even though not identified by name herein.

24.     "Settlement Account" means the account in which the Earnest Money and the Additional Consideration described in Article II.14 shall be deposited.

25.     "Settlement Account Administrator" means G. Nicholas Casey, Jr., Esq., or a replacement pursuant to Article III.

26.     "Settlement Agreement," "Settlement," or "Agreement" means this Settlement Agreement, including any attached exhibits.

27.     "Settlement Class" means all persons and entities that own or lease any right, title, or interest in the surface of any piece or parcel of land in West Virginia, Ohio, Kentucky, Pennsylvania, Virginia, or Tennessee that have had a Diversified Well on said piece or parcel at any time between the date of the first complaint in the Action (July 8, 2022) and the date of the signing of the Settlement Agreement (November 4, 2024), including their predecessors, executors, administrators, heirs, assigns, related parties or persons, tenants, and successors. Plaintiffs have made good faith efforts to identify those individuals and will provide that list to the Settlement Administrator. The Settlement Class excludes (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns, and successors; (b) the judge to whom this case is assigned, the judge's staff, and any member of the judge's immediate family, (c) all employees of the law firms representing Plaintiffs and the Settlement Class Members, and (d) any federal, state, or local governmental entity. Settlement Class Members who timely opt out of the Settlement Class are not participating in this Settlement and are not bound by the terms of this Settlement Agreement, nor are they entitled to its benefits.

28.     "Settlement Class Members" means the members of the Settlement Class.

29.     "Settlement Parties" means Class Representatives, on behalf of themselves and all Settlement Class Members, and the Defendants.

30.     "Term of this Agreement" means the period from the Effective Date through December 31, 2034.

31.     "Third Amended Complaint" means the operative complaint in this Action, filed by certain Class Representatives on June 16, 2023 at ECF 322. For the avoidance of doubt, the definition of Third Amended Complaint shall be inclusive of the Plaintiffs-Intervenors' Complaint (ECF 560).

## ARTICLE II – SETTLEMENT RELIEF

1.     Settlement Account and Earnest Money. The Settlement Account shall exist on the books of the Diversified Defendants. Funds in the Settlement Account may be invested in low-risk, interest-bearing securities. The total amount of Earnest Money shall be $500,000. The Diversified Defendants shall deposit half of that amount into the Settlement Account within three (3) business days of execution of the Settlement Agreement by all Parties; under the same timeframe, the EQT Defendants shall deposit the other half. No Earnest Money shall be withdrawn from the Settlement Account without the Court's approval. The EQT Defendants shall bear no responsibility or liability for the investment, disbursement, or use of any Earnest Money following the EQT Defendants' deposit of Earnest Money into the Settlement Account as provided for herein.

2.     Uses of Earnest Money. The Earnest Money, subject to entry of the Preliminary Approval Order and the Final Approval Order, as applicable, is for payment of the cost of notice and administration of the Settlement, payment of the fees and costs associated with setting up and operating the Settlement Account, and payment of the Class Notice Agent. Any remaining Earnest Money (less the deductions referenced in this paragraph) shall be used to offset the award of

attorney's fees, costs, and service awards.

3.   Reversion of Earnest Money to Diversified Defendants.  If the Effective Date does not occur, then half of any remaining Earnest Money shall be returned to the Diversified Defendants and the other half of any remaining Earnest Money shall be returned to the EQT Defendants.  No other funds paid by either Defendant shall revert to that Defendant.

4.   Plugging Promises.

a.   The Diversified Parties, jointly and severally, promise to plug Diversified Wells on the following schedule:

    i.   200 Diversified Wells in calendar year 2025;
    ii.   225 Diversified Wells in calendar year 2026;
    iii.   225 Diversified Wells in calendar year 2027;
    iv.   250 Diversified Wells in calendar year 2028;
    v.   250 Diversified Wells in calendar year 2029;
    vi.   250 Diversified Wells in calendar year 2030;
    vii.   275 Diversified Wells in calendar year 2031;
    viii.   300 Diversified Wells in calendar year 2032;
    ix.   300 Diversified Wells in calendar year 2033;
    x.   325 Diversified Wells in calendar year 2034.

b.   There shall be a five (5%) cushion on the Plugging Promise for any given calendar year without causing a default, provided that the Diversified Parties shall plug 2,600 Diversified Wells by the end of 2034 ("Cushion Provision").  By way of an example, an event of default does not occur if the Diversified Parties plug 191 Diversified Wells in 2025.  If the Diversified Parties miss the Plugging Promises in any given year (after taking into account the cushion), then the Diversified Parties shall plug an additional number of Diversified Wells that is equal to 10% of the miss.

c.   For purposes of this Article II.4, "Diversified Wells" includes any well that any of the Diversified Parties acquire after execution of this Settlement Agreement and then own or operate in Kentucky, Ohio, Pennsylvania, Tennessee, Virginia, or West Virginia.

d.   The Diversified Defendants shall not be deemed to have breached this Agreement or be held liable for any failure or delay in the performance of all or any portion of its Plugging Promises under this Agreement if prevented from doing so by a cause or causes beyond its control.  Without limiting the generality of the foregoing, such causes include acts of God or the public enemy, fires, floods, storms, earthquakes, riots, pandemic or illness, strikes, boycotts, lock-outs, acts of terrorism, acts of war or war-operations, restraints of government (including but not limited to applicable regulators delaying or failing to issue permits), or other circumstances beyond the Diversified Parties' control, or by reason of the judgment, ruling, or order of any court or agency of competent jurisdiction, or change of law or regulation (or change

in the interpretation thereof) subsequent to the execution of this Agreement.

5.      <u>Completion.</u> Once per year, on or about January 30 of each year (and commencing on January 30, 2026), the Diversified Parties shall submit a report identifying the Diversified wells plugged in the prior 12 months to the Settlement Account Administrator.

6.      <u>Ratable Plugging.</u>  The 2,600 wells to be plugged under this Settlement Agreement shall be distributed across Kentucky, Ohio, Pennsylvania, Tennessee, Virginia, and West Virginia. As modified by and subject to the following sentence, the number of wells plugged in each State shall be proportional to the percentage of non-producing wells (as identified by the Diversified Parties) in that State on the date the Settlement Agreement is executed, relative to the total number of non-producing wells in all six States as of that same date. Provided however, that the Diversified Parties shall be in compliance with the above requirements so long as (as measured on a five-year average (2025 – 2029, 2030 – 2034)) the wells plugged in each State does not fall within a range of more than 17.5% of that state's proportional share as calculated above.  The Diversified Parties shall provide such averages to the Settlement Account Administrator.

7.      <u>Additional Provisions Regarding the Plugging Promises.</u>  The following provisions apply to the Plugging Promises:

      a.  The numbers in Article II.4 are minimums.  If the minimum in any period is exceeded, then the Diversified Parties will be credited for those exceedances in the next three-year period. By way of example, if the Diversified Parties plug 300 Diversified Wells in 2025 (rather than the 200 as set forth above), the Diversified Parties need only plug 125 Diversified Wells during 2026 (rather than the 225 as set forth above).  For the avoidance of doubt, the Diversified Parties must plug 2,600 wells by December 31, 2034 to fulfill their Plugging Promises.

      b.  Any Settlement Class Member wells that the Diversified Parties plug between January 1, 2025 and the Final Approval Order shall count against the 2025 Plugging Promises in Article II.4.  Diversified Wells plugged pursuant to this Settlement Agreement may count toward any caps or commitments in any agreement between the Diversified Parties and state regulators, including the West Virginia Department of Environmental Protection.  Diversified Wells that the Diversified Parties plug in satisfaction of any commitments or obligations to any state or federal regulators, including the West Virginia Department of Environmental Protection, may count toward satisfaction of the Diversified Parties' obligations in this Settlement Agreement.

8.      <u>Tolling.</u>  If after January 1, 2030, the Diversified Defendants have no non-producing wells to plug on land owned or leased by Settlement Class Members, then until there are Diversified Wells to plug on land owned or leased by Settlement Class Members, the Diversified Defendants' obligation to plug wells shall be tolled.

9.      <u>Diversified Parties' Operational Discretion.</u>  The Diversified Parties retain the right to determine which Diversified Wells they will plug to meet their obligations under this Agreement,

as well as the order of such plugging. However, the Diversified Parties also agree that from time to time during the existence of this Settlement, an individual class member may demonstrate to the Settlement Account Administrator an extraordinary need for a Diversified Well to be plugged. Extraordinary need means and is limited to a bona fide human health, safety, or environmental concern, which must be established by a declaration or other written submission. In such event, if the Settlement Account Administrator concludes in the exercise of his or her reasonable discretion, after consulting with Diversified Parties, that the well needs to be plugged on an expedited basis, the Settlement Account Administrator will give notice of the decision to the Diversified Parties and they must complete the plugging of the Diversified Well within the next five months from receipt of notice from the Settlement Account Administrator (subject to timing of receipt of the necessary approvals from the applicable well regulators). The Diversified Parties or the individual class members may object to any such decision within ten days of the decision to the Diversified Parties, and shall be entitled to a hearing and expedited appeal before a federal magistrate of the Northern District of West Virginia. The plugging of that Diversified Well shall count against the Plugging Promises counts in Article II.4. This extraordinary need exception to the Diversified Parties' operational discretion cannot apply to more than 10 wells in any one-calendar year period.

10.     <u>State Law Compliance.</u> Plugging will be done in compliance with existing state law.

11.     <u>Plugging Operator.</u> The Diversified Parties retain the sole right to use their own plugging company or any contractor to plug the Diversified Wells (including the wells that are subject to Article II.9 process).

12.     <u>Restarts.</u> The Diversified Parties retain the sole right to determine to restart a nonproducing well in their judgment alone. No Settlement Class Member can object to the Diversified Parties restarting a nonproducing well so long as the Diversified Parties have a contractual (under lease or otherwise) or common law right to do so.

13.     <u>No Obligation as to EQT Defendants.</u> For the avoidance of doubt, and notwithstanding the Diversified Defendants' Plugging Promises or any other provision herein, EQT Defendants shall have no obligation related to plugging any Diversified Wells under any provision included in or omitted from this Settlement Agreement. Any alleged breach or failure by the Diversified Defendants to comply with the terms of the Plugging Promises or any other provision in this Settlement Agreement shall not entitle any Settlement Class Member to seek relief against EQT Defendants or otherwise terminate or void the Irrevocable Release of EQT Defendants set forth in Article VI.3 herein.

14.     <u>Additional Consideration.</u> In addition to their $250,000 portion of the Earnest Money, the Diversified Defendants shall, within five business days of the Effective Date, deposit into the Settlement Account up to $3,000,000.00 as the Court directs. In addition to their $250,000 portion of the Earnest Money, the EQT Defendants shall, within five business days of the Effective Date, deposit into the Settlement Account up to $3,000,000.00 as the Court directs. With the exception of the remainder of the Earnest Money as stated in Article II.1, these funds shall not revert to the Defendants. The EQT Defendants shall bear no responsibility or liability for the investment, disbursement, or use of any Additional Consideration following the EQT Defendants' deposit of Additional Consideration into the Settlement Account as provided for herein. To the extent the

Court orders the Diversified Defendants to pay more than $3,250,00.00, this Agreement is void. To the extent the Court orders the EQT Defendants to pay more than $3,250,00.00, this Agreement is void.  In no event shall the Diversified Defendants' monetary liability under this Agreement exceed the sum of $3,250,000.00.  In no event shall the EQT Defendants' monetary liability under this Agreement exceed the sum of $3,250,000.00

15.    Authority.  Interim Class Counsel are fully authorized to enter into this Agreement on behalf of Plaintiffs and the Settlement Class.  The Class Representatives support and have no objection to this Agreement.

## ARTICLE III – SETTLEMENT ACCOUNT ADMINISTRATION

1.    Selection of Settlement Account Administrator.    The Settlement Account Administrator shall be G. Nicholas Casey, Jr., Esq.  To the extent the Court does not approve the appointment of Mr. Casey, or Mr. Casey serves but is replaced, counsel for Plaintiffs and counsel for the Defendants shall agree on a list of three potential account administrators to propose to the Court for approval, and the Court may choose from that list or direct the Settlement Parties to identify additional candidates.

2.    Duties and Responsibilities of Settlement Account Administrator.  The rights and duties of the Settlement Account Administrator shall be to ensure that the Diversified Defendants meet their obligations under Article II.5 to submit the annual compilation of plugging reports, to consider applications under Article II.9, and to take the actions regarding breach and default as specified in Article VII.4.  The Settlement Account Administrator shall have the roles, responsibilities, and authority set forth in this Agreement and no others.  In no event shall the Settlement Account Administrator have the right to assert or prosecute any claims encompassed by the Third Amended Complaint, including any further amendments thereto.

3.    Appointment Pursuant to Rule 53.  The Settlement Account Administrator shall be appointed pursuant to Federal Rule of Civil Procedure 53.  The appointment order shall not expand or alter the duties, powers, and obligations of the Settlement Account Administrator that is set forth in this Settlement Agreement.  An agreed appointment order is attached hereto as **Exhibit D**.

4.    Fees and Expenses of Settlement Account Administrator.  The Settlement Account Administrator shall receive annual compensation of $22,500.00, which shall increase by 4% a year, cumulatively, beginning on January 1, 2026, plus reasonable expenses that are necessary for the Settlement Account Administrator to carry out its duties under this Agreement, not to exceed $7,500 per year.  Payments to the Settlement Account Administrator shall come from the Diversified Defendants.  The EQT Defendants shall bear no responsibility or liability for payments to the Settlement Account Administrator under this Article III.

5.    Removal of Settlement Account Administrator.  The Preliminary Approval Order and the Final Approval Order shall provide that any Settlement Party to this Agreement who believes that the Settlement Account Administrator is not acting reasonably and in good faith executing the functions described in this Settlement Agreement may move the Court to terminate the Settlement Account Administrator upon 30 days' notice, which termination of the Settlement

Account Administrator shall only occur if the Settlement Account Administrator is materially breaching its obligations under this Agreement, and a replacement shall be selected by mutual agreement of the Settlement Parties and proposed to the Court for approval.

6.       Reporting to Court.  After conferring with counsel to Plaintiffs and the Defendants, the Settlement Account Administrator will report to the Court from time to time as the Court may order, with counsel for Plaintiffs and counsel for the Defendants copied on such correspondence.

7.       Electronic Submissions to Settlement Account Administrator.  All submissions to the Settlement Account Administrator shall be electronic, with email delivery agreed to be sufficient.

## ARTICLE IV – NOTICE AND SETTLEMENT ADMINISTRATION

1.       Class Notice Agent.  As part of the Preliminary Approval Order, Interim Class Counsel shall seek appointment of a Class Notice Agent.  Plaintiffs will solicit at least three bids from potential administrators and consult with the Defendants about those bids before filing the motion for Preliminary Approval.  The Defendants will have input on the selection of the Class Notice Agent, with final decision-making reserved for Interim Class Counsel (subject to Court approval).  The Settlement Parties may agree to remove and replace the Class Notice Agent, subject to Court approval.

2.       Roles of Class Notice Agent.  The Class Notice Agent shall administer certain aspects of the Settlement according to the terms of this Settlement Agreement and orders of the Court.  The Class Notice Agent shall have the following roles and no others:  The Class Notice Agent will send notice to Class Members; maintain a web site regarding the Settlement; handle returned mail not delivered to Class Members; attempt to obtain updated address information for any direct mailed notices returned without a forwarding address; receive and maintain on behalf of the Court any Class Member correspondence regarding requests for exclusion and/or objections to the Settlement; field calls and correspondence from Class Members until the Settlement Account Administrator is engaged and can take over that function; and ensure compliance with any tax or other laws regarding receipt of settlement funds.

3.       Notice to Settlement Class Members.  The Settlement Parties, in consultation with the Class Notice Agent, shall design a class notice program that satisfies due process and meets the requirements of Federal Rule of Civil Procedure 23(c) and any other applicable statute, law, or rule.  The notice program is attached hereto as **Exhibit E** (subject to Court approval).  Interim Class Counsel shall cause the Class Notice Agent to issue notice to potential Settlement Class Members by Mail Notice and Publication Notice.  The costs of notice, including Mail Notice, and Publication Notice, and CAFA Notice, including costs to enable the Class Notice Agent to begin its work, shall be paid from the Earnest Money in the Settlement Account.  The motion for Preliminary Approval will further detail the contents of the class notice program.

4.       Best Practicable Notice.  The Settlement Parties agree, and the Preliminary Approval Order shall state, that compliance with the procedures described in this Article is the best notice practicable under the circumstances; shall constitute due and sufficient notice to the Settlement Class of the terms of the Settlement Agreement and the Final Approval Hearing; and

shall satisfy the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.

5.        CAFA Notice.  Within 10 days of the filing of this Settlement Agreement and the motion for Preliminary Approval of the Settlement, the Defendants shall provide CAFA Notice to the Attorney General of the United States; the Attorneys General of the States of Kentucky, Ohio, Pennsylvania, Tennessee, Virginia, and West Virginia; and the West Virginia Department of Environmental Protection and comparable departments and regulators in the states of Kentucky, Ohio, Pennsylvania, Tennessee, and Virginia.  CAFA Notice shall be mailed or e-mailed and shall include the required information; the form of the CAFA Notice is included in the notice program attached hereto as **Exhibit E** (subject to Court approval).  Upon completion of CAFA notice, the Defendants shall file a declaration with the Court so certifying.  The Settlement Parties agree, and the Preliminary Approval Order shall state, that this CAFA Notice shall be sufficient to satisfy the terms of 28 U.S.C. § 1715.

6.        No Liability of Defendants.  The Defendants shall have no liability whatsoever for the selection of the Class Notice Agent, the design and implementation of the notice program, the performance of the Settlement Account Administrator of his or her duties, or the performance of the Class Notice Agent of his or her duties, except that payment to the Class Notice Agent shall be paid from the Earnest Money established pursuant to this Agreement.

7.        Attorney Fees and Costs.  Class Representatives will submit an application for an award of attorney fees and costs in an amount that shall not exceed remaining Earnest Money and the Additional Consideration (after budgeting for all other expenses expected to be charged against the Earnest Money and the Additional Consideration, including noticing costs and class service awards).  The Defendants reserve all rights to oppose the application for attorney fees.

8.        Class Service Awards.  Class Representatives may submit an application for class service awards in an amount that shall not exceed remaining Earnest Money and the Additional Consideration (after budgeting for all other expenses expected to be charged against the Earnest Money and the Additional Considerations, including noticing costs and attorney fees). The Defendants reserve all rights to oppose the application for class service awards.

## ARTICLE V – COURT APPROVAL OF SETTLEMENT

1.        Preliminary Approval.  As soon as practicable after execution of this Settlement Agreement, Interim Class Counsel, acting on behalf of the Class Representatives, shall apply for entry of the Preliminary Approval Order in the form attached hereto **Exhibit A**.  The Defendants will not oppose but do not endorse or approve the content of the motion for Preliminary Approval or the content of the Preliminary Approval Order.  The Preliminary Approval Order shall include provisions: (a) preliminarily approving this Settlement and finding this Settlement sufficiently fair, reasonable, and adequate to allow Mail Notice and Publication Notice to be disseminated; (b) approving the form, content, and manner of the Mail Notice and Publication Notice; (c) setting a schedule for proceedings with respect to final approval of this Settlement, including a deadline to request exclusion from the Settlement; (d) immediately staying the Action, as to the Defendants, other than such proceedings as are necessary to effectuate this Settlement; and (e) issuing an

injunction against any actions by Settlement Class Members to pursue claims to be released under this Settlement Agreement, pending entry of the Final Approval Order.

2.      <u>Requests for Exclusion.</u>  Any potential Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written request for exclusion to the Class Notice Agent at the address provided in the Mail Notice, postmarked on or before a date ordered by the Court specifying that he or she wants to be excluded and otherwise complying with the terms stated in the Mail Notice and Preliminary Approval Order.  A request for exclusion must include a handwritten signature (an electronic signature is insufficient), among other things as to be stated in the Mail Notice and Preliminary Approval Order.  The Class Notice Agent shall forward copies of any written requests for exclusion to Interim Class Counsel and counsel to the Defendants within five days of receiving each such request.  If a potential Settlement Class Member files a request for exclusion, he or she may not file an objection to the Settlement under Article V.3.  Any potential Settlement Class Member who does not file a timely written request for exclusion as provided in this paragraph shall be bound by all subsequent proceedings, orders, and judgments, including the releases and covenants not to sue, Final Approval Order, and Final Judgment, even if he or she has litigation pending or subsequently initiates litigation against the Defendants or Released Parties for any claim or cause of action released in this Settlement.

3.      <u>Objections to Settlement.</u>  Any Settlement Class Member wishing to object to or to oppose the approval of (a) this Settlement Agreement, and/or (b) any application for attorneys' fees and expenses, shall file a written objection with the Court and serve it on the Settlement Parties no more than 21 days after Interim Class Counsel files the motion for Final Approval.  Any Settlement Class Member that fails to file a timely written objection that meets the requirements of this Article V.3 shall have no right to file an appeal relating to the approval of this Settlement.  Any written objection must include the following:

a. The objecting Settlement Class Member's name, address, and telephone number;

b. Proof of class membership;

c. A statement that the objector is objecting to the proposed Settlement and/or the application for attorneys' fees and costs;

d. A statement of all the factual and legal reasons for the objection and whether it applies only to the objector, to a subset of the Settlement Class, or the entire Settlement Class;

e. Identify all class actions to which the objector has previously objected;

f. The name and contact information of any and all lawyers representing, advising, or in any way assisting the objector in connection with such objection;

g. Copies of all documents that the objector wishes to submit in support of its position; and

h. The objector's handwritten signature (an electronic signature is insufficient).

4.    Motion for Final Approval and Response to Objections. The Class Representatives, acting through Interim Class Counsel, shall file with the Court their motion for final settlement approval at least 45 days before the date of the Final Approval Hearing and no sooner than five days after Mail Notice and Publication Notice are completed.  The Class Representatives, acting through Interim Class Counsel, shall file with the Court a supplemental brief that responds to any objections no later than 14 days before the date of the Final Approval Hearing.  The Defendants shall not oppose but do not endorse or approve the content of the motion for Final Approval.

5.    Pre-Final Approval Hearing Submission.  Not later than 10 days before the date of the Final Approval Hearing, the Class Notice Agent shall file with the Court (a) a list of those persons or entities who or which have opted out or excluded themselves from the Settlement; and (b) the details outlining the scope, method, and results of the notice program.

6.    Final Approval Hearing.  The Settlement Parties shall request that the Court, on the date set forth in the Preliminary Approval Order or on such other date that the Court may set, conduct a Final Approval Hearing to, *inter alia*: (a) determine whether to grant final approval to this Settlement Agreement; (b) consider any timely objections to this Settlement and the responses to such objections; and (c) rule on any application for attorneys' fees and costs.  At the Final Approval Hearing, the Class Representatives, acting through Interim Class Counsel, shall ask the Court to give final approval to this Settlement Agreement. If the Court grants final approval to this Settlement Agreement, the Class Representatives, acting through Interim Class Counsel, shall ask the Court to enter a Final Approval Order, substantially in the form attached hereto as **Exhibit B**, which, *inter alia*, approves this Settlement Agreement, authorizes entry of a final judgment, and dismisses Plaintiffs' Third Amended Complaint with prejudice as to the Defendants.  The Class Representatives, acting through Interim Class Counsel, shall also ask the Court to enter a Final Judgment separately from the Final Approval Order, substantially in the form attached hereto as **Exhibit C**.

7.    Disapproval. Cancellation. Termination, or Nullification of Settlement.  Each of the Defendants and the Class Representatives shall have the right to terminate this Settlement Agreement if either (i) the Court denies preliminary approval or final approval of this Settlement Agreement; or (ii) the Final Approval Order does not become Final by reason of a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving Settlement on the terms set forth herein.  If the Defendants or the Class Representatives elect to terminate this Agreement under this paragraph, the electing party must provide written notice to the non-electing party's counsel within 30 days of the occurrence of the condition permitting termination, *provided* that no party may elect to terminate this Settlement Agreement under this paragraph unless the electing party uses its best efforts in good faith to resolve the relevant issue(s).

8.    Walk-Away Rights.  In the event that there are Excluded Members that make up or relate to eight percent (8.0%) or more of the Diversified Wells within the Settlement Class (i.e., the Walk-Away percentage is measured by wells, not members) the Defendants shall have the right, in their sole and absolute discretion, within twenty (20) calendar days after the opt-out deadline set by

the Court, to notify Interim Class Counsel in writing that the Defendants have elected to dissolve this Settlement Agreement and withdraw from the Settlement.  In the event the Defendants provide such notification and thereby exercise their walk-away rights hereunder, the Settlement Parties shall have no further obligations under this Settlement Agreement and any remaining Earnest Money shall be returned to the Defendants.

## ARTICLE VI – RELEASES UPON EFFECTIVE DATE

1.      <u>Binding and Exclusive Nature of Settlement Agreement.</u>  On the Effective Date, the Settlement Parties and each and every Settlement Class Member shall be bound by this Settlement Agreement and shall have recourse exclusively to the benefits, rights, and remedies provided hereunder.

2.      <u>Release and Covenant Not to Sue.</u>  Upon Final Approval, Plaintiffs and the Settlement Class, and each Settlement Class Member—on behalf of themselves and any other legal or natural persons and entities who or which may claim by, through, or under them, including their executors, administrators, heirs, assigns, predecessors and successors—agree:

    a.   <u>Release.</u>  As of and upon the Effective Date, to irrevocably and fully release the Released Parties from any and all claims and causes of action of any nature whatsoever, whether based on any federal law, state law, common law, contract, rule, regulation, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, for any alleged claim or cause of action (whether based in tort, statute, regulation, common law, or any other law), or assertion of fraudulent transfer regarding or other challenge to (i) any transaction between or involving the EQT Defendants and/or Diversified Defendants (including but not limited to Plaintiffs' claims relating to the transactions between the Diversified Defendants and the EQT Defendants in 2018 and 2020), (ii) any transaction related to the acquisition of any Diversified Wells, (iii) with respect to the EQT Defendants, any claims that were or could have been asserted in this case, (iv) the Diversified Parties' solvency as of July 1, 2024, as related to its asset retirement obligations, and (v) the Released Parties' actions, omissions, practices and decisions regarding the plugging and abandonment or restarting of Diversified Wells (including any allegations of trespass, negligence, nuisance, or failure to plug) that are plugged or restarted at any time prior to and through the 10 year period referenced in the following paragraph.

    b.   <u>Covenant Not to Sue.</u>  To covenant not to sue or bring any type of claim or action (including against any Released Party or State or other regulators) —for a period that shall not expire until 10 full years has elapsed since the occurrence of the Effective Date—regarding any and all claims and causes of action of any nature whatsoever, whether based on any federal law, state law, common law, contract, rule, regulation, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, that arise out of or relate to (i) the Released Parties' actions, omissions, practices, and decisions regarding the plugging and abandonment (or lack thereof) of Diversified Wells (including the timing of such plugging or lack thereof) on property

owned or leased by members of the Settlement Class, or (ii) the validity or sufficiency or primacy of agreements or consent orders between any of the Diversified Parties and State well regulators that concern well plugging and abandonment.  This tolling and covenant not to sue includes all causes of action that were alleged and could have been alleged against the Released Parties in the Action.  For the avoidance of doubt, Class Representatives and Settlement Class Members covenant not to sue—for a period that shall not expire until 10 full years has elapsed since the occurrence of the Effective Date—the Released Parties for any claim or cause of action arising out of or related to trespass, negligence, nuisance, or failure to plug associated with Diversified Wells that was brought or could have been brought in this Action.  For the further avoidance of doubt, except as set forth in Article II.9, no Class Representative or Settlement Class Member may petition or seek any relief that the Diversified Parties must plug any specific well for a period that shall not expire until 10 full years has elapsed since the occurrence of the Effective Date (to be clear, no Class Representative or Settlement Class Member may ever petition or seek any relief that the EQT Defendants must plug any Diversified Wells).  To the extent the Diversified Parties plug the Diversified Wells on the property of a Settlement Class Member, all such claims that the Settlement Class Member may have against the Released Parties regarding the actions, omissions, practices, and decisions regarding the plugging and abandonment of Diversified Wells (including the timing of such plugging or lack thereof), whether such claims sound in trespass, nuisance, negligence, or otherwise, shall be automatically and immediately released for all time by the operation of this Agreement and without further action.

c.  <u>Claims Not Released or Subject to Covenant Not to Sue.</u>  Class Representatives and Settlement Class Members do not waive any individual rights (1) to individually (and not as a group or class) apply to applicable State Departments of Environmental Protection to request that their wells be plugged if such a process exists under state law; and (2) to individually (and not as a group or class) assert any claims arising out of damage caused by the plugging of a well and associated work, or damage to persons or property caused by actions taken in the plugging of a well, *provided, however*, by entering into this Settlement Agreement, Defendants likewise give up no rights to oppose any such action by Class Representatives or Settlement Class Members, *provided, further, however*, no Class Representative or Settlement Class Member can seek relief that would go above and beyond the applicable state law in connection with such action, and *provided, further, however*, all such claims against the EQT Defendants are being irrevocably released.

d.  <u>Provisions Related to the Release and Covenant Not to Sue.</u>  The Release shall never expire.  The Covenant Not to Sue shall not expire until 10 full years has elapsed since the occurrence of the Effective Date.  Any and all buyers, successors, or assigns of the Diversified Wells that are covered by the Release and Covenant Not to Sue shall be the beneficiary of the Release and Covenant Not to Sue in the same manner and to the same extent as the Diversified Parties; for the avoidance of doubt, third-party persons or firms which bought before the execution of this Settlement Agreement (November 4, 2024) the Diversified Wells that are covered by the Release and Covenant Not to Sue shall be (i) released in the same manner and to the same extent as the Diversified Parties and (ii)

the beneficiary of the Covenant Not to Sue in the same manner and to the same extent as the Diversified Parties. Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release and Covenant Not to Sue also covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees and/or disbursements incurred by any attorneys, Interim Class Counsel, Class Representatives, and/or Settlement Class Members who claim to have assisted in conferring the benefits under this Settlement upon the Settlement Class.  Class Representatives and Settlement Class Members shall not pursue any released claims on an individual or class-wide basis. The Release of the Defendants and Released Parties and Covenant Not to Sue survives any claims against any non-Defendant party by Class Representatives and the Settlement Class Members, and no claims against any other party can affect the Release of the Defendants and Released Parties or the Covenant Not to Sue by the Class Representatives and Settlement Class Members.

e.  <u>Limitation as to Certain Settlement Class Members.</u>  To the extent there are Class Members who, after December 31, 2034 or the termination of this Agreement, own or lease land in Kentucky, Ohio, Pennsylvania, Tennessee, Virginia, and West Virginia containing at least one Diversified Well that (a) has not produced oil or gas for 12 consecutive months, (b) is currently or has in the previous three years been owned or operated by any Diversified Defendant, (c) has not been plugged, and (d) who wants such well plugged, this Settlement is without prejudice to the rights and defenses of Plaintiffs, Diversified Defendants, and such Class Member at such time.  To be clear, this Settlement is with prejudice to the rights and defenses of Plaintiffs and such Class Members as to the EQT Defendants.  No claim or cause of action of any kind in any forum may be asserted against the EQT Defendants with respect to the Diversified Wells, including those described in this paragraph.

3.  <u>Irrevocable Release of EQT Defendants.</u>  The EQT Defendants shall have no obligation whatsoever under this Settlement Agreement except to make the Earnest Money and Additional Consideration payments set forth in Article II.1 and Article II.14, respectively.  The Settlement Class Members hereby acknowledge that they are independently settling their claims against the EQT Defendants, and that any Diversified Defendant breach of any plugging obligation hereunder, including without limitation the Plugging Promises, shall not in any way impact the Settlement Agreement as to EQT Defendants.  Upon Final Approval, the Settlement Class Members' release of the EQT Defendants shall be unconditional and irrevocable, and cannot be undone for any reason.

4.  <u>Injunction in Aid of Releases.</u>  Class Representatives and Settlement Class Members shall not now or hereafter institute, maintain, prosecute, assert, instigate, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, claim, and/or proceeding, whether legal, administrative, or otherwise against the Defendants or Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action, and/or any other matters released through this Settlement and/or that are subject to the Covenant Not to Sue.  If a Class Member who does not opt out commences, files, initiates, or institutes any such action, it shall be dismissed with prejudice.

Prior to taking any action to enforce an alleged breach of the prohibitions in the preceding paragraph, the Defendants shall provide the Class Member written notice and a thirty-day opportunity to cure any alleged breach.

5.      Binding on Successors and Assigns.  The releases and covenants not to sue in this Agreement are binding upon Plaintiffs' and the Class Members' successors and assigns.

6.      Effect of Release on Settlement Class Members.  The Mail Notice and Publication Notice will advise all Settlement Class Members of the binding nature of the Release and Covenant Not to Sue and of the remainder of this Agreement, and entry of the Final Approval Order shall have the same force and effect as if each Class Member executed this Agreement.

7.      Waiver of Unknown Claims.  On the Effective Date, Class Representatives and Settlement Class Members shall be deemed to have, and by operation of this Agreement shall have, with respect to the subject matter of the Action, expressly waived the benefits of any statutory provisions or common law rule that provides, in substance or effect, that a general release does not extend to claims which the party does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with any other party.

8.      Investigation by Interim Class Counsel.  Interim Class Counsel acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or representations made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Settlement Agreement.

9.      Later-Discovered Facts.  In connection with this Agreement, Interim Class Counsel, Class Representatives, and Settlement Class Members acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein.  Nevertheless, it is the intention of Interim Class Counsel on behalf of Settlement Class Members in executing this Agreement to agree to its terms and to the releases herein.

## ARTICLE VII – LIMITATIONS ON USE OF SETTLEMENT AGREEMENT

1.      No Admission.  This Settlement reflects a compromise of disputed claims and defenses, and neither the acceptance by the Defendants of the terms of this Settlement Agreement nor any of the related negotiations or proceedings constitutes an admission with respect to the merits of the claims and defenses alleged in this Action, the validity (or lack thereof) of any claims that could have been asserted by any of the Class Representatives or Settlement Class Members in the Action, whether the Action could be appropriately certified as a class action, or the liability of the Defendants in the Action.  The Defendants specifically deny any liability or wrongdoing of any kind associated with the claims alleged in the Action.  The Defendants believe they have valid and complete defenses to the claims asserted against them in the Action and deny that they committed any violations of law, engaged in any unlawful act or conduct, or that there is any basis for liability for any of the claims that have been, are, or might have been alleged in the Action.  Nonetheless, the Defendants have concluded that it is desirable and in the interest of their stakeholders that the

Action be fully and finally settled in the matter upon the terms and conditions set forth in this Agreement.

2.      Limitations on Use.  This Agreement shall not be used, offered, or received into evidence in the Action, or in any other action or proceeding, for any purpose other than to enforce, to construe, or to finalize the terms of the Settlement Agreement and/or to obtain the preliminary and final approval by the Court of the terms of the Settlement Agreement.  Neither this Agreement nor any related negotiations, conversations, correspondence, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity.

## ARTICLE VIII – MODIFICATIONS, TERMINATION, AND DISPUTE RESOLUTION

1.      Modifications.  The terms and provisions of this Agreement may not be amended, modified, or expanded except by written agreement of the Settlement Parties, through their respective counsel, and approval of the Court.

2.      Disputes.  In the event of a dispute arising under this Settlement Agreement as between the Settlement Account Administrator, the Defendants, Interim Class Counsel, and/or Settlement Class Members, the relevant parties shall: *first*, exchange written correspondence and meet and confer within 15 days of a party having identified in writing to the other(s) the disputed issue (which date can be extended by mutual agreement in writing), and thereafter the applicable parties shall have an additional 15 days to resolve the disputed issue among themselves (which date can be extended by mutual agreement in writing); *second*, if not resolved by the 31st day (which date can be extended by mutual agreement in writing), the applicable parties shall submit the disputed issue to the Court by noticed motion.

3.      Occurrence of Effective Date.  Within three (3) business days of the Effective Date, Plaintiffs shall dismiss the Action with prejudice.

4.      Breach or Default And Specific Enforcement as Sole Remedy.  Subject to the limitations set forth in Article II.13 and Article VI.3, if the Defendants cause or allow a breach or default of this Settlement Agreement for any reason, then the Settlement Account Administrator can declare an event of default after notice and a 30-day opportunity to cure.  Time will be of the essence in event of cure.  In the event of an uncured default, the sole remedy of the Settlement Account Administrator and any Settlement Class Members and Settlement Parties shall be the right to seek to specifically enforce the Agreement; in no such event shall this Agreement be terminated.

## ARTICLE IX – MISCELLANEOUS

1.      Assumption of Risk.  In entering into this Settlement Agreement, each of the Settlement Parties assumes the risk of any mistake of fact or law.  If any Settlement Party should later discover that any fact which the Settlement Party relied upon in entering into this Agreement is not true, or that the Settlement Party's understanding of the facts or law was incorrect, the Settlement Party shall not be entitled to modify, reform, or set aside this Settlement Agreement, in whole or in part, by reason thereof.

2.      <u>Cooperation.</u>  The Settlement Parties and their counsel agree to support approval of this Settlement by the Court and to take all reasonable and lawful actions necessary to obtain such approval.

3.      <u>Binding on Assigns.</u>  This Agreement shall be binding upon and inure to the benefit of the Settlement Parties and their respective heirs, trustees, executors, successors, and assigns.

4.      <u>Captions.</u>  Titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.

5.      <u>Construction.</u>  The Settlement Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Settlement Parties, and that this Agreement shall not be construed in favor of or against any Settlement Party by reason of the extent to which any Settlement Party, or their counsel, participated in the drafting of this Agreement.

6.      <u>Counterparts.</u>  This Agreement and any amendments hereto may be executed in one or more counterparts, and any Settlement Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and each of which counterparts taken together shall constitute but one and the same instrument. A verified electronic signature (such as DocuSign) or PDF signature shall be deemed an original for all purposes.

7.      <u>Governing Law.</u>  Construction and interpretation of this Settlement Agreement shall be determined in accordance with the law of the State of West Virginia, without regard to the choice-of-law principles thereof.

8.      <u>Integration Clause.</u>  This Agreement, including the exhibits referred to herein, which form an integral part hereof, contains the entire understanding of the Settlement Parties with respect to the subject matter contained herein. There are no promises, representations, warranties, covenants, or undertakings governing the subject matter of this Agreement other than those expressly set forth in this Agreement. This Agreement supersedes all prior agreements and understandings among the Settlement Parties with respect to the settlement of the Action.

9.      <u>Jurisdiction.</u>  The Court shall retain jurisdiction, after entry of the Final Approval Order, with respect to enforcement of the terms of this Settlement.

10.     <u>Litigation Standstill.</u>  The Settlement Parties agree, and the Preliminary Approval Order shall state, that upon execution of this Settlement Agreement, the Action shall be stayed as to the Defendants.

11.     <u>No Assignment.</u>  Each party represents, covenants, and warrants that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber any portion of any liability, claim, demand, cause of action, or rights that they herein release.

12.      <u>No Collateral Attack.</u>  This Agreement shall not be subject to collateral attack by any Settlement Class Member at any time on or after the Effective Date.  Such prohibited collateral attacks shall include, but shall not be limited to, claims that a Settlement Class Member failed to receive timely notice of the Settlement Agreement.

13.      <u>No Effect on Governmental Entities.</u>  This Settlement Agreement does not purport to affect the rights or duties of any governmental entity in any way, except to the extent that a governmental entity is a Settlement Class Member.

14.      <u>Notices.</u>  Whenever this Agreement requires or contemplates that one of the Settlement Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

If to Class Representatives or Plaintiffs or Interim Class Counsel, then to:

John W. Barrett
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com

If to the Diversified Defendants, then to:

Daniel T. Donovan, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5267
daniel.donovan@kirkland.com

If to the EQT Defendants, then to:

Anna Rotman, P.C.
KIRKLAND & ELLIS LLP
609 Main, Suite 4600
Houston, TX 77002
(713) 836-3750
anna.rotman@kirkland.com

If to the Settlement Account Administrator, then to:

G. Nicholas Casey, Jr., Esq.
4401 Kanawha Avenue SE
Charleston, WV 25304
gncaseywv@gmail.com

15.    Receipt of Advice of Counsel.  The Settlement Parties acknowledge, agree, and specifically warrant to each other that they have read this Settlement Agreement, have received legal advice with respect to the advisability of entering into this Settlement, and fully understand its legal effect.

16.    Settlement Parties' Authority.  The signatories hereto represent that they are fully authorized to enter into this Agreement and bind the Settlement Parties to the terms and conditions hereof.

17.    Invalid Provisions.  If any provision of this Settlement Agreement is held to be illegal, invalid, or unenforceable, the Settlement Parties shall negotiate in good faith a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible. If any provision of this Settlement Agreement is held to be illegal, invalid, or unenforceable, such illegality, unenforceability, or invalidity shall not affect the enforceability or validity of the remaining provisions.

18.    Timing of Preliminary Approval. Plaintiffs shall seek Preliminary Approval of this Settlement no later than 14 days from the date the Settlement Agreement is fully executed.

19.    Waiver of Compliance.  Any failure of any Settlement Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Settlement Party or Settlement Parties entitled to the benefit of such obligation, covenant, agreement, or condition.  A waiver or failure to insist upon compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

*[Signature page follows.]*

For Plaintiffs and Settlement Class Members

DATED: November 4, 2024

John W. Barrett
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com

For Diversified Defendants

DATED: November 4, 2024

Daniel T. Donovan, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5267
daniel.donovan@kirkland.com

For EQT Defendants

DATED: November 4, 2024

Anna Rotman, P.C.
**KIRKLAND & ELLIS LLP**
609 Main, Suite 4600
Houston, TX 77002
(713) 836-3750
anna.rotman@kirkland.com

For Plaintiffs and Settlement Class Members

DATED: November 4, 2024

_____

John W. Barrett
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com


For Diversified Defendants

DATED: November 4, 2024

_____

Ben Sullivan
Senior Executive Vice President and Chief
Legal & Risk Officer & Corporate Secretary
Diversified Energy Company PLC
1600 Corporate Drive
Birmingham, Alabama 35242
bsullivan@dgoc.com


For EQT Defendants

DATED: November 4, 2024

_____

William E. Jordan
Chief Legal and Policy Officer
EQT Corporation
625 Liberty Avenue, Suite 1700
Pittsburgh, PA 15222
wijordan@eqt.com

<u>For Plaintiffs and Settlement Class Members</u>

DATED: November 4, 2024

                                  _____

John W. Barrett
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com

<u>For Diversified Defendants</u>

DATED: November 4, 2024

                                  _____

Daniel T. Donovan, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue N.W.
Washington, DC 20004
(202) 389-5267
daniel.donovan@kirkland.com

<u>For EQT Defendants</u>

DATED: November 4, 2024

                                DocuSigned by:

                                *Will Jordan*
                                4BEEF51488AE449

William E. Jordan
Chief Legal and Policy Officer
EQT Corporation
625 Liberty Avenue, Suite 1700
Pittsburgh, PA 15222
wijordan@eqt.com