# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## AT WHEELING

MARK MCEVOY, et al.,
individually and on behalf of a proposed class,

      Plaintiffs,

                                           Civil Action No. 5:22-cv-171
      v.                                 The Honorable John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC, et al.,

      Defendants.

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

    A.  The proposed attorneys' fee and costs award is fair, reasonable, and justified. .... 2

        1.  The requested attorneys' fees and costs are awardable under both the common benefit and common fund doctrines. ...................................................... 2

            a.  The benefit achieved through the settlement. ................................................ 5

            b.  The presence or absence of objections to the settlement and fee award. ... 6

            c.  The skill of the attorneys and the difficulty of the case. ........................... 6

            d.  Complexity and duration of the litigation. .................................................. 7

            e.  Risk of nonpayment. ................................................................................... 8

            f.  Time and expense. ..................................................................................... 10

            g.  Awards in similar cases. ............................................................................ 10

        2.  A lodestar cross-check further demonstrates the reasonableness of the fee. . 11

    B.  The proposed incentive awards are reasonable and appropriate. ......................... 12

CONCLUSION ................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abrams & Abrams, P.A.*,
  605 F.3d 238 (4th Cir. 2010) ................................................................. 9

*Archbold v. Wells Fargo Bank*,
  No. 3:13-cv-24599, 2015 WL 4276295 (S.D. W. Va. July 14, 2015) ........................ 11

*Barber v. KimBrell's, Inc.*,
  577 F.2d 216 (4th Cir. 1978) ................................................................. 4

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .......................................................................... 2

*Brewer v. School Bd. of the City of Norfolk*,
  456 F.2d 943 (4th Cir. 1972) ................................................................. 3

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943) ......................................................................... 7

*Cather v. Seneca-Upshur Petroleum, Inc.*,
  No. 1:09–CV–0013, 2012 WL 12977984 (N.D. W. Va. May 31, 2012) ................... 11

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) .................................................................. 4

*In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
  365 F. Supp. 3d 685 (S.D. W. Va. 2019) .................................................... 4

*Cosgrove v. Sullivan*,
  759 F. Supp. 166 (S.D.N.Y. 1991) ........................................................... 3

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
  No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ............................ 14

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ............................................................ 14

*Dakota Medical, Inc. v. RehabCare Group, Inc.*,
  2017 WL 4180497 (E.D. Cal. 2017) ......................................................... 11

*Deem v. Ames True Temper, Inc.*,
  2013 WL 2285972 (S.D. W.Va. 2013) ....................................................... 11

*Denney v. Phillips & Buttorff Corp.*,
    331 F.2d 249 (6th Cir. 1964) .................................................................... 3

*In re Diet Drugs Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009) ...................................................................... 3

*Dijkstra v. Carenbauer*,
    No. 5:11-CV-00152, 2016 WL 6804980 (N.D. W. Va. July 12, 2016) ...... 5, 10, 12, 13

*Domonoske v. Bank of America, N.A.*,
    790 F. Supp. 2d 466 (W.D. Va. 2011) ...................................................... 12

*Grissom v. The Mills Corp.*,
    549 F.3d 313 (4th Cir. 2008) .................................................................... 12

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
    Case No. 1:13–cv–21016, Doc. 95 (S.D. Fla. June 24, 2015) ................... 11

*Hageman v. AT & T Mobility LLC*,
    No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ........... 11, 14

*Hall v. Cole*,
    412 U.S. 1 (1973) ...................................................................................... 3

*Ex Parte Horn*,
    718 So. 694 (Ala. 2001) ............................................................................ 4

*Ikuseghan v. Multicare Health Sys.*,
    No. C14-5539, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) .............. 14

*Jones v. Dominion Resources Servs., Inc.*,
    601 F. Supp. 2d 756 (S.D. W. Va. 2009) ................................................. 11, 12

*Jones v. I.Q. Data Int'l, Inc.*,
    No. 1:14-CV- 00130, 2015 WL 5704016 (D. N.M. Sept. 23, 2015) .......... 14

*Krakauer v. Dish Network, L.L.C.*,
    No. 1:14-333, 2018 WL 6305785 (M.D. N.C. Dec. 3, 2018) (Eagles, J.) ............. 12

*In re Lifelock, Inc., Mktg. & Sales Practices Litig.*,
    No. 08–1977, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010) ...................... 3

*Martin v. Dun & Bradstreet, Inc.*,
    No. 1:12-cv-215, 2014 WL 9913504 (N.D. Ill. Jan. 16, 2014) ................. 14

*Mey v. Patriot Payment Group, LLC*,
　　Final Approval Order ............................................................................ 11, 14

*Mey v. Venture Data, LLC*,
　　Final Approval Order ............................................................................ 10, 13

*Mills v. Electric Auto-Lite Co.*,
　　396 U.S. 375 (1970) .................................................................................. 2, 3

*Ritchie v. Van Ru Credit Corp.*,
　　No. CV-12-1714, 2014 WL 956131 (D. Ariz. Mar. 12, 2014) ................................... 14

*Singleton v. Domino's Pizza, LLC*,
　　976 F. Supp.2d 665 (D. Md. 2013) ............................................................... 12

*Smith v. Res-Care, Inc.*,
　　No. 3:13-5211, 2015 WL 6479658 (S.D. W.Va. October 27, 2015) ........................... 12

*State Bd. of Educ. v. Waldrop*,
　　840 So. 2d 893 (Ala. 2002) ........................................................................ 4

*Swanson v. Am. Consumer Indus., Inc.*,
　　517 F.2d 555 (7th Cir. 1975) ...................................................................... 3

*Thacker v. PHH Mortg. Corp.*,
　　No. 5:21-CV-00174-JPB, 2022 WL 22826981 (N.D. W. Va. Nov. 14, 2022) ............................................................................................ 4

*In re UnumProvident Corp. Derivative Litig.*,
　　No. 1:02-cv-386, 2010 WL 289179 (E.D. Tenn. Jan. 20, 2010) .................................. 4

*Vandervort v. Balboa Capital Corp.*,
　　8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........................................................... 11

*Vannest v. Nationstar Mortg. LLC*,
　　No. 5:21CV00086, 2022 WL 20689593 (N.D. W. Va. Oct. 19, 2022) ........................ 5

*Vincent v. Hughes Air W.*,
　　557 F.2d 759 (9th Cir. 1977) ...................................................................... 3

*Wright et al. v. eXp Realty, LLC*,
　　No. 6:18-cv-01851-PGB-EJK, ECF No. 230 (M.D. Fla. Oct. 26, 2022) ................... 11

## INTRODUCTION

Through the proposed class action settlement, Plaintiffs have achieved a substantial victory for class members, requiring Defendant Diversified Energy Company (and related companies) to plug 2,600 wells in six states—a 350% increase over its current obligations to state regulators. Achieving this outcome required years of intensive investigation and litigation—including wins on three motions to dismiss, numerous discovery motions, the completion of fact discovery, the submission of all expert reports, forty-plus depositions, and multiple appeals—that required enormous expenditures of time and money. All told, Plaintiffs' counsel expended 18,582 hours in attorney time and almost $2 million in litigation expenses in pursuing this unprecedented and complex case. The result is an equally unprecedented settlement that, if approved, will benefit class members by guaranteeing Diversified will plug at least 2,020 wells above their current plugging requirements.

In addition to plugging these wells, the settlement requires Diversified and EQT to pay $6.5 million in additional, non-reversionary consideration to pay attorneys' fees, expenses, and service awards granted by the Court, as well as the costs of class notice. ECF 687-1 (Sett. Agt.) ¶ II.14, at 8-9; ¶¶ IV.7, .8 at 11. By this motion, Plaintiffs now request the Court award these expenses, under the authority of the common benefit and common fund doctrines.

Specifically, from the $6.5 million set aside, Plaintiffs request service awards of $3,000 for each of the 32 class representatives, each of whom gave depositions and participated actively in discovery, and stepped forward for the benefit of others.

Plaintiffs also request $4,354,836 in attorneys' fees (which amounts to less than half their lodestar), and $1,945,164 in litigation expenses.[1] As outlined below, these amounts are fair, reasonable and adequate under the principles this Court and others have applied to determine awards in this and similar litigation contexts.

**ARGUMENT**

**A.  The proposed attorneys' fee and costs award is fair, reasonable, and justified.**

**1.  The requested attorneys' fees and costs are awardable under both the common benefit and common fund doctrines.**

The common fund doctrine is one of the earliest recognized exceptions to the "American Rule," which generally requires that litigants bear their own costs and attorneys' fees. Premised on the equitable power of the court, the common fund doctrine allows a person who maintains a suit that results in the creation of a fund in which others have a common interest, to be reimbursed from that fund for the litigation expenses incurred. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

In cases where there is no common fund, courts award attorneys' fees under the "common benefit" doctrine. In *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392–93 (1970), for example, the United States Supreme Court reversed the denial of attorney fees which had been predicated on the fact that the litigation had produced no common fund

---

[1] As stated above, the amount of the non-reversionary additional compensation and earnest money, set aside to pay any Court-awarded fees, costs, service awards, and notice costs, is $6,500,000. This is sufficient to pay: (a) the costs of notice and administration to date and to completion ($100,000), *see* Decl. of John W. Barrett ¶ 11 (Jan. 10, 2025), attached as Exhibit A; (b) the proposed service awards ($96,000); (c) the expenses ($1,945,164); and (d) the attorneys' fees ($4,354,836). These sums total $6,496,000.

per se that was under the supervision of the court. The Court held that traditional equitable authority permits a court to order a corporation to pay attorney fees to counsel who brings a class action contesting a merger approved as a result of allegedly false and misleading proxy solicitations. Although the Court remanded the case to determine what relief was appropriate—and no monetary relief had yet been awarded—the Court concluded that "private stockholders' actions of this sort 'involve corporate therapeutics' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute." *Id.* at 396. Accordingly, it required that counsel be paid by the corporation.

Following *Mills,* the Fourth Circuit recognized that the common fund or common benefit doctrine "extends not only to cases in which a fund is either created or protected but also 'where the effect of the suit is the same as though a fund were created.'" *Brewer v. School Bd. of the City of Norfolk*, 456 F.2d 943, 948 (4th Cir. 1972) (quoting 6 Moore's Federal Practice at 1351). The *Brewer* court recognized that, by guaranteeing free busing for students, the case resulted in a direct benefit for students that was treated as if a fund were created. *Id.* at 951.[2]

---

[2] *See also Hall v. Cole*, 412 U.S. 1, 5 (1973) (finding fees appropriate where the successful litigation confers benefit on class members); *Vincent v. Hughes Air W.*, 557 F.2d 759, 768 n.7 (9th Cir. 1977) ("[T]he substantial benefit doctrine was devised to permit fee shifting in cases not covered by the common fund doctrine because of the absence of a pecuniary benefit but yet involving interests of broad public importance."); *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 550 n.51 (3d Cir. 2009) (describing "common benefit doctrine" as "derived from" common fund doctrine); *Swanson v. Am. Consumer Indus., Inc.*, 517 F.2d 555, 562–63 (7th Cir. 1975); *Denney v. Phillips & Buttorff Corp.*, 331 F.2d 249 (6th Cir. 1964); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (awarding fees in Medicare class action by ordering 1% deducted from each class members' Medicare benefit payment); *In re Lifelock, Inc., Mktg. & Sales Practices Litig.*, No. 08–1977, 2010 WL 3715138, at *8 (D. Ariz. Aug. 31, 2010) (in Rule

Courts awarding fees under these doctrines commonly use the same analysis as in the cnormal class action context, employing a blended approach that combines a lodestar calculation and percentage of fund analysis. *See, e.g.*, *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 365 F. Supp. 3d 685, 694–95 (S.D. W. Va. 2019). While Judge Goodwin in *In re Cook* used the so-called *Barber* factors to assess reasonableness,[3] this Court has analyzed class action fee requests under the similar factors outlined in *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001), which include "(1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." *See, e.g.*, *Thacker v. PHH Mortg. Corp.*, No. 5:21-CV-00174-JPB, 2022 WL 22826981, at *6

---

23(b)(2) case resulting in significant injunctive relief pursuant to settlement, awarding fees to be paid by defendant without opposition, stating that substantial benefit doctrine supports such fee-shifting); *In re UnumProvident Corp. Derivative Litig.*, No. 1:02-cv-386, 2010 WL 289179 (E.D. Tenn. Jan. 20, 2010) (awarding fees not taken directly from funds recovered for corporation and shareholders); *State Bd. of Educ. v. Waldrop*, 840 So. 2d 893 (Ala. 2002) (recognizing the adoption of the common benefit doctrine in Alabama); *Ex Parte Horn*, 718 So. 694 (Ala. 2001) (adopting common benefit doctrine for use in Alabama).

[3] *See Barber v. KimBrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (considering (1) the time and labor expended; (2) the novelty and difficulty of the question; (3) the skill required to properly perform the legal services; (4) the attorney's opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) the size of fee awards in similar cases).

(N.D. W. Va. Nov. 14, 2022); *Vannest v. Nationstar Mortg. LLC,* No. 5:21CV00086, 2022 WL 20689593 (N.D. W. Va. Oct. 19, 2022); *Dijkstra v. Carenbauer,* No. 5:11-CV-00152, 2016 WL 6804980, at *5 (N.D. W. Va. July 12, 2016).

Analyzed under these factors, Plaintiffs' request for fees and costs is fair and reasonable, particularly considering the award will not diminish the plugging obligations achieved through the proposed settlement.

### a. The benefit achieved through the settlement.

Before the proposed settlement was reached, Diversified was required through agreements with state regulators to plug 580 wells through 2034. Decl. of A. Demmerle, ¶¶ 5-6 (Jan. 10, 2025), attached as Exhibit B. If the Court approves the proposed settlement, Diversified will be obligated to plug an additional 2,020 wells over that span—a 350% increase over its current commitment.

Although Diversified's average cost to plug wells in West Virginia has been the subject of much of the dispute in this litigation, even using Diversified's plugging estimate of $25,000 per well would put the value of its increased plugging obligation at $50.5 million. Judged against this result, the fee request amounts to just 8.6% of the overall benefit, which, as addressed *supra* at 10-11, strongly supports the reasonableness of the request. So too does the fact that, unlike the normal class action settlement, the awarded fees and costs will come from a non-reversionary fund set aside to, in part, pay those expenses.

### b. The presence or absence of objections to the settlement and fee award.

Objections to the settlement are due March 17, 2025, and therefore cannot be addressed at this time. However, because the fees and costs proposed will not reduce or limit in any way the relief obtained through the settlement, it is hard to envision how class member interests would be affected by the fee and costs requests.

### c. The skill of the attorneys and the difficulty of the case.

This case presented unprecedented legal claims against two very well-funded and aggressive defendants, who in turn were represented by two separate teams of lawyers from one of the largest law firms in the country. The case required deployment of nearly all the skills required for successful prosecution of complex litigation, including briefing, oral advocacy, discovery motions practice, discovery development, appellate advocacy, and negotiation. The case also required the application of complex factual analysis to novel theories of law.

Perhaps most challenging was the development of expert reports, which were required to evaluate the total value of Diversified Defendants' assets and liabilities, as well as the value and liability of assets transferred by EQT Defendants to Diversified Defendants in two separate transactions. Because of the nature of these assets and liabilities—the value of current and future production versus the liabilities associated with Diversified's asset retirement obligations (including well-plugging costs)—this determination required examining Diversified's business records in painstaking detail and working with experts in corporate solvency (Dana Messina), petroleum engineering

(Dwayne Purvis), accounting (Christopher Deweese), gas pricing (James Wilson), data analysis (Matthew Hodge), well plugging (Luke Plants), and other fields.  Plaintiffs also worked with consulting experts in these fields as they investigated and prosecuted the case. Barrett Decl. ¶ 4.

Plaintiffs' counsel consisted of a diverse team of lawyers with litigation experience in class actions, natural resources litigation (including oil and gas litigation in particular), corporate finance, and management of massive online discovery databases. *See id.* ¶ 9; Decl. of Michael Becher, ¶¶ 9-21 (Jan. 10, 2025), attached as Exhibit C. The high degree of skill required and the difficulty of the case support the fee request.

### d.  Complexity and duration of the litigation.

As recounted above, this litigation has been extraordinarily complex, necessitating the development of completely novel legal theories, and three rounds of briefing motions to dismiss and for judgment on the pleadings that encompassed issues ranging from West Virginia tort law, to the interplay of the claims asserted with a state regulatory scheme, unresolved questions involving Alabama fraudulent transfer law, *Burford* abstention,[4] and Rule 19 joinder defenses implicating assertions of sovereign immunity.[5] The Court's denial of the Defendants' motion for judgment on the pleadings (ECF No. 329) generated appellate proceedings commenced by the Defendants, which in turn generated Plaintiffs'

---

[4] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). ECF Nos 338, 339.

[5] A more complete recounting of the case's multi-year, multi-front litigation history is set forth in Plaintiffs' memorandum in support of the motion for preliminary approval of the proposed settlement. ECF No. 687.

motion to dismiss the appeal for lack of appellate jurisdiction, and ultimately full merits briefing and oral argument before the Fourth Circuit, which dismissed the appeal. ECF No. 633. Following this, the West Virginia Department of Environmental Protection moved to intervene, and appealed to the Fourth Circuit after this Court denied the motion. ECF No. 672.

In the end, Plaintiffs litigated more than thirty motions, took or defended more than 40 fact witness depositions, secured expert reports from six primary experts and two additional rebuttal experts, and engaged in depositions of five expert witnesses, with at least ten more soon to follow if settlement had not occurred. Plaintiffs also litigated class certification and commenced an unsuccessful petition for Rule 23(f) appeal. The Defendants vigorously defended the action, as demonstrated by the numerous discovery motions, two motions to exclude class counsel, and the submission of seven separate expert reports by Defendants. In addition to the robust defense provided by EQT and Diversified Defendants, Plaintiffs also contended with the intervention of mineral owners, an amicus brief from oil and gas interests, and an amicus brief and later a motion to intervene by the WVDEP.

All of the above reflects a case with an extraordinary level of factual and legal novelty and complexity.

### e.  Risk of nonpayment.

Plaintiffs bore an extraordinary risk of loss here at any number of junctures—at the pleadings stage through dismissal, on any of the multiple appeals, and on class certification, *Daubert* motions, summary judgment, and trial (with undoubtedly more

appeals to follow), all the while dealing with Diversified's continuing efforts to moot the Plaintiffs' claims by selectively plugging their wells. Regardless, both Plaintiff firms committed huge investments of time and resources to prosecute the case, all of which could have evaporated through an unfavorable ruling at any of these stages.

The Fourth Circuit has strongly emphasized the importance of weighing risk when evaluating a fee award in a contingency case such as this one. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010). *Abrams* involved the appeal of a district court's decision to reduce the attorneys' fees payable under an $18 million settlement from the one-third contained in the parties' contingency fee agreement, to three percent of the total. *Id.* at 242. In vacating and remanding the decision, the Fourth Circuit focused on the "chief error" in the district court's analysis—its failure to "recognize the significance of the contingency fee." *Id.* at 245. "[C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation" and "provide attorneys due consideration for the risk they undertake." *Id.* at 245–46. The court stressed that without a percentage fee that compensates attorneys for risk, "many attorneys [would be] unwilling to accept the risk of nonpayment" if "the reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *Id.* at 246.

The same is true here. Plaintiffs' lawyers' willingness to invest their time and money, all of which could have been lost at any number of points in the litigation, enabled Plaintiffs themselves to litigate these important claims and achieve the favorable outcome obtained. This factor strongly supports the requested award.

### f.  Time and expense.

Class counsel have invested the following lodestar in pursuing these claims to date.[6]

| Firm | Hours | Fees |
|------|-------|------|
| Bailey & Glasser | 9,277 | $5,548,493 |
| Appalachian Mountain Advocates | 9,305 | $3,486,574 |
| **TOTAL** | 18,582 | $9,035,067 |

As further outlined in Mr. Barrett's declaration, the costs expended—like the fees, advanced on a contingent fee basis, with significant risk of nonpayment—were similarly extraordinary, amounting to $1,945,164. Barrett Decl. ¶ 10. Payments to experts alone exceeded $1 million.  *Id.*

The requested fee award is less than half of Plaintiffs' counsels' lodestar. This factor also supports the reasonableness of the fee request.

### g.  Awards in similar cases.

State and federal courts in West Virginia recognize the presumptive reasonableness of an attorney's fee equal to one-third of a class recovery. *Dijkstra*, 2016 WL 6804980, at *5 (approving fee request of one-third of the settlement fund, noting that one-third is presumptively reasonable in West Virginia), *citing Eriksen Const. Co., Inc. v. Morey*, 923 F. Supp. 878, 881 (S.D. W. Va. 1996)); *Mey v. Venture Data, LLC,* Final

---

[6] Barrett Decl. ¶¶ 5-7; Becher Decl. ¶¶ 4-6.

Approval Order and Judgment (ECF No. 313) ("Venture Data Final Approval Order"), No. 5:14-CV-123 (N.D. W. Va. Sept. 6, 2018) (Bailey, J.) (one-third fee in $2.1 million settlement); *Mey v. Patriot Payment Group, LLC,* Final Approval Order and Judgment (ECF No. 127) No. 5:15-CV-00027 (N.D. W. Va. July 26, 2017) (Bailey, J.) (one-third fee in $3.7 million settlement).[7]

Here, the value of the relief is, at a minimum, $50.5 million. The requested award is 8.6% of this sum, which falls well within the range of reasonableness under this authority.

### 2. A lodestar cross-check further demonstrates the reasonableness of the fee.

Some courts use a "lodestar crosscheck" to confirm the reasonableness of a percentage-based fee. *Jones v. Dominion Resources Servs., Inc.,* 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009) (collecting cases). To determine lodestar, courts multiply the reasonable hourly rate for each attorney by the number of hours reasonably expended.

---

[7] *See also, e.g., Dakota Medical, Inc. v. RehabCare Group, Inc*., 2017 WL 4180497, at *9 (E.D. Cal. 2017) (awarding one-third of $25 million settlement fund); *Wright et al. v. eXp Realty, LLC*, No. 6:18-cv-01851-PGB-EJK, ECF No. 230 (M.D. Fla. Oct. 26, 2022) (awarding one-third of the $26.9 million monetary relief and less than one-third of the total settlement value when including other non-monetary benefits to class members); *Archbold v. Wells Fargo Bank,* No. 3:13-cv-24599, 2015 WL 4276295, at *1 (S.D. W. Va. July 14, 2015) (awarding class counsel one-third of the settlement in a consumer class action); *Guarisma v. ADCAHB Med. Coverages, Inc.,* Case No. 1:13–cv–21016, Doc. 95 (S.D. Fla. June 24, 2015) (awarding one-third of the $4,500,000.00 settlement fund); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (awarding attorneys' fees in consumer class action in the amount of $15 million, or one-third of the common fund recovery); *Vandervort v. Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding one-third); *Deem v. Ames True Temper, Inc.,* 2013 WL 2285972, at *5 (S.D. W.Va. 2013) (awarding one-third fee in insurance class action); *Cather v. Seneca-Upshur Petroleum, Inc*., No. 1:09–CV–0013, 2012 WL 12977984, at *4 (N.D. W. Va. May 31, 2012) (citing *Nationwide v. O'Dell,* Circuit Court of Roane County, approving a one-third contingent fee in a $75,000,000 class action settlement).

*Grissom v. The Mills Corp*., 549 F.3d 313, 320 (4th Cir. 2008). "When the lodestar method is used only as a cross-check, however, courts need not 'exhaustively scrutinize[ ]' the hours documented by counsel and 'the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.'" *Krakauer v. Dish Network, L.L.C.,* No. 1:14-333, 2018 WL 6305785, *5 (M.D. N.C. Dec. 3, 2018) (Eagles, J.) (quoting *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000)).

Courts have found that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable fee. *Jones*, 601 F. Supp. 2d at 766; *Smith v. Res-Care, Inc.,* No. 3:13-5211, 2015 WL 6479658, at *7 (S.D. W.Va. October 27, 2015) (approving fee of one-third, with lodestar cross check of 1.15, citing range of 2 to 4.5); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp.2d 665, 689 (D. Md. 2013) (explaining that lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Domonoske v. Bank of America, N.A.,* 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (approving multiplier of 1.8, which was easily within range of other cases).

Here, the proposed fee request results in a *negative* lodestar multiplier, with Plaintiffs' counsel proposing to receive 0.48 of their lodestar. This also strongly supports the requested fee.

### B.  The proposed incentive awards are reasonable and appropriate.

As this Court has recognized, "[i]ncentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest." *Dijkstra*, 2016 WL 6804980, at *6 (awarding $10,000 service award) (cited authority omitted). Service awards "encourage socially beneficial litigation by compensating

named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk undertaken." *Id.*

Here, each of the 32 Plaintiffs requests an award of $3,000, for a total of $96,000.[8] These awards are justified by the same rationale as this Court's $10,000 award in *Dijkstra*: the case would not have been brought had the Plaintiffs not stepped forward, the Plaintiffs were interested and actively engaged in the direction of the litigation, and were available to counsel whenever needed. *Id.* at *6. Each Plaintiff devoted significant time to this action, assisting in developing the facts underlying the amended complaint in this action, making their initial disclosures, responding to request for documents, and answering interrogatories. Each Plaintiff sat for a deposition, and each was prepared to attend trial should the case have proceeded to trial. And each Plaintiff participated knowing this case was about getting wells plugged, not money damages. Without their willingness to file suit, no recovery would have been possible. Barrett Decl. ¶ 11.

The proposed awards are in line with, and in fact less than, awards from this Court and others across the country. *See Venture Data*, *infra,* Final Approval Order at 6 (awarding $15,000 to class representative); *Patriot Payment Group*, *infra,* Final Approval

---

[8] The Named Plaintiffs as defined in the Settlement Agreement (ECF 687-1, ¶ I.3) are Mark McEvoy, James Tawney, Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol DelRosso, George DelRosso, Benjamin Patterson, Chad Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts, Heidi Deem, Jeffrey L. Saltis, Kellie D. Saltis, Lane Evans, Minerva Evans, Maynard Tanner, Jennifer Tanner, Joan Medley, Jacob Collette, Regina Collette, Scott Corcoran, Kathy Johnson, Christine Cochran, Bonnie Garrett, Colleen Gladwell, Michael Philips, Loren Smith, Bruce Perrone, Susan Leffler, and Norman Googel.

Order at 6 (awarding $20,000 to class representative); *Monitronics*, *infra,* Final Approval Order at 12-13 (awarding $35,000, $30,000, $6,000; and $3,500); *see also Ikuseghan v. Multicare Health Sys.,* No. C14-5539, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (granting $15,000 award); *Hageman*, 2015 WL 9855925, at *4 (granting $20,000 award); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (explaining that awards as high as $35,000-$45,000 "are within the range of what other courts have found to be reasonable" (citation omitted)); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130, 2015 WL 5704016, *2 (D. N.M. Sept. 23, 2015) (granting $20,000 incentive award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Ritchie v. Van Ru Credit Corp.*, No. CV-12-1714, 2014 WL 956131, at *5 (D. Ariz. Mar. 12, 2014) (granting $12,000 incentive award from a $2.3 million common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (granting a $20,000 service award to a TCPA class representative).

Given Plaintiffs' personal contributions to the successful prosecution of this action, and the fact that the requested awards would not diminish benefits to class members, Plaintiffs respectfully submit the awards are fair and reasonable.

## CONCLUSION

Plaintiffs respectfully request the Court award the following:

1.    Attorneys' fees in the amount of $4,354,836;

2.    Litigation costs in the amount of $1,945,164; and

3.    $96,000 in service awards, to be distributed to each of the 32 persons and entities listed in footnote 8 above.

Plaintiffs request the Court enter an order awarding these funds at the time of final approval. Plaintiffs have previously submitted a proposed Final Approval Order, ECF 687-3, which, should the Court desire, they will update to include the relief requested here.

Dated: January 10, 2025                                    Respectfully submitted,

*/s John W. Barrett*
John W. Barrett (WVSB No. 7289)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
jbarrett@baileyglasser.com

Amanda Demmerle (WVSB No. 13930)
J. Michael Becher (WVSB No. 10588)
APPALACHIAN MOUNTAIN ADVOCATES
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
ademmerle@appalmad.org
mbecher@appalmad.org

*Attorneys for Plaintiffs and Proposed Class*

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## AT WHEELING

MARK MCEVOY, et al.,
individually and on behalf of a proposed class,

     Plaintiffs,

                                     Civil Action No. 5:22-cv-171

     v.                               The Honorable John P. Bailey


DIVERSIFIED ENERGY COMPANY PLC, et al.,

     Defendants.

## CERTIFICATE OF SERVICE

    I, John Barrett, certify that on January 10, 2025, a true and correct copy of

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS'**

**FEES, COSTS, AND SERVICE AWARDS** using CM/ECF, the Court's electronic

notification system, which provided notice to all counsel of record.

                                  */s John W. Barrett*

                                  John W. Barrett (WVSB No. 7289)