IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

MARK MCEVOY, et al.,
individually and on behalf of a proposed class,

    Plaintiffs,

v.

Civil Action No. 5:22-cv-171
The Honorable John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC, et al.,

    Defendants.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

As the Court directed in its Preliminary Approval Order (ECF No. 688), the notice administrator has completed class notice regarding the proposed class action settlement, and the February 18 opt-out deadline has passed, with relatively few class members electing to opt-out. Plaintiffs have also filed their motion for attorneys' fees, expenses, and service awards, and the Defendants have not filed briefs in opposition to the motion. Aside from these developments, the only matter that has arisen since preliminary approval is that the U.S. Department of the Interior has requested that the class definition be amended to expressly exclude any Diversified wells on Indian lands. The parties agree to this proposed modification.

As further directed in the Preliminary Approval Order, Plaintiffs now submit this motion for final approval showing that the Rule 23 standards for final settlement approval are satisfied, and the Settlement Class should be certified for settlement purposes only.

Once the March 17, 2025, objections deadline passes, and Plaintiffs have had the opportunity to respond to any objections by March 26, the proposed settlement will be ripe for consideration of final approval, with the final approval hearing set for April 11, 2025 at 10:30 a.m. A proposed order was attached as Exhibit 1.B to the unopposed Memorandum in Support of Preliminary Approval of Class Action Settlement, (ECF No. 687-3), which the Plaintiffs will submit in final form in advance of the hearing for the Court's consideration.

## II.  BACKGROUND

This litigation was commenced almost three years ago. Previous submissions describe its procedural history in detail. *See* Pls.' Mem. Supp. Prelim. App., ECF No. 687. In summary, the Parties have thoroughly and aggressively litigated this case from the jump, with multiple motions to dismiss or abstain, motions to disqualify counsel, the completion of intensive, document-heavy fact discovery, litigated discovery disputes, over forty depositions, the submission of all expert reports and rebuttal reports, and multiple appeals.

Given this robust history, the Parties had sufficient information to assess risks and potential outcomes and were therefore well-positioned to negotiate the settlement presented in the Preliminary Approval Motion. In a case that is and always has been about well-plugging, the settlement's key feature is a set of Plugging Promises by the Diversified Defendants. Those promises will ensure meaningful relief in the form of far more plugged and reclaimed well sites across a broad area.

If approved, the settlement requires the Diversified Defendants to increase their plugging obligations in the six affected states (West Virginia, Ohio, Kentucky, Pennsylvania, Virginia, and Tennessee) from approximately 580 non-producing wells to at least 2600 such wells in the affected states. Thus, the settlement would directly and substantially benefit

hundreds and potentially thousands of private landowners, who will see the plugging of bore holes, the removal of pumps, tanks, pipes, meters, and other equipment, as well as the regrading, reseeding, and restoration of the land.

### III.   THE PROPOSED SETTLEMENT

### A.   The proposed Settlement Class definition

The proposed Settlement Class definition is as follows:

> All persons and entities that own or lease any right, title, or interest in the surface of any piece or parcel of land in West Virginia, Ohio, Kentucky, Pennsylvania, Virginia, or Tennessee that have had a Diversified Well on said piece or parcel at any time between the date of the first complaint in the Action (July 8, 2022) and the date of the signing of the Settlement Agreement (November 4, 2024), including their predecessors, executors, administrators, heirs, assigns, related parties or persons, tenants, and successors.

To accommodate a request from the U.S. Department of the Interior, the Settlement Class now excludes (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (b) the judge to whom this case is assigned, the judge's staff, and any member of the judge's immediate family, (c) all employees of the law firms representing Plaintiffs and the Settlement Class Members, and (d) any federal, state, or local governmental entity and (e) <u>any Indian Tribe as defined at 30 U.S.C. § 1702(4) or Indian allottee as defined at 30 U.S.C. § 1702(2)</u>. Settlement Class Members who timely opt out of the Settlement Class are not participating in this Settlement and are not bound by the terms of the Settlement Agreement, nor are they entitled to its benefits. Plaintiffs' counsel has conferred with Diversified's counsel and confirmed that they do not oppose the change.[1]

---

[1] Diversified's counsel believed based on initial review by the client that Diversified did not own or operate any wells on property owned by a Tribe or Indian allottee.

B.     **Settlement Relief**

If the settlement is approved, Diversified will be required to plug Diversified Wells as follows: 200 in calendar year 2025; 225 in each of 2026 and 2027; 250 in each of 2028, 2029, and 2030; 275 in 2031; 300 in each of 2032 and 2033; and 325 in 2034. SA ¶ II.4.[2] Diversified will have a 5% cushion on the Plugging Promise for any given calendar year without causing a default, so long as it plugs 2,600 Diversified Wells (the total of the above schedule) by the end of 2034 ("Cushion Provision"). *Id.* ¶ II.4.b. However, if Diversified misses the Plugging Promises in any given year (after accounting for the cushion), then the Diversified Parties must plug an additional number of Diversified Wells that is equal to 10% of the miss. *Id.*

The settlement does not affect Diversified's well-plugging obligations to any state environmental agency. As before, all plugging must be completed and permitted in compliance with state law, and does not preclude any state or federal agency from taking enforcement or regulatory action. *Id.* ¶ II.10. The settlement therefore works to the benefit of each respective state agency.

In exchange, Class Members' well-plugging claims against Diversified will generally be subject to a ten-year covenant not to sue Diversified. Other claims are released, although claims against Diversified for personal injury or property damage as the result of well plugging will not be released; Class Members retain rights under state law (individually, not as a group or class) to use any existing administrative procedures to have their wells plugged; and Class Members who have bona fide health, safety, or environmental concerns will have an expedited and streamlined process of applying for well-plugging (up to ten wells annually)

---

[2] The Settlement Agreement itself, ECF No. 687-1, controls over all summary references herein.

4

through a court-appointed Settlement Account Administrator, with Diversified bearing the cost. Class members also agree to release claims against the EQT Defendants, which formerly owned many Diversified wells, related to Diversified wells.

### C. The Class notice

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Court ordered individual mailed notice, along with publication notice on the internet and in newspapers in the affected states. As required, the settlement administrator has mailed notice to class members and completed the publication notice. As directed by the Court, the Plaintiffs attach to this memorandum a declaration attesting to timely completion of the notice program in advance of the Final Approval Hearing. The Court noted that it carefully considered the proposed notice program and found that it provided the best notice practicable under the circumstances, and that it fully satisfied the requirements of Rule 23(c)(2). ECF No. 688 at 7. Plaintiffs will supplement this memorandum with a declaration from Kroll confirming this process prior to the final approval hearing.

## IV. ARGUMENT

### A. The notice plan meets all rule-based and constitutional requirements.

Rule 23(c)(2)(B) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may

be by one or more of the following: United States mail, electronic means, or other appropriate means." The Rule further requires that:

> The notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person, and the possible methods of identification. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).

As the recent amendments to Rule 23's notice provisions allow, notice has been sent through first-class mail. "[D]ue process is satisfied 'where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to opt out.'" *Domonoske v Bank of America, N.A.*, 790 F. Supp. 2d 466, 472 (W. D. Va. 2011) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). This mailed notice has been supplemented by notice through publication in multiple newspapers and on the internet.

Plaintiffs' notice plan meets all legal requirements, and the notice program has been effectively carried out by the Settlement Administrator. The Court found in its Preliminary Approval Order, ECF No. 688, that, after careful consideration, the plan represented the best practicable notice under the circumstances. *Id*. at 7. The Court also found that the notice plan satisfied Rule 23(c) as well as due process. *Id.*

The plan has been carried out according to the notice administration provisions of the proposed settlement. ECF No. 687-1 at 10. Kroll informed Plaintiffs' counsel that it received relatively few opt-out requests, totaling only 74 entities encompassing 865 wells. The notice program was appropriate and consistent with modern methods to reach class members and was consistent with notice programs approved for class action settlements before other courts, the Federal Rules of Civil Procedure, and the Federal Judicial Center guidelines. A declaration from Kroll confirming these details will be filed to supplement this memorandum prior to the final approval hearing.

### B. The Court should finally certify the class for settlement purposes only.

In its Preliminary Approval Order, the court preliminarily certified the proposed Settlement Class. ECF No. 688, ¶ 2. Plaintiffs respectfully submit that all applicable Rule 23 factors support a final order certifying the class, for settlement purposes only.

#### 1. The Settlement Class is ascertainable, as it is objectively defined.

Rule 23's ascertainability standard requires that it be "administratively feasible" for the Court to "readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Plaintiffs are not required to "be able to identify every class member at the time of certification." *Southern Country Farms, Inc. v. THQ Appalachia I, LLC*, No. 5:21-cv-84, 2023 WL 2824907, at *4 (N.D. W. Va. Mar. 13, 2023) (Bailey, J.). Instead, Plaintiffs must define the class in a way that will ensure the Court's ability "to determine whether a particular individual is a member at some point." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 658 (4th Cir. 2019) (emphasis added); *see also Vance v. DirecTV, LLC*, No. 5:17-cv179, 2022 WL 3044653, at *4 (N.D. W. Va. Aug. 1, 2022) (Bailey, J.) (same).

In short, under the ascertainability requirement, class definitions cannot succeed if they are "defined too vaguely," if they are "defined by subjective criteria, such as by a person's state of mind," or if they are "defined in terms of success on the merits." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659-660 (7th Cir. 2015).

Here, the class definition is neither subjective nor vague. In fact, every class well is specifically identifiable by API number—an objective identifier that will allow any class member to determine if their well is affected by the settlement, as well as any court presiding over any future action by a class member to determine if the class member's well is included in this settlement. Further, based in part on the defendants' own records and other available data, names and address of Settlement Class members were obtained such that they would receive first-class mailed notice, and that notice was supplemented by an extensive internet and newspaper campaign.

  **2.**  **All Rule 23(a) requirements are met.**

    **a.** **Numerosity**

Numerosity requires that a class be of sufficient size that individual joinder of all its members is "impracticable." Fed. R. Civ. P. 23(a)(1). The practicability of joinder can turn on factors including the size of the class, the class's geographic dispersion, the ease of identifying its numbers, and the impacts on judicial economy in the event of requiring individual suits. *See Alig v. Quicken Loans, Inc.*, No. 5:12-cv-114, 2016 WL 10489897, at *16 (N.D. W. Va. June 2, 2016) (Bailey, J.). Here, numerosity is met, as the settlement involves tens of thousands of Diversified wells.

    **b.** **Commonality**

Rule 23(a)(2) next requires that there be a "common question of fact or law among the

members of the class." Fed. R. Civ. P. 23(a)(2). While both common questions of law and common questions of fact exist as to this class, both need not be shown to satisfy the rule. *See Hopper v. Jay-Bee Oil & Glas, Inc.*, No. 5:20-101, 2023 WL 3695608, at *4 (N.D. W. Va. April 4, 2023) ("Demonstrating class commonality is a low hurdle . . . [c]ommonality requires only a single issue common to the class."). Here, each class member has a Diversified well that must someday be plugged, a common question of fact across the class. And further, each class member's voidable transfer claim is governed by Alabama law, which supplies a uniform body of governing law applicable to all class members. Complex factual issues related to the value of transferred property and Diversified's solvency were central to this legal framework and are common among all class members.

### c. Typicality

As with commonality, the requirement for establishing typicality is "not meant to be an onerous one." *Hopper*, 2023 WL 3695608, at *5. Typicality requires class representatives to "be part of the class and possess the same interest and suffer the same injury as the class members." *The Kay Co., LLC v. EQT Prod. Co.,* No 1:13-151, 2017 WL 10436074, at *6 IN.D. W. Va. Sept. 6, 2017). Here, each class member has a Diversified well that is either producing or abandoned, and so too do the proposed class representatives. The low burden of typicality is met here.

### d. Adequacy of representation

Rule 23(a)'s final requirement, that class representatives "fairly and adequately protect the interests of the class," is met with respect to both the named Plaintiffs and their counsel. Fed. R. Civ. P. 23(a)(4). The "adequacy" standard requires a two-part showing: (1), the named plaintiffs must not possess interests "antagonistic to those of the class," and (2) plaintiffs'

9

counsel "must be qualified, experienced and generally able to conduct the litigation." *Hopper*, 2023 WL 3695608, at *6 (citation omitted). As to the class representatives, when the commonality and typicality criteria of Rule 23(a)(2)-(3) are met, the interests of class members will ordinarily be adequately protected by the class representatives in their absence. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). A class representative will be deemed inadequate only in the event of a true conflict of interest with the class, which "must be more than merely speculative or hypothetical." *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 430 (4th Cir. 2003) (quoting 5 Moore's Federal Practice § 23.25.[4][b][ii] (2002)). Regarding class counsel, courts presume that counsel is competent and sufficiently experienced absent proof to the contrary. *Reed v. Alecto Healthcare Servs., LLC,* No. 5:19-263, 2022 WL 4115858, at *6 (N.D. W. Va. July 27, 2022).

Here, no such conflicts exist with respect to the class representatives, who have pursued this case diligently for years, through counsel experienced in class action and commercial litigation, as well as natural gas litigation. *See* Pls.' Mem. Supp. Mot. for Attorneys' Fees, Expenses, and Service Awards, ECF No. 697.

### 3. All Rule 23(b)(3) requirements are met.

#### a. Common issues predominate.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Southern Country Farms*, 2023 WL 2824907, at *8 (citation omitted). Questions of law or fact that are common to the class will predominate if class-wide resolution of those issues "will significantly advance the adjudication of the merits of all class members' claims." *Kay Co*., 2017 WL 10436074, at *10. The predominance analysis is qualitative, not quantitative, such that common issues may predominate even when some

individualized inquiry is required. *See Vance*, 2022 WL 3044653, at *8; *see also Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 296 (S.D. W. Va. 2015) ("A principle often forgotten is that the balancing test of common and individual issues is qualitative, not quantitative. Common liability issues may still predominate even when individualized inquiry is required in other areas.") (citation omitted).

Again, common issues predominate particularly with respect to voidable transfer claims, all of which are governed by Alabama law. For those claims, not only is the applicable law universal to all class members, but the liability questions focus not on individualized questions regarding the class representatives, but rather on questions regarding Diversified's financial condition at the time of the transactions and the value of the transferred property.

Courts regularly certify classes pursuing fraudulent transfer claims like those asserted here, concluding that the many common legal and factual issues posed by such claims tilt heavily in favor of class-wide adjudication. As one court cogently put it, "[t]he fraudulent transfer claim raises more common questions of fact and law, including but not necessarily limited to: (i) whether [defendant] transferred property and incurred an obligation to [its co-defendant] with the intent to hinder, delay, or defraud one or more of its creditors; and (ii) whether Plaintiffs suffered harm as a result of alleged fraudulent transfers of assets between [defendant] and [the co-defendant]." *Cork v. CC-Palo Alto, Inc.*, No. 5:14-cv-00750, 2021 WL 3373582, at *3-7 (N.D. Cal. Aug. 3, 2021). As another court stated, "Every class member's fraudulent transfer claim will be adjudicated under the law of one jurisdiction . . . [,] the conduct at issue is the same for all class members . . . [and] common proof will be used to determine Defendants' liability." *Villanueva v. Liberty Acquisitions Servicing*, LLC, 319 F.R.D. 307, 325-26, 334 (D. Or. 2017). That's all true here.

### b. Certification of a settlement class is the superior method of resolving the claims.

Rule 23(b)(3)'s superiority requirement is also met. The four factors listed in Rule 23(b)(3)—class members' interests in individually "controlling the prosecution" of separate actions, the existence of other related litigation, the desirability of concentrating the litigation in the present forum, and any difficulties in managing the class action—"are simply a guideline to help the court determine the benefit of the proposed class action." *Reed*, 2022 WL 4115858, at *7 (citation omitted). A class action will provide the superior mode of adjudication when it "achieve[s] economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." *Southern Country Farms*, 2023 WL 2824907, at *10 (quoting *Amchem Prods.*, 521 U.S. at 615).

And the efficiencies of a class action are especially pronounced where, as here, the class is large—"[t]he need to avoid duplicative litigation can be significant even when the class is relatively small in number, but it is when there are many potential claimants that class action bring the greatest efficiencies." *Id*. These standards are all satisfied. Most importantly, if this class action is not permitted to proceed, the alternative result is likely a lack of any relief for class members because the costs of individual litigation—which would require extensive and expensive expert testimony outlined above—would far exceed the amount of any individual recovery.

This alone shows the superiority of class certification as a means of resolving these claims. As the Supreme Court observed in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616 (1997), "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" (internal quotation marks and citation omitted). Likewise, in

*Krakauer*, 925 F.3d at 656, the Fourth Circuit observed that "[s]ince few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their [rights], [class actions provide] a model that allows for resolution of issues without extensive individual complications. These observations apply with full force here.

### C. The Court should find the settlement is fair, reasonable, and adequate, and grant final approval.

A court may "authorize[] final approval only upon a showing that the settlement is 'fair, reasonable, and adequate,' made after a consideration of four factors." *Newberg* § 13:14 (quoting Fed. R. Civ. P. 23(e)(5)). *Id.* The four factors are whether:

> **(A)** the class representatives and class counsel have adequately represented the class;
>
> **(B)** the proposal was negotiated at arm's length;
>
> **(C)** the relief provided for the class is adequate, taking into account:
>
> > **(i)** the costs, risks, and delay of trial and appeal;
> > **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
> > **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>
> **(D)** the proposal treats class members equitably relative to each other.

Plaintiffs address these factors below.

### 1. The Class has been adequately represented, and the settlement was negotiated at arms-length.

The Rule 23(e)(5)(A) and (B) factors of adequate representation and arms-length negotiation are procedural in nature, and do not look substantively at the settlement terms. This Court addressed adequacy of representation (23(e)(5)(A)) in its November 13, 2024 Preliminary Approval Order. ECF No. 688. The Court found the requirements to have been preliminarily met. *Id.* at 4.

That adequacy finding has been borne out by the extraordinary lengths to which class counsel have gone to achieve this settlement, including the expenditure of more than 9,000 hours by each of the two firms prosecuting the case, and expenses of almost $2 million, as outlined in Plaintiffs' submissions in support of preliminary approval and their motion for attorneys' fees. ECF Nos. 687 and 697. Further, the class representatives have maintained their obligations to diligently represent the class, responding to Defendant's discovery, sitting for lengthy depositions, responding to a series of plugging notices and reclamation concerns from Class Representatives, and responding to questions from the noticed class members regarding the proposed settlement.

The requirement of arms-length negotiation generally looks to the procedural posture of the case to determine if it is the subject of legitimate, informed negotiations. *Newberg & Rubenstein,* § 13:14. As the Advisory Committee's notes to the 2018 amendments state, "[T]he nature and amount of discovery . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2) Adv. Comm. note to 2018 amendment. Here, discovery not only had been completed when the parties negotiated this settlement, but so too had multiple dispositive motions and appeals been litigated and resolved. Further, there was ongoing factual development throughout the case at many of the Class Representatives' properties in the form of well plugging and well revitalization work, which further informed the parties about the issues likely to be associated with well-plugging and reclamation on a large scale. At the time of settlement expert depositions were well underway and reports from fifteen experts had been shared between the parties.  All of this resulted in extraordinarily well-informed negotiations.

Another factor favoring a finding of the procedural adequacy of the settlement is that it

was negotiated after a mediation with an experienced mediator. As the Advisory Committee notes state, "the involvement of a neutral . . . in [the] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." *Id.* Although the case did not actually resolve at the mediation, the mediation was a key opportunity to reach common ground, and it was an important cornerstone of the proposed settlement.

Similarly, the settlement was negotiated by counsel with broad and deep experience in class action litigation. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practice,* 952 F.3d 471, 484 (4th Cir. 2020) (a court considering whether to approve a class action settlement should consider "the experience of counsel in the relevant area of class action litigation."). And more particularly, Plaintiffs' counsel also are experienced in complex corporate financial and auditing matters, complex e-discovery, appellate practice, and natural gas litigation. *See* ECF No. 697-1. Plaintiffs' counsel included combined decades of class action experience, including class action cases in this Court, nationwide class action cases, and extensive trial and appellate work involving class actions and commercial litigation. *See* ECF No. 617-3.

These factors combine to establish that this settlement was reached through arms-length, well-informed negotiations. From this procedural perspective, the settlement should be granted final approval.

> **2. The relief is adequate and treats all class members equitably, particularly considering the risks of further litigation.**

The Rule 23(e)(5)(C) and (D) factors look at the substance of the settlement—the adequacy of its relief, and the equity of its distribution across the class. *Newberg & Rubenstein,* § 13:15.

In determining adequacy, courts look to "the existence of any difficulties of proof or strong defenses [that] the [class members were] likely to encounter if the claims proceeded to trial." *In re Lumber Liquidators*, 952 F.3d at 485 (cleaned up). This Court's disposition of a motion to strike class allegations created an increased risk for this class to reach trial.. And on the merits at trial, the Plaintiffs' claims depended on complex financial analysis of plugging costs, transaction details between Diversified and EQT, and Diversified's solvency at the time of two major transfers.

Additional barriers to class relief include the untested, unprecedented nature of the claims and the risk of an adverse judgment; the continued risk that Diversified would moot the named plaintiffs' claims by plugging wells (*see* ECF No. 545); and the extraordinary cost and delay in getting to final judgment over what would likely have been multiple Fourth Circuit appeals. The likelihood that this process would "likely drag on for years" is a significant factor supporting the adequacy of this settlement. *In re Lumber Liquidators*, 952 F.3d at 485 (cited authority omitted). The proposed settlement would ensure that resources go directly and relatively immediately toward the important work of well-plugging, rather than to years of litigation.

Finally, another indication of the adequacy of this settlement is the scale of the Defendants' expenditures required to meet its terms. Plugging jobs require substantial costs in terms of planning, engineering, permitting, accessing each well site, prepping each roadway for the plugging rig, plugging each bore hole to a depth of often thousands of feet, and fully reclaiming each site, including removing derelict equipment and regrading and seeding as necessary. Each completed plugging job is a substantial benefit to one or more class members,

to each affected state's regulatory agency, and to the public as a whole.[3]

## V. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion.

Dated: February 24, 2025                             Respectfully submitted,

*/s John W. Barrett*
John W. Barrett (WVSB No. 7289)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555 (phone)
(304) 342-1110 (fax)
jbarrett@baileyglasser.com

Amanda Demmerle (WVSB No. 13930)
J. Michael Becher (WVSB No. 10588)
APPALACHIAN MOUNTAIN ADVOCATES
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006
ademmerle@appalmad.org
mbecher@appalmad.org

*Attorneys for Plaintiffs and Proposed Class*

---

[3] As Rule 23(e)(3) requires, Plaintiffs state that there are no other agreements made in connection with the proposed settlement.

17

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
## AT WHEELING

MARK MCEVOY, et al.,
individually and on behalf of a proposed class,

    Plaintiffs,

v.

                      Civil Action No. 5:22-cv-171
                      The Honorable John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC, et al.,

    Defendants.

### CERTIFICATE OF SERVICE

I, John Barrett, certify that on February 24, 2025, a true and correct copy of **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** using CM/ECF, the Court's electronic notification system, which provided notice to all counsel of record.

                                                    */s John W. Barrett*
                                                    John W. Barrett (WVSB No. 7289)