UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

MARK MCEVOY, et al., individually and
on behalf of a proposed class,

                Plaintiffs,

v.                                          CIVIL ACTION NO. 5:22-cv-171
                                              Honorable Judge John P. Bailey

DIVERSIFIED ENERGY COMPANY PLC,
et al.,

                Defendants.

## FINAL APPROVAL ORDER

Plaintiffs Mark McEvoy, James Tawney and Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol DelRosso and George DelRosso, Benjamin Patterson, Chad Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts, Heidi Deem, Jeffrey L. Saltis and Kellie D. Saltis, Lane Evans and Minerva Evans, Maynard Tanner and Jennifer Tanner, Joan Medley, Jacob Collette and Regina Collette, Scott Corcoran, Kathy Johnson, and Christine Cochran; and Plaintiffs-Intervenors Bonnie Garrett, Colleen Gladwell, Michael Phillips, Loren Smith, Bruce Perrone and Susan Leffler, and Norman Googel have moved for final approval of a proposed class action settlement which would resolve Plaintiffs' claims against all Defendants. Upon consideration of the motion, the Settlement Agreement, and exhibits thereto, the Court *GRANTS* final approval of the Settlement, finding specifically as follows:[1]

---

[1] Unless otherwise defined herein, all terms used in this Order that are defined terms in the Settlement Agreement have the same meaning as set forth in the Settlement Agreement.

## I.     Jurisdiction

1. The Court finds that it has jurisdiction over the subject matter of this action and personal jurisdiction over the parties and the members of the Settlement Class described below.

## II.    Certification of Settlement Class

2. Under Rule 23 of the Federal Rules of Civil Procedure, the Court certifies the following "Settlement Class," consisting of:

> All persons and entities that own or lease any right, title, or interest in the surface of any piece or parcel of land in West Virginia, Ohio, Kentucky, Pennsylvania, Virginia, or Tennessee that have had a Diversified Well on said piece or parcel at any time between the date of the first complaint in the Action (July 8, 2022) and the date of the signing of the Settlement Agreement (November 4, 2024), including their predecessors, executors, administrators, heirs, assigns, related parties or persons, tenants, and successors.

3. The Settlement Class excludes (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (b) the judge to whom this case is assigned, the judge's staff, and any member of the judge's immediate family, (c) all employees of the law firms representing Plaintiffs and the Settlement Class Members, (d) any federal, state, or local governmental entity, and (e) any Indian Tribe as defined at 30 U.S.C. § 1702(4) or Indian allottee as defined at 30 U.S.C. § 1702(2). Settlement Class Members who timely opt out of the Settlement Class (listed in Exhibit A to this Order) are not participating in this Settlement and are not bound by the terms of the Settlement Agreement, nor are they entitled to its benefits.

## III.   Class Representatives and Class Counsel

4. The Court appoints Plaintiffs Mark McEvoy, James Tawney and Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol DelRosso and George DelRosso, Benjamin Patterson, Chad Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts, Heidi Deem, Jeffrey L. Saltis and Kellie D. Saltis, Lane Evans and Minerva Evans, Maynard Tanner and Jennifer Tanner, Joan Medley, Jacob Collette and Regina Collette, Scott Corcoran, Kathy

Johnson, and Christine Cochran; and Plaintiffs-Intervenors Bonnie Garrett, Colleen Gladwell, Michael Phillips, Loren Smith, Bruce Perrone and Susan Leffler, and Norman Googel as Class Representatives.

5. Under Rule 23(g), the following attorneys and firms are appointed as Class Counsel:

> Brian A. Glasser
> John W. Barrett
> Brian R. Swiger
> Bailey & Glasser, LLP
> 209 Capitol Street
> Charleston, West Virginia 25301
> (304) 345-6555 (Phone)
> (304) 342-1110 (Fax)
>
> J. Michael Becher
> Joseph M. Lovett
> Benjamin Luckett
> Amanda Demmerle
> Isak Howell
> Claire Horan
> Appalachian Mountain Advocates
> P.O. Box 507
> Lewisburg, WV 24901
> (304) 645-9006

### IV. Rule 23 Requirements

6. The Court finds that the requirements of Rule 23(e)(1)(B) have been satisfied in that: (a) the class representatives and class counsel have adequately represented the Settlement Class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the fact that (i) the costs, risks, and delay of trial and appeal favor approval of the Settlement Agreement; (ii) Class Counsel and the class representatives have proposed an effective method of distributing notice; (iii) Class Counsel's proposed award of attorneys' fees and costs is in line with other class settlements, as is the timing of payment, ; (iv)

there is no agreement required to be identified under Rule 23(e)(3); and (d) the Settlement Agreement treat all class members equitably relative to each other as class members identical claims are treated identically.

7. The Court further finds that the proposed Settlement Class meets all the applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3), and the Court hereby finds, in the specific context of the Class Settlement, that:

(a) <u>Numerosity</u>: The Settlement Class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a). Joinder of these widely dispersed, numerous Settlement Class Members into one suit would be impracticable.

(b) <u>Commonality</u>: There are questions of law and fact, with regard to the alleged activities of Defendants, common to the Settlement Class.

(c) <u>Typicality</u>: The claims of the Representative Plaintiffs are typical of the claims of the Settlement Class they seek to represent. Therefore, in the context of this settlement the element of typicality is satisfied.

(d) <u>Adequate Representation</u>: The Representative Plaintiffs' interests do not conflict with, and are co-extensive with, those of absent Settlement Class Members. The Representative Plaintiffs will fairly and adequately represent the interests of the Settlement Class. Additionally, this Court recognizes the experience of Class Counsel and finds under Fed. R. Civ. P. 23(g) that the requirement of adequate representation of the Settlement Class has been fully met.

(e) <u>Predominance of Common Issues</u>: The questions of law and fact common to the Settlement Class Members predominate over any questions affecting only individual Settlement Class Members. In the context of this Settlement, these issues predominate over any individual questions, favoring class treatment.

(f) <u>Superiority of the Class Action Mechanism</u>: The class action mechanism is well suited for treatment of the settlement of these matters. Class certification promotes efficiency and uniformity of judgment, among other reasons, because the many Settlement Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country. Therefore, the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

8. The Court further finds that: (i) the Settlement Class Members have a limited interest in individually prosecuting the claims at issue; (ii) the Court is satisfied with Class Counsel's representation that they are unaware of any other litigation commenced regarding the claims at issue by the Settlement Class Members; (iii) it is desirable to concentrate the claims in this forum; and (iv) it is unlikely that there will be difficulties encountered in administering this Settlement.

## V. Final Approval of the Settlement

9. Through the Settlement Agreement, the Diversified Defendants have agreed to plug 2,600 wells in six states—West Virginia, Ohio, Kentucky, Pennsylvania, Virginia, and Tennessee—through the end of 2034, subject to the provisions set forth in the Settlement Agreement (the "Plugging Promises"). The Diversified Defendants will also pay the ongoing costs and expenses of a Court-appointed Settlement Account Administrator who will oversee and ensure compliance with the Plugging Promises, and to review certain applications for "extraordinary need" well-plugging by Settlement Class Members who establish a bona fide human health, safety, or environmental concern. Under the Settlement, Settlement Class Members do not waive any individual rights (1) to individually apply to applicable State Departments of Environmental Protection to request that their wells be plugged if such a process exists under state

law; or (2) to individually assert any claims arising out of damage caused by the plugging of a well and associated work, or damage to persons or property caused by actions taken in the plugging of a well. The Settlement Agreement also requires the Diversified Defendants and the EQT Defendants to each pay up to $3.25 million into a Settlement Account (for a total of up to $6.5 million), which may be used to pay the costs of notice, service awards, and any awarded attorneys' fees and costs. If the Settlement becomes effective according to its terms, none of these funds will revert to any Defendant. In no event shall the Diversified Defendants' monetary liability under this Settlement exceed the sum of $3,250,000.00. In no event shall the EQT Defendants' monetary liability under this Settlement exceed the sum of $3,250,000.00.

10. Having considered the Motion for Final Approval (Dkt. Nos. 699, 700), the Settlement Agreement, and the exhibits thereto, the Court finds that the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class. This finding is supported by, among other things, that the Settlement was reached after years of hotly contested litigation, extensive discovery, including expert discovery, and multiple appeals. The fairness and adequacy of the Settlement are supported by the complex legal and factual posture of the Action, and the settlement benefits being made available to Settlement Class Members.

11. The Court finds that the notice to the Settlement Class was the best notice practicable under the circumstances, including individual notice to all reasonably identifiable class members. The record shows that notice has been given to the Settlement Class, in accordance with the Notice Plan in the Settlement Agreement and the Preliminary Approval Order. The Notice Plan consisted of mailed notice along with publication notice. The notices disseminated pursuant to the Notice Plan were stated in concise, plain, easily understood language and described the nature of the action, the definition of the class certified, the class claims and

6

defenses, that a class member may enter an appearance through counsel if the Settlement Class Member so desires, that any class member who requests exclusion will be excluded by the Court, the time and manner of requesting exclusion, as well as the binding effect of a Class Judgment under Rule 23(c)(3). The Notice satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and all applicable law.

12. The Court finds that the Class Notice Agent properly and timely notified the appropriate state and federal officials of the Settlement Agreement on behalf of the Parties, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. The Court finds that the notice provided satisfied the requirements of 28 U.S.C. § 1715(b) and that more than ninety (90) days have elapsed since the required notice was provided, as required by 28 U.S.C. § 1715(d).

13. All persons who made timely and valid requests for exclusion are excluded from the Settlement Class and are not bound by this Final Approval Order and Judgment. A list of the individuals who excluded themselves from the Settlement Class is attached as <u>Exhibit A</u> to this Order.

14. Neither this Final Approval Order nor the Settlement Agreement is an admission or concession by Defendants or any of the other Released Parties of the validity of any claims or of any liability or wrongdoing or of any violation of law. This Final Approval Order and the Settlement Agreement do not constitute a concession and shall not be used as an admission or indication of any wrongdoing, fault or omission by Defendants or any of the other Released Parties or any other person in connection with any transaction, event or occurrence, and neither this Final Approval Order nor the Settlement Agreement nor any related documents in this proceeding, nor any reports or accounts thereof, shall be offered or received in evidence in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be

necessary to consummate or enforce this Final Approval Order, the Settlement Agreement, and all releases given thereunder, or to establish the affirmative defenses of *res judicata* or collateral estoppel barring the pursuit of claims released in the Settlement Agreement. This Final Approval Order also does not constitute any opinion or position of the Court as to the merits of the claims and defenses related to this Action.

15. The Parties, their counsel, and the Class Notice Agent shall fulfill their obligations and duties under the Settlement Agreement. The Settlement Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

16. Any Settlement Party to the Agreement who believes that the Settlement Account Administrator is not acting reasonably and in good faith executing the functions described in the Settlement Agreement may move the Court to terminate the Settlement Account Administrator upon 30 days' notice, which termination of the Settlement Account Administrator shall only occur if the Settlement Account Administrator is materially breaching its obligations under the Agreement, and a replacement shall be selected by mutual agreement of the Settlement Parties and proposed to the Court for approval.

## VI. Releases and Covenant Not to Sue.

17. The Court dismisses with prejudice this Action.

18. The Court adjudges that Plaintiffs and the Settlement Class Members have fully, finally, completely, and forever released, relinquished, and discharged the Released Claims against the Released Parties.

19. Plaintiffs and the Settlement Class Members are permanently enjoined and barred from asserting, initiating, prosecuting, or continuing any of the Released Claims against the Released Parties.

20. <u>Release.</u> As of and upon the Effective Date, the Releasing Parties irrevocably and fully release the Released Parties from any and all claims and causes of action of any nature whatsoever, whether based on any federal law, state law, common law, contract, rule, regulation, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, for any alleged claim or cause of action (whether based in tort, statute, regulation, common law, or any other law), or assertion of fraudulent transfer regarding or other challenge to (i) any transaction between or involving the EQT Defendants and/or Diversified Defendants (including but not limited to Plaintiffs' claims relating to the transactions between the Diversified Defendants and the EQT Defendants in 2018 and 2020), (ii) any transaction related to the acquisition of any Diversified Wells, (iii) with respect to the EQT Defendants, any claims that were or could have been asserted in this case, (iv) the Diversified Parties' solvency as of July 1, 2024, as related to its asset retirement obligations, and (v) the Released Parties' actions, omissions, practices and decisions regarding the plugging and abandonment or restarting of Diversified Wells (including any allegations of trespass, negligence, nuisance, or failure to plug) that are plugged or restarted at any time prior to and through the 10 year period referenced in the following paragraph.

21. <u>Covenant Not to Sue.</u> As of and upon the Effective Date, the Releasing Parties irrevocably and fully Covenant Not to Sue or bring any type of claim or action (including against any State or other regulators)—for a period that shall not expire until 10 full years has elapsed since the occurrence of the Effective Date—regarding any and all claims and causes of action of any nature whatsoever, whether based on any federal law, state law, common law, contract, rule, regulation, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or

9

compensatory, that arise out of or relate to (i) the Released Parties' actions, omissions, practices and decisions regarding the plugging and abandonment (or lack thereof) of Diversified Wells (including the timing of such plugging or lack thereof) on property owned or leased by members of the Settlement Class, or (ii) the validity or sufficiency or primacy of agreements or consent orders between any of the Diversified Parties and State well regulators that concern well plugging and abandonment. This tolling and covenant not to sue includes all causes of action that were alleged and could have been alleged against the Released Parties in the Action. For the avoidance of doubt, Class Representatives and Settlement Class Members covenant not to sue—for a period that shall not expire until 10 full years has elapsed since the occurrence of the Effective Date—the Released Parties for any claim or cause of action arising out of or related to trespass, negligence, nuisance, or failure to plug associated with Diversified Wells that was brought or could have been brought in this Action. For the further avoidance of doubt, except as set forth in Article II.9 of the Settlement Agreement, no Class Representative or Settlement Class Member may petition or seek any relief that the Diversified Parties must plug any specific well for a period that shall not expire until 10 full years has elapsed since the occurrence of the Effective Date (to be clear, no Class Representative or Settlement Class Member may ever petition or seek any relief that the EQT Defendants must plug any Diversified Wells). To the extent the Diversified Parties plug the Diversified Wells on the property of a Settlement Class Member, all such claims that the Settlement Class Member may have against the Released Parties regarding the actions, omissions, practices, and decisions regarding the plugging and abandonment of Diversified Wells (including the timing of such plugging or lack thereof), whether such claims sound in trespass, nuisance, negligence, or otherwise, shall be automatically and immediately released for all time by the operation of the Agreement and without further action.

22. <u>Claims Not Released or Subject to Covenant Not to Sue</u>. The Class Representatives and Settlement Class Members do not waive any individual rights (1) to individually (and not as a group or class) apply to applicable State departments of environmental protection, or other administrative entity with regulatory oversight of well plugging, to request that their wells be plugged if such a process exists under state law; and (2) to individually (and not as a group or class) assert any claims arising out of damage caused by the plugging of a well and associated work, or damage to persons or property caused by actions taken in the plugging of a well, provided, however, by entering into the Settlement Agreement, Defendants likewise give up no rights to oppose any such action by Class Representatives or Settlement Class Members, provided, further, however, no Class Representative or Settlement Class Member can seek relief that would go above and beyond the applicable state law in connection with such action, and provided, further, however, all such claims against the EQT Defendants are being irrevocably released.

23. <u>Provisions Related to the Release and Covenant Not to Sue</u>. The Release shall never expire. The Covenant Not to Sue shall not expire until 10 full years has elapsed since the occurrence of the Effective Date. Any and all buyers, successors, or assigns of the Diversified Wells that are covered by the Release and Covenant Not to Sue shall be the beneficiary of the Release and Covenant Not to Sue in the same manner and to the same extent as the Diversified Parties; for the avoidance of doubt, third-party persons or firms which bought before the execution of the Settlement Agreement (October 10, 2024) the Diversified Wells that are covered by the Release and Covenant Not to Sue shall be (i) released in the same manner and to the same extent as the Diversified Parties and (ii) the beneficiary of the Covenant Not to Sue in the same manner and to the same extent as the Diversified Parties. Without in any way limiting its scope, and,

except to the extent otherwise specified in the Agreement, this Release and Covenant Not to Sue also covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by any attorneys, Interim Class Counsel, Class Representatives, and/or Settlement Class Members who claim to have assisted in conferring the benefits under this Settlement upon the Settlement Class. Class Representatives and Settlement Class Members shall not pursue any released claims on an individual or class-wide basis. The Release of the Defendants and Released Parties and Covenant Not to Sue survives any claims against any non-Defendant party by Class Representatives and the Settlement Class Members, and no claims against any other party can affect the Release of the Defendants and Released Parties or the Covenant Not to Sue by the Class Representatives and Settlement Class Members.

24. Class Representatives and Settlement Class Members shall be deemed to have, and by operation of the Settlement Agreement shall have, with respect to the subject matter of the Action, expressly waived the benefits of any statutory provisions or common law rule that provides, in substance or effect, that a general release does not extend to claims which the party does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with any other party. Upon the Effective Date, Plaintiff and the Settlement Class Members will waive and release any and all provisions, rights, and benefits conferred either (a) by Section 1542 of the California Civil Code or (b) by any law of any state or territory of the United States, or principle of common law which is similar, comparable, or equivalent to section 1542 of the California Civil Code, with respect to the claims released pursuant to the Settlement Agreement. Section 1542 of the California Civil Code reads:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

25. Class Representatives and Settlement Class Members shall not now or hereafter institute, maintain, prosecute, assert, instigate, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, claim, and/or proceeding, whether legal, administrative, or otherwise against the Defendants or Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action, and/or any other matters released through this Settlement and/or that are subject to the Covenant Not to Sue. If a Class Member who does not opt out commences, files, initiates, or institutes any such action, it shall be dismissed with prejudice.

26. The releases and covenants not to sue in the Agreement are binding upon Plaintiffs' and the Class Members' successors and assigns.

27. The Releasing Parties will be deemed to have agreed and covenanted not to sue any Released Party with respect to any of the Released Claims and are forever enjoined and barred from doing so, in any court of law or equity, or any other forum.

### VII. Attorneys' Fees, Expenses and Class Representative Awards

28. Plaintiffs have moved the Court (Dkt. Nos. 696, 697) for attorneys' fees in the amount of $4,354,836, litigation costs of $1,945,164, and service awards totaling $96,000, to be distributed in amounts of $3,000 to the following persons: Mark McEvoy, James Tawney, Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol DelRosso, George DelRosso, Benjamin Patterson, Chad Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts, Heidi Deem, Jeffrey L. Saltis, Kellie D. Saltis, Lane Evans, Minerva Evans, Maynard Tanner, Jennifer Tanner, Joan Medley, Jacob Collette, Regina Collette, Scott Corcoran, Kathy Johnson,

Christine Cochran, Bonnie Garrett, Colleen Gladwell, Michael Philips, Loren Smith, Bruce Perrone, Susan Leffler, and Norman Googel.

29. No party or class member has objected to this relief. After consideration of Plaintiffs' motion, the Court finds the award of fees and litigation costs to be justified under the common benefit and common fund doctrines, and further finds the requested amounts are fair, adequate, and reasonable given the results obtained; the absence of any objections either to the settlement or the fee request; the skill of the attorneys; the difficulty of the case; the complexity and duration of the litigation; the risk of nonpayment; and the time and labor expended. The award is further fair and reasonable considering results in similar cases, and considering that the lodestar crosscheck is 0.48, meaning the requested fee amounts to less than half of Plaintiffs' counsel's lodestar fees.

30. These amounts shall be paid from the Settlement Account in accordance with the terms of the Settlement Agreement. Pursuant to Rule 23(h)(3) and 52(a).

31. After considering past awards and awards throughout the country, the Court approves incentive awards in the amount of $3,000 for each person named as a Class Representative above. The Court specifically finds the Incentive Awards to be reasonable in light of the service performed by Plaintiffs for the class and as partial reimbursement for the costs and expenses they incurred as named Plaintiffs. The Incentive Awards shall be paid from the Settlement Account in accordance with the terms of the Settlement Agreement. Any Incentive Award will be reported as "other income" in Box 3 of Form 1099-MISC.

32. There were no objections to any aspect of the Settlement, or to any award of attorneys' fees, costs, or service awards.

33. The Court finds that no justifiable reason exists for delaying entry of this Final Approval Order and, good cause appearing, it is expressly directed that this Final Approval Order and separate Judgment be entered as final and appealable, and the case dismissed with prejudice.

34. The Court retains jurisdiction to consider all further matters arising out of the Settlement.

DATED: __3-27__, 2025

Hon. John Preston Bailey
United States District Court

# EXHIBIT A

## Exclusion List

| Opt-Out Number | Company | First Name | Last Name | Postmark Date (If Received Late) |
|---|---|---|---|---|
| 1 | ALAWEST | | | |
| 2 | ALAWEST INC | | | |
| 3 | APPALACHIAN MINERAL PARTNERS | | | |
| 4 | AMP ACQ Holdings, LLC | | | |
| 5 | AMP FUND II LP | | | |
| 6 | AMP FUND III LP | | | |
| 7 | AMP IV LP | | | |
| 8 | AMP V LP | | | |
| 9 | ARIO MINERALS LLC | | | |
| 10 | ARIO TIMBERLANDS LLC | | | |
| 11 | | JOHNNY | BARKLEY | |
| 12 | BIG HUFF TIMBERLANDS LLC | | | |
| 13 | BIG SANDY NO 2 LTD | | | |
| 14 | BLACKWOOD TIMBERLANDS LLC | | | |
| 15 | | JOAN | BOND | 2/18/2025 |
| 16 | | BRETT | BOYE | |
| 17 | | HENRY | BYLER | |
| 18 | | MICHAEL | BYLER | |
| 19 | BYLER MAHLON & ELIZABETH & FREEMAN & SADIE | | | |
| 20 | | HILARION | CANN | 2/10/2025 |
| 21 | | CHAD | COLLINS | |
| 22 | | RICHARD | CONRAD | 2/18/2025 |
| 23 | | MUSKINGUM | CONSERVANCY DISTRICT | |
| 24 | | MARY | DE MOSS | |
| 25 | | LINDA | DINGER | |
| 26 | EASTER HAZEL DEAN (LIFE) JUDITH DEANN & RANDY LEE BARR | | | |
| 27 | EL DORADO FARM LLC | | | 2/18/2025 |
| 28 | | CRAIG | FIRESTONE | |
| 29 | | WESLEY | FLEMING | |
| 30 | | DAVID | GEHMAN | |
| 31 | | DEBORAH | GEMMA | |
| 32 | | MINNIE | GRADY | |
| 33 | HALL EDMOND E HALL BRANDI N ET AL | | | |
| 34 | | GEORGE | HALLAS | |
| 35 | | STEPHEN | HARSHBERGER | |
| 36 | | JOHN | HERSHBERGER | |
| 37 | | DAVID | HOSTETLER | |
| 38 | KENTUCKY RIVER PROPERTIES LLC | | | |
| 39 | | ERIC | KIMBLE | 2/18/2025 |
| 40 | KIMBLE COMPANY | | | 2/18/2025 |
| 41 | | ALFRED | KIMMEL | |
| 42 | | EDWARD | KING | |
| 43 | KRCC OIL & GAS LLC | | | |
| 44 | | LEROY | KUHNS | |
| 45 | | JOSEPH | LAROSA | |
| 46 | | JOE | LYCAN | |
| 47 | | KENNETH | MCVICKER | 2/18/2025 |
| 48 | | AARON | MILLER | |
| 49 | | JOHN | MILLER | |
| 50 | | LARRY | MILLER | |
| 51 | | MARION | MILLER | |
| 52 | | MERVIN | MILLER | |
| 53 | | WESLEY | MILLER | |
| 54 | MOHLER TIMBERLANDS LLC | | | |
| 55 | | WILLIAM | MOORE | |
| 56 | MOORE WILLIAM CLAYTON & JEANET FAYE & LINNETTE MARIE | | | |
| 57 | MOUNTAIN MEADOW PROPERTIES LLC | | | 2/18/2025 |
| 58 | | HUNTER | MULLENS | |
| 59 | | CRAIG | MULLET | 2/19/2025 |
| 60 | | MANUEL | OJEDA | |
| 61 | | DENNIS | OVERDORFF | |
| 62 | PARDEE & CURTIN REALTY LLC | | | |
| 63 | Pardee Resources Company | | | |
| 64 | PARDEE ROYALTY LLC | | | |
| 65 | | THOMAS | PERKOWSKI | 2/18/2025 |
| 66 | | JOSEPH | PIGLIA | 2/18/2025 |
| 67 | POWELLTON TIMBERLANDS LLC | | | |
| 68 | | MICHAEL | PRICE | |
| 69 | RHDK INVESTMENTS LLC | | | 2/18/2025 |
| 70 | RHDK INVESTTNENTS LLC | | | 2/18/2025 |
| 71 | RPMINTER LLC | | | |
| 72 | | JAKE | SCHLABACH | |
| 73 | | JOHN | SCHLABACH | |
| 74 | | WILLIAM | SEREDAY | |
| 75 | | JAMES | SHAW | |
| 76 | | DANIEL | SKINNER | 2/18/2025 |
| 77 | | GLENN | SMITH | |
| 78 | | ROBERT | STARNER | |
| 79 | | JEFFREY | STAUFFER | |
| 80 | | ROBERT | STEWART | 2/18/2025 |
| 81 | | GIDEON | SWARTZENTRUBER | |

## Exclusion List

| Opt-Out Number | Company | First Name | Last Name | Postmark Date (If Received Late) |
|---|---|---|---|---|
| 82 | THE BOARD OF TRUSTEES OF FARMSTEAD VIEW | | | |
| 83 | | CATHY | THOMPSON | |
| 84 | | JOSEPH | TROYER | |
| 85 | | DOROTHY | UNDERWOOD | |
| 86 | UTT CARROLL E UTT EVELYN | | | |
| 87 | | THOMAS | WALLACE | |
| 88 | WARRIOR OF ARKANSAS INC | | | |
| 89 | WARRIOR TRACTOR & EQUIPMENT COMPANY INC | | | |
| 90 | WEST VIRGINIA PROPERTIES INC | | | |
| 91 | | DONALD | WILLIAMSON | |
| 92 | | JOEY | YODER | |
| 93 | | RUTH | YODER | |
| 94 | | GREGORY | ZIGGAS | |